Jonathon P. Hauenschild (SBN 249615)
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Ste. 335
Washington, DC 20001
(202) 232-5590
jhauenschild@irli.org

Counsel for *Amicus Curiae* Immigration Reform Law Institute

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, SECRETARY OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Case No.: 3:25-cv-05687<br><br>**PROPOSED BRIEF OF IMMIGRATION REFORM LAW INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS AND IN OPPOSITION TO PLAINTIFFS' MOTION TO POSTPONE EFFECTIVE DATE OF AGENCY ACTION**<br><br>Hearing: July 29, 2025, at 10:00 a.m., Courtroom 9, Hon. Trina L. Thompson |

## I.   INTEREST OF *AMICI CURIAE*[1]

*Amicus curiae* Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v.*

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

IRLI *AMICUS* PROPOSED BRIEF IN OPPOSITION                                                                      1
TO MOTION TO POSTPONE, NO. 3:25-CV-05687-TLT

*Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).

## II.   SUMMARY OF ARGUMENT

Secretary Noem's vacatur of the extension of temporary protected status (TPS) for citizens of Honduras, Nepal, and Nicaragua (collectively, "2025 Vacaturs") and her termination of Honduras's and Nicaragua's 1999 designations and Nepal's 2015 designation (collectively, the "2025 Terminations") were exercises of inherent Executive power under Article II of the Constitution and were not dependent upon a delegation of power from Congress through the TPS statute. Indeed, her actions were directed by the President, and because Secretary Noem's actions were at the behest of the President, her actions are unreviewable under the Administrative Procedure Act (APA).

Furthermore, Plaintiffs' position would require this Court to introduce a conflict between the TPS statute and the President's inherent authority. The Plaintiffs' position would preclude the Executive Branch from reconsidering its prior determinations, and such a reading of the statute would intrude upon the President's inherent and independent authority to oversee foreign affairs and immigration policy. Accordingly, to avoid this constitutional conflict, this Court should apply well-accepted canons of statutory construction and harmonize the TPS statute with Secretary Noem's exercise of inherent Executive authority.

## III.   ARGUMENT

There is no question that the United States has a right inherent in its sovereignty to defend itself from foreign dangers by controlling the admission of aliens. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). It is well-established that the President has independent authority in the areas

of foreign policy and national security. *See e.g., Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs"); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542- 43 (1950) ("The exclusion of aliens is a fundamental act of sovereignty . . . inherent in [both Congress and] the executive department of the sovereign"); *see also id.* at 542 ("When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing *an inherent executive power*.") (emphasis added).

      Indeed, Congress has acknowledged the President's inherent authority to exclude aliens in the nation's interest. *See* 8 U.S.C. § 1182(f) (implementing the President's authority, in the interests of the United States, to "suspend the entry of all aliens or any class of aliens" or "impose on the entry of aliens any restrictions he may deem to be appropriate"). Granted the President's inherent constitutional power, as Commander-in-Chief, to exclude aliens, it cannot be a nullity even if exercised outside of the precise form of its implementation by Congress in 8 U.S.C. § 1182(f).

      Plaintiffs bring an action to set aside the Secretary's vacaturs and terminations under the APA. Complaint, ECF 1, at ¶¶ 3-4, 7, 152-161, Motion, ECF 17, at pp. 15-19. For reasons discussed below, the APA does not apply either to presidential actions executed under the President's inherent constitutional authorities or to those subordinates directly acting pursuant to the President's orders promulgated under those inherent constitutional authorities. Because President Trump and Secretary Noem were exercising authorities granted the Executive under Article II of the Constitution, Plaintiffs are unlikely ultimately to succeed on the merits of their action, and this Court accordingly should deny their request to Postpone Effective Date of Agency Action.

**A.     Secretary Noem's 2025 Vacaturs and 2025 Terminations were exercises of presidential authority and are therefore unreviewable under the APA**

      On January 20, 2025, President Trump directed Secretary Noem to "rescind the

policy decisions of the previous administration that led to the increased or continued presence of illegal aliens in the United States," including "ensuring that designations of Temporary Protected Status are consistent with the provisions of section 244 of the INA (8 U.S.C. 1254a), and that such designations are appropriately *limited in scope* and *made for only so long as may be necessary* to fulfill the textual requirements of that statute." Executive Order 14159 at § 16, "Protecting the American People Against Invasion," 90 Fed. Reg. 8443, 8446 (Jan. 29, 2025) (emphasis added).

