UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL TPS ALLIANCE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>Defendants. | Case No. 25-cv-05687-TLT<br><br>**QUESTIONS FOR JULY 29, 2025 HEARING RE: PLAINTIFFS' MOTION TO POSTPONE**<br><br>Re: Dkt. No. 17 |

I. **CONCESSIONS**

1. <u>To both Parties</u>: Do the Parties agree that *Trump v. Casa, Inc.*, 145 S.Ct. 2540 (2025) was decided pursuant to the Supreme Court's emergency docket (i.e., the "shadow docket")?

    a. Do the parties agree that the Supreme Court's shadow docket involve issues that do not involve the merits of the underlying case?

    b. Do the parties concede that the Supreme Court's orders on the shadow docket matters are issued after limited briefing and no oral argument?

II. **STANDARD FOR MOTION TO POSTPONE**

1. <u>To both Parties</u>: How, if any, does the standard for a motion to postpone pursuant to 5 U.S.C. § 705 differ from the standard for a preliminary injunction?

    a. Which "of the two variants" of the *Winter* standards should the Court apply when deciding Plaintiffs' instant motion? *See Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017); *cf. Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024).

III. **JURISDICTION**

1. <u>To both Parties</u>: What is the statutory purpose of TPS? In answering this question, please

1  provide citations to appropriate sources of legislative history.

2  2. <u>To Plaintiffs</u>: What, if any, collateral decisions underlie the Secretary's determination to
3  terminate TPS?

4  3. <u>To Plaintiffs</u>: Please explain whether the Supreme Court's interpretation of "any
5  judgment" in *Patel v. Garland*, 596 U.S. 328 (2022) is binding on the Court's jurisdiction.
6  In answering this question, please provide citations to binding and persuasive caselaw.

7  **IV.  SCOPE OF RELIEF**

8  1. <u>To both Parties</u>: Plaintiffs seek to postpone the Secretary's TPS terminations for Honduras,
9  Nepal, and Nicaragua. Would limiting relief, if granted, to only the named plaintiffs be
10  practical?

11  2. <u>To both Parties</u>: 5 U.S.C. § 706 requires the Court to "review the whole record" in
12  determining whether an agency acted arbitrary, capricious, or otherwise not in accordance
13  with the law.
14      a. Are there any other records that the Court must consider before ruling on Plaintiffs'
15         motion to postpone?

16  3. <u>To both Parties</u>: Please address how, if at all, *Immigrant Defenders Law Center v. Noem*,
17  No. 25-2581, 2025 WL 2017247 (9th Cir. July 18, 2025) applies to this case.

18  **V.  APA CLAIMS**

19  1. <u>To both parties</u>: Discuss whether *Loper-Bright*, 603 U.S. 369 (2024) *and progeny* affect
20  the Court's analysis of Plaintiffs' APA claims?
21      a. If so, why and to what extent?
22      b. If not, why not?
23      c. In answering this question, please provide citations to binding and persuasive
24         caselaw.

25  2. <u>To both Parties</u>: Secretary Noem has terminated the TPS designations for Venezuela, Haiti,
26  Honduras, Nicaragua, Nepal, Afghanistan and Cameroon between February 5, 2025, to
27  July 8, 2025, a span of 6 months. *See* 90 Fed. Reg. 9040; 90 Fed. Reg. 28,760; 90 Fed.
28  Reg. 30,089; 90 Fed. Reg. 30,086; 90 Fed. Reg. 24,15; 90 Fed. Reg. 20,309; 90 Fed. Reg.

2

23,697.

    a. Should all of these terminations factor into the Court's analysis of whether the termination decisions were preordained in violation of APA, why or why not?

3. To Defendants: Did the Secretary find that the country conditions for all seven of these countries (Venezuela, Haiti, Honduras, Nicaragua, Nepal, Afghanistan, and Cameroon) simultaneously improved between the last extension and current termination?

4. To both Parties: What process did the Secretary use to determine Honduras, Nepal, and Nicaragua no longer meet any of these statutory criteria that originally justified their designations?  How was this process different from prior administrations?

5. To both Parties: How does the Secretary's TPS terminations and 60-day transition period align or conflict with the statutory purpose of TPS?

6. To both Parties: The Nepal termination states that "there is no longer an environmental disaster or other situation causing substantial, but temporary, disruption of living conditions and that Nepal can adequately handle the return of its nationals, and considering other relevant factors, the Secretary has determined that a 60-day transition period is sufficient and in accord with Executive Order 14159." 90 Fed. Reg. 24153.  The Secretary "recognize[d] that certain previous TPS terminations allowed for an extended transition" and that "certain other TPS designations were terminated without allowing for an extended transition period." *Id*. at n. 24.

    a. Explain whether this termination notice is sufficient or insufficient under the change-in-position doctrine? *See FDA v. Wages and White Lions*, LLC, 145 S. Ct. 898, 918 (2025).

    b. If so, why and to what extent?

    c. If not, why not?

    d. In answering this question, please provide citations to binding and persuasive caselaw.

**VI. FIFTH AMENDMENT**

1. To Defendants: TPS holders are currently in the country.

3

      a. Please explain how TPS concerns matters of entry and national security pursuant to *Trump v. Hawaii*, 585 U.S. 585 U.S. 667 (2018). *See* ECF 45 at 16.
   - i. In answering this question, please provide citations to binding and persuasive caselaw.

      b. Please explain why TPS holders are a security concern when Plaintiffs have been in the country for a significant amount of time. *See* ECF 17-2 ¶¶ 4–5; ECF 17-3 ¶ 2; ECF 17-4 ¶ 3; ECF 17-5 ¶ 3; ECF 17-6 ¶ 2; ECF 17-7 ¶ 2; ECF 17-8 ¶ 2; ECF 17-9 ¶ 2; ECF 17-10 ¶ 2; ECF 17-11 ¶ 2; ECF 17-12 ¶¶ 2, 6.

2. To both parties: The Court must consider whether the political climate leading to the TPS terminations supports a finding of animus. *Mi Familia Vota v. Fontes*, 129 F.4th 691, 728 (9th Cir. 2025).
   - a. Please explain how the political climate may or may not support a finding of animus.

## VII. IRREPARABLE HARM

1. To Defendants: Several TPS holders are currently in the process of getting permanent relief. *See* ECF 17-7; 17-13.
   - a. How long is the process for permanent relief?
2. To Defendants: How long are those subject to deportation detained?
   - a. What is the minimum, average, and maximum amount of time in detention before deportation?
3. To Plaintiffs: Several TPS holders are reliant on health insurance for essential health care.
   - a. How would moving to another country harm access to healthcare?

//

//

//

4

1   During the hearing, the parties will have 45 minutes to argue and 15 minutes reserved for
2 response to each other's argument after a brief court break.
3   The parties are encouraged to respond, in writing by 5:00 p.m., the end of the business day,
4 on Monday, July 28, 2025. This will help preserve time for argument.
5   Additional questions may be provided on the day of the hearing.
6   IT IS SO ORDERED.
7 Dated: July 25, 2025

TRINA L. THOMPSON
United States District Judge