BRETT A. SHUMATE
Assistant Attorney General
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM H. WEILAND
Acting Assistant Director
ANNA DICHTER
Senior Litigation Counsel
ERIC SNYDERMAN
LAUREN BRYANT
CATHERINE ROSS
AMANDA B. SAYLOR
JEFFREY M. HARTMAN
DANIEL CAPPELLETTI
SHELBY WADE
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*,<br><br>             Plaintiffs,<br><br>     v.<br><br>KRISTI NOEM, in her official capacity as<br>Secretary of Homeland Security, *et al.*,<br><br>             Defendants. | Case No. 3:25-cv-5687<br><br>**DEFENDANTS' EMERGENCY MOTION TO STAY PENDING APPEAL**<br><br>Hon. Trina L. Thompson |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

LEGAL STANDARD ................................................................................................................ 1

ARGUMENT .............................................................................................................................. 1

THIS COURT SHOULD ENTER A STAY PENDING APPEAL

I.   THE COURT LACKS JURISDICTION TO GRANT PLAINTIFFS THE RELIEF THEY
     SEEK............................................................................................................................... 3

     A.   The TPS Statute Bars Plaintiffs' Claims............................................................... 3

     B.   The Government Likely to Prevail on the Merits of Plaintiffs' APA Challenge
          to the Secretary's TPS Terminations ..................................................................... 6

     C.   The Government is Likely to Prevail on the Merits of Plaintiffs' APA
          Challenge to the Secretary's Selection of a Termination Date ............................. 9

     D.   Plaintiffs Equal Protection Claims Are Also Unavailing ................................... 10

II.  THE BALANCE OF HARM STRONGLY FAVORS A STAY PENDING
     APPEAL........................................................................................................................ 11

III. AT A MINIMUM, THIS COURT SHOULD NARROW ITS STAY ......................... 13

CONCLUSION........................................................................................................................ 15

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Bouarfa v. Mayorkas*,
  604 U.S. 6 (2024).................................................................................. 5

4

*CASA, Inc. v. Noem*,
5
  2025 WL 2028397 (4th Cir. July 21, 2025)........................................... 2

6
*CASA, Inc. v. Noem*,
  — F. Supp. 3d —, 2025 WL 1907378 (D. Md. July 10, 2025)................ 9

7
*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971).............................................................................. 9
8

*City & Cnty. of S.F. v. Trump*,
9
  897 F.3d 1225 (9th Cir. 2018).............................................................. 13

10
*DCH Reg'l Med. Ctr. v. Azar*,
  925 F.3d 503 (D.C. Cir. 2019).............................................................. 5
11

*Imm. Def. Law Cntr. v. Noem*,
12
  — F.4th— , 2025 WL 2080742 (9th Cir. July 18, 2025) ....................... 3, 13

13
*Dep't of Commerce v. New York*,
  588 U.S. 752 (2019).............................................................................. 8
14

*Dep't of State v. Munoz*,
15
  602 U.S. 899 (2024).............................................................................. 12

16
*East Bay Sanct. Cov. v. Barr*,
  934 F.3d 1026 (9th Cir. 2019).............................................................. 13
17

*FDA v. Wages and White Lion Invs., LLC*,
18
  145 S. Ct. 898 (2025)............................................................................ 10

19
*Fiallo v. Bell*,
  430 U.S. 787 (1977)............................................................... 4, 10, 11

20
*Garland v. Ming Dai*,
21
  593 U.S. 357 (2021).............................................................................. 9

22
*Hotel & Rest. Emps. Union, Loc. 25 v. Smith*,
  846 F.2d 1499 (D.C. Cir. 1988)............................................................ 4

23
*INS v. Legalization Assistance Project*,
  510 U.S. 1301 (1993)............................................................................ 11
24

*Maryland v. King*,
25
  567 U.S. 1301 (2012)............................................................................ 11

*Mathews v. Diaz*,
    426 U.S. 67 (1976)......................................................................................................... 3

*McNary v. Haitian Refugee Center, Inc.*,
    498 U.S. 479 (1991)................................................................................................... 4, 5

*Miranda v. Garland*,
    34 F.4th 338 (4th Cir. 2022) ...................................................................................... 11

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)......................................................................................................... 7

*Nken v. Holder*,
    556 U.S. 418 (2009)................................................................................... 1, 6, 11, 12

*Noem v. Nat. TPS Alliance*,
    No. 24A1059, 2025 WL 1427560 (S. Ct. May 19, 2025).................................... 1, 12

*Patel v. Garland*,
    596 U.S. 328 (2022)................................................................................................. 4, 10

*Ramos v. Wolf*,
    975 F.3d 872 (9th Cir. 2020) ............................................................................. 5, 8, 11

*Rank v. Nimmo*,
    677 F.2d 692 (9th Cir. 1982) ....................................................................................... 9

*Regents of Univ. of Cal.*,
    591 U.S. 1 (2020)........................................................................................................ 10

*Sagana v. Tenorio*,
    384 F.3d 731 (9th Cir. 2004) ..................................................................................... 11

*Trump v. CASA, Inc.*,
    2025 WL 1773631 (U.S. June 27, 2025) ............................................................ 11, 13

*Trump v. Boyle*,
    606 U.S. —, 2025 WL 2056889 (July 23, 2025)................................................. 2, 13

*Trump v. Hawaii*,
    585 U.S. 667 (2018)................................................................................................. 5, 10

