Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, O.C., SANDHYA LAMA, S.K., TEOFILO MARTINEZ,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 3:25-cv-05687- TLT<br><br>**DECLARATION OF JOSE A. PALMA JIMENEZ IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO STAY** |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
diana.sanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.com
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

## DECLARATION OF JOSE A. PALMA JIMENEZ

I, José A. Palma Jimenez, declare:

1. I am Co-Coordinator of the National TPS Alliance (NTPSA). I have worked with the NTPSA in various roles since it was founded in 2017. I served as Co-Coordinator in 2019 and again from June 2023 through the present.

2. As Co-Coordinator, I oversee NTPSA's daily work, including its organizing and advocacy efforts, leadership development, and member relations. I have detailed knowledge about NTPSA's membership, including membership demographics, member needs and priorities, and the role members play in setting NTPSA's mission and advocacy.

3. This declaration is based on my personal knowledge; files and documents of NTPSA that I have reviewed; and information provided to me by NTPSA leaders who I believe to be reliable, including NTPSA organizers, members of the NTPSA Executive Committee, local Committee Coordinators, and other NTPSA-affiliated staff. These files, documents and information are the type that is generated in the ordinary course of business and that I would customarily rely on in conducting NTPSA business.

4. I am providing this declaration to describe the challenges and burdens that the NTPSA and our members would face if the Court were to limit relief in this matter to the named individual Plaintiffs and members of the NTPSA.

5. I submitted a declaration previously in this case describing the NTPSA and our work. As I explained there, NTPSA is a member-led organization whose mission is to defend the Temporary Protected Status (TPS) program and win a path to permanent residency for TPS holders.

6. NTPSA currently has three staff members, including myself and two other Co-Coordinators. As Co-Coordinators, we are responsible for supporting NTPSA's local committees and member leaders to organize and advocate to defend the TPS program and keeping our members and the broader TPS community informed about important developments with TPS.

7.	In the near future, we hope to grow NTPSA's staff to include a digital organizer with training in using online databases and other tools to manage, communicate with, and grow online communities. But as of now we have no staff with special training in any of those areas.

8.	Much of NTPSA's work is done by our members on a volunteer basis. Members organize vigils and press conferences to call attention to the contributions of TPS holders and defend our communities against attack. Members donate their time and skills to prepare food for our events; provide transportation and translation to ensure other members are able to attend and participate; and create beautiful posters and flyers. Members also organize legal clinics where TPS holders can get advice and assistance.

9.	As I explained in my previous declaration, current and former TPS holders, as well as family and other supporters of TPS holders, can become NTPSA members either by joining a local NTPSA committee or by submitting an individual membership application online.

10.	Each local NTPSA committee maintains a list of its own members. While we encourage local committee members to also submit online membership applications, they are not required to do so.

11.	We find that our members' familiarity and comfort with the online world varies greatly. For example, our Honduran and Nicaraguan TPS holder members tend to be older, have less formal education, and be less comfortable online than our Venezuelan TPS holder members, who tend to be younger and have greater experience and comfort with the online world.

12.	NTPSA maintains a database of members who have submitted individual membership applications online. As of today, NTPSA has over 250,000 such TPS holder members.

13.	NTPSA's membership has grown rapidly over the past several months as TPS terminations have been announced for Venezuela, Afghanistan, Cameroon, Haiti, Nepal, Honduras, and Nicaragua. In the face of these rapid and devastating decisions, TPS

2

holders are urgently seeking up-to-date, accurate information about the current status of TPS designations as well as support and assistance from a welcoming community of other TPS holders.

14. For example, as of my previous declaration, on July 1, 2025, NTPSA had approximately 1,125 TPS holder members from Honduras, Nepal, and Nicaragua. As of today, NTPSA's membership from those countries has increased greatly, with approximately 3,300 Honduran TPS holder members, 1,800 Nepali TPS holder members, and 160 Nicaraguan TPS holder members.

15. It is NTPSA's policy to keep our membership list private. Our commitment to privacy is especially important in the current political climate. There is a lot of fear right now among immigrants, including the TPS community. TPS holders have seen in the news that green card holders are being targeted for arrest and detention based on their political advocacy. They have seen that immigrants, including immigrants with lawful status, have been sent to the CECOT prison in El Salvador, where they report being beaten and tortured. They are aware that immigrants are being deported to third countries, where they have no family, no connections, and no prospects. People are truly scared. In the midst of this climate of fear, we work hard to build trust with our members. Part of that includes committing to protect the privacy of their information.

16. NTPSA does not collect or maintain the street addresses of our members. We do not need that information, because we communicate with members primarily via email or phone, and because the state and zip code information we do collect is sufficient to allow us to communicate with our members by region where necessary. It is also our experience that many TPS holders are reluctant to share their home addresses because of privacy concerns.

17. NTPSA also does not collect our members' social security numbers, A-numbers (or immigration numbers), or TPS application numbers. That information is not relevant to our work, and I believe requesting it would discourage people from joining our organization, and we do not want to discourage our members.

3

18. I understand that the government has proposed that, if relief in this case were limited to members of the NTPSA, the NTPSA could provide the government with a list of our members and the government could send each member an individual notice informing them that their TPS status and work authorization remains valid.

19. This proposal raises a number of very serious concerns for NTPSA.

20. For example, if NTPSA were to turn over a list of all our members to the government, it would completely undermine our members' confidence and trust in us, and it would also violate our commitment to their privacy. Before sharing our members' information with the government, we would need to at a minimum first obtain express permission from each member. Setting up a reliable, effective process to do so would pose a significant burden to our small organization. This process would be particularly burdensome with respect to those members who are not comfortable online, and who participate with us largely through our local committees. Those members are disproportionately Honduran and Nicaraguan TPS holders.

21. In addition, the government could not use our membership list to mail notices, because we do not collect or maintain members' street addresses. Since we also do not collect or maintain members' social security numbers, A-numbers, or TPS application numbers, I do not know whether or how the government would be able to match the individuals on our membership list with its own records. I am concerned that, even if the government identified a system to do so, it would result in substantial errors, leaving many of our members without protection.

22. Even if NTPSA were able to obtain individual consent from our members to share their information, and even if the government were able to accurately match our membership list to its own records and mail individualized notices to each member, I am concerned that that process would take a significant amount of time. This is a serious problem because, for our members, every day without TPS is a day that they are unable to work to support themselves and their families, and a day that they face the prospect of detention and deportation.

23. These are only some of the problems I foresee if relief in this case were to be limited to named individual Plaintiffs and members of the NTPSA. In general, I am concerned the government's proposal to limit relief to members of NTPSA would create a chilling effect on our members' willingness to associate with NTPSA; would not effectively protect our members; and would pose serious administrative burdens for NTPSA that would make it difficult for us to continue our core work in this difficult time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed at Houston, Texas this 6th day of August, 2025.

*José A. Palma Jimenez*
José A. Palma Jimenez

5