Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, O.C., SANDHYA LAMA, S.K., TEOFILO MARTINEZ, <br><br>Plaintiffs, <br><br>vs. <br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA, <br><br>Defendants. | Case No. 3:25-cv-05687-TLT <br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION** <br><br>Assigned to: Hon. Trina L Thompson <br><br>Date:  September 16, 2025 <br>Time: 2:00 p.m. <br>Place: Courtroom 9 <br><br>Complaint Filed:  July 7, 2025 |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (Admitted *Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitrán (SBN 302081)
ebitran@aclusocal.org
Diana Sánchez
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (Admitted *Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION
CASE NO. 3:25-CV-05687-TLT

## NOTICE OF MOTION

TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 16, 2025, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 9 of the United States District Court for the Northern District of California located at San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs will and hereby move this Court, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2), for an order certifying the classes specified below.

Specifically, Plaintiffs move the Court to certify the claims alleged in the Complaint (Dkt. 1) against Defendants for the below classes of Temporary Protected Status ("TPS") holders from Honduras, Nepal and Nicaragua:

- **Honduras TPS Class:** All persons who have been granted TPS pursuant to the TPS designation of Honduras and who have not adjusted status to lawful permanent residence;

- **Nepal TPS Class:** All persons who have been granted TPS pursuant to the TPS designation of Nepal and who have not adjusted status to lawful permanent residence;

- **Nicaragua TPS Class:** All persons who have been granted TPS pursuant to the TPS designation of Nicaragua and who have not adjusted status to lawful permanent residence;

and to appoint Plaintiffs Teofilo Martinez, Denis Molina, and Jhony Silva as Representatives for the Honduras TPS Class; appoint Plaintiff Sandhya Lama as the Representative for the Nepal TPS Class; appoint Maria Elena Hernandez as the Representative for the Nicaragua TPS Class; and appoint the undersigned counsel as Class Counsel.

This Motion is based on this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities; the accompanying declarations of Ahilan Arulanantham, Emilou MacLean, Jessica Karp Bansal, and Erik Crew; the record and file in this action; and such further evidence or argument that may be presented before, at, or after the hearing.

Date:   August 15, 2025

Respectfully submitted,

NATIONAL DAY LABORER
ORGANIZING NETWORK


 */s/ Jessica Karp Bansal*
Jessica Karp Bansal
Lauren Michel Wilfong
(Admitted *Pro Hac Vice*)

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Eva L. Bitrán
Diana Sánchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Emilou MacLean
Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Erik Crew (Admitted *Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

Page No.

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 4

I.    The Proposed Classes Satisfy Rule 23(a). .............................................................. 4

    A.    The Classes Are So Numerous That Joinder of All Members Is Impracticable. ........... 4

    B.    The Classes Share Common Questions of Law and Fact. ............................................ 6

    C.    The Proposed Named Representative's Claims Are Typical of Class Claims. ............ 8

    D.    The Named Representatives Will Fairly and Adequately Protect Class Interests, and Plaintiffs' Counsel Are Qualified to Litigate This Action. ........................................... 9

II.   The Proposed Classes Seek Classwide Relief Under Rule 23(b)(2) Based on Defendants' Uniform Conduct. ........................................................................................................... 11

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Haw. State Dep't of Educ.*,
  30 F.4th 828 (9th Cir. 2022) ..............................................................................5

*Ambrosia v. Cogent Commc'ns, Inc.*,
  312 F.R.D. 544 (N.D. Cal. 2016) ........................................................................5

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ..........................................................................................11

*In re Apple Inc. Device Performance Litig.*,
  No. 5:18-MD-02827-EJD, 2023 WL 2090981 (N.D. Cal. Feb. 17, 2023), *appeal dismissed*, No. 23-15416, 2023 WL 10447843 (9th Cir. Aug. 8, 2023)......................6

*Bhattarai v. Nielsen*,
  No. 3:19-cv-00731 (N.D. Cal. 2019) ..............................................................1, 3

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  308 F.R.D. 606 (N.D. Cal. 2015) ........................................................................5

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ..............................................................................8

*Gen. Tel. Co. of the Nw., Inc. v. EEOC*,
  446 U.S. 318 (1980) ............................................................................................5

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................................8

*Gonzalez v. U.S. Immigration & Customs Enf't*,
  975 F.3d 788 (9th Cir. 2020) ..........................................................................4, 7

*Greko v. Diesel U.S.A., Inc.*,
  277 F.R.D. 419 (N.D. Cal. 2011) ........................................................................5

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................8, 9

*Hanon v. Dataprods. Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..............................................................................8

