Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNÁNDEZ, O.C., SANDHYA LAMA, S.K., TEOFILO MARTINEZ,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 3:25-cv-5687-TLT-SK<br><br>**JOINT DISCOVERY LETTER BRIEF**<br><br>Magistrate Judge Sallie Kim |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitrán (SBN 302081)
ebitran@aclusocal.org
Diana Sánchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

The parties submit this brief regarding outstanding discovery disputes. Lead counsel met and conferred and complied with Section 9 of the District's Guidelines for Professional Conduct.

## I. BACKGROUND & RELEVANT DEADLINES

This case concerns a legal challenge pursuant to the Administrative Procedure Act (APA) and the Equal Protection Clause of the Constitution to the termination of Temporary Protected Status (TPS) designations of Honduras, Nepal and Nicaragua. The terminations affect more than 60,000 individuals who have resided in the United States with TPS for at least a decade. Defendants produced Certified Administrative Records (CARs) for each of the challenged decisions. Defendants withheld certain records in the CAR pursuant to the deliberative process privilege (DPP). Dkts. 77-1, 77-3, 78-1, 78-3, 79-1, 79-3 (supplemental CAR indices and certifications of complete CAR production). Dkts. 77-2, 78-2, 79-2 (USCIS Decision Memoranda withheld pursuant to DPP).

Under the current schedule, Plaintiffs must move for summary judgment no later than October 14. Plaintiffs seek expedited extra-record discovery and a determination overruling DPP in the context of the CARs and discovery. Defendants contest Plaintiffs' right to extra-record discovery and oppose any limitation on their DPP assertions. Plaintiffs served Requests for Production (RFPs) on Defendants on August 6 and 18. *See* Exs. A (Nos. 1–3; identifying custodians) & B (Nos. 4–5; identifying custodians). Plaintiffs seek USCIS Decision Memoranda, in which the USCIS Director recommends the Secretary take action in connection with periodic reviews of TPS designations (RFP 1 & 4); clearance records identifying the personnel who signed off on the decisions (RFP 2); communications regarding the periodic review of TPS for the countries at issue (RFP 3); and country conditions evaluations (including communications related to those evaluations) regarding TPS designations where there has been a periodic review during the Secretary's tenure (RFP 5).

Plaintiffs have proposed the following search terms: ["Temporary Protected Status" OR "TPS" OR "1254a"] AND ["Honduras" OR "Nepal" OR "Nicaragua" OR "Cameroon" OR "Afghanistan" OR "South Sudan" OR "Haiti" OR "Venezuela"]. The requests cover the time-period of January 20 to July 8, 2025 (Honduras and Nicaragua); June 27, 2025 (Haiti); June 6, 2025 (Nepal); June 4, 2025 (Cameroon); May 13, 2025 (Afghanistan); May 6, 2025 (South Sudan), and Feb. 5, 2025 (Venezuela).

## II. PLAINTIFFS' POSITION

### A. Expedited Extra-Record Discovery Is Appropriate and Necessary Here.

Plaintiffs seek expedited, narrowly-tailored extra-record discovery, consistent with what has been ordered in other TPS cases. Compelling grounds support granting focused discovery to determine Defendants' actual decisionmaking process for the challenged agency actions (RFP 1–3) and uncover how Defendants have approached TPS periodic reviews over the past six months to implement pre-ordained decisions to terminate TPS (RFP 4–5). Plaintiffs' requests appropriately encompass all periodic review processes (not just Honduras, Nicaragua, and Nepal) because their first APA claim "challenge[s] the collateral decision to end TPS for virtually every country that has it." Dkt. 87 at 3 ("Plaintiffs). Dkt. 73 at 22 (describing Secretary's "history of systematically attempting to limit TPS").

