Brett Shumate
Assistant Attorney General
Civil Division
Yaakov Roth
Deputy Assistant Attorney General
William H. Weiland (MA Bar 661433)
Acting Assistant Director
Anna Dichter (NJ Bar 304442019)
Senior Litigation Counsel
Lauren Bryant (NY Bar 5321880)
Jeffrey Hartman (WA Bar 49810)
Daniel Cappelletti (DC Bar 1672879)
Shelby Wade (NY Bar 5696067)
Catherine Ross (DC Bar 9007404)
Amanda Saylor (FL Bar 1031480)
Eric Snyderman (VA Bar 99563)
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Attorneys for Defendants

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.,* | Case No.: 3:25-cv-5687 |
| Plaintiffs, | |
| v. | Judge: Hon. Trina L. Thompson<br>Date: September 16, 2025<br>Time: 11:00 a.m.<br>Place: Courtroom 9, 19th Floor<br>San Francisco U.S. Courthouse |
| KRISTI NOEM, *et al.,* | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

     I.      STATUTORY BACKGROUND ................................................................... 2

     II.     FACTUAL BACKGROUND ....................................................................... 3

          A.     TPS for Nepal ................................................................................. 3

          B.     TPS for Honduras ........................................................................... 4

          C.     TPS for Nicaragua .......................................................................... 5

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 8

     I.      THE COURT SHOULD DENY CLASS CERTIFICATION BECAUSE
             PLAINTIFFS HAVE NOT SATISFIED THE RIGOROUS REQUIREMENTS
             OF RULES 23(a) AND (b)(2) ....................................................................... 8

          A.     The Proposed Classes Lack Commonality Under Rule 23(a)(2) ........... 8

          B.     The Proposed Classes Lack Typicality Under Rule 23(a)(3) ............. 12

          C.     Plaintiffs Cannot Satisfy the Requirements of Rule 23(b)(2) .............. 13

     II.     THE COURT SHOULD NOT CERTIFY A NATIONWIDE CLASS ........................... 17

CONCLUSION .................................................................................................................. 18

CERTIFICATE OF SERVICE ......................................................................................... 20

DEFS.' OPPOSITION TO PLS.' MOTION TO CERTIFY CLASS
3:35-CV-5687

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>CASES</u>

3

*Alcantar v. Hobart Service*,
  800 F.3d 1047 (9th Cir. 2015) ............................................................. 6

4

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2nd Cir. 2020).............................................................. 14

5

6

*Biden v. Texas*,
  597 U.S. 785 (2022)........................................................................... 15

7

*Bova v. Cox Commc'ns, Inc.*,
  No. 7:01CV00090, 2001 WL 1654708 (W.D. Va. Dec. 12, 2001) ............ 18

8

9

*Braidwood Mgmt., Inc. v. EEOC*,
  70 F.4th 914 (5th Cir. 2023) ............................................................. 11

10

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010)............................................................... 13

11

12

*Bruesewitz v. Wyeth LLC*,
  131 S. Ct. 1068 (2011) ..................................................................... 17

13

*Califano v. Yamasaki*,
  422 U.S. 682 (1979)................................................................ 6, 10, 17

14

15

*California v. Grace Brethren Church*,
  457 U.S. 383 (1982)........................................................................... 15

16

*California v. Grace Brethren Church*,
  457 U.S. 393 (1982)........................................................................... 16

17

18

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)............................................................................ 6

19

*Direct Mktg. Ass'n v. Borhl*,
  575 U.S. 1 (2015)............................................................................. 16

20

21

*Galvez v. Jaddou*,
  52 F.4th 821 (9th Cir. 2022) .............................................................. 15

22

*Garcia v. Wal-Mart Stores, Inc.*,
  No. CV 16-01645, 2018 WL 4959824 (C.D. Cal. Sept. 28, 2018)............. 1

23

*Garland v. Aleman Gonzalez*,
  596 U.S. 543 (2022) ............................................................... 14, 15, 16

24

ii

25

DEFS.' OPPOSITION TO PLS.' MOTION TO CERTIFY CLASS
3:35-CV-5687

*Gen. Tel. Co. v. Falcon*,
  457 U.S. 147 (1982) .................................................................................................... 6, 7, 8

*Greater Chautauqua Federal Credit Union v. Quattrone*,
  No. 22 Civ., 2753 (MKV), 2025 WL 869729 (S.D.N.Y. Mar. 20, 2025) ................................ 13, 14, 17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1996) .................................................................................................. 8

*Hanon v. Dataproducts*,
  976 F.2d 497 (9th Cir. 1992) .................................................................................................. 12

*Hovsepian v. Apple, Inc.*,
  No. 08-5788, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) .................................................. 10

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) .................................................................................................. 9

*In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*,
  289 F.R.D. 526 (N.D. Cal. 2012) .................................................................................................. 10

*In re Google AdWords Litigation*,
  No. 5:08-cv-3369-EJD, 2012 WL 28068 (N.D. Cal. Jan. 5, 2012) .......................................... 9

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018) .................................................................................................. 8, 11, 14

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .................................................................................................. 11

*N.H. Indonesian Cmty Support v. Trump*,
  765 F. Supp. 3d 102 (D. N.H., 2025) .................................................................................................. 17

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010) .................................................................................................. 16

*Nguyen Da Yen v. Kissinger*,
  70 F.R.D. 656 (N.D. Cal. 1976) .................................................................................................. 8

*Olean Wholesale Grocery Coop. Inc. v. Bumble Bee Foods*,
  31 F.4th 651 (9th Cir. 2022) .................................................................................................. 10

