Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou H. MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, O.C., SANDHYA LAMA, S.K., TEOFILO MARTINEZ,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>*Defendants*. | Case No. 3:25-cv-05687- TLT<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    TBD<br>Time:    TBD<br>Place:   TBD |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice* pending)
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
.ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

# NOTICE OF MOTION

PLEASE TAKE NOTICE THAT, on September 8, 2025 or as soon thereafter as this matter may be heard, before the Honorable Trina L. Thompson of the United States District Court for the Northern District of California, Plaintiffs move for partial summary judgment to set aside three challenged agency actions under 5 U.S.C. section 706. This Motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the supporting declarations and evidence filed concurrently herewith; pleadings and filings in this case; any additional matter of which the Court may take judicial notice; and such further evidence or argument as may be presented before, at, or after the hearing. Unless otherwise specified, all citations in the Memorandum of Points and Authorities to an "Exhibit," "Exhibits," "Ex." or "Exs." refer to exhibits attached to the Declaration of Jessica Bansal.

Respectfully submitted,

NATIONAL DAY LABORER
ORGANIZING NETWORK
 /s/    *Jessica Karp Bansal*
Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice* pending)

Emilou MacLean
Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW
AND POLICY, UCLA SCHOOL OF LAW

Eva L. Bitran
Diana Sanchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Erik Crew (*Pro Hac Vice pending*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

## INTRODUCTION

This motion seeks partial summary judgment to "set aside" the three challenged TPS terminations under 5 U.S.C. section 706 on a single ground: that Defendants failed to explain their decision to provide only 60 days—rather than at least six months—for an "orderly transition" prior to Plaintiffs losing their status.

The Ninth Circuit's stay of this Court's Postponement Order does not bar this Court from entering partial summary judgment on that claim before September 9—when an additional (more than) 50,000 people are scheduled to lose their right to live and work in this country under Defendants' illegal TPS terminations. The Ninth Circuit's stay order withdrew the *interim* protection granted by this Court, but it gave no reasons for doing so. Therefore, it does not bar this Court from reinstituting those protections by granting partial summary judgment. Indeed, it is possible that the Ninth Circuit credited Defendants' arguments regarding the balance of equities or the limitations on the proper scope of interim relief, both of which are relevant to postponement motions under Section 705, but not to this summary judgment motion, which seeks "set aside" relief under Section 706. Given that the stay provides no reasoning and has no precedential effect, it does not bar this Court from reaching a final outcome on this claim.

As this Court is well-aware, the TPS terminations challenged in this lawsuit purport to strip 60,000 long-time residents of lawful immigration status on 60 days' notice. This Court has already held that Plaintiffs are likely to succeed on the claim Plaintiffs press in this motion: their second APA claim, which challenges only the length of the transition period Defendants provided when they terminated TPS. As this Court already found, Defendants arbitrarily failed to acknowledge or explain their departure from two decades of unbroken agency practice when they declined to provide at least a six-month orderly transition period, and instead directed that Defendants be stripped of their immigration status in 60 days.

The impact of Defendants' unlawful action is to provide Plaintiffs and other TPS holders who have lived lawfully in the United States for at least 26 years (Honduras and Nicaragua) or 10 years (Nepal) only two months to pack up their lives—to sell homes, wrap up businesses, find new schools for children, scramble to avoid interruptions in essential health care, say impossible

1

goodbyes to U.S. citizen family—and somehow construct new futures in countries some have not lived in since they were toddlers.

Plaintiffs are well-aware that this Court has already made extraordinary adjustments to its schedule in order to carefully consider a large body of evidence and legal argument in this case on an expedited basis. Nonetheless, given the impact of Defendants' actions on Plaintiffs' lives and the lives of tens of thousands of other long-time lawful residents of this country, and the straight-forward nature of Plaintiffs' purely legal "change-in-position" claim, Plaintiffs respectfully request that this Court act expeditiously to grant the instant motion for partial summary judgment and set aside the challenged terminations as arbitrary and capricious under Section 706 of the APA before September 9.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Sierra Club v. Bosworth*, 510 F.3d 1016, 1022 (9th Cir. 2007). Pursuant to Section 706 of the Administrative Procedure Act (APA), a court "shall" "hold unlawful and set aside agency action, findings, and conclusions" found to be, among other things, "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" "(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" or "(D) without observance of procedure required by law." 5 U.S.C. § 706. In addition, the "law of the case" doctrine generally precludes a court from reconsidering an issue it has already decided, including decisions on pure issues of law made in the interim relief context. *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005). *See Lone Star Sec. & Video, Inc. v. City of L.A.*, 989 F. Supp. 2d 981, 989 (C.D. Cal. 2013), *aff'd*, 827 F.3d 1192 (9th Cir. 2016).

