Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, O.C., SANDHYA LAMA, S.K., TEOFILO MARTINEZ,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 3:25-cv-05687-TLT<br><br>**JOINT DISCOVERY LETTER BRIEF**<br><br>Magistrate Judge Sallie Kim |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

The parties submit this brief regarding outstanding discovery disputes. Lead counsel met and conferred and complied with Section 9 of the District's Guidelines for Professional Conduct.

## I. FACTUAL BACKGROUND & RELEVANT DEADLINES

This case concerns a legal challenge pursuant to the Administrative Procedure Act (APA) and the Equal Protection Clause of the Constitution to Defendants' termination of Temporary Protected Status (TPS) designations of Honduras, Nepal and Nicaragua. The terminations affect more than 60,000 individuals who have resided in the United States with TPS for at least a decade. Plaintiffs allege that the decisions were preordained and deviated from TPS prior practice and history, in violation of the APA; and that they were unconstitutionally motivated by racial animus. Plaintiffs must move for summary judgment no later than October 14.

Defendants produced Certified Administrative Records (CARs) for each of the challenged decisions, withholding certain records in the CARs pursuant to the deliberative process privilege (DPP). ECF 77-1, 77-3, 78-1, 78-3, 79-1, 79-3 (supplemental CAR indices and certifications of complete CAR production); ECF 77-2, 78-2, 79-2 (USCIS Decision Memoranda withheld pursuant to DPP).

On August 21, following briefing between the parties, this Court ordered expedited extra-record discovery for Plaintiffs' APA and Equal Protection claims, compelling production of responsive documents within 14 days of: (a) this status report, to the extent that there is agreement on the RFPs, or (b) this Court's order resolving any discovery dispute. ECF 97 at 2-3, 5. This Court granted the parties an opportunity to further brief the scope of discovery and ordered the parties to file a status report concerning any disagreement. *Id.* at 4-5.[1]

Plaintiffs seek records concerning the three challenged decisions (RFP 1-3) as well as records concerning other TPS periodic reviews conducted by this administration (RFP 4-5). ECF 95-1 & 95-2. The parties have narrowed the dispute regarding the scope of discovery. The parties have reached agreement regarding custodians, search terms and date ranges:

- Regarding custodians: Defendants will search the records of the custodians listed in the

---

[1] The Court also ordered Defendants to produce to the Court all documents withheld from the CARs pursuant to the DPP, and an accompanying privilege log. *Id.* at 5-7.

1    Annex to the RFPs with one modification—replacing the "Executive Secretary" to
2    Secretary Noem for the "Executive Assistant."

- Regarding search terms: To identify the appropriate universe of documents, Defendants will use the following search terms, as appropriate, for RFP Nos. 1-3: ["Temporary Protected Status" OR "TPS" OR "1254a"] AND ["Honduras" OR "Nepal" OR "Nicaragua"]. Should the Court order discovery for RFP Nos. 4-5, the Parties will confer on the appropriate search terms.

- Regarding date ranges: The searches will cover January 20 through the date of publication of the Federal Register notice announcing the termination for each respective country.

- The parties also agree that Defendants need only produce responsive records within the custody and control of Defendant Department of Homeland Security.

The parties have also largely reached agreement concerning RFP Nos. 1 and 2. The parties have continued disputes regarding RFP Nos. 3-5. With regard to RFP No. 3, Defendants agree to produce responsive communications concerning the challenged terminations, but dispute whether communications that reflect public or internal guidance on how to implement the decisions need to be produced. Defendants also contest the relevance of RFP Nos. 4 and 5. Additionally, Defendants contest that the last clause of RFP 5—"communications related to [] country conditions analyses" prepared in connection with all 2025 TPS periodic reviews—reads as overbroad and vague. As a compromise, Plaintiffs propose that RFP 5 be limited to a) draft and final country conditions analyses; and b) that the last clause of RFP 5 be limited to communications related to these country conditions analyses involving any of a list of limited custodians.

Finally, Defendants contest the 14-day timeline for production of responsive records.

