UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL TPS ALLIANCE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, et al., <br><br> Defendants. | Case No. 25-cv-05687-TLT   (SK) <br><br> **ORDER REGARDING DELIBERATIVE PROCESS PRIVILEGE AND REQUESTS FOR PRODUCTION** <br><br> Regarding Docket No. 105 |

Two discovery issues are currently before the Undersigned: (1) whether Defendants may properly withhold ten documents from the administrative records pursuant to the deliberative process privilege, and (2) the proper scope of Plaintiff's requests for production. (Dkt. No. 105.)

**A.  Deliberative Process Privilege.**

Defendants withheld ten documents from the administrative records pursuant to the deliberative process privilege. The parties originally presented this dispute to the Undersigned with limited information about the contents of the documents. (Dkt. No. 95.) The Undersigned determined "it is likely that the decision memoranda were improperly categorized as deliberative, or that even if the decision memoranda are deliberative, they should be produced due to Defendants' impropriety." (Dkt. No. 97.) However, given the lack of information about the contents of the documents, the Undersigned ordered Defendants to produce the withheld documents for *in camera* review. (*Id.*) After reviewing the ten documents *in camera*, the Undersigned concludes that the deliberative process privilege does not bar their production.

The deliberative process privilege is a qualified privilege under federal law. *FTC v. Warner Comm'n, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam). The privilege applies to documents that are (1) predecisional, i.e., "generated before the adoption of an agency's policy or decision," and (2) deliberative, i.e., "containing opinions, recommendations, or advice about

1    agency policies" rather than "purely factual material." *Id.* Even the deliberative process privilege

2    applies, it is not absolute. *Id.* "A litigant may obtain deliberative materials if his or her need for

3    the materials and the need for accurate fact-finding override the government's interest in non-

4    disclosure." *Id.*

### 1. Whether the Deliberative Process Privilege Applies.

First, the withheld documents include three memoranda with the subject "Temporary Protected Status for [Country]." The deliberative process privilege does not apply to these documents because they are not predecisional. *See id.* The memoranda include the recommendation from Acting Director of U.S. Citizenship and Immigration Service Kika M. Scott to Secretary of the Department of Homeland Security Kristi Noem to terminate the Temporary Protected Status ("TPS") designation for the countries at issue. However, they also include the Secretary's *decision* to adopt that recommendation. At the top of each document is the word "DECISION." At the bottom is a section with the heading "Secretary's Decision" with three options. Next to the "Terminate" option is Kristi Noem's signature and date. As the memoranda memorialize the Secretary's final decisions to terminate the TPS designations for Honduras, Nepal, and Nicaragua, the memoranda are not predecisional and thus are not covered by the deliberative process privilege.

Second, the withheld documents also include three documents titled "ESO-LESA Statistical Tracking Unit," which contain statistics related to the number of undocumented immigrants (which are named as "aliens") in custody. These documents are not deliberative. Defendants' privilege log indicates that that these statistics were requested for TPS policy development. However, "the central question is not whether the information at issue bears a causal connection to a final determination, but is rather whether the requested information independently 'reflects' the deliberative process itself." *Martins v. United States Citizenship & Immigr. Servs.*, 962 F. Supp. 2d 1106, 1121 (N.D. Cal. 2013) (quoting *McGrady v. Mabus*, 635 F.Supp.2d 6, 18 (D.D.C. 2009)). The statistics, viewed independently, do not reveal anything about Defendants' deliberative process. Rather, they are "purely factual material," which are not interwoven with any opinions, recommendations, or advice. *See Warner*, 742 F.2d at 1161. The

ESO-LESA Statistical Tracking Unit documents are not deliberative and therefore are not covered by the deliberative process privilege.

Defendants contend that the ESO-LESA Statistical Tracking Unit documents are law enforcement sensitive on the ground that they could aid individuals in circumventing the law. The documents themselves, however, provide no indication of such risk, and Defendants have offered no further explanation. Accordingly, the Undersigned finds that the documents are not law enforcement sensitive.

Third, the withheld documents include three email exchanges sharing data about the number of people potentially eligible for TPS protection. The exchange forwarded on April 24, 2025 concerning data for Nepal is not pre-decisional, for the decision memo terminating Nepal's designation was signed by the Secretary on April 23, 2025. The other two email exchanges occurred months before the Secretary's decision and are thus predecisional. The "Honduras and Nicaragua TPS Stats" thread includes analysis and theories regarding data fluctuations, while the "Nepal TPS Stats" thread includes only request and receipt of data. Although the Undersigned is doubtful that these data-based discussions independently reflect Defendants' deliberative process, the Undersigned will assume that the deliberative process privilege applies to these two email exchanges for purposes of this analysis.

Fourth, the final document is an "Executive Summary of Nepal" that appears to reflect internal notes on Nepal's TPS designation. Neither the document itself nor Defendant's privilege log identifies the document's author or date of creation. As such Defendant's privilege log is deficient. Regardless, the Undersigned will assume that the deliberative process privilege applies to the Executive Summary of Nepal for purposes of this analysis.

In sum, the deliberative process privilege only applies to the two predecisional email exchanges and the Executive Summary of Nepal. The Undersigned will next consider whether the privilege is overcome for these documents.

  **2.  Whether the Need for the Materials Outweighs the Government's Interest in Non-Disclosure.**

In determining whether the need for deliberative materials outweighs the Government's

1  interest in non-disclosure, courts consider four factors identified in *Warner*: "(1) the relevance of
2  the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4)
3  the extent to which disclosure would hinder frank and independent discussion regarding
4  contemplated policies and decisions." *Id.*

### i. Relevance.

The withheld documents are relevant to Plaintiffs' allegations that Defendants' stated rationales for the TPS terminations were pretextual and that the terminations were actually motivated by racism and xenophobia. The District Court has already found support for Plaintiffs' argument that the TPS determinations "were based on a preordained determination to end the TPS program, rather than an objective review of the country conditions." (Dkt. No. 73, p. 21.) The ten documents reveal Defendants' decision-making timelines and some of the information considered when reaching the decisions. That information is relevant to determining whether Defendants genuinely relied on country conditions reports in reaching their decisions.

In considering the relevance of the evidence, courts may also consider the seriousness of the issues and litigation, the presence of issues concerning alleged misconduct by the government, the interest of the litigant and society in accurate fact finding by the courts, and the federal interest in enforcement of the law. *North Pacifica LLC v. City of Pacifica*, 274 F.Supp.2d 1118, 1122 (N.D. Cal. 2003). Those considerations also weigh heavily in support of Plaintiffs. The issues at stake in this litigation could not be more serious. As the District Judge observed, at stake is "[t]he freedom to live fearlessly, the opportunity of liberty, and the American dream." (Dkt. No. 73, p. 1.) Moreover, governmental conduct lies at the heart of this case, where Plaintiffs have credibly alleged that the government acted on discriminatory animus to deny hundreds of thousands of individuals the ability to live in this country. Consequently, society has a strong interest in accurate fact finding where the propriety of government decision making is at issue. Enforcement of the law is not a central issue for either party.

### ii. Availability of Other Evidence and Government's Role in Litigation.

There can be no dispute that the second and third factors favor Plaintiffs. "The evidence sought is primarily, if not exclusively, under Defendants' control, and the government—the

1   Executive—is a party to and the focus of the litigation." *See Karnoski v. Trump*, 926 F.3d 1180,
2   1206 (9th Cir. 2019) (per curiam).

      **iii.**  **Extent to Which Disclosure Would Hinder Future Discussions.**

  As for the fourth factor—the potential chilling effect on frank government deliberations— "the disclosure of some types of documents will be less likely to cause embarrassment or chilling than others." *Desert Survivors v. US Dep't of the Interior*, 231 F. Supp. 3d 368, 385 (N.D. Cal. 2017). The disclosure of "preliminary drafts" is "not likely to chill speech," because "these are relatively polished drafts, and the recreation of the decisionmaking process should in no way embarrass the agencies." *Id.* (citation omitted). Disclosure of "preliminary staff views or tentative opinions" might chill speech because they "represent the give-and-take of the agencies' internal deliberations, and their disclosure would discourage such deliberations." *Id.* (citation omitted).

  Here, disclosure of the documents would reveal (1) that government employees were sharing data regarding TPS eligibility; (2) the employees' theories about why fluctuations in the data occurred; and (3) background information about Nepal's TPS designation. This information would not "cause embarrassment on the part of the author or give rise to confusion on the part of the public." *Desert Survivors v. US Dep't of the Interior*, No. 16-CV-01165-JCS, 2017 WL 1549373, at *7 (N.D. Cal. May 1, 2017). Further, Defendants were ordered to produce similar information during the first Trump Administration. *Ramos et al v. Nielsen et al*, No. 18-cv-01554-EMC, Dkt. Nos. 63, 79, 84 (ordering production of deliberative materials); *see also Ramos v. Wolf*, 975 F.3d 872, 884 (9th Cir. 2020) ("[t]he government produced thousands of documents, including a significant number of drafts, emails, and other deliberative materials."), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023). The existence of deliberative materials in the present case suggests that the prior disclosures did not materially inhibit the government's ability to engage in candid internal discussions.

      **iv.**  **Balancing of Factors**

  The balance of factors favors Plaintiffs. Plaintiffs have already provided evidence to support their argument that Defendants' decisions are rooted in pretext and discriminatory animus, and Plaintiffs cannot obtain further evidence in any manner other than review of Defendants'

1  deliberative materials.  Their need for this evidence on this important topic outweighs the potential
2  chilling effect on future discussions.
3        In conclusion, most of the withheld documents do not constitute predecisional deliberative
4  documents.  As to those documents that are potentially guarded by the deliberative process
5  privilege, Plaintiffs have made a compelling showing for overruling the privilege.  The
6  Undersigned thus GRANTS Plaintiffs' request to overrule Defendants' deliberative process
7  privilege assertions.  Defendants are ordered to produce the ten withheld documents on or before
8  September 8, 2025.

## B.  Requests for Production.

      The Undersigned's August 21, 2025 Order instructed the parties to meet and confer regarding the scope of Plaintiffs' requests for production ("RFPs").  (Dkt. No. 97.)  The parties were able to resolve some, but not all, of their RFP-related disputes.  (Dkt. No. 105.)

### 1.  RFPs 1 and 2.

      The parties state that they have "largely reached agreement concerning RFP Nos. 1 and 2." (*Id.*)  As the parties have not identified any remaining areas of disagreement, the Undersigned presumes the matter resolved and expects Defendants to promptly produce responsive documents.

### 2.  RFP 3.

      RFP 3 requests "[a]ll communications with or involving DHS personnel regarding the periodic review of the TPS designations of Honduras, Nicaragua and Nepal in 2025, and the decisions whether to extend or terminate those designations," limited to certain custodians, search terms, and date ranges.  (Dkt. Nos. 95-1; 105.)  The parties dispute whether RFP 3 should be narrowed to exclude communications that reflect public guidance and internal operational guidance on how to implement the challenged termination decisions.  (Dkt. No. 105.)  The Undersigned orders as follows: Defendants shall produce all non-privileged responsive documents reflecting Defendants' decision-making.  If concerns about how to communicate or operationalize the decision played a role in Defendants' decision-making, those documents are responsive. Documents unrelated to decision-making, such as post-decision communications or decision-implementation guidelines, are not responsive.  As in *National TPS Alliance v. Noem*, No. 25-cv-

01766-EMC, press releases and media guidance are generally not responsive unless those documents also implicate decision-making.

### 3. RFPs 4 & 5.

RFP 4 requests "[a]ll draft and final USCIS Decision Memoranda concerning all 2025 TPS periodic reviews." (Dkt. No. 95-2.) RFP 5 requests "[a]ll draft and final country conditions analyses prepared in connection with all 2025 TPS periodic reviews, and communications related to these country conditions analyses." (*Id.*) Defendants argue these RFPs should be limited to documents connected to Honduras, Nepal, and Nicaragua. (Dkt. No. 105.) Plaintiffs counter that all TPS periodic reviews are relevant to their Administrative Procedure Act claim alleging that Defendants decided "to end TPS for virtually every country that has it." (*Id.*)

Plaintiffs' request for discovery on countries other than Honduras, Nepal, and Nicaragua is premature. Plaintiffs have only requested the administrative records for Honduras, Nepal, and Nicaragua, and the District Judge granted Plaintiffs' request to expedite the administrative record production for only these three countries. Furthermore, Defendants have produced the administrative records for only these three countries. (Dkt. Nos. 42, 47, 62-64.) The Undersigned granted extra-record discovery for only these three countries. (Dkt. No. 97.) The Undersigned cannot grant extra-record discovery when Defendants have not yet produced an administrative record for countries other than Honduras, Nepal, and Nicaragua. *See Dep't of Com. v. New York*, 588 U.S. 752, 782 (2019) (noting that the district judge's authorization of extra-record discovery was premature because the administrative record was not yet complete). Accordingly, the Undersigned shall not require Defendants to produce documents related to TPS periodic reviews for countries other than Honduras, Nepal, and Nicaragua.

The background section of the discovery letter brief indicates that "Defendants contest that the last clause of RFP 5—'communications related to [] country conditions analyses' prepared in connection with all 2025 TPS periodic reviews—reads as overbroad and vague." (Dkt. No. 105.) However, Defendants' statement does not actually incorporate this objection. The Undersigned finds that RFP 5, when narrowed to certain document types and custodians as proposed by Plaintiffs, (*id.* at p. 4-5), is appropriately tailored in a narrow fashion.

7

In sum, Defendants shall produce documents responsive to the RFPs proposed by Plaintiff in Docket Numbers 95-1 and 95-2 and modified by Docket Number 105, with the following caveats:

1. RFP 3: Defendants are not required to produce documents that do not relate to TPS decision-making.
2. RFPs 4 & 5: Defendants are not required to produce documents that do not relate to the TPS designations for Honduras, Nepal, and Nicaragua.

### 4. Deadline for Production.

As per the Undersigned's August 21, 2025 Order, Defendants are required to produce documents responsive to Plaintiffs' RFPs within fourteen days of this Order, which is September 18, 2025. (Dkt. No. 97.) Defendants' request the Undersigned extend that deadline to twenty-one days. The Undersigned denies that request. (Dkt. No. 105.) On August 21, 2025, the Undersigned advised Defendants to prepare for prompt document production. (Dkt. No. 97.) Defendants have thus already had an additional 14 days to begin work on their response. While the Undersigned understands that some part of the production could not be finalized until this Court's ruling on the pending discovery dispute, Defendants could at least begin working on the production for the undisputed RFPs (1 & 2) and could likely anticipate what production would be required based on the parties' similar litigation before the Undersigned in *National TPS Alliance v. Noem*, No. 25-cv-01766-EMC. Accordingly, the deadline for Defendants' production remains September 18, 2025.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**CONCLUSION**

Defendants are required to produce the ten documents withheld from the administrative records pursuant to the deliberative process privilege by September 8, 2025. Defendants are required to produce documents responsive to Plaintiffs' RFPs, as limited by this order, by September 18, 2025.

**IT IS SO ORDERED**.

Dated: September 5, 2025



SALLIE KIM
United States Magistrate Judge