BRETT SHUMATE
Assistant Attorney General
YAAKOV M. ROTH
Deputy Assistant Attorney General
Civil Division
WILLIAM H. WEILAND
Acting Assistant Director
ANNA L. DICHTER
Senior Litigation Counsel
ERIC SNYDERMAN
ANNA DICHTER
LAUREN BRYANT
CATHERINE ROSS
JEFFREY HARTMAN
DANIEL CAPPELLETTI
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al*., <br><br> Plaintiffs, <br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al*., <br><br> Defendants. | Case No. 3:25-cv-5687 <br><br> **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> Judge: Hon. Trina L. Thompson <br> Date:  October 14, 2025 <br> Time:  2:00 p.m. <br> Place: Courtroom 9, 19th Floor, <br>          San Francisco U.S. Courthouse |

1    Dated: September 9, 2025                    Respectfully submitted,

2                                                BRETT SHUMATE
                                                 Assistant Attorney General
3

4                                                YAAKOV M. ROTH
                                                 Deputy Assistant Attorney General
5                                                Civil Division

6                                                WILLIAM H. WEILAND
                                                 Acting Assistant Director
7

8                                                ANNA L. DICHTER
                                                 Senior Litigation Counsel
9

10                                               ERIC SNYDERMAN
                                                 SHELBY WADE
                                                 LAUREN BRYANT
11                                               CATHERINE ROSS
                                                 JEFFREY HARTMAN
12                                               Trial Attorneys

13                                               */s/ Daniel M. Cappelletti*
                                                 DANIEL M. CAPPELLETTI
14                                               Trial Attorney (DC Bar 1672879)
                                                 U.S. Department of Justice, Civil Division
15                                               Office of Immigration Litigation
                                                 General Litigation and Appeals Section
16                                               P.O. Box 868, Ben Franklin Station
                                                 Washington, D.C. 20044
17                                               Tel: (202) 353-2999
                                                 daniel.cappelletti@usdoj.gov
18

19                                               *Attorneys for the Defendants*

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................1

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND ...............................................................................................................3

    I.      STATUTORY BACKGROUND.................................................................3

    II.     FACTUAL BACKGROUND ......................................................................4

         A.      Nepal ...............................................................................................4

         B.      Honduras .........................................................................................5

         C.      Nicaragua ........................................................................................6

STANDARD OF REVIEW ................................................................................................8

ARGUMENT .....................................................................................................................8

    I.      THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' ENTIRE
        ACTION ...................................................................................................8

         A.      The TPS Statute Bars Plaintiffs' Claims .........................................8

         B.      The APA Precludes Review of an Agency's Discretionary
              Determinations ...............................................................................11

         C.      Section 1252(f)(1) Precludes Plaintiffs' Requested Relief ...................13

    II.     PLAINTIFFS' APA CLAIMS SHOULD BE DISMISSED BECAUSE THE
        SECRETARY'S DETERMINATIONS WERE NOT CONTRARY TO LAW,
        IN EXCESS OF STATUTORY LIMITATIONS, OR OTHERWISE
        UNLAWFUL .............................................................................................15

    III.    PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF
        LAW .........................................................................................................18

CONCLUSION..................................................................................................................23

1

## TABLE OF AUTHORITIES

2

### <u>CASES</u>

3

*Aberdeen & Rockfish R.R. v. Students Challenging Regulatory Agency Procedures (SCRAP),*
4
  422 U.S. 289 (1975) ................................................................................................................ 14

5
*Ali v. Fed. Bureau of Prisons,*
  552 U.S. 214 (2008) ................................................................................................................ 10
6

*Bell Atl. Corp. v. Twombly,*
7
  550 U.S. 544 (2007) .................................................................................................................. 8

8
*Biden v. Texas,*
9
  597 U.S. 785 (2022) ................................................................................................................ 13

10
*Bouarfa v. Mayorkas,*
  604 U.S. 6 (2024) .................................................................................................................... 13
11

*California v. Grace Brethren Church,*
12
  457 U.S. 383 (1982) ................................................................................................................ 14

13
*California v. Grace Brethren Church,*
  457 U.S. 393 (1982) ................................................................................................................ 15
14

*Dan's City Used Cars, Inc. v. Pelkey,*
15
  569 U.S. 251 (2013) .................................................................................................................. 9

16
*Dep't of Com. v. New York,*
17
  588 U.S. 752 (2019) ................................................................................................................ 16

18
*Direct Mktg. Ass'n v. Borhl,*
  575 U.S. 1 (2015) .................................................................................................................... 14
19

*Egbert v. Boule,*
20
  596 U.S. 482 (2022) .................................................................................................................. 9

21
*Herguan University v. Immig. and Cust. Enf't,*
22
  258 F. Supp. 3d 1050 (N.D. Cal. 2017) .................................................................................... 8

23
*FDA v. Wages and White Lion Invs., L.L.C.,*
  145 S. Ct. 898 (2025) .............................................................................................................. 18
24

*Fiallo v. Bell,*
25
  430 U.S. 787 (1977) ......................................................................................................... 19, 20

26
*Galvan v. Press,*
27
  347 U.S. 522 (1954) ................................................................................................................ 19

28

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

*Galvez v. Jaddou,*
  52 F.4th 821 (9th Cir. 2022) .......................................................................... 13

*Garland v. Aleman Gonzalez,*
  596 U.S. 543 (2022)....................................................................... 9, 13, 15

*Harisiades v. Shaughnessy,*
  342 U.S. 580 (1952) .................................................................................... 19

*Helgeson v. Bureau of Indian Affairs,*
  153 F.3d 1000 (9th Cir. 1998) .................................................................... 11

*Jordan v. Presidio Tr.,*
  No. 16-CV-02122-KAW, 2017 WL 5479607 (N.D. Cal. Nov. 15, 2017) ........................................... 8

*Kleindienst v. Mandel,*
  408 U.S. 753 (1972)..................................................................................... 19

*Lackey v. Stinnie,*
  145 S. Ct. 659 (2025)..................................................................................... 1

*Lamar, Archer & Cofrin, LLP v. Appling,*
  584 U.S. 709 (2018)........................................................................................ 9

*Lincoln v. Vigil,*
  508 U.S. 182 (1993)..................................................................................... 11

*Mathews v. Diaz,*
  426 U.S. 67 (1976) ...................................................................................... 19

*National TPS Alliance v. Noem,*
  Case No. 25-2120, 2025 WL 2487771 (9th Cir. Aug. 29, 2025)........................................ 15

*Newdow v. Roberts,*
  603 F.3d 1002 (D.C. Cir. 2010) .................................................................. 15

*Nixon v. Fitzgerald,*
  457 U.S. 731 (1982)..................................................................................... 22

*Patel v. Garland,*
  596 U.S. 328 (2022)..................................................................................... 10

*Ramos v. Wolf,*
  975 F.3d 872 (9th Cir. 2020) ............................................................ 10, 16, 22

*Ramos v. Wolf,*
  59 F.4th 1010 (9th Cir. 2023) .................................................................... 10

*Rank v. Nimmo*,
    677 F.2d 692 (9th Cir. 1982) ............................................................................................ 12

*Regents of Univ. of Cal.*,
    591 U.S. 1 (2020) ................................................................................................... 20, 21

*Reno v. Am.-Arab Anti-Discrim. Comm.*,
    525 U.S. 471 (1999) ............................................................................................... 8

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ............................................................................... 15

*Sanchez v. Mayorkas*,
    593 U.S. 409 (2021) ............................................................................................... 4

*Savage v. Glendale Union High Sch.*,
    343 F.3d 1036 (9th Cir. 2003) ............................................................................... 8

*Sheldon v. Sill*,
    49 U.S. 441 (1850) ................................................................................................. 9

*Staub v. Proctor Hosp.l*,
    562 U.S. 411 (2011) ............................................................................................... 22

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ............................................................................... 3, 19, 20, 21

*U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*,
    508 U.S. 439 (1993) ............................................................................................... 13

*United States v. Carroll*,
    105 F.3d 740 (1st Cir. 1997) ................................................................................. 13

*United States v. Nixon*,
    418 U.S. 683 (1974) ............................................................................................... 22

*United States v. Texas*,
    599 U.S. 670 (2023) ............................................................................................... 14

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ............................................................................... 3, 20, 21

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ............................................................................... 8

*Yu v. Chertoff*, No. C,
    06-7878CW, 2007 WL 1742850 (N.D. Cal. June 14, 2007) ................................. 8

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

1

## **STATUTES**

2   1 U.S.C. § 204(a) .................................................................................................... 13

3   5 U.S.C. § 501(a)(2) ............................................................................................... 12

4   5 U.S.C. § 701(a)(1) ............................................................................................... 10

5   5 U.S.C. § 701(a)(2) .................................................................................... 3, 11, 12

6   5 U.S.C. § 706(2) ................................................................................................ 2, 14

7   8 U.S.C. § 1252(f)(1) ..................................................................... 3, 13, 14, 15

8   8 U.S.C. § 1252a(2)(B)(ii) ..................................................................................... 12

9   8 U.S.C. § 1254a .......................................................................................... 2, 13, 14

10  8 U.S.C. § 1254a(a) ................................................................................................... 4

11  8 U.S.C. § 1254a(b) ................................................................................................. 20

12  8 U.S.C. § 1254a(b)(1) ............................................................................. 1, 4, 11, 12

13  8 U.S.C. § 1254a(b)(1)(A) ..................................................................................... 6, 7

14  8 U.S.C. § 1254a(b)(1)(B) ................................................................................. 16, 17

15  8 U.S.C. § 1254a(b)(1)(B)(i) .................................................................................. 16

16  8 U.S.C. § 1254a(b)(1)(B)(ii) ........................................................................... 12, 17

17  8 U.S.C. § 1254a(b)(1)(C) ...................................................................................... 11

18  8 U.S.C. § 1254a(b)(2) ...................................................................................... 4, 7, 9

19  8 U.S.C. § 1254a(b)(3)(A) ............................................................................ 4, 15, 17

20  8 U.S.C. § 1254a(b)(3)(B) ............................................................................ 1, passim

21  8 U.S.C. § 1254a(b)(3)(C) ................................................................................. 4, 15

22  8 U.S.C. § 1254a(b)(5)(A) ........................................................................ 2, 4, 9, 10

23  8 U.S.C. § 1254a(c) ................................................................................................... 4

24  8 U.S.C. § 1254a(d)(3) ........................................................................................... 12

25  Pub. L. No. 101-649 .................................................................................................. 3

Pub. L. No. 104-208 .................................................................................................... 13

**RULES**

Fed. R. Civ. 12(b)(1) ............................................................................................. 1, 8, 23

Fed. R. Civ. 12(b)(6) ......................................................................................... 1, 3, 8, 23

**REGULATIONS**

*Termination of Designation of Lebanon Under TPS Program*, 58 Fed. Reg. 7,582 ............................ 2, 18

*Designation of Honduras Under [TPS]*, 64 Fed. Reg. 524 .................................................... 5

*Designation of Nicaragua Under [TPS]*, 64 Fed. Reg. 526 ................................................... 6

*Termination of Guinea's Designation for TPS*, 81 Fed. Reg. 66,064 ....................................... 2

*Termination of Designation of Angola Under the TPS Program*, 68 Fed. Reg. 3,896 ......................... 18

*Termination of the Designation of Montserrat Under the  TPS*, 69  Fed.  Reg. 40,642 ...................... 2

*Designation of Nepal for [TPS]*, 80 Fed. Reg. 36,346 ..................................................... 4

*Extension of the Designation of Nepal for [TPS]*, 81 Fed. Reg. 74,470 .................................... 4

*Termination of the Designation of Nicaragua for [TPS]*, 82 Fed. Reg. 59,636 ............................. 6

*Termination of the Designation of Honduras for [TPS]*, 83 Fed. Reg. 26,074 ............................... 5

*Extension of the [TPS] Designation for Honduras*, 88 Fed. Reg. 40,304 ................................... 6

*Extension of the [TPS] Designation for Nicaragua*, 88 Fed. Reg. 40,294 .................................. 6

*Extension of the [TPS] Designation for Nepal*, 88 Fed. Reg. 40,317 ...................................... 5

*Designating Cartels and Other Foreign Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists,*
    90 Fed. Reg. 8,439 .................................................................................. 21

*Designating Cartels and Other Foreign Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists,*
    90 Fed. Reg. 10,030 ................................................................................. 21

*Nepal Termination*, 90 Fed. Reg. 24,151 ............................................................. 16, 17

*Nepal Termination*, 90 Fed. Reg. 21,152 ..................................................... 5, 10, 11, 12, 20

*Nepal Termination*, 90 Fed. Reg. 21,153 .............................................................. 5, 11

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

*Nepal Termination*, 90 Fed. Reg. 24,154 .................................................... 18

*Nicaragua Termination*, 90 Fed. Reg. 30,087 .............................................. 6

*Nicaragua Termination*, 90 Fed. Reg. 30,086 ................................... 7, 10, 11, 20

*Nicaragua Termination*, 90 Fed. Reg. 30,087 ................................... 16, 17, 18

*Nicaragua Termination*, 90 Fed. Reg. 30,088 .............................................. 7

*Nicaragua Termination*, 90 Fed. Reg. 30,089 .............................................. 12

*Honduras Termination*, 90 Fed. Reg. 30,089 ......................... 12, 16, 17, 18

*Honduras Termination*, 90 Fed. Reg. 30,090 .............................................. 5

*Honduras Termination*, 90 Fed. Reg. 30,091 ................................... 6, 10, 11

## <u>OTHER AUTHORITIES</u>

Executive Order No. 14157 ..................................................................... 16, 21

1

**NOTICE OF MOTION**

2      PLEASE TAKE NOTE THAT at 2:00 p.m. PDT on October 14, 2025, or as soon thereafter as this

3  matter may be heard, before the Honorable Trina L. Thompson of the United States District Court for the

4  Northern District of California, Defendants move to dismiss the Complaint pursuant to Federal Rules of

5  Civil Procedure 12(b)(1) and 12(b)(6).

6      Defendants seek an order dismissing the Complaint because: (1) the Court lacks jurisdiction over

7  Plaintiffs' claims; (2) the Secretary's Temporary Protected Status (TPS) determinations did not violate the

8  Administrative Procedure Act (APA); and (3) Plaintiffs have not alleged a plausible Equal Protection

9  claim as a matter of law. Accordingly, dismissal is warranted pursuant to Federal Rules 12(b)(1) and

10 12(b)(6).[1]

11

**PRELIMINARY STATEMENT**

12      This action concerns Secretary Noem's determinations that the TPS designations for Nepal,

13 Nicaragua, and Honduras should be terminated because those countries no longer meet the statutory

14 standard for continued designation. TPS is a humanitarian program that affords temporary relief from

15 removal to certain aliens who are in the United States when their country of nationality experiences armed

16 conflict, natural disaster, or other extraordinary and temporary conditions and who are thus temporarily

17 unable to return home safely. 8 U.S.C. § 1254a(b)(1). The TPS statute vests the Secretary with broad

18 discretion over TPS designations, and when the Secretary determines that a country no longer meets the

19 conditions for designation, the statute requires her to terminate it, 8 U.S.C. § 1254a(b)(3)(B), as Secretaries

20

21

22

23 [1] Defendants acknowledge that the Court granted postponement of the 2025 terminations of TPS for
   Honduras, Nicaragua, and Nepal, concluding that Plaintiffs would likely succeed on the merits. ECF No.
24 73. Defendants respectfully maintain that that decision was in error and note that the Ninth Circuit granted
   their motion to stay this Court's order granting postponement pending appeal. *See National TPS Alliance*
25 *et al. v. Noem et al.*, Case No. 25-4901 (9th Cir.) (Dkt No. 9.1). Regardless, the Court's ruling on interim
   relief does not control at this stage, and the Court can and should consider Defendants' arguments anew.
26 *See, e.g., Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025) (preliminary relief based on likely success "do[es]
   not conclusively resolve" a case and is not "tantamount to [a] decision[] on the underlying merits").
27 DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
   No. 3:25-cv-5687
28                                                      1

have done in nearly every administration since TPS was created.[2] To protect the Secretary's wide discretion in this fast-moving area of foreign affairs, Congress shielded those determinations from judicial review with a jurisdictional bar of exceptional clarity and scope: "*There is no judicial review of any determination of the [Secretary]* with respect to the designation, or termination or extension of a designation, of a foreign state." 8 U.S.C. § 1254a(b)(5)(A) (emphasis added).

Plaintiffs are ten individual TPS beneficiaries, as well as one organization, National TPS Alliance (NTPSA). They sued under the Administrative Procedure Act (APA), alleging that Secretary Noem's TPS determinations for Nepal, Honduras, and Nicaragua were arbitrary and capricious under 5 U.S.C. § 706(2). ECF No. 1 ("Compl.") ¶¶ 154-156, 160. Plaintiffs also claim that the determinations were motivated by discriminatory animus in violation of the Equal Protection component of the Fifth Amendment's Due Process Clause. Compl. ¶ 164. Plaintiffs ask the Court to, *inter alia*, (1) set aside the terminations of TPS for Honduras, Nepal, and Nicaragua as unlawful under the APA; (2) postpone or stay the terminations of TPS for all three countries; and (3) enjoin and restrain Defendants from enforcing the three countries' TPS terminations. Compl. ¶¶ 166-170. Secretary Noem, the Department of Homeland Security (DHS), and the United States of America (collectively "Defendants") respectfully move this Court to dismiss the Complaint in its entirety.

First, the TPS statute broadly prohibits judicial review of "any determination of the Secretary with respect to" TPS designations, terminations, or extensions. 8 U.S.C. § 1254a(b)(5)(A). Each of the Secretary's decisions is a "determination" relating to a "termination" of a designation under 8 U.S.C. § 1254a. *Id.* Plaintiffs challenge the basis of and procedure for Secretary Noem's terminations of TPS designations for Honduras, Nepal, and Nicaragua and seek to set those determinations aside. However,

---

[2] *See*, *e.g.*, Termination of Designation of Lebanon Under Temporary Protected Status Program, 58 Fed. Reg. 7582 (Feb. 8, 1993); Termination of the Designation of Montserrat Under the  Temporary Protected Status Program, 69 Fed. Reg. 40,642 (July 6, 2004); Six-Month Extension of Temporary Protected Status Benefits for Orderly Transition Before Termination of Guinea's Designation for Temporary Protected Status, 81 Fed. Reg. 66,064 (Sept. 26, 2016).

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

2

these challenges to the Secretary's determinations fall squarely within the statute's bar on judicial review. Second, Plaintiffs' claims are inconsistent with the principle that the APA does not allow for review of agency action that is committed to agency discretion by law. 5 U.S.C. § 701(a)(2). Third, Plaintiffs' claims are also foreclosed by 8 U.S.C. § 1252(f)(1), which bars district courts from "enjoin[ing] or restrain[ing]" the operation of certain provisions of the INA.

Even if the Court finds that it has jurisdiction, Plaintiffs fail to state a claim on the merits for both the APA and Equal Protection claims. The terminations of TPS for Honduras, Nepal, and Nicaragua were not arbitrary and capricious under the APA—rather, they were based on Secretary Noem's determination that those countries no longer met the requisite conditions for their TPS designations, in accordance with 8 U.S.C. § 1254a(b)(3)(B). Plaintiffs' equal protection and due process claims are equally unavailing because they fail to plausibly allege that the Secretary was motivated by discriminatory animus. Secretary Noem's determinations are facially legitimate and not motivated by racially discriminatory intent. That is true under the correct standard—the deferential review applicable to such claims in the immigration context, *Trump v. Hawaii*, 585 U.S. 667 (2018)—and under the standard proposed by Plaintiffs. Compl. ¶ 163; *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).

For these reasons, the Court should dismiss this action with prejudice pursuant to Rule 12(b)(1) or 12(b)(6).

## BACKGROUND

## I.    STATUTORY BACKGROUND

The Immigration Act of 1990 established a program for providing temporary shelter in the United States on a discretionary basis for aliens from designated countries experiencing ongoing armed conflict, environmental disaster, or "extraordinary and temporary conditions" that temporarily prevent the aliens' safe return or, in the case of environmental disasters, temporarily render the country unable to handle adequately the return of its nationals. Pub. L. No. 101-649, 104 Stat. 4978. The statute authorizes the Secretary of Homeland Security, "after consultation with appropriate agencies of the Government," to designate countries for "Temporary [P]rotected [S]tatus," only if she finds that (in pertinent part):

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

3

****

(B) … there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state resulting in a substantial, but temporary, disruption of living conditions in the area affected [such that] the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state[.]

8 U.S.C. § 1254a(b)(1).

When the Secretary designates a country for TPS, eligible aliens who are granted TPS may not be removed from the United States and are authorized to work for the duration of the country's TPS designation, so long as they remain in valid temporary protected status. 8 U.S.C. § 1254a(a), (c); *see Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). Initial designations, and any extensions thereof, may not exceed eighteen months. *Id*. § 1254a(b)(2), (3)(C). The Secretary must consult with appropriate agencies and review each designation before it ends to determine whether the conditions for the country's designation continue to be met. *Id*. § 1254a(b)(3)(A). If the Secretary finds that the foreign state "no longer continues to meet the conditions for designation," she "shall terminate the designation" by publishing notice in the Federal Register of the determination and the basis for the termination. *Id*. § 1254a(b)(3)(B). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id*. § 1254a(b)(3)(C).

Finally, the statute makes the Secretary's TPS determinations unreviewable. "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id*. § 1254a(b)(5)(A).

## II.    FACTUAL BACKGROUND

### A.    Nepal

On June 24, 2015, the Secretary designated Nepal for TPS for a period of 18 months due to "substantial, but temporary, disruption of living conditions" resulting from an earthquake. *Designation of Nepal for [TPS]*, 80 Fed. Reg. 36,346 (June 24, 2015). TPS was extended for an additional 18 months on October 26, 2016. *Extension of the Designation of Nepal for [TPS]*, 81 Fed. Reg. 74,470 (Oct. 26, 2016).

In 2018, DHS announced the termination of TPS for Nepal. However, litigation resulted in the continued extension of TPS documentation for TPS recipients from Nepal for several years. *See Nepal Termination*, 90 Fed. Reg. at 24,152. In 2023, DHS reconsidered the 2018 decision to terminate TPS and again extended TPS for recipients from Nepal, "beginning on December 25, 2023, and ending on June 24, 2025." *Reconsideration and Rescission of Termination of the Designation of Nepal for [TPS]*; *Extension of the [TPS] Designation for Nepal*, 88 Fed. Reg. 40,317 (June 21, 2023).

On June 6, 2025, DHS published notice in the Federal Register that TPS for Nepal would be terminated effective on August 5, 2025. *Nepal Termination*, 90 Fed. Reg. at 21,512. As the FRN explained, Secretary Noem considered whether there continues to be a substantial, but temporary, disruption of living conditions in Nepal as a result of the earthquake and whether Nepal remains temporarily unable to adequately handle the return of Nepalese nationals. *Id*. The Secretary highlighted notable improvements to disaster preparedness and response, including the construction of disaster-resilient housing, infrastructure, and community systems. *Id*. at 21,512-13. The Secretary considered Nepal's significant reconstruction efforts, including statistics demonstrating that 88.36% of houses destroyed by the earthquake and 81.43% of damaged health facilities had been rebuilt. *Id.* As a result, the Secretary determined that "there is no longer a disruption of living conditions and Nepal is able to handle adequately the return of its nationals." *Id.* at 21,512. Finally, the Secretary considered Nepal's improving fiscal conditions. *Id.* at 21,513.

**B.    Honduras**

In 1999, the Attorney General designated Honduras for TPS for 18 months due to "environmental disaster and substantial disruption of living conditions caused by Hurricane Mitch." *Designation of Honduras Under [TPS]*, 64 Fed. Reg. 524 (Jan. 5, 1999). TPS was repeatedly extended for nearly twenty years until 2018, when the Secretary of Homeland Security terminated it. *Termination of the Designation of Honduras for [TPS]*, 83 Fed. Reg. 26,074 (June 5, 2018). After the 2018 termination announcement, litigation resulted in the continued extension of TPS documentation for Honduran TPS recipients for several years. *See Honduras Termination*, 90 Fed. Reg. at 30,090. In 2023, DHS reconsidered the 2018

decision to terminate TPS and extended TPS for Honduras through July 5, 2025. *Reconsideration and Rescission of Termination of the Designation of Honduras [TPS]; Extension of the [TPS] Designation for Honduras*, 88 Fed. Reg. at 40,304 (June 21, 2023). On July 8, 2025, DHS published notice in the Federal Register that TPS for Honduras would be terminated effective September 8, 2025. *Honduras Termination*, 90 Fed. Reg. at 30,091. As explained in the FRN, Secretary Noem "determined the conditions supporting Honduras' January 5, 1999, designation for TPS on the basis of environmental disaster due to Hurricane Mitch are no longer met." *Id.* As the FRN stated, "the conditions resulting from Hurricane Mitch no longer cause a 'substantial,' but temporary, disruption in living conditions in the area affected,' and Honduras is no longer 'unable, temporarily, to handle adequately the return of its nationals.'" *Id.* (quoting 8 U.S.C. § 1254a(b)(1)(A). The Secretary noted improvements to access to basic water sources, sanitation, and electricity, as well as strengthened disaster management capacity. *Id.* Further, significant hurricane recovery has transformed Honduras into a popular destination for tourists and real estate investors. *Id.* The Secretary observed that assistance from the World Bank has improved emergency response and post-disaster reconstruction efforts and that new projects are transforming Honduras's infrastructure and creating new jobs. *Id.*

### C.    Nicaragua

In 1999, the Attorney General designated Nicaragua for TPS for 18 months after an environmental disaster substantially disrupted living conditions, rendering Nicaragua temporarily unable to handle adequately the return of its nationals. *Designation of Nicaragua Under [TPS]*, 64 Fed. Reg. 526 (Jan. 5, 1999). TPS was extended for nearly two decades until 2017, when the Acting Secretary terminated it. *See Termination of the Designation of Nicaragua for [TPS]*, 82 Fed. Reg. 59,636 (Dec. 15, 2017). After the termination announcement, litigation resulted in the continued extension of TPS documentation for TPS recipients from Nicaragua for several years. *See Nicaragua Termination*, 90 Fed. Reg. at 30,087. In 2023, DHS reconsidered the 2018 decision to terminate TPS, resulting in another extension of TPS for recipients from Nicaragua through July 8, 2025. *Reconsideration and Rescission of Termination of the Designation of Nicaragua for [TPS]; Extension of the [TPS] Designation for Nicaragua*, 88 Fed. Reg. at 40,294 (June

21, 2023). On July 8, 2025, DHS published notice in the Federal Register that TPS for Nicaragua would be terminated effective on September 8, 2025. *Nicaragua Termination*, 90 Fed. Reg. at 30,086. As explained in the FRN, Secretary Noem, after consulting with the appropriate U.S. government agencies and reviewing country conditions information, determined that "the conditions supporting Nicaragua's January 5, 1999 designation for TPS on the basis of environmental disaster due to Hurricane Mitch are no longer met." *Id*. at 30,088. Secretary Noem found Nicaragua has made significant progress in recovering from the hurricane's destruction, including improvements to infrastructure, road and bridge construction, schools, and healthcare access. *Id*. Secretary Noem noted growth in Nicaragua's tourism, ecotourism, agriculture, and renewable energy industries and advances in farming and agriculture technology. *Id*. The FRN identifies improvements in housing and food security, as well as restoration of the healthcare sector. *Id*. Finally, Secretary Noem observed that Nicaragua's macroeconomic structure has stabilized, with a record high foreign reserve, sustainable debt load, and well-capitalized banking structure. *Id*.

Temporary Protected Status, as the name suggests, was always meant to be a temporary solution for exigent circumstances. *See* Black's Law Dictionary, 2024 (defining temporary as "[l]asting for a time only; existing or continuing for a limited time; transitory."). Congress set the upper limit for an initial TPS designation, and any extension thereof, as "not to exceed eighteen months." 8 U.S.C. § 1254a(b)(2), (3)(C). The disruption in living conditions must be both "substantial" and "temporary," and any inability to adequately[ handle the return of nationals likewise must be temporar[y]." *Id*. § 1254a(b)(1)(A). In the case of Honduras and Nicaragua, this temporary exigency was a hurricane that occurred in November 1998, more than a quarter-century ago. In the case of Nepal, it was an earthquake that occurred more than a decade ago. As the country conditions reports in each case reflect, each country has long overcome the initial unprecedented natural disaster that justified the initial designation in the first place. If the "temporary" in TPS is to have any meaning, it is imperative to both designate and terminate countries' TPS designation, consistent with the intent of the statute and consistent with repeated past termination of TPS designations by Democrat and Republican administrations alike.

**STANDARD OF REVIEW**

Dismissal is appropriate under Rule 12(b)(1) when the court lacks subject matter jurisdiction over the claim. *See Yu v. Chertoff*, No. C 06-7878CW, 2007 WL 1742850, at *1 (N.D. Cal. June 14, 2007); Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case." *Id.* A motion to dismiss for lack of subject matter jurisdiction must be granted if the complaint fails to allege facts sufficient to establish subject matter jurisdiction. *See Jordan v. Presidio Tr.,* No. 16-CV-02122-KAW, 2017 WL 5479607, at *3 (N.D. Cal. Nov. 15, 2017) (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

A court should dismiss for failure to state a claim under Rule 12(b)(6) when a complaint fails to plead enough facts to state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). When considering a motion made pursuant to Rule 12(b)(6), "a court may look beyond the complaint to matters of public record without having to convert the motion to one for summary judgment." *White v. Lee¸* 227 F.3d 1214, 1242 (9th Cir. 2000). When a district court reviews agency action under the APA, "the district judge sits as an appellate tribunal" *Herguan Univ. v. Immig. and Cust. Enf't*, 258 F. Supp. 3d 1050, 1063 (N.D. Cal. 2017) (internal quotations omitted). Accordingly, the case on review is a question of law, and the Court's review is limited as to whether the agency acted in an arbitrary and capricious manner. *Id.*

**ARGUMENT**

**I.    THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' ENTIRE ACTION**

**A.    The TPS Statute Bars Plaintiffs' Claims**

In the immigration context, Congress has enacted many limits on courts' authority to intervene in Executive Branch decision-making. *See, e.g.*, *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 486 (1999) (collecting such limits, and observing that "*many* provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts—indeed, that can fairly be said to be the theme of the legislation"). These limits reflect Congress's authority to determine which cases and claims lower

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

8

courts may hear and which ones to foreclose. *See* U.S. Const. art. III, § 1, cl. 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."); *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers."); *see, e.g.*, *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (recognizing that "Congress," not the courts, has the authority and ability to weigh the pros and cons of remedial schemes, including "economic and governmental concerns," "administrative costs," and the "impact on governmental operations systemwide"). These limitations operate, by Congress's design, to channel or foreclose even meritorious claims; indeed, that is precisely when they have teeth. *See, e.g.*, *Garland v. Aleman Gonzalez*, 596 U.S. 543, 554 & n.5 (2022) (explaining that it would be "unusual" for such a bar to foreclose review or relief only when a claim "already independently fails on the merits").

The TPS statute provides that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS relief. 8 U.S.C. § 1254a(b)(5)(A). This provision bars all of Plaintiffs' claims in this Court, whether statutory or constitutional, each of which challenges the Secretary's termination decisions. *Id.*; *see* H.R. Rep. No. 101-245, at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review"). The statute's broad terms confirm its broad sweep. The word 'any' carries an expansive meaning. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("of whatever kind"). And the phrase "with respect to" similarly "has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018); *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (the similar phrase "related to" means "having a connection with or reference to . . . whether directly or indirectly"); *see* Webster's New Collegiate Dictionary 1004 (9th ed. 1990) (defining "respect" as "a relation to or concern with something usually specified"). Indeed, the

Supreme Court held that materially similar jurisdiction stripping language in the INA precludes a whole category of judicial review. *Patel v. Garland*, 596 U.S. 328, 337-40 (2022) (statute barring review of "any judgment regarding the granting of relief" covers "any authoritative decision" on the matter).

Section 1254a plainly precludes judicial review of the Secretary's determinations because they are "determination[s] with respect to the termination" of the TPS designations for Nepal, Honduras, and Nicaragua. *Nepal Termination*, 90 Fed. Reg. at 21,152; *Honduras Termination*, 90 Fed. Reg. at 30,091; *Nicaragua Termination*, 90 Fed. Reg. at 30,086. A decision to terminate a TPS designation is at the core of the jurisdictional statute's broad sweep. Plaintiffs try to overcome this clear jurisdictional bar by challenging the factors and criteria that Secretary Noem used in making the determinations, Compl. ¶¶ 156 (a)-(f), as well as the effective dates of the terminations. *Id*. ¶ 160. But the TPS statute explicitly bars judicial review of termination decisions and encompasses these claims by barring review of "any determination" "with respect to" the "termination or extension of a designation" of a country for TPS. 8 U.S.C. § 1254a(b)(5)(A); *see Patel*, 596 U.S. at 338-39 (similar jurisdictional bar did not "restrict itself to certain kinds of decisions," but instead covered both subsidiary determinations and the ultimate, "last-in-time judgment" on the matter). Because the Secretary's determinations to terminate TPS for Nicaragua, Honduras, and Nepal were clearly determinations "with respect to" the TPS extension or termination, this Court lacks jurisdiction to review them. *See Ramos*, 975 F.3d 872, 889 (9th Cir. 2020) (this bar "preclude[s] direct review of the Secretary's country-specific TPS determinations"), *vacated*, 59 F.4th 1010, 1011 (9th Cir. 2023)). Review of the considerations and results of those considerations *is* a review of determination and is barred under the statute.

Accordingly, judicial review is foreclosed by § 1254a(b)(5)(A), and this Court should dismiss Plaintiffs' Complaint for lack of jurisdiction. As Congress has explicitly barred judicial review of TPS determinations, Plaintiffs' claims are likewise not reviewable under the APA. *See* Compl. ¶¶ 153-161. *See* 5 U.S.C. § 701(a)(1) (precluding review under the APA "to the extent" that other "statutes preclude judicial review").

B.      **The APA Precludes Review of an Agency's Discretionary Determinations**

The APA also separately precludes review where the agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The TPS statute commits the Secretary's determinations regarding TPS designations under § 1254a(b)(1), as applicable here, require assessments of foreign country conditions and a foreign country's ability to "adequately" handle the return of its nationals, which Congress left to the Secretary's informed, discretionary judgment (in consultation with other appropriate agencies), and are therefore not subject to judicial review. Such "subject matter is an area of executive action in which the courts have long been hesitant to intrude.'" *Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000, 1003 (9th Cir. 1998) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993).

Under 8 U.S.C. § 1254a(b)(1), the Secretary may designate a foreign country for TPS if she finds that certain considerations are met. The termination of a TPS designation, like the initial designation, is likewise left to the Secretary's discretion. 8 U.S.C. § 1254a(b)(3)(B) ("If the [Secretary] determines under subparagraph (A) that a foreign state . . . no longer continues to meet the conditions for designation under paragraph (1), the [Secretary] shall terminate the designation"). Here, the initial TPS designations were linked to the specific temporary events or conditions resulting from "an earthquake, flood, drought, epidemic, … other environmental disaster." 8 U.S.C. § 1254a(b)(1)(C). Therefore, in deciding whether to extend or terminate TPS for Honduras, Nepal, and Nicaragua, the Secretary considered whether the conditions that gave rise to the initial TPS designations persisted. With respect to Honduras and Nicaragua, for example, the Secretary determined that the disruption in living conditions giving rise to the 1999 TPS designation—the impact of Hurricane Mitch—were no longer met, noting substantial improvements to the countries' conditions. *See Honduras Termination*, 90 Fed. Reg. at 30,091; *Nicaragua Termination*, 90 Fed. Reg. at 30,086. In terminating the TPS designation for Nepal, the Secretary similarly concluded that the previous disruption in living conditions caused by the 2015 earthquake was no longer present, citing notable improvements to the country's disaster preparedness and response, including the construction of disaster-resilient housing, infrastructure, and community systems. *Nepal Termination*, 90 Fed. Reg. at 21,152-53. For all three terminations, the Secretary also determined that the respective country was no

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

11

longer "unable . . . to handle adequately the return," 8 U.S.C. 1254a(b)(1)(B)(ii), of its nationals as a result of the temporary emergency. *See Honduras Termination*, 90 Fed. Reg. at 30,089; *Nicaragua Termination*, 90 Fed. Reg. at 30,089; *Nepal Termination*, 90 Fed. Reg. at 24,152.

Each of these findings falls squarely within the Secretary's discretion under the statute. The Secretary's determination regarding the continued existence of conditions supporting the designation of a country for TPS under 8 U.S.C. § 1254a(b)(1) is committed solely to her discretionary judgment. 8 U.S.C. § 1254a(b)(3)(B). As such, this Court lacks jurisdiction to review any such determination. 5 U.S.C. § 701(a)(2).

The Secretary's decision whether to invoke the "option" under 8 U.S.C. § 1254a(d)(3) to afford TPS recipients an "orderly departure" period beyond the statutory default of 60 days is similarly committed to the Secretary's unfettered discretion. The statute contains clear discretionary language that commits the termination date to the Secretary's discretion: it provides the Secretary with the "option"— that is, "the right or power to choose," Black's Law Dictionary (12th ed. 2024)—whether to select a particular transition that "the [Secretary] determines to be appropriate." 8 UL.S.C. § 1254a(d)(3); *see* 5 U.S.C. § 501(a)(2); *Rank v. Nimmo*, 677 F.2d 692, 699 (9th Cir. 1982) (statute giving the VA Administrator the "option" to make specific payments made "clear that Congress intended to vest the widest discretion possible in the Administrator."

In addition, the INA bars judicial review of the Secretary's decision regarding any "orderly departure" period. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). Section 1252(a)(2)(B)(ii) bars review of any "decision or action of ... the Secretary of Homeland Security the authority for which is specified under [the INA] to be in the discretion of ... the Secretary ..." The statutory language in § 1254a(d)(3) exudes deference to the Secretary. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 13015 (2024) (holding that 8 U.S.C. § 1252a(2)(B)(ii) applies where, as here, the INA uses terms that "exude[ ] deference," "Congress has in no way prescribed how that discretion must be exercised," and "[t]here are no conditions that the Secretary must satisfy before" she can exercise her authority).

### C.    Section 1252(f)(1) Precludes Plaintiffs' Requested Relief

By seeking to "[e]njoin and restrain all Defendants … from enforcing the terminations of TPS for Honduras, Nepal, and Nicaragua," Compl. ¶ 170, Plaintiffs also seek the type of coercive order prohibited by 8 U.S.C. § 1252(f)(1). Section 1252(f)(1) bars district courts and courts of appeals from entering an order that "enjoin[s] or restrain[s]" the operation of the statutory provisions § 1252(f)(1) covers. Section 1254a is one of those covered provisions. Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), div. C, Pub. L. No. 104-208, §§ 306, 308, 110 Stat. 3009-546. Although Section 1254a has been placed in Part V of the U.S. Code, not the Part IV covered by § 1252(f)(1), the U.S. Code is inconsistent with the INA, wherein the TPS provisions in Section 244 appear in Chapter 4. *Id*. When there is a conflict, the INA prevails. *See Galvez v. Jaddou*, 52 F.4th 821, 830-31 (9th Cir. 2022); *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993) ("Though the United States Code is 'prima facie' evidence that a provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of laws,' [1 U.S.C.] § 112...."); *United States v. Carroll*, 105 F.3d 740, 744 (1st Cir. 1997) ("Conflicts between the text of a statute as it appears in the Statutes at Large, on one hand, and in usually reliable but unofficial sources such as the United States Code Annotated, on the other hand, are rare, but … the rendition of the law contained in the Statutes at Large controls."). INA § 244 lies within chapter 4 of title II of the INA, as amended, so § 1252(f)(1) applies to it.

Regardless of how Plaintiffs frame the relief sought, an order that would have the effect of enjoining or restraining DHS's implementation of the TPS provisions in § 1254a is jurisdictionally barred under § 1252(f)(1). *See Biden v. Texas*, 597 U.S. 785, 797 (2022) (§ 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or *to refrain from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions.") (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)) (emphasis added); *see also* Black's Law Dictionary (12th ed. 2024) (An injunction is "[a] court order commanding or preventing an action"). To "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. *Aleman Gonzalez*, 596 U.S. at 549 (quoting 5 Oxford

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

English Dictionary 756 (2d ed. 1989)). An order setting aside the Secretary's termination decisions would be an order "restraining" federal officials. *Id*. at 550.

Section 1252(f)(1) thus plainly bars classwide injunctive relief (which would impermissibly "enjoin" the operation of a covered provision) and classwide declaratory relief or relief under the APA (which would impermissibly "restrain" the covered provision's operation). *See California v. Grace Brethren Church*, 457 U.S. 383, 408 (1982) (holding that a similarly phrased provision barred declaratory relief). It does not matter for purposes of Section 1252(f)(1) whether Plaintiffs request an order postponing, staying, or setting aside the Secretary's determinations. Compl. ¶¶ 168-69. Like an injunction, an order to "set aside" the termination decisions "restrict[s] or stop[s] official action," *Direct Mktg. Ass'n v. Borhl*, 575 U.S. 1, 13 (2015), by prohibiting officials from relying on the agency's determinations. So a set-aside order remains the practical equivalent of an injunction compelling Defendants to stop enforcing the termination decisions—i.e., determinations made pursuant to 8 U.S.C. § 1254a. *See United States v. Texas*, 599 U.S. 670, 691 (2023) (Gorsuch, J., concurring) (questioning the validity of the district court's finding that § 1252(f)(1) does not bar vacatur orders and that § 706(2) authorizes courts to issue them). The Supreme Court has repeatedly given a broad interpretation to terms such as "injunction" in other statutes. For example, the Court interpreted a statute conferring jurisdiction over appeals from "injunction[s]" in certain civil actions to apply to orders with a "coercive" effect. *Aberdeen & Rockfish R.R. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 422 U.S. 289, 307 (1975). The Court commented that it had "repeatedly exercised jurisdiction under [the provision] over appeals from orders" that were "not cast in injunctive language but which by their terms simply 'set aside' or declined to 'set aside' orders of the [agency]." *Id.* at 308 n.11 (quotation omitted). Here, too, setting aside the Secretary's determinations qualifies as an injunction barred by § 1252(f)(1) because it would coerce and restrain the agency's operation of covered statutes. Thus, to the extent Plaintiffs continue to ask this Court to "[s]et aside" and "[p]ostpone or stay" the TPS terminations "from taking effect or being put into effect,"

Compl. ¶¶ 168-69, such an order would necessarily constitute an order "restraining" federal officials and is therefore equally prohibited by 8 U.S.C. § 1252(f)(1). *See Aleman Gonzalez*, 596 U.S. at 544.[3]

Finally, it remains the government's view that § 1252(f)(1) also bars declaratory relief. *See Aleman Gonzalez*, 596 U.S. at 551 n.2; *cf. California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (Tax Injunction Act barred declaratory relief as well as injunctive relief); *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010). The government recognizes, however, that the Ninth Circuit has held otherwise. *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010).

## II.    PLAINTIFFS' APA CLAIMS SHOULD BE DISMISSED BECAUSE THE SECRETARY'S DETERMINATIONS WERE NOT CONTRARY TO LAW, IN EXCESS OF STATUTORY LIMITATIONS, OR OTHERWISE UNLAWFUL

Even if judicial review were available, Plaintiffs' allegations that Defendants' termination of the TPS designations for Honduras, Nepal, and Nicaragua were unlawful under the APA still fail on the merits. Compl. ¶¶ 153-61. Plaintiffs cite various reasons why the TPS terminations were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," Compl. ¶ 156, none of which are persuasive.

The Secretary has been entrusted with broad authority in administering the TPS statute, and while § 1254a requires the Secretary to review conditions within foreign states designated for TPS periodically, any subsequent action turns on the Secretary's findings about whether the conditions for such designation continue to exist. 8 U.S.C. § 1254a(b)(3)(A)-(C). Additionally, if the Secretary, after conducting an in-depth review, determines that the conditions for a TPS designation no longer exist, she must terminate the designation. 8 U.S.C. § 1254a(b)(3)(B). Here, the Secretary took the steps required by the TPS statute, and Plaintiffs simply disagree with the outcome.

---

[3] Recently, the Ninth Circuit concluded that the Secretary likely lacked statutory authority to vacate a prior extension of TPS. *National TPS Alliance v. Noem*, Case No. 25-2120, 2025 WL 2487771 (9th Cir. Aug. 29, 2025). In doing so, the court held that "section 1252(f)(1)'s bar on injunctive relief for claims does not affect challenges to actions that fall outside of a statutory grant of authority." *Id.* at *11. Plaintiffs' make no claim, and none can be made, that the Secretary exceeded her statutory authority when terminating TPS designations for Honduras, Nicaragua, or Nepal. *See generally* Compl.

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

Plaintiffs' allegation that Secretary Noem's determinations for Honduras, Nepal, and Nicaragua were predetermined and not based on an objective review of country conditions, Compl. ¶ 156(a), is belied by even a cursory inspection of the FRNs announcing the terminations. *See Nepal Termination*, 90 Fed. Reg. at 24,151; *Honduras Termination*, 90 Fed. Reg. at 30,089; *Nicaragua Termination*, 90 Fed. Reg. 30,087 (July 8, 2025). First, Plaintiffs point to the FRNs' references to Executive Order 14,159, Compl. ¶¶ 63, 68, 69, to suggest that the Secretary's determination is the result of a "preordained, political decision." Compl. ¶ 156. Although the Secretary acknowledged that she considered, among other things, the Administration's immigration policy prerogatives, "[i]t is hardly improper for an agency head to come into office with policy preferences and ideas, discuss them with affected parties, sound out other agencies for support, and work with staff attorneys to substantiate the legal basis for a preferred policy." *Dep't of Com. v. New York*, 588 U.S. 752, 783 (2019). As the Supreme Court explained, "a court may not set aside an agency's policymaking decision solely because it may have been influenced by political considerations or prompted by an Administration's priorities …. Such decisions are routinely informed by unstated considerations of politics, the legislative process, public relations, interest groups, foreign relations, and national security concerns (among others)." *Id.* at 782; *see also Ramos*, 975 F.3d at 897-98 ("It is expected—perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies.").

Plaintiffs further allege that the TPS determinations for Honduras, Nepal, and Nicaragua were statutorily deficient because they were based on a "limited" analysis of the countries' conditions. Compl. ¶¶ 63, 68, 69. That allegation is implausible in light of the Secretary's published reasoning and the statutory requirements. In terminating the TPS designations for Honduras, Nepal, and Nicaragua, Secretary Noem analyzed the current conditions of each country to determine whether the conditions that gave rise to the initial TPS designations persisted, following the statute to the letter. The statute ties these countries' TPS designations to specific events—*i.e.*, "an earthquake, flood, drought, epidemic, [or] … other environmental disaster." 8 U.S.C. § 1254a(b)(1)(B). The statute emphasizes that the conditions that give rise to the TPS designation must be "substantial" and "temporary." *See id.* § 1254a(b)(1)(B)(i) (the

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

Secretary may designate a country for TPS if she finds, among other things, that an environmental disaster causes a "substantial, but temporary, disruption of living conditions"). They must also be substantial enough that "the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state. *Id*. § 1254a(b)(1)(B)(ii). Thus, when the statute mandates that the Secretary periodically evaluate whether "the conditions for [a country's TPS] designation … continue to be met," *id*. § 1254a(b)(3)(A), it follows that the Secretary is to evaluate whether the "temporary" conditions caused by the event that gave rise to the TPS designation continue to exist to such an extent that the foreign state is "*unable*, *temporarily*, to *handle adequately* the return" of its nationals.

Here, Secretary Noem's determinations were clearly consistent with this requirement. *See Nepal Termination*, 90 Fed. Reg. at 24,151 (finding conditions supporting Nepal's June 24, 2015 designation for TPS on the basis of the earthquake are no longer met); *Honduras Termination*, 90 Fed. Reg. at 30,089 (finding that the conditions supporting Honduras' January 5, 1999 designation for TPS on the basis of environmental disaster caused by Hurricane Mitch over 2 decades ago are no longer met); *Nicaragua Termination*, 90 Fed. Reg. at 30,087 (finding that the conditions supporting Nicaragua's January 5, 1999 designation for TPS on the basis of environmental disaster caused by Hurricane Mitch over two decades ago are no longer met.). Nothing in the statute suggests that periodic evaluation of a TPS designation must incorporate intervening country conditions unrelated to the reason for the initial designation. Compl. ¶ 156. In any event, the Secretary's determinations reflected that, whatever intervening changes had occurred since the initial designation, the current country conditions did not meet the statutory criteria for designation and the respective country can adequately handle the return of its nationals.

Finally, Plaintiffs' contention that the Secretary's determinations deviate from past practice *sub silentio* is also without merit. Compl. ¶ 159. Plaintiffs argue that setting a 60-day transitional period prior to the expiration of a TPS statute is arbitrary and capricious. But that is the default time period deemed sufficient by the TPS statute itself. 8 U.S.C. § 1254a(b)(3)(B) (termination "shall not be effective earlier than 60 days after the date the notice is published or, if later, the expiration of the most recent previous extension"). The Secretary followed the statute to the letter by publishing notice of her determination

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

17

terminating TPS for Nepal on June 6, 2025, with an effective date of August 5, 2025—i.e., 60 days later. *Nepal Termination*, 90 Fed. Reg. at 24,151. *See* 8 U.S.C. § 1254a(b)(3)(B).

Plaintiffs' contention that the Secretary "depart[ed] from prior policy … or simply disregard[ed] the rules that are still on the books" is implausible. Compl. ¶ 159. There is no existing policy with respect to the length of TPS wind-down periods. Notices of the Secretary's determinations terminating TPS for Honduras and Nicaragua were published in the Federal Register on July 8, 2025, with an effective date of September 8, 2025—establishing a 60-day timeline for the respective TPS terminations. *Honduras Termination*, 90 Fed. Reg. at 30,089; *Nicaragua Termination*, 90 Fed. Reg. at 30,087. Previous TPS terminations have given the same wind-down period. *See Nepal Termination*, 90 Fed. Reg. at 24,154 (citing *Termination of Designation of Angola Under the TPS Program*, 68 Fed. Reg. 3,896 (Jan. 27, 2003); *Termination of Designation of Lebanon Under TPS Program*, 58 Fed. Reg. 7,582 (Feb. 8, 1993)). And the substantial variation in length of wind-down periods for prior TPS terminations, ECF No. 28, dispels the idea that DHS has made any "hard-and-fast commitment" to afford a longer post-termination period, let one alone a firm "earlier [agency] position" on setting such periods in which a TPS recipient could conceivably have a legitimate reliance interest. *FDA v. Wages and White Lion Invs.*, L.L.C., 145 S. Ct. 898, 918-27 (2025).

The termination decisions are the result of a careful analysis undertaken by a Cabinet official in consultation with other Cabinet officials and their agencies, the upshot of which was that the conditions giving rise to the country's TPS designation no longer persisted. Plaintiffs have not stated a claim that the Secretary deviated from this statutory framework or "disregard[ed] rules that are still on the books" in her decision-making process, and their APA claim should be dismissed. Compl. ¶ 159.

## III.    PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW

Even if the Court finds that it has jurisdiction to consider Plaintiffs' constitutional claims, Secretary Noem's determinations terminating TPS for Honduras, Nepal, and Nicaragua did not violate the Fifth Amendment.

Plaintiffs' assertion that the Secretary's termination of TPS designations for Honduras, Nepal, and Nicaragua are "unconstitutional because they were motivated, at least in part, by intentional discrimination based on race, ethnicity, and national origin," are baseless. Compl. ¶ 164. The Supreme Court has made it clear that where, as here, a decision is based on immigration policy, courts cannot look behind facially legitimate actions to hunt for illicit purposes. *See Hawaii*, 585 U.S. at 703-04. The deferential standard set out in *Trump v. Hawaii* applies here, and the Secretary's decisions easily pass muster under it. "'Any rule of constitutional law that would inhibit the flexibility' of the President 'to respond to changing world conditions should be adopted only with the greatest caution,' and [the Court's] inquiry into matters of entry and national security is highly constrained." *Id*. at 704.

The Supreme Court "ha[s] long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control[.]" *Fiallo v. Bell*, 430 U.S.787, 792 (1977). Because decisions in these matters implicate "relations with foreign powers" and involve "classifications … defined in the light of changing political and economic circumstances," such judgments "are frequently of a character more appropriate to either the Legislature or the Executive." *Mathews v. Diaz*, 426 U.S. 67, 81 (1976); *see also Galvan v. Press*, 347 U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government"). Decisions by the political branches about which classes of aliens to exclude or expel will generally be upheld against constitutional challenges so long as they satisfy deferential rational-basis review. *Hawaii*, 585 U.S. at 704-05; *see also Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972) (judicial review of "[p]olicies pertaining to the entry of aliens and their right to remain here" is limited to whether the Executive gave a "facially legitimate and bona fide" reason for action); *Mathews*, 426 U.S. at 82 (a "narrow standard of review" applies to "decisions made by Congress or the President in the area of immigration and naturalization"); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952).

The holdings in *Hawaii*, *Mandel*, and *Fiallo* support the application of rational basis review in this case. In addition to reviewing country conditions and consulting with appropriate government agencies,

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

19

the Secretary's determinations appropriately considered whether the foreign states were able to handle the return of their nationals. Such an official determination about a foreign country is replete with sensitive foreign policy considerations that affect the United States' "relations with foreign powers" and "which involve classifications defined in the light of changing political and economic circumstances," *Hawaii*, 585 U.S. at 702. As such, this is precisely the situation in which the Supreme Court has repeatedly applied rational-basis review. *See id.*; *see also Fiallo*, 430 U.S. at 799.

Even under the higher standard Plaintiffs invoke,[4] Compl. ¶ 163, their Equal Protection claim still fails. Plaintiffs cannot show that the Secretary's TPS determinations were "motivated by animus or discriminatory intent based on race, national origin, and ethnicity," Compl. ¶ 164, through statements taken out of context and without direct links to the Secretary's determinations. *See DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 34-35 (2020) (explaining that disparate impact, unusual recission history, and pre- and post-election statements failed "to raise a plausible inference that the recission was motivated by animus").

Here, Plaintiffs fail to plausibly allege discriminatory animus. Secretary Noem provided reasoned, facially sufficient explanations for her determinations. As discussed above, the Secretary reviewed the current conditions in Honduras, Nepal, and Nicaragua to determine whether there continued to be a substantial disruption of living conditions that rendered the respective countries unable to handle the return of their nationals, in accordance with 8 U.S.C. § 1254a(b). The Federal Register Notices published for each country outlined positive improvements in the countries' conditions that informed the Secretary's decision to terminate TPS for each country and explained why these countries were well able to now handle the return of their nationals. *Honduras Termination*, 90 Fed. Reg. at 30,091; *Nepal Termination*, 90 Fed. Reg. at 21,152; *Nicaragua Termination*, 90 Fed. Reg. at 30,086. Plaintiffs ignore these stated justifications, and instead cherry-pick external statements, social media posts, and media appearances from the Secretary to infer an overarching discriminatory motive with respect to TPS terminations as a

---

[4] *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977).

whole. Compl. ¶¶ 86-94. However, Plaintiffs take Secretary Noem's statements out of context and mischaracterize them as supposedly portraying "non-white, non-European immigrants" as "dirt bags." Compl. ¶ 89. This gross mischaracterization of a snippet of her interview appears deliberate, since during the interview the Secretary explained that she had been in New York City to help arrest a ringleader of Tren de Aragua and it was these violent gang members—"dirtbags"—that the people wanted removed from their communities.  Compl. ¶ 89 n.37. Plaintiffs dubiously urge the Court to find that the Secretary's "dirtbag" comment was meant to apply to all non-white, non-European immigrants, when she was clearly directing her comment to members of Tren de Aragua specifically—a group that the President has designated as a foreign terrorist organization. *See Designating Cartels and Other Foreign Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists,* Exec. Order No. 14157, 90 Fed. Reg. 8,439 (Jan. 29, 2025); *see also* 90 Fed. Reg. 10,030 (Feb. 20, 2025) (State Department designation).

Unable to point to any comments by Secretary Noem specifically discussing Honduras, Nicaragua, or Nepal, Plaintiffs turn to similarly generalized, unrelated, and misconstrued statements by the President, none of which mention Honduras, Nepal, or Nicaragua. Compl. ¶¶ 95-118. Reyling entirely upon this "cat's paw theory," Plaintiffs fail to show how such statements or prior conduct can be connected or extended to the determinations at issue here. Moreover, most of the statements—similar to those challenged and rejected in *Hawaii*—were "remote in time and made in unrelated contexts" and therefore "do not qualify as 'contemporary statements' probative of the decision at issue." *Regents of the Univ. of Cal.*, 591 U.S. at 35 (opinion of Roberts, C.J.) (quoting *Arlington Heights*, 429 U.S. at 268); *Hawaii*, 585 U.S. at 35 ("The Executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving "sensitive and weighty interests of national security and foreign affairs.").

Plaintiffs' theory that the President and Secretary harbor wide-reaching animus against non-white, non-European immigrants, based on selective quotes stretching into the past, does not square with reality, including past actions by the President. For example, during the first Trump Administration, the Secretary

1   extended TPS designations for four other "non-white, non- European" countries, finding that the statutory

2   criteria continued to be satisfied. *Ramos*, 975 F.3d at 898; *see id.* at 880 (describing the extension of TPS

3   designations of Somalia, South Sudan, Syria, and Yemen). Also, during the first administration, the

4   President also deferred removal of certain Venezuelans. *See* 86 Fed. Reg. at 6,845. Each of those actions

5   cannot be squared with Plaintiffs' contention that the President has consistently harbored discriminatory

6   animus, and that Secretary Noem must therefore share it.

7       President Trump's prior statements are insufficient to demonstrate animus by Secretary Noem.

8   *See, e.g.*, *Staub v. Proctor Hosp.l*, 562 U.S. 411, 418 (2011); *Ramos*, 975 F.3d at 897 ("We doubt that the

9   'cat's paw' doctrine of employer liability in discrimination cases can be transposed to th[e] particular

10  context" of TPS terminations). A cat's-paw approach would invite judicial second guessing of an agency

11  official's actions based on mere allegations that a different government official harbored some

12  discriminatory motive. That would open the door to impermissible intrusion on privileged Executive

13  Branch deliberations, *see United States v. Nixon*, 418 U.S. 683, 708 (1974), and potential litigant-driven

14  discovery that would disrupt the President's execution of the laws, *see Nixon v. Fitzgerald*, 457 U.S. 731,

15  749-750 (1982).

16      Put simply, none of the evidence alleged in the Complaint is sufficient to state a claim that the

17  Secretary's TPS determinations were motivated by racial animus. President Trump and Secretary Noem

18  seek to reduce illegal immigration and crime, policy goals that are reflected in their public statements and

19  that Americans elected President Trump to prioritize. Allowing Plaintiffs' constitutional claims to move

20  forward would leave virtually any immigration policy adopted by this Administration susceptible to an

21  Equal Protection challenge. Even if the heightened *Arlington Heights* test were applied, Plaintiffs would

22  still fail to state an equal protection claim under the Fifth Amendment because the Secretary's

23  determinations were consistent with the TPS statute, including its emphasis on the temporariness of the

24  protection afforded and its assignment of responsibility for determining whether, in the Secretary's

25  informed judgment, the conditions for a designation under the statute continue to be met. *See* 8 U.S.C.

26  § 1254a(b)(3)(B).

27  DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
    No. 3:25-cv-5687

28                                    22

1    Accordingly, Plaintiffs have failed to plausibly allege an equal protection or due process violation,

2  and these claims should be dismissed for failure to state a claim.

3                                              **CONCLUSION**

4    For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety for lack of

5  subject matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6).

6

7  Dated: September 9, 2025

8                                          Respectfully Submitted,

9                                          BRETT SHUMATE
10                                         Assistant Attorney General

11                                         YAAKOV M. ROTH
12                                         Deputy Assistant Attorney General

13                                         WILLIAM H. WEILAND
                                           Acting Assistant Director
14
                                           ANNA L. DICHTER
15                                         Senior Litigation Counsel
                                           LAUREN BRYANT
16                                         CATHERINE ROSS
                                           AMANDA SAYLOR
17                                         ERIC SNYDERMAN
                                           JEFFREY HARTMAN
18                                         Trial Attorneys
19
                                           *s/  Daniel M. Cappelletti*
20                                         DANIEL M. CAPPELLETTI
                                           Trial Attorney
21                                         U.S. Department of Justice, Civil Division
                                           Office of Immigration Litigation
22                                         P.O. Box 868 Ben Franklin Station
                                           Washington, D.C. 20044
23
24                                         *Counsel for Defendants*

25

26

27  DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
    No. 3:25-cv-5687
28                                              23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

24

BRETT SHUMATE
Assistant Attorney General
YAAKOV M. ROTH
Deputy Assistant Attorney General
Civil Division
WILLIAM H. WEILAND
Acting Assistant Director
ANNA L. DICHTER
Senior Litigation Counsel
ERIC SNYDERMAN
ANNA DICHTER
LAUREN BRYANT
CATHERINE ROSS
JEFFREY HARTMAN
DANIEL CAPPELLETTI
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| NATIONAL TPS ALLIANCE, *et al*., <br><br> Plaintiff, <br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al*., <br><br> Defendants. | Case No. 3:25-cv-5687 <br><br> PROPOSED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT |

PROPOSED ORDER GRANTING DEFS.' MOTION TO DISMISS
No. 3:25-cv-5687

1

## PROPOSED ORDER

2   Before the Court is Defendants' Motion to Dismiss Plaintiffs' Complaint pursuant to Federal

3 Rules 12(b)(1) and 12(b)(6). ECF _____. Having reviewed the motion and considered the arguments

4 counsel, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Plaintiffs' Complaint is

5 GRANTED.

6 Issued this _____ day of _____, 2025.

7

8

             _____

9              Trina L. Thompson
             United States District Court Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROPOSED ORDER GRANTING DEFS.' MOTION TO DISMISS
No. 3:25-cv-5687