Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, O.C., SANDHYA LAMA, S.K., TEOFILO MARTINEZ,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 3:25-cv-05687-TLT<br><br>**PLAINTIFFS' RESPONSE TO [DKT. 111] QUESTIONS FOR SEPT. 16, 2025, HEARING RE: PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [DKT. 89]**<br><br>Judge Trina Thompson |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

Plaintiffs provide here, in advance of argument, responses to the Court's questions directed to Plaintiffs, ECF 111.

## I.    RESPONSE TO DEFINING THE HARM

**To Plaintiffs**:

Defendants argue that the proposed class includes individuals who "allege different injuries that would arise from a loss of TPS." ECF 99 at 12. Plaintiffs respond that typicality is established because "Plaintiffs and Proposed Class members face the uniform harm of losing TPS due to Defendants' wrongful terminations." ECF 106 at 7. Plaintiffs cite *Ellis v. Costco Wholesale Corp* for the proposition that typicality looks to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct," but the underlying conduct alleged in *Ellis* was gender discrimination, not unlawful government action. 657 F.3d 970, 984 (9th Cir. 2011). Please provide a citation supporting the proposition that the unlawful termination of TPS is an independent, legally cognizable injury.

**Answer**:

The loss of TPS, which confers lawful status, work authorization, and protection against deportation and detention, is an independent, legally cognizable injury. *See, e.g.*, *Gonzalez v. ICE,* 975 F.3d 788, 804 (9th Cir. 2020) (unlawful detention is legally cognizable injury); *INS v. Chadha*, 462 U.S. 919, 936 (1983) (unlawful deportation is legally cognizable injury); *Mansor v. USCIS*, 685 F. Supp. 3d 1000, 1013 (W.D. Wash. 2023) (loss of work authorization is a legally cognizable injury); *see also Patel v. USCIS*, 732 F.3d 633, 638 (6th Cir. 2013) (arbitrary loss of opportunity to receive immigrant visa "is itself a concrete injury"). Indeed, courts regularly certify classes of individuals who share a common immigration status that confers the same or similar benefits as TPS and seek to challenge a governmental policy revoking or otherwise limiting access to that status. *See, e.g.*, *Mansor v. USCIS*, 345 F.R.D. 193, 202-207 (W.D. Wash. 2023) (certifying class of TPS applicants and rejecting Defendants' commonality and typicality objections); *Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 135-38 (E.D.N.Y. 2020) (certifying class of DACA-eligible individuals and explaining that loss of DACA, which confers work authorization and protection against deportation,

1

1  was a "'distinct and palpable,' injury . . . traceable to Defendants' conduct, and the relief sought by
2  Plaintiffs would redress the harm[.]").
3        Any slight variations in when or for how long a class member loses TPS—and its
4  accompanying lawful status, work authorization and protection against deportation and detention—
5  do not defeat typicality because all class members' injuries are similar and flow from the unlawful
6  termination decisions. *Ellis*, 657 F.3d at 984 ("The test of typicality 'is whether other members have
7  the same or similar injury, whether the action is based on conduct which is not unique to the named
8  plaintiffs, and whether other class members have been injured by the same course of conduct.'")
9  (quoting *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).
10       While, as the Court notes, *Ellis* is a gender discrimination case, the typicality standard
11 espoused there has been applied by the Ninth Circuit to assess typicality in cases challenging
12 unlawful government action. *See, e.g.*, *Gonzalez*, 975 F.3d at 809-812 (quoting same language from
13 *Hanon* to reject typicality challenge to U.S. citizen representative of class of individuals unlawfully
14 subject to immigration detainers and explaining that typicality inquiry "focuses on the nature of the
15 claim … of the class representative, and not . . . the specific facts from which it arose"); *Rodriguez v.*
16 *Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (relying on *Hanon* to reject typicality challenge to
17 representative who challenged constitutionality of immigration detention on behalf of class of
18 immigrants who were "detained under different statutes and are at different points in the removal
19 process").[1] Under that standard, the fact that the proposed class includes TPS holders who may
20 ultimately be eligible for other forms of immigration relief does not defeat typicality. These TPS
21 holders will still suffer the loss of work authorization and/or protection against detention and
22 deportation during the often-lengthy period while they await adjudication of any other immigration
23 applications. Similarly, former TPS holders who now hold another (non-permanent) status may need
24 to rely on TPS for work authorization and/or protection against detention and deportation in the
25 future if their other status is revoked or expires, and have the right to file untimely re-registration

---

[1] *Abrogated on other grounds recognized by Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022).

1  applications if they can demonstrate good cause.[2] Dkt. 106 at 3-4.

2  In addition, in the more than ten cases brought by TPS holders challenging the stripping of humanitarian TPS (including this one), courts have consistently found standing—and thus, by definition, a legally cognizable injury—for TPS holder plaintiffs. Indeed, Defendants have only challenged the standing of individual TPS holders where a termination had not yet been announced. *See NTPSA v. Noem* ("NTPSA I"), No. 3:25-cv-01766-EMC, Dkt. 122 at 8-9 (N.D. Cal. Apr. 29, 2025) (challenging standing only as to an anticipated *future* termination of TPS because such an injury was too "speculative" where Defendants had only partially vacated an extension but not yet announced a termination); *HECA v. Trump*, No: 1:25-cv-01464, Dkt. 37 at 7-8 (E.D.N.Y. April 15, 2025) (same); *Saget v. Trump*, 375 F. Supp. 3d 280, 336 (E.D.N.Y. 2019) (noting that Defendants have not disputed the standing of Haitian TPS holders challenging termination of TPS for Haiti and that "Congress may construct a statutory right that, if violated, would lead to an injury in fact that would not otherwise be cognizable").

## II.   RESPONSE TO CLASS MEMBERS ABROAD

**To Plaintiffs**:

Plaintiffs contend that there is a lack of evidence demonstrating "former TPS holders who no longer reside in this country . . . is anything more than a de minimis group." ECF 106 at 3. Do Plaintiffs have an estimate as to the number of former TPS holders from Honduras, Nepal, and Nicaragua who left the United States after the termination of their country's TPS designation?

**Answer**:

Plaintiffs do not have an estimate as to the number of former TPS holders from Honduras, Nepal and Nicaragua who left the United States after the termination of their country's TPS designation. However, Plaintiffs have no reason to believe this number is large, particularly given

---

[2] To the extent the Court finds individuals who no longer hold TPS have not suffered a concrete injury from the challenged terminations, that is an issue of overbreadth, not typicality, and it does not defeat class certification. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (classes may be certified "that potentially include[] more than a de minimis number of uninjured class members"). Further, the proper solution for any overbreadth concern would be to modify the class definition to exclude individuals who no longer held TPS as of the date the challenged terminations were announced, not to deny class certification. Dkt. 106 at 3-4 & n.2.

that it has only been one week since Honduran and Nicaraguan TPS holders lost their TPS status, and three weeks since Nepali TPS holders lost their status as a result of Defendants' terminations and the Ninth Circuit's stay of this court's postponement order. Plaintiff National TPS Alliance is aware that many proposed class members remain present in the United States despite the termination of their TPS status for a variety of reasons, including their long-term residence, the short window of time provided by Defendants for the termination to enter into effect, and—in the case of Nepal—the recent overthrow of the government.[3]

The Court need not determine how many putative class members have left the country, whether pursuant to Defendants' TPS terminations or otherwise, to resolve the issue of commonality. Commonality is satisfied because this case challenges a system-wide policy or practice pursuant to Rule 23(b)(2) and the resolution of whether the challenged TPS terminations were lawful "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

To the extent Defendants contend that TPS holders who have left the United States have not suffered injury for purposes of determining class certification, Plaintiffs disagree. In particular, there can be no question that TPS holders who left the United States pursuant to the TPS challenged terminations suffered the same injury—the loss of lawful presence, protection from detention and deportation, and work authorization—as other putative class members. What remedy is available to those individuals is a complex question, one which Plaintiffs take no position on at this time. As discussed below, the Court need not resolve the question of remedy to resolve the instant motion.

**IV.     RESPONSE TO FORM OF RELIEF**

**To Plaintiffs**:

Plaintiffs argue that, at this stage in the litigation, it is inappropriate for the Court to address the nature of the relief available to them. ECF 106 at 12. The "appropriateness of any relief . . . is properly addressed during the merits proceedings." *Id.* (citing *Santillan v. Ashcroft*, No. C 04-2686 MHP, 2004 WL 2297990, at *8 (N.D. Cal. Oct. 12, 2004)). Yet, as Plaintiffs note, "[t]he key to the

---

[3] *See* Alex Travelli, *Nepal's Young Protesters Find an Unlikely Partner: The Army*, NY Times (Sept. 11, 2025), https://www.nytimes.com/2025/09/11/world/asia/nepal-army-gen-z-protesters.html.

4

(b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted." ECF 106 at 9 (citing *Wal-Mart Stores*, 564 U.S. at 360). Explain the limits or the scope of the Court's consideration of the relief sought at this stage of the litigation. Provide legal citations to support your argument.

**Answer**:

There is no question that Plaintiffs are at minimum entitled to declaratory relief, as Defendants have conceded that point. Opp. 16. That form of relief suffices to support class certification. *Rodriguez*, 591 F.3d at 1119 (holding that provision on which government relied "cannot bar certification of the class unless it bars the proposed class from receiving any class relief," and rejecting its application because declaratory relief remained available); *Nielsen v. Preap*, 586 U.S. 392, 402-403 (2019) ("Whether the [district] court had jurisdiction to enter such an injunction is irrelevant because the District Court had jurisdiction to entertain the plaintiffs' request for declaratory relief."). Given the availability of declaratory relief, this Court need not resolve questions concerning the viability of other forms of relief in order to certify the classes here.

Should the Court nonetheless wish to proceed further, Rule 23(b)(2) does not require a court "to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez*, 591 F.3d at 1125; *see also* Advisory Committee's 2003 Note on subd. (c) ¶ 1 of Fed. Rule Civ. P. 23 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision[.]"). "All the Court does at this time is observe that the lawfulness or unlawfulness of the [challenged actions] is capable of systemwide treatment by way of a declaration or injunction." *Casa Libre/Freedom House v. Mayorkas*, No. 2:22-cv-01510-ODW (JPRx), 2023 WL 3649589, at *10 (C.D. Cal. May 25, 2023) (certifying Rule 23(b)(2) class in a challenge to the way the Department of Homeland Security and U.S. Citizenship and Immigration Services processed Special Immigrant Juvenile petitions). It is "almost axiomatically" the case that class members seek uniform relief from a practice of general applicability where they challenge a broadly applicable policy or practice emanating from a federal immigration agency. *Id.* ("The [challenged] Tolling Provisions are USCIS regulations, and it is beyond dispute that USCIS follows its own tolling

1 regulations on a systemwide basis. . . All the Court does at this time is observe that the lawfulness or
2 unlawfulness of the Tolling Provisions is capable of systemwide treatment by way of a declaration
3 or injunction, or a denial of the same, and is therefore appropriate for Rule 23(b)(2) certification.").

4       Here, the challenged TPS terminations have universal and nationwide effect, and the class
5 members face the uniform harm of losing TPS due to Defendants' wrongful terminations which
6 would be remedied by uniform relief—whether a declaratory judgment that the terminations were
7 unlawful, a "set aside" of the unlawful terminations under Section 706 of the APA, or an injunction
8 against them. The analysis should stop there because an evaluation of what further relief Plaintiffs
9 can obtain, and the proper scope of any such relief, is reserved for the merits litigation. "Rule 23
10 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits
11 questions may be considered to the extent—but only to the extent—that they are relevant to
12 determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v.*
13 *Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). A court makes no decision as to the
14 ultimate outcome of the case in deciding a class certification motion. *Willis v. City of Seattle*, 943
15 F.3d 882, 888 (9th Cir. 2019) ("Whether a facial challenge is meritorious is … not a reason to deny
16 class certification.").

17 **CONCLUSION**

18 For the reasons described herein, and in Plaintiffs' briefing in support of their Motion for
19 Class Certification, this Court should certify the three proposed classes.

20
21
22
23
24
25
26
27
28

Date: September 15, 2025

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

 */s/ Emilou MacLean*
Emilou MacLean

Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Eva L. Bitran
Diana Sanchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER ORGANIZING
NETWORK

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean