Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
[Additional Counsel Listed on Next Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, O.C., SANDHYA LAMA, S.K., TEOFILO MARTINEZ,

        Plaintiffs,

        vs.

KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,

        Defendants.

Case No. 3:25-cv-05687-TLT

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (Dkt. 110)**

Assigned to: Hon. Trina L Thompson

Date:  November 18, 2025
Time: 2:00 p.m.
Place: Courtroom 9, 19th Floor

Complaint Filed:  July 7, 2025

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (Admitted *Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitrán (SBN 302081)
ebitran@aclusocal.org
Diana Sánchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (Admitted *Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

RELEVANT BACKGROUND ............................................................................................. 1

STANDARD OF REVIEW ................................................................................................... 3

ARGUMENT ......................................................................................................................... 3

I.      THE COURT HAS JURISDICTION OVER ALL OF PLAINTIFFS' CLAIMS................... 3

    A.      The TPS Statute Does Not Bar Plaintiffs' Claims ................................................. 3

    B.      The APA Does Not Bar Review of Plaintiffs' Claims ........................................... 6

    C.      Section 1252(f)(1) Does Not Preclude Plaintiffs' Requested Relief ..................... 8

II.     PLAINTIFFS ADEQUATELY ALLEGED APA VIOLATIONS........................................ 9

    A.      Plaintiffs Adequately Allege the Terminations Violate the APA Because they Were Predetermined and Not Based on Country Conditions Review.......................... 9

    B.      Plaintiffs Adequately Allege DHS Violated the APA By Failing to Provide at Least a Six-Month Orderly Transition Period ............................................................. 10

    C.      Plaintiffs Adequately Allege DHS Violated the APA by Ignoring Country Conditions Unrelated to the Initial Designation ....................................................... 11

III.    PLAINTIFFS ADEQUATELY ALLEGED AN EQUAL PROTECTION CLAIM.............. 13

CONCLUSION .................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcaraz v. INS*,
   384 F.3d 1150 (9th Cir. 2004) ...............................................................................7

*Ali v. Fed. Bureau of Prisons*,
   552 U.S. 214 (2008) ...............................................................................................5

*Arce v. Douglas*,
   793 F.3d 968 (9th Cir. 2015) ...............................................................................15

*Ave. 6E Invs., LLC v. City of Yuma*,
   818 F.3d 493 (9th Cir. 2016) .........................................................................17, 18

*Batalla Vidal v. Nielsen*,
   291 F. Supp. 3d 260 (E.D.N.Y. 2018) ..................................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................................3, 10

*Biden v, Texas*,
   597 U.S. 785 (2022) ...............................................................................................9

*CASA de Md., Inc. v. Trump*,
   355 F. Supp. 3d 307 (D. Md. 2018) .......................................................................4

*CASA, Inc. v. Noem*,
   No. 25-1484-TDC, 2025 WL 1907378 (D. Md. July 10, 2025) ...........................4, 9

*Centro Presente v. DHS*,
   332 F. Supp. 3d 393 (D. Mass. 2018) ....................................................................4

*Ctr. for Biological Diversity v. BLM*,
   141 F.4th 976 (9th Cir. 2025) ...............................................................................11

*Dan's City Used Cars, Inc. v. Pelkey*,
   569 U.S. 251 (2013) ................................................................................................5

*DHS v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020) ............................................................................................13, 16

*Doe #1 v. Trump*,
   957 F.3d 1050 (9th Cir. 2020) ..............................................................................16

*Doe v. Vill. of Mamaroneck*,
   462 F. Supp. 2d 520 (S.D.N.Y. 2006) ...................................................................17

ii

*FDA v. Wages & White Lion Invs., LLC*,
    604 U.S. 542 (2025)........................................................................................................11

*Galvan v. Press*,
    347 U.S. 522 (1954)........................................................................................................15

*Gebhardt v. Nielsen*,
    879 F.3d 980 (9th Cir. 2018) ...........................................................................................6

*Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Par.*,
    641 F. Supp. 2d 563 (E.D. La. 2009)..............................................................................17

*Haitian Evangelical Clergy Ass'n v. Trump*,
    No. 25-CV-1464 (BMC), 2025 WL 1808743 (E.D.N.Y. July 1, 2025) ........................4, 9

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952)........................................................................................................15

*Immigr. Defs. L. Ctr. v. Noem*,
    145 F.4th 972 (9th Cir. 2025) ...........................................................................................8

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ..........................................................................................3

*Kleindienst v. Mandel*,
    408 US 753 (1972)..........................................................................................................14

*U.S. ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950)........................................................................................................14

*Kucana v. Holder*,
    558 U.S. 233 (2010)..........................................................................................................8

*Lamar, Archer & Cofrin, LLP v. Appling*,
    584 U.S. 709 (2018)..........................................................................................................5

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ..........................................................................................3

*Make the Road N.Y. v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020)..........................................................................................8

*Matthews v. Diaz*,
    426 U.S. 67 (1976)..........................................................................................................14

*McNary v. Haitian Refugee Ctr., Inc.*,
    498 U.S. 479 (1991)..........................................................................................................5

*Mendez-Gutierrez v. Ashcroft*,
    340 F.3d 865 (9th Cir. 2003) ...........................................................................................7

iii

*Nakka v. USCIS*,
  111 F.4th 995 (9th Cir. 2024) ..................................................................5, 6, 8

*Nat'l TPS All. v. Noem*,
  773 F. Supp. 3d 807 (N.D. Cal. 2025) ....................................................4, 8, 16

*Nat'l TPS All. v. Noem*,
  No. 25-2120, 2025 WL 2487771 (9th Cir. Aug. 29, 2025) ........................... *passim*

*Nat'l TPS All. v. Noem*,
  No. 25-CV-01766-EMC, 2025 WL 2578045 (N.D. Cal. Sept. 5, 2025) ..................5

*Nat'l TPS All. v. Noem*,
  No. 25-cv-1766, Dkt. 93 (N.D. Cal. Mar. 31, 2025)..........................................15

*Nat'l TPS All. v. Noem*,
  No. 25-cv-1766, Dkt. 102 (N.D. Cal. Apr. 4, 2025) ........................................15

*Organized Vill. of Kake v. USDA*,
  795 F.3d 956 (9th Cir. 2015) ........................................................................11, 13

*Patel v. Garland*,
  596 U.S. 328 (2022).........................................................................................5

*Ramos v. Nielsen*,
  321 F. Supp. 3d 1083 (N.D. Cal. 2018) .........................................................6

*Ramos v. Nielsen*,
  336 F. Supp. 3d 1075 (N.D. Cal. 2018) .........................................................2, 12

*Ramos v. Nielsen*,
  709 F. Supp. 3d 871 (N.D. Cal. 2023) ...........................................................3, 12

*Ramos v. Wolf*,
  975 F.3d 872 (9th Cir. 2020) ........................................................................4, 14

*Saget v. Trump*,
  345 F. Supp. 3d 287 (E.D.N.Y. 2018) ...........................................................2, 4

*Saget v. Trump*,
  375 F. Supp. 3d 280 (E.D.N.Y. 2019) ...........................................................2, 12

*Sheikh v. DHS*,
  685 F. Supp. 2d 1076 (C.D. Cal. 2009) .........................................................7

*Spencer Enters., Inc. v. United States*,
  345 F.3d 683 (9th Cir. 2003) ........................................................................6, 7

*Staub v. Proctor Hosp.*,
  562 U.S. 411 (2011).........................................................................................18

iv

*Sw. Airlines Co. v. FERC*,
    926 F.3d 851 (D.C. Cir. 2019) ........................................................11

*Texas v. United States*,
    40 F.4th 205 (5th Cir. 2022) .............................................................8

*Trump v. Hawaii*,
    585 U.S. 667 (2018)...........................................................13, 14, 15

*United States v. Suquilanda*,
    116 F.4th 129 (2nd Cir. 2024) ........................................................13

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977)............................................................... *passim*

*Washington v. DHS*,
    598 F.Supp.3d 1051 (E.D. Wash. 2020) .........................................13

**Statutes**

8 U.S.C. § 1252(a)(2)(B) ..................................................................7, 8

8 U.S.C. § 1254a(b)(1)(B)(ii) .........................................................2, 12

8 U.S.C. § 1254a(b)(3)................................................................ *passim*

8 U.S.C. § 1254a(b)(5)(A) .............................................................. 4, 6

**Other Authorities**

82 Fed. Reg. 44205 (Sept. 21, 2017) ................................................19

90 Fed. Reg. 8443 (Jan. 20, 2025) ...................................................16

90 Fed. Reg. 24151 (June 6, 2025) ...................................................15

90 Fed. Reg. 30086 (July 8, 2025).....................................................15

90 Fed. Reg. 30089 (July 8, 2025).....................................................15

Fed. R. Civ. P. 8(a)(2)..........................................................................3

Fed. R. Civ. P. 12(b) .............................................................................3

**INTRODUCTION**

Defendants' Motion to Dismiss rehashes arguments already properly rejected by this Court in its detailed ruling granting Plaintiffs' Motion to Postpone (Dkt. 73). As the Court made clear in that Order, neither the TPS statute nor Section 1252(f)(1) bar this Court from reviewing Plaintiffs' claims or granting the requested relief. Further, Plaintiffs are likely to succeed on (and so have necessarily adequately alleged) claims that: (1) the terminations of TPS for Honduras, Nepal, and Nicaragua violated the APA because they were based on a predetermined political decision rather than any objective country conditions review; (2) Defendants' unexplained break with past agency practice of providing at least a six-month orderly transition period violated the APA; and (3) the terminations were motivated by racial animus in violation of the Equal Protection component of the Fifth Amendment's Due Process Clause.

The few new arguments Defendants raise are meritless. Defendants contend this Court lacks jurisdiction under 5 U.S.C. § 701(a)(2), but that provision applies only in the "rare instance[]" in which neither the statute nor agency policy or practice provide any "meaningful standard" by which to judge the agency's actions. Here, both the statute and prior agency practice supply clear standards. Defendants also challenge the adequacy of Plaintiffs' claim that the Secretary violated the APA by ignoring country conditions unrelated to the crisis that triggered the initial TPS designation, asserting her narrow focus complies with the TPS statute. But Plaintiffs adequately alleged the statute requires a review of *all* country conditions and, even if the statute were ambiguous, the Secretary's approach would still be unlawful because it constitutes an unexplained departure from past practice.

Because Defendants fail to show that this Court lacks jurisdiction, or that Plaintiffs have failed to state plausible claims, this Court should deny their Motion to Dismiss.

**RELEVANT BACKGROUND**

This Court laid out relevant background in its comprehensive Order granting Plaintiffs' Motion to Postpone. Dkt. 73 § I. In sum, Plaintiffs have alleged—and this Court has found—Defendants made a predetermined decision to end TPS for Honduras, Nepal, and Nicaragua before reviewing conditions in those countries, in violation of the TPS statute; provided TPS holders only 60 days to prepare for the terminations, in an arbitrary break from longstanding agency practice; and

1

were motivated by animus toward non-white, non-European immigrants, in violation of the Equal Protection component of the Fifth Amendment's Due Process Clause.

As relevant to the instant motion, Plaintiffs' Complaint also alleges an additional reason the terminations violate the APA: Defendants violated the TPS statute and arbitrarily deviated from past practice by ignoring country conditions that are not directly related to the reason for initial designation. Compl. ¶¶ 40–42, 63, 68-69, 156(a)–(b). Under the TPS statute, a TPS designation "is extended" unless the Secretary finds that the country no longer meets the conditions for designation. 8 U.S.C. § 1254a(b)(3)(C). One of the conditions for designation is that the country is "unable, temporarily, to handle adequately the return" of its nationals. 8 U.S.C. § 1254a(b)(1)(B)(ii). Accordingly, unless the Secretary finds that a country is *no longer* "unable … to handle the return of its nationals," its TPS designation must be extended. Nothing in the statutory text ties this inquiry to the disaster that triggered the initial designation. Further, DHS's longstanding past practice has been to consider *all* country conditions in deciding whether a country is able to handle return of its nationals. Compl. ¶¶ 40–42; *see also Saget v. Trump*, 375 F. Supp. 3d 280, 350 (E.D.N.Y. 2019) ("[T]he DHS Secretary, DHS, and USCIS had a longstanding practice of considering all country conditions when undertaking the mandatory periodic review under the statute, regardless of their relation to the originating condition."); *Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1093 (N.D. Cal. 2018), *vacated and remanded on unrelated grounds by Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020) ("Intervening factors arising after a country's original TPS designation … were considered relevant to determining whether a country continued to meet the conditions for continuing TPS designation.").

During the first Trump administration, two district courts enjoined TPS terminations as arbitrary in violation of the APA because, in a sharp break with decades of prior practice, DHS had "base[d] the TPS decision[s] solely on whether the originating conditions or conditions directly related thereto persisted, regardless of other current conditions no matter how bad," apparently "in order to implement and justify a pre-ordained result." *Ramos*, 336 F. Supp. 3d at 1097–98; *see also Saget v. Trump*, 345 F. Supp. 3d 287, 294–96 (E.D.N.Y. 2018); Compl. ¶¶ 38–44. Due to that litigation, the first Trump administration's terminations never took effect, and DHS subsequently

returned to its prior practice. *Ramos v. Nielsen*, 709 F. Supp. 3d 871, 884 (N.D. Cal. 2023) (finding that, during the Biden administration, DHS "considered intervening conditions … in making its TPS determinations"). Plaintiffs here allege that, in terminating TPS for Honduras, Nepal, and Nicaragua, DHS again based its TPS decisions solely on whether the country had recovered from the crisis that triggered its initial designation, ignoring intervening crises, no matter how serious, and that this limited country conditions review both violates the TPS statute and runs afoul of the change-in-position doctrine. Compl. ¶¶ 40–42, 63, 66-69, 156(a)–(b).

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court, while a motion under Rule 12(b)(6) tests the legal sufficiency of a claim. *See* Fed. R. Civ. P. 12(b)(1), (6). Under both rules, courts must accept the plaintiff's allegations as true and draw all reasonable inferences in the plaintiff's favor. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The rules require only a "short and plain statement of the claim" at the pleading stage; dismissal is improper if the plaintiff alleges enough facts to make the claim plausible on its face. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

## I. THE COURT HAS JURISDICTION OVER ALL OF PLAINTIFFS' CLAIMS

### A. The TPS Statute Does Not Bar Plaintiffs' Claims

This Court previously held that the TPS statute's jurisdiction stripping provision, 8 U.S.C. § 1254a(b)(5)(A), does not bar Plaintiffs' claims, all of which challenge the process by which Defendants made their TPS decisions, rather than the substance of the Secretary's conclusions regarding country conditions. Dkt. 73 at 15–20. Defendants offer no reason for this Court to come to a different conclusion now. Indeed, since this Court issued its postponement order, the Ninth Circuit has squarely rejected Defendants' extreme position regarding the breadth of Section 1254a(b)(5)(A). *Nat'l TPS All. v. Noem*, No. 25-2120, 2025 WL 2487771, at *10 (9th Cir. Aug. 29, 2025). "Congress intended to constrain the authority of the Executive, not to render all aspects of the TPS program unreviewable." *Id.*

1    Every district court to consider the question has similarly held that the TPS statute does not

2    bar review over challenges to policies or practices used in making TPS decisions. *See CASA, Inc. v.*

3    *Noem*, No. 25-1484-TDC, 2025 WL 1907378, at *10 (D. Md. July 10, 2025) ("[C]laims …

4    challenging a general policy or practice to terminate TPS designations on a preordained basis in

5    order to reduce the number of non-white immigrants in the United States … are not barred by §

6    1254a(b)(5)(A)[.]"); *Haitian Evangelical Clergy Ass'n v. Trump*, No. 25-CV-1464 (BMC), 2025 WL

7    1808743, at *6 (E.D.N.Y. July 1, 2025) (finding "no indication that § 1254a(b)(5)(A) applies to the

8    review of procedures followed in making TPS decisions"); *Nat'l TPS All. v. Noem*, 773 F. Supp. 3d

9    807, 830 (N.D. Cal. 2025) (Section 1254a(b)(5) "does not apply to, *e.g.*, a pattern or practice that is

10   'collateral to and distinct from the specific [country] TPS decisions and their underlying

11   rationale.'"); *Centro Presente v. DHS*, 332 F. Supp. 3d 393, 406–09 (D. Mass. 2018) (finding

12   jurisdiction over claim that TPS decisions were "made on the basis of an improperly narrow

13   record"); *Saget*, 345 F. Supp. 3d at 294–96 ("[I]t is clear from context that the judicial review

14   provision in the TPS statute refers to an individual designation, termination, or extension of a

15   designation with respect to a particular country, not to Defendants' determination practices or

16   adoption of general policies or practices employed in making such determinations."); *CASA de Md.,*

17   *Inc. v. Trump*, 355 F. Supp. 3d 307, 320–21 (D. Md. 2018) (finding jurisdiction to review challenge

18   to "a process the Secretary abandoned without proper explanation on the record). Even the vacated

19   panel decision in *Ramos* held that Section 1254a(b)(5)(A) does not bar review of a claim that DHS's

20   action violates the dictates of the TPS statute itself. *See Ramos v. Wolf*, 975 F.3d 872, 895 (9th Cir.

21   2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023) ("[A] claim that an

22   agency has adopted an erroneous interpretation of a governing statute would be reviewable under

23   *McNary*[.]").

24        Defendants assert that Section 1254a(b)(5)(A)'s judicial-review bar is "broad" because it

25   uses "any" and "with respect to." Dkt. 110 ("Mot.") at 9-10. But as this Court previously held, the

26   key word in Section 1254a(b)(5)(A) is "determination;" "'any' and 'with respect to' are not

27   dispositive." Dkt. 73 at 15. "Determination" describes "'*a single act* rather than a group of decisions

28   or a practice or procedure employed in making decisions.'" *Id.* (quoting *McNary v. Haitian Refugee*

4

*Ctr., Inc.*, 498 U.S. 479, 492 (1991)). As used in the TPS statute, determination refers to "the substantive assessment of country conditions in reaching a decision on whether to extend or terminate TPS." *Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC, 2025 WL 2578045, at *17 (N.D. Cal. Sept. 5, 2025) (emphasis omitted). It does not refer to—or bar review over—decisionmaking policies and practices that are collateral to the substantive assessment of country conditions.

Defendants argue that "with respect to" in 8 U.S.C. § 1254a(b)(5)(A) "has a broadening effect," Mot. 9 (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018)). But the statute at issue in *McNary* used "respecting" and the Court nonetheless held it did not bar challenges to collateral practices and procedures. 498 U.S. at 491. As used in the TPS statute, "'with respect to' is simply a connector—*i.e.*, the phrase simply points to what is being 'determined.'" *Nat'l TPS All.*, 2025 WL 2578045, at *18 (quoting 8 U.S.C. § 1254a(b)(5)(A)).

Defendants also assert that "any" has "an expansive meaning." Mot. 9 (citing *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008)). But the meaning of "any" in Section 1254a(b)(5)(A) is also clear from context: there are many "determinations" in subsection (b); "any" makes clear that the jurisdiction stripping provision covers each of them. *Nat'l TPS All.*, 2025 WL 2578045, at *17 (providing examples).

The cases on which Defendants rely, Mot. 9–10, do not suggest a contrary conclusion, because none interprets the word "determination" and most do not involve jurisdiction stripping provisions at all. *See Ali*, 552 U.S. at 216 (interpreting phrase "any other law enforcement officer" to assess scope of exception to waiver of sovereign immunity); *Appling*, 584 U.S. at 712 (interpreting phrase "statement respecting the debtor's financial condition" to assess eligibility to discharge bankruptcy debt); *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (interpreting "related to" in context of preemption clause). Defendants' reliance on *Patel v. Garland*, 596 U.S. 328, 337–40 (2022), is unavailing, because the statute at issue there did not use the word "determination" and contained context clues not present here. *See* Dkt. 73 at 16–17; *Patel*, 596 U.S. at 339 (citing amendment history of 8 U.S.C. § 1252(a)(2)(D)). Further, the Court in *Patel* barred review only of factual claims, not legal ones, and the Ninth Circuit has since read *Patel* not to foreclose challenges to agency policies and procedures. *Nakka v. USCIS*, 111 F.4th 995, 1003, 1009

(9th Cir. 2024).

Defendants ignore that when Congress wants to bar all judicial review, it uses far clearer language. *See id.* at 1005 (describing "the *McNary* blueprint"). The TPS statute does not bar review of "all causes arising under" it, or "all questions of law or fact." *Id.* (cleaned up); *cf. Gebhardt v. Nielsen*, 879 F.3d 980, 984−85 (9th Cir. 2018) (statute specifying decisions were in Secretary's "sole and unreviewable discretion" barred review of all but constitutional claims). The mere use of "any" or "with respect to" does not suffice to strip review more broadly than did the statute in *McNary*.

Finally, Plaintiffs' claim that Defendants arbitrarily departed from more than two decades of past practice by declining to grant any orderly transition period is reviewable for a distinct reason: it challenges a decision made by the Secretary under Subsection (d) of the TPS statute. Defendants fail to explain how this claim could possibly be subject to the TPS statute's judicial review bar, which applies only to determinations under Subsection (b) of the statute. 8 U.S.C. § 1254a(b)(5)(A) (limiting review of determinations "under this subsection"—i.e., subsection (b)). Even if this particular claim did concern a determination under Subsection (b)—which it does not—deviations from long-standing administrative practice present "a general procedural issue…, not an individual determination," so this Court would still have jurisdiction. *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1104 (N.D. Cal. 2018).

## B. The APA Does Not Bar Review of Plaintiffs' Claims

Defendants wrongly assert this Court lacks jurisdiction under 5 U.S.C. § 701(a)(2). Mot. 11−12. That provision applies only in "rare instances" where a "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). Defendants' claim that "[t]he termination of a TPS designation … is … left to the Secretary's discretion" is patently incorrect. Mot. 11. Rather, the TPS statute sharply "constrain[s]" executive discretion, providing "explicit guidelines, specific procedural steps, and time limitations" that the Secretary must follow. *Nat'l TPS All.*, 2025 WL 2487771, at *4, *10. Among those are the requirement that the Secretary "shall review the conditions in the foreign state" designated for TPS at specific intervals in order to "determine whether the conditions for such

designation … continue to be met." 8 U.S.C. § 1254a(b)(3)(A). If she determines conditions are not met, she "shall terminate" the designation. *Id.* § 1254a(b)(3)(B). If she "does not determine … that a foreign state … no longer meets the conditions for designation … the period of designation … is extended." *Id.* § 1254a(b)(3)(C). These statutory requirements provide a "meaningful standard," *Spencer Enters., Inc*., 345 F.3d at 688 (citation omitted), for Plaintiffs' APA claims challenging the Secretary's failure to conduct the country conditions review required by law. Compl. ¶ 156(a) (alleging that Secretary's termination decisions "were not based on a review of country conditions, as required by 8 U.S.C. § 1254a(b)(3)).

Further, even where a statute does not provide clear standards, Section 701(a)(2) does not bar review as long as "regulations *or agency practice* provide a 'meaningful standard' by which this court may review its exercise of discretion." *Spencer Enters., Inc*., 345 F.3d at 688 (citation omitted); *see Alcaraz v. INS*, 384 F.3d 1150, 1161 (9th Cir. 2004) (holding that 701(a)(2) did not deprive court of jurisdiction because agency policy provided "law to apply"); *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 868 (9th Cir. 2003) (same); *Sheikh v. DHS*, 685 F. Supp. 2d 1076, 1091 (C.D. Cal. 2009) (holding that agency's practice of relying on "the same set of factors ... to adjudicate … petitions for many years" created law to apply and precluded application of 701(a)(2) (emphasis omitted)). Indeed, as this Court has recognized, an agency's "settled course" of decision-making can itself create "a general policy by which its exercise of discretion will be governed." Dkt. 73 at 23 (quoting *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996)). Accordingly, this Court retains authority to review Plaintiffs' claims challenging Defendants' unexplained departures from past practice. Compl. ¶ 156(b) (alleging that the "research, consultation, and review process leading up to the decisions deviated dramatically from past practice without explanation"), ¶ 160 (alleging that "Defendants['] termination of the TPS designations for Nepal, Honduras, and Nicaragua with only 60-days['] notice was arbitrary, capricious, and contrary to law in violation of the APA because it represented an unacknowledged and unexplained departure from decades of decision-making practices and ordinary procedures").

Finally, Defendants suggest in passing that 8 U.S.C. § 1252(a)(2)(B)(ii) bars review of Plaintiffs' challenge to Defendants' failure to provide any orderly transition period for TPS holders

who had been living lawfully in this country for more than a decade and, in most cases, more than 25 years. Mot. 12. Defendants are wrong. Section 1252(a)(2)(B) covers "orders denying discretionary relief in individual cases," *not* "the type of challenges to the Secretary's regulations, orders, policies, and directives" at issue here. *Nakka*, 111 F.4th at 1015 (quoting *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 628−31 (D.C. Cir. 2020) ("*MTRNY*")). The Supreme Court, the Ninth Circuit, and the D.C. Circuit have all read Section 1252(a)(2)(B)(ii) as a "catchall" within the broader context of Section 1252(a)(2)(B)'s bar on review of denials of discretionary relief from removal. Specifically, Subsection (ii) functions to "catch" forms of discretionary relief similar to those explicitly enumerated in subsection (i) of Section 1252(a)(2)(B). *See Kucana v. Holder*, 558 U.S. 233, 246−49 (2010); *Nakka*, 111 F.4th at 1015; *MTRNY*, 962 F.3d at 628−31. The length of the "orderly transition" period, which DHS makes available to all TPS holders when a termination occurs, is not a form of discretionary relief from removal at all, and Plaintiffs' collateral challenge to the agency's change in position regarding orderly transition periods is not covered by Section 1252(a)(2)(B)(ii)'s jurisdictional bar.

### C.    Section 1252(f)(1) Does Not Preclude Plaintiffs' Requested Relief

Plaintiffs seek declaratory relief and an order setting aside the challenged terminations under Section 706 of the APA. Compl. ¶¶ 166, 168. Defendants concede that controlling Ninth Circuit precedent holds Section 1252(f)(1) does not bar declaratory relief. Mot. 15 (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010)).

Defendants fail to acknowledge that the Ninth Circuit, the Fifth Circuit, and at least eight district courts (including this one) have held that Section 1252(f)(1) also does not bar relief under the APA. *Immigr. Defs. L. Ctr. v. Noem*, 145 F.4th 972, 989−90 (9th Cir. 2025) ("*ImmDef*"); *Nat'l TPS All.*, 2025 WL 2487771, at *11 (Section 1252(f)(1) does not apply to APA relief)[1]; *Texas v. United States*, 40 F.4th 205, 219–20 (5th Cir. 2022) (same); *Nat'l TPS All.*, 773 F. Supp. 3d at 826

---

[1] Contrary to Defendants' assertion, Mot. 15 n.3, the Ninth Circuit's holding in *Nat'l TPS All.* was not limited to APA relief based on an agency exceeding its authority. *See* 2025 WL 2487771, at *11 (providing two independent reasons for holding Section 1252(f)(1) inapplicable, only one of which turned on whether the agency had acted in excess of its authority).

1  (collecting cases); *Haitian Evangelical Clergy Ass'n.*, 2025 WL 1808743, at *6−7 (same, in TPS

2  case); *CASA, Inc. v. Noem*, 2025 WL 1907378, at *12−13 (D. Md. July 10, 2025) (same); *see also*

3  Dkt. 73 at 20. Defendants persist in citing *Biden v. Texas* in support of their position, Mot. 13, but

4  fail to acknowledge that the Court in that case explicitly "express[ed] no view" on whether Section

5  1252(f)(1) "extends to … relief under section 706 of the APA." 597 U.S. 785, 801 n.4 (2022).

6      Any attempt by Defendants to distinguish between relief afforded under APA Section 705

7  and 706 for purposes of Section 1252(f)(1) is unavailing. The features of Section 705 that render it

8  not injunctive—in particular that it operates directly upon an agency's rule and is not directed at

9  persons, *see* Dkt. 73 at 20—apply equally to Section 705 postponements and Section 706 set-asides.

## II.    PLAINTIFFS ADEQUATELY ALLEGED APA VIOLATIONS

11      Plaintiffs have adequately alleged that the challenged terminations violate the APA for

12  numerous reasons. Compl. ¶¶ 156, 160. This Court has already found that Plaintiffs are *likely to*

13  *succeed* on at least two grounds: the terminations violated the APA because (1) they were

14  "preordained and therefore not based on an objective review of country conditions" and (2) the

15  Secretary arbitrarily failed to acknowledge or explain her departure from two decades of past agency

16  practice to provide at least a six-month orderly transition period. Dkt. 73 at 20-25. Defendants'

17  motion offers no reason for this Court to change its analysis regarding those two claims, and there is

18  no cause to do so, because the Court was correct. Plaintiffs have also adequately alleged an

19  additional APA claim that was not at issue in their postponement motion: that the challenged

20  terminations violate the APA because Defendants contravened the TPS statute and deviated from

21  past practice without explanation by declining to consider any country conditions that were not

22  directly related to the reason for the country's initial designation. Compl. ¶¶ 40−42, 63, 68−69,

23  156(a)−(b).

### A.    Plaintiffs Adequately Allege the Terminations Violate the APA Because they Were Predetermined and Not Based on Country Conditions Review

26      This Court previously found that Plaintiffs have "provide[d] sufficient evidence to

27  demonstrate that the Secretary's TPS Nepal, Honduras, and Nicaragua terminations were based on a

28  preordained determination to end the TPS program, rather than an objective review of the country

conditions." Dkt. 73 at 21−22; *see also* Compl. ¶¶ 45-94. Defendants ignore this evidence, Mot. 16, and so fail to demonstrate how it could possibly be insufficient to render Plaintiffs' claim "plausible on its face." *Twombly*, 550 U.S. at 570.

Defendants suggest Plaintiffs have failed to adequately allege a predetermination claim because the termination notices published in the Federal Register discuss country conditions. Mot. at 16. But Plaintiffs' allegations—which must be taken as true for purposes of this motion—are that the "decisions to terminate TPS for Honduras, Nepal, and Nicaragua were made long before Secretary Noem considered conditions in any of those countries," and that the Federal Register notices contain only country conditions facts cherry-picked to support her preordained conclusion. Compl. ¶¶ 45, 54−56, 156(a). Because Defendants do not—and cannot—assert that such decisionmaking is consistent with the TPS statute or the APA's requirements for reasoned decisionmaking, their motion to dismiss this claim should be denied.

## B.    Plaintiffs Adequately Allege DHS Violated the APA By Failing to Provide at Least a Six-Month Orderly Transition Period

Defendants similarly fail to show that Plaintiffs have not adequately pled an APA challenge to the Secretary's decision to provide only 60-days' notice before stripping TPS from long-time lawful residents. Again, this Court already determined that "Plaintiffs have provided sufficient evidence demonstrating that, for the past twenty-two years, since January 27, 2003, the prevailing practice of prior administrations was to provide at least 6 months after the TPS termination date for holders to transition." Dkt. 73 at 23 (citing Dkt. 28). Defendants contest the existence of a past practice based on two termination decisions made over two decades ago in which the agency provided no orderly transition period. Mot. at 18. But these decisions, made in 1993 and 2003, say nothing about the agency's practice for the past twenty years. *Id.*

Defendants also argue that DHS's past practice is insufficiently "firm" to trigger the change-in-position doctrine because orderly transition periods over the last twenty years have ranged between six and 18 months. *Id.* This argument is unavailing, because Plaintiffs challenge the agency's unexplained decision not to provide a transition period of *at least six months*. It is uncontested that each TPS termination during the last twenty-two years has provided a transition

1  period of six months or longer.

2  Defendants rely on *FDA v. Wages and White Lion Investments, LLC*, but that case concerned

3  departures from informal guidance, not prior practice, and the Court held only that, as a factual

4  matter, there had been no departure. 604 U.S. 542, 583−84 (2025). *Wages and White Lion* did not

5  alter the long-standing change-in-position doctrine, under which an agency's "consistent practice,

6  whether adopted expressly in a holding or established impliedly through repetition, sets the baseline

7  from which future departures must be explained." *Sw. Airlines Co. v. FERC*, 926 F.3d 851, 858

8  (D.C. Cir. 2019); *see also Ctr. for Biological Diversity v. BLM*, 141 F.4th 976, 999 (9th Cir. 2025)

9  (holding agency violated APA by failing to explain its "change[d] course"); *Organized Vill. of Kake*

10  *v. USDA*, 795 F.3d 956, 966 (9th Cir. 2015) (when an agency breaks with a long-standing past

11  practice, it must "display[] 'awareness that it is changing position'" and provide "good reasons" for

12  the new policy) (quoting *FCC v. Fox Television Stations, Inc.*, 556 US 502, 515−16 (2009)).

**C.    Plaintiffs Adequately Allege DHS Violated the APA by Ignoring Country Conditions Unrelated to the Initial Designation**

15  Finally, Defendants seek to dismiss Plaintiffs' claim that the challenged terminations violate

16  the APA because Secretary Noem categorically declined to consider any country conditions that

17  were not directly related to the reason for the initial designation, thereby (1) contravening the

18  statutory mandate to base TPS decisions on a fulsome review of country conditions and (2)

19  arbitrarily breaking with past practice. Mot. at 16-17; *see* Compl. ¶¶ 40−42, 63, 68−69, 156(a)−(b).

20  Defendants' arguments are meritless.

21  Defendants *concede* that, in reviewing country conditions, Secretary Noem considered only

22  "whether the conditions that gave rise to the initial TPS designation persisted." *Id.* at 16. In other

23  words, as to Honduras and Nicaragua, she considered only whether the country had recovered from

24  Hurricane Mitch, and, as to Nepal, she considered only whether the country had recovered from the

25  2015 earthquake. *See also* Compl. ¶¶ 35−37 (describing bases for initial designation), 63, 68−69

26  (describing bases for termination). She ignored intervening crises, no matter how serious. *See*

27  Compl. ¶¶ 63, 66−69 (termination notices failed to address food insecurity in Nepal, staggering

28  crime in Honduras, or "humanitarian crisis" in Nicaragua).

Defendants defend the limited scope of Secretary Noem's review on the ground that it was consistent with the statute. Mot. at 17 ("[W]hen the statute mandates that the Secretary periodically evaluate whether 'the conditions for [a country's TPS] designation … continue to be met,' [8 U.S.C.] § 1254a(b)(3)(A), it follows that the Secretary is to evaluate whether the 'temporary' conditions caused by the event that gave rise to the TPS designation continue to exist…."). But Plaintiffs allege the statute requires a review of *all* country conditions, whether related to the initial reason for designation or not, and that allegation is at least plausible. By its express terms, the statute requires extension as long as the country remains unable "to handle adequately the return" of its nationals. 8 U.S.C. § 1254a(b)(1)(B)(ii); *id.* § 1254a(b)(3)(C) (designation "is extended" unless Secretary finds conditions no longer met). Nothing in the statutory text ties the country's ability to handle the return of its nationals to the disaster that triggered the initial designation.

Further, even if the statute were ambiguous as to whether country conditions review should be limited to conditions related to the initial disaster or should instead take into account a fuller range of country conditions, the agency's longstanding past practice has been to take the latter approach. Compl. ¶¶ 40−42; *see also Saget*, 375 F. Supp. 3d at 350 ("[T]he DHS Secretary, DHS, and USCIS had a longstanding practice of considering all country conditions when undertaking the mandatory periodic review under the statute, regardless of their relation to the originating condition."); *Ramos*, 336 F. Supp. 3d at 1093 ("Intervening factors arising after a country's original TPS designation … were considered relevant to determining whether a country continued to meet the conditions for continuing TPS designation."). The only exception was during the first Trump administration, when "DHS made a deliberate choice to base the TPS decision solely on whether the originating conditions or conditions directly related thereto persisted, regardless of other current conditions no matter how bad," apparently "in order to implement and justify a pre-ordained result." *Ramos*, 336 F. Supp. 3d at 1097–98. But those termination decisions never took effect as a result of litigation, and DHS subsequently returned to its prior practice. *Ramos*, 709 F. Supp. 3d at 884 (finding that, during the Biden administration, DHS "considered intervening conditions … in making its TPS determinations (contrary to the Trump administration considering only originating conditions)").

1    Under the change-in-position doctrine, Secretary Noem was required to acknowledge and

2 provide a good reason for her changed approach. *Organized Vill. of Kake*, 795 F.3d at 966 (when an

3 agency breaks with a long-standing past practice, it must "display[] 'awareness that it is changing

4 position'" and provide "good reasons" for the new policy) (quoting *Fox Television Stations, Inc.*,

5 556 US at 515−16). Plaintiffs have adequately alleged that she did neither, and Defendants do not

6 assert otherwise. Accordingly, Defendants' motion to dismiss should be denied as to this claim as

7 well.

8    **III.    PLAINTIFFS ADEQUATELY ALLEGED AN EQUAL PROTECTION CLAIM**

9    This Court previously held that Plaintiffs are likely to succeed on—and, therefore, adequately

10 alleged—their Fifth Amendment claim. Dkt. 73 at 29 (finding that "Plaintiffs have produced

11 sufficient evidence demonstrating racial and discriminatory animus" and "have provided sufficient

12 evidence to establish that Plaintiffs will likely succeed on the merits of their Fifth Amendment

13 claim."). Defendants' recycled arguments present no reason to abandon the Court's reasoned

14 analysis.

15    *First*, this Court previously rejected Defendants' assertion that *Trump v. Hawaii*, 585 U.S.

16 667 (2018), supplies the correct standard of review. Dkt. 73 at 25−27 (holding that *Vill. of Arlington*

17 *Heights v. Metro. HOus. Dev. Corp.*, 429 U.S. 252 (1977), applies to Plaintiffs claims because

18 "*Arlington Heights* governs claims of racial animus and Plaintiffs specifically allege that the

19 Secretary's Nepal, Honduras, and Nicaragua TPS terminations were motivated by racial animus.").

20 Defendants again overread *Hawaii*, asserting the "Supreme Court has made it clear" that deferential

21 review applies to all executive branch decisions "based on immigration policy." Mot. at 19. This is

22 false. Indeed, after *Hawaii*, the Supreme Court applied the *Arlington Heights* standard to a race

23 discrimination claim brought by undocumented immigrants challenging the rescission of an

24 immigration policy. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 34 (2020) (plurality).

25 Lower courts have done the same. "Contrary to the government's assertion, there is no general rule

26 that federal immigration laws challenged for violating the Constitution should receive rational basis

27 review." *United States v. Suquilanda*, 116 F.4th 129, 139−40 (2nd Cir. 2024) (reviewing challenge

28 to 8 U.S.C. § 1326 under *Arlington Heights*); *Washington v. DHS*, 598 F. Supp. 3d 1051, 1070 (E.D.

13

1    Wash. 2020) (collecting cases). Indeed, every judge to consider discrimination challenges in TPS

2    cases—including every judge in the vacated Ninth Circuit *Ramos* decision—also held *Arlington*

3    *Heights* governs. *See, e.g.*, *Ramos*, 975 F.3d at 896 (vacated panel majority) (noting "the similarities

4    between the [equal protection] challenge in this case and *Regents*," where the Supreme Court applied

5    *Arlington Heights*), *id.* at 925 (Christen, J., dissenting) (applying *Arlington Heights*).

6          As this Court previously found, the factors in *Hawaii* counseling in favor of rational basis

7    review are inapplicable here. Dkt. 73 at 25−27. *Hawaii* concerned the exclusion of non-citizens from

8    abroad, where the government's immigration powers are at their zenith. 585 U.S. at 705 n.5 ("such a

9    circumscribed inquiry applies to any constitutional claim concerning the entry of foreign nationals").

10   Rational basis review does not govern animus claims like those here, brought by persons in the

11   United States, who are presumptively entitled to the Fifth Amendment's full protections. Also,

12   whereas *Hawaii* involved a Presidential proclamation issued under an expansive delegation of

13   congressional authority which "exudes deference to the President in every clause," *id.* at 683–85,

14   this case involves the Secretary acting under a statute that constrains agency discretion. *Nat'l TPS*

15   *All.*, 2025 WL 2487771, at *14 (in enacting the TPS statute, "Congress sought to limit the previously

16   unfettered executive discretion"). Further, *Hawaii*'s deference rested on a reluctance to disturb the

17   President's conclusion that certain noncitizens' entry posed "national security concerns." 585 U.S. at

18   706−10. Here, in contrast, none of the termination decisions even mention "national interest," let

19   alone "national security." Dkt. 73 at 26–27, citing *Hawaii*, 585 U.S. at 706.

20         This Court also previously rejected Defendants' reliance on *Matthews v. Diaz*, 426 U.S. 67

21   (1976), as "inapposite" because in that case "there was no allegation of racial animus." Dkt. 73 at 26.

22   Defendants' other cited cases fare no better. They also do not concern discriminatory *animus* claims,

23   but rather congressional line-drawing in the substantive rules governing admission and deportation.

24   Mot. at 19 (citing *Fiallo v. Bell*, 430 U.S. 787, 791−92 (1977) (gender discrimination claim

25   challenging Congress's "exceptionally broad" power to legislate "the admission of [noncitizens]");

26   *Kleindienst v. Mandel*, 408 US 753, 769−70 (1972) (no discrimination claim; non-citizen was

27   abroad); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950), *superseded by statute as*

28   *stated in DHS v. Thuraissigiam*, 591 U.S. 103 (2020) (plaintiff raised no discrimination claim and

14

stood on the threshold of initial entry)). *Harisiades v. Shaughnessy* provides no support for the additional reason that it relies on the Japanese internment cases. 342 U.S. 580, 589−91 & nn. 16, 17 (1952).[2]

As this Court previously found, Plaintiffs' allegations nonetheless state a plausible claim of impermissible animus even under the deferential *Hawaii* standard of review. Dkt. 73 at 29−30 ("Given the strength of the evidence, Plaintiffs' Fifth Amendment claim would also likely succeed on the merits even if the Court applied the rational basis test.").[3] Plaintiffs have adequately alleged that the Secretary's termination decisions, which rested on false and negative stereotypes entirely "divorced from any factual context," *Hawaii*, 585 U.S. at 705−06, manifested discriminatory intent. The "face of" of the challenged decisions, along with "extrinsic evidence" considered only "to the extent of applying rational basis review," show the Secretary's actions were not rationally related to her stated goals.[4] *Hawaii*, 585 U.S. at 704−05.

To justify each termination decision, Secretary Noem invoked President Trump's Executive Order Protecting the American People Against Invasion ("Invasion E.O."). *See* 90 Fed. Reg. 24151, 24152 n.10 (June 6, 2025) (Nepal termination notice, citing E.O. 14159, § 16(b)); 90 Fed. Reg. 30086, 30088 n.4 (July 8, 2025) (Nicaragua termination notice, citing same); 90 Fed. Reg. 30089, 30091 n.10 (July 8, 2025) (Honduras termination notice, citing same). She described President Trump's Invasion E.O. as "directing" her to limit TPS designations, *id.*, because, in President

---

[2] *Galvan v. Press*, 347 U.S. 522, 529 (1954) relied primarily on *Harisiades* for the deferential review it afforded as well.

[3] A sister court held the same with regard to Secretary Noem's recent Venezuela and Haiti TPS decisions. *Nat'l TPS All. v. Noem*, No. 25-cv-1766, Dkt. 93, at 64−75 (N.D. Cal. Mar. 31, 2025); *id.* at Dkt. 102 at 4 (N.D. Cal. Apr. 4, 2025).

[4] Defendants argue that the Federal Register notices provide sufficient justification for the challenged TPS terminations. Mot. at 20. This Court need not find Defendants explicitly announced their racist intent to deny this motion as facially neutral policies may violate the Equal Protection Clause. *See, e.g.*, *Arlington Heights*, 429 U.S. at 266 (looking to extraneous evidence because "[s]ometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face"). Race-neutral justifications may be pretextual cover for racial animus. *Arce v. Douglas*, 793 F.3d 968, 978 (9th Cir. 2015) (noting that it is appropriate to examine "whether [officials] have 'camouflaged' their intent" given the unlikelihood of acknowledging discriminatory intent).

15

Trump's view, TPS holders (among others) were part of a "flood of illegal immigration" that "engaged in hostile activities" and had "abused the generosity of the American people," "committing vile and heinous acts against innocent Americans." Invasion E.O. at 8443. President Trump's Invasion E.O. manifests a discriminatory intent and urges termination of TPS without any rational relation to the facts or the Secretary's stated goals. TPS holders are lawfully present, have high rates of earned income, contribute billions to the economy, and by law cannot have significant criminal histories. Dkt. 73 at 8−9 & 28; Dkts. 17-14, 17-15, 17-16. The Secretary's invocation of racist tropes—for example, characterizing immigrants as an "[i]nvasion" against which Americans need protecting—is evidence of animus. Dkt. 73 at 28 ("By stereotyping the TPS program and immigrants as invaders that are criminal, and by highlighting the need for migration management, Secretary Noem's statements perpetuate the discriminatory belief that certain immigrant populations will replace the white population."). "Acting on the basis of a negative group stereotype and generalizing such stereotype to the entire group is the classic example of racism." *Nat'l TPS All.*, 773 F. Supp. 3d at 860. That the reasons were in an official agency notice cannot absolve them of the obligation to have some basis in reality, which they do not. *See Doe #1 v. Trump*, 957 F.3d 1050, 1059−60 (9th Cir. 2020) (declining to credit "conclusory factual assertions … unsupported in the record" in a Presidential Proclamation). Because the terminations were not based on a rational or plausible justification, Plaintiffs' allegations suffice under even rational basis review.

In any case, the correct standard is set forth in *Arlington Heights*, and Plaintiffs easily allege facts "rais[ing] a plausible inference that an 'invidious discriminatory purpose was a motivating factor'" for the Secretary's decisions. *Regents*, 591 U.S. at 34 (quoting *Arlington Heights*, 429 U.S. at 266). As this Court previously held, Secretary Noem has made statements betraying animus against immigrants generally and TPS holders specifically. Dkt. 73 at 28 (summarizing that "[t]hese statements reflect the Secretary's animus against immigrants and the TPS program even though individuals with TPS hold lawful status"); *Arlington Heights*, 429 U.S. at 266−69 (considering statements by decisionmakers and other circumstantial evidence of discriminatory intent). Defendants assert that Secretary Noem's discriminatory statements are generalized, taken out of context, or remote in time, Mot. at 21, but that is belied by the record evidence, which includes

16

1    statements directly related to her TPS decisions. Dkt. 73 at 29; Compl. ¶¶ 72−94.[5]

2        Following this Court's order granting Plaintiffs' postponement motion, Defendants provided

3    further evidence of the discriminatory animus motivating their termination decisions—describing

4    TPS as a program which "allow[s] unvetted aliens to remain in [the] U.S." and which has "been

5    exploited to allow criminal aliens to come to our country and terrorize American citizens." Dkt. 82-1

6    at Ex. 1. TPS's careful statutory scheme, however, requires regular, repeated "vetting" of TPS

7    beneficiaries and provides relief only to individuals who are already present in the United States. *See*

8    *also, e.g.*, Dkt. 18-18 (describing TPS holders as "poorly vetted migrants"). Courts have recognized

9    that these and other statements stereotyping TPS holders as dangerous, threatening, and undesirable

10    despite overwhelming evidence to the contrary, Dkts. 17-15, 17-18, 17-20, echo shameful traditions

11    of racism against immigrants and, thus, constitute concrete proof of animus. *See Ave. 6E Invs.,* 818

12    F.3d at 505.

13        Defendants seek to discount President Trump's statements of animus as irrelevant as they

14    concern the "discriminatory motive" of a "different government official." Mot. at 22. But these

15    statements cannot be so easily disregarded as Plaintiffs allege—and the Secretary concedes—that the

16    Secretary's termination decisions were motivated by President Trump: Secretary Noem acted on the

17    President's "desire" to see TPS "used properly," and "when the President gives a directive, the

18    Department of Homeland Security will follow it." Compl. ¶ 117. Accordingly, Secretary Noem's

19    explicit reliance on President Trump's animus against non-white non-European immigrants to justify

20    her termination decisions further reflects her animus. *See id.* ¶¶ 85 & 95−118.[6]

21        _____

22    [5] Other courts have found racial animus based on statements significantly less overtly racist than the
       statements here. *See, e.g., Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 505 (9th Cir. 2016)

23    ("the use of 'code words' may demonstrate discriminatory intent"); *Greater New Orleans Fair Hous.
       Action Ctr. v. St. Bernard Par.*, 641 F. Supp. 2d 563, 571 (E.D. La. 2009) (finding that "references to

24    'ghetto,' 'crime,' 'blight,' and 'shared values'" are "nothing more than 'camouflaged racial
       expressions'"); *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 549 (S.D.N.Y. 2006) (concluding

25    that "the claims and comments made by public officials in Mamaroneck about the day laborers who

26    plied the streets of Mamaroneck looking for work were negative and stigmatizing" and "[t]hat is
       some evidence of racism").

27

28    [6] Plaintiffs need not rely on the "cat's paw" doctrine for their Equal Protection claim in light of
       evidence linking the President's animus to the TPS terminations. Nonetheless, courts have

17

Plaintiffs' allegations further support finding animus under the remaining *Arlington Heights* factors, including the historical background of the decision, *id.* ¶¶ 38−44 & 124−28 (efforts to terminate TPS during first Trump administration), 45−71 (targeting all TPS holders during second Trump administration); procedural and substantive departures from the normal sequence, *id.*; and the disparate impact of the official action on a disfavored minority, *see id.* ¶¶ 129−51. Defendants' Motion entirely ignores these factors.

The distant actions of the first Trump administration in extending TPS for four countries do not undermine Plaintiffs' discrimination claim. See Mot. at 21−22 (arguing that four non-white, non-European countries having received TPS extensions under the first Trump administration "cannot be squared" with Plaintiffs' allegations of unconstitutional animus). First, Secretary Noem—the ultimate decisionmaker here—has not extended TPS for a *single* country since she came to office, asserting in the service of her termination decisions incredible allegations that, *e.g.*, tourism has improved in Afghanistan and that "two major armed conflicts" did not limit the ability of Cameroonian TPS holders to safely return. Compl. ¶¶ 60 & 62. The four extensions during the first Trump administration were made at a different time and by a different Secretary; they also were clear outliers— during his first administration, President Trump sought to terminate TPS for over *98 percent* of the population with TPS. *Id.* ¶ 38. That Defendants extended TPS for 70 South Sudanese nationals in 2017 does not disprove that Defendants acted out of racial animus in stripping legal status from hundreds of thousands of others at that time or since. 82 Fed. Reg. 44205, 44205 (Sept. 21, 2017) (extending TPS for "[a]pproximately 70 South Sudan TPS beneficiaries"). Plaintiffs need

recognized "liability for discrimination will lie when a biased individual manipulates a non-biased decision-maker into taking discriminatory action." *See Batalla Vidal v. Nielsen*, 291 F. Supp. 3d 260, 277−279 (E.D.N.Y. 2018), *rev'd in part by Regents*; *Ave. 6E Invs.*, 818 F.3d at 504 ("The presence of community animus can support a finding of discriminatory motives by government officials, even if the officials do not personally hold such views."). Defendants cite two cases to argue against the relevance of the "cat's paw" doctrine here. Neither is availing. One is a vacated decision of a divided court in a prior TPS case, Mot. at 22, citing *Ramos*, 975 F.3d at 897; and the other, *Staub v. Proctor Hosp.*, 562 U.S. 411, 418 (2011), is inapposite as it considered whether the discriminatory motivation of an actor could be attributed to a decisionmaker who was not a subordinate, and where the actor's animus was both unknown and never asserted to motivate the decisionmaker's action. Here, President Trump has the authority to hire and fire the Secretary; his animus is well-recognized; and Secretary Noem has conceded that it motivated her termination decisions.

not demonstrate animus towards every group of similarly-situated people for this Court to find Defendants acted out of racial animus. *Arlington Heights*, 429 U.S. at 266 n.14 ("A single invidiously discriminatory governmental act . . . would not necessarily be immunized by the absence of such discrimination in the making of other comparable decisions.").

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss.


Date:   September 23, 2025                      Respectfully submitted,

                                               NATIONAL DAY LABORER
                                               ORGANIZING NETWORK

                                                 */s/ Jessica Karp Bansal*
                                               Jessica Karp Bansal
                                               Lauren Michel Wilfong
                                               (Admitted *Pro Hac Vice*)

                                               Ahilan T. Arulanantham
                                               CENTER FOR IMMIGRATION LAW AND
                                               POLICY, UCLA SCHOOL OF LAW

                                               Eva L. Bitrán
                                               Diana Sánchez
                                               ACLU FOUNDATION
                                               OF SOUTHERN CALIFORNIA

                                               Emilou MacLean
                                               Michelle (Minju) Y. Cho
                                               Amanda Young
                                               ACLU FOUNDATION
                                               OF NORTHERN CALIFORNIA

                                               Erik Crew (Admitted *Pro Hac Vice*)
                                               HAITIAN BRIDGE ALLIANCE

                                               *Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:25-CV-05687-TLT

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

NATIONAL DAY LABORER ORGANIZING NETWORK


/s/ *Jessica Karp Bansal*
Jessica Karp Bansal