BRETT SHUMATE
Assistant Attorney General
YAAKOV M. ROTH
Deputy Assistant Attorney General
Civil Division
WILLIAM H. WEILAND
Acting Assistant Director
ERIC SNYDERMAN
LAUREN BRYANT
SHELBY WADE
CATHERINE ROSS
JEFFREY HARTMAN
DANIEL CAPPELLETTI
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, <br><br> Defendants. | Case No. 3:25-cv-5687 <br><br> **DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> Judge: Hon. Trina L. Thompson |

DEFS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
3:25-CV-5687

| | |
|---|---|
| Dated: September 30, 2025 | Respectfully submitted,<br>BRETT SHUMATE<br>Assistant Attorney General<br><br>YAAKOV M. ROTH<br>Deputy Assistant Attorney General<br>Civil Division<br>WILLIAM H. WEILAND<br>Acting Assistant Director<br><br>ERIC SNYDERMAN<br>SHELBY WADE<br>DANIEL M. CAPPELLETTI<br>LAUREN BRYANT<br>CATHERINE ROSS<br>JEFFREY HARTMAN<br>Trial Attorneys<br><br>*/s/ Lauren E. Bryant*<br>LAUREN E. BRYANT<br>Trial Attorney (NY Bar 5321880)<br>U.S. Department of Justice, Civil Division<br>Office of Immigration Litigation<br>General Litigation and Appeals Section<br>P.O. Box 868, Ben Franklin Station<br>Washington, D.C. 20044<br>Tel: (202) 919-1366<br>Lauren.@usdoj.gov<br><br>*Attorneys for the Defendants* |

DEFS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS
3:25-CV-5687

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.  THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' ENTIRE ACTION ..................2

    A.  The TPS Statute Bars Plaintiffs' Claims ..................................................................2

    B.  The APA Precludes Review of an Agency's Discretionary Determinations .....................3

    C.  Section 1252(f)(1) Precludes Plaintiffs' Requested Relief ................................................6

II. PLAINTIFFS' APA CLAIMS SHOULD BE DISMISSED BECAUSE THE SECRETARY'S DETERMINATIONS WERE NOT UNLAWFUL .........................................8

III. PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW .....................11

CONCLUSION ......................................................................................................................14

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687
i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Biden v. Texas*,
    597 U.S. 785 (2022) .................................................................................................... 6

*Bouarfa v. Mayorkas*,
    604 U.S. 6 (2024) ...................................................................................................... 10

*California v. Grace Brethren Church*,
    457 U.S. 383 (1982) .................................................................................................... 7

*California v. Grace Brethren Church*,
    457 U.S. 393 (1982) .................................................................................................... 7

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) .................................................................................................... 9

*Direct Mktg. Ass'n v. Borhl*,
    575 U.S. 1 (2015) .................................................................................................... 7, 8

*Ekimian v. INS*,
    303 F.3d 1153 (9th Cir. 2002) .................................................................................. 10

*Garland v. Aleman Gonzalez*,
    596 U.S. 543 (2022) ................................................................................................ 6, 7

*Haitian Refugee Ctr., Inc. v. Baker*,
    953 F.2d 1498 (11th Cir. 1992) .................................................................................. 5

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952) .................................................................................................. 12

*Heckler v. Chaney*,
    470 U.S. 821 (1985) .................................................................................................... 4

*Helgeson v. Bureau of Indian Affairs*,
    153 F.3d 1000 (9th Cir. 1998) .................................................................................... 4

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ...................................................................................................... 12

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

ii

*Hyatt v. Off. of Mgmt. & Budget*,
  908 F.3d 1165 (9th Cir. 2018) ............................................................................................. 4, 5, 10

*Mathews v. Diaz*,
  426 U.S. 67 (1976) ................................................................................................................ 12, 13

*National TPS Alliance v. Noem*,
  No. 25-2120, 2025 WL 2487771 (9th Cir. Aug. 29, 2025) ............................................................ 7

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010) .................................................................................................... 7

*Patel v. Garland*,
  596 U.S. 328 (2022) ...................................................................................................................... 3

*Poursina v. USCIS*,
  936 F.3d 868 (9th Cir. 2019) ...................................................................................................... 10

*Ramos v. Wolf*,
  975 F.3d 872 (9th Cir. 2020) .............................................................................................. 3, 9, 13

*Regents of Univ. of Cal.*,
  591 U.S. 1 (2020) ........................................................................................................................ 13

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) ...................................................................................................... 7

*Trump v. Hawaii*,
  585 U.S. 667 (2018) .................................................................................................................... 12

*United States v. Texas*,
  599 U.S. 670 (2023) ...................................................................................................................... 7

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977) .................................................................................................................... 13

*Webster v. Doe*,
  486 U.S. 592 (1988) .................................................................................................................... 10

**STATUTES**

5 U.S.C. § 701(a)(2) ........................................................................................................... *passim*
8 U.S.C. § 1252(f)(1) ................................................................................................................ 1, 7
8 U.S.C. § 1254a ............................................................................................................................ 7

DEFS.' MOT. TO DISMISS PLS.' COMPLAINT
No. 3:25-cv-5687

iii

8 U.S.C. § 1254a(b) .................................................................................................... 1, 11

8 U.S.C. § 1254a(b)(1)(B) ............................................................................................... 11

8 U.S.C. § 1254a(b)(1)(C) ............................................................................................. 6, 8

8 U.S.C. § 1254a(b)(3) ....................................................................................................... 1

8 U.S.C. § 1254a(b)(3)(A) ............................................................................................. 1, 6

8 U.S.C. § 1254a(b)(3)(B) ........................................................................................*passim*

8 U.S.C. § 1254a(b)(5)(A) .................................................................................... 1, 2, 3, 12

8 U.S.C. § 1254a(d)(3) ..................................................................................................... 10

Section 1254a(b)(1) ....................................................................................................... 3, 6

U.S.C. § 1254a .................................................................................................................. 7

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 14

## FEDERAL REGISTER NOTICES

*Designation of Honduras Under [TPS]*,
    64 Fed. Reg. 524 (Jan. 5, 1999) ................................................................................ 8

*Designation of Nicaragua Under [TPS]*,
    64 Fed. Reg. 526 (Jan. 5, 1999) ................................................................................ 8

*Termination of the Designation of Honduras for [TPS]*,
    90 Fed. Reg. 30,089 (July 8, 2025)………….............................……………2, 4, 8, 9, 10, 13

*Termination of the Designation of Nepal for [TPS]*,
    90 Fed. Reg. 24,151 (June 6, 2025) ........................................................... 2, 4, 9, 10, 13

*Termination of the Designation of Nicaragua for [TPS]*,
    90 Fed. Reg. 30,086 (July 8, 2025) ………….. ........................................... 2, 4, 9, 10, 13

# INTRODUCTION

Defendants submit this reply in further support of their motion to dismiss the Complaint.

Secretary Noem's determination to terminate TPS designations for Honduras, Nicaragua, and Nepal were a lawful and valid exercise of her statutory authority under 8 U.S.C. § 1254a(b)(3). The purpose of TPS is to provide *temporary* relief from removal for aliens who are in the United States when their country of nationality experiences armed conflict, a natural disaster, or other extraordinary and temporary conditions and who are thus temporarily unable to return home safely or whose country is temporarily unable to adequately handle their return. In enacting the TPS statute, Congress reposed to the Secretary's judgment, informed by appropriate consultation, the discretion to decide whether a country's designation should be extended or terminated. 8 U.S.C. § 1254a(b)(3)(A). When the Secretary determines that a country no longer meets the conditions that prompted the designation, the statute requires her to terminate its TPS designation. 8 U.S.C. § 1254a(b)(3)(B).

The issues before the Court are straightforward. First, the Court lacks jurisdiction over Plaintiffs claims because: (1) Congress intentionally shielded any determination with respect to a TPS termination from judicial review, 8 U.S.C. § 1254a(b)(5)(A); (2) the APA precludes judicial review of the Secretary's TPS determinations, which Congress solely committed to her discretion, 5 U.S.C. § 701(a)(2); and (3) 8 U.S.C. § 1252(f)(1) bars this Court from "enjoin[ing] or restrain[ing]" the Secretary's authority to designate a country for TPS or to extend or terminate a TPS designation under 8 U.S.C. § 1254a(b).

Second, even if the Court finds that it has jurisdiction to review the Secretary's determinations, Plaintiffs have not plausibly stated a claim that the Secretary's reasoned decision-making, pursuant to a broad delegation of authority by Congress, was "contrary to law" or "arbitrary and capricious." On the contrary, the Secretary followed the TPS statute to the letter by reviewing the current conditions of each country and publishing a public notice within 60 days of the termination date explaining that each of the countries no longer met the requisite conditions for their TPS designations, in accordance with 8 U.S.C. § 1254a(b)(3)(A)-(C).

For the same reasons, Plaintiffs have failed to state a claim that the Secretary's straightforward TPS terminations violated their constitutional rights. The Supreme Court has long held—and recently reaffirmed—that constitutional challenges to immigration policy choices are reviewed for rational basis.

1

This is especially so when these determinations pertain to assessing the ability of a foreign nation to accept the return of their nationals, who may have been temporarily provided safe harbor in the United States during passing moments of crisis. Properly reviewed under the rational basis standard that applies to such foreign policy and immigration decisions, Plaintiffs' constitutional claims do not state a claim that is plausible on its face. Even under a heightened review standard, the Court should dismiss Plaintiffs' constitutional claims because their claims of discriminatory animus rest entirely on public statements of the Secretary and the President that are remote in time from the challenged TPS determinations and made in unrelated contexts.

For these reasons, the Court should dismiss this action with prejudice pursuant to Rule 12(b)(1) or 12(b)(6).

**ARGUMENT**

I. **THIS COURT LACKS JURISDICTION OVER PLAINTIFFS' ENTIRE ACTION**

   A. **The TPS Statute Bars Plaintiffs' Claims**

The TPS statute unambiguously precludes review here in the plainest possible language: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS relief. 8 U.S.C. § 1254a(b)(5)(A). The statute commits to the Secretary's unreviewable authority any and all determinations concerning TPS designation, extension, and termination. The Secretary's determinations terminating TPS for Honduras, Nepal, and Nicaragua are unequivocally determinations "with respect to the … termination … of a foreign state" for TPS. *Termination of the Designation of Honduras for [TPS]*, 90 Fed. Reg. 30,089 (July 8, 2025) ("Honduras Termination"); *Termination of the Designation of Nepal for [TPS]*, 90 Fed. Reg. 24,151 (June 6, 2025) ("Nepal Termination"); *Termination of the Designation of Nicaragua for [TPS]*, 90 Fed. Reg. 30,086 (July 8, 2025) ("Nicaragua Termination"). Accordingly, all of Plaintiffs' claims, both statutory and constitutional, arising from the Secretary's termination decisions are shielded from this Court's review. 8 U.S.C. § 1254a(b)(5)(A); *see also* H.R. Rep. No. 101-245 at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review.").

Since Plaintiffs cannot plausibly deny that the TPS terminations at issue fall squarely within the literal confines of Section 1254a(b)(5)(A), they instead contend that they are not challenging the "determinations" themselves, but rather the "collateral practices and procedures" employed in rendering the decisions. ECF No. 121 at 12; Compl. ¶ 156(a)-(f). However, the statute's sweeping language encompasses these claims by barring review of "*any* determination" "with respect to" the "termination … of a designation" of a country for TPS. 8 U.S.C. § 1254a(b)(5)(A); *see Patel v. Garland*, 596 U.S. 328, 337-40 (2022) (statute barring review of "any judgment regarding the granting of relief" covers "any authoritative decision" on the matter). Put simply, review of the considerations and results of those considerations *is* a review of determination and is barred under the statute.

In opposition, Plaintiffs further contend that the Court is bound by its determination in the July 31, 2025 Postponement Order, ECF No. 121 at 10-11, holding that Section 1254a(b)(5)(A) does not bar Plaintiffs' claims challenging the Secretary's decisions to terminate TPS for Honduras, Nepal, and Nicaragua. ECF No. 73 at 15-20. However, Defendants respectfully maintain that this decision was in error, and further note that the Ninth Circuit subsequently granted Defendants' motion to stay the Postponement Order pending appeal. *See National TPS Alliance v. Noem*, No. 25-4901 (9th Cir.) (Dkt. No. 91). In any event, the Court's ruling on interim relief does not control at this stage, and Defendants respectfully submit that the Court may consider Defendants' arguments anew.

Accordingly, judicial review is foreclosed by § 1254a(b)(5)(A), and this Court should dismiss Plaintiffs' Complaint for lack of jurisdiction. *See Ramos v. Wolf*, 975 F.3d 872, 889 (9th Cir. 2020) (this bar "preclude[s] direct review of the Secretary's country-specific TPS determinations"), *vacated*, 59 F.4th 1010, 1011 (9th Cir. 2023)).

**B.     The APA Precludes Review of an Agency's Discretionary Determinations**

The APA also separately precludes review where the agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Section 1254a(b)(1) vests the Secretary with the discretion to designate a foreign country for TPS if she finds that certain considerations are met. The Secretary's decision-making process includes the assessment of foreign country conditions and the country's ability to "adequately" handle the return of its nationals. *Id*. Congress further committed determinations whether a country continues to meet the conditions for designation to the Secretary's informed, discretionary

3

judgment (in consultation with appropriate government agencies). Determinations relating to foreign country conditions—for example, whether they are "extraordinary and temporary," whether there is an "ongoing armed conflict," whether the disruption in living conditions is both "substantial" and "temporary," whether the foreign country has officially requested designation, whether a country is "temporarily" unable to "adequately" handle the return of its nationals, and whether permitting nationals of the country to remain temporarily in the United States is "contrary to the national interest of the United States"—are of such a discretionary nature that they are not subject to judicial review. *See* 5 U.S.C. § 701(a)(2). Indeed, immigration is "an area of executive action in which the courts have long been hesitant to intrude." *Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000, 1003 (9th Cir. 1998) (holding that, in addition to the overall statutory structure, the issue of judicial review also hinges on whether the subject matter is typically left to executive discretion).

Contrary to Plaintiffs' assertion, ECF No. 121 at 13-14, the TPS statute does not create a "meaningful standard" against which the Court can determine whether the Secretary appropriately exercised her discretion. "An action is committed to agency discretion where there is no 'meaningful standard against which to judge the agency's exercise of discretion.'" *Hyatt v. Off. of Mgmt. & Budget*, 908 F.3d 1165, 1174 (9th Cir. 2018) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). Section 1254a(b)(3)(A) requires that, prior to the end of the period of designation or extension of TPS, the Secretary review the conditions of the foreign country and determine whether such conditions continue to be met. If the Secretary determines that the conditions for the designation of TPS are no longer met, she must terminate the designation by publishing her decision in the Federal Register 60 days prior to the termination date explaining the basis of the termination. 8 U.S.C. § 1254a(b)(3)(B). Here, Plaintiffs cannot plausibly contest that the Secretary complied with each of the requirements set forth in § 1254a(b)(3)(A) and (B). Indeed, the Secretary reviewed the country conditions for Honduras, Nepal, and Nicaragua and timely published a Federal Register Notice explaining that TPS for each country would be terminated because the country conditions that prompted the designations were no longer met. *See Honduras Termination*, 90 Fed. Reg. 30,089; *Nepal Termination*, 90 Fed. Reg. 24,151; *Nicaragua Termination*, 90 Fed. Reg. 30,086. Instead, Plaintiffs' complaint distills down to their belief that the

Secretary should have weighed the country conditions differently—a rebalancing that is beyond this Court's authority to conduct.

To the extent Plaintiffs contend that the statutory language creates a "meaningful standard" by which to judge the Secretary's determinations as to whether each country continued to experience the conditions that led to their TPS designation, ECF No. 121 at 13-14, such contention runs contrary to Congressional intent. The statute requires the Secretary to periodically review the country's conditions and publish her decision at least 60 days prior to the extension or termination of the TPS designation, but leaves the substantive findings to the Secretary's discretion. § 1254a(b)(3)(A) and (B). The statute does not identify specific factors to be considered or weighed by the Secretary in reviewing the information. Accordingly, having reviewed the country conditions and published her decision within the designated time period in accordance with the statute, her decision is not subject to a meaningful standard of review. *Id.*; *cf., e.g.*, *Hyatt v. Off. of Mgmt. & Budget*, 908 F.3d 1165, 1174 (9th Cir. 2018) (differentiating the first portion of the PRA requiring the agency to review the available information within a specific time period as creating a meaningful standard of review, from the second part of the statute requiring the agency to "take appropriate remedial action, if necessary" as being committed to the agency's discretion and unreviewable, particularly in the absence of any statutory standard to guide the agency in its decision-making); *Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1508 (11th Cir. 1992) (holding that an executive order stating that "no person who is a refugee will be returned without his consent" did not provide the court with a meaningful standard to review the decisions by agency officials as to who qualified as a refugee or the procedures used in reaching those determinations, because the order "did not identify any specific factors to be considered or suggest how competing interests must be balanced," such that "[t]he determination of refugee status rests solely with the INS official).

Notwithstanding that Congress vested the Secretary with the discretion to determine whether a country continues to meet the conditions that gave rise to the initial TPS designation, Plaintiffs contend that an agency's break with past practice automatically triggers the Court's ability to review the agency's decision-making process. ECF No. 121 at 14. In this vein, Plaintiffs argue that the termination of TPS for three countries that routinely had their TPS designation extended over the last decade, "with only 60 days notice"—i.e., the exact time period prescribed by 8 U.S.C. § 1254a(b)(3)(B)—was an "unexplained

5

departure from decades of decision-making" and was therefore arbitrary and capricious. Compl. ¶¶ 156(b), 160. This argument is squarely at odds with the statute's intended purpose. By its definition, TPS is a *temporary* designation based on, *inter alia*, "temporary conditions in the foreign state that prevent aliens who are nationals from returning to the state in safety…" 8 U.S.C. § 1254a(b)(1)(C). Congress's intent that the designation should be temporary in nature is further evident from the statutory requirement that the Secretary undertake periodic review of the country's conditions to determine whether the conditions prompting the initial TPS designation are still being met. 8 U.S.C. § 1254a(b)(3)(A). Critically, the statute specifically sets forth a 60-day timeline between the publication of the Federal Register Notice and the termination of TPS for a given country. 8 U.S.C. § 1254a(b)(3)(B). That prior extensions or terminations may have been published more than 60 days in advance does not, as Plaintiffs contend, create an extra-statutory "meaningful standard" against which the Court can review the agency's decision-making. ECF No. 121 at 14-15.

Ultimately, the Secretary's determination regarding the continued existence of conditions supporting the designation of a country for TPS under 8 U.S.C. § 1254a(b)(1) is committed solely to her discretionary judgment. 8 U.S.C. § 1254a(b)(3)(B). As such, this Court lacks jurisdiction to review any such determination. 5 U.S.C. § 701(a)(2).

### C. Section 1252(f)(1) Precludes Plaintiffs' Requested Relief

Section 1252(f)(1) bars lower courts from entering an order that "enjoin[s] or restrain[s]" federal officials from enforcing, implementing, or otherwise carrying out "the specified statutory provisions." *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 549-50 (2022). By seeking to "[e]njoin and restrain all Defendants … from enforcing the terminations of TPS for Honduras, Nepal, and Nicaragua," Compl. ¶ 170, Plaintiffs seek the precise coercive order that is prohibited by the statute.

Regardless of how Plaintiffs frame the relief sought, the fact remains that an order that enjoins or restrains DHS's implementation of the TPS provisions in § 1254a is jurisdictionally barred under § 1252(f)(1). *See Biden v. Texas*, 597 U.S. 785, 797 (2022) (§ 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or *to refrain from taking* actions to enforce, implement, or otherwise carry out the specified statutory provisions.") (quoting *Aleman Gonzalez*, 596 U.S. at 544) (emphasis added).

Section 1252(f)(1) thus plainly bars classwide injunctive relief (which would impermissibly "enjoin" the operation of a covered provision) and classwide declaratory relief or relief under the APA (which would impermissibly "restrain" the covered provision's operation). *See California v. Grace Brethren Church*, 457 U.S. 383, 408 (1982) (holding that a similarly phrased provision barred declaratory relief). It does not matter for purposes of Section 1252(f)(1) whether Plaintiffs request an order postponing, staying, or setting aside the Secretary's determinations. Compl. ¶¶ 168-69.

Like an injunction, an order to "set aside" the termination decisions "restrict[s] or stop[s] official action," *Direct Mktg. Ass'n v. Borhl*, 575 U.S. 1, 13 (2015), by prohibiting officials from relying on the agency's determinations. In this vein, an order setting aside the Secretary's termination decisions is the functional equivalent of an injunction compelling Defendants to stop enforcing termination decisions made pursuant to 8 U.S.C. § 1254a. *See United States v. Texas*, 599 U.S. 670, 691 (2023) (Gorsuch, J., concurring) (questioning the validity of the district court's finding that § 1252(f)(1) does not bar vacatur orders and that § 706(2) authorizes courts to issue them). Thus, to the extent Plaintiffs ask the Court to "[s]et aside" and "[p]ostpone or stay" the TPS terminations "from taking effect or being put into effect," Compl. ¶¶ 168-69, such an order would necessarily "restrain" federal officials and is therefore equally prohibited by 8 U.S.C. § 1252(f)(1). *See Aleman Gonzalez*, 596 U.S. at 544.[1]

Finally, it remains the government's view that § 1252(f)(1) also bars declaratory relief. *See Aleman Gonzalez*, 596 U.S. at 551 n.2; *cf. California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982) (Tax Injunction Act barred declaratory relief as well as injunctive relief); *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010). The government recognizes, however, that the Ninth Circuit has held otherwise. *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010).

---

[1] The court in *National TPS Alliance v. Noem*, No. 25-2120, 2025 WL 2487771 (9th Cir. Aug. 29, 2025) held that "section 1252(f)(1)'s bar on injunctive relief for claims does not affect challenges to actions that fall outside of a statutory grant of authority." Defendants reiterate that Plaintiffs have not alleged that the Secretary exceeded her statutory authority when terminating TPS designations for Honduras, Nicaragua, or Nepal.

7

## II. PLAINTIFFS' APA CLAIMS SHOULD BE DISMISSED BECAUSE THE SECRETARY'S DETERMINATIONS WERE NOT UNLAWFUL

Even if judicial review were available, Plaintiffs have failed to state a claim that the Secretary's termination of the TPS designations for Honduras, Nepal, and Nicaragua were unlawful under the APA. Compl. ¶¶ 153-61.

First, Plaintiffs summarily contend that the terminations were predetermined and were not based on a review of the current conditions for any of the three countries at issue. ECF No. 121 at 16. Specifically, Plaintiffs claim that "the decisions to terminate TPS for Honduras, Nepal, and Nicaragua were made long before Secretary Noem considered conditions in any of those countries," and that "the Federal Register notices contain only country conditions facts cherry-picked to support her preordained conclusion." *Id*. at 17; Compl. ¶¶ 45. Yet Plaintiffs offer no evidence to rebut the uncontroverted fact that Secretary Noem followed the TPS statute to the letter and offered substantive, thoughtful explanations for her determinations. *See* 8 U.S.C. § 1254a(b)(3)(A)-(C). And, again, Plaintiffs' complaint that the Secretary weighed some factors more than others is nothing more than a demand for a judicial reweighing not authorized by the APA.

Pursuant to 8 U.S.C. § 1254a(b)(3)(B), "[i]f the [Secretary] determines under subparagraph (A) that a foreign state . . . no longer continues to meet the conditions for designation under paragraph (1), the [Secretary] shall terminate the designation." Here, the TPS designations for Honduras, Nepal, and Nicaragua were linked to specific temporary events or conditions resulting from "an earthquake, flood, drought, epidemic, … other environmental disaster" under 8 U.S.C. § 1254a(b)(1)(C). In deciding whether to extend or terminate TPS for each of these countries, the Secretary duly considered whether the conditions that gave rise to the initial TPS designations persisted. For example, Honduras and Nicaragua were first designated for TPS in 1999 based on a temporary disruption in living conditions caused by Hurricane Mitch. *Designation of Honduras Under [TPS]*, 64 Fed. Reg. 524 (Jan. 5, 1999); *Designation of Nicaragua Under [TPS]*, 64 Fed. Reg. 526 (Jan. 5, 1999). Upon review of country conditions in Honduras, the Secretary found that there had been substantial improvements in water sources, electricity, sanitation, disaster management, and the economy. *Honduras Termination*, 90 Fed. Reg. at 30,091. Similarly, the Secretary found that Nicaragua had made significant progress in areas of

8

infrastructure, education, healthcare, agriculture, and the economy. *Nicaragua Termination*, 90 Fed. Reg. at 30,088. In terminating the TPS designation for Nepal, the Secretary similarly concluded that the temporary disruption in living conditions caused by the 2015 earthquake no longer existed, citing improvements to the country's disaster preparedness and response, housing, infrastructure, and community systems. *Nepal Termination*, 90 Fed. Reg. at 24,152. In accordance with 8 U.S.C. 1254a(b)(1)(B)(ii), the Secretary also found that each of the three countries was no longer "unable . . . to handle adequately the return" of its nationals as a result of the temporary emergency. *Honduras Termination*, 90 Fed. Reg. at 30,089; *Nicaragua Termination*, 90 Fed. Reg. at 30,087; *Nepal Termination*, 90 Fed. Reg. at 24,152.

That the Secretary also considered, among other things, the Administration's immigration policy prerogatives, ECF No. 17, "[i]t is hardly improper for an agency head to come into office with policy preferences and ideas, discuss them with affected parties, sound out other agencies for support, and work with staff attorneys to substantiate the legal basis for a preferred policy." *Dep't of Com. v. New York*, 588 U.S. 752, 783 (2019). As the Supreme Court explained, "a court may not set aside an agency's policymaking decision solely because it may have been influenced by political considerations or prompted by an Administration's priorities …. Such decisions are routinely informed by unstated considerations of politics, the legislative process, public relations, interest groups, foreign relations, and national security concerns (among others)." *Id*. at 782; *see also Ramos*, 975 F.3d at 897-98. It bears noting that Secretary Noem also reviewed recommendations from the Secretary of State under the former Administration, which were provided to former Secretary Mayorkas. ECF No. 64 at 0006. For example, former Secretary Blinken noted that "there is no longer an environmental disaster in Nepal causing a substantial, but temporary, disruption of living conditions, and Nepal is currently able to handle adequately the return of its nationals." *Id*. Accordingly, the Department of State went on record "support[ing] the termination of … TPS for Nepal…" *Id*.

Second, Plaintiffs' contention that the Secretary's determinations deviate from past practice by failing to provide at least a six-month transition period, ECF No. 121 at 17, is insufficient to state an APA claim. Tellingly, Plaintiffs dubiously sidestep the statutory language setting a 60-day transitional period prior to the expiration of TPS for publication of the Secretary's decision to terminate. 8 U.S.C. §

9

1254a(b)(3)(B) (termination "shall not be effective earlier than 60 days after the date the notice is published or, if later, the expiration of the most recent previous extension"). The Secretary followed the statute to the letter by publishing notice of her decision terminating TPS for Honduras, Nepal, and Nicaragua within the 60-day time limit prescribed by the statute. *See Honduras Termination*, 90 Fed. Reg. 30,089; *Nepal Termination*, 90 Fed. Reg. 24,151; *Nicaragua Termination*, 90 Fed. Reg. 30,086. Moreover, while Plaintiffs acknowledge that prior TPS designations were also terminated under a similar timeline, they argue that those decisions occurred over 20 years ago and should not factor into the agency's custom and practice of following the statute. ECF No. 17. Plaintiffs have also conveniently ignored the historical substantial variation in length of wind-down periods for prior TPS terminations, ECF No. 2. In this regard, it is actually Plaintiffs who are "cherry-picking" the available information to suit their narrative.[2] *Id*.

      Finally, Plaintiffs fail to substantiate their assertion that Secretary Noem was statutorily required to consider country conditions outside of those that gave rise to the TPS designation and, in failing to do so, violated the APA. ECF No. 121 at 18-19. 8 U.S.C. § 1254a(b)(3)(B) states that "[i]f the [Secretary] determines under subparagraph (A) that a foreign state . . . *no longer continues to meet the conditions for designation* under paragraph (1), the [Secretary] shall terminate the designation." (emphasis supplied). The statute thus tasks the Secretary with considering only the "conditions for designation"—i.e., the country conditions underscoring the TPS designation—and determining whether the country "no longer continues to meet [those] conditions." *Id*. This interpretation is also consistent with the statutory language

---

[2] To the extent Plaintiffs are seeking to challenge the Secretary's decision not to invoke her discretionary "option" under 8 U.S.C. § 1254a(d)(3) to allow for an additional period for TPS document validity as she "determines to be appropriate," judicial review of that discretionary determination is barred by 8 U.S.C. § 1252(a)(2)(B)(ii). Section 1252(a)(2)(B)(ii) bars review of any "decision or action of … the Secretary of Homeland Security the authority for which is specified under [the INA] to be in the discretion of … the Secretary …." The statutory language in § 1254a(d)(3) exudes deference to the Secretary. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 13-15 (2024) (holding that 8 U.S.C. § 1252(a)(2)(B)(ii) applies where, as here, the INA uses terms that "exude[ ] deference," "Congress has in no way prescribed how that discretion must be exercised," and "[t]here are no conditions that the Secretary must satisfy before" she can exercise her authority); *cf. Poursina v. USCIS*, 936 F.3d 868, 871-72 (9th Cir. 2019). Moreover, given that § 1254a(d)(3) imposes no constraints on the Secretary's discretion, such determinations under § 1254a(d)(3) are likewise committed to agency discretion by law and thus not subject to review under the APA. *See* 5 U.S.C. § 701(a)(2); *see also, e.g.*, *Webster v. Doe*, 486 U.S. 592, 599 (1988); *Hyatt*, 908 F.3d at 1174; *Ekimian v. INS*, 303 F.3d 1153, 1157-59 (9th Cir. 2002).

tying a country's TPS designation to specific events—i.e., "an earthquake, flood, drought, epidemic, [or] … other environmental disaster." 8 U.S.C. § 1254a(b)(1)(B). The statute also emphasizes that the conditions that give rise to the TPS designation must be "substantial" and "temporary." *See id*. § 1254a(b)(1)(B)(i) (the Secretary may designate a country for TPS if she finds, among other things, that an environmental disaster causes a "substantial, but temporary, disruption of living conditions"). They must also be substantial enough that "the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state. *Id*. § 1254a(b)(1)(B)(ii). Thus, when the statute mandates that the Secretary periodically evaluate whether "the conditions for [a country's TPS] designation … continue to be met," *id*. § 1254a(b)(3)(A), it follows that the Secretary is to evaluate whether the "temporary" conditions caused by the event that gave rise to the TPS designation continue to exist to such an extent that the foreign state is "*unable, temporarily, to handle adequately* the return" of its nationals.

Each of the notices detailed the improved conditions in the respective countries and why those countries "no longer continue[] to meet the conditions for designation under paragraph (1)" of 8 U.S.C. § 1254a(b). *See* 8 U.S.C. § 1254a(b)(3)(B). Nothing in the statute states that periodic evaluation of a TPS designation must incorporate every intervening country condition unrelated to the reason for the designation. And in any event, the Secretary's determinations reflected that, whatever intervening changes had occurred since the designation, the current country conditions did not meet the statutory criteria for designation and the respective country can adequately handle the return of its nationals.

The termination decisions are the result of a careful analysis undertaken by a Cabinet official in consultation with other Cabinet officials and their agencies, the upshot of which was that the conditions giving rise to the country's TPS designation no longer persisted. Plaintiffs have not stated a claim that the Secretary deviated from this statutory framework or "disregard[ed] rules that are still on the books" in her decision-making process, and their APA claim should be dismissed. Compl. ¶ 159.

### III. PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW

Even if the Court finds that it has jurisdiction to consider Plaintiffs' constitutional claims, Secretary Noem's determinations terminating TPS for Honduras, Nicaragua, and Nepal did not violate the Fifth Amendment.

Notwithstanding the Court's prior holding, ECF No. 73, Defendants respectfully maintain that *Trump v. Hawaii*, 585 U.S. 667 (2018) sets forth the appropriate rational basis review that the Court should employ in assessing Plaintiffs' constitutional law claims. Rational basis review governs Equal Protection challenges to immigration policy choices because "'[a]ny rule of constitutional law that would inhibit the flexibility' of the President 'to respond to changing world conditions should be adopted only with the greatest caution.'" *Hawaii*, 585 U.S. at 704 (quoting *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976)). TPS determinations are precisely the kind of immigration policy decisions where there is a "lack of competence on the part of the courts," *id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31 (2010)), to probe the Executive Branch's decision making. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 591 (1952). TPS determinations involve country-specific analyses that "implicate[s] relations with foreign powers" and "involve[s] classifications defined in the light of changing political and economic circumstances." *Hawaii*, 585 U.S. at 702. These decisions reflect official pronouncements upon another nation's internal affairs, ability to govern, and implicate complex foreign policy considerations and negotiations at the highest levels of government. Congress's decision to shield TPS determinations from judicial review reflects its judgment that this is an area in which the risk of erroneous or overreaching judicial action is greater than the risk of erroneous action by the Executive Branch. *See* 8 U.S.C. § 1254a(b)(5)(A).

Plaintiffs argue that *Hawaii*'s deferential standard of review does not apply to racial animus claims brought by individuals who already reside in the United States and are "presumptively entitled to the Fifth Amendment's full protection." ECF No. 121 at 21. However, the holding in *Hawaii* does not suggest that the standard should only apply to foreign nationals residing outside the United States; instead, it emphasizes that rational basis review applies "across different contexts and constitutional claims." 585 U.S. at 703. In earlier constitutional challenges brought by aliens within the United States, the Supreme Court repeatedly cautioned against applying a rigorous standard of review. *See Shaughnessy*, 342 U.S. at 590. Plaintiffs further contend that *Hawaii's* deference was rooted in a reluctance to disturb the President's concerns over "national security concerns." ECF No. 121 at 21. But in summarizing the "upshot of [its] cases" on the appropriate standard of review, *Hawaii*, 585 U.S. at 704, the Court quoted from *Mathews*, a case where the Court upheld the government's limitation on

eligibility for federal medical insurance for resident aliens as not "wholly irrational," even in the absence of any stated national security concerns. *Mathews*, 426 U.S. at 83.

Plaintiffs contend that, whether applying the rational basis review or the higher standard under *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977), they have stated a plausible Equal Protection claim. ECF No. 121 at 22, 23. In support, Plaintiffs cite statements, social media posts, and media appearances taken out of context, without direct links to the Secretary's determinations. Compl. ¶¶ 86-94, 163. Critically, Plaintiffs cannot point to any comments by Secretary Noem specifically discussing Honduras, Nicaragua, or Nepal. Instead, Plaintiffs resort to unrelated and out-of-context statements by the President, none of which mention the countries at issue. Compl. ¶¶ 95-118. Reyling entirely upon this "cat's paw theory," Plaintiffs fail to show how such statements or prior conduct can be connected or extended to the determinations at issue here. *See DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 34-35 (2020) (explaining that disparate impact, unusual recission history, and pre- and post-election statements failed "to raise a plausible inference that the recission was motivated by animus"); *see also Ramos*, 975 F.3d at 897 ("We doubt that the 'cat's paw' doctrine of employer liability in discrimination cases can be transposed to th[e] particular context" of TPS terminations).

In reaching her decisions, the Secretary reviewed the current conditions in Honduras, Nepal, and Nicaragua to determine whether there continued to be a substantial disruption of living conditions that rendered the respective countries unable to handle the return of their nationals, in accordance with 8 U.S.C. § 1254a(b)(3)(A)-(C). The Federal Register Notices published for each country outlined positive improvements in the countries' conditions that informed the Secretary's decision to terminate TPS for each country and explained why these countries were able to handle the return of their nationals. *Honduras Termination*, 90 Fed. Reg. at 30,091; *Nepal Termination*, 90 Fed. Reg. at 24,151; *Nicaragua Termination*, 90 Fed. Reg. at 30,086. Thus, whether the Court applies the rational basis review or the higher standard of review under *Arlington Heights*, 429 U.S. at 265-66, Plaintiffs fail to state a claim that racial discrimination was a motivating factor in the Secretary's determinations.

In short, Plaintiffs have failed to state a claim that the TPS determinations at issue were motivated by racial animus. The Administration seeks to reduce illegal immigration and crime, policy goals that are reflected in public statements by President Trump and Secretary Noem. Allowing Plaintiffs'

13

constitutional claims to move forward opens the floodgates to unfettered litigation against virtually any immigration policy adopted by this Administration.

Accordingly, Plaintiffs' constitutional claim should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety for lack of subject matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6).

Dated: September 30, 2025

    Respectfully Submitted,

    BRETT SHUMATE
    Assistant Attorney General

    YAAKOV M. ROTH
    Deputy Assistant Attorney General

    WILLIAM H. WEILAND
    Acting Assistant Director

    DANIEL CAPPELLETTI
    CATHERINE ROSS
    SHELBY WADE
    ERIC SNYDERMAN
    JEFFREY HARTMAN
    Trial Attorneys

    */s/ Lauren E. Bryant*
    LAUREN E. BRYANT
    Trial Attorney
    U.S. Department of Justice, Civil Division
    Office of Immigration Litigation
    P.O. Box 868 Ben Franklin Station
    Washington, D.C. 20044

    *Attorneys for Defendants*