Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, O.C., SANDHYA LAMA, S.K., TEOFILO MARTINEZ,<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 3:25-cv-05687-TLT<br><br>**JOINT DISCOVERY LETTER BRIEF**<br><br>Magistrate Judge Sallie Kim |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

The parties submit this brief regarding outstanding discovery disputes. Lead counsel met and conferred and complied with Section 9 of the District's Guidelines for Professional Conduct.

## I. FACTUAL BACKGROUND & RELEVANT DEADLINES

This case concerns a legal challenge to Defendants' termination of Temporary Protected Status (TPS) designations of Honduras, Nepal and Nicaragua. Plaintiffs allege the decisions were preordained and deviated from prior practice and history in violation of the Administrative Procedure Act (APA); and were motivated by racial animus in violation of the Equal Protection Clause of the Constitution. Plaintiffs must move for summary judgment no later than October 14.

On August 21 and September 4, this Court ordered expedited extra-record discovery, compelling production of responsive documents by September 18. ECF 97 at 2-3, 5; Dkt. 107.

This Court previously considered the applicability of the deliberative process privilege (DPP) in the instant case. On September 4, after in camera review of documents withheld from the Certified Administrative Records (CARs) on the ground of DPP, the Court ordered Defendants to produce all withheld documents reviewed. Dkt. 107 at 1-6. The Court declined to overrule the DPP in advance for documents not yet identified, but opined that "the parties should discuss why departure from prior practice in [*NTPSA I*] is warranted" if the parties raise a future DPP dispute to the Court. Dkt. 97 at 7.

On September 18 and 22, Defendants produced approximately 739 documents in response to Plaintiffs' five Requests for Production.[1] ECF 95-1. The documents produced principally consist of many copies of the same final USCIS Decision Memoranda, final Secretary of State recommendation letters, final USCIS country conditions reports, final pre-publication Federal Register notices, identical two-page summaries of "TPS Legal Authority," final Biden-era memoranda, and email correspondence, some of which is redacted. Defendants did not produce draft USCIS Decision Memoranda, draft Federal Register notices, or draft country conditions reports or analyses; and the substantive content of emails was in some cases withheld in full or in large part.

Defendants also produced privilege logs which identify that they are withholding in full 392

---

[1] On September 19, Defendants identified that due to technical difficulties, they would not be able to produce 20 documents that had required additional review by the State Department until September 22.

1  documents, out of a total of 1,131 documents identified as responsive (or 35%). Defendants also withheld in part 271 documents. Virtually all of the withholdings are pursuant to DPP, either in whole or in part. Specifically: Defendants withheld in full or in part approximately 650 documents pursuant to DPP—including nearly 500 only pursuant to DPP. Defendants also withheld in full or in part 152 documents pursuant to the attorney-client privilege (ACP), by itself or with another privilege.[2]

On September 22, Plaintiffs requested that Defendants produce the documents withheld as DPP, as this Court ordered for all other TPS-related documents withheld pursuant to DPP in this and related cases. Defendants declined to do so, noting that this Court has not categorically pierced the privilege for all documents produced, and offering instead to discuss specific documents that Plaintiffs believe merit further discussion. Yesterday, on September 29, Plaintiffs identified that they intended to also seek the Court's *in camera* review of 23 documents for which they allege that Defendants have not substantiated their ACP invocation. Following meet and confer on September 29 and 30, Defendants withdrew the privilege invocation from three of the documents, withdrew the privilege invocation in part from five others (which had initially been withheld in full), and identified an intent to update the privilege log entries for seven items. There thus remains a continuing dispute regarding the invocation of ACP over 20 items. See Exhibit 1 (privilege log excerpt).[3]

Plaintiffs now move for an order compelling the production of documents withheld as DPP, and for in camera review of 20 documents withheld as ACP, and an order compelling disclosure of those improperly withheld on that ground.[4] Defendants oppose this motion. Defendants intend to supplement their portion of the letter brief and/or file supplemental declarations on October 1 concerning the ACP dispute. Defendants will also file on October 1 an updated excerpt of the privilege log with the new privilege descriptions for the items in dispute. The parties file the letter brief today with elaboration of their dispute concerning DPP, and Plaintiffs' elaboration of the ACP dispute.

---

[2] Defendants also withheld in full or in part documents pursuant to the work product privilege, law enforcement privilege, and presidential communications privilege. These are not at issue here.

[3] Defendants identified that they intend to update the privilege log entries for the following documents: NTPSA2_00001924, NTPSA2_00000545, NTPSA2_00000861, NTPSA2_00000884, NTPSA2_00000907, NTPSA2_00000930, NTPSA2_00001625. Defendants also identified that they will produce in part the following documents, which may narrow the dispute: NTPSA2_00000385, NTPSA2_00000388, NTPSA2_00000391, NTPSA2_00000393, NTPSA2_00000826.

[4] Plaintiffs do not challenge any other privilege assertions in these documents at this time.

## II.  PLAINTIFFS' POSITION

### A. Deliberative Process Privilege Should Be Overruled

Defendants' DPP objection is meritless and should be overruled as inapplicable, unsubstantiated, and/or outweighed in light of Plaintiffs' need. This Court instructed the parties to identify "why departure from prior practice in [*NTPSA I*] is warranted" in any DPP dispute. Dkt. 97 at 6-7, *citing NTPSA v. Noem*, No. 25-CV-01766-EMC Dkts. (N.D. Cal.) ("*NTPSA I*"). There is no reason why the documents currently withheld by Defendants as DPP should be treated differently from the documents for which this Court overruled Defendants' DPP assertions in *NTPSA I*.

As this Court clearly articulated in both this case, as well as in *NTPSA I* and *Ramos*, the DPP applies only to predecisional, deliberative documents. ECF 107 at 2. Some documents appear to be either not predecisional or not deliberative. For example, certain documents concerning the drafting of the Federal Register notice purportedly post-date the date that Secretary Noem signed the termination decision. See, e.g., NTPSA2_00000369, NTPSA2_00000332, NTPSA2_00000310.

Other entries lack sufficient support for the privilege invocation, asserting that the document is "predecisional" and/or "deliberative" without substantiation. See, e.g., NTPSA2_00001136 ("Deliberative communications regarding issues relating to Honduras TPS FRN").

For the documents on Defendants' log which *are* DPP, no departure from this Court's prior orders in either this case or *NTPSA I* is warranted. The DPP is a qualified privilege. *Id.*; *see FTC v. Warner Comm'n, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam). In balancing the *Warner* factors, this Court has repeatedly found compelling Plaintiffs' showing for overruling the DPP. ECF 107 at 5; *NTPSA I*, Dkts. 184 at 6 & 195; *Ramos v. Nielsen*, No. 18-cv-01554-EMC, Dkts. 63, 79, 84, Dkts. 63, 79, 84 (N.D. Cal.). The same balancing applies to these documents. Indeed, most of the withheld documents are of the same kind as those for which this Court already overruled the privilege in *NTPSA I* and *Ramos*—i.e., draft Decision Memos, Federal Register Notices, and country conditions analyses; and communications regarding TPS decisonmaking.

"In considering the relevance of the evidence, courts may also consider the seriousness of the issues and litigation, the presence of issues concerning alleged misconduct by the government, the interest of the litigant and society in accurate fact finding by the courts, and the federal interest in

enforcement of the law." ECF 107 at 4. The issues at stake in this litigation remain as serious as when the Court last opined on DPP. *Id.* Especially in a setting where, like here, the Court already has found evidence of "preordained" decisionmaking inconsistent with the agency's statutory obligations, Dkt. 73 at 21, these factors warrant overruling DPP. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1020 (E.D. Cal. 2010). And the government's conduct remains "at the heart of this case." ECF 107 at 4.

There continues to be no serious dispute that the other *Warner* factors support disclosure. *Id.* And Defendants offer no new arguments or evidence that disclosure here would chill speech. *Id.* at 5.

Defendants should be ordered to produce within two days all documents, or portions of documents, currently withheld or redacted solely based on DPP, and not rely on DPP to withhold documents or portions of documents ordered produced as extra-record discovery.

**B. Select ACP Assertions Appear Unsupported**

As in *NTPSA I*, Defendants' privilege log offers insufficient support for their ACP assertions raising concerns that the privilege may have been improperly invoked. *See NTPSA I*, ECF 222 at 3. Plaintiffs currently only raise 20 documents of particular relevance and concern.[5] This Court previously articulated the asserting party's burden and the test which applies to assessing whether information is covered by the ACP. *NTPSA I*, ECF 222 at 2.

Some withheld documents do not appear to involve "legal advice of any kind." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). For instance, NTPSA2_00002888 includes redactions though none of the involved parties are counsel and the privilege description includes no reference to legal advice solicited or received. *See also* NTPSA2_00000255; NTPSA2_00001924 (including "comments reflecting policy options and recommendations"); NTPSA2_00000255. As this Court has noted, documents that simply refer to counsel but do not seek or discuss legal advice are not ACP. *NTPSA I*, ECF 222 at 3. And simply because a communication is directed to an attorney does not mean the communication involves a request or provision of legal advice. *Id.*

Some of the records withheld as ACP do not identify any relevant agency counsel. For instance,

---

[5] As evidence of Defendants' over-invocation of ACP here, when Plaintiffs identified 23 disputed documents, Defendants withdrew the privilege invocation in full or in part from more than one-third. Plaintiffs do not challenge the Law Enforcement Privilege in six of the disputed documents.

4

neither the author nor custodian of NTPSA2_00000826 are agency counsel and the document includes comments from a "policy advisor", but the document is nonetheless withheld in its entirety and marked as ACP apparently because a "comment in the document" is related to a "question about litigation for DHS attorney to answer."[6] *See also* NTPSA2_00001800, NTPSA2_00001924.

Defendants also appear to be withholding documents in full when it appears ACP material, if any, could be simply redacted. For instance, Defendants are withholding in their entirety:

- Draft Decision Memos. *See, e.g.*, NTPSA2_00000826, NTPSA2_00001924 (no agency counsel evident), NTPSA2_00001931 (with comments from General Counsel and *also DHS Policy*, and including "extensive comments discussing various policy options")
- Documents related to communication with the Honduran Foreign Minister about TPS. NTPSA2_00001143; NTPSA2_00002998; NTPSA2_00003001.
- Four documents labeled "USCIS Priority List," based on the assertion that they "summariz[e] current projects" and were sent to an attorney, generally "seeking legal advice." NTPSA2_00000385, NTPSA2_00000388, NTPSA2_00000391, NTPSA2_00000393.
- Various documents circulated within senior leadership without substantiation that the records are ACP in their entirety. NTPSA2_00000545; NTPSA2_00000861; NTPSA2_00000884; NTPSA2_00000907; NTPSA2_00000930; NTPSA2_00001625.

Plaintiffs request that this Court order in camera review of these 20 documents, and the production of any not materials not properly protected by ACP.

### III. DEFENDANTS' POSITION

Pursuant to this Court's order, Defendants have produced hundreds of documents in extra-record discovery. While Defendants recognize the difficulty in balancing the government's interest in non-disclosure with Plaintiffs' need for the material in a case that essentially centers around three deliberative processes, wholesale piercing of the privilege is inappropriate here.

First, some of the information withheld here under the deliberative process privilege is irrelevant as it concerns *unrelated* DHS policies or TPS designations for countries other than

---

[6] Because Defendants continue to withhold documents as DPP, it is not apparent from the privilege log whether Defendants assert the ACP invocation applies to all or part of these documents.

Nicaragua, Honduras, or Nepal. Indeed, this Court denied Plaintiffs' request for discovery on countries other than those at-issue in this case. ECF 107 at 7; *see also* ECF 113 (denying Plaintiffs' request to require Defendants to produce administrative records for countries other than Honduras, Nepal, and Nicaragua). Production of this irrelevant material would amount to inappropriate, extra-record discovery when Defendants have not even been required to produce an administrative record for countries other than Nicaragua, Honduras, or Nepal. *See* ECF 107 at 7 (citing *Dep't of Com. v. New York*, 588 U.S. 752, 782 (2019)). Because the government agreed to Plaintiffs' request to produce full "family members," documents that are wholly unrelated to the challenged designations – and in many instances wholly unrelated to TPS writ large – were deemed responsive merely because one document in the "family" mentioned one of the challenged TPS designation. Many of these documents contain predecisional and deliberative material discussing policy discussions and unimplemented policy opinions of wide-ranging Departmental priorities. *See, e.g.*, NTPSA2_00000385 (discussion of numerous unimplemented, nascent regulatory projects unrelated to TPS); NTPSA2_00001361 (deliberations regarding, *inter alia*, particular visas, policymaking relating to the Transportation and Security Administration, and the birthright citizenship executive order).

Many of these documents also include predecisional and deliberative material concerning TPS determinations not challenged by Plaintiffs – i.e., not involving Nicaragua, Honduras, or Nepal. *See, e.g.*, NTPSA2_00000503-06 (deliberations regarding Cameroon TPS determination); NTPSA2_00003046-54 (deliberations regarding Cameroon and Haiti TPS determinations); NTPSA2_00003056 (unsigned draft from Secretary Rubio to Secretary Noem regarding TPS for Cameroon); NTPSA2_00003066-68 (deliberations regarding Haiti TPS determination); NTPSA2_00003127 (deliberations regarding Afghanistan TPS determination).

Second, many of Defendants' DPP assertions cover draft Federal Register notices with agency personnel comments as well as discussions and deliberations regarding said notices. While Plaintiffs assert that such drafts and communications do not fall under the privilege because they post-date the Secretary's decisions to terminate the at-issue TPS designations, they remain privileged as they are predecisional and deliberative with respect to the notices themselves. *See, e.g.*, NTPSA2_00000369,

NTPSA2_00000332, NTPSA2_00000310. Else, Plaintiffs argument concedes that these documents are not relevant to the TPS decision making process at all, such that they need not have been produced or logged in any fashion.

Furthermore, Defendants have asserted the privilege over internal DHS discussions and deliberations regarding the Secretary's TPS decisions as well as DHS discussions and deliberations during consultations with other federal entities regarding the Secretary's TPS decisions, and maintain that waiving the privilege runs significant risk of hindering frank and independent discussion regarding significant policies and decisions – i.e., the very risk that deliberative process privilege aims to mitigate. *See e.g. Desert Survivors v. US Dept. of the Interior.*, 231 F. Supp. 3d 368, 383 (N.D. Cal. 2017) (recognizing "binding authority that requires this Court to be mindful of the possibility of chilling of frank and candid deliberations by administrative decision-makers). The very purpose of the privilege is to promote candid discussions of policy and to prevent public disclosure of internal agency opinions and recommendations from subordinates to superiors, which lie at the heart of the privilege. Indeed, the statute itself promotes interagency consultations and categorically waiving the privilege will only serve to chill future conversations designed to allow for the frank airing of viewpoints between stakeholders. The deliberative process is rooted in "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (privilege serves to preserve the "open and frank discussion" necessary for effective agency decisionmaking); *see Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D. Wash. 2000) ("The accepted rationale [of the deliberative process privilege] is that frank and open discussions within the governmental agencies would be 'chilled' if the personal opinions and ideas of government personnel involved in the decision-making process were subject to public scrutiny"). The purpose of facilitating "open and frank discussion among those who make" decisions withing the government, *Desert Survivors*, 231 F. Supp. 3d at 383, would simply not be served by exposing candid, subjective advice shared between officials about how best to apply U.S. immigration laws, especially when officials learn that their predecisional discussions will be cherry picked to create false impressions about their ultimate

conclusions and recommendations. *See Abtew v. DHS*, 808 F.3d 895, 898-99 (D.C. Cir. 2015) (Kavanaugh, J.) (emphasizing that "officials should be judged by what they decided, not for matters they considered before making up their minds" and that "a document is deliberative if it is a part of the agency give-and-take—of the deliberative process—by which the decision itself is made" (quotation marks omitted)).

In conclusion, wholesale overruling of DPP in this case is inappropriate because it would intrude upon the government's interest in nondisclosure not only for predecisional TPS deliberations related to Nicaragua, Honduras, and Nepal, but also for unrelated immigration policies and issues this Court has already found to be irrelevant. ECF 107 at 7; *see also* ECF 113. Should this Court be inclined to order production of information withheld solely under DPP, Defendants respectfully request the opportunity to provide a subset of such documents to the Court for *in camera* review to aid the Court in its determination as to the appropriate scope of the privilege in this case.

Given the sweeping challenges and tight timelines placed upon Defendants by Plaintiffs with regard to the filing of this letter brief, Defendants note for the Court that they intend to supplement their position with declarations in support of their assertions of DPP in this case. Defendants endeavored to do so on Plaintiffs' timeline – but the declarations remain under final review with appropriate agency signatories and are expected to be approved tomorrow, October 1. Defendants also intend to supplement their position regarding Plaintiffs' ACP challenges, which were first raised yesterday at approximately 3:00 p.m.; then supplemented at approximately 9:00 p.m. by a demand for additional information. Despite this eleventh-hour request, Plaintiffs informed Defendants that they would proceed with the filing of this letter brief today. Defendants continue to review the challenged ACP invocations and will continue to meaningfully engage with Plaintiffs in an attempt to narrow the dispute.[7] In the absence of an amicable resolution, Defendants also intend to supplement their position here accordingly.

---

[7] As evidence of Defendants' willingness to reconsider the invocation of privilege necessitated in large part by an accelerated discovery production schedule, Defendants agreed to withdraw the privilege invocation in full or in part from more than one-third of the ACP documents identified by Plaintiffs. Contrary to Plaintiffs' assertions, such an agreement reflects Defendants willingness to continue to work with Plaintiffs to resolve routine discovery disputes without requiring judicial intervention.

| | | |
|---|---|---|
| 1 | | |
| 2 | Date: September 30, 2025 | Respectfully submitted, |
| 3 | | ACLU FOUNDATION |
| 4 | | OF NORTHERN CALIFORNIA |
| 5 | | _/s/_ Emilou MacLean<br>Emilou MacLean |
| 6 | | Michelle (Minju) Y. Cho |
| 7 | | Amanda Young<br>ACLU FOUNDATION |
| 8 | | OF NORTHERN CALIFORNIA |
| 9 | | Ahilan T. Arulanantham<br>CENTER FOR IMMIGRATION LAW AND |
| 10 | | POLICY, UCLA SCHOOL OF LAW |
| 11 | | Eva L. Bitran<br>Diana Sanchez |
| 12 | | ACLU FOUNDATION<br>OF SOUTHERN CALIFORNIA |
| 13 | | Jessica Karp Bansal |
| 14 | | Lauren Michel Wilfong (*Pro Hac Vice*)<br>NATIONAL DAY LABORER ORGANIZING |
| 15 | | NETWORK |
| 16 | | Erik Crew (*Pro Hac Vice*)<br>HAITIAN BRIDGE ALLIANCE |
| 17 | | *Attorneys for Plaintiffs* |
| 18 | Date: September 30, 2025 | BRETT A. SHUMATE |
| 19 | | Assistant Attorney General |
| 20 | | Civil Division |
| 21 | | YAAKOV M. ROTH |
| 22 | | Acting Assistant Attorney General |
| 23 | | WILLIAM H. WEILAND<br>Acting Assistant Director |
| 24 | | ERIC SNYDERMAN |
| 25 | | LAUREN BRYANT<br>CATHERINE ROSS |
| 26 | | AMANDA B. SAYLOR<br>JEFFREY M. HARTMAN |
| 27 | | SHELBY WADE<br>ILANA KRAMER |
| 28 | | Trial Attorneys |

/s/ *Daniel M. Cappelletti*
DANIEL M. CAPPELLETTI
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-2999
Daniel.Cappelletti@usdoj.gov

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean