Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

Brett Shumate
Assistant Attorney General
Civil Division
Yaakov Roth
Principal Deputy Assistant Attorney General
William H. Weiland (MA Bar 661433)
Acting Assistant Director
Lauren Bryant (NY Bar 5321880)
Jeffrey Hartman (WA Bar 49810)
Daniel Cappelletti (DC Bar 1672879)
Shelby Wade (NY Bar 5696067)
Catherine Ross (DC Bar 9007404)
Eric Snyderman (VA Bar 99563)
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, O.C., SANDHYA LAMA, S.K., TEOFILO MARTINEZ,

Plaintiffs,

vs.

KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,

Defendants.

Case No. 3:25-cv-05687-TLT

**JOINT CASE MANAGEMENT STATEMENT**

Date:  October 2, 2025
Time: 2:00 PM
Judge: Hon. Trina L Thompson
Place: Videoconference Zoom Webinar

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

Pursuant to Civil Local Rules 16-9 and 16-10(d), the Standing Order for All Judges of the Northern District of California, and this Court's August 14, 2025 Case Management & Scheduling Order (Dkt. 91 & 125), the parties submit this Joint Case Management Statement.

## I.    Jurisdiction and Service

<u>Plaintiffs' Position</u>: This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(e)(1) because at least one Plaintiff resides in this judicial district and each Defendant is an agency of the United States or an officer of the United States sued in his or her official capacity. Defendants were served with process on July 11, 2025. (Dkts. 38-41).

<u>Defendants' Position</u>: This Court does not have jurisdiction over any of Plaintiffs' claims, whether arising under the Administrative Procedure Act or the Constitution. Congress has expressly provided that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS relief. 8 U.S.C. § 1254a(b)(5)(A); *see also* 5 U.S.C. § 701(a)(1) (precluding review under the Administrative Procedure Act ("APA") "to the extent" that other "statutes preclude judicial review").

## II.    Facts

<u>Plaintiffs' Position</u>:

This case involves DHS Secretary Noem's unlawful decisions to terminate Temporary Protected Status ("TPS") for over 60,000 individuals from Honduras, Nepal, and Nicaragua who have lived lawfully in the United States for at least 26 years (Honduras and Nicaragua) or 10 years (Nepal) during ongoing crises in their countries.

Honduras and Nicaragua were originally designated for TPS on January 5, 1999, after Hurricane Mitch swept through Central America causing severe flooding and associated damage. Honduras' TPS designation was extended by multiple Attorneys General and DHS Secretaries between 1999 and 2017, in regular periodic reviews, based on persisting damage from the hurricane, as well as subsequent natural disasters and economic and political crises. Nicaragua's TPS designation was extended by multiple Attorneys General and DHS Secretaries between 1999 and 2017, in regular periodic reviews, based on social, economic, and infrastructural challenges; post-

1    Mitch environmental disasters; a fractured economic foundation, "chronic poverty," and problems of

2    governance and political tension. On July 7, 2025, Defendants terminated TPS for Honduras and

3    Nicaragua. In the Federal Register termination notices for both countries, Secretary Noem identified

4    certain positive indicators of improvement in conditions while ignoring major categories of

5    conditions that had previously been considered. Both termination notices also explicitly rely on

6    President Trump's Executive Order titled "Protecting the American People Against Invasion"

7    ("Invasion E.O."), which directed the DHS Secretary to "promptly take all appropriate action,

8    consistent with law, to rescind the policy decisions of the previous administration that led to the

9    increased or continued presence of illegal aliens in the United States," including by reviewing

10   "designations of Temporary Protected Status" and mandating that TPS designations be

11   "appropriately limited in scope" to ameliorate the "continued presence of illegal aliens in the United

12   States."

13            Nepal was first designated for TPS on June 24, 2015, after a 7.8 magnitude earthquake and a

14   number of significant aftershocks killed nearly 9,000 people, injured more than 20,000 people,

15   displaced millions, and destroyed or significantly damaged over 750,000 homes. Nepal's designation

16   was extended for 18 months on October 26, 2016. On June 6, 2025, Secretary Noem terminated TPS

17   for Nepal. The Federal Register termination notice also explicitly cited to the Invasion E.O.

18   instruction that Secretary Noem "ensur[e] that designations of Temporary Protected Status are …

19   appropriately limited in scope and made for only so long as may be necessary to fulfill the textual

20   requirements of the statute," as well as justified the termination of Nepal's designation by

21   identifying "notable improvements" while ignoring entire categories of conditions that had

22   previously been considered.

23            Despite the fact that Honduras, Nepal, and Nicaragua had each been designated for TPS for

24   over ten years, Secretary Noem declined to provide any "orderly transition" period beyond the

25   statutory 60-day minimum. *See* 8 U.S.C. 1254a(d)(3). Prior to the current administration, all

26   terminations of a designation of any length provided at least a six-month transition period, and more

27   commonly a 12- or 18-month transition period. The Secretary also failed to provide a "good reason"

28   for providing only 60 days for TPS holders to leave, particularly given the massive break with past

practice inherent in that decision.

In addition to terminating TPS for Nepal, Nicaragua, and Honduras, the Secretary has also terminated TPS for Venezuela, Haiti, Afghanistan, and Cameroon since her confirmation on January 25, 2025, reflecting the preordained decision to terminate nearly all TPS designations across the board. Each termination decision relies on the Invasion E.O. and follows a pattern of identifying certain positive indicators of improvements in country conditions while ignoring major categories of conditions that had previously been considered and that are highly relevant to whether nationals of the country can safely return.

Plaintiffs in this case are the National TPS Alliance (NTPSA), a member-led organization representing TPS holders across the country, and individual TPS holders from Nepal, Nicaragua, and Honduras. Plaintiffs contend that Secretary Noem's actions are illegal for multiple reasons. First, the Plaintiffs contend that Defendants' terminations for all three countries violate the APA because they were not based on an objective review of country conditions, as required by statute, but are instead the product of this administration's preordained, political decision to terminate nearly all TPS designations wholesale. As one means of implementing their preordained termination decision, Defendants categorically declined to consider any country conditions that were not directly related to the reason for the initial designation, thereby (1) contravening the statutory mandate to base TPS decisions on a fulsome review of country conditions and (2) arbitrarily breaking with past practice. Second, Plaintiffs contend that Defendants, in an unacknowledged and unexplained break with decades of past practice, arbitrarily provided affected TPS holders just 60 days to prepare for the loss of status despite their many years of legal status in the United States. Third, the Plaintiffs contend that Defendants' decisions are unlawful because they were motivated at least in part by race- and national origin-based animus, violating the equal protection guarantee of the Due Process Clause of the Fifth Amendment.

<u>Defendants' Position</u>:

The Secretary, "after consultation with appropriate agencies[,]" may designate a country for TPS only if she finds (in pertinent part) that "there has been and earthquake, flood, drought, epidemic, or other environmental disaster . . . resulting in substantial, but temporary, disruption of

living conditions . . . [such that] the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state[.]" 8 U.S.C. § 1254a(b)(1). Aliens covered by TPS are eligible for work authorization and may not be removed. *Id*. § 1254a(a). Initial TPS designations are discretionary, and the Secretary must conduct periodic reviews to determine whether the conditions underlying a TPS designation continue to be met. *Id*. § 1254a(b)(2), (b)(3)(A). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id*. § 1254a(b)(3)(C). But if the foreign state "no longer continues to meet the conditions for designation," the Secretary "shall terminate the designation." *Id*. § 1254a(b) (3) (B). The TPS statute leaves the sensitive judgment calls about the government's national interest in the Secretary's hands. It bars judicial review of her TPS determinations, in plain terms: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id*. § 1254a(b) (5) (A).

**Nepal**

On June 24, 2015, the Secretary designated Nepal for TPS for a period of 18 months due to "substantial, but temporary, disruption of living conditions" resulting from an earthquake. *Designation of Nepal for [TPS]*, 80 Fed. Reg. 36,346 (June 24, 2015). TPS was extended for an additional 18 months on October 26, 2016. *Extension of the Designation of Nepal for [TPS]*, 81 Fed. Reg. 74,470 (Oct. 26, 2016). In 2018, DHS announced the termination of TPS for Nepal. However, litigation resulted in the continued extension of TPS documentation for TPS recipients from Nepal for several years. *See Nepal Termination*, 90 Fed. Reg. at 24,152. In 2023, DHS reconsidered the 2018 decision to terminate TPS and again extended TPS for recipients from Nepal, "beginning on December 25, 2023, and ending on June 24, 2025." *Reconsideration and Rescission of Termination of the Designation of Nepal for [TPS]*; *Extension of the [TPS] Designation for Nepal*, 88 Fed. Reg. 40,317 (June 21, 2023).

On June 6, 2025, DHS published notice in the Federal Register that TPS for Nepal would be terminated effective on August 5, 2025." *Nepal Termination*, 90 Fed. Reg. at 21,512. As the FRN

explained, Secretary Noem considered whether there continues to be a substantial, but temporary, disruption of living conditions in Nepal and whether Nepal is able to adequately handle the return of Nepalese nationals. Id. The Secretary highlighted notable improvements to disaster preparedness and response, including the construction of disaster-resilient housing, infrastructure, and community systems. *Id*. at 21,512-13. The Secretary considered Nepal's significant reconstruction efforts, including statistics demonstrating that 88.36% of houses destroyed by the earthquake and 81.43% of damaged health facilities had been rebuilt. *Id*. As a result, the Secretary determined that "there is no longer a disruption of living conditions and Nepal is able to handle adequately the return of its nationals." *Id*. at 21,512.

**Honduras**

In 1999, the Attorney General designated Honduras for TPS for 18 months due to "environmental disaster and substantial disruption of living conditions caused by Hurricane Mitch." *Designation of Honduras Under [TPS]*, 64 Fed. Reg. 524 (Jan. 5, 1999). TPS was repeatedly extended for nearly twenty years until 2018, when the Secretary of Homeland Security terminated it. *Termination of the Designation of Honduras for [TPS]*, 83 Fed. Reg. 26,074 (June 5, 2018). After the 2018 termination announcement, litigation resulted in the continued extension of TPS documentation for Honduran TPS recipients for several years. *See Honduras Termination*, 90 Fed. Reg. at 30,090. In 2023, DHS reconsidered the 2018 decision to terminate TPS and extended TPS for Honduras through July 5, 2025. *Reconsideration and Rescission of Termination of the Designation of Honduras [TPS]; Extension of the [TPS] Designation for Honduras*, 88 Fed. Reg. at 40,304 (June 21, 2023).

On July 8, 2025, DHS published notice in the Federal Register that TPS for Honduras would be terminated effective September 8, 2025. *Honduras Termination*, 90 Fed. Reg. at 30,091. As explained in the FRN, Secretary Noem "determined the conditions supporting Honduras' January 5, 1999, designation for TPS on the basis of environmental disaster due to Hurricane Mitch are no longer met." *Id.* As the FRN stated, "the conditions resulting from Hurricane Mitch no longer cause a 'substantial,' but temporary, disruption in living conditions in the area affected,' and Honduras is no longer 'unable, temporarily, to handle adequately the return of its nationals.'" *Id.* (quoting 8

U.S.C. § 1254a(b)(1)(A). The Secretary noted improvements to access to basic water sources, sanitation, and electricity, as well as strengthened disaster management capacity. *Id.* Further, significant hurricane recovery has transformed Honduras into a popular destination for tourists and real estate investors. *Id.* The Secretary observed that assistance from the World Bank has improved emergency response and post-disaster reconstruction efforts and that new projects are transforming Honduras's infrastructure and creating new jobs. *Id.*

**Nicaragua**

In 1999, the Attorney General designated Nicaragua for TPS for 18 months after an environmental disaster substantially disrupted living conditions, rendering Nicaragua temporarily unable to handle adequately the return of its nationals. *Designation of Nicaragua Under [TPS]*, 64 Fed. Reg. 526 (Jan. 5, 1999). TPS was extended for nearly two decades until 2017, when the Acting Secretary terminated it. *See Termination of the Designation of Nicaragua for [TPS]*, 82 Fed. Reg. 59,636 (Dec. 15, 2017). After the termination announcement, litigation resulted in the continued extension of TPS documentation for TPS recipients from Nicaragua for several years. *See Nicaragua Termination*, 90 Fed. Reg. at 30,087. In 2023, DHS reconsidered the 2018 decision to terminate TPS, resulting in another extension of TPS for recipients from Nicaragua through July 8, 2025. *Reconsideration and Rescission of Termination of the Designation of Nicaragua for [TPS]*; *Extension of the [TPS] Designation for Nicaragua*, 88 Fed. Reg. at 40,294 (June 21, 2023).

On July 8, 2025, DHS published notice in the Federal Register that TPS for Nicaragua would be terminated effective on September 8, 2025. *Nicaragua Termination*, 90 Fed. Reg. at 30,086. As explained in the FRN, Secretary Noem, after consulting with the appropriate U.S. government agencies and reviewing country conditions information, determined that "the conditions supporting Nicaragua's January 5, 1999 designation for TPS on the basis of environmental disaster due to Hurricane Mitch are no longer met." *Id*. at 30,088. Secretary Noem found Nicaragua has made significant progress in recovering from the hurricane's destruction, including improvements to infrastructure, road and bridge construction, schools, and healthcare access. *Id*. Secretary Noem noted growth in Nicaragua's tourism, ecotourism, agriculture, and renewable energy industries and advances in farming and agriculture technology. *Id*. The FRN identifies improvements in housing

and food security, as well as restoration of the healthcare sector. *Id*. Finally, Secretary Noem observed that Nicaragua's macroeconomic structure has stabilized, with a record high foreign reserve, sustainable debt load, and well-capitalized banking structure. *Id*.

## III.    Legal Issues

<u>Plaintiffs' Position</u>: The legal and equitable issues for determination include:

A.    Whether Defendants' decisions to terminate TPS for Nepal, Nicaragua, and Honduras were arbitrary, capricious, an abuse of discretion, or not in accordance with the law, because, among other things:

      a.    They were not based on a review of country conditions as required by 8 U.S.C. 1254a(b)(3), but were instead based on a preordained, political decision to terminate TPS wholesale; consideration of extra-statutory factors; and a selective review of country conditions designed to identify only improvements and ignore entire categories of conditions that did not support Defendants' preordained termination decisions.

      b.    The research, consultation, and review process leading up to the decisions deviated dramatically from past practice without explanation.

      c.    To the extent Defendants engaged in any process, it was so deficient as to amount to no process at all, defeating the purpose of the TPS statute.

      d.    The decisions occurred under circumstances and a timeline that reflect that they were pretextual.

      e.    The decisions assumed that TPS designations, including the designations of TPS for Honduras, Nepal, and Nicaragua, are themselves illegal.

      f.    The decisions assumed that TPS holders are present in the United States illegally. *See* 5 U.S.C. § 706(2)(A); 8 C.F.R. § 244.19; *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009).

B.    Whether Defendants' termination of the TPS designations for Nepal, Nicaragua, and Honduras with only 60 days' notice was arbitrary, capricious, and contrary to law in violation of the APA because it represented an unacknowledged and unexplained departure from decades of

1  decision-making practices and ordinary procedures. *See* 8 C.F.R. § 244.19. By abandoning the long-

2  standing agency practice of providing for orderly transition periods, and at least a six-month orderly

3  transition period when terminating TPS designations that have been in place for more than three

4  years, Defendants have engaged in procedurally flawed decision-making in violation of the APA.

5      C.      Whether Defendants' decisions to terminate the TPS designations of Honduras,

6  Nepal, and Nicaragua violate the implicit anti-discrimination guarantee of the Due Process Clause

7  because they were motivated by intentional discrimination based on race, ethnicity, or national

8  origin. *See* U.S. Const. amend. V; *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S.

9  252, 265-66 (1977); *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

10     <u>Defendants' Position:</u>

11     A.      Whether this Court has jurisdiction to hear Plaintiffs' claims. Congress has explicitly

12  barred the Secretary's TPS determinations from judicial review. *See* 8 U.S.C. § 1254a(b)(5)(A); H.R.

13  Rep. No. 101-245, at 14 ("Moreover, none of the [Secretary's] decisions with regard to granting,

14  extending, or terminating TPS will be subject to judicial review." (emphasis added)); 5 U.S.C. §

15  701(a)(1), (a)(2).

16     B.      Whether the Secretary's termination of TPS designations for Honduras, Nepal, and

17  Nicaragua were unlawful under the APA. The Secretary has been entrusted with broad authority in

18  administering the TPS statute, and while § 1254a requires the Secretary to review conditions within

19  foreign states designated for TPS periodically, any subsequent action turns on the Secretary's findings

20  about whether the conditions for such designation continue to exist. 8 U.S.C. § 1254a(b)(3)(A)-(C).

21  Additionally, if the Secretary, after conducting an in-depth review, determines that the conditions for

22  a TPS designation no longer exist, she must terminate the designation. 8 U.S.C. § 1254a(b)(3)(B).

23  Here, the Secretary took the steps required by the TPS statute, and Plaintiffs simply disagree with the

24  outcome.

25     C.      Whether the Secretary's TPS determinations violated equal protection principles.

26  Plaintiffs cannot meet the deferential standard established by the Supreme Court in *Trump v. Hawaii*,

27  585 U.S. 667 (2018) for their Equal Protection claim. *Hawaii's* deferential rational-basis standard

28  governs these immigration policy decisions and the Secretary's decisions easily pass muster under it.

1   Even under the standard set forth in *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S.

2   252 (1977), Plaintiffs' Equal Protection claim is still baseless.

3        D.     Whether this Court can grant Plaintiffs the relief they seek. 8 U.S.C. § 1252(f)(1)

4   "prohibits lower courts from entering injunctions that order federal officials to take or refrain from

5   taking actions to enforce, implement, or otherwise carry out the specified provisions." *Garland v.*

6   *Aleman Gonzalez*, 596 U.S. 543, 550 (2022). The TPS statute is a covered provision and the statutory

7   prohibition applies "[r]egardless of the nature of the action or claim" and to any order that "restrain[s]"

8   the Secretary.

9        E.     Whether the relief Plaintiffs seek, a nationwide order, is overly broad. Any relief should

10  be tailored to the named-Plaintiffs in this case.

11  **IV.   Motions**

12       <u>Plaintiffs' Position</u>: Plaintiffs filed a Motion to Proceed Under Pseudonym for individual

13  plaintiffs S.K. and O.C. concurrently with the Complaint on July 7, 2025. Dkt. 16. This Court

14  granted Plaintiffs' motion and ordered Plaintiffs to provide the full names of all parties under seal.

15  Dkt. 26. In the August 7, 2025 Joint Case Management Statement, Plaintiffs noted that the parties

16  were discussing a Protective Order and the Plaintiffs would provide the full names of anonymous

17  Plaintiffs under seal as soon as a Protective Order was in place. This Monday, September 29, the

18  parties filed a Stipulated Protective Order, which was approved by Magistrate Judge Kim on

19  September 30. Dkts. 123 & 126. Although the parties engaged in extensive discussions regarding the

20  need for heightened protections for anonymous Plaintiffs' identities given Plaintiffs' fear of

21  retaliation, Dkt. 16, the Stipulated Protective Order did not ultimately include such a provision

22  because Defendants indicated that, if this Court were to grant Plaintiffs' Motion for Class

23  Certification, Defendants would have no need to obtain the identities of anonymous Plaintiffs, who

24  are not seeking appointment as Class Representatives. On September 16, following argument on

25  Plaintiffs' Class Certification Motion, this Court indicated its view that class certification appeared

26  to be appropriate. Accordingly, in light of Defendants' revised position regarding the identity of

27  anonymous Plaintiffs, Plaintiffs respectfully request that this Court permit Plaintiffs to provide the

28  full names of anonymous Plaintiffs for *in camera* review only or, in the alternative, should the Court

determine that its decision on Class Certification obviates the need to provide the full names of non-Class Representative anonymous Plaintiffs to the Court, Plaintiffs respectfully request that this Court advise the parties accordingly.

Plaintiffs filed a Motion to Postpone Effective Agency Action under 5 U.S.C. § 705 of the APA on July 8, 2025 to delay implementation or enforcement of the termination of TPS for Nepal, Nicaragua, and Honduras until the resolution of these proceedings on the merits. Dkt. 17. Plaintiffs also filed a Motion to Shorten Time on July 8, 2025, seeking to conduct the postponement hearing on July 29, 2025 or as soon thereafter as the Court was available. Dkt. 19. Plaintiffs' Motion to Shorten Time was granted, Dkt. 36, and the postponement hearing was scheduled for, and took place on, July 29, 2025.

On July 31, 2025, the District Court granted Plaintiffs' Motion to Postpone Effective Agency Action. Dkt. 73. On August 1, 2025, Defendants filed a Notice of Appeal to the Ninth Circuit challenging the District Court's postponement order. Dkt. 74. Defendants also filed an Emergency Motion to Stay this Court's Postponement Order Pending Appeal, Dkt. 75, and an Emergency Motion to Shorten Time for Plaintiffs to Respond to Defendants' Motion for Emergency Stay, Dkt. 76. This Court denied Defendants' Motion on August 8, 2025. Dkt. 87.

Defendants subsequently sought a stay of this Court's postponement order from the Ninth Circuit. ECF No. 5.1. Defendants additionally sought "a stay of lower court proceedings pending resolution of [the] appeal because the government … intends to seek reassignment" to a different judge. *Id.* at 22-23. On August 20, 2025, following briefing and oral argument, the Ninth Circuit granted Defendants' motion for a stay of the postponement order pending appeal and denied Defendants' motion for a stay of district court proceedings. Dkt. 96.

Meanwhile, on August 15, 2025, Plaintiffs filed a Motion for Class Certification. Dkt. 89. This Court heard argument on the Motion on September 16, 2025.

On August 26, 2025, Plaintiffs filed an Administrative Motion for Leave to File Multiple Motions for Summary Judgment, Dkt. 101, along with a Motion for Partial Summary Judgment, Dkt. 100, and an Administrative Motion to Shorten Time, Dkt. 102. On August 27, 2025, this Court denied Plaintiffs Motion for Leave to File Multiple Motions for Summary Judgment, finding a lack

of good cause. Dkt. 104.

On September 9, 2025, Defendants filed a Motion to Dismiss. Dkt. 110. Plaintiffs filed their Opposition on September 23, 2025. Dkt. 121. Defendants filed their reply on September 30, 2025. The Motion is set for hearing on November 18, 2025.

As set forth in Section VIII below, and pursuant to this Court's Case Management and Scheduling Order, Dkt. 91, Plaintiffs plan on filing a motion for summary judgment and for vacatur of agency action under 5 U.S.C. § 706 with respect to Nepal, Nicaragua, and Honduras on October 14, 2025.

Regarding Defendants' impending motion to stay proceedings due to the lapse in federal funding, Plaintiffs have informed Defendants that, unless Defendants will agree to stay implementation of the termination of TPS for Honduras, Nepal, and Nicaragua until Congress restores funding, Plaintiffs cannot agree to a stay, because it would severely prejudice the rights of 60,000 TPS holders that are at issue in this matter. In contrast, proceeding with this litigation would not prejudice the government. The contingency plan issued by the Department of Justice contemplates that it can and will continue litigating during the shutdown in the event a court denies a stay. "[T]he Government will comply with the court's order, which would constitute express legal authorization for the activity to continue." U.S. Dep't of Justice FY 2026 Contingency Plan (Sep. 29, 2025) https://www.justice.gov/jmd/media/1377216/dl. As a result, "the litigation will become an excepted activity," *id.,* and the responsible litigators will be "excepted" employees, Off. of Personnel Mgmt., Guidance for Shutdown Furloughs 2 (Sept. 2025), https://www.opm.gov/policy-data-oversight/pay-leave/reference-materials/guidance-for-shutdown-furloughs-sep-28-2025/. No hardship would result, as "excepted" DOJ employees "shall be paid" for all work performed during the lapse in appropriations. 31 U.S.C. § 1341(c)(2).

Defendants' Position: Defendants agree with Plaintiffs' characterization of the motions that have been filed thus far in the case. Unless the parties come to some prior agreement, Defendants intend to file motions for summary judgment and under *Daubert* no later than October 14, 2025. Defendants will also be immediately filing a motion to stay proceedings given the lapse of funding for the federal government.

**V.      Amendment of Pleadings**

  <u>Plaintiffs' Position</u>: Plaintiffs have not amended the Complaint and do not expect to amend the Complaint at this time.

  <u>Defendants' Position</u>: Defendants maintain that any amendment of the pleadings would be futile because all challenges to TPS determinations are barred. Moreover, this Court's deadline for amended pleadings passed on September 22, 2025. Dkt. 91 at 2.

**VI.     Evidence Preservation**

  The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and will meet and confer regarding protocols for preserving evidence.

**VII.    Disclosures**

  <u>Plaintiffs' Position</u>:  Plaintiffs propose that the parties meet and confer to determine the scope and timeline of disclosures that are appropriate for this case.

  <u>Defendants' Position</u>: Defendants assert that, as an action for review on the administrative record, this case is exempt from initial disclosures. Fed. R. Civ. P. 26(a)(1).

**VIII.   Discovery**

  <u>Plaintiffs' Position</u>:

  On July 11, 2025, Plaintiffs filed an Administrative Motion to Expedite Production of the Certified Administrative Records ("CARs"), Dkt. 42, which Defendants opposed, Dkt. 46. The Court granted Plaintiffs' motion and ordered Defendants to produce the CARs within seven days of the order. Dkt. 47. Defendants produced the CARs for the three termination decisions to Plaintiffs on July 22, 2025, and filed the CARs with the Court on July 28, 2025. Dkts. 62–64. Defendants subsequently filed erratas to all three CARs on August 4, 2025. Dkts. 77–79.

  On August 18, the Court referred this case to Magistrate Judge Kim for discovery. Dkt. 94.

  On August 19, Plaintiffs moved for the Magistrate's resolution of discovery disputes concerning 1) Defendants' withholding of documents in the CAR pursuant to the deliberative process privilege ("DPP"); and 2) Plaintiffs' right to expedited extra-record discovery. Dkt. 95.

  After in camera review, the Magistrate also ordered the production of documents withheld from the CARs as DPP. Dkt. 107 at 1-6. After briefing, Magistrate Judge Kim also granted

1    Plaintiffs' request for expedited extra-record discovery, and for the production of records responsive

2    to three Requests for Production ("RFPs"). Dkts. 97 at 2-3, 5 & Dkt. 107. *See also* Dkt. 95-1

3    (Plaintiffs' RFPs). The Magistrate denied Plaintiffs' request for production of records responsive to

4    two additional RFPs and for the CARs for TPS terminations not directly challenged in this litigation.

5    Dkts. 107 & 113.

6         In her orders granting expedited extra-record discovery, the Magistrate ordered Defendants to

7    produce records responsive to Plaintiffs' RFPs by September 18. Dkt. 107 at 8-9.

8         Defendants' production was delayed in part due to technical difficulties. On September 18 and

9    22, Defendants produced approximately 739 responsive documents. The documents produced

10   principally consisted of many copies of the same final agency records and some email correspondence.

11   Defendants did not produce draft documents; and the substantive content of emails was typically

12   largely redacted. Defendants also withheld in full one-third of the responsive documents (392

13   documents, out of a total of 1,131 documents) and withheld in part an additional 271 documents.

14   Among the documents withheld were all draft documents and most substantive email correspondence.

15        On September 22, the same day that Defendants completed their production of responsive

16   records, Plaintiffs requested that Defendants produce the documents withheld as DPP. Plaintiffs

17   identified this as consistent with the orders of this Court in this and other cases concerning challenges

18   to TPS decisionmaking. Courts have consistently held when presented with this precise question in

19   TPS litigation that the DPP must give way in light of Plaintiffs' need for relevant information, making

20   Defendants' assertion of DPP here untenable.[1] On September 29, Plaintiffs identified that they

21   intended to also seek the Court's *in camera* review of 23 documents for which they allege that

22   Defendants have not substantiated their invocation of the attorney-client privilege ("ACP").

23   Defendants agreed to withdraw the ACP privilege from three of the disputed documents, but

24   maintained their DPP invocation as to all of the documents withheld in full or in part on this ground.

25   _____

     [1] *Ramos v. Nielsen*, No. 18-cv-01554-EMC (N.D. Cal. Aug. 15, 2018) ("*Ramos*"), Dkts. 63, 79, 84
26   (overruling the qualified DPP in all instances); *NTPSA I*, Dkts. 184 at 3-5 ("applying the qualified
     deliberative process privilege is not warranted here") & 195 at 2 n.1 (affirming magistrate's order
27   overruling DPP invocation and finding that certain records withheld as DPP were "arguably not
     predecisional or deliberative"); Dkt. 97 at 7 (opining that "the parties should discuss why departure
     from prior practice in [*NTPSA I*] is warranted" if the parties raise a DPP dispute in *NTPSA II*); Dkt.
28   107 at 1-6 (ordering the disclosure of documents withheld from the CAR as DPP).

1    On September 30, following meet and confer, Plaintiffs moved for the Magistrate to resolve two

2    discovery disputes which the parties were unable to resolve through meet and confer: 1) whether

3    Defendants may withhold responsive documents subject to the qualified DPP; and 2) whether

4    Defendants have properly invoked the ACP in connection with 20 documents withheld in full or in

5    part. Dkt. 129. This dispute remains pending with the Magistrate.

6    In light of the fact that this discovery dispute may not be resolved sufficiently in advance of

7    the deadline for Plaintiffs' summary judgment motion for Plaintiffs to receive and review any newly

8    disclosed discovery, Plaintiffs seek leave from this Court to rely on later-produced documents in

9    their reply. *See, e.g.*, *NTPSA I*, Dkt. 181 (permitting Plaintiffs to introduce and rely on late-produced

10   documents in TPS-related litigation in light of delays in the resolution of discovery disputes).

11   Plaintiffs only received Defendants' completed discovery on September 22 and, in this production,

12   Defendants withheld all responsive draft documents and most substantive email communications as

13   DPP. A discovery dispute concerning these documents is currently pending with the Magistrate.

14   While Plaintiffs have moved expeditiously to both secure all necessary discovery, and identify

15   discovery disputes,[2] Plaintiffs' prompt access to critical documents has been hampered by the failure

16   of Defendants to timely produce responsive records, and Defendants' withholding of significant and

17   important documents as DPP despite that this Court has consistently ordered that Defendants

18   produce such materials, both in this case (for records initially withheld as DPP in the CAR) and in

19   other challenges to TPS terminations in this district. *See* note 1, *supra*.

20   Defendants' Position: Defendants agree with Plaintiffs' description of the course of discovery

21   thus far in this case, but not with Plaintiffs' characterization of the documents Defendants have

22   produced to date or Plaintiffs' position regarding DPP and ACP. Defendants have provided their

23   position on these issues in the parties' September 30, 2025, Joint Discovery Letter Brief. Dkt. 129.

24   Defendants continue to review the challenged ACP invocations and will continue to meaningfully

25

26   _____
     [2] Plaintiffs sought expedited extra-record discovery at the first available opportunity, initially in the
     case management statement and then the day after the referral of this case to the Magistrate. Dkts. 84

27   & 95. Defendants have opposed discovery at every turn, sought to delay production, and refused to
     produce documents invoking privileges which have been overruled in this case and in every other

28   TPS challenge. *See, e.g.*, Dkt. 95 at 5-8; Dkt. 105 at 5-8; Dkt. 129.

1   engage with Plaintiffs in an attempt to narrow the dispute. In the absence of an amicable resolution,

2   Defendants also intend to supplement their position in the Joint Discovery Letter Brief.

### IX.   Class Actions

4         <u>Plaintiffs' Position</u>: Plaintiffs filed a Motion for Class Certification on August 15, 2025. Dkt.

5   89. This Court heard argument on the Motion on September 16, 2025.

6         <u>Defendants' Position</u>: Defendants filed an opposition to Plaintiffs' Motion for Class

7   Certification on August 25, 2025.

### X.   Related Cases

9         On July 7, 2025, Plaintiffs filed a motion to relate this case to *Ramos* (Case No. 18-cv-1554),

10   *Bhattarai, et al. v. Nielsen, et al.* (Case No. 19-cv-00731) ("*Bhattarai*"), and *NTPSA I* (Case No. 25-

11   cv-01766). *See Ramos*, Dkt. 264. Defendants filed an opposition on July 8, 2025. *Ramos*, Dkt. 266.

12   On July 11, 2025, Judge Edward Chen, who oversaw *Ramos*, denied Plaintiffs' motion to relate this

13   case to the aforementioned cases. *Ramos*, Dkt. 269.

14         At the Court's direction, Plaintiffs filed a notice on July 11, 2025 identifying all pending

15   federal court cases challenging TPS terminations of which they are aware. Dkt. 37. Since that time,

16   one additional case has been filed, challenging the partial vacatur and termination of TPS for Haiti:

17   *Miot v. Trump*, Case No. 1:25-cv-02471 (D.D.C. July 30, 2025). Plaintiffs are not aware of any other

18   pending cases challenging the termination of TPS for Nepal, Nicaragua, and/or Honduras.

### XI.   Relief

20         <u>Plaintiffs' Position</u>: This Court's order postponing the effective dates of the terminations of

21   TPS for Honduras, Nepal, and Nicaragua, has been stayed by the Ninth Circuit. Dkts. 73; 96.

22   Plaintiffs continue to seek declaratory relief, and that the Court set aside the agency's unlawful

23   termination orders for Nepal, Nicaragua, and Honduras under the Administrative Procedure Act and

24   the Equal Protection Clause of the Fifth Amendment. Plaintiffs further seek an award of attorneys'

25   fees and costs, as well as any other additional relief that the Court may deem proper.

26         <u>Defendants' Position</u>: Defendants seek dismissal of this action.

### XII.   Settlement and ADR

28         The parties do not believe that ADR would be fruitful at this point given Plaintiffs' and

Defendants' disagreement about threshold legal issues.

## XIII.    Other References

At this time, the parties do not believe this case is suitable for reference to binding arbitration or a special master. Nor is this case suitable for the Judicial Panel on Multidistrict Litigation.

## XIV.    Narrowing of Issues

The parties will continue to discuss the possibility of narrowing the issues beyond the motions described above.

## XV.    Scheduling

This Court's August 13, 2025, Case Management and Scheduling Order, Dkt. 91, set deadlines for designation of experts (opening reports by September 29, 2025, rebuttal reports by October 3, 2025, cut off October 8, 2025), fact discovery (September 23, 2025), dispositive motions (October 14, 2025), oppositions to dispositive motions (October 28, 2025), replies in support of dispositive motions (November 4, 2025), and hearing on dispositive motions (November 18, 2025).

## XVI.    Expedited Trial Procedure

The parties do not believe that this case should be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

## XVII.    Trial

Plaintiffs' Position: Plaintiffs have not requested a jury trial. Plaintiffs currently anticipate litigating the merits of their APA claims on summary judgment. Plaintiffs will propose a timeline for disposition of the constitutional claim as the case progresses.

Defendants' Position: Defendants maintain that this case is to be decided on the administrative record and thus should be decided via summary judgment. Fed. R. Civ. P. 56.

## XVIII. Disclosure of Non-Party Interested Entities or Persons

Plaintiffs filed Certifications of Interested Entities or Persons, as required by Civil Local Rule 3-15, on July 7, 2025. Dkt. 6. Plaintiffs are unaware of any persons, firms, partnerships, corporations, or other entities that have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

1

**XIX.    Professional Conduct**

2

   All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct

3

for the Northern District of California.

4

**XX.    Other Matters**

5

   The parties have no other matters to raise at this time.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Date:  October 1, 2025

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

 /s/ *Emilou MacLean*
Emilou MacLean

*Attorneys for Plaintiffs*

Date: October 1, 2025

U.S. DEPARTMENT OF JUSTICE

 /s/ *Daniel M. Cappelletti*
Daniel M. Cappelletti
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-2999
Daniel.Cappelletti@usdoj.gov
*Attorneys for Defendants*

## **SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other Signatory has concurred in the filing of this document.

Date: October 1, 2025

*/s/ Daniel M. Cappelletti*
Daniel M. Cappelletti

*Attorneys for Defendants*