BRETT A. SHUMATE
Assistant Attorney General
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM H. WEILAND
Acting Assistant Director
ERIC SNYDERMAN
LAUREN BRYANT
CATHERINE ROSS
JEFFREY M. HARTMAN
DANIEL CAPPELLETTI
SHELBY WADE
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et. al.*, <br><br> Plaintiffs, <br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et. al.*, <br><br> Defendants. | Case No. 3:25-cv-5687-TLT-SK <br><br> Magistrate Judge Sallie Kim <br><br> DECLARATION OF RORY BURKE IN SUPPORT OF THE DEPARTMENT OF HOMELAND SECURITY'S ASSERTION OF THE DELIBERATIVE PROCESS PRIVILEGE |

DECLARATION OF RORY BURKE
No. 3:25-cv-5687

I, Rory Burke, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am Acting Assistant Secretary for Border Security & Immigration Policy, Office of Strategy, Policy, & Plans within the Department of Homeland Security ("DHS").

2. The Secretary of Homeland Security has delegated to me the authority to assert the deliberative process privilege on her behalf regarding the documents at issue in the case *NTPSA, et al., v. Noem, et al.*, 3:25-cv-5687 (*NTPSA II*), in United States District Court for the Northern District of California.

3. I submit this declaration to assert the deliberative process privilege over documents related to the recommendations made by DHS officials with respect to the Secretary's decisions to terminate the designations of Nicaragua, Honduras, and Nepal for temporary protected status ("TPS") published at 90 Fed. Reg. 30086, 90 Fed. Reg. 30089, and 90 Fed. Reg. 24151, respectively (collectively, "TPS Decisions").

4. This declaration is responsive only to the assertions of deliberative process privilege with respect to the documents named in this declaration and does not waive any undiscussed assertions of privilege. It is my understanding that this subset of documents is representative of the types of documents that have been withheld as privileged.[1]

5. The documents **in bold** represent documents over which DHS has asserted the deliberative process privilege and is providing to the Court for in-camera review of the deliberative process privilege, in compliance with the Court's order on October 1, 2025.

6. The matters contained in this declaration are based upon my review of the DHS documents named in this declaration that have been withheld due to an assertion of deliberative process privilege in the *NTPSA II* litigation in the United States District Court for the Northern District of California; my personal knowledge; my knowledge of the documents kept by DHS in the course of ordinary business; and on information provided to me by other DHS employees in the course of my official duties.

---

[1] While I understand that other documents have been provided to the Court for in-camera review of the attorney client privilege, this declaration will not substantively discuss those documents for purposes of asserting the attorney client privilege, but will discuss some of those documents, or parts of those documents, for purposes of asserting the deliberative process privilege. This arises when DHS has asserted multiple privileges over the same document.

1

7. I am aware that in this litigation, plaintiffs challenge the Secretary of Homeland Security's decisions to terminate the TPS designations for Nepal, Nicaragua, and Honduras. For the reasons indicated below, I am asserting deliberative process privilege over the following categories of documents produced to Plaintiffs with Defendant's disclosures responsive to this Court's order on September 4, 2025.

    a. **Intra-agency discussions and deliberations regarding the Secretary's TPS decisions**: These pre-decisional email communications contain intra-agency deliberations among DHS staff, including USCIS, that are inextricably intertwined with the TPS decisionmaking process. In part or in whole, these documents contain, *inter alia*, pre-decisional TPS considerations (*see e.g.*, NTPSA2_00000263); proposed edits to the Secretary's TPS decision packages (*see e.g.*, NTPSA2_00000084; NTPSA2_00000079); direct emails to (*see e.g.* NTPSA2_00000775) and suggestions from (*see e.g.*, NTPSA2_00000788) the decisionmaker herself regarding TPS packages; candid discussions about paths forward for intra-agency review and discussion of that review (*see e.g.*, NTPSA2_00000718; NTPSA2_00002834; NTPSA2_00000255[2]) questions regarding personal impressions about progress in internal agency review (*see e.g.*, NTPSA2_00000718); options for the Secretary regarding TPS decisions (*see e.g.*, NTPSA2_00000713); deliberations regarding interagency TPS decisionmaking process (*see e.g.*, NTPSA2_00000775; NTPSA2_00002629); and pre-decisional questions about other federal agencies' input (*see e.g.*, NTPSA2_00001141). Some documents reflecting this decisionmaking also reflect deliberations on possible, unimplemented DHS policy options and considerations unrelated to TPS (*see e.g.*, NTPSA2_00001361; NTPSA2_00000391[3]). It is crucial that before TPS policy decisions be officially made, decisionmakers are able to seek candid input from subject matter experts to determine the best course of action with respect to a country's designation. It is similarly crucial that agency staff have such dialogue without concern that deliberations and discussions will be scrutinized before they are final, especially when such discussions are

---

[2] It is my understanding that this document, either in full or in part, is also protected by Attorney Client Privilege
[3] It is my understanding that this document, either in full or in part, is also protected by Attorney Client Privilege.

aimed at improving government efficiency and the overall decisionmaking process.

    b. **Interagency discussions and deliberations regarding the Secretary's TPS decision between DHS and other federal entities**: These pre-decisional email communications represent consultation of the Department of State (DOS) with DHS staff about various TPS decisions. In part or in whole, these documents contain, *inter alia*, discussions about paths forward in the consultation and decisionmaking process (*see e.g.*, NTPSA2_00003062; parts of **NTPSA2_00003070**); proposed drafts of Secretary of State recommendation memos (*see e.g.*, NTPSA2_00000776); proposed edits to the same recommendation memos (*see e.g.*, NTPSA2_00003085); personal predictions and understandings of DOS and DHS staff regarding progress and status of decisionmaking steps (*see e.g.* **NTPSA2_00003046**; NTPSA2_00003072; parts of **NTPSA2_00003070**); and personal opinions and impressions from DOS staff about the substance of documents (*see e.g.*, parts of NTPSA2_00003085). While many of the emails between DHS and DOS reference overall TPS decisionmaking, they are not always specific to the TPS designations of Nepal, Nicaragua, or Honduras. As just one example, while NTPSA2_00000776 through NTPSA2_00000783 is one email chain, six of the eight pages do not even mention one of the three TPS designations at issue in this litigation. It is crucial that federal partners can have the back-and-forth, candid discussions contemplated in email chains like NTPSA2_00003077 and NTPSA2_00003085, discussing items such as the proposed substance and timing of important decisions, without concern that such coordination and discussions will be scrutinized before those decisions are final.

    c. **Draft recommendation memorandums from USCIS Component Head to Secretary of Homeland Security**: These draft memorandums cover non-finalized, pre-decisional documents, the majority of which include internal comments, deliberations for consideration, and edits by decisionmakers. The expression of impressions, ideas, and opinions contained in the comment sections of some of these documents makes them inherently deliberative (*see e.g.*, NTPSA2_00000786). Additionally, even versions of the draft documents without tracked changes, edits, or comments (*see e.g.*, NTPSA2_00003084) can be compared with the final documents to ultimately disclose the decisionmaking process by demonstrating

changes between versions. Moreover, with respect to a document like NTPSA2_00000856, for example, though the document was actually signed and thus appears final, it was *not* a final document but rather a deliberative draft because it was later edited to reflect additional recommendations. Such candid discussions, disagreements on proposed content, explanations between DHS and USCIS subject matter experts and policy advisers, and differing versions of documents should be protected to ensure that the best possible decisionmaking is achieved. Ordering disclosure would hamper that effort.

    d. **Draft recommendation letters from the Secretary of State to the Secretary of Homeland Security**: These draft TPS recommendation letters contain non-finalized, pre-decisional documents lacking signature from the Secretary of State to the Secretary of Homeland Security, and as such, are inherently deliberative in nature (*see e.g.*, **NTPSA2_00003055**; **NTPSA2_00003057**; **NTPSA2_00003087**). One such document, NTPSA2_00003086, is a draft letter regarding the TPS designation for a country that is not Honduras, Nicaragua, or Nepal, responsive only due to family as an attachment to an email. It is critical that DHS staff be able to consult with federal agency partners in advance of decisionmaking to receive draft documents that can be updated, upon necessity and even at the last minute, if policy advisers of the decisionmaker predict that the decisionmaker would require further or different information to make her ultimate decision. This interagency coordination—especially between policy advisers—is a foundational cornerstone to an efficient U.S. Government.

    e. **Draft Federal Register Notices and decision documents**: These draft Federal Register Notices cover non-published and thus non-finalized, pre-decisional documents, (*see e.g.*, NTPSA2_00000254). One such document, NTPSA2_00000251, is a draft Federal Register Notice regarding the TPS designation for a country that is not Honduras, Nicaragua, or Nepal, responsive only due to family. Additionally, the corresponding decision documents to these draft Federal Register Notices present possible options for the decisionmaker, importantly lacking a signature that represents the final decision (*see e.g.*, **NTPSPA2_00000968**; **NTPSA2_00001138**). One unsigned document, NTPSA2_00000252, presents decision options for a TPS Notice concerning a country that is, once again, not

4

Nicaragua, Honduras, or Nepal, responsive only due to family. It is crucial that DHS staff and component agencies can circulate drafts of proposed Federal Register Notices and decision documents without concern that such deliberative versions will be scrutinized before they are final, and most importantly, to reach the end goal of an adequate public notice.

f. **DHS discussions and deliberations regarding draft Federal Register Notices**: These pre-decisional email communications and documents (such as email attachments) include deliberations among DHS headquarters and subcomponent staff about the draft Federal Register Notices proposed for the Secretary's TPS termination decisions. In part or in whole, they include discussions about various topics that are inextricably intertwined with the decision to publish a Federal Register Notice such as the content of and suggested edits to the notice (*see e.g.*, NTPSA2_00000332; parts of NTPSA2_00001329[4]); pre-decisional, legal recommendation from the Acting General Counsel regarding the notice (*see e.g.* **NTPSA2_00001014**; **NTPSA2_00001017**[5]); intra-agency review of the notice (*see e.g.*, parts of **NTPSA2_00001152**; NTPSA2_00000369); mental impressions regarding the substance of TPS Federal Register Notices (*see e.g.*, parts of NTPSA2_00000503); and discussions and deliberations regarding requirements related to TPS decisionmaking (*see e.g.*, **NTPSA2_00001034**). Additionally, some communications include other predecisional, deliberative policy discussions unrelated to TPS (*see e.g.*, NTPSA2_00001041; **NTPSA2_00001152**). It is crucial that DHS staff and component agencies can have frank and open discussions about the content, timing, and pre-publication steps of proposed Federal Register Notices without threat of further disclosure. The need for protection of such deliberations is especially heightened for policy development of unimplemented policy options that are still the subject of internal discussion and consideration.

g. **Discussions, documents and drafts of non-challenged topics**: These are discussions, documents, and draft documents that contain ideas or opinions regarding topics not relevant to the case. As explained above, some documents that discuss the relevant TPS designations

---

[4] It is my understanding that this document, either in full or in part, is also protected by Attorney Client Privilege.
[5] My understanding is that DHS also asserted Attorney Client Privilege and Attorney Client Work Product over documents NTPSA2_00001014 and NTPSA2_00001017.

5

also discuss other predecisional, often unimplemented, policies that are not related to TPS (*see e.g.*, NTPSA2_00000861,[6] which is Secretary's cabinet meeting briefing book with, among various other items, discussions among DHS headquarter offices and components about pre-decisional, deliberative Department-wide and Component-specific proposed policies and updates unrelated to TPS). Additionally, some documents have *no mention* of TPS but were responsive only due to family member documents that were deemed responsive. This includes, for example, draft decision memoranda relating to the Committee on Foreign Investment in the United States (CFIUS) (*see e.g.*, NTPSA2_00001156); draft memorandum of cooperation between the United States and another country (*see e.g.*, NTPSA2_00001159); and emails discussing the CHNV program (*see e.g.*, NTPSA2_00001153). Moreover, numerous documents contain discussions of TPS designations not challenged in this case (*see e.g.*, NTPSA2_00003086; NTPSA2_00000251).

8. The information identified and redacted as subject to the deliberative process privilege in these documents reflect the deliberative, pre-decisional processes of DHS personnel engaged in efforts to generate, review, revise, discuss, and otherwise formulate TPS policy and procedure. Those documents include deliberative emails about the Secretary's TPS decisions and corresponding federal register notices, draft federal register notices and decision documents, draft inter- and intra-agency recommendation letters, draft memoranda, and other documents memorializing the internal process of discussion and deliberation related to TPS decisionmaking. Additionally, as discussed above, many documents withheld under the deliberative process privilege relate to matters that are completely unrelated to TPS, relevant only due to one or more family member documents. Disclosure of the withheld portions of these documents would jeopardize DHS's ability to engage in decisionmaking by discouraging future candid discussion and debate within the government. DHS and other government personnel would be reluctant to share their opinions for or against a particular decision if those pre-decisional comments were subject to disclosure, and to future use for the purpose of challenging the final decision and/or the process by which it was achieved.

---

[6] It is my understanding that this document, either in full or in part, is also protected by the attorney client privilege.

9. For the categories of documents discussed above, it is imperative to protect the open and honest exchange of ideas and opinions among DHS employees, including component agencies, and with other federal agencies, such as DOS. This exchange is necessary to assist final decisionmakers in ensuring that DHS's mission of protecting the United States is faithfully executed. Release of the redacted information in the above referenced general topic could chill this exchange and impede DHS's decisionmaking process. This concern is particularly apt, where, as here, the opinions, proposals, and recommendations of DHS employees concern approaches to the government's immigration enforcement that are the subject of public controversy. If DHS employees are aware that their opinions, deliberations, and recommendations may be subject to public disclosure—and the scrutiny and criticism which may follow—the candor of their views could be chilled. This is especially true when those opinions may be taken out of context or not understood in the full context in which they were made or intended. Thus, it is vital that pre-decisional and deliberative communications such as those contained and reflected in the documents that discuss the vacatur, partial vacatur, and/or termination of temporary protected status be protected from disclosure based on the deliberative process privilege.

Executed at Washington, D.C. on this 7th day of October, 2025

*William "Rory" Burke*

_____
Rory Burke[7]

Acting Assistant Secretary for Border Security &
Immigration Policy, Office of Strategy, Policy, & Plans
U.S. Department of Homeland Security

---

[7] I am currently out of the office without the ability to digitally sign this document. I have reviewed it in full and provided a copy of my signature for it to be affixed hereto in attestation.

7