1  BRETT A. SHUMATE
   Assistant Attorney General
2  Civil Division
   WILLIAM H. WEILAND
3  Acting Assistant Director
   ERIC SNYDERMAN
4  LAUREN BRYANT
   CATHERINE ROSS
5  JEFFREY HARTMAN
   DANIEL CAPPELLETTI
6  SHELBY WADE
   LORI MACKENZIE
7  ILANA KRAMER
   Trial Attorneys
8  U.S. Department of Justice, Civil Division
   Office of Immigration Litigation
9  General Litigation and Appeals Section
   P.O. Box 868, Ben Franklin Station
10 Washington, D.C. 20044

11 Attorneys for Defendants

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15 NATIONAL TPS ALLIANCE, *et al.*,
                                          Case No. 3:25-cv-5687
16                  Plaintiffs,
           v.                             **DEFENDANTS' NOTICE OF MOTION AND**
17 KRISTI NOEM, in her official capacity as  **MOTION TO EXCLUDE EXPERT**
   Secretary of Homeland Security, *et al.*,  **TESTIMONY**
18
                    Defendants.           Date: November 18, 2025
19                                        Time: 2:00 p.m.
                                          Place: Courtroom 9, 19th Floor,
20                                        San Francisco U.S. Courthouse
                                          Judge: Hon. Trina L. Thompson
21

22

23

24

1

2

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

LEGAL STANDARD ...................................................................................................................1

ARGUMENT .............................................................................................................................3

I.    STACY TOLCHIN'S EXPERT REPORT AND TESTIMONY SHOULD BE
      EXCLUDED.....................................................................................................................3

      A.    Stacy Tolchin's Testimony Should Be Excluded Because She Lacks
            Specialized Knowledge Regarding the Country Conditions Assessment
            Requirements At Issue And Her Opinions Provide No Helpful Information To
            The Trier of Fact.....................................................................................................3

II.   HANNAH POSTEL'S EXPERT REPORT AND TESTIMONY SHOULD BE
      EXCLUDED.....................................................................................................................5

      A.    Background ...........................................................................................................5

      B.    Postel's Expert Testimony Should be Excluded Because She Is Not A
            Qualified Expert, And Her Testimony Is Neither Reliable Nor Relevant........................6

III.  MELANIE MORTEN'S EXPERT REPORT AND TESTIMONY SHOULD BE
      EXCLUDED.....................................................................................................................8

      A.    Background ...........................................................................................................8

      B.    Morten's Report Should Be Excluded Because Her Opinion Offers Nothing
            Relevant Or Helpful To The Questions That Must Be Decided By The Court................8

IV.   ELLIOTT YOUNG'S EXPERT REPORT AND TESTIMONY SHOULD BE
      EXCLUDED...................................................................................................................11

      A.    Background .........................................................................................................11

      B.    Young Is Not Qualified To Render An Expert Opinion On TPS Holders And
            Current Country Conditions In Honduras And Nicaragua In The TPS Context............11

      C.    Young's Claim That He "Has Always Been Found To Be An Expert By
            Immigration Courts" Is Not Dispositive To This Court's Determination........................13

      D.    Young's Finding That The TPS Terminations For Honduras And Nicaragua
            Were Racially Motivated Is Unreliable And Should be Excluded................................13

      E.    Young's Testimony Should Be Excluded Because It Is Irrelevant to Whether
            Secretary Noem Lawfully Exercised Her Authority to Terminate TPS for
            Honduras and Nicaragua ......................................................................................18

      V.    TARA WATSON'S AND STAN VEUGER'S EXPERT REPORT AND
            TESTIMONY SHOULD BE EXCLUDED ...............................................................19

      A.      Background ...............................................................................................19

      B.      Watson and Veuger's Expert Testimony Should Be Excluded Because They
             Lack Specialized Knowledge Regarding The Impacts Of The TPS
             Terminations At Issue And Their Testimony Is Not Reliable Or Relevant...................19

VI.     TOM WONG'S EXPERT REPORT AND TESTIMONY SHOULD BE EXCLUDED.............23

      A.      Background ...............................................................................................23

      B.      Wong's Testimony Is Irrelevant And Unhelpful To The Court......................................23

VII.    DANA FRANK'S EXPERT REPORT AND TESTIMONY SHOULD BE
       EXCLUDED.................................................................................................................24

      A.      Background ...............................................................................................24

      B.      Frank's Testimony Should Be Excluded Because It Is Irrelevant To Whether
             Secretary Noem's Termination Was Lawful...................................................................24

CONCLUSION............................................................................................................................24

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Avila v. Willits Environmental Remediation Trust*,
  633 F.3d 828 (9th Cir. 2011) ................................................................. 11, 12

*Beech Aircraft Corp. v. United States*,
  51 F.3d 834 (9th Cir. 1995) ........................................................................ 2

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
  2019 WL 1369007 (S.D. Cal. Mar. 26, 2019) ............................................ 21

*City of Pomona v. SQM N. Am. Corp.*,
  750 F.3d 1036 (9th Cir. 2014) ..................................................................... 3

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007) ................................................. 3, 8, 19, 24

*Cosmetics, Inc.*,
  2024 WL 3558848 (N.D. Cal. July 25, 2024) ............................................. 22

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ............................................. 18, 19, 21, 22, 23

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579  (1993) ........................................................................passim

*Deckers Outdoor Corp. v. Last Brand, Inc.*,
  No. 23-cv-04850-AMO, 2025 WL 2822682. (N.D. Cal. 2025) ...................... 11

*DePaepe v. General Motors Corp.*,
  141 F.3d 715 (7th Cir. 1998) ........................................................ 2, 14, 17

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
  591 U.S. 1 (2020) ....................................................................................... 9

*Domingo ex rel. Domingo v. T.K.*,
  289 F.3d 600 (9th Cir. 2002) ..................................................................... 21

*Elosu v. Middlefork Ranch Inc.*,
  26 F.4th 1017 (9th Cir. 2022) ................................................................ 2, 4

*Engilis v. Monsanto Co.*,
  2025 WL 2315898 (9th Cir. 2025) ............................................................. 19

*Est. of Barabin v. AstenJohnson, Inc.*,
  740 F.3d 457 (9th Cir. 2014) ....................................................................... 2

*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.,*
    No. 17-cv-00564-NC, 2018 WL 10476581 (N.D. Cal. Dec. 10, 2018) ................................. 1

*Gen. Elec. Co. v. Joiner,*
    522 U.S. 136 (1997)........................................................................................................ 10, 21

*Gold v. Lumber Liquidators, Inc.,*
    323 F.R.D. 280 (N.D. Cal. 2017).......................................................................................... 21

*Grouse River Outfitters Ltd. v. Oracle Corp.,*
    2019 WL 8752335 (N.D. Cal. Feb. 19, 2019)........................................................................ 6

*Guidroz-Brault v. Mo. Pac. R.R. Co.,*
    254 F.3d 825 (9th Cir. 2001)......................................................................................... 14, 20

*Hangarter v. Provident Life & Accident Ins. Co.,*
    373 F.3d 998 (9th Cir. 2004)................................................................................................ 17

*In re Canvas Specialty Inc.,*
    261 B.R. 12 (C.D.Cal.2001) ................................................................................................ 20

*In re GFI Com. Mortg. LLP,*
    2013 WL 4647330 (N.D. Cal. Aug. 29, 2013)...................................................................... 20

*In re Google Play Store Antitrust Litig.,*
    No. 20-cv-02981-JD, 2023 WL 5532128 (N.D. Cal. Aug. 28, 2023)................................. 2, 4

*In re Rezulin Prod. Liab. Lit.,*
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................................................ 3, 5

*Kennedy v. Collagen Corp.,*
    161 F.3d 1226, 1230 (9th Cir. 1998).................................................................... 18, 19, 23

*Lin v. Solta Med., Inc.,*
    No. 21-CV-05062-PJH, 2024 WL 5199905 (N.D. Cal. Dec. 23, 2024)................................. 2

*Messick v. Novartis Pharms. Corp.,*
    747 F.3d 1193 (9th Cir. 2014) ...................................................................................... 19, 22

*Moses v. Payne,*
    555 F.3d 742 (9th Cir. 2009) ................................................................................................. 3

*Nelson v. Pima Cmty. Coll.,*
    83 F.3d 1075 (9th Cir. 1996)................................................................................................ 16

*Oiler v. Sweetwater Union High Sch. Dist.,*
    768 F.3d 843 (9th Cir. 2014)................................................................................................ 20

*Oracle America, Inc. v. Hewlett Packard Enter. Co.*,
  2018 Wl 6511146 (N.D. Cal. Dec. 11, 2018)................................................................. 21

*Palmer v. Cognizant Tech. Solutions Corp.*,
  No. 17-6848, 2022 WL 18214014 (C.D. Cal. Oct. 27, 2022) ...................................... 10

*Plexxikon Inc. v. Novartis Pharms. Corp.*,
  No. 17-cv-04405-HSG, 2021 WL 1164749 (N.D. Cal. Mar. 26, 2021)............................ 1

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010)...................................................................................passim

*Rancher Cattlemen Action Legal Fund United Stockgrowers of Am. v. United States Dep't of Agric.*,
  415 F.3d 1078 (9th Cir. 2005) ....................................................................................... 9

*Rios v. City of San Jose*,
  No. 06-cv-7036-RS, 2008 WL 4532559 (N.D. Cal. Oct. 9, 2008) ................................. 1

*Sanchez v. Holder*,
  704 F.3d 1107 (9th Cir. 2012) ..................................................................................... 13

*Stanley v. Novartis Pharms. Corp.*,
  No. CV1103191JGBOPX, 2014 WL 12573393 (C.D. Cal. May 6, 2014)........................ 2

*Stephens v. Union Pac. R.R. Co.*,
  935 F.3d 852 (9th Cir. 2019)........................................................................... 10, 14, 16

*Townsend v. Monster Beverage Corp.*,
  303 F. Supp. 3d 1010 (C.D. Cal. 2018)....................................................................... 10

*United States v. Bacon*,
  979 F.3d 766 (9th Cir. 2020)......................................................................................... 2

*United States v. Carillo-Lopez*,
  68 F.4th 1133 (9th Cir. 2023)........................................................................................ 9

*United States v. Chang*,
  207 F.3d 1169 (9th Cir. 2000).................................................................................. 6, 20

*United States v. Diaz*,
  876 F.3d 1194 (9th Cir. 2017)..................................................................................... 17

*United States v. Duncan*,
  42 F.3d 97 (2d Cir. 1994)............................................................................................ 17

*United States v. Hanna*,
  293 F.3d 1080 (9th Cir. 2002)....................................................................................... 3

v

*United States v. Vallejo*,
   237 F.3d 1008 (9th Cir.) ................................................................................ 3

*Victory Dollar Inc. v. Travelers Cas. Ins. Co. of Am.*,
   2023 WL 9003011 (C.D. Cal. Dec. 7, 2023) ................................................ 21

**Statutes**

8 U.S.C. § 1231(b) .......................................................................................... 16
8 U.S.C. § 1254a .............................................................................. 14, 15, 19
8 U.S.C. § 1254a(b)(1) .......................................................................... 3, 13, 23
8 U.S.C. § 1254a(b)(1)(C) ............................................................................ 23
8 U.S.C. § 1254a(b)(3) ............................................................................... 8, 18
8 U.S.C. § 1254a(b)(5)(A) .......................................................................... 8, 23

**Federal Rules**

Fed. R. Evid. 403 ......................................................................................... 1, 3
Fed. R. Evid. 702 ..................................................................................... passim
Fed. R. Evid. 702(a) ............................................................................... 4, 5, 17
Fed. R. Evid. 702(b) .................................................................................... 4, 9

**Federal Register**

64 Fed. Reg. 524 (Jan. 5, 1999) ..................................................................... 13
64 Fed. Reg. 526 (Jan. 5, 1999) ..................................................................... 13

**NOTICE OF MOTION**

PLEASE TAKE NOTE THAT at 2:00 p.m. PDT on November 18, 2025, or as soon thereafter as this matter may be heard, before the Honorable Trina L. Thompson of the United States District Court for the Northern District of California, Defendants move to exclude seven expert reports proffered by Plaintiffs.

**PRELIMINARY STATEMENT**

Defendants seek to exclude the seven Expert Reports submitted by Plaintiffs on September 29, 2025. Each of Plaintiffs' experts fail to satisfy the basic requirements of Rule 702.[1] They lack foundation and instead are based on repeated speculation without any reliable (or articulable) methodology and thus offer no information that will aid the Court as the factfinder in this case. *See* Fed. R. Evid. 702. Similarly, the proffered opinions are irrelevant to the questions that the Court must answer. Each of these experts' testimonies should be excluded for various reasons, such that they are either not qualified to provide expert testimony on matters upon which they opine, or their testimony is based upon unreliable or irrelevant evidence that is not in the record. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**LEGAL STANDARD**

Expert opinions offered as evidence must be (a) "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue[,]" (b) "based on sufficient facts or data," (c) "the product of reliable principles and methods," and (d) a product of "reliable application" of those "principles and methods to the facts of the case." Fed. R. Evid.

---

[1] Plaintiffs also present several claimed experts whose opinions overlap on certain topics. For example, both Hannah Postel and Dana Frank present an opinion on the impact of terminating TPS for Hondurans. These overlying opinions "needlessly present[s] cumulative" testimony. *See* Fed. R. Evid. 403; *see also Plexxikon Inc. v. Novartis Pharms. Corp.*, No. 17-cv-04405-HSG, 2021 WL 1164749, at *1 (N.D. Cal. Mar. 26, 2021) (advising that the court would "not hesitate to exclude or strike" cumulative expert testimony at trial and that Rule 403 "appropriately allows the Court to exercise its discretion to exclude testimony that is cumulative or would otherwise waste the time of the Court"); *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, No. 17-cv-00564-NC, 2018 WL 10476581, at *3 (N.D. Cal. Dec. 10, 2018) (excluding opinions of expert that were "cumulative of [party's] other experts' opinions"); *Rios v. City of San Jose*, No. 06-cv-7036-RS, 2008 WL 4532559, at *2 (N.D. Cal. Oct. 9, 2008) (precluding expert "from rendering duplicative opinion testimony" from other experts).

702. The party proffering the expert testimony bears the burden of establishing its admissibility. *See* Fed. R. Evid. 702; *see also* Fed. R. Evid. 702, Committee Notes on Rules—2023 Amendment ("[E]xpert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."); *see also In re Google Play Store Antitrust Litig.*, No. 20-cv-02981-JD, 2023 WL 5532128 at *5 (N.D. Cal. Aug. 28, 2023) ("At all stages, Rule 702 of the Federal Rules of Evidence tasks a district court judge with ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.") (quoting *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1023 (9th Cir. 2022)) (internal quotation marks omitted). Moreover, in cases subject to a bench trial, the district court has broad discretion to exclude expert testimony on issues that the court can determine itself. *See Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995).

District courts have a duty to serve a "gatekeeping" role to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand," *Daubert*, 509 U.S. at 597, and to exclude testimony that does not satisfy these requirements. *Id.* at 589; *see also Est. of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020). An expert's reliability is premised upon whether they have "specialized knowledge that will help the factfinder understand or decide a fact in issue." *Daubert*, 509 U.S. at 592. The requirement of specialized knowledge means "more than subjective belief or unsupported speculation." *Id.* at 590. Thus, "opinions of expert witnesses on the intent, motives, or states of mind of … regulatory agencies and others" should be excluded because they "have no basis in any relevant body of knowledge or expertise." *Lin v. Solta Med., Inc.*, No. 21-CV-05062-PJH, 2024 WL 5199905, at *12 (N.D. Cal. Dec. 23, 2024) (quoting *Stanley v. Novartis Pharms. Corp.*, No. CV1103191JGBOPX, 2014 WL 12573393, at *6 (C.D. Cal. May 6, 2014)) (internal quotations omitted); *see also United States v. Pac. Gas & Elec. Co.*, No. 14-CR-00175-TEH, 2016 WL 1640462, at *3 (N.D. Cal. Apr. 26, 2016); *DePaepe*

*v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998). An expert must not "supplant the role of counsel in making arguments at trial, and the role of the [decision maker] in interpreting the evidence." *In re Rezulin Prod. Liab. Lit.,* 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004); *see also Moses v. Payne*, 555 F.3d 742 (9th Cir. 2009); *United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002).

In order to be relevant, expert testimony must have a valid connection to the pertinent inquiry. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014). That is, the testimony must "assist a trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

Even where expert testimony is otherwise deemed admissible, the Court may still exclude it under Federal Rule 403. *United States v. Vallejo*, 237 F.3d 1008, 1021 (9th Cir.), opinion amended on denial of reh'g, 246 F.3d 1150 (9th Cir. 2001). Thus, if the Court finds that the testimony being offered would waste time, confuse, or not materially assist the trier of fact, it has discretion to exclude the expert's testimony. *Id*.

# ARGUMENT

# I.    STACY TOLCHIN'S EXPERT REPORT AND TESTIMONY SHOULD BE EXCLUDED

Stacy Tolchin ("Tolchin") is an attorney licensed to practice by the State of California who is offered as an expert witness on the laws governing Temporary Protected Status ("TPS"), what protections TPS has afforded to the Nepali, Honduran, and Nicaraguan immigrant communities, and how TPS protections may overlap with other immigration protections.

### A.    Stacy Tolchin's Testimony Should Be Excluded Because She Lacks Specialized Knowledge Regarding the Country Conditions Assessment Requirements At Issue And Her Opinions Provide No Helpful Information To The Trier of Fact

Tolchin is no more qualified than the Court or counsel for the litigants to opine on the Secretary of Homeland Security's obligations under the TPS statute. *See* 8 U.S.C. § 1254a(b)(1), (b)(3)(A)-(C). The Court should thus exclude her testimony because Plaintiffs cannot show that it is "more likely than not" to meet the admissibility requirements of Fed. R. Evid. 702. *See* Fed. R. Evid. 702 Advisory Committee

1    Note - 2023 Amendment.  As Tolchin's testimony and opinions merely provide legal analysis within the

2    capacity of counsel and the Court to produce, it is not admissible under the rule as "specialized

3    knowledge," nor will it "help the trier of fact[.]" *See* Fed. R. Evid. 702(a).  Tolchin's proposed testimony

4    is also not based on sufficient facts or data. *See* Fed. R. Evid. 702(b).

5         Furthermore, "reliability is the touchstone" for a court's admissibility analysis under Federal Rule

6    of Evidence 702, but Tolchin's lack of specialized knowledge of the portions of the TPS statute at issue

7    in this case renders her unreliable as an expert. *See In re Google Play Store Antitrust Litig.*, 2023 WL

8    5532128 at *5 (analyzing 2023 amendment to Fed. R. Evid. 702); *see also Elosu*, 26 F.4th at 1024 ("An

9    expert's specialized knowledge and experience can serve as the requisite "facts or data" on which they

10   render an opinion."). Because Tolchin's asserted expertise derives from knowledge and experience gained

11   through litigation on behalf of individual aliens facing removal, she displays no specialized knowledge

12   about what § 1254a requires for the Secretary of Homeland Security to conduct a legally sufficient country

13   conditions assessment. *See* ECF No. 1, ¶ 3 (Plaintiffs seek to show TPS terminations were unlawful

14   because Defendants conducted a legally insufficient country conditions review); Tolchin Report at ¶ 9.

15   Tolchin's report mentions a single case she litigated that concerned government policies towards a class

16   of TPS beneficiaries. *Id*. at ¶ 9. But Tolchin herself notes that that case concerned the Government's

17   interpretation of statutes other than the TPS statute to identify beneficiaries' eligibility for travel

18   authorization and adjustment to permanent residence, not the application of the TPS statute's country

19   conditions requirements. *Id*. at ¶ 9. Tolchin's analysis of the other immigration benefits, such as asylum

20   or various visas, available to Plaintiffs has no bearing whatsoever on the legal validity of Secretary Noem's

21   country conditions analysis or the absence of a constitutionally prohibited motive in reaching her

22   unreviewable determination that Plaintiffs' countries of citizenship are no longer eligible for TPS

23   designation.

24

4

Tolchin offers the Court statutory and legislative history analysis already briefed by counsel to the parties to this case. *See* ECF No. 65, §§ III, V, VI, VII (Dfts. Resp. to Questions for July 29, 2025 Hearing); ECF No. 67, §§ III, V, VI, VII. Tolchin's testimony on this issue cannot be deemed reliable as it does not "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). Tolchin offers no expertise derived from education, research, or legislative activity which would provide additional help to the Court to analyze congressional intent regarding the TPS statute or its intended function as a part of the broader immigration system. *See* Fed. R. Evid. 702(a). Further, Tolchin's analysis cannot help the trier of fact as the Court needs no outside expertise to help it further analyze the meaning of the statute and congressional intent in its enactment, as it has already done here. *See* ECF No. 73, § IV.A-B (Order Granting Ptfs. Mot. to Postpone).

An expert should not "supplant the role of counsel in making argument at trial, and the role of the [decision maker] in interpreting the evidence." *In re Rezulin Prod. Liab. Lit.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004). Tolchin's "expert" opinions are derived only from her experience as a litigation attorney. Plaintiffs should encourage her to file a notice of appearance if they seek to place her arguments before the Court.

## II.    HANNAH POSTEL'S EXPERT REPORT AND TESTIMONY SHOULD BE EXCLUDED

### A.    Background

Hannah Postel ("Postel") is an Assistant Professor of Public Policy at Duke University; her background also includes being a faculty affiliate of the Stanford Immigration Policy Lab, offered as an expert on the impact of terminating TPS for Hondurans.[2]

---

[2] Throughout her report, Postel only discusses the country conditions of Honduras; for example, she does not mention the effects that Hurricane Mitch had on other countries that are relevant to this matter. *See generally* Postel Report at ¶¶ 12–13.

### B. Postel's Expert Testimony Should be Excluded Because She Is Not A Qualified Expert, And Her Testimony Is Neither Reliable Nor Relevant

First, Postel is not a qualified expert witness. "[T]o determine whether a proposed expert is qualified, the court must examine whether the witness's qualifying training, experience, or specialized knowledge is sufficiently related to the subject matter upon which the witness offers an opinion." *Grouse River Outfitters Ltd. v. Oracle Corp.*, 2019 WL 8752335, at *3 (N.D. Cal. Feb. 19, 2019) (citing *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000)). In her statement, Postel stated that she was asked to provide an expert opinion "on the impact of terminating [TPS] for Hondurans." Postel Report at ¶ 2. While Postel insists that her report was made on her own personal and professional knowledge, *none* of her qualifications in her curriculum vitae demonstrate that she has any specialty focusing on Honduras, besides one "in the field" acknowledgement that she had some role in working on a project entitled "Labor Market Reintegration for Return Migrants in Honduras." *Id.* at Appendix B. Yet, within her expert report, Postel never mentions this project or acknowledges why her involvement with this makes her an "expert" on country conditions in Honduras. Instead, Postel's publications either involve unnamed countries or countries that are not Honduras. *See generally,* Postel Report. Here, Postel insists that she is an expert on how an immigration policy affects *one* specific country that she does not have expertise in researching. This is not equivalent to other situations in which an expert who was a "highly qualified accountant and business-valuation professional" was allowed to testify as an expert witness even though he lacked experience in a specific relevant area. *See Grouse River Outfitters Ltd.*, 2019 WL 8752335, at *3. Instead, Postel appears to have little to *no* experience researching or studying Honduras, yet she purports to be a witness on not only country conditions there, but the effect of TPS cancellation on the country's economy. *See* Postel Report at ¶¶ 15–21. Postel might be qualified to be an expert in another public policy field, but she has not demonstrated that she is an expert on the topic she was asked to opine on.  As such, on this record, the Court should conclude that Postel is not qualified to analyze the impact of terminating TPS on Honduras.

Further, Postel's expert testimony is inadmissible under Rule 702 because it is both irrelevant and unreliable. *See Daubert*, 509 U.S. at 589. First, Postel's testimony does not meet the reliability requirement as it does not "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). To ensure reliability, the Court "assess[es] the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id*. at 564. The "test of reliability" however is "flexible" and "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id*. Instead, the list of factors is not definitive, and "the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable based on 'the particular circumstances of the particular case.'" *Id*.

Here, Postel's testimony is not reliable because she does not have a "reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 564. As stated above, according to Postel's curriculum vitae, while she has published several articles on many countries, it does not appear that any of her publications or background have focused on Honduras *specifically*, yet she claims to be an expert on the effects of the termination of TPS on Honduras. *See generally* Postel Report. Instead, Postel's "expert" report seems to be a regurgitation of alleged "facts" from other cherry-picked publications not found in the evidentiary record with little to no analysis by Postel herself. Indeed, the best way in which to view Postel's report is as an inappropriate attempt to admit Postel's selection of "facts" as evidence upon which the Court may rely, without first making any showing about the reliability, relevance, or admissibility of the evidence at all. In fact, the only reference in her report that might provide some evidence is the reference made to Postel's own research on the termination of the Mexican Bracero Program. Postel Report at ¶ 19. But Postel makes no attempt to connect the separate and unrelated Mexican Bracero Program to its effects on the modern-day TPS termination of Honduras, and she does not offer any explanation about *how* the bracero program and TPS are similar in *any* way. *Id*.  Thus, this Court

1    should conclude that Postel's expert report is unreliable due to her lack of both specific and demonstrable

2    knowledge *and* experience that is relevant.

3        Furthermore, Postel's testimony is also irrelevant because it will not "assist a trier of fact to

4    understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). The issue

5    in this matter is whether Secretary Noem's 2025 determination to terminate the TPS designation for

6    Honduras was a lawful and valid exercise of her statutory authority under 8 U.S.C. § 1254a(b)(3).

7    Specifically at issue, on Plaintiffs' theory, is whether Secretary Noem's termination decision was based

8    on a review of the current conditions of the country at issue. *See* ECF No. 121 at 16. However, within her

9    report, Postel speculates about how the termination of TPS will affect the economies of both the United

10   States and Honduras. This is irrelevant, as nothing in the statute requires the Secretary to meet an

11   academic's outside view of what is in the best short and long term interest of the United States or

12   Honduras.  And Postel's views about public policy and potential impacts of decisions (which are not

13   statutory factors) are doubly irrelevant because they highlight the fact that Plaintiffs' complaint amounts

14   to a challenge to the specific country conditions and substantive country-specific findings that are at the

15   core of what Congress sought to make unreviewable under the TPS statute. 8 U.S.C. § 1254a(b)(5)(A).

16   Consequently, not only is Postel not a qualified witness, but the Court should not admit her testimony as

17   is does not sufficiently rest "on a reliable foundation" and it is not "relevant to the task at hand." *Primiano*,

18   598 F.3d at 565.

19   **III.    MELANIE MORTEN'S EXPERT REPORT AND TESTIMONY SHOULD BE EXCLUDED**

20       **A.    Background**

21       Melanie Morten ("Morten") is an Associate Professor of Economics at Stanford University.

22   Morten Report at ¶ 1. She is offered as an economic impact expert, addressing the effects the termination

23   of TPS for Nepalis, Hondurans, and Nicaraguans has on the United States.

24       **B.    Morten's Report Should Be Excluded Because Her Opinion Offers Nothing Relevant Or Helpful To The Questions That Must Be Decided By The Court**

8

Like Postel's proffered public policy testimony, Morten's proffered economics testimony is inadmissible because it is not relevant. *See* Fed. R. Evid. 702(b). Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 35 (2020) ("We address only whether the agency complied with the procedural requirements that it provide a reasoned explanation for its action."). And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592 (1993). As Defendants have repeatedly argued, nothing within the APA, the INA, or the Fifth Amendment of the Constitution authorizes the Court to reweigh the evidence in order to compel Plaintiffs' preferred outcome. *United States v. Carillo-Lopez,* 68 F.4th 1133, 1142 (9th Cir. 2023); *Rancher Cattlemen Action Legal Fund United Stockgrowers of Am. v. United States Dep't of Agric.*, 415 F.3d 1078, 1103 (9th Cir. 2005). As such, Morten's proffered opinion, which is based upon her own excerpted selection of "evidence" falls well outside the standard of relevance, such that her opinion should be excluded on that basis alone.

Morten's proffered testimony about the economic impact of Secretary Noem's determinations is irrelevant to whether she has the broad discretion to make determinations about whether Honduras, Nicaragua, and Nepal continue to meet the conditions for designation. Those conditions do not include some free-wheeling assessment of the pros and cons of allowing certain populations to remain in the U.S. – which is a matter for Congress to consider. Moreover, the data itself is unhelpful because it is not tailored to the content of the Secretary's determinations.

First, Morten's data is based on a 2021 ACS estimate of the economic impact of more than 354,000 TPS holders from 12 different countries, which include Nepal, Nicaragua, and Honduras, but does not quantify earnings from those three countries, either separately or in combination. Therefore, Morten's data provides the Court almost no information about the earnings that TPS holders from these countries provide because the data has been mixed with 9 other countries. Morten Report at ¶ 6a. Second, Morten

looks at old data from 2015 from the Immigrant Legal Resource Center, estimating that 300,000 TPS holders from El Salvador, Honduras, and Haiti earned a total of $4.5 billion annually, contributing to tax revenues. *Id.* at ¶ 6b.  This estimate only provides *some* economic data *potentially* about contributions from Hondurans and provides no information at all about Nicaraguan and Nepali contribution, which even Morten acknowledges. *Id.* at ¶ 6b. Because we do not know the proportion of Honduran contribution to this revenue, her recitation of this data as to these contributions is unhelpful and renders the purported data itself utterly unusable. *See Palmer v. Cognizant Tech. Solutions Corp.*, No. 17-6848, 2022 WL 18214014 at *13 (C.D. Cal. Oct. 27, 2022) (stating that "[t]he precision required to prove the plaintiff's case rendered imprecise data useless")..

Third, Morten speculates whether the former TPS holders would be removed or would stay in the United States and become part of an informal economy, opining that there would be some negative impact that would reduce funding for Social Security and Medicare, but precisely what, she does not know. *Id.* at ¶ 7-8. As an example, Morten cites informal employment data from 20 years ago and limited to Los Angeles County.  *Id.* at ¶ 8. "Federal Rule of Evidence 702(b) permits the introduction of expert testimony only if the testimony is based on sufficient facts or data." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019) (quotations omitted); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1032 (C.D. Cal. 2018) ("Plaintiffs fail to show that Dr. Maronick's assumption that energy drink consumers are energy drink purchasers is [not] grounded in anything other than his unsupported speculation."). Under this standard, Morten's testimony is clearly inadmissible.

Finally, Morten cites a 2017 report from the National Academies of Sciences regarding the economic and fiscal impacts of immigration. Morten Report at ¶ 10. Again, the report's findings look at the impacts of immigration as a whole but do not evaluate the contributions of TPS holders, to say nothing of TPS holders specifically from Honduras, Nicaragua, and Nepal. The *only* data specific to TPS holders from the relevant countries provided by Morten is an estimate of deportation costs, adjusted for inflation of $13,700 per person, which amounts to $863 million when multiplied by 63,000 TPS holders from the relevant countries. Even so, without conceding the irrelevance of this data, it does not take into account savings among other countervailing considerations. But there is no reason for concluding the costs are relevant at all as it is up to the Executive to determine how to best utilize the resources appropriated to it by Congress for the purpose of enforcing immigration laws. What's more, even if relevant, the Secretary's determination may appropriately be based upon giving greater weight to other considerations.

In sum, Morten's expert report and testimony should be excluded.

## IV.    ELLIOTT YOUNG'S EXPERT REPORT AND TESTIMONY SHOULD BE EXCLUDED

### A.    Background

Elliott Young ("Young") is Professor of History at Lewis & Clark College. Young Report at ¶ 1. He is offered as an expert on how the debate over TPS generally, and also specifically for Honduras and Nicaragua, reflects the history of racism in immigration debates in the United States

### B.    Young Is Not Qualified To Render An Expert Opinion On TPS Holders And Current Country Conditions In Honduras And Nicaragua In The TPS Context

Plaintiffs offer Young as an expert in the history of racism in U.S. immigration policy debates and on current country conditions in Honduras and Nicaragua, but his opinions go well beyond the scope of this claimed expertise. *Deckers Outdoor Corp. v. Last Brand, Inc.*, No. 23-cv-04850-AMO, 2025 WL 2822682 at *1. (N.D. Cal. 2025) ("[C]ourts routinely exclude expert testimony where the expert's opinion is not within the scope of his expertise" referring to *Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011)). For example, Young claims the characterization of "Central American

11

TPS holders as dangerous criminals who harm the U.S. economy is a false narrative." *Id.* at ¶ 2. Yet only one of Young's publications focuses on TPS ("Racism and Classism at the Heart of Rescission of Venezuelan TPS"), which focuses on Venezuela and is not relevant to the terminations at issue in this case. *Id.* at Appendix A. Furthermore, his report provides statistics on crime, but those statistics are again overly broad, and compares crime rates for immigrants against those of U.S.-born citizens, as though it is improper that the INA categorically excludes aliens who commit crimes. *Id.* at ¶ 30. Young also claims that no TPS holder can be a criminal, but the statute Young cites in support of this assertion is not dispositive, nor does it account for the incredible expansion of numbers of TPS holders over the last four years and the strain that places upon the review process. *See* "Temporary Protected Status: Calendar Year 2021 Annual Report to Congress" listing 429,630 TPS beneficiaries compared to the 1,297,635 beneficiaries as of the March 31, 2025 "Temporary Protected Status and Deferred Enforcement Departure," Congressional Research Service. The statute Young cites requires eligibility criteria review with each TPS registration and periodic renewal request. 8 U.S.C. § 1254a(c)(1)(A)(iv). But even the statute belies this facile conclusion, as it envisions TPS holders losing status on the basis of committing crimes, or being found to have committed crimes. *Id.* Indeed, even if relevant, Young's report provides no evidentiary support or data on the number of individuals denied initial or renewal of TPS based on their criminal activity coming to light. Finally, Young is also not qualified to opine on the U.S. economy or TPS holders' economic impact on that economy. His report has no data on the U.S. economy to support his opinion, and his *curriculum vitae* does not document education or experience in economics. Further, none of this information is relevant to the determinations to terminate TPS for Honduras, Nicaragua, or Nepal. Simply put, Young goes far afield from his professed area of expertise to buttress his irrelevant and overly expansive critiques of the immigration system as a whole.

Plaintiffs also fail to establish Young as an expert in current country conditions in Honduras and Nicaragua. Young provides two courses that he teaches, a "fact-finding mission to Honduras" in August

1    2023, a year living in Nicaragua in 1989-90, and a statement that he "conducted extensive field research

2    and scholarly studies about cross-border smuggling, paramilitary groups on the border, and clandestine

3    trafficking of migrants" to qualify as an expert on current country conditions. *Id*. at ¶ 8. Plaintiffs do not

4    explain how these two courses, limited trips including one 35 years ago, and field research provide Young

5    with the knowledge to speak as an expert on *current* country conditions related to Hurricane Mitch and

6    other environmental disasters upon which the TPS designations for Honduras and Nicaragua were based.

7    *See* 64 Fed. Reg. 524 (Jan. 5, 1999); 64 Fed. Reg. 526 (Jan. 5, 1999).

8
9    **C.    Young's Claim That He "Has Always Been Found To Be An Expert By Immigration Courts" Is Not Dispositive To This Court's Determination**

10    Young's curricula vitae reflects that he has testified previously in asylum cases in immigration

11    court, but the Federal Rules of Evidence are not binding in immigration court *Sanchez v. Holder*, 704 F.3d

12    1107 (9th Cir. 2012). Additionally, Young's experience in immigration court focuses on country

13    conditions for asylum, not TPS – for which the eligibility criteria and relevant issues are quite different

14    and distinct. TPS is not a substitute for asylum, and, having TPS does not preclude someone from seeking

15    status as an asylee. Asylum, if granted, provides permanent status while TPS is, by definition, temporary.

16    Asylum requires an individual applicant to establish that race, religion, nationality, membership in a

17    particular social group, or political opinion was or will be a central reason for persecution in the applicant's

18    home country. 8 U.S.C. § 1158(b)(1)(B)(i). And while experts may provide evidence to corroborate an

19    individual applicant's claim of persecution, such testimony is not relevant to the TPS designation process,

20    which instead turns on the Secretary of Homeland Security's exercise of discretion as to whether a country

21    continues to meet the basis for designation. 8 U.S.C. § 1254a(b)(1). Thus, Young's experience as an expert

22    for asylum cases thus does not qualify him as an expert on country conditions in the TPS context for

23    Honduras and Nicaragua.

24    **D.    Young's Finding That The TPS Terminations For Honduras And Nicaragua Were Racially Motivated Is Unreliable And Should be Excluded**

13

1    Even if the Court finds that Young is qualified to testify, his opinions concerning Secretary's

2    Noem's supposed ulterior motives for terminating TPS for Honduras and Nicaragua should be excluded

3    because they are purely speculative and are not supported by any direct evidence, or even the evidence

4    upon which he claims to rely. In addition, any testimony that Secretary Noem's TPS determinations were

5    racially motivated should be excluded because these constitute opinions about ultimate issues of fact and

6    law before the Court.

7    The "opinions of expert witnesses on the intent, motives, or states of mind of … regulatory

8    agencies and others" should be excluded because they "have no basis in any relevant body of knowledge

9    or expertise." *Lin*, at *12 (quoting *Stanley*, at *6) (internal quotations omitted); *see also Pac. Gas & Elec.*

10   *Co.*, at *3. That established specific principle flows from established general principles of expert witness

11   reliability. An expert is reliable if he or she has "specialized knowledge that will help the factfinder

12   understand or decide a fact in issue." *Daubert*, 509 U.S. at 592. Specialized knowledge is "more than

13   subjective belief or unsupported speculation." *Id*. at 590. "The expert's opinion must rest on 'facts or data

14   *in the case* that the expert has been made aware of or personally observed,' not merely assumptions and

15   speculation." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856–57 (9th Cir. 2019) (quoting Fed. R.

16   Evid. 703) (emphasis added); *see also Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830–31 (9th

17   Cir. 2001); *DePaepe*, 141 F.3d at 720. The Court must exclude speculative testimony about a cabinet

18   secretary's intent, motives, or state of mind.

19   This is especially apparent because Young relies largely on statements by people other than

20   Secretary Noem, which cannot possibly shed light on her intent, motives, or state of mind. In support of

21   his conclusion that the termination of TPS for Honduras and Nicaragua were the consequence of racial

22   animus by the current Administration and Secretary Noem, Young relies extensively on cherry-picked

23   statements made by a number of individuals *besides* Secretary Noem—none of whom are vested with the

24   authority to make TPS determinations under 8 U.S.C. § 1254a. These statements cannot provide any

14

factual basis for Young's opinion about Secretary Noem's motives in terminating TPS for Honduras and Nicaragua. Moreover, Young's blatant mischaracterization and choice paraphrasing offers little in the way of a logical connection between the referenced statements and Secretary Noem's intent. For example, Young claims that Stephen Miller, the current White House Deputy Chief of Staff, "has peddled the replacement theory and even used … [a] far-right website … to disseminate these views." Young Report ¶ 21. In support, Young cites a 2019 article by *The Guardian* which references a 2015 email (predating President Trump's first term) in which Miller sent a journalist a link to a book with controversial theories on immigration topics. *Id*. The many inferences one must jump to in order to connect this to the case at hand are astounding. The ten-year-old private musings of a then-private citizen, cannot conceivably serve as a factual basis for Young's finding that Secretary Noem harbored racial motives for the 2025 TPS terminations for Honduras and Nicaragua. *Id*. ¶ 47. But Young's hypothesis (which reflects an analytical infirmity running throughout his report) is abundantly clear—because of this stale and unrelated email musing, Young concludes that any policy enacted by the Trump Administration to limit immigration or to hold aliens accountable for violating the immigration laws of the United States must be considered irredeemably motivated by racial animus. But such an attenuated and subjective opinion is not the stuff of admissible expert testimony. Young's opinions imputing views to President Trump, and by extension to Secretary Noem, suffers from the same analytical infirmity and is likewise inadmissible.

Even so, if the Court probes the social media posts and general media commentary made directly by Secretary Noem or DHS that are referenced in Young's Report, such evidence fails to support Young's theory that Secretary Noem's decision to terminate TPS for Honduras and Nicaragua was racially motivated. For example, Young points to comments made by Secretary Noem and President Trump "regarding immigrants from other countries," all of which are taken out of context and none of which reference Honduras or Nicaragua, as Young himself concedes. Young Report ¶ 29. Young also points to an X post made by DHS referencing a Biden-era policy of allowing illegal aliens into in the country, many

of whom went on to commit violent crimes, as evidence that Secretary Noem had race-based preconceptions which influenced her decisions. Young Report ¶ 25. In reality, the post referenced the June 23, 2025 Supreme Court ruling that allowed DHS to enforce removals of aliens with existing removal orders to third countries where removal to their home country is impracticable or unsafe. *Id*. Third-country removals are authorized under 8 U.S.C. § 1231(b), which was enacted decades prior to President Trump's second term and the TPS terminations at issue in this case, and has nothing to do with TPS determinations. Young also relies on an X post made by Secretary Noem in March 2025, which depicts a photograph of the Secretary meeting with Honduran Minister of Foreign Affairs Enrique Reina on March 18, 2025, in order "to discuss how best to work together on migration management, repatriation flights, and law enforcement information sharing." *Id*. ¶ 20. Young posits that these statements, coupled with President Trump's Executive Order "Protecting the American People Against Invasion," where he outlined a policy of prioritizing the prosecution of criminal offenses related to the illegal entry or unauthorized presence of illegal aliens in the United States, echo a "longstanding trope of conflating Honduran migrants with criminals." *Id*., ¶¶ 20, 21. That conclusion does not follow from the anodyne statements, and Young's attempt to draw a contrary conclusion reflects that his testimony is not based on reliable analysis of sufficient facts and data.

Ultimately, Young suggests that any policies in the United States immigration system which do not favor immigrants must be inherently racist. That is plainly untrue, and the Court is bound to reject that attempted inference on which Young's testimony is based. Young's self-serving framework is not based on any evidence in the record and requires far too many inferential leaps to qualify as reliable. *See Stephens*, 935 F.3d at 856–57 ("A party's own speculation is insufficient to create a genuine issue of material fact … and a party cannot make it sufficient simply by finding an expert who is willing to assume its correctness.") (citing *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). Furthermore, Young offers "no reliable methodology or basis" for his conclusory finding that Secretary Noem's

16

terminations of TPS for Honduras and Nicaragua were racially motivated. Young Report ¶ 47. His testimony on this issue should therefore be excluded as unreliable. *Lin*, at *12 (expert could not testify regarding individual's intent because she did not offer any reliable methodology or basis for her conclusory statements about the individual's general knowledge or state of mind); *see also DePaepe*, 141 F.3d at 720 (holding that even though expert could testify that reducing the amount of padding on a product would reduce the cost of production, he was precluded from opining that the company's decision to reduce padding was financially motivated, because expert lacked any specialized knowledge about the motives of the individual decision-makers); *Pac. Gas & Elec. Co.*, at *3 (limiting expert's testimony to corporate practices and policies and precluding testimony that such "evidence reflects an intent to violate the law") (internal quotations omitted).

In his report, Young fails to show any direct connection between admissible evidence and what may be best characterized as his inappropriate opining on the ultimate legal and factual questions in this case. Young's opinions about whether Secretary Noem's TPS decisions were racially motivated must be excluded since he is merely speculating about the Secretary's mindset, offering only his personal conclusions as substitutions for determinations that the Court must make based solely upon the evidentiary record. "Consistent with Rule 704(a), this court has repeatedly affirmed that 'an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.'" *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). This is because, when an expert "tell[s] the [factfinder] what result to reach, this does not *aid* the [factfinder] in making a decision, but rather attempts to substitute the expert's judgment for the[ir]s." *Id.* (citing *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)); *see* also Fed. R. Evid. 702(a), 704(a).

Finally, it bears noting that, even though the TPS terminations of Honduras, Nicaragua, and Nepal are central to this lawsuit, Young does not conclude that the Secretary's termination of TPS for Nepal was

17

also racially motivated. Young does not explain why that conclusion would *not* follow a fortiori from the non-country-specific statements he identifies as sufficient to support his other conclusions, raising further questions about the "reliable applications [of his] principles and methods of the facts of this case." Fed. R. Evid. 702.

In light of the foregoing, any testimony by Young with respect to Secretary Noem's supposed ulterior motives in terminating TPS must be excluded.

### E.    Young's Testimony Should Be Excluded Because It Is Irrelevant to Whether Secretary Noem Lawfully Exercised Her Authority to Terminate TPS for Honduras and Nicaragua

An expert's testimony is relevant when the testimony is "relevant to the task at hand, ... i.e., that it logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*") (quoting *Daubert*, 509 U.S. at 597). Relevancy requires opinions that would assist the trier of fact in reaching a conclusion necessary to the case. *See Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591.

In addressing the question of whether Secretary Noem's decisions to terminate TPS for Honduras and Nicaragua were a lawful and valid exercise of her statutory authority, the Court need only look to whether the Secretary conducted a review of the current country conditions and determined that the conditions for its TPS designation continue to be met. 8 U.S.C. § 1254a(b)(3). Accordingly, Young's testimony on this issue is only relevant if it would assist the fact finder in answering this question. *Daubert II*, 43 F.3d at 1315; *Kennedy*, 161 F.3d at 1230.

In his report, Young opines that the country conditions which gave rise to the initial TPS designation for Honduras have continued to deteriorate. Young Report ¶¶ 32-39. Young also opines that the political and security system in Nicaragua have worsened in recent years. *Id.* ¶¶ 40- 46. However, Young's testimony about the current conditions of Honduras and Nicaragua is irrelevant to the question

18

of whether Secretary Noem's TPS terminations were a lawful and valid exercise of her statutory authority under Section 1254a. *See Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1197 (9th Cir. 2014) (the relevancy bar demands that the evidence "logically advances a material aspect of the proposing party's case.") (quoting *Daubert II*, 43 F.3d at 1915). Because Young's report fails to demonstrate a "valid connection" to the "pertinent inquiry," is it irrelevant and otherwise unhelpful for the Court's review of the evidence, *Primiano*, 598 F.3d at 565, nor will it "assist a trier of fact to understand or determine a fact in issue." *Cooper*, 510 F.3d at 942; *Kennedy*, 161 F.3d at 1230. Accordingly, Young's testimony on this issue should also be excluded as irrelevant.

## V.    TARA WATSON'S AND STAN VEUGER'S EXPERT REPORT AND TESTIMONY SHOULD BE EXCLUDED

### A.    Background

Tara Watson ("Watson") is a Senior Fellow at the Brookings Institution in Economic Studies, a Research Associate at the Natural Bureau of Economic Research, and co-editor of the Journal of Human Resources. Watson Report at ¶ 3. Stan Veuger ("Veuger") is a Senior Fellow in economic policy studies at the American Enterprise Institute (AEI), the editor of AEI Economic Perspectives, and an affiliate of AEI's Center on Opportunity and Social Mobility. Watson Report at ¶ 4. They are offered as experts on the impacts of ending TPS for Hondurans, Nicaraguans, and Nepalis.

### B.    Watson and Veuger's Expert Testimony Should Be Excluded Because They Lack Specialized Knowledge Regarding The Impacts Of The TPS Terminations At Issue And Their Testimony Is Not Reliable Or Relevant

Neither Watson nor Veuger is qualified to render an expert opinion on the impacts of terminating TPS for Hondurans, Nicaraguans or Nepalis. For an expert to be properly qualified, the expert must possess specific expertise germane to the issues actually before the Court. *See Engilis v. Monsanto Co.*, 2025 WL 2315898, at *9 (9th Cir. 2025) (An expert's "specialized knowledge and expertise is of critical significance" for the district court's determination as to whether a witness is "qualified as an expert."). While Watson and Veuger refer to their "personal and professional knowledge" as the basis for their

opinions, Watson Report at ¶ 2, none of their listed qualifications, education, and experience demonstrate a "specialized knowledge" qualifying them for an expert opinion regarding the impacts of a TPS termination. *See In re GFI Com. Mortg. LLP*, 2013 WL 4647330, at *6 (N.D. Cal. Aug. 29, 2013) (noting "the Ninth Circuit has routinely upheld the disqualification of proposed experts who lack specific expertise"). Indeed, their reported academic and professional backgrounds are concentrated in economics. *See* Appendix A, B. Their opinion, however, makes sweeping analysis regarding the purported consequences of a TPS termination on several areas outside of economics, such as public health and safety, immigration and foreign policy, and national security in the United States. *See* Watson Report. While Watson and Veuger list previous written work regarding the economic impacts of immigration to the United States, Appendix A and B, none of their published work indicates a specificity to TPS holders, impacts of immigration to society beyond economics, nor anything relating to Hondurans, Nicaraguans, and Nepalis specifically. *See Chang*, 207 F.3d at 1173 (affirming the district court's exclusion of an expert on grounds that his experience was inadequate and not analogous to the issue before the court). Here, because Watson and Veuger disclose no qualifications, experience, or "specialized knowledge" that would enable them to competently opine on the impacts of the TPS termination on society wholesale, their testimony should be excluded. *See In re Canvas Specialty Inc.*, 261 B.R. 12, 19 (C.D.Cal.2001) ("It is not enough that the proposed expert have expertise in an area of knowledge. The expertise must be relevant to the determination of the facts in issue.").

Additionally, Watson's and Veuger's testimony should be excluded because it is unreliable. *Daubert*, 509 U.S. at 579. Indeed, the Ninth Circuit has found speculative testimony to be "inherently unreliable." *Oiler v. Sweetwater Union High Sch. Dist.,* 768 F.3d 843, 861 (9th Cir. 2014); *see also Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (finding that Rule 702 is not met by "unsupported speculation or subjective beliefs"). Here, in an attempt to rectify their lack of expertise in the issues at hand, Watson and Veuger offer several conclusory and irrelevant statements that

appear to be rooted in their subjective belief that they could do the job better than Secretary Noem. *See* Watson Report. But they are not the duly appointed officials tasked with making the policy decisions they critique, and their views are irrelevant to this Court's analysis. For example, they opine that terminating TPS will "likely divert from other enforcement priorities," *id*. at ¶ 17 and 20, assert that the terminations are contrary to the Administration's "stated goal," *id*. at ¶ 19, however, they fail to cite to any evidence supporting these statements, or their basis for deciding just what the Administrations priorities are. They also fail to cite to any evidence endorsing their speculative and conclusory claim that terminating TPS wouldn't "lower crime rates." *Id*. at ¶ 17. Instead, Watson and Veuger drag in selective and sporadic articles to bolster their irrelevant conclusions and subjective beliefs. But an expert opinion should not be "connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). And testimony that amounts to "unreliable ipse dixit guesswork," i.e., is based on "unsupported speculation and subjective beliefs," may be excluded. *Domingo ex rel. Domingo v. T.K.,* 289 F.3d 600, 607 (9th Cir. 2002); *see also Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2019 WL 1369007, at *7 (S.D. Cal. Mar. 26, 2019) (noting that reliability requires more than "taking the expert's word for it.") (quoting *Daubert II*, 43 F.3d at 1319). Therefore, because Watson and Veuger lack the specialized knowledge to render an expert opinion on the impacts of terminating TPS, and because they base their opinion on unsupported speculations and subjective beliefs, their testimony is inadmissible under Rule 702(a)

Further "[c]ourts routinely exclude as impermissible expert testimony as to intent, motive or state of mind." *Gold v. Lumber Liquidators, Inc.,* 323 F.R.D. 280, 294 (N.D. Cal. 2017). That is because "[e]xpert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case. "[The Court] is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the [trier of fact] and would not be helpful." *Oracle*

*America, Inc. v. Hewlett Packard Enter. Co*., 2018 Wl 6511146 *3 (N.D. Cal. Dec. 11, 2018); see *also Victory Dollar Inc. v. Travelers Cas. Ins. Co. of Am.*, 2023 WL 9003011, at *3 (C.D. Cal. Dec. 7, 2023) (Scarsi, J.) ("the Court will not allow any witness to offer ... speculation about another person's state of mind").  Here, despite lacking any expertise regarding TPS and specifically TPS holders from Honduras, Nicaragua, and Nepal, Watson and Veuger make several statements referring to the potential state of mind of the TPS population. *See* Watson Report at ¶ 19 (asserting that "TPS holders will be disinclined to return to the country they fled…"); *see also* Report at ¶ 21 ("A reasonable migrant would not believe that a TPS designation for a new Honduran, Nepalese, or Nicaraguan immigrants is likely to be issued under this administration."). However, these conclusions improperly opine on the state of mind of TPS holders by drawing on inferences already within the Court's capability – particularly as Plaintiffs' counsel has already demonstrated their skill at getting declarations from TPS beneficiaries. *Benefit Cosmetics LLC v. e.l.f Cosmetics, Inc.*, 2024 WL 3558848, at *3 (N.D. Cal. July 25, 2024) ("Testimony does not aid the trier of fact where an expert merely spouts an opinion ascertainable by a layperson "without adding some layer of expertise."). Here, to allow the veneer of "expert opinion," offered by Watson and Veuger in order to proffer evidence that has not been properly admitted and cannot be tested would be improper.

Finally, "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. Throughout their opinion, Watson and Veuger speculate about the impacts that terminating TPS for Honduras, Nepal, and Nicaragua will have on the U.S. public health, safety, immigration, foreign policy, national security, and the economy.  But nothing within this testimony informs any issue within this case, specifically whether the Secretary's terminations were a lawful and valid exercise of her statutory authority under Section 1254a. Nor do Plaintiffs demonstrate why the Watson and Veuger's views on these fundamental Executive functions have any bearing here, as neither Watson or Veuger hold any position responsible for making these policy decisions for the government. Quite simply, these academic musings are not a relevant basis for setting aside the discretionary

1    determinations of a duly appointed Secretary of Homeland Security. *See Messick*, 747 F.3d at 1197

2    (*quoting Daubert II*, 43 F.3d at 1915). Because Watson's and Veuger's report fails to demonstrate a "valid

3    connection" to the "pertinent inquiry," is it irrelevant and otherwise unhelpful for the Court's review of

4    the evidence. *Primiano*, 598 F.3d at 565.

5    **VI.    TOM WONG'S EXPERT REPORT AND TESTIMONY SHOULD BE EXCLUDED**

6        **A.    Background**

7        Tom Wong ("Wong") is an Associate Professor of Political Science and Founding Director of the

8    U.S. Immigration Policy Center ("USIPC") at the University of California, San Diego ("UCSD"). He is

9    offered as an expert to assess the economic and familial ties that TPS holders from Honduras, Nicaragua,

10   and Nepal have with the United States.

11       **B.    Wong's Testimony Is Irrelevant And Unhelpful To The Court**

12       TPS is a country-based designation, not an individual-based one. An expert report on the individual

13   economic and family ties of TPS holders in the United States is not relevant to the decision by Secretary

14   Noem to terminate TPS designations because the governing law focuses on the country conditions in the

15   designated country. *See* 8 U.S.C. §1254a(b)(1). Effects in the United States of a TPS designation are

16   relevant only to the extent they inform a national-interest determination, 8 U.S.C. § 1254a(b)(1)(C), but

17   that decisions is plainly unreviewable. 8 U.S.C. § 1254a(b)(5)(A). An expert's testimony is relevant when

18   the testimony is "relevant to the task at hand, ... i.e., that it logically advances a material aspect of the

19   proposing party's case." *Daubert II*, 43 F.3d at 1315 (9th Cir. 1995) (quoting *Daubert*, 509 U.S. at 597).

20   Relevancy requires opinions that would assist the trier of fact in reaching a conclusion necessary to the

21   case. *See Kennedy*, 161 F.3d at 1230. Here, Wong does not address any conditions whatsoever in

22   Honduras, Nepal or Nicaragua. What's more, even if the number of individuals affected by the Secretary's

23   determinations were a relevant fact, the evidence in the record and also publicly available amply

24   establishes these facts, such that his report is needlessly cumulative.

## VII.   DANA FRANK'S EXPERT REPORT AND TESTIMONY SHOULD BE EXCLUDED

### A.   Background

Dana Frank ("Frank") is a Research Professor and Professor of History Emerita at the University of California, Santa Cruz. Frank Report at ¶ 1. He is offered as an expert on the impact of terminating TPS for Hondurans.

### B.   Frank's Testimony Should Be Excluded Because It Is Irrelevant To Whether Secretary Noem's Termination Was Lawful

Here, Frank's expert testimony is inadmissible under Rule 702 because it is irrelevant. "Expert testimony which does not relate to any issue in the case is not relevant." *Daubert*, 509 U.S. at 591. As stated prior, this case turns on whether Secretary Noem's 2025 decision to terminate TPS was lawful and a valid exercise of her statutory authority. Most of Frank's testimony focuses on events that occurred in Honduras long before Secretary Noem's 2025 decision, such as the 2009 military coup and hurricanes in 1998, 2004, and 2020. Frank Report at ¶¶ 16–19, 25–27. Regardless, Frank's report does little more than attempt to substitute her own opinion about why the TPS designation for Honduras should not be terminated for Secretary Noem's informed judgment, in consultation with relevant agencies, to terminate the designation. An expert witness's opinions should "help the trier of fact to understand the evidence or to determine a fact in issue[,]" not present opinions that are largely irrelevant to the legal issue the Court must decide. Fed. R. Evid. 702. Consequently, Frank's testimony should be dismissed as it will not "assist a trier of fact to understand or determine a fact in issue" in this matter. *Cooper*, 510 F.3d at 942.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court exclude the expert reports and testimony of all seven of Plaintiffs' experts, because such testimony does not meet the threshold admissibility standard under Federal Rule 702 and *Daubert*.

Dated: October 14, 2025

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

WILLIAM H. WEILAND
Acting Assistant Director

ERIC SNYDERMAN
CATHERINE ROSS
JEFFREY HARTMAN
DANIEL CAPPELLETTI
SHELBY WADE
LORI MACKENZIE
ILANA KRAMER
Trial Attorneys

*/s/ Lauren E. Bryant*
LAUREN E. BRYANT
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-0134
Lauren.e.bryant@usdoj.gov

*Attorneys for Defendants*

25

**CERTIFICATE OF SERVICE**

I, Lauren E. Bryant, a Trial Attorney with the United States Department of Justice, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

Dated: October 14, 2025

Respectfully submitted,

*/s/ Lauren E. Bryant*
LAUREN E. BRYANT
Trial Attorney
Office of Immigration Litigation
General Litigation and Appeals Section
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, D.C., 20044

*Attorneys for Defendant*

1