Exhibit 52

| | |
|---|---|
| 1 | Alycia A. Degen (SBN 211350) |
| | adegen@sidley.com |
| 2 | Sean A. Commons (SBN 217603) |
| | scommons@sidley.com |
| 3 | SIDLEY AUSTIN LLP |
| | 555 West Fifth Street |
| 4 | Los Angeles, CA 90013 |
| | Telephone: +1 213 896 6010 |
| 5 | Facsimile: +1 213 896 6600 |
| 6 | Ahilan T. Arulanantham (SBN 237841) |
| | aarulanantham@aclusocal.org |
| 7 | ACLU FOUNDATION |
| | OF SOUTHERN CALIFORNIA |
| 8 | 1313 West 8th Street |
| | Los Angeles, CA 90017 |
| 9 | Telephone: +1 213 977 5211 |
| | Fax: +1 213 977 5297 |
| 10 | |
| 11 | Jessica Karp Bansal (SBN 277347) |
| | jbansal@ndlon.org |
| | Emilou MacLean (SBN 319071) |
| 12 | emi@ndlon.org |
| | NATIONAL DAY LABORER |
| 13 | ORGANIZING NETWORK |
| | 674 S. La Fayette Park Place |
| 14 | Los Angeles, CA 90057 |
| | Telephone: +1 213 380 2214 |
| 15 | Fax: +1 213 380 2787 |
| 16 | Attorneys for Plaintiffs |
| | [*Additional Counsel Listed on Next Page*] |
| 17 | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| CRISTA RAMOS, *et al.*, | Case No. 3:18-cv-1554-EMC |
| Plaintiffs, | **DECLARATION OF LEON RODRIGUEZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| KIRSTJEN NIELSEN, *et al.*, | Date: September 25, 2018 |
| Defendants. | Time: 10:30 a.m. |
| | Judge: Hon. Edward M. Chen |
| | Dept: Courtroom 5, 17th Floor |
| | Complaint Filed: March 12, 2018 |
| | Trial Date: None set |

DECLARATION OF LEON RODRIGUEZ – CASE NO. 3:18-cv-1554-EMC

*Additional Counsel for Plaintiffs*

William S. Freeman (SBN 82002)
wfreeman@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, California 94111
Telephone: +1 415 621 2493
Fax: +1 415 863 7832

Mark E. Haddad (SBN 205945)
markhadd@usc.edu
Part-time Lecturer in Law
USC Gould School of Law*
University of Southern California
699 Exposition Boulevard
Los Angeles, CA 90089-0071
Telephone: +1 213 675 5957

Nicole M. Ryan (SBN 175980)
nicole.ryan@sidley.com
Ryan M. Sandrock (SBN 251781)
rsandrock@sidley.com
SIDLEY AUSTIN LLP
555 California Street
Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1219
Facsimile: +1 415 772 7400

Amanda Farfel (SBN 288126)
afarfel@sidley.com
Andrew B. Talai (SBN 300053)
atalai@sidley.com
Marisol Ramirez (SBN 307069)
marisol.ramirez@sidley.com
Mohindra Rupram (SBN 319478)
mrupram@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

Katelyn N. Rowe (SBN 318386)
krowe@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA  90067
Telephone: +1 310 595 9598
Facsimile: +1 310 595 9501

DECLARATION OF LEON RODRIGUEZ – CASE NO. 3:18-cv-1554-EMC

Jessica Fishfeld (*Pro Hac Vice*)
jfishfeld@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
Telephone: +1 312 853 2031
Facsimile: +1 312 853 7036

\* *Institution listed for identification purposes only*

1  I, Leon Rodriguez, hereby declare:

2  I make this declaration based on my own personal knowledge. If called to testify, I could and would do so as follows:

3  1. I served as the Director of United States Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security ("DHS"), from July 2014 to January 2017.

4  2. Prior to serving as USCIS Director, I served as the Director of the Office for Civil Rights at the Department of Health and Human Services from 2011 to 2014. From 2010 to 2011, I served as Chief of Staff and Deputy Assistant Attorney General for Civil Rights at the Department of Justice (DOJ).

5  3. From 2007 to 2010, I was County Attorney for Montgomery County, Maryland. I was a principal at Ober, Kaler, Grimes & Shriver in Washington, D.C. from 2001 to 2007. I served in the United States Attorney's Office for the Western District of Pennsylvania from 1997 to 2001, first as Chief of the White Collar Crimes Section from 1998 to 1999 and then as First Assistant U.S. Attorney until my departure. Before joining the U.S. Attorney's Office, I was a trial attorney in the Civil Rights Division at DOJ from 1994 to 1997 and a senior assistant district attorney at the Kings County District Attorney's Office in New York from 1988 to 1994.

6  4. I received a B.A. from Brown University and a J.D. from Boston College Law School. I am admitted to the bars of New York, Maryland and the District of Columbia.

7  5. During my tenure as USCIS Director, DHS conducted over a dozen periodic reviews of foreign states that had previously been designated for temporary protected status pursuant to 8 U.S.C. § 1254a(b)(3). As Director of USCIS, during each periodic review, I was responsible for making a recommendation to the Secretary of Homeland Security regarding whether the conditions for temporary protected status ("TPS") designation under 8 U.S.C. § 1254a continued to be met.

8  6. The periodic review process operated as described in paragraphs 7-17 below. This process predated my tenure and I did not initiate any material changes to it.

9  7. Under the TPS statute, the DHS Secretary must decide whether the conditions for a country's TPS designation continue to be met at least 60 days before the designation is set to expire.

1

DECLARATION OF LEON RODRIGUEZ – CASE NO. 3:18-cv-1554-EMC

The periodic review process began well before this 60-day deadline in order to allow for meaningful, orderly consultation within the agency and with other agencies and to ensure that TPS holders and other stakeholders would receive notice of the decision well ahead of the expiration date.

8. Career civil servants at the International and Humanitarian Affairs Division of the USCIS Office of Policy & Strategy ("OP&S") initiated the periodic review process and were largely responsible for driving it forward.

9. At the beginning of the review process, the OP&S International and Humanitarian Affairs Division solicited a memorandum on the country conditions of the TPS-designated country from the USCIS Refugee, Asylum, and International Operations ("RAIO") Directorate. The RAIO country conditions memo, along with input from the State Department, provided the factual basis for USCIS's review and recommendation to the DHS Secretary.

10. The OP&S International and Humanitarian Affairs Division also sought a recommendation from the State Department. This typically came in the form of a written letter from the Secretary of State, with the State Department's country conditions reports included as attachments. The letter was provided sufficiently in advance of USCIS's recommendation to the DHS Secretary that USCIS could take the State Department analysis into account in crafting our recommendation.

11. Within both USCIS and the State Department, a separate review process was conducted for each country at issue. Generally, each country was considered individually. The only exceptions to this that I recall were Sudan and South Sudan, which have sometimes been considered jointly because at the time of designation they were the same country; and Guinea, Liberia, and Sierra Leone, which were jointly designated for TPS in 2014 on account of the Ebola epidemic. All other countries were considered on an individual basis because their designation was based on different events; they were on different cycles; and their country conditions varied.

12. Based primarily on the RAIO country conditions memorandum and input from the State Department, OP&S prepared a draft "Decision Memorandum" (or "Decision Memo"). The Decision Memo provided USCIS's recommendation to the DHS Secretary as to whether a country's designation should be extended or terminated, or whether a country should be re-designated for TPS.

The Decision Memo also described relevant country conditions and provided an explanation for USCIS's recommendation.

13. At the same time that I received a draft Decision Memo from OP&S for my review, I also received a draft Federal Register Notice corresponding to the proposed recommendation. This allowed for the Federal Register Notice to be finalized and published almost immediately after the DHS Secretary made his decision.

14. As Director, I was responsible for approving the final Decision Memo, signing it, and sending it to the DHS Secretary to make a final decision. I typically provided the Decision Memo and the draft Federal Register Notice to the DHS Secretary simultaneously, accompanied by the RAIO country conditions memorandum and the State Department recommendation and country conditions reports. After I provided the Decision Memo to the DHS Secretary, the DHS Secretary would sometimes call a meeting to discuss the recommendation. I would attend the meeting with the career staff of the OP&S International and Humanitarian Affairs Division, who were largely responsible for responding to questions that arose in the review process.

15. The Decision Memo and the Federal Register Notice were subject to an internal clearance process that ensured proper consultation between agency entities. This process was important to ensure that all stakeholders with equity in the decision had an opportunity to provide input into the process.

16. During my tenure, both Country Conditions Memos and Decision Memos consistently included a wide range of country conditions information. Neither was limited to conditions related to the original reason for a country's TPS designation. To the contrary, both the Country Conditions Memo and the Decision Memo provided a comprehensive picture of current country conditions without regard to whether those conditions were related to the originating condition or to the country's recovery from the originating condition.

17. In making a recommendation to the DHS Secretary regarding extension or termination of TPS, agency policy did not preclude USCIS's consideration of the full range of current country conditions. Rather, USCIS had broad discretion to consider current conditions in the subject country. Intervening factors arising after a country's original TPS designation, such as subsequent natural

disasters, issues of governance, housing, health care, poverty, crime, general security, and other humanitarian considerations were considered relevant to determining whether a country continued to meet the conditions for continuing TPS designation. This was true regardless of whether those intervening factors had any connection to the event that formed the basis for the original designation or to the country's recovery from that originating event.

18.  The agency policy described herein with respect to USCIS's broad discretion to base recommendations regarding TPS extensions or terminations on current country conditions, regardless of their connection to the original basis for designation, was not a new policy under my time as USCIS Director. Rather, like the process outlined above, I kept in place the same policy that had been carried out by career staff under previous USCIS Directors and DHS Secretaries.

I declare under penalty of perjury that the foregoing is true and correct.

Executed August 20, 2018 in the District of Columbia.

_____
Leon Rodriguez