UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL TPS ALLIANCE, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>KRISTI NOEM, et al.,<br><br>    Defendants. | Case No. 25-cv-05687-TLT   (SK)<br><br>**ORDER ON WITHHELD DOCUMENTS BASED ON PRIVILEGE**<br><br>Regarding Docket No. 129 |

Now before the Court is the parties' dispute regarding whether Defendants properly withheld or redacted documents based on the attorney-client privilege and/or the deliberate process privilege.[1] This is not the first time the Undersigned has reviewed documents *in camera* to address the parties' disputes over Defendants' claimed privileges. Unfortunately, Defendants do not seem to have considered the Undersigned's prior Orders in this case and in *National TPS Alliance v. Noem*, No. 25-cv-01766-EMC. For example, Defendants continue to claim documents dated after Department of Homeland Security ("DHS") Secretary Kristi Noem's decisions to deprive Temporary Protected Status ("TPS") holders from Honduras, Nepal, and Nicaragua were made or that do not contain any opinions, recommendations, or advice. In the future, Defendants are admonished to consider the Undersigned's prior rulings when determining whether to assert the attorney-client or the deliberate process privileges. The Court has reviewed the documents submitted *in camera* and HEREBY ORDERS as follows:

**A.   Deliberative Process Privilege.**

The deliberative process privilege is a qualified privilege under federal law. *FTC v.*

---

[1] In the privilege log for attorney-client privilege, Defendants also include documents that they only designated as protected by the deliberative process privilege and not the attorney-client privilege. Defendant did not provide a copy of these documents to the Court. These documents include the following: NTPSA2_00001329, NTPSA2_00001800, NTPSA2_00001924, NTPSA2_00002452, NTPSA2_00002839, and NTPSA2_00002998.

*Warner Comm'n, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam).  To qualify for the privilege, a document "must be predecisional – it must have been generated before the adoption of an agency's policy or decision." *Id*.  In addition, a document must be "deliberative in nature, containing opinions, recommendations, or advice about agency policies" rather than "purely factual material." *Id*.  However, even the deliberative process privilege applies, it is not absolute. *Id*.  "A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.*  In determining whether the need for deliberative materials outweighs the Government's interest in non-disclosure, courts consider four factors identified in *Warner*: "(1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id*.

Defendants assert that some of these documents designated as protected by the deliberative process privilege are also protected by the attorney-client privilege.  The Undersigned will address the attorney-client privilege separately below.

### 1. Documents That Are Not Predecisional.

Documents before the Court indicate that Defendant Secretary of Homeland Security Kristi Noem made the decision to terminate the Temporary Protected Status ("TPS") designation for Honduras and Nicaragua on May 5, 2025.  (NTPSA2_00001014, NTPSA2_00001017.)[2]  Another unredacted portion of a document states that the statutory deadline for the Secretary's decision was April 25, 2025 for Nepal and was May 6, 2025 for Honduras and Nicaragua. (NTPSA2_00000388-007.)[3]  Documents that post-date these decision dates do not qualify as predecisional and, therefore, may not be withheld under the deliberative process privilege.  These documents include NTPSA2_00000545, NTPSA2_0000861, NTPSA2_0000884, NTPSA2_0000907, NTPSA2_0000930, NTPSA2_00001014, NTPSA2_00001017,

---

[2] As discussed below, the portions of these documents containing this information are not protected by the deliberative process or attorney-client privileges.

[3] As discussed below, the portion of this document containing this information is not protected by the deliberative process or attorney-client privileges.

NTPSA2_00001034, NTPSA2_00001138, and NTPSA2_00001152.

**2.    Documents That Are Not Deliberative.**

Defendants also claim the deliberative process privilege for documents that do not contain any deliberation, meaning the documents do not contain any opinions, recommendations, or advice about agency policies, as opposed to purely factual material. Those documents may not be withheld under the deliberative process privilege. These documents include NTPSA2_00000255, NTPSA2_0000385, NTPSA2_0000388, NTPSA2_0000391, NTPSA2_0000393, NTPSA2_00000545, NTPSA2_00000968, NTPSA2_00001034, NTPSA2_00001138, NTPSA2_00001143, NTPSA2_00001152, NTPSA2_00001530, NTPSA2_00001625, NTPSA2_00001802, NTPSA2_00002053, NTPSA2_00002248, NTPSA2_00002280, NTPSA2_00002361, NTPSA2_00002400, NTPSA2_00002721, NTPSA2_00002888; NTPSA2_00003001, and NTPSA2_00003069.

**3.    Documents That Are Both Deliberative and Predecisional.**

However, there are a few documents that predate the Secretary's decision and contain some deliberative material. NTPSA2_00003046 contains a draft letter from Secretary of State Marco Rubio to Secretary Noem at starting at NTPSA2_00003052 and ending on NTPSA2_00003053 that qualifies as predecisional and deliberative. However, the remainder of the redacted portions of this document are not deliberative. The draft letters from Secretary Rubio to Secretary Noem also appear in NTPSA2_00003055, NTPSA2_00003057, and NTPSA2_00003087. NTPSA2_00000826 and NTPSA2_00001931 are draft Nepal TPS decision memos for Secretary Noem. Therefore, the Court will address whether Plaintiffs' need for these materials and the need for accurate fact-finding overrides the government's interest in non-disclosure under the *Warner* factors. *Warner*, 742 F.2d at 1161.

**i.    Relevance.**

First, the withheld documents are relevant to Plaintiffs' allegations of discriminatory motivations for the TPS designations. Plaintiffs contend that Defendants provided one reason for the TPS designations but actually relied upon other invalid reasons for those decisions. To determine if Plaintiffs are correct, the decision-maker will need to examine Defendants'

deliberative process.

In considering the relevance of the evidence, courts may also consider the seriousness of the issues and litigation, the presence of issues concerning alleged misconduct by the government, the interest of the litigant and society in accurate fact finding by the courts, and the federal interest in enforcement of the law. *North Pacifica LLC v. City of Pacifica*, 274 F.Supp.2d 1118, (N.D. Cal. 2003) (internal citation omitted). Those considerations also weigh heavily in support of Plaintiffs. The issues at stake in this litigation could not be more serious – the immigration status, livelihoods, and security of thousands of individuals who have rebuilt their lives in the United States after fleeing humanitarian crises. Governmental conduct is squarely at issue here, where Plaintiffs have credibly alleged that racial and national-origin animus led to the decisions at issue. Consequently, society has a strong interest in accurate fact finding where the propriety of government decision making is at issue.

   **ii.**  **Availability of Other Evidence and Government's Role in Litigation.**

There can be no dispute that the second and third factors favor Plaintiffs. "The evidence sought is primarily, if not exclusively, under Defendants' control, and the government – the Executive – is a party to and the focus of the litigation." *See Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019) (per curiam).

   **iii.**  **Extent to Which Disclosure Would Hinder Future Discussions.**

As for the fourth factor – the potential chilling effect on frank government deliberations – "the disclosure of some types of documents will be less likely to cause embarrassment or chilling than others." *Desert Survivors v. US Dep't of the Interior*, 231 F. Supp. 3d 368, 385 (N.D. Cal. 2017). The disclosure of these "preliminary drafts" is "not likely to chill speech," because "these are relatively polished drafts, and the recreation of the decisionmaking process should in no way embarrass the agencies." *Id.* (citation omitted). Moreover, Defendants' arguments in support of nondisclosure are particularly weak. Defendants have not explained specifically how disclosure of the documents in question "would cause embarrassment on the part of the author or give rise to confusion on the part of the public." *Desert Survivors v. US Dep't of the Interior*, 2017 WL 1549373, at \*7 (N.D. Cal. May 1, 2017). Instead, Defendants' statements are general in nature.

1  The only specific argument that Defendants make is that the issue in this case is the subject of
2  public controversy.  Again, this argument could apply to any situation in which a party seeks
3  documents otherwise protected by the deliberative process privilege, and that the subject matter is
4  controversial shows that the information is serious and relevant, as discussed in the analysis of
5  factor one above.
6        As the Undersigned previously noted when addressing this issue in *National TPS Alliance*
7  *v. Noem*, No. 25-cv-01766-EMC, Defendants raised the same deliberative process argument in
8  *Ramos et al. v. Nielsen et al.*, No. 18-cv-01554-EMC, in connection with materials related to TPS
9  designations during the first Trump administration.  (*Ramos et al v. Nielsen et al*, No. 18-cv-
10 01554-EMC, Dkt. Nos. 61, 62, 73.)  In that case, Defendants contended that disclosure would chill
11 internal preparation for meetings and congressional hearings.  (*Id.* at Dkt. No. 73.)  Both the
12 Undersigned and the District Court rejected that argument.  (*Id.* at Dkt. Nos. 63, 79, 84.)  As a
13 result, "[t]he government produced thousands of documents, including a significant number of
14 drafts, emails, and other deliberative materials."  *Ramos v. Wolf*, 975 F.3d 872, 884 (9th Cir.
15 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023).  The Undersigned
16 also required deliberative materials disclosed in *National TPS Alliance v. Noem*, No. 25-cv-01766-
17 EMC.  (*Id*. at Dkt. No. 184.)  There is no indication that these disclosures had any chilling effect
18 on future deliberations.  To the contrary, the existence of deliberative materials in the present case
19 suggests that the prior disclosures did not materially inhibit the government's ability to engage in
20 candid internal discussions.
21         **iv.    Balancing of Factors.**
22       Defendants do not provide any analysis for balancing the factors and do not explain why
23 the Plaintiffs' need for the materials and the need for accurate fact-finding should not override
24 Defendants' interest in non-disclosure.  In light of the Undersigned's previous orders requiring the
25 disclosure of similar materials, Defendants failure to make this showing is particularly glaring.
26 Nor do Defendants do not address the Court's prior determinations and, thus, make no effort to
27 show how the documents currently before the Court for *in camera* review differ from those
28 documents the Undersigned previously ordered disclosed.

5

1    Again, the Court finds that the balance strongly tips in favor of Plaintiffs. Plaintiffs cannot obtain this evidence in any other manner, and their arguments have support in evidence. Their need for this evidence on this important topic outweighs the potential chilling effect on future discussions. Thus, shielding these documents from disclosure under the deliberative process privilege is not warranted.

**B.      Attorney-Client Privilege.**

A party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship and the privileged nature of the communication." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). "The attorney-client privilege extends only to communications made for the purpose of facilitating the rendition of professional legal services." *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021) (citation and internal quotation marks omitted).

Courts in the Ninth Circuit apply an eight-part test to determine whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Ruehle*, 583 F.3d at 607 (citation omitted).

Where an attorney's communications involve both policy and legal advice, the Ninth Circuit applies the primary-purpose test. *In re Grand Jury*, 23 F.4th at 1092. "Under the primary-purpose test, courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or other non-legal advice." *Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (citation and internal quotation marks omitted, cleaned up). Forward-looking involvement of counsel for the purpose of preparing for or avoiding anticipated litigation is "a classic function of legal advice." *Id.* at 1224-26.

The vast majority of the documents that Defendants claim are protected by the attorney-client privilege do not actually contain any communications made for the purpose of facilitating the rendition of professional legal services or reference any legal recommendations. However,

6

there are limited portions of some of the documents that do. The Court Orders that following portions may be withheld on the basis of the attorney-client privilege:

1. The portion of the sentence after "There is ongoing litigation re TPS for Cameroon on NTPSA2_00000256;
2. The portion in the status column of item 8 after "OGC passback early in the week of 9/30/24" until "On 10/17/24" on NTPSA2_00000385-003;
3. The portion of NTPSA2_00000388 at NTPSA2_00000388-003 in item 8 in the Rule Name column after 1615-AC93 and at NTPSA2_00000388-008 in item 2 in the status column dated April 28, 2025 after "USCIS sent a clean version of the petition response per OGC's request";
4. The following portions of NTPSA2_00000391: the first and last sentence in item 8 after 1615-SC93 on NTPSA2_00000391-003 and in item 2 in the status column dated April 28, 2025 after "USCIS sent a clean version of the petition response per OGC's request" on NTPSA2_00000391-008;
5. The portion of NTPSA2_00000393 on NTPSA2_00000393-00 in item 2 in the status column dated April 28, 2025 under "USCIS sent a clean version of the petition response per OGC's request";
6. The question in the comment of NTPSA2_00000826-002 from RL2;
7. The two sentences on NTPSA2_00001014-003 in the Recommendation section;
8. The two sentences on NTPSA2_00001017-003 in the Recommendation section; and
9. The sentence after OGC/Chief Counsel Coordination on NTPSA2_00001143 and NTPSA2_00003001.

The remainder of the documents or portions of documents may not be withheld on the basis of attorney-client privilege and shall be produced to Plaintiffs.

**C.      Law Enforcement Privilege.**

Defendants also contend that six documents are also protected by the law enforcement privilege. Upon review of those documents, the Court finds that the following portions may be

1  withheld under the law enforcement privilege:

2  The four bullet points under INTELLIGENCE INITIATIVES on NTPSA2_00000558, the
first bullet point under Current Operations on NTPSA2_00000560, the bullet points under DHS will on NTPSA2_00000588, the bullet points under Personnel and Interagency Coordination on NTPSA2_00000595, the numbers of teams and personnel on NTPSA2_00000596 through NTPSA2_00000598, page NTPSA2_00000602, the Trade Update on NTPSA2_00000862, NTPSA2_00000885, NTPSA2_00000908, and NTPSA2_00000932, and the bullets under Positive Updates on NTPSA2_00000867, NTPSA2_00000892, NTPSA2_00000913, and NTPSA2_00000936.  The Court finds that the remainder of those documents are not law enforcement sensitive.

**IT IS SO ORDERED**.

Dated: October 16, 2025

_Sallie Kim_
SALLIE KIM
United States Magistrate Judge