1  BRETT A. SHUMATE
   Assistant Attorney General
2  Civil Division
   YAAKOV M. ROTH
3  Principal Deputy Assistant Attorney General
   WILLIAM H. WEILAND
4  Acting Assistant Director
   ERIC SNYDERMAN
5  LAUREN BRYANT
   CATHERINE ROSS
6  JEFFREY HARTMAN
   DANIEL CAPPELLETTI
7  SHELBY WADE
   LORI MACKENZIE
8  ILANA KRAMER
   Trial Attorneys
9  U.S. Department of Justice, Civil Division
   Office of Immigration Litigation
10 General Litigation and Appeals Section
   P.O. Box 868, Ben Franklin Station
11 Washington, D.C. 20044

12 Attorneys for Defendants

13                  UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                    SAN FRANCISCO DIVISION

16 NATIONAL TPS ALLIANCE, *et al.*,
                                          Case No. 3:25-cv-5687
17              Plaintiffs,
          v.
18 KRISTI NOEM, in her official capacity    **DEFENDANTS' SUPPLEMENTAL RESPONSE**
   as Secretary of Homeland Security, *et al.*,  **TO ORDER DENYING EMERGENCY MOTION**
19                                         **FOR    RELIEF    FROM    NONDISPOSITIVE**
                Defendants.                **ORDER OF MAGISTRATE JUDGE (ECF NO.**
20                                         **160)**

21                                         Judge: Hon. Trina L. Thompson

22

23

24

## INTRODUCTION

Pursuant to this Court's Order Denying Defendants' Emergency Motion for Relief form Nondispositive Order of Magistrate Judge (ECF No. 160), Defendants, Kristi Noem, Secretary of Homeland Security ("DHS"), *et al*., hereby submit this additional briefing on their objections to the Court's Order on Withheld Documents Based on Privilege (ECF No. 155), and in support of their privilege invocations.

## STANDARD

Pursuant to 28 U.S.C. § 636(b)(1)(A), "a judge may designate a magistrate to hear and determine any pretrial matter pending before the court [with limited exceptions.]" After the magistrate makes a determination on the pretrial matter, a judge "may reconsider any pretrial matter… where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801, 804 (9th Cir. 2022) ("When a magistrate judge rules on a non-dispositive matter, a district judge may reconsider that ruling only if it is clearly erroneous or contrary to law."). In evaluating an order under the "clearly erroneous or contrary to law" standard, a Court "does not consider whether it may have 'weighed differently the various interests and equities,' but instead only whether the order is contrary to the law." *Cordova v. Lake Cty*, 2024 WL 54695, *1 (N.D. Cal. Jan. 4, 2024) (quoting *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004). "A finding of fact may be set aside as clearly erroneous only if the court has 'a definite and firm conviction that a mistake has been committed.'" *Tilei v. California Dep't of Corrections and Rehabilitation*, 2017 WL 5068637, *2 (N.D. Cal. Nov. 3, 2017) (quoting *Burdick v. C.I.R.*, 979 F.2d 1369, 1370 (9th Cir. 1992)). However, the "magistrate's legal conclusions are reviewed de novo to determine whether they are contrary to law." *Tilei*, 2017 WL 5068637, at *2 (citing *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348

**ARGUMENT**

**I.    The Court Erred in Ordering Production of Documents Withheld Under the Deliberative Process Privilege for Matters Unrelated to TPS**

Defendants have sought relief from the Magistrate Judge's wholesale piercing of the Deliberative Process Privilege ("DPP"), specifically as it applies to predecisional and deliberative material related to matters other than Temporary Protected Status ("TPS"), and have provided to the Court for *in camera* review a subset of documents being withheld as DPP completely irrelevant to TPS as exemplars.

Plaintiffs first argue that Defendants should not be able to redact portions of documents simply because they are irrelevant. ECF No. 163 at 6-7. But that has never been the issue. Rather, Defendants maintain that the Court erred in ordering production of material that is predecisional and deliberative, and therefore subject to the DPP, with respect to matters outside of TPS. ECF No. 159 at 4. The Magistrate Judge erred by concluding that no content in documents that post-dated the TPS decisions at-issue in this case could possibly be protected by the privilege, ECF No. 155 at 2, as the TPS decision dates pertain only the privilege assertions related to TPS, and not to invocations pertaining to other irrelevant policies also under concurrent deliberation at the agency. Indeed, by so holding, the Court acknowledged that the DPP assertions at issue are those *involving TPS*.

As such, the balancing test laid out in *Warner Comm'n, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam) does not support disclosure, and the Court's analysis did not take into account Defendants' non-TPS DPP assertions. The Court's analysis of the first factor alone, "Relevance," makes this abundantly clear. The Court's finding that "the withheld documents are relevant to Plaintiffs' allegations of discriminatory motivations for the TPS designations" is obviously inapplicable to material having *nothing* to do with TPS. ECF No. 155 at 3. For example, NTPSA2_00000861, which is the "Secretary's cabinet meeting briefing book with, among various other items, discussions among DHS headquarter offices and components about pre-decisional, deliberative Department-wide and Component-specific

1  proposed policies and updates unrelated to TPS," ECF No. 139-1, Declaration of Rory Burke, at 7, is

2  irrelevant to Plaintiffs' allegations of discriminatory motivations for the TPS designations. The same

3  applies, for example, to draft decision memoranda relating to the Committee on Foreign Investment in the

4  United States ("CFIUS") (*see e.g.*, NTPSA2_00001156); draft memorandum of cooperation between the

5  United States and another country (*see e.g.*, NTPSA2_00001159); and emails discussing the CHNV

6  program (*see e.g.*, NTPSA2_00001153) as described by the DHS Acting Assistant Secretary for Border

7  Security & Immigration Policy in his October 7, 2025, declaration to the Court. *Id.* None of that material

8  has any relationship to TPS at all, and balancing analysis should result in non-disclosure after the first

9  *Warner* factor. Examples of similarly irrelevant DPP material have been provided to this Court for *in*

10  *camera* review. *See, e.g.*, NTPSA2_00000385; NTPSA2_00000388; NTPSA2_00000391;

11  NTPSA2_00001625.

12      Defendants first raised their concerns over protecting material withheld under DPP for unrelated

13  DHS policies with the Court in the Parties' September 30, 2025, Joint Discovery Letter Brief. ECF No.

14  129 at 7-8. In response, the Court ordered that Defendants' produce twenty documents, identified by

15  Plaintiffs, for *in camera* review. ECF No. 130. Plaintiffs argue that Defendants failed to meet their burden

16  of establishing DPP by having neither "substantiated their position before the Magistrate [nor] supplied

17  the Magistrate with competent evidence[.]" ECF No. 163 at 7. This is false. Again, Defendants

18  substantiated their position in the Joint Discovery Letter Brief and then provided declarations in support.

19  *See* ECF Nos. 129, 139-1, 139-2. Had the Court permitted Defendants to respond to Plaintiffs' motion for

20  clarification, Defendants would have provided further support.

21      Furthermore, the Court's analysis of the *Warner* factors does not address Defendants' DPP

22  assertions over non-TPS related predecisional and deliberative material. Without once even

23  acknowledging Defendants' position on non-TPS related DPP assertions, *see* ECF Nos. 130, 155, 158, the

24  Court analyzed documents that it determined were both deliberative and predecisional to address whether

1    Plaintiffs' need for these materials outweighs the Government's interest in nondisclosure. In doing so,

2    however, the Court utilized a necessarily TPS *related* definition of "predecisional," by setting the

3    determining factor to be the Secretary's statutory deadlines for determinations on TPS designations for

4    Honduras, Nicaragua, and Nepal. ECF No. 155 at 2.

5        Additionally, the Magistrate Judge erred when she incorrectly held that information reflecting non-

6    final, proposed policy options – unrelated to TPS – under discussion within the agency were not

7    deliberative. *Id.* at 3. Discussion of proposed, unadopted policies – even the title of the policy itself, such

8    as titles of proposed Regulations in NTPSA2_00000385, NTPSA2_00000388, NTPSA2_00000391, and

9    NTPSA2_00000393– and the fact that it is being considered by agency, is itself deliberative. *See Reporters*

10   *Comm. for Freedom of the Press v. FBI*, 3 4th 350, 356 (D.C. Cir. 2021) ("The deliberative process

11   privilege can apply to proposed materials that die on the vine like draft speeches for policymakers that are

12   never given, or draft regulations that never see the light of day. Those types of documents discuss and

13   debate *proposed agency policies*, positions, and actions.") (emphasis added); *Survivors v. United States*

14   *DOI*, Case No. 16-cv-01165-JCS, 2017 U.S. Dist. LEXIS 66189, at *4-5 (N.D. Cal. May 1, 2017) (one

15   purpose of the privilege is "to protect against premature disclosure of *proposed policies* before they have

16   been finally formulated or adopted") (emphasis added).

17       Even if the content of a document is factual, if disclosure of the document would expose "the

18   decision-making process itself" to public scrutiny by revealing the agency's "evaluation and analysis of

19   the multitudinous facts," the document would nonetheless be exempt from disclosure. *National Wildlife*

20   *Federation v. U.S. Forest Service*, 861 F.2d 1114, 1118 (9th Cir. 1988) (quoting Montrose Chemical Corp.

21   of California v. Train, 491 F.2d 63, 68 (D.C. Cir. 1974). In other words, the document is considered to be

22   part of the "deliberative process" as long as it is "actually ... related to the *process* by which policies are

23   formulated." *Id.* (quoting *Jordan v. U.S. Dept. of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978).

24   Accordingly,  the deliberative process privilege has  been held to  cover all "recommendations, draft

documents, proposals, suggestions and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," as well as documents which would "inaccurately reflect or prematurely disclose the views of the agency." *Id.* at 1118-9 (quoting *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C. Cir.1980)). As such "a better analytical tool than merely determining whether the material itself was essentially deliberative or factual should be used: we should focus on whether the document in question is a part of the *deliberative process.*" *Center for Environmental Health v. Perdue,* Case No. 18-cv-0176, 2019 WL 6114513, *2 (N.D. Cal. Nov. 18, 2019) (quoting *Nat'l Wildlife Fed'n,* 861 F.2d at 1118).

Defendants seek relief from the Magistrate Judge's erroneously narrow interpretation of DPP as it pertains to material wholly unrelated to TPS and the issues in this case.

## II.    The Magistrate Erred in Ordering Production of Documents Withheld Under the Attorney Client Privilege

The Magistrate erred by ordering the production of memoranda (NTPSA2_00001014 & 00001017) from the Acting General Counsel to Secretary Noem advising her about the legal requirements and considerations relevant to TPS determinations. The attorney-client privilege is critical because it "encourages full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice." *In re Grand Jury*, 23 F.4th 1088, 1093 (9th Cir. 2021). Courts in this Circuit apply an eight-part test to determine whether the attorney-client privilege applies including:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Greer v. County of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (citation omitted). Where applicable, the privilege protects entire communications from disclosure. *Upjohn Co. v. United States*, 449 U.S. 383,

395-96 (1981); *see, e.g.*, *Aroeste v. United States*, 687 F. Supp. 3d 1011, 1021 (C.D. Cal. 2023) (entire memo between IRS attorney and field agents was protected by attorney-client privilege).

Contrary to the Magistrate's conclusion and Plaintiffs' assertions, the attorney-client privilege clearly applies to the Acting General Counsel's memoranda. *See Greer*, 127 F.4th at 1224. The memo was prepared by a professional legal adviser providing legal advice directly to their client (the Secretary) in an environment where *all* of the Secretary's prior TPS determinations were subject to litigation contesting whether her (unreviewable) determinations were consistent with the statute. *Id*. As evidenced by the direct communication between the Acting General Counsel and the Secretary, the legal advice contained in the General Counsel's memoranda was made in confidence to the Secretary and designated for permanent protection with bold "***Attorney-Client Privileged Communication***" notations on every page. *Id*.; *see* NTPSA2_00001014 & 00001017. The memoranda themselves provided a thorough analysis of the Secretary's determinations and their consistency with applicable law (something only a lawyer could do) and then gave a bottom-line recommendation to the Secretary in light of that analysis, which even the Magistrate recognized was protected by attorney-client privilege. ECF No. 155 at ¶¶ 7-8. Accordingly, because all of the relevant factors demonstrate that the attorney-client privilege extends to communications between the Acting General Counsel and the Secretary (NTPSA2_00001014 & 00001017), both are shielded from disclosure in their entirety. *See Greer*, 127 F.4th at 1224; *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (explaining that the attorney-client privilege shields entire documents from disclosure where legal advice is "inextricably intertwined with the rest of the text and that they cannot be separated.").

Contrary to Plaintiffs' assertions, the Acting General Counsel's memoranda do not serve a dual-purpose because they analyzed the legal sufficiency of the Secretary's determinations and the federal register notices required to effectuate her determinations. ECF No. 163 at 6; *see In re Grand Jury*, 23 F.4th at 1092 (explaining that the attorney-client privilege applies to "communications made for the

purpose of facilitating the rendition of professional legal services.") (citation and quotation omitted). Moreover, even assuming that the dual-purpose doctrine was implicated (it is not), the Acting General Counsel's memoranda is shielded from disclosure because their "primary purpose" was to provide legal advice to the Secretary regarding the legal sufficiency of her determinations and compliance with applicable statutory and procedural requirements, as established above. *In re Grand Jury*, 23 F.4th at 1091, 1094 (holding that the "primary purpose test applies to dual-purpose communications" and that "a dual-purpose communication can only have a single 'primary' purpose."); NTPSA2_00001014 & 00001017.

Plaintiffs' insistence that Defendants produce a declaration explaining why legal advice prepared in a memorandum by the Acting General Counsel contains privileged materials misses the mark. ECF No. 163 at 7. Defendants designated these documents as protected by the attorney-client privilege in their privilege log and it is well established that this Court has discretion to conduct *in camera* review to evaluate and protect privileged materials from public disclosure. *See United States v. Zolin*, 491 U.S. 554, 572 (1989). Moreover, a declaration is unnecessary because it is self-evident that memoranda from the Acting General Counsel provide legal advice to the Secretary. *See* 6 U.S.C. § 1113(a)(1)(J) (providing that the "General Counsel" "shall be the chief legal officer of the Department"); *see, e.g.*, *Guidiville Rancheria of California v. United*, No. 12-cv-1326, 2013 WL 6571945 at *8 (stating the attorney-client privilege "applies to attorney-client relationships within the government, in which the agency is the client and the government attorney is counsel. Indeed, the privilege has been found to apply with 'special force' in the government context since the policies underlying the privilege particularly favor encouraging government officials formulating policies in the public's interest to consult with counsel in conducting that public business."); *Americans for Fair Treatment v. USPS*, 663 F. Supp. 3d 39, 58 (D.D.C. 2023) (rejecting a challenge to the adequacy of threshold information about the invocation of the attorney-client privilege where the record contained evidence "about the chain of command and the parties' positions for the Court to determine that attorney-client privilege's applicability.").

1    Finally, Plaintiffs assert that the attorney-client privilege cannot shield facts contained in legal

2    memoranda. ECF No. 163 at 7. But in *Greer*, the Ninth Circuit explained that an attorney-led investigation

3    "is a necessary predicate to assessing liability for past events and thus is not separate from the provision

4    of legal advice." *Greer*, 127 F.4th at 1224. Similarly, here, the Acting General Counsel's factual analysis

5    is inextricably linked with his legal analysis and—undisputed—ultimate legal advice to the Secretary.

6    NTPSA2_00001014 & 00001017; *see Christensen*, 828 F.3d at 803 ("An entire document or set of

7    documents may be privilege when it contains privileged portions that are so inextricably intertwined with

8    the rest of the text that they cannot be separated.") (citation and quotation omitted). In all events, as even

9    Plaintiffs recognize, ECF 163 at 7 (citing *Castaneda v. Burger King*, 259 F.R.D. 194, 200 (N.D. Cal.

10   2009)), the Magistrate's wholesale piercing of attorney-client privilege here extended far beyond the facts

11   underlying the TPS terminations and impermissibly intruded into the Acting General Counsel's legal

12   analysis and advice. *See* NTPSA2_00001014 & 00001017.

13   Accordingly, this Court must reverse the Magistrate because the attorney-client privilege shields

14   the Acting General Counsel's memoranda to the Secretary from disclosure.

15   **III.    The Magistrate Judge Erred in Ordering Disclosure of Law Enforcement Privileged**
     **Material**

16

17   Discovery materials in this case include sensitive official information irrelevant to Plaintiffs'

18   claims regarding TPS and whose disclosure beyond *in camera* review is likely to harm public safety. *See*

19   *Dousa v. DHS*, No. 19-cv-1255-LAB(KSC), 2019 WL 6311990 at *2 (S.D. Cal. Nov. 22, 2019) ("If the

20   government makes the equivalent of a prima facie showing of harm, courts must conduct a situation

21   specific analysis of the factors made relevant by the request in issue and the objection to it.") The

22   Magistrate recognized the potential harm posed by disclosure of portions of certain documents (ECF No.

23   155 at 8), but respectfully, did not go far enough to protect the public interest in non-disclosure. The

24   Magistrate's incomplete analysis arose because she did not provide Defendants with an opportunity to

brief the question or to provide supporting declarations from the relevant law enforcement and intelligence agencies, as Defendants do here. ECF No. 155 at 7-8. Importantly, Plaintiffs did not initially challenge Defendants' assertion of law enforcement privilege as to these materials. Indeed, through a *sua sponte* ruling on uncontested law enforcement privilege and a ruling on clarification with no opportunity for Defendants to respond, the Magistrate Judge did not provide Defendants with an opportunity to provide declarations from component law enforcement agencies. Defendants maintain that additional portions of the reviewed documents, beyond what the Magistrate had found, are privileged.

**A. Legal Standard for the Law Enforcement/Official Information Privilege**

"Federal common law recognizes a qualified privilege for official information." *Dousa v. DHS*, No. 19-cv-1255, 2019 WL 6311990, at *2 (S.D. Cal. Nov. 22, 2019) (internal quotation marks omitted). "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." *Id*. (internal quotation marks omitted).

The party asserting the official information or law enforcement privilege must offer "competent evidence about how the specific requested disclosure would harm governmental interests[,]" which Courts in this Circuit recognize when made in:

> (1) "a 'formal claim of privilege' by a responsible official, based on that official's personal consideration of the information[;]"
> (2) [The formal claim of privilege must] "describe[e] with specificity both the information to be protected and the harm that would ensue from its disclosure."

*Al Otro Lado, Inc. v. Wolf*, Case No. 3:17-cv-2366-BAS-KSC, 2020 WL 3487823, at *2 (S.D. Cal. Jun. 26, 2020) (internal citations removed).

The Supreme Court first recognized a qualified privilege for certain information related to law enforcement activities in *Roviaro v. United States*, 353 U.S. 53 (1957). This privilege has various names: (1) the "official information privilege," (2) the "law enforcement privilege," and (3) a type of "executive privilege." *See Deocampo v. City of Vallejo*, Case No. S-06-1283, 2007 WL 1589541, *4 (E.D. Cal. June

1, 2007) (citing references for each variant). "The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Doyle v. Gonzales*, Case No. MISC. S-11-0066, 2011 WL 3925045, *4 (E.D. Cal. Sept. 7, 2011). However, "an investigation need not be ongoing in order for the privilege to apply." *Tennison v. City & Cnty. of San Francisco*, 2005 WL 1639447 n.1 (N.D. Cal. July 13, 2005); *see also Black v. Sheraton Corp. of America*, 564 F.2d 531, 546 (D.C. Cir. 1977) (privilege may apply after the conclusion of an investigation where "the investigative techniques of the investigating body would be disclosed to the general public").

District courts in the Ninth Circuit have used the ten-factor test from *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973), to guide this inquiry. *See, e.g., Wagafe v. Trump*, — F.R.D. —, 2020 WL 246693 (W.D. Wash. 2020) (applying *Frankenhauser* factors). The *Frankenhauser* factors are not "exhaustive;" instead, reviewing Courts using them as a guide must focus their inquiry on "the extent to which the defendant's interest in confidentiality outweighs the plaintiff's interest in the information." *Al Otro Lado, Inc.*, 2020 WL 3487823, at *2 (internal citations removed).

Defendants make the requisite privilege assertion here, through formal claims of privilege made by responsible officials at four Department of Homeland Security law enforcement and intelligence agencies, specifying both the information to be protected and the harm that would result if disclosed. *See id*.

Applying the *Frankenhauser* factors to these declarations, neither Plaintiffs nor the Magistrate can show a need to overcome the law enforcement privilege. The *Frankenhauser* factor of most significance to assessing these privilege claims is Factor Ten, "the importance of the information sought to the plaintiff's case." *Frankenhauser v. Rizzo*, 59 F.R.D. 339. This Court should recognize the Magistrate's

1   clear error in piercing the Law Enforcement Privilege when reviewing the descriptions of the privileged

2   material: none of it relates to TPS, or immigration policy in general.

3   **B.  U.S. Customs & Border Protection (CBP) Documents**

4   For a clear example of information that is both sensitive and irrelevant to this case, CBP asserts

5   the law enforcement privilege over NTSPA2_000000545, which contains details regarding "specific

6   policy limitations within which CBP may take certain [counter-unmanned aerial systems] actions against

7   [small unmanned aerial systems], including geographic parameters." Ex. A, Magness Decl. at ¶ 9. Similar

8   information appears in NTSPA2_000000558. Ex. A at ¶ 7. The operational and law enforcement policy

9   information contained within these documents could allow criminal and terrorist organizations to

10  circumvent law enforcement activity designed to detect and counter illegal use of unmanned aerial

11  systems. Ex. A, Magness Decl. at ¶ 9. CBP clearly uses its counter-unmanned aerial systems policies and

12  related operations to maintain airspace awareness and to identify the nature of illegal activity, falling

13  within the heartland of valid uses of the law enforcement privilege.

14  **C.  U.S. Secret Service (Secret Service) Documents**

15  Likewise, the Secret Service asserts the law enforcement privilege over information on

16  NTPSA2_00000927 which describes the number and type of personnel, certain equipment, and other

17  assets that the Secret Service and other federal agencies assigned to a June 2025 National Special Security

18  Event (NSSE). Ex. B, Donahue Decl. at ¶ 8. Disclosure of this information, as well as the number of

19  positions determined necessary to staff an Operational Communications and Integration Division team

20  during the NSSE could reveal the Secret Service's methodology and resource deployment for future

21  NSSEs "of similar significance and size" to adversaries who seek to attack these events or individuals

22  designated for Secret Service protection elsewhere. Ex. B at ¶ 9.

23

24

### D. Office of Intelligence & Analysis (I&A) Documents

DHS I&A, an agency within the U.S. Intelligence Community, asserts the official information privilege as well as other common law and statutory privileges over the full contents of NTPSA2_00000570; NTPSA2_00000868; NTPSA2_00000891; NTPSA2_00000914; and NTPSA2_00000937. Ex. C, Tyson Decl. at ¶ 4; *see, e.g.*, 6 U.S.C. § 121(d)(9)(B) (statutory requirement that I&A ensure that intelligence information is "shared, retained, and disseminated" in a manner that protects intelligence sources and methods and "sensitive law enforcement information"); 50 U.S.C. § 3003(4)(K) (I&A established as an element of the Intelligence Community). These documents describe "on-going efforts to proactively identify threats to the homeland and provide DHS's partners, including other agencies of the Intelligence Community, with information and actionable intelligence. Ex. C at ¶ 12. Disclosure of this information could reveal national and DHS intelligence priorities and help hostile state actors, terrorist organizations, and organized crime groups "to change tactics to avoid detection. *Id*. Disclosure could also harm intelligence sources and methods as well as relationships with partner organizations. *Id*.

### E. Office of Countering Weapons of Mass Destruction (CWMD) Documents

The DHS Office of Countering Weapons of Mass Destruction (CWMD) asserts the law enforcement privilege over the full contents of NTPSA2_00000607 through NTPSA2_00000628, which contain the "Securing the Cities New York/New Jersey Program Tabletop Exercise Situation Manual, April 16, 2025." Ex. D, Richardson Decl. at ¶ 5. The privileged document provides participants in the eponymous radiological and nuclear threat detection exercise (including various federal, state, and local law enforcement agencies) with information about protocols and plans to address weapons of mass destruction threats in a specific geographic area, including equipment and screening protocols used. Ex. D at ¶ 6. Disclosure of these materials could assist people seeking to avoid detection while using nuclear or radiological materials for illicit purposes. *Id*.

Disclosing this highly sensitive information about counter-unmanned aerial vehicle systems, protection of NSSEs, and response protocols for nuclear or radiological threat events does nothing to help the Court decide this case, but it would do inestimable harm to the functioning of the national security apparatus Defendants operate on behalf of the American people. Plaintiffs simply cannot show that their interest in this clearly irrelevant information outweighs the Defendants' interest in confidentiality. *See Al Otro Lado*, 2020 WL 3487823 at *3; *Dousa*, 2019 WL 6311990 at *2.

## IV.    Defendants Intend to Produce TPS-Related Material in NTPSA2_00001625

Defendants recognize that the Court determined that NTPSA2_00001625 was not protected by the Attorney Client Privilege but maintain that the vast majority of the document is material wholly unrelated to TPS and subject to the Deliberative Process Privilege. As such, Defendants propose producing the document with all portions following "Executive Action Priorities" on NTPSA2_00001625-001 redacted, with the exception of the bullet point mentioning TPS found on NTPSA2_00001625-002, the two bullet points on NTPSA2_00001625-002, and the four bullet points involving TPS on NTPSA2_00001625-005.


Dated: October 24, 2025                      Respectfully submitted,

                                             BRETT A. SHUMATE
                                             Assistant Attorney General
                                             Civil Division

                                             YAAKOV M. ROTH
                                             Principal Deputy Assistant Attorney General

                                             WILLIAM H. WEILAND
                                             Acting Assistant Director

                                             ERIC SNYDERMAN
                                             CATHERINE ROSS
                                             LAUREN BRYANT
                                             JEFFREY HARTMAN
                                             SHELBY WADE
                                             LORI MACKENZIE
                                             ILANA KRAMER

Trial Attorneys

  /s/ *Daniel M. Cappelletti*
DANIEL M. CAPPELLETTI
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-2999
daniel.cappelletti @usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

*/s/ Daniel M. Cappelletti*
Daniel M. Cappelletti
Attorney for Defendants