Because Presidents must always act through subordinates, whether an action is that of the President or the head of an agency, for purposes of APA reviewability, hinges not on whether agency personnel help perform a given action, but on whether the authority to take that action is constitutionally entrusted to the Executive or delegated by Congress to an agency. *See, a fortiori, Dalton v. Specter,* 511 U.S. 462, 477 (1994) ("Where a statute … commits decisionmaking to the discretion of the President, judicial review of the President's decision is not available."). Here, authority for Secretary Noem's action came directly from the President in the exercise of his inherent constitutional authority over foreign affairs and immigration policy, and she issued the 2025 Vacaturs and 2025 Terminations pursuant to his executive order. *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-589 (1952) (observing that immigration and naturalization policies are "interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government."); *United States v. Melgar-Diaz*, 2 F.4th 1263,1268 (9th Cir. 2021) (holding that the exclusion of aliens is a "fundamental act of sovereignty" and is "inherent in the executive power."). As the U.S. District Court for the District of Columbia has explained:

> [A]n unreviewable presidential action must involve the exercise of discretionary authority vested in the President; an agency acting on behalf of the President is not sufficient by itself. Since the Constitution vests the powers of the Executive Branch in one unitary chief executive officer, *i.e.*, the President, an agency always acts on behalf of the President. Nonetheless, there is a difference between actions involving discretionary authority delegated by Congress to the President and actions involving authority delegated by Congress to an agency. Courts lack jurisdiction to review an APA challenge in the former circumstances, regardless

of whether the President or the agency takes the final action. However, "[w]hen the challenge is to an action delegated to an agency head but directed by the President, a different situation obtains: then, the President effectively has stepped into the shoes of an agency head, and the review provisions usually applicable to that agency's action should govern." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001).

*Detroit Int'l Bridge Co. v. Gov't of Can.,* 189 F. Supp. 3d 85, 101-04 (D.D.C. 2016). *See also, Franklin v. Massachusetts*, 505 U.S. 788, 800-801 (1992) (After noting that the "President is not explicitly excluded from the APA's purview" nor is he "explicitly included," the Court determined "[o]ut of respect for the separation of powers and the unique constitutional position of the President, we find that textual silence is not enough to subject the President to the provisions of the APA"). *See also, e.g., Tulare Cty. v. Bush,* 185 F. Supp. 2d 18, 28 (D.D.C. 2001) ("A court has subject-matter jurisdiction to review an agency action under the APA only when a final agency action exists. Because the President is not a federal agency within the meaning of the APA, presidential actions are not subject to review pursuant to the APA.") (citing *Dalton,* 511 U.S. at 470) (other internal citations omitted).

      Here, Secretary Noem acted at the direction of the President and implemented his executive order when she reconsidered and vacated Secretary Mayorkas's 2023 extensions for Nepal, Honduras, and Nicaragua and terminated the 1999 and 2015 designations. Accordingly, this court lacks jurisdiction to review her actions under the APA. *Dalton,* 511 U.S. at 477. It is, of course, not to the prejudice of the un-reviewability of the secretary's action that it was pursuant to an order that the President had inherent constitutional authority to issue. Obviously, if actions committed to the President's discretion by a statute are unreviewable under the APA, actions he takes pursuant to his authority under the Constitution are at least equally so.

**B.     This Court should harmonize the TPS statute with the President's inherent constitutional authority**

      A reviewing court should seek to harmonize Congress's enactments with the President's inherent constitutional authority to terminate TPS designations. *See United*

*States v. Hansen*, 599 U.S. 762, 781 (2023) ("When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict."). "When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (quoting *Crowell v. Benson*, 285 U. S. 22, 62 (1932)).

      Of course, the "canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Id.* (internal quotation omitted) (questioning and overturning this Circuit's application of the canon of constitutional avoidance in *Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008)). Here, the government has persuasively established two such permissible constructions—that the TPS statute implicitly permits the Executive Branch to reconsider its prior TPS determinations and that the TPS terminations are constitutional, if not required, while such terminations are not subject to judicial review. *See* Defendant's Opposition, ECF 45, at pp. 1-2, 8-11, 13-16. Thus, to avoid the conflict between the TPS statute and the Executive's inherent constitutional authority to protect the nation from foreign threats, this Court should construe the statute as permitting, or requiring, reconsideration of prior agency decisions.

///
///
///
///
///
///
///
///
///

IRLI *AMICUS* PROPOSED BRIEF IN OPPOSITION  
TO MOTION TO POSTPONE, NO. 3:25-CV-05687-TLT

6

### IV. CONCLUSION

For the reasons stated herein, Plaintiffs' Motion to Postpone Effective Date of Agency Action should be denied.

Dated: July 16, 2025               Respectfully submitted,

                                   s/ Jonathon P. Hauenschild
                                   Jonathon P. Hauenschild
                                   (SBN 249615)
                                   Immigration Reform Law Institute
                                   25 Massachusetts Ave., NW, Suite 335
                                   Washington, DC 20001
                                   (202) 232-5590
                                   jhauenschild@irli.org

                                   Counsel for *Amicus Curiae*
                                   Immigration Reform Law Institute