*United States v. Tohono O'odham Nation*,
    563 U.S. 307 (2011)..................................................................................................... 4

*Vill. of Arlington Heights Metro. Housing Dev. Corp.*,
    429 U.S. 252 (1977)................................................................................................... 10

1

**STATUTES**

2  5 U.S.C. § 701(a)(2) .................................................................................................................. 9

3  5 U.S.C. § 705 .............................................................................................................. 3, 12, 13

4  5 U.S.C. § 706(2)(A) ............................................................................................................... 13

5  8 U.S.C. § 1101(a)(15)(F) ....................................................................................................... 12

6  8 U.S.C. § 1101(a)(15)(F)(K)(i) .............................................................................................. 12

7  8 U.S.C. § 1158 ........................................................................................................................ 12

   8 U.S.C. § 1229a ...................................................................................................................... 11

8  8 U.S.C. § 1229b(b) ................................................................................................................. 12

9  8 U.S.C. § 1231 ........................................................................................................................ 12

10 8 U.S.C. § 1254a(b)(1)(B) ............................................................................................ 3, passim

11 8 U.S.C. § 1254a(b)(1)(B)(i) ................................................................................................. 6, 8

12 8 U.S.C. § 1254a(b)(1)(B)(ii) ............................................................................................ 3, 6, 8

13 8 U.S.C. § 1254a(b)(1)(B)(iii) .................................................................................................. 6

14 8 U.S.C. § 1254a(b)(3)(A) ................................................................................................... 8, 10

15 8 U.S.C. § 1254a(b)(3)(B) ....................................................................................... 3, 8, 10, 11

16 8 U.S.C. § 1254a(b)(3)(C) ......................................................................................................... 9

17 8 U.S.C. § 1254a(b)(5) ...................................................................................................... 3, 8, 9

18 8 U.S.C. § 1254a(b)(5)(A) ................................................................................... 2, 3, 4, 5,  9

19 8 U.S.C. § 1252(a)(5) ................................................................................................................ 5

20 8 U.S.C. § 1254a(d)(3) .............................................................................................................. 9

   8 U.S.C. § 1329 .......................................................................................................................... 5
21

**RULES**

22 Fed. R. App. 8(a)(2) .................................................................................................................. 1

23 Fed. R. Civ. 62(g)(1) ................................................................................................................. 1

24 Fed. R. Civ. 62 ........................................................................................................................... 1

25

## **<u>REGULATIONS</u>**

8 C.F.R. § 274a.12 ................................................................................................ 12

## **<u>OTHER AUTHORITIES</u>**

*Termination of the Designation of Nepal for [TPS]*,
    90 Fed. Reg. 24,151 (June 6, 2025) ................................................................... 1

*Termination of the Designation of Honduras for [TPS]*,
    90 Fed. Reg. 30,089 (July 8, 2025)................................................................... 1

*Termination of the Designation of Nicaragua for [TPS]*,
    90 Fed. Reg. 30,086 (July 8, 2025)................................................................... 1

Executive Order No. 14,159 ............................................................................... 7

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 62, the Government moves the Court to stay its order granting Plaintiffs' Motion to Postpone Secretary Noem's termination of the Temporary Protected Status (TPS) designations for Nepal,[1] Honduras,[2] and Nicaragua[3] pending a decision from the Ninth Circuit on the Government's forthcoming appeal. Court Order, ECF No. 73; Stay Mot., ECF 17. The Government respectfully requests that the Court rule on the motion no later than 12:01 pm PDT on August 8, 2025; after that time, the Government intends to seek emergency relief from the Ninth Circuit. Fed. R. App. P. 8(a)(2); Fed. R. Civ. P. 62(g)(1). Plaintiffs were notified of and oppose the relief requested in this motion.

## LEGAL STANDARD

To evaluate whether to issue a stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors "are the most critical[,]" and the final factors merge where the government is a party. *Id*. at 434-35.

## ARGUMENT

**THIS COURT SHOULD ENTER A STAY PENDING APPEAL**

This Court should enter a stay because the Government is likely to prevail on the merits of its appeal. Three months ago, a California district court stayed the Secretary of Homeland Security's termination of the 2023 designation for Venezuela for Temporary Protected Status ("TPS"). The Ninth Circuit declined to stay that order pending appeal, but the Supreme Court stepped in to grant that relief, with just one noted dissent. *Noem v. Nat. TPS Alliance*, No. 24A1059, 2025 WL 1427560 (U.S. May 19, 2025). In doing so, the Supreme Court necessarily determined that the Government was likely to succeed on the merits, and also that the balance of harms favored giving effect to the termination during the pendency of the litigation.

---

[1] *Termination of the Designation of Nepal for [TPS]*, 90 Fed. Reg. 24,151 (June 6, 2025).

[2] *Termination of the Designation of Honduras for [TPS]*, 90 Fed. Reg. 30,089 (July 8, 2025).

[3] *Termination of the Designation of Nicaragua for [TPS]*, 90 Fed. Reg. 30,086 (July 8, 2025).

When the Supreme Court issues a stay, its decision is binding precedent on application of the stay factors—and lower courts must follow that informative precedent to resolve materially similar stay requests. *See Trump v. Boyle*, 606 U.S. —, 2025 WL 2056889 (July 23, 2025); *see, e.g., CASA, Inc. v. Noem*, 2025 WL 2028397 (4th Cir. July 21, 2025) (unpub. order) (declining to stay the TPS terminations for Afghanistan and Cameroon). This case is materially similar to *National TPS Alliance v. Noem*, No. 25-cv-1766-EMC (N.D. Cal.). Plaintiffs seek the same relief (a stay) with respect to the same type of agency action (terminations of a TPS designation). The only differences are that the Plaintiffs here are from Nepal, Honduras, and Nicaragua, rather than Venezuela, and that Plaintiffs' claims are even *weaker*. In *Noem v. National TPS Alliance*, the Secretary first vacated the prior Secretary's extension of TPS for certain Venezuelans, then terminated it—an extra step that the district court there (incorrectly) found exceeded statutory authority. Those plaintiffs also asserted an equal protection claim—and the district court found likely success on that claim too. Here, by contrast, the Secretary only effectuated a termination and did so consistent with the statutory framework. If the likelihood-of-success and balance-of-harms prerequisites favored the Government in *Noem v. National TPS Alliance*, they favor the Government here *a fortiori*.

The Government is very likely to succeed on the merits of its appeal. The statute expressly provides that "[t]here is *no judicial review* of any determination of the [Secretary] with respect to the … termination … of a foreign state." 8 U.S.C. § 1254a(b)(5)(A) (emphasis added). As courts have recognized, that plainly bars Administrative Procedure Act ("APA") claims challenging a Secretary's country-specific determination that TPS is no longer warranted. Plaintiffs attempt to circumvent the statute by asserting that they can challenge "agency action that is collateral to the determinations themselves," ECF No. 17 at 14, but that mischaracterizes both the statute (which draws no such distinction) and their own claim (which overtly challenges the Secretary's administration of TPS and her evaluation of country conditions).

Even if it was reviewable, Plaintiffs' APA claims lack merit. The Secretary addressed all of the relevant statutory factors and reached a reasonable conclusion to terminate each of the challenged TPS designations, which relate to Hurricane Mitch's impact on Honduras and Nicaragua in 1998 (26 years ago) and a 2015 earthquake's impact on Nepal (9 years ago). Plaintiffs cannot second-guess the Secretary's discretion-laden, deference-demanding judgment by invoking a *former* Secretary's findings, their own weighing of the evidence, or by objecting that the *current* Secretary cited the President's

Executive Orders.  *See* 8 U.S.C. § 1254a(b)(3)(B); *Mathews v. Diaz*, 426 U.S. 67, 81 (1976) (recognizing that immigration decisions are committed to the political branches, and that "a wide variety of classifications must be defined in the light of changing political and economic circumstances"). Congress empowered the Secretary—not Plaintiffs or this Court—to decide whether the specified environmental disasters continue to cause "substantial, but temporary, disruption of living conditions in the area affected" and whether a foreign state "is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state" following a natural disaster. 8 U.S.C. §§ 1254a(b)(1)(B)(i)-(ii), (b)(3)(A)-(B).

As to the balance of harms, the Supreme Court has repeatedly made clear in recent weeks that the Government suffers irreparable harm when its policies are enjoined—including when, as here, a court extends TPS that the Secretary determined fails to satisfy the statutory requirements. And while Plaintiffs assert that particular TPS beneficiaries may lose work authorization or lack other valid immigration status, nothing prevents them from seeking alternative lawful immigration status. Termination of TPS merely ends the *categorical* and *temporary* protection for *all* aliens covered by the TPS designations for Nepal, Honduras, and Nicaragua.

For all these reasons, the Court should stay its decision to enable the Government to seek expedited appellate review. *Imm. Def. Law Cntr. v. Noem*, — F.4th—, 2025 WL 2080742, at *4 (9th Cir. July 18, 2025) (holding that strongly challenged § 705 stay orders are immediately appealable).

## I.    THE COURT LACKS JURISDICTION TO GRANT PLAINTIFFS THE RELIEF THEY SEEK

## II.

### A.    The TPS Statute Bars Plaintiffs' Claims

The Court erred in concluding that § 1254a(b)(5) does not independently preclude Plaintiffs' APA challenge. ECF No. 73 at 14-19. The Secretary's decision to designate or terminate a TPS designation implicates sensitive foreign policy judgments. 8 U.S.C. § 1254a(b)(1)(B). The TPS statute therefore unambiguously precludes courts from second-guessing those determinations: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A).

Section 1254a(b)(5)(A)'s judicial-review bar is broad. *First*, Congress prefaced "determination" with the term "any." 8 U.S.C. § 1254a(b)(5)(A). As the Supreme Court explained "the word 'any' has an expansive meaning." *Patel v. Garland*, 596 U.S. 328, 338 (2022) (cleaned up). The provision thus captures determinations "of whatever kind." *Id*. *Second*, the phrase "with respect to" has "a broadening effect," as it "ensur[es] that the scope of [the] provision covers not only its subject but also matters relating to that subject." *Id*. at 339. When Congress has stripped a court of jurisdiction "in respect to" certain claims, the Supreme Court has construed that as a "broad prohibition." *United States v. Tohono O'odham Nation*, 563 U.S. 307, 312 (2011). The TPS statute thus plainly commits to the Secretary's unreviewable authority any and all determinations relating to any TPS termination. *Id*.

Reinforcing this interpretation, "the Government's political departments [are] largely immune from judicial control" in the immigration context, *Fiallo v. Bell*, 430 U.S. 787, 792 (1977), particularly when making the sort of sensitive foreign policy judgments at issue here. The Executive Branch had long exercised inherent authority to afford temporary immigration status based on its assessment of conditions in foreign states, even before there was any "specific statutory authority" for such relief. *See Hotel & Rest. Emps. Union, Loc. 25 v. Smith*, 846 F.2d 1499, 1510 (D.C. Cir. 1988) (per curiam). That authority included the discretion "not to extend [protected] status" to a particular class of aliens, and the D.C. Circuit had recognized that such decisions were "unreviewable" by courts. *Id*. Congress legislated against that backdrop when it enacted the TPS program and codified in Section 1254a(b)(5)(A) the understanding that "[t]here is no judicial review" of such determinations. 8 U.S.C. § 1254a(b)(5)(A).

Contrary to the Court's conclusion—which only discusses the operative term "termination" at the outset of its statutory analysis, ECF No. 72 at 15-19—Plaintiffs' APA claims fall squarely within § 1254a(b)(5)(A)'s prohibition on judicial review. They challenge, and seek to vacate, the Secretary's "determination[s] … with respect to the … termination … of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A). Courts lack the authority to review, stay, or set aside those determinations.

Plaintiffs attempt to skirt the statute by arguing that their claim challenges only collateral challenges to the Secretary's "procedures" and "motives" in reaching her determinations. ECF No. 17 at 14. That argument fails twice over. *First*, nothing in the TPS statute draws that distinction. Courts cannot review a TPS "determination" regardless of whether it is attacked on substantive or procedural grounds.

4

The Ninth Circuit previously rejected the analogy that Plaintiffs (and this Court) draw to *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), given that "the TPS statute … differs in both text and context" from the statute at issue there. *Ramos v. Wolf*, 975 F.3d 872, 890 (9th Cir. 2020), *vacated upon rehearing en banc*, 59 F.4th 1010, 1011 (9th Cir. 2023). The Ninth Circuit's analysis in *Ramos* is tellingly absent from the Court's analysis of § 1254a(b)(5)(A)'s judicial review bar, even though it provides strong indication of the Government's likelihood of success on the merits on appeal. ECF No. 73 at 14-19.

Moreover, *McNary* itself emphasized that Congress *could* bar judicial review of collateral challenges if it used more expansive language. 498 U.S. at 494 (citing 8 U.S.C. § 1329 as an example). Congress did so here: barring any "statutory or nonstatutory" challenge to "*any determination* of the [Secretary] *with respect to* the determination, or termination or extension of a designation" of TPS. 8 U.S.C. §§ 1252(a)(5), 1254a(b)(5)(A) (emphasis added); *see Bouarfa v. Mayorkas*, 604 U.S. 6, 19 (2024) (holding that INA provisions limiting judicial review provide "clear and convincing evidence of congressional intent to preclude judicial review").

*Second*, even if some collateral procedural challenges were reviewable, Plaintiffs' motion shows that its claim is no such thing. Plaintiffs are not challenging a guidance document or regulation distinct from a termination. Rather, at bottom, Plaintiffs' claim is that the Secretary's terminations "were based on a preordained, political decision to terminate TPS wholesale, rather than the objective country conditions review the statute requires." ECF No. 17 at 15. Plaintiffs further object to the information the Secretary used to guide her terminations. *Id*. at 17. But those are precisely the types of ordinary APA claims that fall within the core of the judicial-review bar in § 1254a(b)(5)(A). *See Ramos*, 975 F.3d at 889 (explaining that the TPS statute "preclude[s] direct review of the Secretary's country-specific TPS determinations").

The Court's comparison, ECF No. 73 at 18 n.1, between the termination of TPS and slavery is misplaced because "it is wholly inapt to liken that morally repugnant [conduct] to a facially neutral policy denying certain foreign nationals the privilege of" *temporary* protection in the United States based on years-old natural disasters. *Trump v. Hawaii*, 585 U.S. 667, 710 (2018).

If Plaintiffs' claims were permitted despite § 1254a(b)(5)(A), no APA challenge to any TPS termination would ever be barred—all a litigant would need to do is allege that the Secretary's determinations were driven by an underlying policy preference. *See DCH Reg'l Med. Ctr. v. Azar*, 925

5

F.3d 503, 505-507 (D.C. Cir. 2019) (recognizing that "almost any challenge to [a determination] could be recast as a challenge to its underlying methodology"). Congress's jurisdictional limitation cannot be circumvented so easily. Secretary Noem terminated the TPS designations for Nepal, Honduras, and Nicaragua, and Congress has shielded the substance of her reasoning from judicial review. The Court's order should be stayed pending review for that reason alone.

**B. The Government Likely to Prevail on the Merits of Plaintiffs' APA Challenge to the Secretary's TPS Terminations**

Even if a "narrow" APA claim could somehow survive the judicial-review bar, the Government is entitled to a stay because a strong likelihood of success on the merits is clear. *See Nken*, 556 U.S. at 434.

Consistent with the statute, Secretary Noem considered conditions in Nepal, Honduras, and Nicaragua, 8 U.S.C. § 1254a(b)(1)(B), and ultimately decided that termination of TPS for each country was warranted. 90 Fed. Reg. at 24,152-53 (Nepal); 90 Fed. Reg. at 30,088 (Nicaragua); 90 Fed. Reg. at 30,091 (Honduras). The Federal Register notices show that the Secretary, after consultation with appropriate agencies of the Government, properly addressed and considered the statutory factors in doing so. Those factors are whether: (1) an earthquake, flood, or other environmental disaster resulted in "a substantial, but temporary, disruption of living conditions in the area affected;" (2) the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state; and (3) the foreign state has requested designation under the TPS statute. 8 U.S.C. § 1254a(b)(1)(B)(i)-(iii).

With respect to Nepal, the Secretary concluded that termination of Nepal's TPS designation, which was predicated on a 2015 earthquake, was appropriate because the Nepalese government reported that "88.36% of damaged households have been rebuilt" and that the Nepalese government "disbanded" its reconstruction authority after "most impacted structures were rebuilt." 90 Fed. Reg. at 24,153. The Secretary additionally considered "improvements to its preparedness and response capacity," "disaster-resilient housing, infrastructure, and community systems," "economic growth" and the increase of "purchasing power of lower income households," as well as the Nepalese government's capacity to accept aliens with final removal orders over the past five years. *Id*. The Secretary's determination was based on

her consultation with appropriate governmental agencies and review of country conditions evidence. *See* ECF No. 64 (administrative record for Nepal).

As for Nicaragua, the Secretary concluded that "notable improvements allow Nicaragua to adequately handle the return of its nationals." 90 Fed. Reg. at 30,088. The Secretary recognized that Hurricane Mitch in 1998 was "a sudden catastrophe that caused severe flooding and associated damage" but that the hurricane was no longer disrupting living conditions or preventing Nicaragua from accepting the return of its nationals. *Id*. Specifically, Nicaragua had improved its roads, school infrastructure, and access to healthcare, had a stable economy, and had regularly accepted the return of its nationals over the preceding five years. *Id*. Again, the Secretary's determination was based on her consultation with appropriate governmental agencies and review of country conditions evidence. ECF No. 63 (administrative record for Nicaragua).

Finally, the Secretary concluded that "the conditions supporting [the] Honduras'" 1999 designation for TPS were no longer met because the "conditions resulting from Hurricane Mitch no longer cause a substantial, but temporary, disruption in living conditions" such that Honduras is temporarily unable to accept the return of its nationals. 90 Fed. Reg. at 30,091. Specifically, over the intervening 26 years since Hurricane Mitch, the vast majority of Hondurans gained access to water, sanitation, and electricity and that, with international assistance, "Honduras has strengthened its disaster management capacity at the municipal and national levels[.]" *Id*. Further, given Honduras's acceptance of aliens with final removal orders, the Secretary concluded the government's ability to accept the return of its nationals was adequate. And, in keeping with the theme, the Secretary's determination was based on her consultation with appropriate governmental agencies and review of country conditions evidence. ECF No. 62 (administrative record for Honduras).

Plaintiffs' claim that the Secretary's TPS terminations were based on a "preordained" or "pretextual" directive from the President, rather than statutory factors, is thus clearly belied by the evidentiary record. ECF No. 17 at 15. It amounts to an impermissible attack on the Secretary's permissible considerations of the President's policy priorities and focus on the temporary purpose of TPS. But "[a] change in administration brought about by the people casting their votes is a perfectly reasonable basis for

an executive agency's reappraisal of the costs and benefits of its programs." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part).

More specifically, and contrary to the Court's rationale, there is nothing improper, let alone arbitrary or capricious, about the Secretary's references to Executive Order No. 14,159, in Federal Register notices, especially where the Secretary's determination required an evaluation of an inherently discretionary and foreign policy-oriented standard. 8 U.S.C. § 1254a(b)(1)(B); ECF No. 73 at 22. There is no dispute that the Secretary considered, among other factors, the Administration's immigration policy prerogatives within her discretion-laden judgment as to whether the TPS designations for these three countries should be terminated. That is exactly what our political system expects and demands. As the Supreme Court has made clear, "a court may not set aside an agency's policymaking decision solely because it may have been … prompted by Administration priorities." *Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019). Indeed, "[i]t is expected—perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies." *Ramos*, 975 F.3d at 897-98. Plaintiffs' preference for their own policy views over the Secretary's does not make the Secretary's determinations arbitrary and capricious.

In the end, the Secretary's reasoned determinations demonstrate that she considered the appropriate factors and that the three TPS terminations constitute lawful exercises of her authority to determine whether an earthquake, flood, or other natural disaster has caused "substantial, but temporary, disruption of living conditions in the area affected" such that the foreign state is "unable, temporarily" to handle the adequate return to the state of aliens who are nationals of the state[.]" 8 U.S.C. § 1254a(b)(1)(B)(i)-(ii). The Secretary considered the evidence and gave reasons for her determination. That is all the APA requires.

Plaintiffs' policy disagreement does not create a viable APA claim. Indeed, this Court's own analysis of § 1254a(b)(5) seems to recognize that the Secretary's "single act of deciding whether the country conditions continue to be met for purposes of designating or terminating TPS" is shielded from judicial review before proceeding to consider precisely that question. ECF No. 73 at 15. Here, the Secretary actually considered evidence that Plaintiffs' claim was overlooked. *Compare, e.g.*, ECF No. 53 at 8-9 (asserting that the Secretary failed to consider U.S. State Department travel advisories for

Honduras), *with* ECF No. 62 at 3 (index showing that Secretary Noem considered the Honduras travel advisory). Consequently, much of Plaintiffs' argument and the Court's analysis, ECF No. 73 at 22, boils down to a claim that the Secretary's Federal Register notices must discuss every piece of evidence considered and must address intervening country conditions analysis unrelated to the initial TPS designation. But the statute does not contain either of those requirements. 8 U.S.C. § 1254a(b)(3)(A)-(B). And "it is long since settled that a reviewing court is generally not free to impose additional judge-made procedural requirements on agencies that Congress has not prescribed and the Constitution does not compel." *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021) (cleaned up). Plaintiffs' related effort to selectively reweigh the country conditions evidence lacks merit because under the APA a "court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Thus, even if review was available—it is not, *see* 8 U.S.C. § 1254a(b)(5)(A)—the Government is likely to prevail on the merits of any APA challenge to the Secretary's TPS terminations.

**C.  The Government is Likely to Prevail on the Merits of Plaintiffs' APA Challenge to the Secretary's Selection of a Termination Date**

Even putting 8 U.S.C. § 1254a(b)(5) aside, the Government is likely to prevail on Plaintiffs' assertion that they are entitled to a longer transition period under the TPS statute. ECF No. 73 at 23-25. Congress expressly provided that when the Secretary terminates a TPS designation for a specific country, the default minimum winddown period is 60 days. *See* 8 U.S.C. § 1254a(b)(3)(C). The Secretary has the "option" in her unfettered discretion to allow for a longer period if she deems it "appropriate in order to provide for an orderly transition." 8 U.S.C. § 1254a(b)(3)(C), (d)(3). The Secretary expressly acknowledged her discretionary "option" to afford a longer period and elected not to invoke it here. The Secretary's discretionary decision whether to extend such an administrative grace is unreviewable under the APA. 5 U.S.C. § 701(a)(2); *see Rank v. Nimmo*, 677 F.2d 692, 699 (9th Cir. 1982) (concluding that language giving the VA Administrator the "option" to make specific payments made "clear that Congress intended to vest the widest discretion possible in the Administrator."); *CASA, Inc. v. Noem*, — F. Supp. 3d —, 2025 WL 1907378, at *16 (D. Md. July 10, 2025) (observing the discretionary nature of § 1254a(d)(3)'s orderly transition authority). And her selection of the 60-day default termination period

provided by Congress, 8 U.S.C. § 1254a(b)(3)(C), cannot be arbitrary-and-capricious. *See CASA, Inc.*, 2025 WL 1907378 at *16 (explaining that "Congress chose to allow for a termination with only 60 days of public notice"). It also is unreviewable by operation of the judicial review bar at 8 U.S.C. § 1252(a)(2)(B)(ii). *See Patel*, 596 U.S. at 347. Moreover, neither Plaintiffs nor the Court have identified any "hard-and-fast commitment" by DHS to afford a specific post-termination period, let alone one that could have conceivably engendered any reliance interest for TPS recipients from these particular countries.[4] *FDA v. Wages and White Lion Invs., LLC*, 145 S. Ct. 898, 918-27 (2025). Thus, the Government is likely to prevail on the merits of that claim too.

**D.  Plaintiffs Equal Protection Claims Are Also Unavailing**

Although the Government has already established the requisite likelihood of success on the merits to warrant a stay pending appeal, it is also likely to prevail on the merits of Plaintiffs' equal protection claim, even assuming the Court could review it. The Secretary's termination determinations are rational immigration determinations related to the Government's interests in border, national security, and foreign policy that are "largely immune from judicial control." *Fiallo*, 430 U.S. at 792. The Secretary's determinations—reached after consultation with other governmental agencies—are "plausibly related" to the Government's national-security interests and the TPS program's objectives. *Hawaii*, 585 U.S. at 704-05; *see* 8 U.S.C. § 1254a(b)(1)(B). There is no basis to look behind the determinations and the Court's conclusion that a TPS termination is "incompatible" with the will of Congress is incorrect. *Compare* ECF No. 73 at 30, *with* 8 U.S.C. § 1254a(b)(3)(A)-(B).

Contrary to the Court's reasoning, ECF No. 73 at 25-27, Plaintiffs' equal protection claim is likely to fail even under the more searching standard in *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265-66 (1977), because Plaintiffs must prove a racially "discriminatory purpose [was] a motivating factor in the [government's] decision," something that they cannot do through cherry-picked

---

[4] The Court provides no rationale for why the Secretary must provide at least six months of post-termination protection based on termination decisions that are either remote in time, related to different countries, or both. ECF No. 73 at 24; *see* ECF No. 28 (Plaintiffs' appendix). Moreover, the TPS terminations cited by Plaintiffs do not establish a six month default period: 4 had no post-termination period; 3 had periods shorter than six months because the termination decision was published after the statutory review deadline; 6 had six month termination periods; 4 had twelve months; and 4 and eighteen months. That wide—discretionary—variation does not establish a fixed commitment to any particular post-termination period.

statements taken out of context (some by years) and without any direct link to the Secretary's determinations. *See DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 34-35 (2020) (explaining that disparate impact, unusual recission history, and pre- and post-election statements failed "to raise a plausible inference that the recission was motivated by animus."); ECF No. 17 at 20-21. Indeed, the Ninth Circuit analyzed an analogous claim and concluded that even under the *Arlington Heights* standard, the plaintiffs failed to present "even serious questions on the merits of their claim that the Secretary's TPS terminations were improperly influenced by the President's" alleged racial animus. *Ramos*, 975 F.3d at 897. Thus, the Government is also likely to prevail on the merits of Plaintiffs' equal protection claim. *See* ECF No. 45 at 16-20.

## III.    THE BALANCE OF HARM STRONGLY FAVORS A STAY PENDING APPEAL

The balance of harms and public interest also favor a stay pending appeal. *See Nken*, 556 U.S. at 435. Most fundamentally, as the Supreme Court necessarily concluded in an analogous case, the Government and public share an interest in ensuring adherence to the process established by Congress, under which the Secretary has unreviewable authority over TPS designations. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *CASA, Inc.*, 2025 WL 1773631, at *14 (declining to stay a TPS termination); *Miranda v. Garland*, 34 F.4th 338, 365-66 (4th Cir. 2022) ("enforcement of our immigration laws is the government's 'sovereign prerogative'").

Declining to issue a stay would result in "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-1306 (1993) (O'Connor, J., in chambers). That is especially so because the harm here arises in an area that implicates "a fundamental sovereign attribute exercised by the Government's political departments[,] largely immune from judicial control." *Fiallo*, 430 U.S. at 792. Permitting the TPS designations for Nepal, Honduras, and Nicaragua to continue would override the Secretary's considered judgment that TPS must be terminated because there is not a "substantial, but temporary, disruption of living conditions" that prevent aliens from those countries from returning. 8 U.S.C. § 1254a(b)(3)(B).

Plaintiffs contend that the termination could potentially lead to the loss of employment or health benefits, as well as possible removal and family separation. ECF No. 17 at 22-23; ECF No. 53 at 13; ECF No. 73 at 31. But the end of TPS's inherently *temporary* protection is not equivalent to a final removal order under 8 U.S.C. § 1229a and the loss of associated benefits (such as employment authorization) is inherent in the statutory scheme Congress designed. *See Sagana v. Tenorio*, 384 F.3d 731, 743 (9th Cir. 2004) (rejecting a due process challenge to a temporary worker program and explaining that it "violates no constitutional principles by conditioning an alien's entry on his or her willingness to enter into limited labor contracts."). And, in all events, "the burden of removal alone cannot constitute the requisite irreparable injury." *Nken*, 556 U.S. at 435.

Further, although Plaintiffs could potentially be separated from their families, ECF No. 73 at 31, that is the unfortunate possible consequence of *any* removal proceeding, as aliens have no constitutional right to live with their family in the United States, *Dep't of State v. Munoz*, 602 U.S. 899, 915-16 (2024) ("While families of putative immigrants certainly have an interest in their admission, it is a fallacy to leap from that premise to the conclusion that United States citizens have a fundamental right that can limit how Congress exercises the Nation's sovereign power to admit or exclude foreigners.") (cleaned up). Moreover, Congress crafted a remedy to address individualized harms associated with family separation: cancellation of removal (8 U.S.C. § 1229b(b)). Additionally, many of the Plaintiffs discussed by the Court may pursue alternative immigration relief outside of TPS: K visas (8 U.S.C. § 1101(a)(15)(K)(i)) are available to fiancé's of U.S. citizens; asylum, withholding of removal, and protection under the Convention Against Torture is available for those that fear harm in their home country (8 U.S.C. §§ 1158, 1231, 1231 note); visas are available for students (8 U.S.C. § 1101(a)(15)(F)). ECF No. 73 at 2. Many of those forms of relief entitle the applicant to seek work authorization. 8 C.F.R. pt. 274a.12. Nothing prevented Plaintiffs from pursuing that immigration relief previously and nothing prevents them from doing so now. Plaintiffs cannot establish irreparable harm through a lawful TPS termination by declining to pursue alternative relief that would ameliorate their alleged harms.

The Supreme Court stayed a district court's § 705 stay of Secretary Noem's termination of Venezuela's TPS designation, necessarily concluding that the harm to the Government when it is prevented from administering the TPS statute outweighs harms to aliens whose *temporary* status is

terminated (with the requisite 60 day notice period). *See Nat. TPS Alliance*, 2025 WL 1427560 at *1. The harms identified by Plaintiffs are certainly no stronger than those in *Noem v. National TPS Alliance*. They are arguably weaker, in that here the Secretary did not vacate prior extensions of the designations, but instead merely terminated them when they were scheduled to expire. Accordingly, the government is likely to prevail on the merits of its challenge to the Court's stay order on appeal. *See Boyle*, 2025 WL 2056889 at *1.

## III.    AT A MINIMUM, THIS COURT SHOULD NARROW ITS STAY

If the Court declines to stay its order pending appeal, it should at least narrow its scope because "[a]n injunction must be 'narrowly tailored to remedy the specific harm shown.'" *East Bay Sanct. Cov. v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019) (staying a nationwide injunction) (*quoting City & Cnty. of S.F. v. Trump*, 897 F.3d 1225,1245 (9th Cir. 2018)). The Supreme Court's recent decision in *Trump v. CASA, Inc.*, held that universal injunctions "fall[] outside the bounds of a federal court's equitable authority under the Judiciary Act [of 1789]." 2025 WL 1773631, at *8 (U.S. June 27, 2025). The Ninth Circuit has held that limitation on federal courts' equitable authority also constrains relief granted under 5 U.S.C. § 705. *Imm. Def. Law Centr.*, 2025 WL 2080742 at *5. The Court's attempt to distinguish those binding precedents provides no basis to grant universal relief here. ECF No. 73 at 35-36.

First, the Supreme Court's holding in *CASA, Inc.* was based on universal principles of equity that bind this Court—its analysis was not limited to situations where an Executive Order is challenged. 2025 WL 1773631, at *8. Second, *Imm. Def. Law Centr.* is indistinguishable from this case. *Imm. Def. Law Centr.* involved an organizational challenge to the Secretary's implementation of an immigration policy codified in the Immigration and Nationality Act because it affected their clients and required the organization to expend additional resources to represent them. 2025 WL 2080742 at *4-5. The Ninth Circuit rejected the district court's conclusion that its § 705 stay should apply to everyone affected by the challenged implementation policy and narrowed the stay to *Imm. Def. Law Centr.*'s current and future clients. *Id.* at 1*5. Similarly here, Plaintiffs here consist of easily identifiable individuals affected by a specific immigration statute. Any practical difficulties caused by Plaintiffs' inability to identify their current members provides no license for "the court to exceed its [equitable] power[.]" *CASA, Inc.*, 2025

13

WL 2080742 at *30; *see* ECF No. 73 at 36 (Defendants assert that they could "issue individual notices that continue the benefits for named Plaintiffs under TPS"). Finally, there is no basis whatsoever for this Court to enter a universal stay under § 705 based on the speculative possibility that it could vacate the Secretary's terminations under 5 U.S.C. § 706(2)(A) in the future. *See CASA, Inc.*, 2025 WL 2080742 at *30; *Imm. Def. Law Centr.*, 2025 WL 1773631, at *85 U.S.C. § 705. Accordingly, this Court should limit its stay to the named Plaintiffs to comport with the equitable constraints articulated in *CASA, Inc.* and *Imm. Def. Law Centr*.

1

## CONCLUSION

2    For these reasons, this Court should grant a stay pending appeal. If the Court declines to do so, it

3    should administratively stay all other deadlines so that the Government may pursue a stay pending appeal

4    before the Ninth Circuit.

Dated: August 1, 2025                              Respectfully submitted,

5

6                                                  BRETT A. SHUMATE
                                                   Assistant Attorney General

7                                                  YAAKOV M. ROTH
                                                   Principal Deputy Assistant Attorney General
8                                                  Civil Division

9                                                  WILLIAM H. WEILAND
                                                   Acting Assistant Director
10

11                                                 ANNA DICHTER
                                                   Senior Litigation Counsel

12                                                 ERIC SNYDERMAN
                                                   LAUREN BRYANT
13                                                 CATHERINE ROSS
                                                   JEFFREY M. HARTMAN
14                                                 AMANDA SAYLOR
                                                   DANIEL CAPPELLETTI
15                                                 SHELBY WADE
                                                   Trial Attorneys
16

17                                                 /s/ *Jeffrey Hartman*
                                                   JEFFREY HARTMAN
18                                                 Trial Attorney
                                                   U.S. Department of Justice, Civil Division
19                                                 Office of Immigration Litigation
                                                   General Litigation and Appeals Section
20                                                 P.O. Box 868, Ben Franklin Station
                                                   Washington, DC 20044
21                                                 Tel: (202) 532-4404
                                                   Jeffrey.M.Hartman@usdoj.gov
22
                                                   *Attorneys for the Defendants*
23

24

25

1

2  BRETT A. SHUMATE
   Assistant Attorney General
3  YAAKOV M. ROTH
   Principal Deputy Assistant Attorney General
4  Civil Division
   WILLIAM H. WEILAND
5  Acting Assistant Director
   ANNA DICHTER
6  Senior Litigation Counsel
   ERIC SNYDERMAN
7  LAUREN BRYANT
   CATHERINE ROSS
8  AMANDA B. SAYLOR
   JEFFREY M. HARTMAN
9  DANIEL CAPPELLETTI
   SHELBY WADE
10 Trial Attorneys
   U.S. Department of Justice, Civil Division
11 Office of Immigration Litigation
   General Litigation and Appeals Section
12 P.O. Box 868, Ben Franklin Station
   Washington, DC 20044
13
   Attorneys for Defendants
14
                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16
                      SAN FRANCISCO DIVISION
17
   NATIONAL TPS ALLIANCE, *et al*.,
18                                          Case No. 3:25-cv-5687
              Plaintiffs,
19
           v.                               [PROPOSED] ORDER GRANTING
20                                          MOTION FOR STAY PENDING
   KRISTI NOEM, in her official capacity as  APPEAL
21 Secretary of Homeland Security, *et al*.,

22            Defendants.

23

24

25         [PROPOSED] ORDER GRANTING STAY PENDING APPEAL – No. 3:25-cv-5687
                                      1

1  Before the Court is Defendants' motion for a stay pending appeal of the Court's order

2  postponing the Secretary's 2025 Termination determinations for Nepal, Honduras, and Nicaragua.

3  ECF No. 73. Having reviewed the motion, IT IS HEREBY ORDERED that the motion for a stay

4  pending appeal is GRANTED.

5

6  Issued this ___ day of August, 2025.

7                                                          _____
                                                         Trina L. Thompson
8                                                         United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  [PROPOSED] ORDER GRANTING STAY PENDING APPEAL – No. 3:25-cv-5687
                                         2