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) ..............................................................................5

ii

*Hernandez v. Lynch,*
 No. CV-16-00620-JGB(KKx), 2016 WL 7116611 (C.D. Cal. Nov. 10, 2016)..........................7

*Juarez v. Jani-King of Cal., Inc.,*
 273 F.R.D. 571 (N.D. Cal. 2011)...............................................................................................6

*Kidd v. Mayorkas,*
 343 F.R.D. 428 (C.D. Cal. 2023)...............................................................................................4

*LaDuke v. Nelson,*
 762 F.2d 1318 (9th Cir. 1985) ....................................................................................................8

*Lynch v. Rank,*
 604 F. Supp. 30 (N.D. Cal. 1984) ............................................................................................10

*Mansor v. USCIS,*
 345 F.R.D. 193 (W.D. Wash. 2023) ...........................................................................................4

*National TPS Alliance v. Noem,*
 Case No. 25-cv-01766 (N.D. Cal. 2025) ....................................................................................1

*Nightingale v. USCIS,*
 333 F.R.D. 449 (N.D. Cal. 2019)........................................................................................10, 12

*Ortega-Melendres v. Arpaio,*
 836 F. Supp. 2d 959 (D. Ariz. 2011) ........................................................................................12

*Parsons v. Ryan,*
 754 F.3d 657 (9th Cir. 2014) ....................................................................................................11

*Pole v. Estenson Logistics, LLC,*
 No. CV 15-07196 DDP (Ex), 2016 WL 4238635 (C.D. Cal. Aug. 10, 2016)............................5

*Ramos v. Nielsen,*
 Case No. 18-cv-01554 (N.D. Cal. 2018) ....................................................................................1

*Rodriguez v. Hayes,*
 591 F.3d 1105 (9th Cir. 2009) ......................................................................................4, 7, 8, 12

*Schwartz v. Upper Deck Co.,*
 183 F.R.D. 672 (S.D. Cal. 1999) ................................................................................................8

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
 559 U.S. 393 (2010).....................................................................................................................4

*Wal-Mart Stores, Inc. v. Dukes,*
 564 U.S. 338 (2011)............................................................................................................1, 6, 7, 8

*Walters v. Reno,*
 145 F.3d 1032 (9th Cir. 1998) ...............................................................................................9, 12

PLAINTIFFS' NOTICE OF MOTION & MOTION FOR CLASS CERTIFICATION
CASE NO. 3:25-cv-05687-TLT

*West v. Cal. Servs. Bureau, Inc.*,
  323 F.R.D. 295 (N.D. Cal. 2017) ..............................................................................5, 6

**Statutes and Rules**

5 U.S.C. § 553 ..............................................................................1, 2, 7

90 Fed. Reg. 24151 at 24153 ..............................................................................6

90 Fed. Reg. 30086, 30088 & n.15 ..............................................................................6

90 Fed. Reg. 30089 at 30091 & n.24 ..............................................................................5

Fed. R. Civ. P. 23(a) .............................................................................. *passim*

Fed. R. Civ. P. 23(b) ..............................................................................4, 11, 12

Fed. R. Civ. P. 23(g) ..............................................................................11

U.S. Const. amend. V ..............................................................................1

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This action arises from Defendants' unlawful termination of the Temporary Protected Status ("TPS") designations of three countries—Honduras, Nepal, and Nicaragua—the effect of which has threatened the status and livelihoods of tens of thousands of TPS holders across the United States. On behalf of themselves and the proposed classes, Plaintiffs challenge the legality of these terminations under the Administrative Procedure Act ("APA") and the Equal Protection component of the Due Process Clause of the Fifth Amendment. Resolving the question of whether these terminations are lawful does not require a plaintiff-by-plaintiff assessment or turn on evidence unique to individual Plaintiffs. To the contrary, Plaintiffs' claims raise only questions of law and fact related to the TPS termination decisions themselves, and the answers to these questions will resolve the litigation for all class members "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This is precisely the type of case that can be adjudicated through a class action.

The proposed Named Representative Plaintiffs and Plaintiffs' counsel are also well-equipped to represent the interests of the proposed classes. The Named Representative Plaintiffs fully understand and appreciate their obligations as class representatives, and will fairly and adequately discharge those duties. And Plaintiffs' counsel, who have substantial individual and collective experience litigating complex immigration cases, including cases with similar claims concerning TPS terminations, in *Ramos v. Nielsen*, Case No. 18-cv-01554 (N.D. Cal. 2018), *Bhattarai v. Nielsen*, No. 3:19-cv-00731 (N.D. Cal. 2019), and *National TPS Alliance v. Noem*, Case No. 25-cv-01766 (N.D. Cal. 2025), are well-qualified to prosecute this action.

For these reasons and as explained more fully below, Plaintiffs respectfully seek class certification of the proposed classes set forth herein.

### BACKGROUND

This Court laid out the relevant background in its July 31, 2025, order granting Plaintiffs' Motion to Postpone. Dkt. 73. In that order, this Court held that Plaintiffs are likely to prevail on three claims: (1) the terminations of TPS for Honduras, Nepal, and Nicaragua violated the APA because they were preordained decisions that were not based on review of country conditions; (2) the 60-day

1    wind down period violated the APA because the Secretary failed to acknowledge or explain her

2    break with the agency's practice over the past two decades to provide at least a six-month orderly

3    transition period before any termination takes effect; and (3) the terminations likely violated the

4    Equal Protection component of the Fifth Amendment because they were motivated by racism. *Id.*

5        The proposed Named Representative Plaintiffs are among the tens of thousands of TPS

6    holders from Honduras, Nepal, and Nicaragua whose status is threatened by Defendants'

7    terminations of TPS designations for those countries:

8        **Plaintiff Maria Elena Hernandez** is a Nicaraguan TPS holder and seeks to represent the

9    proposed Nicaragua TPS Class. Ms. Hernandez is 67 years old, arrived in the United States in 1996,

10   and lives in Florida. Dkt. 17-4 ¶¶ 2, 4. She has held TPS for 26 years, worked as a cleaner at the

11   same university for nearly 20 years, and has contributed to social security for decades. *Id.* ¶¶ 10–11.

12   She will lose her job, her social security, and her health benefits if TPS is terminated, leaving her

13   with no health insurance to address her chronic health conditions that require daily treatment. *Id.* ¶¶

14   10–17. Without TPS, she will also lose her state identification and be at risk of detention and

15   deportation to Nicaragua where she would face persecution. *Id.* ¶¶ 13–14.

16       **Plaintiff Sandhya Lama** is a Nepali TPS holder and seeks to represent the proposed Nepal

17   TPS Class. She first came to the United States as a student in 2008 and has held TPS for over 10

18   years. Dkt. 17-6 ¶ 2. In Nepal, Ms. Lama's family suffered political persecution from the Nepali

19   government. *Id.* ¶ 4. She is 43 years old and lives in Virginia. *Id.* ¶¶ 2, 6–7. She is the sole provider

20   for her three U.S. citizen children, one of whom has health needs that require specialized treatment.

21   *Id.* ¶¶ 2, 9–11, 13–15. None of her children have ever been to Nepal. *Id.* ¶ 12. If TPS is terminated,

22   Ms. Lama would lose legal status and the right to remain in the United States, putting her and her

23   children at risk of needing to relocate to Nepal where the specialized medical treatment needed for

24   her children does not exist and the risk of political persecution remains. *Id.* ¶¶ 14–16.

25       **Plaintiff Teofilo Martinez** is a Honduran TPS holder and seeks to represent the proposed

26   Honduras TPS Class. He came to the United States in 1997, is 57 years old, and lives in Georgia.

27   Dkt. 17-8 ¶¶ 2, 5. Mr. Martinez owns his own landscaping business and works as a realtor. *Id.* ¶ 9.

28   He risks losing his realtor's license and his driver's license with the termination of TPS, and faces

1  the prospect of being separated from his life partner and the country he has called home for half his

2  life. *Id.* ¶¶ 12-18. Mr. Martinez founded the Georgia chapter of NTPSA, is a member of the NTPSA

3  Executive Committee, and hosts a radio program for TPS holders. *Id.* ¶ 10. Without TPS, Mr.

4  Martinez faces potential detention and deportation to Honduras and the loss of everything he has

5  built living in the United States. *Id.* ¶ 18.

6       **Plaintiff Denis Molina** is a Honduran TPS holder and seeks to represent the proposed

7  Honduras TPS Class. Mr. Molina came to the United States in 1997 in search of safety and security.

8  Dkt. 17-2 ¶¶ 2, 5. He is 49 years old and lives in Connecticut. *Id.* ¶ 6. He is a father of four U.S.

9  citizen children, two of whom have special needs. *Id.* ¶¶ 2, 9, 11. He is also a pastor, mechanic, and

10  homeowner. *Id.* ¶ 6. Mr. Molina was a plaintiff in *Bhattarai v. Nielsen*, No. 3:19-cv-00731 (N.D.

11  Cal. 2019), which challenged the terminations of TPS for Honduras and Nepal during the first

12  Trump administration. *Id.* ¶ 3.

13       **Plaintiff Jhony Silva** is a Honduran TPS holder and seeks to represent the proposed

14  Honduras TPS Class. Mr. Silva has had TPS for almost his entire life. Dkt. 17-3 ¶ 1. He is 29 years

15  old, lives in Hayward, California, and works as a certified nursing assistant at a hospital cardiology

16  unit. *Id.* ¶¶ 2, 10. Mr. Silva came to the United States at the age of three, and became a beneficiary of

17  TPS shortly after his arrival. *Id.* ¶ 2. He is the father of a young U.S. citizen child with special needs

18  who depends on him for care, financial and emotional support, and health insurance. *Id.* ¶¶ 8–9, 11,

19  13–16. Without TPS, Mr. Silva will lose his job and his only source of income immediately. *Id.* ¶ 13.

20  He would also lose work authorization, legal status, and protection from deportation and detention

21  and ultimately face the prospect of going to Honduras, where he has nowhere to live, no prospects

22  for work, and no one to help support him. *Id.* ¶¶ 15–16.

23       In light of the foregoing, Plaintiffs now request certification of the following classes:

24       • **Honduras TPS Class:** All persons who have been granted TPS pursuant to the TPS

25         designation of Honduras and who have not been granted lawful permanent residence.

26       • **Nepal TPS Class:** All persons who have been granted TPS pursuant to the TPS

27         designation of Nepal and who have not been granted lawful permanent residence.

28       • **Nicaragua TPS Class:** All persons who have been granted TPS pursuant to the TPS

3

designation of Nicaragua and who have not been granted lawful permanent residence.

To be clear, Plaintiffs do not seek to certify a single class of people from all three countries. Rather, they seek certification of three separate classes. As such, they need only establish commonality among TPS holders from each country, not between TPS holders from one country and another.

## ARGUMENT

Plaintiffs have a "categorical" right to pursue their claims on behalf of a class if the suit satisfies the requirements of Federal Rule of Civil Procedure 23. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Class certification is proper when the action meets the criteria set forth in Rule 23(a)—i.e., "numerosity, commonality, typicality, and adequacy of representation"—and fits into one of the class types under Rule 23(b). *Id.*; *see also* Fed. R. Civ. P. 23(a), (b). Courts have routinely certified class actions challenging immigration policies and practices, including those that broadly affect non-citizens. *See, e.g.*, *Gonzalez v. U.S. Immigration & Customs Enf't*, 975 F.3d 788, 812 (9th Cir. 2020) (affirming certification in class action challenging the practice of relying solely on electronic database checks to determine probable cause for detainment); *Kidd v. Mayorkas*, 343 F.R.D. 428, 443 (C.D. Cal. 2023) (certifying classes challenging immigration enforcement policies relating to searches and seizures for detaining immigrants); *Mansor v. USCIS*, 345 F.R.D. 193, 199 (W.D. Wash. 2023) (certifying nationwide class of TPS applicants challenging policy that failed to provide interim benefits guaranteed by statute); *Rodriguez v. Hayes*, 591 F.3d 1105, 1126 (9th Cir. 2009) (reversing denial of class certification for class of detained immigrants challenging detention policies).

As explained below, the proposed classes here satisfy all four elements of Rule 23(a). Plaintiffs also satisfy Rule 23(b)(2) because they seek to demonstrate that Defendants have "acted or refused to act on grounds that apply generally to the classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole" under Rule 23(b)(2).

## I.    The Proposed Classes Satisfy Rule 23(a).

### A.    The Classes Are So Numerous That Joinder of All Members Is Impracticable.

Plaintiffs' proposed classes encompass individuals "so numerous that joinder of all members

1   is impracticable." Fed. R. Civ. P. 23(a)(1). The standard under Rule 23(a)(1) is not "whether joinder

2   is a literal impossibility. Rather, the question is whether joinder of all class members is

3   *practicable—i.e.*, *reasonably* capable of being accomplished." *A.B. v. Haw. State Dep't of Educ.*, 30

4   F.4th 828, 837 (9th Cir. 2022) (internal quotations and citations omitted); *see also Harris v. Palm*

5   *Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (impracticability is "only the

6   difficulty or inconvenience of joining all members of the class") (citation omitted). Determining

7   numerosity "requires examination of the specific facts of each case and imposes no absolute

8   limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).

9       Numerosity does not require a particular number of potential class members. *See, e.g.*, *In re*

10  *Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 613 (N.D. Cal. 2015). Courts have found

11  that classes with less than a few dozen members are sufficiently numerous, and a class "with more

12  than 40 members raises a presumption of impracticability of joinder based on numbers alone." *West*

13  *v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017) (internal quotations and citations

14  omitted); *see also Pole v. Estenson Logistics, LLC*, No. CV 15-07196 DDP (Ex), 2016 WL 4238635,

15  at *3 (C.D. Cal. Aug. 10, 2016) ("[T]he Ninth Circuit has typically required at least fifteen members

16  to certify a class."); *Ambrosia v. Cogent Commc'ns, Inc.*, 312 F.R.D. 544, 552 (N.D. Cal. 2016) ("as

17  a general matter, a class greater than forty often satisfies the requirement"). Additionally, joinder

18  may be impracticable considering the geographical location of class members, their financial

19  resources, and their ability to institute separate suits. *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419,

20  425 (N.D. Cal. 2011). Accordingly, in cases seeking only injunctive or declaratory relief, "the

21  numerosity requirement is relaxed" because class certification would avoid duplicative suits brought

22  by other class members and necessarily implicate judicial economy. *Pole*, 2016 WL 4238635, at *5.

23      Here, the proposed classes easily satisfy the numerosity requirement. The known TPS

24  holders for each class—from Honduras, Nepal, and Nicaragua, respectively—number in the

25  thousands. As of September 2024, there are approximately 72,000 nationals of Honduras who hold

26  TPS, of whom approximately 21,000 have been granted lawful permanent resident status, 90 Fed.

27  Reg. 30089 at 30091 & n.24; approximately 4,000 nationals of Nicaragua who hold TPS, of whom

28  approximately 1,100 have been granted lawful permanent residence, 90 Fed. Reg. 30086, 30088 &

1   n.15; and approximately 12,700 nationals of Nepal who hold TPS, of whom approximately 5,500

2   have been granted lawful permanent residence, 90 Fed. Reg. 24151 at 24153. *See also* Dkt. 17-16 ¶¶

3   9, 16, 22 (citing 52,585, 7,505 and 2,935 as recent estimates of Honduran, Nepali, and Nicaraguan

4   TPS holders, respectively, as of September 2024). The sizes of the proposed classes far surpass class

5   sizes that courts have found to be sufficiently numerous, *see supra*, and based on those numbers

6   alone, joinder is presumptively impractical. *See West*, 323 F.R.D. at 303. The location and

7   background of proposed class members further underscore the impracticability of joinder. The

8   proposed classes of TPS holders are geographically dispersed nationwide with members living in

9   virtually every state, *see, e.g.*, Dkt. 17-13 ¶ 12, and at least some are no doubt limited in financial

10  resources needed to litigate on an individual basis, *see* Dkt. 17-16 ¶¶ 15, 21, 27 (estimating averages

11  of $33,308.00, $32,812.73, and $76,544.08 in pre-tax wages and salary income for Honduran,

12  Nicaraguan, and Nepali TPS holders, respectively). In addition, based on their current immigration

13  status, some may be understandably reluctant to engage with the justice system to protect their rights

14  for fear of being targeted for deportation or detention. *E.g.*, Dkt. 17-5 ¶ 10; Dkt. 17-9 ¶ 13; *see also*

15  Dkt. 1 ¶¶ 131, 150.

16      **B.    The Classes Share Common Questions of Law and Fact.**

17      Plaintiffs satisfy Rule 23(a)(2) because the proposed classes present "questions of law or fact

18  common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is "construed permissively." *Juarez v.*

19  *Jani-King of Cal., Inc.*, 273 F.R.D. 571, 578 (N.D. Cal. 2011) (citing *Hanlon v. Chrysler Corp.*, 150

20  F.3d 1011, 1019 (9th Cir. 1998)). "All questions of fact and law need not be common to satisfy the

21  rule," *id.*, and a "single common issue of law or fact" may be sufficient. *In re Apple Inc. Device*

22  *Performance Litig.*, No. 5:18-MD-02827-EJD, 2023 WL 2090981, at *5 (N.D. Cal. Feb. 17, 2023),

23  *appeal dismissed*, No. 23-15416, 2023 WL 10447843 (9th Cir. Aug. 8, 2023) (citing *Castillo v. Bank*

24  *of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020)). Commonality exists if the claims depend on a

25  common contention or question "of such a nature that is capable of classwide resolution—which

26  means that determination of its truth or falsity will resolve an issue that is central to the validity of

27  each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. The core inquiry is not the

28  capacity of the class claims to raise common questions, but rather, "the capacity of a classwide

proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.*
Commonality is satisfied where, as here, "the lawsuit challenges a system-wide practice or policy
that affects all of the putative class members." *Gonzalez*, 975 F.3d at 807-808 (citation omitted); *see
also Rodriguez*, 591 F.3d at 1122-23 (finding commonality despite individualized differences
because of common questions concerning constitutionality of prolonged immigration detention);
*Hernandez v. Lynch*, No. CV-16-00620-JGB(KKx), 2016 WL 7116611, at *17 (C.D. Cal. Nov. 10,
2016) (finding commonality among class of detained immigrants challenging the same bond
determination policies and practices).

Plaintiffs and proposed class members in each class raise common legal and factual issues.
They all allege that Defendants' terminations of TPS for their respective countries—Honduras,
Nepal, and Nicaragua—were unlawful for the same reasons: (1) the terminations violate the APA
because they were not based on an objective review of country conditions, as required by statute, but
instead, the product of a preordained decision to terminate TPS first and then search for a rationale to
support the end result later; (2) the terminations are also unlawful because Defendants provided only
60-days' notice before their effective date, an unexplained and unacknowledged deviation from
historical practice that further violates the APA; and (3) the terminations were motivated at least in
part by intentional race- and national-origin-based animus, in contravention of the Fifth Amendment.
*See generally* Dkt. 1 ¶¶ 3-6.

That putative class members may have varying immigration backgrounds does not defeat
commonality. *See Rodriguez*, 591 F.3d at 1122-23. By their very nature, Defendants' terminations of
TPS for each of Honduras, Nepal, and Nicaragua apply equally and universally to TPS holders from
each of those countries, and Plaintiffs seek to challenge the legality of Defendants' TPS terminations
on the same legal grounds. Indeed, this Court postponed the effective dates of Defendants' TPS
terminations for Honduras, Nepal, and Nicaragua without the need for a plaintiff-by-plaintiff
assessment, acknowledging that Plaintiffs' claims seek relief from an agency action respecting the
status of TPS designations for each country writ large. *See* Dkt. 73, at 34-35. That same rationale
applies with equal force at the class certification stage. Because determining the legality of
Defendants' TPS terminations will resolve the litigation for all class members "in one stroke,"

7

1    Plaintiffs and proposed class members satisfy the commonality requirement. *See Wal-Mart*, 564 U.S.

2    at 350.

3        **C.    The Proposed Named Representative's Claims Are Typical of Class Claims.**

4        Plaintiffs also satisfy Rule 23(a)(3) because the proposed Representatives' claims are typical

5    of proposed class members' claims. Commonality and typicality "tend to merge," *Gen. Tel. Co. of*

6    *the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982), as the typicality requirement looks at "whether

7    other members have the same or similar injury, whether the action is based on conduct which is not

8    unique to the named plaintiffs, and whether other class members have been injured by the same

9    course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation

10   omitted). Typicality aims to ensure that "the interest of the named representative aligns with the

11   interests of the class," *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), focusing on

12   "defendant's actions toward the plaintiff class, not particularized defenses against individual class

13   members." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 683 (S.D. Cal. 1999) (citation omitted).

14   Named Representatives' claims are typical "if they are reasonably co-extensive with those of absent

15   class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

16   1020 (9th Cir. 1998). As with commonality, factual differences among class members do not defeat

17   typicality provided there are legal questions common to all class members. *See Rodriguez*, 591 F.3d

18   at 1124; *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985).

19       The named Representatives' claims here are typical of the claims of proposed class members.

20   The named Representatives and other members of the proposed class all seek relief from the same

21   wrongful conduct: Defendants' unlawful terminations of TPS designations for their respective

22   countries. Dkt. 1 ¶¶ 1-6, 15-21, 45-128. The named Representatives and other proposed class

23   members will also suffer the same or similar types of harms that result from Defendants' TPS

24   terminations. *Id.* ¶¶ 130-45. As this Court found, all  Plaintiffs will lose their TPS status, which in

25   turn will result in devastating life consequences. *See, e.g.*, Dkt. 73, at 30-31; Dkt. 17-3 ¶¶ 10-11, 14,

26   16; Dkt. 17-2 ¶¶ 14-15; Dkt. 17-13 ¶¶ 27-31; Dkt. 17-4 ¶¶ 2, 4, 10-17; Dkt. 17-5 ¶¶ 2, 7-10; Dkt. 17-

27   8 ¶¶ 12-18; Dkt. 17-16 ¶ 34; Dkt. 17-15 ¶ 9 ("If TPS holders who entered the U.S. without

28   inspection choose to leave upon termination, they may be subject to a ten-year ban on re-entry, even

8

1    if they are otherwise eligible for legal permanent residence pathways."). The Named

2    Representatives' harms are typical of the harms suffered by proposed class members because

3    proposed class members all stand to suffer devastating life consequences stemming from

4    Defendants' terminations of TPS for these countries. *See, e.g.*, Dkt. 17-12 ¶¶ 2, 8-15 (putative class

5    member describing impact and harm from potential loss of TPS); Dkt. 17-11 ¶¶ 2, 9-17 (similar);

6    Dkt. 17-5 ¶¶ 2, 7-10 (similar); *see also* Dkt. 17-13 ¶¶ 27-31. Plaintiffs' proposed class

7    representatives thus satisfy the typicality requirement.

       **D.**    **The Named Representatives Will Fairly and Adequately Protect Class Interests, and Plaintiffs' Counsel Are Qualified to Litigate This Action.**

       The Named Representatives and their Proposed Class Counsel satisfy the adequacy

10   requirement because they "will fairly and adequately protect the interests of the class." Fed. R. Civ.

11   P. 23(a)(4). The adequacy requirement depends on "the qualifications of counsel for the

12   representatives, an absence of antagonism, a sharing of interests between representatives and

13   absentees, and the unlikelihood that the suit is collusive." *Walters v. Reno*, 145 F.3d 1032, 1046 (9th

14   Cir. 1998) (citation omitted); *see also Hanlon*, 150 F.3d at 1020 (inquiring "(1) do the named

15   plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the

16   named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

       The Named Representatives and Class Counsel will fairly and adequately protect class

18   interests because interests of class members in each class are not likely to conflict. As explained

19   above, the Named Representatives stand to suffer irreparable harm if the TPS terminations proceed,

20   and thus are highly motivated to obtain the requested relief. *See* Dkt. 73, at 30. Absent class

21   members face the same risk of irreparable harms as do the Named Representatives, who seek

22   uniform relief for all proposed classes with a shared goal of challenging the lawfulness of the TPS

23   terminations for their respective countries to win some or all of the following relief: a declaration

24   that Defendants' terminations of TPS for Honduras, Nepal, and Nicaragua, including with only 60-

25   days notice of the effective date, are unlawful; an order setting aside, postponing, and staying the

26   TPS terminations; and an injunction enjoining and restraining Defendants from enforcing the TPS

27   terminations, and ensuring that the TPS designations remain in full force and effect. *See generally*

28

1  Dkt. 1 ¶¶ 166-73; *Nightingale v. USCIS*, 333 F.R.D. 449, 462 (N.D. Cal. 2019) (finding plaintiffs to

2  be adequate representatives where they had a "shared interest" or "mutual goal" with proposed class

3  members to ensure lawful FOIA response practices). The Named Representatives do not seek

4  damages or other relief from Defendants unique from the relief requested for the classes, and

5  accordingly, no antagonistic interests exist between the Named Representatives and absent class

6  members. The Named Representatives have also confirmed their understanding of their roles as class

7  representatives and their willingness to take on that responsibility. *See* MacLean Decl. ¶ 19.

8      Moreover, proposed Class Counsel have extensive experience in immigrants' rights litigation

9  and are well qualified to prosecute this action for the proposed classes. Counsel are qualified when

10  they can establish experience in previous class actions and cases involving the same area of law.

11  *Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984). Class Counsel include attorneys from the

12  Center for Immigration Law and Policy at the UCLA School of Law, the ACLU Foundation of

13  Northern California (ACLU-NC), the ACLU Foundation of Southern California (ACLU-SC), the

14  National Day Laborer Organizing Network (NDLON), and the Haitian Bridge Alliance (HBA), each

15  of which has extensive experience in class action lawsuits and other litigation involving civil rights

16  and immigration law. Specifically, Ahilan Arulanantham, Professor from Practice and Faculty Co-

17  Director of the Center for Immigration Law and Policy, has substantial experience working on cases

18  involving the civil rights of immigrants, serving as lead counsel or co-lead counsel in many cases

19  involving individual litigants and several large class or mass actions raising complex statutory and/or

20  constitutional issues, including in the TPS context. Arulanantham Decl. ¶¶ 1, 5–6. Mr. Arulanantham

21  also has served as a resource for other non-profit and pro bono attorneys involved in complex

22  immigration litigation for many years. *Id.* ¶ 7.

23      The ACLUF-NC and ACLUF-SC are nonprofit, nonpartisan organizations dedicated to

24  defending the civil liberties and civil rights guaranteed by the federal and state constitutions.

25  MacLean Decl. ¶ 5. Proposed Class Counsel Ms. MacLean and other attorneys working for both

26  organizations have extensive experience in class action litigation and immigrants' rights litigation,

27  including in the TPS context. Collectively, they have served as lead counsel in dozens of civil rights

28  class actions, including before this Court. *Id.* ¶¶ 6–14. NDLON is an organization dedicated to

1   advancing the rights of immigrant and low-wage workers in the United States, including through

2   litigation and advocacy. Bansal Decl. ¶ 4. Ms. Bansal, who is TPS counsel at NDLON, also has

3   substantial experience in class action litigation and immigrants' rights litigation, including in the

4   TPS context, and has participated in numerous cases in federal court related to the policies and

5   practices of the federal immigration system. *Id.* ¶¶ 6–8. Finally, HBA is a grassroots and

6   community-based nonprofit organization that provides migrants and immigrants with humanitarian,

7   legal, and social services, and also advocates for fair and humane immigration policies. Crew Decl. ¶

8   4. HBA's litigation work includes affirmative federal court litigation, which has included serving as

9   co-counsel or as an organizational plaintiff in several cases, including in the TPS context. *Id.* ¶¶ 2,

10  6–7, 9–10.

11      Collectively, the attorneys from each of these organizations possess decades of experience

12  and expertise in matters involving immigration and civil rights and have a demonstrated history of

13  zealously prosecuting class actions such as this one. Arulanantham Decl. ¶¶ 5–7; MacLean Decl. ¶¶

14  6–14; Bansal Decl. ¶¶ 6–11; Crew Decl. ¶¶ 7–10. They also have capacity to thoroughly and

15  vigorously litigate this case to resolution and will commit all necessary resources to do so.

16  Arulanantham Decl. ¶ 10; MacLean Decl. ¶¶ 15–16; Bansal Decl. ¶ 13; Crew Decl. ¶ 12.

17      The Court should therefore find that Plaintiffs' proposed Class Counsel are qualified to

18  represent both the Named Representatives and absent class members, and to the extent the proposed

19  classes are certified, appoint Plaintiffs' counsel as Class Counsel under Rule 23(g).

20  **II.   The Proposed Classes Seek Classwide Relief Under Rule 23(b)(2) Based on Defendants' Uniform Conduct.**

21

22      In addition to satisfying the requirements of Rule 23(a), this lawsuit qualifies under Rule

23  23(b)(2) as a class action challenging whether defendants have "acted or refused to act on grounds

24  that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

25  appropriate" for the whole class. Fed. R. Civ. P. 23(b)(2); *Parsons v. Ryan*, 754 F.3d 657, 685 (9th

26  Cir. 2014) (Rule 23(b)(2) is "unquestionably satisfied" when class members seek uniform injunctive

27  or declaratory relief applicable classwide); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

28  614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are

11

prime examples" of Rule 23(b)(2) class actions); *Walters*, 145 F.3d at 1047 (noting Rule 23(b)(2) "was adopted in order to permit the prosecution of civil rights actions . . ."). To satisfy Rule 23(b)(2), plaintiffs need not show that that all class members have suffered identical injuries; class certification is proper if defendants' "[a]ction or inaction is directed to a class . . . even if it has taken effect or is threatened only as to one or few members of the class, provided it is based on grounds which have general application to the class." *Nightingale*, 333 F.R.D. at 463 (citation omitted).

Courts have regularly certified Rule 23(b)(2) classes where, as here, plaintiffs challenge uniform policies and practices generally applicable to the class. *See, e.g.*, *Walters*, 145 F.3d at 1047 (affirming certification of Rule 23(b)(2) class where plaintiffs sought injunctive relief against INS practices in document fraud proceedings); *Rodriguez*, 591 F.3d at 1125-26; *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 990-91 (D. Ariz. 2011) (finding class certification under Rule 23(b)(2) proper where plaintiffs sought injunctive and declaratory relief regarding sheriffs' vehicle stop practices). The classes Plaintiffs seek to certify are quintessential Rule 23(b)(2) classes because they seek relief from Defendants' categorical terminations of TPS for Honduras, Nepal, and Nicaragua, which apply and impact proposed class members for each country uniformly without any individualized factual inquiries. *See* Dkt. 1 ¶¶ 152-73. Because the relief Plaintiffs seek would afford relief as to all members in each proposed country class, certification under Rule 23(b)(2) is proper.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request an order certifying the proposed classes under Federal Rule of Civil Procedure 23(a) and 23(b)(2); appointing Plaintiffs Denis Molina, Jhony Silva, Maria Elena Hernandez, Sandhya Lama, and Teofilo Martinez as Named Representatives for their respective countries; and appointing the undersigned counsel as Class Counsel.

Date:   August 15, 2025                                       Respectfully submitted,

                                                             NATIONAL DAY LABORER
                                                             ORGANIZING NETWORK


                                                              */s/ Jessica Karp Bansal*
                                                             Jessica Karp Bansal

Lauren Michel Wilfong
(Admitted *Pro Hac Vice*)

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Eva L. Bitrán
Diana Sánchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Emilou MacLean
Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Erik Crew (Admitted *Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 15, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

NATIONAL DAY LABORER
ORGANIZING NETWORK

 */s/ Jessica Karp Bansal*
Jessica Karp Bansal