*First*, extra-discovery is available because Plaintiffs allege an Equal Protection claim, which does not "fundamentally overlap" with their APA claims for the simple reason that racial animus has no place in agency decisionmaking. *Sierra Club v. Trump*, 929 F.3d 670, 698–99 (9th Cir. 2019) ("claims challenging agency actions—particularly constitutional claims—may exist wholly apart from the APA"). "[T]he APA's administrative record requirement does not govern the availability of discovery" where there is a constitutional claim which does not "fundamentally overlap" with any APA claims. *Cal. v. DHS*, 612 F. Supp. 3d 875, 894–99 (N.D. Cal. 2020). Ferreting out "whether an official act was motivated by animus cannot be determined solely by examining the administrative record," *Mayor & City Council of Baltimore v. Trump*, 429 F. Supp. 3d 128, 140 (D. Md. 2019). Here, the Court already has credited evidence of "the Secretary's animus against immigrants and the TPS program" and that this animus motivated decisionmaking. Dkt. 73 at 27-29. The motivations of decisionmakers cannot be ascertained via the CAR alone, especially when, as here, the CARs are threadbare. Dkts. 77-1, 78-1, 79-1 (CAR indices).

*Second*, document discovery is warranted even in pure APA cases to uncover bad faith and pretext. *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). *See also Dep't of Com. v. New York*, 588 U.S. 752, 783–84 (2019). The Court already has found, "sufficient evidence to demonstrate that the Secretary's TPS Nepal, Honduras, and Nicaragua terminations were based on a preordained determination to end the TPS program, rather than an objective review of the country conditions."

1  Dkt. 73 at 21. Thus, extra-record discovery is necessary because DHS's explanations are "incongruent with what the record reveals about [its] priorities and decisionmaking process." *Dep't of Com.*, 588 U.S. at 785.

*Third*, discovery is appropriate when an APA claim alleges an "'[u]nexplained inconsistency between agency actions.'" *See CP Salmon Corp. v. Ross*, 2017 WL 11682780, at *6 (D. Alaska Mar. 27, 2017).[1] Here, the record already points to arbitrary and capricious conduct that deviated from past practice. Specifically, the agency did not include discussion of information "that was previously deemed relevant for prior TPS determinations" and deviated from "prevailing practice of prior administrations [] to provide at least 6 months after the TPS termination date for holders to transition." Dkt. 73 at 22, 23. Discovery thus is essential "to help … understand whether [DHS] complied with the APA's requirement that [its] decision[s] be neither arbitrary nor capricious." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014).

*Finally*, good cause supports directing Defendants to produce documents in response to the narrowly-tailored discovery within 14 days of this Court's order. *Semitool, Inc. v. Tokyo Elecs. Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Every factor favors shortening the deadline for production. *See generally Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2011 WL 1938154, at *1 (N.D. Cal. May 18, 2011); *NTPSA I v. Noem*, No. 3:25-cv-1766, Dkts. 129 & 135 (N.D. Cal. May 2 & 9, 2025) (ordering expedited extra-record discovery). Plaintiffs have moved at the first opportunity and must act with urgency. Defendants have both appealed and moved for a stay of the APA Section 705 interim relief ordered by this Court, which may require Plaintiffs to immediately pursue summary judgment under APA Section 706 or the Due Process Clause. Even if Defendants' stay request fails (and it should), Plaintiffs still face an imminent summary judgment deadline. In contrast, Defendants cannot show burden. The discovery encompasses a discrete universe of documents for a defined set of custodians and also is winnowed down by search terms. Any purported burden cannot outweigh the liberty interests and safety of 60,000 people who have resided legally in this country for years or decades.

### B.   Deliberative Process Privilege Should Be Overruled.

---

[1] Evidence of departures from past practice also reflect bad faith/pretext warranting discovery. *Saget v. Trump*, 375 F. Supp. 3d 280, 344 (E.D.N.Y. 2019).

1  Defendants' DPP objections should be overruled as inapplicable, unsubstantiated, and/or
2  outweighed in light of Plaintiffs' need.

3  *First*, this is not the type of dispute where the DPP can properly be raised because the entire
4  nature of the lawsuit concerns (a) government misconduct and (b) the intent of government actors.
5  *See, e.g.*, *Convertino v. DOJ*, 674 F. Supp. 2d 97, 102 (D.D.C. 2009); *In re Subpoena Duces Tecum*
6  *Served on OCC*, 145 F.3d 1422, 1424 (D.C. Cir. 1998).

7  *Second*, DPP is a qualified privilege, and Plaintiffs have made a compelling showing for
8  overruling it. "A litigant may obtain deliberative materials if his or her need for the materials and the
9  need for accurate fact-finding override the government's interest in non-disclosure." *FTC v. Warner*
10 *Comm'n, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam). "Among the factors to be considered
11 in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence;
12 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and
13 independent discussion regarding contemplated policies and decisions." *Id.* In a review of the
14 applicability of DPP in the context of a different challenge to Defendants' TPS decisionmaking, the
15 district court held that the *Warner* factors weighed "heavily in support of Plaintiffs "[g]iven the
16 discriminatory statements, discriminatory history, anomalous process, and lack of justification
17 associated with the TPS designations" and the seriousness of "[t]he issues at stake." *NTPSA I v. Noem*,
18 No. 3:25-cv-1766, Dkt. 184 (N.D. Cal. June 6, 2025) (rejecting Defendants' "arguments in support of
19 nondisclosure" as "particularly weak"); *id.* at Dkt. 195 (affirming Magistrate order and rejecting
20 "government's showing of chilling effect" as "boilerplate" and "not substantiated"); *see also Ramos*
21 *v. Nielsen*, No. 18-cv-01554-EMC, Dkts. 63, 79, 84 (N.D. Cal.) (overruling the qualified DPP in all
22 instances in context of legal challenge to TPS decisionmaking). Here also the balance of factors weighs
23 strongly in favor of the Plaintiffs. Plaintiffs' claims concern government misconduct, pretext, and
24 racial animus, making the documents at issue of critical relevance, and leaving Plaintiffs with no
25 choice but to seek them from Defendants. Especially in a setting where, like here, the Court already
26 has found evidence of "preordained" decisionmaking inconsistent with the agency's statutory
27 obligations, Dkt. 73 at 21, these factors warrant overruling DPP. *Thomas v. Cate*, 715 F. Supp. 2d
28 1012, 1020 (E.D. Cal. 2010). Both parties, and the public, also have an interest in getting to the truth

of whether the Secretary engaged in illegal conduct.

*Finally*, the Court should overrule the DPP assertions as unsubstantiated. Documents are DPP only if they are predecisional and deliberative. *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021). Defendants' assertion that the USCIS Decision Memoranda are DPP is contrary to law; the USCIS Decision Memos reflect UCSIS's final decision and cannot properly be considered DPP. *Compare, e.g.*, Dkt. 78-2 (USCIS Decision Memo withheld as DPP recommending, and affirming, the Secretary's decision to "[t]erminate Nicaragua's designation") *with NTPSA I v. Noem*, No. 3:25-cv-1766, Dkt. 199-3 (example of USCIS Decision Memo recommending termination of TPS for Venezuela). Moreover, Defendants have supplied "no declaration, and hence no evidence, that any of the documents reviewed is typically kept confidential or that disclosure of such is likely to inhibit frank discussions and debate." *See Ramos*, 2018 WL 5264529, at *2 n.4; *L.H. v. Schwarzenegger*, No. CIV S-06-2042 LKK GHH, 2008 WL 2073958, at *7 (E.D. Cal. May 14, 2008) (finding DPP waived absent declarations).

Therefore, Defendants should be ordered to produce within two days all documents, or portions of documents, currently withheld or redacted solely based on DPP, and the Court should specifically find that Plaintiffs' compelling need for discovery outweighs the DPP.

### III. DEFENDANTS' POSITION

This Court should deny Plaintiffs' premature and overbroad demands for extra-record discovery where Defendants have sought appeal of the antecedent jurisdictional question of whether this Court may review the three determinations at issue in this case, Defendants have filed the record in this record review case, Plaintiffs have failed to establish bad faith or improper behavior, and Plaintiffs seek privileged information, which the Ninth Circuit has held to be outside of the administrative record.

First, in its order postponing the three Terminations of TPS, the court made jurisdictional findings that are now on appeal to the Ninth Circuit. *Noem v. Nat. TPS Alliance*, No. 25-4901 (9th Cir.). The Ninth Circuit will review whether 8 U.S.C. § 1254a(b)(5)(A) strips the court of jurisdiction to review these terminations. The case has been placed on an accelerated schedule, a hearing took place today, and a decision will issue soon. This decision will affect how and whether this case will

move forward. "Permitting discovery prior to assessing viability of plaintiffs' claims and directly addressing the appropriate standard of review and the implications of that standard would be premature." *California v. U.S. Dep't of Homeland Sec.*, 612 F. Supp. 3d 875, 899 (N.D. Cal. 2020); *see also In re United States*, 583 U.S. 29, 32 (2017) (remanding and holding that the District Court erred in ordering the Government to "complete the administrative record" by serving additional discovery prior to resolving the Government's threshold jurisdictional arguments because if accepted, those arguments "likely would eliminate the need for the District Court to examine a complete administrative record").

Second, the Supreme Court has emphasized that judicial review of agency action should be based on the record before the agency at the time of the decision, barring exceptional circumstances. *Dep't of Com.*, 588 U.S. at 780 ("[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record.") (citations omitted); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). "That principle reflects the recognition that further judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government and should normally be avoided." *Id*. (citation omitted). Extra-record discovery is the exception, not the rule, and should only be permitted where there is a strong showing of bad faith or improper behavior. *Id*. at 2573-74 (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). No such showing has been made here.

These rules apply equally to cases involving constitutional claims. *See* 5 U.S.C. § 706(2)(B); *Chiayu Chang v. United States Citizenship & Immigration Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) (collecting cases). That a party "premises the challenges to agency action on constitutional grounds does not take them out of the purview of the APA" as "the APA contemplates constitutional challenges to agency action but provides that the court shall review the administrative record in considering such challenges." Here, Plaintiffs' APA claims allege the Secretary's determinations were "pretextual." But the only support for this contention is their claim that the records do not adequately support the Secretary's determinations, which is not an assertion of pretext (such as alleged in *Dep't of Com.*, 588 U.S. at 783) but rather a standard arbitrary and capricious argument not meriting extra-

record discovery. Even where plaintiffs have asserted constitutional claims, "wide-ranging discovery is not blindly authorized at a stage in which such an administrative record is being reviewed." *See J.L. v. Cissna*, 2019 WL 2224851, at *1 (N.D. Cal. 2019).

Third, the "whole record" is ordinarily the "record the agency presents." *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (9th Cir. 2024). "[P]redecisional deliberative materials" are not properly included in the whole record.[2] *Id*. "[W]hen the agency has made formal findings, not every email, draft notice, discussion note, or meeting reminder that agency personnel circulate in the course of making the decision how to apply the statutory directive to the facts that they have found constitutes the whole record." *Ctr. for Biological Diversity*, 2022 WL 2805464, at *3.

To the extent this Court orders any extra-record discovery, Plaintiffs' demands are unreasonable here. Plaintiffs seek general communications regarding the periodic review of TPS for the three countries at issue *and* for other unrelated TPS designations where there has been a periodic review during the Secretary's tenure. They do not adequately define what is meant by "communications" and Defendants object to such an overbroad and generalized demand, which sweeps in communications unrelated to the decision-making process at issue here.[3] Additionally, discovery should be limited to that which is relevant to the decision-making process, and not post-decisional guidance to the field, TPS holders, the media, or other inquiries (e.g. Congressional correspondence). The court in *NTPSA I* did not authorize such general discovery for good reason—because post decisional and public relations communications are not relevant to the decision-making process in any way. Although discovery should be denied at this time, to the extent any extra-record discovery is ordered, Defendants request an opportunity to object to Plaintiffs' RFPs as any extra-record discovery should be narrowly tailored to the needs of this case.

Plaintiffs also seek an order categorically overruling DPP before discovery has even been authorized. An order short circuiting the normal rules governing record review cases should be denied,

---

[2] Defendants need not provide a privilege log or declaration with production of the administrative record. Should the Court consider overruling DPP wholesale, Defendants request that the Court first order Defendants to provide a privilege log and/or declaration to determine whether the Court needs further information and whether the parties need to litigate the DPP issue further.

[3] Any extra-record discovery should be limited to that which is reasonably necessary to supplement the administrative records for the three decisions at issue. Discovery into records not produced in the case, specifically terminations of TPS other than Honduras, Nicaragua, and Nepal, is irrelevant.

1  especially as the Ninth Circuit will soon rule on the pending appeal and particularly in light of the
2  potential prejudice posed to Defendants if privileged materials are disclosed only to find out they
3  should not have been. The parties agree that DPP is a qualified privilege under federal law. "Federal
4  courts, including the Ninth Circuit, have accepted the general premise that forced disclosure of
5  predecisional deliberative communications can have an adverse impact on government decision-
6  making." *Desert Survivors v. U.S. Dept. of the Interior,* 231 F. Supp. 3d 368, 383 (N.D. Cal. Feb. 6,
7  2017) (citing *Warner Commc'ns Inc.*, 742 F.2d at 1162)). To qualify for this privilege, the document
8  must be both pre-decisional and deliberative. Plaintiffs contest that the documents at issue are not pre-
9  decisional in nature. But Plaintiffs merely point to one redacted recommendation document within the
10 record as a basis for wholly dispensing with the privilege—even though such a pre-decisional
11 recommendation is obviously governed by the privilege. *Warner Comm'n, Inc.*, 742 F.2d at 1161 (Pre-
12 decisional documents are those that are "generated before the adoption of the agency's policy or
13 decision."). Plaintiffs also contend that DPP should be waived wholesale because the lawsuit concerns
14 the intent of government actors and government misconduct—despite making no such showing.

15       In assessing whether DPP applies, the court should also consider documents separately and
16 conduct a granular analysis. *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019) ("The district
17 court appears to have conducted a single [DPP] analysis covering all withheld documents, rather than
18 considering whether the analysis should apply differently to certain categories."). For this reason
19 alone, Plaintiffs' request to strike the privilege wholesale at this stage is inappropriate. As this Court
20 has previously found regarding similar documents, Defendants have correctly designated documents
21 that qualify for DPP. *NTPSA I*, ECF No. 184 ("After in camera review of the bellwether documents,
22 the Undersigned finds that the documents designated under [DPP] qualify for that privilege. In
23 addition, Defendants provided declarations showing that the documents in question are deliberative in
24 nature. (Dkt. Nos. 177-3, 1770-4))." Accordingly, DPP should not be wholly pierced and Defendants
25 should have an opportunity, under the standard timeline set forth by the Federal Rules of Civil
26 Procedure, to respond to Plaintiffs' discovery requests and privilege disputes. Then, and only then,
27 should Plaintiffs bring their claims regarding specific documents to the court for resolution.
28

Date:  August 19, 2025

Respectfully submitted,

NATIONAL DAY LABORER ORGANIZING NETWORK

 /s/ *Jessica Karp Bansal*
Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)

Emilou MacLean
Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND POLICY, UCLA SCHOOL OF LAW

Eva L. Bitrán
Diana Sánchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

Date August 19, 2025

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Acting Assistant Attorney General

WILLIAM H. WEILAND
Acting Assistant Director

ERIC SNYDERMAN
LAUREN BRYANT
CATHERINE ROSS
AMANDA B. SAYLOR
JEFFREY M. HARTMAN
Trial Attorneys

/s/ *Anna L. Dichter*
ANNA L. DICHTER
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation

9

JOINT DISCOVERY LETTER BRIEF – CASE NO. 3:25-CV-05687-TLT

General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-2405
Anna.L.Dichter@usdoj.gov

*Attorney for Defendants*

**SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other signatory has concurred in the filing of this document.

Date: August 19, 2025

NATIONAL DAY LABORER ORGANIZING NETWORK

*/s/ Jessica Karp Bansal*
Jessica Karp Bansal

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

NATIONAL DAY LABORER
ORGANIZING NETWORK

*/s/ Jessica Karp Bansal*
Jessica Karp Bansal