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) .................................................................................................. 16

*Sanchez v. Mayorkas*,
  593 U.S. 409 (2021) .................................................................................................. 2

iii

DEFS.' OPPOSITION TO PLS.' MOTION TO CERTIFY CLASS
3:35-CV-5687

*Schwartz v. Harp*,
   108 F.R.D. 279 (C.D. Cal. 1985) ............................................................................ 12, 13

*Stafford v. Bojangles' Rests.*,
   123 F.4th 671 (4th Cir. 2024) ....................................................................................... 11

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ......................................................................................... 9

*TransUnion LLC v. Ramirez*,
   594 U.S. 417 (2021) ...................................................................................................... 14

*Trump v. CASA, Inc.*,
   145 S. Ct. 2540 (2025) ................................................................................................... 17

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
   508 U.S. 439 (1993) ...................................................................................................... 15

*UNIFYSCC v. Cody*,
   2025 WL 1474757 (N.D. Cal. May 21, 2025) .............................................................. 10

*United States v. Carroll*,
   105 F.3d 740 (1st Cir. 1997) ........................................................................................ 15

*United States v. Mendoza*,
   464 U.S. 154 (1984) ........................................................................................................ 6

*United States v. Texas*,
   599 U.S. 670 (2023) ...................................................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................................ passim

*Ygrene Energy Fund*,
   No. 20-16608, 2021 WL 4690971 (9th Cir. Oct. 7, 2021) ........................................... 11

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) ........................................................................................ 8

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .................................................................................... 1, 7

## **STATUTES**

1 U.S.C. § 112 ....................................................................................................................... 15

1 U.S.C. § 204(a) .................................................................................................................. 15

iv

DEFS.' OPPOSITION TO PLS.' MOTION TO CERTIFY CLASS
3:35-CV-5687

5 U.S.C. § 706 ............................................................................................................ 17

5 U.S.C. § 706(2) ........................................................................................................ 16

6 U.S.C. § 557 .............................................................................................................. 2

8 U.S.C. § 1101(a)(15)(U) .......................................................................................... 10

8 U.S.C. § 1103 ............................................................................................................. 2

8 U.S.C. § 1184 ........................................................................................................... 10

8 U.S.C. § 1252(f)(1) ...................................................................................... 14, 15, 16

8 U.S.C. § 1254a(a) ...................................................................................................... 2

8 U.S.C. § 1254a(b) ...................................................................................................... 2

8 U.S.C. § 1254a(b)(2) .............................................................................................. 2, 3

8 U.S.C. § 1254a(b)(3)(A) ........................................................................................... 3

8 U.S.C. § 1254a(b)(3)(B) ........................................................................................... 3

8 U.S.C. § 1254a(b)(3)(C) ........................................................................................ 2, 3

8 U.S.C. § 1254a(b)(5)(A) ........................................................................................... 3

## RULES

Fed. R. Civ. 23(a) .................................................................................... 7, 12, 13, 18

Fed. R. Civ. 23(a)(2) ............................................................................................. 9, 12

Fed. R. Civ. 23(a)(3) ........................................................................................... 12, 13

Fed. R. Civ. 23(b)(1) ................................................................................................... 7

Fed. R. Civ. 23(b)(2) ........................................................................................ 7, passim

Fed. R. Civ. 23(b)(3) ................................................................................................... 7

Fed. R. Civ. 23(c)(5) ................................................................................................... 1

## OTHER AUTHORITIES

*Designation of Honduras Under [TPS]*, 64 Fed. Reg. 524 ........................................ 4

*Designation of Nicaragua Under [TPS]*, 64 Fed. Reg. 526 ...................................... 5

DEFS.' OPPOSITION TO PLS.' MOTION TO CERTIFY CLASS
3:35-CV-5687

*Designation of Nepal for [TPS]*, 80 Fed. Reg. 36,346 ................................................................. 3

*Extension of the Designation of Nepal [TPS]*, 81 Fed. Reg. 74,470 ........................................ 3

*Termination of the Designation of Nicaragua for [TPS],* 82 Fed. Reg. 59,636 ....................... 5

*Termination of the Designation of Honduras [TPS],* 83 Fed. Reg. 26,074 ............................... 4

*Extension of the [TPS] Designation for Nicaragua*, 88 Fed. Reg. 40,294 ................................ 5

*Extension of the Designation for Honduras [TPS]*, 88 Fed. Reg. 40,304 ................................ 4

*Extension of the Designation of Nepal [TPS]*, 88 Fed. Reg. 40,317 ......................................... 3

*Nepal Termination*, 90 Fed. Reg. 21,152 ..................................................................................... 4

*Nepal Termination*, 90 Fed. Reg. 24,152 ..................................................................................... 3

*Nicaragua Termination*, 90 Fed. Reg. 30,086 .............................................................................. 5

*Nicaragua Termination*, 90 Fed. Reg. 30,087 .......................................................................... 5, 6

*Nicaragua Termination*, 90 Fed. Reg. 30,088 .............................................................................. 6

*Honduras Termination*, 90 Fed. Reg. 30,090 .............................................................................. 4

*Honduras Termination*, 90 Fed. Reg. 30,091 ........................................................................... 4, 5

*Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97 (2009)..................... 8

The Immigration Act of 1990 Pub. L. No. 101-649 ....................................................................... 2

Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) Pub. L. No. 104-208........... 15

vi

1

## INTRODUCTION

Defendants, Kristi Noem, Secretary of Homeland Security ("DHS"), et al., hereby oppose Plaintiffs' (National TPS Alliance ("NTPSA"), et al.) Motion for Class Certification (the "Motion") (ECF No. 89). Plaintiffs move this Court to certify not one class, but three separate classes, each consisting of individuals of varied backgrounds, some of whom lack any injury whatsoever from the TPS terminations at issue. In doing so, Plaintiffs all but concede that this case presents issues, when taken as a whole, that preclude class certification. While "a class may be divided into subclasses that are each treated as a class" under Rule 23, "[w]hen appropriate," Fed. R. Civ. P. 23(c)(5), Plaintiffs have not done that here. *Compare* Mot. at 3 (moving the Court to certify three distinct classes) *with, e.g., Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1185 (9th Cir. 2001) (seeking to certify two subclasses within a proposed class); *Garcia v. Wal-Mart Stores, Inc.*, No. CV 16-01645, 2018 WL 4959824, at *1 (C.D. Cal. Sept. 28, 2018) (seeking to certify four subclasses within a proposed class). Plaintiffs seek to certify the following three distinct classes of Temporary Protected Status ("TPS") holders from Honduras, Nepal, and Nicaragua:

- **Honduras TPS Class:** All persons who have been granted TPS pursuant to the TPS designation of Honduras and who have not adjusted status to lawful permanent residence;

- **Nepal TPS Class:** All persons who have been granted TPS pursuant to the TPS designation of Nepal and who have not adjusted status to lawful permanent residence;

- **Nicaragua TPS Class:** All persons who have been granted TPS pursuant to the TPS designation of Nicaragua and who have not adjusted status to lawful permanent residence.

Mot. at 3. Notwithstanding Plaintiffs' impermissible attempt to certify three separate classes, their classes are overbroad and Plaintiffs' fail to establish compliance with Rule 23(a) and (b).

DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
3:35-CV-5687

# BACKGROUND

## I.    STATUTORY BACKGROUND

The Immigration Act of 1990 established a program for temporary, discretionary shelter in the United States for aliens from countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent the aliens' safe return (or, for environmental disasters, temporarily render the country unable to adequately handle its nationals' return. Pub. L. No. 101-649, 104 Stat. 4978. The statute authorizes the Secretary, "after consultation with appropriate agencies of the Government," to designate countries for TPS if she finds:

> (A) … that there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety;
> (B) … that—
>> (i) there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state resulting in a substantial, but temporary, disruption of living conditions in the area affected,
>> (ii) the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state, and
>> (iii) the foreign state officially has requested designation under this subparagraph; or
> (C) … there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States.

8 U.S.C. § 1254a(b).[1]

When the Secretary designates a country for TPS, eligible aliens who are granted TPS may not be removed from the United States and are authorized to work for the duration of the country's TPS designation, so long as they remain in valid temporary protected status. *Id.* § 1254a(a), (c); *see Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). Initial designations, and any extensions thereof, may not exceed eighteen months. 8 U.S.C. § 1254a(b)(2), (3)(C). The Secretary must consult with appropriate agencies

---

[1] Congress transferred these powers from the Attorney General to the Secretary of Homeland Security. 8 U.S.C. § 1103; 6 U.S.C. § 557.

DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
3:35-CV-5687

and review each designation before it ends to determine whether the conditions for the country's designation continue to be met. *Id.* § 1254a(b)(3)(A). If she finds that the foreign state "no longer continues to meet the conditions for designation," she "shall terminate the designation" by publishing notice in the Federal Register of the determination and the termination's basis. *Id.* § 1254a(b)(3)(B). If she "does not determine" that the foreign state "no longer meets the conditions for designation," then the TPS designation "is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id.* § 1254a(b)(3)(C). Finally, the statute makes TPS determinations unreviewable by providing that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id.* § 1254a(b)(5)(A).

## II.    FACTUAL BACKGROUND

### A.  TPS for Nepal

On June 24, 2015, the Secretary designated Nepal for TPS for a period of 18 months due to "substantial, but temporary, disruption of living conditions" resulting from an earthquake. *Designation of Nepal for [TPS]*, 80 Fed. Reg. 36,346 (June 24, 2015). TPS was extended for an additional 18 months on October 26, 2016. *Extension of the Designation of Nepal for [TPS]*, 81 Fed. Reg. 74,470 (Oct. 26, 2016). In 2018, DHS announced the termination of TPS for Nepal; however, litigation resulted in the continued extension of TPS documentation for TPS recipients from Nepal for several years. *See Nepal Termination*, 90 Fed. Reg. at 24,152. In 2023, DHS reconsidered the 2018 decision to terminate TPS and again extended TPS for recipients from Nepal, "beginning on December 25, 2023, and ending on June 24, 2025." *Reconsideration and Rescission of Termination of the Designation of Nepal for [TPS]; Extension of the [TPS] Designation for Nepal*, 88 Fed. Reg. 40,317, 40,317 (June 21, 2023).

3

DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
3:35-CV-5687

On June 6, 2025, DHS published a notice in the Federal Register that TPS for Nepal would be terminated effective on August 5, 2025. *Nepal Termination*, 90 Fed. Reg. at 21,152. As the FRN explained, Secretary Noem considered whether there continues to be a substantial, but temporary, disruption of living conditions in Nepal and whether Nepal can adequately handle the return of Nepalese nationals. *Id.* The Secretary highlighted notable improvements to disaster preparedness and response, including the construction of disaster-resilient housing, infrastructure, and community systems. *Id.* at 21,512-13. The Secretary considered Nepal's significant reconstruction efforts, including statistics demonstrating that 88.36% of houses destroyed by the earthquake and 81.43% of damaged health facilities had been rebuilt. *Id.* As a result, the Secretary determined that "there is no longer a disruption of living conditions and Nepal is able to handle adequately the return of its nationals." *Id.* at 21,512. Finally, the Secretary considered Nepal's improving fiscal conditions. *Id.* at 21,513.

### B.    TPS for Honduras

In 1999, Attorney General Janet Reno designated Honduras for TPS for 18 months due to "environmental disaster and substantial disruption of living conditions caused by Hurricane Mitch." *Designation of Honduras Under [TPS]*, 64 Fed. Reg. 524 (Jan. 5, 1999). TPS was repeatedly extended until 2018, when the Secretary terminated it. *Termination of the Designation of Honduras for [TPS]*, 83 Fed. Reg. 26,074 (June 5, 2018). After the 2018 termination announcement, litigation resulted in the continued extension of TPS documentation for Honduran TPS recipients for several years. *See Honduras Termination*, 90 Fed. Reg. at 30,090. In 2023, DHS reconsidered the 2018 decision to terminate TPS and extended TPS for Honduras through July 5, 2025. *Reconsideration and Rescission of Termination of the Designation of Honduras [TPS]; Extension of the [TPS] Designation for Honduras*, 88 Fed. Reg. at 40,304 (June 21, 2023). On July 8, 2025, DHS published notice in the Federal Register that TPS for Honduras would be terminated effective September 8, 2025. *Honduras Termination*, 90 Fed. Reg. at

4

DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
3:35-CV-5687

30,091. As explained in the FRN, Secretary Noem "determined the conditions supporting Honduras' January 5, 1999, designation for TPS on the basis of environmental disaster due to Hurricane Mitch are no longer met." *Id.* The Secretary noted improvements to access to basic water sources, sanitation, and electricity as well as strengthened disaster management capacity. *Id.* Further, significant hurricane recovery has transformed Honduras into a popular destination for tourists and real estate investors. *Id.* The Secretary observed that assistance from the World Bank has improved emergency response and post-disaster reconstruction efforts and that new projects are transforming Honduras's infrastructure and creating new jobs. *Id.*

### C.    TPS for Nicaragua

Also in 1999, Attorney General Reno designated Nicaragua for TPS for 18 months after an environmental disaster substantially disrupted living conditions, rendering Nicaragua temporarily unable to handle adequately the return of its nationals. *Designation of Nicaragua Under [TPS]*, 64 Fed. Reg. 526 (Jan. 5, 1999). TPS was extended until 2017, when the Acting Secretary terminated it. *See Termination of the Designation of Nicaragua for [TPS]*, 82 Fed. Reg. 59,636 (Dec. 15, 2017). After the termination announcement, litigation resulted in the continued extension of TPS documentation for TPS recipients from Nicaragua for several years. *See Nicaragua Termination*, 90 Fed. Reg. at 30,087. In 2023, DHS reconsidered the 2018 decision to terminate TPS resulting in another extension of TPS for recipients from Nicaragua through July 8, 2025. *Reconsideration and Rescission of Termination of the Designation of Nicaragua for [TPS]; Extension of the [TPS] Designation for Nicaragua*, 88 Fed. Reg. at 40,294 (Jun. 21, 2023). On July 8, 2025, DHS published notice in the Federal Register that TPS for Nicaragua would be terminated effective on September 8, 2025. *Nicaragua Termination*, 90 Fed. Reg. at 30,086. As explained in the FRN, Secretary Noem, after consulting with the appropriate U.S. government agencies and reviewing country conditions information, determined that "the conditions supporting Nicaragua's

5

DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
3:35-CV-5687

January 5, 1999, designation for TPS on the basis of environmental disaster due to Hurricane Mitch are no longer met." *Id.* at 30,088. Secretary Noem found Nicaragua has made significant progress in recovering from the hurricane's destruction, including improvements to infrastructure, road and bridge construction, schools, and healthcare access. *Id.* Secretary Noem noted growth in Nicaragua's tourism, ecotourism, agriculture, and renewable energy industries and advances in farming and agriculture technology. *Id.* The FRN identifies improvements in housing and food security, as well as restoration of the healthcare sector. *Id.* Finally, Secretary Noem observed that Nicaragua's macroeconomic structure has stabilized, with a record high foreign reserve, sustainable debt load, and well-capitalized banking structure. *Id.*

## LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 422 U.S. 682, 700-01 (1979)). To fall within the exception, Plaintiffs "must affirmatively demonstrate [their] compliance" with Rule 23 of the Federal Rules of Civil Procedure by a preponderance of the evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The Supreme Court has acknowledged the potentially detrimental effects that accompany the certification of a nationwide class. *See Califano*, 442 U.S. at 702 ("nationwide class actions may have a detrimental effect by foreclosing adjudication by a number of different courts and judges, and of increasing, in certain cases, the pressures on this Court's docket); *see also United States v. Mendoza*, 464 U.S. 154, 160 (1984) ("Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari"). Accordingly, the Court's class certification analysis must be "rigorous." *See Dukes*, at 350-51; *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Alcantar v. Hobart Service*, 800 F.3d 1047, 1053

6

DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
3:35-CV-5687

(9th Cir. 2015). When asked to certify a nationwide class, the Court must "take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." *Califano*, at 702-03.

A party seeking certification of a proposed class must demonstrate the existence of the four required elements set forth in Rule 23(a) of the Federal Rules of Civil Procedure. Specifically, the moving party must show that:

> (1) the class is so numerous that joinder of all members is impracticable ("numerosity");
> (2) there are questions of law or fact common to the class ("commonality");
> (3) the claims or defenses of the named plaintiffs are typical of claims or defenses of the class ("typicality"); and
> (4) the named plaintiffs will fairly and adequately protect the interests of the class ("adequacy of representation").

*See* Fed. R. Civ. P. 23(a); *see also Dukes*, at 345.

In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under Rule 23(b)(1), (2), or (3). *See Dukes*, at 345; *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiffs seek certification under Rule 23(b)(2), Mot. at 12, which permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds that generally apply to the class." Fed. R. Civ. P. 23(b)(2). The "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, at 360 (citation omitted).

Even if the Court finds that the action conforms to Rule 23, the Court retains "broad discretion" to determine whether it should certify the proposed class. *Zinser*, 253 F.3d at 1186. To that end, the Court may "probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co.*, 457 U.S. at 160. This is because "the class determination generally involves considerations that are enmeshed

7

in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (internal quotation omitted). Nonetheless, the ultimate decision regarding class certification must necessarily "involve[] a significant element of discretion." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

**ARGUMENT**

I.    **THE COURT SHOULD DENY CLASS CERTIFICATION BECAUSE PLAINTIFFS HAVE NOT SATISFIED THE RIGOROUS REQUIREMENTS OF RULES 23(a) AND (b)(2)**

A.    **The Proposed Classes Lack Commonality Under Rule 23(a)(2)**

The Supreme Court has cautioned that the commonality language in Rule 23 "is easy to misread, since any competently crafted class complaint literally raises common questions") (internal quotations omitted). *Id.* In this regard, "what matters … is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–32 (2009)). Thus, although "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to establish commonality]," *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1996), commonality cannot be established where there is variation requiring individual adjudications of each class member's claims. *Nguyen Da Yen v. Kissinger*, 70 F.R.D. 656, 663-64 (N.D. Cal. 1976). Indeed, "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (internal quotations omitted).

The commonality requirement is especially rigorous when applied to a class that seeks certification under Rule 23(b)(2). *See, e.g., Jennings v. Rodriguez*, 583 U.S. 281, 313 (2018) (quoting *Dukes*, 564 U.S. at 360) (remanding immigration detention case to the Ninth Circuit to determine whether plaintiffs were entitled to class-wide relief and noting that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class" with respect to their constitutional due process claims). Plaintiffs seeking class certification under Rule 23(b)(2) must show that the

8

DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
3:35-CV-5687

challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360. Therefore, Plaintiffs have the burden of demonstrating that the factual differences among the proposed class members are unlikely to affect the individual's entitlement to relief. *See In re Google AdWords Litigation*, No. 5:08-cv-3369-EJD, 2012 WL 28068, *15-16 (N.D. Cal. Jan. 5, 2012) ("The question of which advertisers among the hundreds of thousands of proposed class members are even entitled to restitution would require individual inquiries"). If the factual differences have the likelihood of changing the outcome of the legal issue, then class certification is not appropriate.

Plaintiffs assert that the proposed class members in each class raise common legal and factual issues. Mot. at 15. Specifically, Plaintiffs contend that the terminations of TPS for Honduras, Nepal, and Nicaragua were unlawful because: (1) they were the product of a preordained decision and were not based on an objective review of the countries' conditions; (2) Defendants provided only 60-days' notice before their effective date; and (3) they were motivated by racial and national-origin-based animus. *Id*. Plaintiffs define each of the proposed classes as "All persons who have been granted TPS pursuant to the TPS designation of [the applicable country] and who have not been granted lawful permanent residence." Mot. at 3.

This definition is problematic because it is so overbroad that it encompasses individuals who may not currently qualify for TPS benefits or who lack the requisite injuries redressable by a singular injunction or declaratory relief as required by Rule 23(a)(2)—it is unclear how Plaintiffs can satisfy commonality within the class when it includes uninjured members.[2] Defining the putative classes as "[a]ll persons who

---

[2] Defendants acknowledge that the Ninth Circuit has certified classes that include individuals that lack Article III standing. *See Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1136-39 (9th Cir. 2016). The circuits are split on this issue, *see In re Asacol Antitrust Litig*., 907 F.3d 42, 46-47 (1st Cir. 2018), and the Supreme Court granted certiorari to address it but dismissed the case as improvidently granted, No. 24-304 (June 5, 2025). Defendants aver that the Ninth Circuit is incorrect and preserve further argument on

9

DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
3:35-CV-5687

have been granted TPS pursuant to the TPS designation of [that country]" wholly fails to account for individuals who may have once held TPS benefits but no longer do—for example, those who failed to timely re-register or those who no longer reside in the United States. It also fails to consider individuals who have not sustained an injury redressable by the relief Plaintiffs seek on behalf of the putative class, such as those who once held TPS status but have since received an alternative form of immigration relief (other than lawful permanent resident status). This may include asylum beneficiaries, U or T Visa holders, Parole in Place beneficiaries, Diversity Visa holders, and EB Visa holders, among other forms of relief. Others may have readily available pathways to adjust status through a U.S. citizen, Lawful Permanent Resident relative, Special Immigrant Juvenile Status, or a Violence Against Women Act of 1994 (VAWA) self-petition. The additional language, "and who have not been granted lawful permanent residence" does little to narrow the scope of the overbroad definition of the proposed class because not all forms of immigration relief granting protections against removal and employment authorization (akin to those afforded by TPS) automatically result in a grant of lawful permanent residence. As noted above, while awaiting the adjudications of a U-visa, aliens who have demonstrated the bona fides of their claim are allowed to remain and work within the United States. 8 U.S.C. § 1184(p)(6) ("The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 101(a)(15)(U)"). Plaintiffs have thus failed to propose any workable class definition, and the Court should deny the motion. *See UNIFYSCC*, 2025 WL 1474757, at *5 (finding class certification inappropriate for claims centering on individualized and fact-intensive inquired that posted a standing issue); *see also Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (class was not ascertainable because it included members who had "no injury and no standing to sue"); *In*

---

this issue. *See also Olean Wholesale Grocery Coop. Inc. v. Bumble Bee Foods*, 31 F.4th 651, 668, 692 (9th Cir. 2022) (en banc); *id*. at 692 (Lee, J., dissenting).

DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
3:35-CV-5687

1    *re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*, 289 F.R.D. 526, 545 (N.D. Cal. 2012) (class

2    definition including employees who were not injured and thus had "no standing to sue" was overbroad).

3    Such overbreadth, sweeping in uninjured class members alone, warrants denial of the Motion.

4        The proposed classes are also "too broad to certify because individualized questions . . . exist to

5    defeat commonality." *Wooley v. Ygrene Energy Fund*, No. 20-16608, 2021 WL 4690971, at *1 (9th Cir.

6    Oct. 7, 2021); *see also Stafford v. Bojangles' Rests.*, 123 F.4th 671, 681 (4th Cir. 2024) (holding class was

7    "too broad and ill-defined to reach the thresholds of class certification") (quoting *Braidwood Mgmt., Inc.*

8    *v. EEOC*, 70 F.4th 914, 933 (5th Cir. 2023)). The question whether each class member has suffered a

9    concrete injury requires a fact-specific, individualized inquiry. *See Kissinger*, at 663-64 ("[C]ommonality

10   cannot be established where there is wide factual variation requiring individual adjudications of each class

11   member's claims").

12       Furthermore, to the extent the common allegation is that class members have all suffered a

13   violation of the Due Process Clause, such claim also falls woefully short of the commonality requirement.

14   *Dukes*, at 350. The allegation is particularly deficient because "due process is flexible and calls for such

15   procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 321

16   (1976); *Jennings v. Rodriguez*, 583 U.S. at 314 (a class action may not be the proper vehicle to resolve

17   Due Process claims because of the flexibility inherent in a Due Process analysis). Because due process is

18   a flexible concept, the dissimilarities inherent to each individual would require the Court to delve into the

19   specific facts of each alien's case, rendering it impossible to dispose of the class-wide claims in an efficient

20   manner. *See Dukes*, 564 U.S. at 360 (class certification under 23(b)(2) requires a showing that the

21   challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members

22   or as to none of them"). Accordingly, the proposed classes do not meet the commonality requirement

23   under Rule 23(a)(2).

24

25
     DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
     3:35-CV-5687

### B.    The Proposed Classes Lack Typicality Under Rule 23(a)(3)

The proposed classes likewise fail to meet the typicality requirement for reasons similar to those that doom commonality. The commonality and typicality requirements of Rule 23(a) are interrelated and, in some instances, merge. *Dukes,* 564 U.S. at 350. "Both [requirements] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id*. To establish typicality, Plaintiffs must show "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). The typicality requirement is not met if the proposed class representatives are subject to unique defenses. *Id.* Because Plaintiffs' individual circumstances are too varied to satisfy the commonality requirement, Plaintiffs are similarly unable to satisfy Rule 23(a)(3). *See id.* (where "individualized assessments are necessary" the class fails on typicality under Rule 23(a)(3)).

Here, Plaintiffs have not met the typicality requirement. First, even the limited number of individual plaintiffs described in the Complaint allege different injuries that would arise from a loss of TPS. Compl. ¶¶ 15-21. Similarly, as discussed above, Plaintiffs of the putative classes differ to the extent they have or are eligible for other forms of immigration relief, such as asylum, or may have presently available avenues for permanent residency. For example, Plaintiff Maria Elena Hernandez, whom Plaintiffs seek to represent the proposed Nicaragua TPS Class, claims that she "will lose her job, her social security, [] health benefits, state identification and be at risk of deportation" if TPS for Nicaragua is terminated. Mot. at 10. The same cannot be said for all members of the putative class. Plaintiff Sandhya

12

1    Lama, whom Plaintiffs seek to represent the proposed Nepal TPS class, "would lose legal status and the

2    right to remain in the United States" if TPS is terminated. *Id.* Again, the same cannot be said for members

3    of the proposed class who have received other forms of immigration relief. Indeed, as noted above,

4    Plaintiff S.K., another Nepali TPS holder, will soon be eligible for permanent residency through marriage

5    to a U.S. citizen. Compl. ¶ 19. The same issues arise for the proposed Honduras TPS Class, represented

6    by Plaintiffs Teofilo Martinez, Denis Molina, and Jhony Silva. *Id.* at 10-11. Accordingly, as with

7    commonality, the question of whether each class member has suffered a concrete injury requires a fact-

8    specific, individualized inquiry which will necessarily reveal unique injuries or a lack of any cognizable

9    injury. As such, Plaintiffs have failed to satisfy the requirements of Rule 23(a)(3).

10               **C.    Plaintiffs Cannot Satisfy the Requirements of Rule 23(b)(2)**

11               For the same reasons that Plaintiffs cannot satisfy the requirements of Rule 23(a), the Court should

12   reject Plaintiffs' claim that Rule 23(b)(2) has been satisfied. *See* Mot. at 11-12. Rule 23(b)(2) provides

13   that a class action can be maintained if "the party opposing the class has acted or refused to act on grounds

14   that apply generally to the class so that final injunctive relief or corresponding declaratory relief is

15   appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the

16   indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such

17   that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."

18   *Dukes*, 564 U.S. at 360 (internal quotations and citation omitted). "It does not authorize class certification

19   when each individual class member would be entitled to a different injunction or declaratory judgment

20   against the defendant." *Id.* Stated differently, "if the proposed class includes members who are not at risk

21   of injury based on the enforcement of the [termination] then injunctive relief sought on behalf of the class

22   as a whole under Rule 23(b)(2) would be inappropriate." *Greater Chautauqua Federal Credit Union v.*

23   *Quattrone*, No. 22 Civ. 2753 (MKV), 2025 WL 869729, at *12 (S.D.N.Y. Mar. 20, 2025); *see also Brown*

24
                                                        13
25   DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
     3:35-CV-5687

1    *v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010) (denying Rule 23(b)(2) statewide class certification because

2    the proposed definition of the class includes members who are not at risk of injury by the defendants).

3    Therefore, the Court must take into consideration whether the relief sought "is proper for each and every

4    member of the group." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2nd Cir. 2020).

5          Class certification does not satisfy Rule 23(b)(2) here because Defendants have not acted on

6    grounds that apply generally to all three TPS terminations. Moreover, each individual class member would

7    be entitled to a different injunction or declaratory judgment against the Government, or none at all. As

8    discussed above, some putative class members may lack standing altogether. *TransUnion LLC*, 594 U.S.

9    at 417 ("To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other

10    things, that they suffered a concrete harm. No concrete harm, no standing."). To establish standing, a

11    plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or

12    imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be

13    redressed by judicial relief." *Id.* at 423. Here, the fact that certain class members lack a concrete injury

14    despite the termination of TPS necessarily runs afoul of the requirements of Rule 23(b)(2) as the remedy

15    Plaintiffs' seek would not provide relief to all class members. *See Greater Chautauqua*, 2025 WL 869729,

16    at *12 ("The need for these individualized inquiries and the fact that the relief sought would be difficult,

17    if not impossible, to apply on a classwide basis runs contrary to Rule 23(b)(2)"). Accordingly, Plaintiffs

18    have failed to meet the requirements of Rule 23(b)(2) for class certification.

19          In addition, each form of relief Plaintiffs seek under Rule 23(b)(2) is impermissible. Plaintiffs'

20    request for a classwide injunction or declaratory judgment is plainly barred by 8 U.S.C. § 1252(f)(1),

21    which "prohibits federal [district] courts from granting classwide injunctive relief against the operation

22    of" certain immigration statutes. *Jennings*, 583 U.S. at 313 (citation omitted); *see generally Garland v.*

23    *Aleman Gonzalez*, 596 U.S. 543 (2022). Section 1254a is one of those covered provisions. Illegal

24

25    DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
     3:35-CV-5687

14

Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), div. C, Pub. L. No. 104-208, §§ 306, 308, 110 Stat. 3009-546. Although Section 1254a appears in Part V of the U.S. Code, the U.S. Code is inconsistent with the INA, wherein the TPS provisions in Section 244 appear in Chapter 4. *Id.* When there is a conflict, the INA prevails. *See Galvez v. Jaddou*, 52 F.4th 821, 830-31 (9th Cir. 2022); *see also U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993) ("Though the United States Code is 'prima facie' evidence that a provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of laws,' [1 U.S.C.] § 112...."); *United States v. Carroll*, 105 F.3d 740, 744 (1st Cir. 1997). INA § 244 lies within chapter 4 of title II of the INA, as amended, so § 1252(f)(1) applies to it.

Regardless of how Plaintiffs frame the relief sought, an order that would have the effect of enjoining or restraining DHS's implementation of the TPS provisions in § 1254a, is jurisdictionally barred under § 1252(f)(1). *See Biden v. Texas*, 597 U.S. 785, 797 (2022) (§ 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or *to refrain from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions.") (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)) (emphasis added); *see* Black's Law Dictionary (12th ed. 2024) (An injunction is "[a] court order commanding or preventing an action"). To "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. *Aleman Gonzalez*, 596 U.S. at 549 (quoting 5 Oxford English Dictionary 756 (2d ed. 1989)).

Section 1252(f)(1) thus plainly bars classwide injunctive relief (which would impermissibly "enjoin" the operation of a covered provision) and classwide declaratory relief or relief under the APA (which would impermissibly "restrain" the covered provision's operation). *See California v. Grace Brethren Church*, 457 U.S. 383, 408 (1982) (holding that a similarly phrased provision barred declaratory

relief). An order to "set aside" the termination determinations "restrict[s] or stop[s] official action," *Direct Mktg. Ass'n v. Borhl*, 575 U.S. 1, 13 (2015), by prohibiting officials from relying on the agency's determinations—the practical equivalent of an injunction compelling Defendants to stop giving effect to the TPS terminations. *See United States v. Texas*, 599 U.S. 670, 691 (2023) (Gorsuch, J., concurring) (questioning the validity of the district court's finding that § 1252(f)(1) does not bar vacatur orders and that § 706(2) authorizes courts to issue them). Setting aside the Secretary's determinations is barred by § 1252(f)(1) because it would coerce and restrain the agency's operation of covered statutes. Thus, to the extent Plaintiffs ask this Court to "set aside" the terminations of TPS for Honduras, Nepal, and Nicaragua, and to postpone or stay the terminations from taking or being put into effect, this would necessarily constitute an order "restraining" federal officials and is therefore equally prohibited by 8 U.S.C. § 1252(f)(1). ECF No. 1 ¶¶ 166-170; *see Aleman Gonzelez*, 596 U.S. at 544.

Finally, it remains the government's view that § 1252(f)(1) also bars declaratory relief. *See Aleman Gonzalez*, 596 U.S. at 551 n.2; *cf. California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (Tax Injunction Act barred declaratory relief as well as injunctive relief); *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010). The government recognizes that the Ninth Circuit has held otherwise, *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010**)**, but preserves its argument that that decision is error.

Because § 1252(f)(1) bars the award of any classwide relief, the Court should deny class certification. To the extent the Court finds that some forms of relief are available on a classwide basis and others are not, the Court should make clear that it certifies a class only with respect to the forms of relief that it concludes are available.

In addition, the Court should not certify a class under Rule 23(b)(2) for the purpose of seeking vacatur of the TPS terminations under 5 U.S.C. § 706. Rule 23(b)(2) permits certification of a class to seek two specified forms of relief: "final injunctive relief or corresponding declaratory relief." By

16

DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
3:35-CV-5687

enumerating two forms of relief that parties can seek via Rule 23(b)(2) class, the rule excludes the possibility that parties may seek other forms of relief via Rule 23(b)(2) class. *See Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1076 (2011) ("*Expressio unius, exclusio alterius*"). And interpreting Rule 23(b)(2) to cover additional forms of relief would render the enumerated forms of relief in the provision—final injunctive relief and declaratory relief—"entirely superfluous," which would "violat[e] the settled rule that [courts] must, if possible, construe a statute to give every word some operative effect." *Cooper Indus., Inc. v. Aviall Servs. Inc.*, 543 U.D. 157, 167 (2004). The Court should thus, at minimum, decline to certify a Rule 23(b)(2) class to pursue APA relief.

## II.    THE COURT SHOULD NOT CERTIFY A NATIONWIDE CLASS

Even if the Court concludes that class certification is appropriate, it should not certify a nationwide class action. The Supreme Court has previously cautioned against the certification of nationwide class actions. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). And more recently, *CASA* recognized that Rule 23's predecessor, the equitable bill of peace, "involved a 'group [that] was small and cohesive,' and the suit did not 'resolve a question of legal interpretation for the entire realm.'" *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2555 (2025). Relatedly, several Justices cautioned against reflexively certifying nationwide class actions to provide "nationwide class relief" that would be an end-run around the now forbidden universal injunction. *Id.* at *18 (Alito, J., concurring). "[D]istrict courts should not view [*CASA*] as an invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23." *Id.* "Putting the kibosh on universal injunctions does nothing to disrupt Rule 23's requirements." *Id.*; *see also N.H. Indonesian Cmty Support v. Trump*, 765 F. Supp. 3d 102, 112 (D. N.H., 2025) (recognizing the need the need to limit relief only as necessary when it previously declined to issue a universal injunction in a prior challenge an executive order).

DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
3:35-CV-5687

This Court should heed that caution here. Despite seeking nationwide class relief in the wake of *CASA*, Plaintiffs offer no argument why nationwide relief is necessary. At most, the Court should certify a class limited to this judicial district. *See, e.g., Bova v. Cox Commc'ns, Inc.*, No. 7:01CV00090, 2001 WL 1654708, at *4 (W.D. Va. Dec. 12, 2001) (limiting the class action to the Western District of Virginia). Congress exercised its power to create lower courts by devising a system under which most issues are resolved within 12 geography-based circuit courts of appeals. It is a feature of this system that district judges within each circuit can reach different opinions on the same question of law before the circuit rules. And even once a circuit rules, the issue can continue to percolate within other circuits until the matter is taken up by the Supreme Court. Congress recognized the need for nationwide uniformity on some questions of law; the U.S. Court of Appeals for the Federal Circuit, for example, serves that purpose for some questions. But Congress decided against giving those courts jurisdiction over the subject of this suit, instead preferring a system under which different circuits may opine on particular legal questions and leave uniform resolution of abstract legal questions to the Supreme Court.

Certifying a nationwide class, with no possibility of opt-outs, would foreclose any possibility of percolation in other judicial districts, ensuring that no plaintiff can sue elsewhere. At a minimum, the class should be limited to this judicial district. And if the Court concludes that Plaintiffs can obtain class certification, the Court still should not certify a nationwide class without a showing from Plaintiffs of why nationwide class certification is necessary.

## CONCLUSION

In light of Plaintiffs' failure to meet the requirements of Federal Rules 23(a) and (b)(2), Defendants request that this Court deny Plaintiffs' Motion for Class Certification.

DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
3:35-CV-5687

Dated: August 25, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Deputy Assistant Attorney General
Civil Division

WILLIAM H. WEILAND
Acting Assistant Director

ANNA DICHTER
Senior Litigation Counsel

ERIC SNYDERMAN
AMANDA B. SAYLOR
CATHERINE ROSS
JEFFREY M. HARTMAN
C. FRED SHEFFIELD
LAUREN BRYANT
SHELBY WADE
Trial Attorneys

/s/ Daniel M. Cappelletti
DANIEL M. CAPPELLETTI (DC Bar 1672879)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-2999
daniel.cappelletti@usdoj.gov

*Attorneys for the Defendants*

DEFS.' OPPOSITION TO PLS.' MOTION FOR CLASS CERTIFICATION
3:35-CV-5687

1

**CERTIFICATE OF SERVICE**

2        I served this document today by filing it using the Court's CM/ECF system, which automatically

3    notifies the parties and counsel of record.

4    Dated: August 25, 2025

5                                    /s/ Daniel M. Cappelletti
                                     DANIEL M. CAPPELLETTI (DC Bar 1672879)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                        20

25