The Ninth Circuit stayed this Court's order postponing the effective date of the challenged terminations, but that order does not set the legal standard for purposes of this motion. The stay order provided no reasoning, and thus created no law. Even if it had, "a predictive analysis" in connection with granting a stay "should not, and does not, forever decide the merits of the parties' claims." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 661 (9th Cir. 2021). Otherwise, a hurried "pre-adjudication adjudication would defeat the purpose of a stay, which is to give the

reviewing court the time to 'act responsibly,' rather than doling out 'justice on the fly.'" *Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)); *see also, e.g.*, *Singh v. Berger*, 56 F.4th 88, 109 (D.C. Cir. 2022) (explaining that even an express finding as to likelihood of success when granting a stay "in no way prejudges" a party's "ability going forward to" advocate "on the merits before the district court"). Moreover, as noted above, two of the legal issues on which Plaintiffs had to prevail in their Section 705 motion—concerning the balance of equities and the scope of relief—are not at issue in this distinct Section 706 motion for partial summary judgment.

## ARGUMENT

### I. This Court Has Jurisdiction Over Plaintiffs' Change-in-Position Claim

This Court has already correctly explained why the TPS statute's jurisdiction stripping provision, 8 U.S.C. section 1254a(b)(5), does not deprive it of jurisdiction over Plaintiffs' APA claims. Order 16-20. This Court's jurisdiction over Plaintiffs' change-in-position claim is particularly clear. Section 1254a(b)(5) limits jurisdiction to review "any determination of the Attorney General with respect to the designation, or termination or extension of a designation, of a foreign state *under this subsection*"—that is, under subsection (b). (emphasis added) Plaintiffs' change-in-position claim addresses the length of the orderly transition period, which is addressed in subsection (d) of the TPS statute. Thus, it obviously does not come within the scope of the jurisdiction-stripping provision.

Perhaps sensing this fatal defect, Defendants' stay briefing before this Court and the Ninth Circuit gestured at other jurisdictional provisions. Dkt. 75 at 9–10 (citing 5 U.S.C. § 701(a)(2) and 8 U.S.C. § 1252(a)(2)(B)(ii)). But the TPS statute is governed by its own jurisdiction-limiting provisions. Neither of these two more general provisions deprives this Court of jurisdiction.

First, Plaintiffs' change-in-position claim is not barred by the APA's general prohibition on review of decisions committed to agency discretion. 5 U.S.C. § 701(a)(2). Section 701(a)(2) does not prevent review where, as here, "regulations *or agency practice* provide a meaningful standard by which this court may review its exercise of discretion." *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003) (emphasis added) (internal quotation marks and citation removed). *See*

3

*Alcaraz v. INS*, 384 F.3d 1150, 1161 (9th Cir. 2004) (holding that 701(a)(2) did not deprive court of jurisdiction because agency policy provided "law to apply"); *Mendez-Gutierrez v. Ashcroft,* 340 F.3d 865, 868 (9th Cir. 2003) (same); *Sheikh v. DHS*, 685 F. Supp. 2d 1076, 1091 (C.D. Cal. 2009) (holding that agency's practice of relying on "the same set of factors … to adjudicate [petitions] for many years" created law to apply and precluded application of 701(a)(2)). Indeed, as this Court has recognized, an agency's "settled course" of decision-making can itself create "a general policy by which its exercise of discretion will be governed." Order 23 (quoting *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996). Here, Defendants' two-decades-long practice provides "a meaningful standard by which this court may review its exercise of discretion." *Spencer Enters., Inc*., 345 F.3d at 688.

Second, 8 U.S.C. section 1252(a)(2)(B)(ii)) does not bar Plaintiffs' claim here. That provision does not appear in the TPS statute at all. As its title shows, Section 1252(a)(2)(B) concerns "Denials of Discretionary Relief." The Supreme Court, the Ninth Circuit, and the D.C. Circuit have all read Section 1252(a)(2)(B)(ii) as a "catchall" within the broader context of Section 1252(a)(2)(B), which is designed to bar review over denials of discretionary relief from removal. Subsection (ii) functions to "catch" forms of discretionary relief similar to those explicitly enumerated in subsection (i) of Section 1252(a)(2)(B). *See Kucana v. Holder*, 558 U.S. 233, 246-49 (2010); *Nakka v. USCIS*, 111 F.4th 995, 1015 (9th Cir. 2024); *Make the Road New York (MTRNY) v. Wolf*, 962 F.3d 612, 628-31 (D.C. Cir. 2020). Under the rationale of those cases, Section 1252(a)(2)(B)(ii) does not bar Plaintiffs' challenge here, as the length of the "orderly transition" period which DHS makes available to all TPS holders when a termination occurs is not a form of discretionary relief from removal at all.

Section 1252(a)(2)(B) as a whole is directed at limiting judicial review over the Secretary's discretionary denials of applications for relief from removal. That is clear not just from the title, but also from neighboring subsection Section 1252(a)(2)(B)(i), which bars review over "any judgment regarding the granting of relief under" five enumerated forms of discretionary relief from removal. As the Supreme Court explained in *Kucana*, "[t]he proximity of clauses (i) and (ii), and the words linking them—'any other decision'—suggests that Congress had in mind decisions of the same genre." *Kucana*, 558 U.S. at 246-47. *See also id*. at 247 ("The clause (i) enumeration, we find, is

4

instructive in determining the meaning of the clause (ii) catchall."). *Kucana* therefore held that Section 1252(a)(2)(B)(ii) did not bar a claim over the discretionary decision not to reopen removal proceedings, because that decision was not "made discretionary by legislation." *Id*. Similarly here, Section 1252(a)(2)(B)(ii) does not apply to a claim that does not involve discretionary relief at all.

The Ninth Circuit relied on *Kucana*'s reasoning in *Nakka*, which interpreted Section 1252(a)(2)(B)(i) to bar only "a decision in an individual case" rather than collateral policy or practice challenges. In doing so, *Nakka* reiterated that Section 1252(a)(2)(B)(ii) is a "catchall" provision, *Nakka*, 111 F.4th at 1006, and that all of Section 1252(a)(2)(B) had to be read in reference to its title, "which refers to '[d]enials of discretionary relief.'" *Nakka*, 111 F.4th at 1004 (quoting 8 U.S.C. § 1252(a)(2)(B)). As *Nakka* explained, "Subsection B's jurisdictional bar covers . . . orders denying discretionary relief in individual cases," but not ""the type of challenges to the Secretary's regulations, orders, policies, and directives" at issue." *Id*. at 1015. Similarly, the Ninth Circuit recently read Section 1252(a)(2)(B)(i) to bar claims challenging denials of discretionary relief, but preserved the non-citizens' ability to argue that the claim could be heard through review of her removal order. *Garcia v. USCIS*, No. 23-35267, 2025 WL 2046176, *7 (9th Cir. July 22, 2025)

In reaching its conclusion, *Nakka* in turn followed the D.C. Circuit's earlier decision in *Make the Road New York (MTRNY)*, which had rejected yet another broad attempt by the Secretary to bar review of her decision-making under a statute not involving discretionary relief from removal. *MTRNY* rejected the argument that Section 1252(a)(2)(B)(ii) bars review of the decision to expand the scope of the expedited removal statute. Like the TPS statute, the expedited removal provisions do not concern discretionary relief, and are governed by their own jurisdiction-related provisions. *MTRNY* found that Section 1252(a)(2)(B) as a whole "focuses Clause (ii)'s bar on individualized forms of discretionary relief from removal or exclusion." 962 F.3d at 630[1].

---

[1] *MTRNY* did find the expedited removal claim at issue there unreviewable under 5 U.S.C. section 701(a)(2), but only because the statute there commits the decision at issue to the "sole and unreviewable discretion" of the Secretary, and because the agency practice created no discernible standards to apply for evaluating the Secretary's decision. The Ninth Circuit found similar language barred review in *Gebhardt v. Nielsen*, 879 F.3d 980 (9th Cir. 2018). Importantly, however, the TPS statute does *not* contain the "sole and unreviewable discretion" language found dispositive in these

As these cases all show, Section 1252(a)(2)(B)(ii) has no bearing on this case. The orderly transition period under the TPS statute is not a form of relief at all. It is not something that individuals "who need relief from removal would apply for," *Nakka*, 111 F.4th at 1004, whether or not they are otherwise lawfully present. Nor does it provide any form of relief from a removal order. The government can seek and obtain removal orders against people with TPS, and TPS protections remain available even to those with removal orders. Because an orderly transition period is not a form of discretionary relief from removal, Section 1252(a)(2)(B)(ii) does not bar Plaintiffs' claim.

## II. The Terminations Were Arbitrary and Capricious Because They Broke With Past Practice Without Acknowledgment or Explanation

This Court's well-reasoned postponement order correctly holds that Defendants' decision to provide only 6 months' notice prior to terminating TPS for Honduras, Nepal, and Nicaragua was arbitrary and capricious. Order 23-25. For over two decades, Defendants have provided at least a six-month orderly transition period when terminating a TPS designation. Order 23 (citing Dkt. 28); Ex. A. The current administration abruptly broke with this practice, giving TPS holders from Honduras, Nepal, and Nicaragua only 60 days to pack up their lives and leave.

Of course, agencies are free to change existing policies. But agencies must be "cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 212 (2016) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). Thus, when—as here—an agency breaks with a long-standing past practice, it must "display[] awareness that it is changing position" and provide "good reasons" for the new policy. *Organized Vill. of Kake v. USDA*, 795 F.3d 956, 966 (9th Cir. 2015) (quoting *FCC*, 556 US 502 at 515-16). *See also FDA v. Wages and White Lion Inv., LLC*, 145 S. Ct. 898, 918 (2025) (describing "change-in-position doctrine"). *Ctr. for Biological Diversity v. BLM*, 141 F.4th 976, 999 (9th Cir. 2025) (holding agency violated APA by failing to explain its "change[]d course"); *Sw. Airlines Co. v. FERC*, 926 F.3d 851, 858 (D.C. Cir. 2019) (agency's

---

cases. Moreover, as this Court already found, past agency practice *has* created a discernible practice regarding orderly transitions: for the last twenty years the agency has always given TPS holders at least six months to close up their lives in this country and depart.

1  "consistent practice, whether adopted expressly in a holding or established impliedly through
2  repetition, sets the baseline from which future departures must be explained").

3  Defendants have done neither. Order 23-25. Indeed, rather than "display[ing] awareness" of
4  DHS's longstanding past practice of providing at least a six-month orderly transition period when
5  ending a TPS designation, the Secretary denied that there was any such practice.

6  With respect to Honduras and Nicaragua, the Secretary wrongly claimed that "[a] sixty-day
7  orderly transition period is consistent with the precedent of previous TPS country terminations,"
8  apparently referencing only her own termination decisions over the past several months. 90 Fed.
9  Reg. 30,089, 30,091 (Jul. 8, 2025) (Honduras); 90 Fed. Reg. 30,086, 30,088 (Jul. 8, 2025)
10 (Nicaragua). As to Nepal, while "recogniz[ing]" in a footnote "that certain previous TPS
11 terminations allowed for an extended transition," she went on to note that "certain other TPS
12 designations were terminated without allowing for an extended transition period," indicating her
13 view that the agency had no particular practice. *See* 90 Fed. Reg. 24,151, 24,154 n. 24 (June 6, 2025)
14 (Nepal).

15 The Secretary also failed to provide a "good reason" for providing only 60 days for TPS
16 holders to leave, particularly given the massive break with past practice inherent in that decision.
17 *Organized Vill. of Kake*, 795 F.3d at 966. *See* Order 24-25. As to Honduras and Nicaragua, the only
18 reason she provided for selecting a 60-day period was that it would be "consistent with the precedent
19 of previous TPS country terminations and makes clear that the United States is committed to clarity
20 and consistency." 90 Fed. Reg. at 30,088, 30,091. But, as described above, over the past two decades
21 prior to the current administration the "precedent of previous TPS country terminations," *id.*, was to
22 provide at least a six-month orderly transition period for any TPS termination. So this represents the
23 opposite of clarity and consistency. Because the Secretary's explanation was objectively wrong as a
24 factual description of the agency's past practice, it cannot constitute a "good reason" for her break
25 with past practice.

26 As to Nepal, Secretary Noem asserted that the 60-day period was appropriate given her
27 finding that Nepal no longer meets the conditions for extension. But that reason would apply to any
28 termination. Accordingly, it fails to explain why a longer period has consistently been provided in

the past, but only 60 days was provided this time. The Secretary also stated in passing that a 60-day notice period is "in accord" with the President's Executive Order "Protecting the American People Against Invasion." *See* 90 Fed. Reg. at 24,153 (citing Executive Order 14,159). She did not suggest that the Invasion E.O. provided a separate reason for her decision, and Defendants have not defended the 60-day period that way.

## CONCLUSION

Because there is no genuine issue of material fact regarding Plaintiffs' change-in-position claim, this Court should grant Plaintiffs' motion to set aside the agency action terminating TPS for Honduras, Nepal, and Nicaragua with only a 60-day orderly transition period.

Date: August 25, 2025

Respectfully submitted,

NATIONAL DAY LABORER ORGANIZING NETWORK
 */s/ Jessica Karp Bansal*
Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice* pending)

Emilou MacLean
Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND POLICY, UCLA SCHOOL OF LAW

Eva L. Bitran
Diana Sanchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Erik Crew (*Pro Hac Vice pending*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

8
PLAINTIFFS' NOTICE OF MOTION & MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 3:25-CV-05687-TLT

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

NATIONAL DAY LABORER ORGANIZING NETWORK

*/s/ Jessica Karp Bansal*
Jessica Karp Bansal