II.    **PLAINTIFFS' POSITION**

   A.    **RFP 3—Defendants Should Be Compelled to Produce All Communications Related to the Challenged Terminations That Predate the Publication of the Decisions**

The parties' limited dispute with regard to RFP 3 concerns communications that reflect public guidance and internal operational guidance on how to implement the challenged termination decisions. Plaintiffs contend that such communications are relevant and responsive and should be produced. In

1  prior decisions concerning TPS, Defendants have consulted with operational personnel in connection
2  with the decisionmaking process. *See, e.g.*, *NTPSA I v. Noem*, No. 3:25-cv-01766-EMC, ECF 257 at
3  3 (in making the decision to vacate TPS for Venezuela, Defendants sought evidence related to
4  "operational challenges"). Defendants' public communications regarding TPS decisionmaking are
5  also relevant to Plaintiffs' claims. Defendants have publicly defended the agency's TPS decisions on
6  the grounds that the "TPS system has been exploited and abused," ECF 17 at 10, and that they were
7  "returning integrity to the TPS system," and "returning TPS to its original status: temporary." *Id.*; *see*
8  *also* ECF 73 at 22 (considering relevant the Secretary's statements that "TPS 'was abused, exploited,
9  and politicized' and 'an immigration scheme[] that make[s] Americans less safe'").

10  Plaintiffs contend that the strict time limits for responsive records serve to adequately exclude
11  any records that relate only to public guidance and implementation; in particular, any public guidance
12  must have occurred only *after* the terminations were publicly announced. In a good faith effort to
13  compromise, Plaintiffs nonetheless propose an earlier end date for the production of communications
14  that reflect public and internal guidance: the date of *approval of publication* of the termination
15  decisions in the Federal Register—May 29 for Nepal (ECF 64-1 at Nepal AR000005); June 30 for
16  Honduras (ECF 62-1 at HondurasAR000005); and July 3 for Nicaragua (ECF 63-1 at NicAR000005).

17  **B. RFP 4 & 5**

18  Plaintiffs seek limited records concerning the TPS periodic reviews conducted by this
19  administration for countries other than Honduras, Nepal, and Nicaragua—draft and final USCIS
20  Decision Memoranda (RFP 4) and draft and final country conditions analyses, and communications
21  related to these country conditions analyses (RFP 5). These requests are relevant as Plaintiffs' first
22  APA claim challenges Defendants' general TPS policies and practices, including "the collateral
23  decision to end TPS for virtually every country that has it." ECF 87 at 3; ECF 73 at 22 (describing
24  Secretary's "history of systematically attempting to limit TPS"). In reaching its decision that
25  "Plaintiffs will likely succeed on the merits of their first APA claim," this Court has already considered
26  relevant this administration's decisionmaking in other TPS periodic reviews. ECF 73 at 22-23 (citing
27  this administration's TPS decisions for Venezuela, Haiti, Afghanistan and Cameroon). This diverges
28  from *NTPSA I* for the simple reasons that 1) the APA claim that these termination decisions were part

of a preordained effort to terminate TPS writ large was not present in *NTPSA I*; and 2) *NTPSA I* concerned the first two TPS decisions of this administration; there were no others at that time.

Plaintiffs' requests pertaining to other periodic reviews are limited. First, Plaintiffs seek draft and final USCIS Decision Memoranda regarding each periodic review of this administration (RFP 4). TPS Decision Memos are the central documents considered by the Secretary in connection with the periodic review of a TPS designation, and include detailed and substantiated recommendations from USCIS to DHS.[2] The earliest TPS periodic review of this administration demonstrated the importance of analyzing draft USCIS Decision Memos. USCIS personnel drafted and re-drafted the Venezuela Decision Memo to get to the desired conclusion—termination on national interest grounds. *See* ECF 17 at 9-10; *NTPSA I*, ECF 257 at 7 n.4 (iterative drafts of the USCIS Decision Memo ultimately concluded that termination was warranted on the ground of national interest—something not considered at all as a basis for termination in earlier drafts).

Second, Plaintiffs seek country conditions analyses and related communications (RFP 5). A typical TPS periodic review process begins months before the Secretary must make a decision. USCIS Refugee, Asylum and International Operations Directorate (RAIO) prepares a country conditions report which forms the basis of the USCIS Decision Memo. The State Department also provides a country conditions analysis, which forms the basis of its recommendation. Whether and how Defendants relied on country conditions analyses in their periodic reviews is central to Plaintiffs' first APA claim that Defendants' decisions were preordained and deviated from TPS prior practice.

To avoid any undue burden in connection with RFP 5, Plaintiffs propose as a compromise that RFP 5 be limited to a) draft and final country conditions analyses; and b) communications related to these country conditions analyses involving any of a restricted list of custodians centrally involved in TPS decisionmaking based on their roles:

   1) Rob Law, Nominee for DHS Undersecretary, Office of Strategy, Policy and Plans
   2) DHS Senior Advisor and General Counsel Nominee James Percival

---

[2] *See generally* U.S. Gov't Accountability Off., GAO-20-134, *Temporary Protected Status: Steps Taken to Inform and Communicate Secretary of Homeland Security's Decisions*, 31 (2020) ("GAO TPS Report") (providing overview of TPS review process); *Ramos v. Nielsen*, No. 18-cv-1554, ECF No. 128 at 4–5 (N.D. Cal. Oct. 3, 2018) (Order Granting Plaintiffs' Motion for Preliminary Injunction).

3) USCIS Director Joe Edlow

4) USCIS Office of Policy & Strategy (OP&S) Director Samantha Deshommes

5) USCIS OP&S Humanitarian Affairs Division Chief Rena Cutlip Mason

6) USCIS RAIO Associate Director Ted Kim

7) USCIS RAIO subject matter expert responsible for drafting the country conditions review for the country at issue

8) USCIS OP&S Policy Advisor responsible for drafting the Decision Memo for the country

### C. No Modification of the Deadline for Production Is Warranted.

The Court should not modify the 14-day deadline for production, which is appropriate in light of the urgency and importance of the matters in dispute. As a result of Defendants' actions, more than 60,000 TPS holders who have lived in the United States lawfully for years or decades have either lost their legal status already (in the case of Nepal) or face the imminent loss of status (in the case of Honduras and Nicaragua). Any extension of this Court's deadline would hamper the ability of Plaintiffs to review the records in advance of their October 14 filing deadline, and would limit the ability of the parties and the Court to resolve anticipated discovery disputes. The discovery sought is narrowly tailored and not burdensome, and regardless cannot outweigh the liberty interests and safety of 60,000 people who have resided legally in this country for years or decades. Defendants have been on notice of Plaintiffs' discovery requests from the dates that they were served—on August 6 and 18, respectively; and also of this Court's ruling that production should be expedited from its August 21 order. ECF 97 ("Defendants are thus advised to prepare for prompt document production.").

## III. DEFENDANTS' POSITION

### A. Current Deadline for Expedited Production is Unsupported by Good Cause.

As a preliminary matter, Defendants seek to clarify their position regarding Plaintiffs' request to shorten the deadline for the production of documents to 14 days. *See* ECF No. 95 at 5. Defendants did not comment on this request in the Parties' August 19, 2025, Joint Discovery Letter, ECF No. 97 at 5, because it was Defendants' position that there should be *no* extra-record discovery here, expedited or otherwise. ECF No. 95 at 7. Now that this Court granted Plaintiffs' extra-record discovery request, Defendants assert that expedited discovery, particularly with a 14 day turnaround,

is inappropriate. Plaintiffs' "good cause" explanation, that "Defendants have both appealed and moved for a stay of the APA Section 705 interim relief ordered by this Court . . . [and, regardless of the result of the stay request,] Plaintiffs still face an imminent summary judgment deadline," is insufficient. ECF No. 95 at 5. On August 20, 2025, the Ninth Circuit granted a stay of this Court's postponement order. However, the fact that Plaintiffs lost an appeal of a preliminary injunction before a circuit court is not sufficient to show "good cause" here. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, Case No. 11-CV-01846-LHK, 2011 WL 1938154, at *2 (N.D. Cal. May 18, 2011) ("courts have found that expedited discovery may be justified to allow a plaintiff to determine *whether to seek* an early injunction") (emphasis added). And the dispositive motions deadline of October 14, 2025, is also distant enough that it does not justify limiting Defendants to only 14 to respond to requests for production of documents. ECF No. 91 at 1.

Defendants respectfully request 21 days to respond to Plaintiffs' RFPs. The additional seven days will provide time for Defendants to thoroughly and accurately respond, reducing the chance of disputes over the production, and is still expedited under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 34(b)(2)(A).

**B. Requests 4 and 5 Exceed the Scope of Discovery.**

The scope of discovery should be no broader than that in *NTPSA 1*. *See* ECF No. 97 at 5, 7. However, RFPs 4 and 5 reach far beyond the ordered scope and seek information neither relevant to any party's claim or defense nor proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

By requesting information pertaining to "all 2025 TPS periodic reviews," these RFPs go well beyond the ordered scope of discovery, as well as the scope of discovery in in *NTPSA 1*, which only concerned the TPS designations the TPS designations at issue in that case. Typically, judicial review of agency action should be based on the record before the agency at the time of the decision, barring exceptional circumstances. *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019). While this Court concluded that this case falls within the "bad faith" exception to the general practice of prohibiting extra-record discovery in APA cases, it only determined that extra-record discovery is warranted for Plaintiffs' APA and Equal Protection claims. ECF No. 97 at 3-4. Here, Plaintiffs have claimed that Defendants' termination of the TPS designations for Honduras, Nepal, and Nicaragua violated the

APA and Due Process Clause of the Fifth Amendment. *See* ECF No. 1 ¶¶ 152-65. This Court did not, however, permit discovery into the Secretary's determinations related to South Sudan, Afghanistan, Cameroon, Haiti, Venezuela, or Syria, let alone extra-record discovery regarding these determinations.

Furthermore, the RFPs regarding unrelated TPS designations where there has been a periodic review during the Secretary's tenure are neither relevant to the decision-making process regarding Honduras, Nicaragua, and Nepal nor are these Requests "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("The requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense'"). It is unclear what Plaintiffs are looking for, and it is speculative at best that a response would produce any relevant information. *See Blagman v. Apple Inc.*, Case No. CV 13-8496-PSG, 2014 WL 12607841, at *2 (C.D. Cal. Jan. 6, 2014) (court will not compel discovery that is "impermissibly overboard, and if answered would produce much tangential if not irrelevant information"); *Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 626 (N.D. Cal. 2010) ("Discovery must be narrowly tailored . . . and must not be a fishing expedition"). While Plaintiffs allege that the Secretary's decisions regarding Honduras, Nepal, and Nicaragua are all part of "efforts to terminate virtually all TPS designations," ECF No. 1, ¶ 45, what the "draft and final USCIS Decision Memoranda" and "draft and final country conditions analyses . . ., and communications related to these country conditions analyses" will reveal is purely speculative and has nothing to do with Plaintiffs' claim of deviation from prior practice, especially for country designation determinations made after the at-issue terminations. If there were any pre-ordained termination policy (which Defendants deny), and if such a policy were applied to the TPS terminations for Honduras, Nicaragua, or Nepal, then the communications regarding that policy would certainly be found in the communications relevant to the TPS terminations for Honduras, Nicaragua, or Nepal. Simply put, Plaintiffs propose an expansion of discovery far beyond the relevant records, and far beyond what has ever been authorized in these TPS termination challenges.

Plaintiffs demand is nothing other than a pure fishing expedition into decisions not before this court and Plaintiffs proposal needlessly adds to the volume of records that must be collected, searched and reviewed – thereby increasing the burden and expense of discovery far beyond that which is reasonable for no identifiable benefit, in an already shortened timeframe. Fed. R. Civ. P. 26(b)(1).

**C. Communications Irrelevant to the Decision-Making Process Should not be Produced in Response to RFP 3.**

Discovery should be limited to the decisions at issue and only require the production of non-privileged documents that pre-date the decisions at issue, and that are relevant to the making of those decisions. This comports with the practice in *NTPSA 1*, where the Court ordered that "[d]ocuments sought must be keyed to Secretary Noem's intent in reaching the decisions challenged herein beyond that already contained in the administrative record, if any." *NTPSA 1*, ECF No. 129, at 8. Like *NTPSA I*, any authorized discovery should not include irrelevant guidance on how to implement any decision once it is made, nor those communications relevant only to the development of public affairs guidance, media statements, or responses to legislative inquiries. This is especially true when such statements post-date the date the decision was made, as all post-decisional communications are clearly irrelevant to the making of the decision itself. *See id.* ("it is not clear why documents related to DHS press releases or guidance about how to respond to questions from the media or TPS holders are relevant (especially post-decision) to any alleged unlawful motivation (*i.e.* pretext, bad faith, or animus) behind the challenged decisions"); *see also NTPSA 1*, ECF No. 135, at 3 (not requiring the government to respond to request for documents related to media appearances or statements). The court in *NTPSA I* did not authorize general discovery for good reason — because communications not tied to the making of the decisions are not relevant to the court's consideration of how the decisions were made (to the extent the court may consider such at all). Similarly, the scope of discovery in this case should be limited to only those document pertinent to the Secretary's decision making and not simply sweep in anything and everything that mentions TPS. Therefore, Defendants propose that this Court limit discovery by excluding any communications relevant only to the development of internal operational guidance, as well as the development of statements for the purpose of public, legislative, or media affairs.

| | |
|---|---|
| Date: August 28, 2025 | Respectfully submitted, |
| | ACLU FOUNDATION<br>OF NORTHERN CALIFORNIA |
| | /s/ *Emilou MacLean*<br>Emilou MacLean |
| | Michelle (Minju) Y. Cho<br>Amanda Young<br>ACLU FOUNDATION<br>OF NORTHERN CALIFORNIA |
| | Ahilan T. Arulanantham<br>CENTER FOR IMMIGRATION LAW AND POLICY, UCLA SCHOOL OF LAW |
| | Eva L. Bitran<br>Diana Sanchez<br>ACLU FOUNDATION<br>OF SOUTHERN CALIFORNIA |
| | Jessica Karp Bansal<br>Lauren Michel Wilfong (*Pro Hac Vice*)<br>NATIONAL DAY LABORER ORGANIZING NETWORK |
| | Erik Crew (*Pro Hac Vice*)<br>HAITIAN BRIDGE ALLIANCE |
| | *Attorneys for Plaintiffs* |
| Date August 28, 2025 | BRETT A. SHUMATE<br>Assistant Attorney General<br>Civil Division |
| | YAAKOV M. ROTH<br>Acting Assistant Attorney General |
| | WILLIAM H. WEILAND<br>Acting Assistant Director |
| | ANNA L. DITCHER<br>Senior Litigation Counsel |
| | ERIC SNYDERMAN<br>LAUREN BRYANT<br>CATHERINE ROSS<br>AMANDA B. SAYLOR<br>JEFFREY M. HARTMAN<br>Trial Attorneys |

/s/ Daniel M. Cappelletti
DANIEL M. CAPPELLETTI
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-2999
Daniel.Cappelletti@usdoj.gov

*Attorney for Defendants*

**SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other Signatory has concurred in the filing of this document.

Date: August 28, 2025

ACLU FOUNDATION
OF NORTHERN CALIFORNIA


*/s/ Emilou MacLean*
Emilou MacLean

11
JOINT DISCOVERY LETTER BRIEF – CASE NO. CASE NO. 3:25-CV-05687-TLT

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean
