BRETT SHUMATE
Assistant Attorney General
YAAKOV M. ROTH
Deputy Assistant Attorney General
Civil Division
WILLIAM H. WEILAND
Acting Assistant Director
ERIC SNYDERMAN
CATHERINE ROSS
LORI MACKENZIE
SHELBY WADE
LAUREN BRYANT
CATHERINE ROSS
JEFFREY HARTMAN
ILANA KRAMER
DANIEL CAPPELLETTI
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-5687<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. Trina L. Thompson<br>Date:<br>Time:<br>Place: Courtroom 9, 19th Floor,<br>        San Francisco U.S. Courthouse |

1

2    Dated: October 28, 2025                    Respectfully submitted,

3                                               BRETT SHUMATE
                                               Assistant Attorney General
4

5                                               YAAKOV M. ROTH
                                               Deputy Assistant Attorney General
6                                               Civil Division

7                                               WILLIAM H. WEILAND
                                               Acting Assistant Director
8

9                                               ERIC SNYDERMAN
                                               ILANA KRAMER
10                                              LAUREN BRYANT
                                               DANIEL CAPPELLETTI
11                                              CATHERINE ROSS
                                               LORI MACKENZIE
12                                              JEFFREY HARTMAN
                                               Trial Attorneys
13
                                               */s/ Shelby Wade*
14                                              Shelby Wade
                                               Trial Attorney
15                                              U.S. Department of Justice, Civil Division
                                               Office of Immigration Litigation
16                                              General Litigation and Appeals Section
                                               P.O. Box 868, Ben Franklin Station
17                                              Washington, D.C. 20044
                                               Tel: (202) 285-8379
18                                              Shelby.Wade2@usdoj.gov
19
                                               *Attorneys for the Defendants*
20

21

22

23

24

25

26

27

28

1
2

## TABLE OF CONTENTS

3    **PRELIMINARY STATEMENT** ...................................................................................................1

4    **STANDARD OF REVIEW** ....................................................................................................2

5    **ARGUMENT** ..........................................................................................................................2

6
      I.      THE CHALLENGED ACTIONS ARE NOT REVIEWABLE ...........................................2
7
              A.      The TPS Statute Precludes Judicial Review ....................................................2
8
9             B.      Additional Barrier Prevent Judicial Review of Plaintiffs' Claims........................5

10   II.     THE SECRETARY'S DETERMINATIONS WERE IN ACCORDANCE
             WITH THE LAW .......................................................................................................6
11
              A.      The Terminations Were Not Predetermined.............................................6
12
13            B.      The Termination Decisions Followed Appropriate Interagency
                      Consultation ...............................................................................................10
14
              C.      The Terminations Did Not Conflict with the TPS Statute...................................14
15
      III.    THE TERMINATIONS WERE NOT ARBITRARY AND CAPRICIOUS
16            AND DID NOT VIOLATE THE CHANGE-IN-POSITION DOCTRINE ......................15

17   **CONCLUSION** .........................................................................................................................18

18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Alaska Dep't of Envtl. Conservation v. EPA*,
4     540 U.S. 461 (2004)..................................................................................................... 2

5

*Amgen, Inc. v. Smith*,
    357 F.3d 103 (D.C. Cir. 2004)................................................................................... 3
6

7 *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*,
    502 U.S. 32 (1991)..................................................................................................... 2
8

*Bouarfa v. Mayorkas*,
9     604 U.S. 6 (2024)....................................................................................................... 5

10 *Campanale & Sons, Inc. v. Evans*,
    311 F.3d 109 (1st Cir. 2022)............................................................................... 12, 13
11

12 *DCH Reg'l Med. Ctr. v. Azar*,
    925 F.3d 503 (D.C. Cir. 2019)................................................................................... 5
13

14 *Dep't of Com. v. New York*,
    588 U.S. 752 (2019)............................................................................................. 10, 15
15

*DHX Inc. v. Allianz AGF MAT, Ltd.*,
16     425 F.3d 1169 (9th Cir. 2005) ....................................................................................

17 *Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016)................................................................................................... 16
18

19 *FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009)................................................................................................... 16
20

21 *FDA v. Wages and White Lion Invs.*,
    604 U.S. 542 (2025)................................................................................................... 16
22

*Fla. Power & Light Co. v. Lorion*,
23     470 U.S. 729 (1985)..................................................................................................... 2

24 *Garland v. Ming Dai*,
    592 U.S. 357 (2021)................................................................................................... 14
25

26 *Harisiades v. Shaughnessy*,
    342 U.S. 580 ............................................................................................................. 14

27

28

*Helgeson v. Bureau of Indian Affairs,*
   153 F.3d 1000 (9th Cir. 1998) ................................................................................. 5

*Karuk Tribe of Cal. v. U.S. Forest Serv.,*
   681 F.3d 1006 (9th Cir. 2012) ............................................................................... 13

*La. Forestry Ass'n Inc. v. Sec'y, U.S. Dep't of Labor,*
   745 F.3d 653 (3d Cir. 2014) .................................................................................. 12

*Lincoln v. Vigil,*
   508 U.S. 182 (1993) ................................................................................................ 5

*Lopez v. Ashcroft,*
   366 F.3d 799 (9th Cir. 2004) ................................................................................ 14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983) ................................................................................................ 10

*Nat'l TPS Alliance v. Noem,*
   150 F.4th 1000 (9th Cir. 2025) ............................................................................... 4

*Nw. Motorcycle Ass'n v. U.S. Dep't Agric.,*
   18 F.3d 1468 (9th Cir. 1994) .................................................................................. 2

*Occidental Eng'g Co. v. I.N.S.,*
   753 F.2d 766 (9th Cir. 1985) .................................................................................. 2

*Pinnacle Armor, Inc. v. United States,*
   648 F.3d 708 (9th Cir. 2011) .................................................................................. 5

*Poursina v. USCIS,*
   936 F.3d 868 (9th Cir. 2019) .................................................................................. 5

*Ramos v. Wolf,*
   975 F.3d 872 (9th Cir. 2020) ................................................................... 3, 4, 6, 10, 15

*Rancher Cattlemen Action Legal Fund United Stockgrowers of Am. v. US Dep't of Agric.,*
   415 F.3d 1078 (9th Cir. 2005) ................................................................................ 2

*Rank v. Nimmo,*
   677 F.2d 692 (9th Cir. 1982) .................................................................................. 6

*River Runners for Wilderness v. Martin,*
   593 F.3d 1064 (9th Cir. 2010) ................................................................................ 7

*Shenzhen Youme Info. Tech. Co. v. FDA*,
    147 F.4th 502 (5th Cir. 2025) ................................................................. 16

*Skagit County Pub. Hosp. Dist. No. 2 v. Shalala*,
    80 F.3d 379 (9th Cir. 1996) .................................................................

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
    435 U.S. 519 (1978) ............................................................................. 12

*Webster v. Doe*,
    486 U.S. 592 (1988) ............................................................................... 5

*Zhu v. Gonzales*,
    411 F.3d 292 (D.C. Cir. 2005) ................................................................. 5

## STATUTES

5 U.S.C. § 701(a)(1) ................................................................................. 1, 2

5 U.S.C. § 701(a)(2) ................................................................................. 1, 5

5 U.S.C. § 704 ............................................................................................. 2

5 U.S.C. § 706(2)(A) .................................................................................... 2

8 U.S.C. § 1252(f)(1) ............................................................................... 1, 6

8 U.S.C. § 1252a(2)(B)(ii) ............................................................................ 6

8 U.S.C. § 1254a(b)(1) .............................................................................. 4, 5

8 U.S.C. § 1254a(b)(3) .................................................................................. 4

8 U.S.C. § 1254a(b)(1)(B) ............................................................................. 9

8 U.S.C. § 1254a(b)(3)(A) ................................................................... 6, 10, 12

8 U.S.C. § 1254a(b)(3)(B) ......................................................................... 1, 5, 6

8 U.S.C. § 1254a(b)(3)(C) .......................................................................... 4, 6

8 U.S.C. § 1254a(b)(5)(A) ..................................................................... 1, 2, 3, 4

## REGULATIONS

65 Fed. Reg. 33,356-01 ............................................................................... 17

65 Fed. Reg. 33,3356 ................................................................................... 17

68 Fed. Reg. 3896-01 .................................................................................................................. 17

72 Fed. Reg. 61172-02 ................................................................................................................ 17

72 Fed. Reg. 61,173 .................................................................................................................... 17

81 Fed. Reg. 66,064-01 .............................................................................................................. 17

81 Fed. Reg. 66,065-66 .............................................................................................................. 17

## <u>OTHER AUTHORITIES</u>

Executive Order 14,156 .............................................................................................................. 14

Executive Order 14,159 .............................................................................................................. 10

**PRELIMINARY STATEMENT**

Notwithstanding Secretary Noem's clear statutory authority and Congress's decision to commit Temporary Protected Status ("TPS") determinations to the Secretary's judgment alone, Plaintiffs move for partial summary judgment, alleging that the Secretary's terminations of the TPS designations for Nepal, Honduras, and Nicaragua were contrary to law, and arbitrary and capricious under the Administrative Procedure Act. ECF No. 144 ("Pls.' MSJ").  Plaintiffs, however, are not entitled to partial summary judgment for several reasons.

*First*, as set forth in Defendant's Motion for Summary Judgment, ECF No. 142 ("Def. Mot."), Plaintiffs' claims are not reviewable because the Immigration and Nationality Act ("INA") reflects Congress' clear choice to preclude judicial review of "any determination … with respect to the designation, or termination or extension of a designation of foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A); *see also* 5 U.S.C. § 701(a)(1) (precluding review under the APA "to the extent" that other "statutes preclude judicial review"). The Secretary's decisions to terminate the TPS designations for Nepal, Honduras, and Nicaragua fall with that broad, clear bar on this Court's review. *Second*, Plaintiffs' claims fail because the APA does not allow for review of agency action that is committed to agency discretion by law, including her discretionary assessment of country conditions. 5 U.S.C. § 701(a)(2). *Third*, another INA provision—8 U.S.C. § 1252(a)(2)(B)(ii)—bars review of discretionary actions by the Secretary, including termination of a TPS designation. *Fourth*, yet another INA provision—8 U.S.C. § 1252(f)(1)—likewise bars this Court from "enjoin[ing] or restrain[ing]" the Secretary from designating a country for TPS or extending or terminating a TPS designation. *Fifth*, even if judicial review were available, Plaintiffs have not shown that the determinations they challenge were contrary to law or "arbitrary and capricious." Rather the record reflects that these determinations were consistent with the TPS statute and based on the Secretary determination that those countries no longer met the requisite conditions for their TPS designations, in accordance with 8 U.S.C. § 1254a(b)(3)(B). The Court should deny Plaintiffs' Motion and enter summary judgment in favor of Defendants.

**STANDARD OF REVIEW**

The APA permits judicial review of a "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. At summary judgment in an APA case, a court does not determine whether there is any genuine dispute of material fact, as it would in ruling on an ordinary summary judgment motion. *See Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Instead, summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action passes muster under the APA. *Nw. Motorcycle Ass'n v. U.S. Dep't Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994); *Occidental Eng'g*, 753 F.2d at 769-70. Courts review the underlying agency decision to determine if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Accordingly, the Court reviews the evidence included in the administrative record to determine whether, as a matter of law, the evidence permitted the agency to make the decision it did. *Id.* The Court is "not empowered to substitute [its] judgment for that of the agency." *Rancher Cattlemen Action Legal Fund United Stockgrowers of Am. v. US Dep't of Agric.*, 415 F.3d 1078, 1103 (9th Cir. 2005). As a result, courts should uphold an agency decision—even one "of less than ideal clarity"—"if the agency's path may reasonably be discerned." *Id.* at 1097 (citing *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 496 (2004)).

**ARGUMENT**

**I.     THE CHALLENGED ACTIONS ARE NOT REVIEWABLE**

**A.     The TPS Statute Precludes Judicial Review**

As explained in Defendants' motion for summary judgment, Def. Mot. at 7-10, judicial review is unavailable "when Congress expressly bars review by statute." 5 U.S.C. § 701(a)(1); *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991). Congress could not have been clearer in 8 U.S.C. § 1254a(b)(5)(A), which states "[t]here is no judicial review of any determination of the [Secretary] *with respect to* the designation, or termination or extension of a designation, of a foreign state" for TPS relief (emphasis added). Thus, the TPS statute bars all of Plaintiffs' claims in this Court— whether statutory or constitutional, which challenge the Secretary's termination decisions. *Id.*; *see* H.R. Rep. No.

101-245, at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review"). Plaintiffs attempt to circumvent § 1254a(b)(5)(A)'s clear bar by challenging the factors and criteria that the Secretary used in making her determinations. *See* Pls.' MSJ. But because the terminations are "determination[s] with respect to the termination" of the TPS designations, review over Plaintiffs' claims is barred under § 1254a(b)(5)*(*A). *See Ramos v. Wolf,* 975 F.3d 872, 889 (9th Cir. 2020) (Section 1254a(b)(5)(A) makes clear that the Secretary's discretion to consider and weigh various conditions in a foreign country in reaching her TPS determinations is not only broad, but unreviewable."), *vacated on reh'g en banc,* 59 F.4th 1010, 1011 (9th Cir. 2023).

Even if the Court disagrees with this reading of the statute, the statute at minimum bars Plaintiffs' first and second APA claims, which challenge the evidence and reasoning the Secretary relied on to reach her TPS terminations—the undeniable core of the statute, even on Plaintiffs' narrow reading. "If a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency *decision* is arbitrary, capricious, or procedurally defective." *Amgen, Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004). In related litigation, the Supreme Court has twice granted the government's stay applications, which relied on this same judicial-review argument. *See Noem v. Nat'l TPS All.*, No. 25A326, Appl. For Stay 19; *Noem v. Nat'l TPS All.*, No. 24A1059, Appl. For Stay 15-20. To grant such relief, the Supreme Court necessarily determined that the government is likely to succeed on the merits of the reviewability argument.

That resolution is consistent with the Ninth Circuit's treatment of the bar. Previously, it held that "the TPS statute precludes review of non-constitutional claims that fundamentally attack the Secretary's specific TPS determinations, as well as the substance of her discretionary analysis in reaching those determinations." *Ramos*, 975 F.3d at 892.[1] Foreclosing judicial review conforms with a statutory scheme

---

[1] Although non-precedential, *Ramos* "still carries informational and perhaps even persuasive precedential value." *DHX Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1176 (9th Cir. 2005) (Beezer, J., concurring). The Secretary cites *Ramos* in this brief for persuasiveness only.

that "does not dictate any substantive guidelines or restrictions on the manner by which the Secretary may reach her TPS determinations" and does not "set forth or define the conditions in the foreign state that the Secretary must consider … or how she should weigh these conditions." *Id.* at 891; 8 U.S.C. § 1254a(b)(1), (b)(3). More recently, a panel of this Court reasoned in a preliminary posture that it could engage in limited review of "[t]he extent of statutory authority granted to the Secretary" to determine whether she can reconsider a TPS extension. *Nat'l TPS Alliance v. Noem*, 150 F.4th 1000, 1014-15 (9th Cir. 2025). It expressly did not reach the Plaintiffs' arbitrary and capricious claims. *Id.* at 1024. It further emphasized that it could engage in review because the Secretary's action in that case—the *vacatur* of a TPS termination—was "not 'a determination … with respect to the designation, or termination or extension' of a country for TPS." *Id.* at 1017 (quoting 8 U.S.C. § 1254a(b)(5)(A)). The Court also reiterated that "Congress has provided a means for the Secretary to account for changes in country conditions or political priorities: she can terminate TPS[.]" *Id.* at 1021; *see* 8 U.S.C. § 1254a(b)(3)(A)(B).

Thus, even if some collateral challenges were reviewable, *but see supra* at pp.1–3, Plaintiffs' APA claims in this case would not be. Here, Plaintiffs directly (and impermissibly) challenge the Secretary's discretionary TPS terminations. Plaintiffs principally argue that the terminations were not based on an objective review of country conditions. Pls.' MSJ. at 1, 6, 8, 12-13, 17-20. The country specific reasoning analysis is literally a "determination" "with respect to" a "termination," and there is nothing procedural or collateral about Plaintiffs' challenge to it. 8 U.S.C. § 1254a(b)(3)(C). For example, Plaintiffs did not challenge a guidance document or regulation distinct from a termination, and they never pinpoint any statutory criteria that the Secretary supposedly overlooked. Instead, Plaintiffs challenge the evidence and reasoning the Secretary relied on to reach her TPS terminations. Those are precisely the types of ordinary APA claims that fall within the core of even the narrowest understanding of the review bar in § 1254a(b)(5)(A). *Ramos*, 975 F.3d at 889.

Nor can Plaintiffs evade that bar by characterizing an arbitrary-and capricious challenge as procedural. *See*, e.g., *Skagit County Pub. Hosp. Dist. No.* 2 v. *Shalala*, 80 F.3d 379, 386 (9th Cir. 1996) (no-review provision applies when "procedure is challenged only in order to reverse the individual

1   [unreviewable] decision"). To hold otherwise "would eviscerate the statutory bar, for almost any

2   challenge to [a determination] could be recast as a challenge to its underlying methodology." *DCH Reg'l*

3   *Med. Ctr.* v. *Azar*, 925 F.3d 503, 505-507 (D.C. Cir. 2019).

4       **B.    Additional Barriers Prevent a Judicial Review of Plaintiffs' Claims**

5       Three other barriers foreclose this Court's review of Plaintiffs' claims as well. *See* Def. Mot. at

6   10-12.

7       First, the APA further precludes review where the agency action is "committed to agency

8   discretion by law." 5 U.S.C. § 701(a)(2). The Secretary's determinations regarding the continued

9   existence of conditions supporting the designation of a country for TPS under § 1254a(b)(1) are committed

10  to her informed, discretionary judgment. *See* 8 U.S.C. § 1254a(b)(3)(B) ("*If the Secretary finds* that the

11  foreign state "no longer continues to meet the conditions for designation," she "shall terminate the

12  designation…") (emphasis added)). The Ninth Circuit has held that this bar to APA review applies "where

13  statutes are drawn in such broad terms [that] the court [is left] with no meaningful standard against which

14  to judge the agency's exercise of discretion," *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 719

15  (9th Cir. 2011), and especially where, as here, the "subject matter is an area of executive action in which

16  the courts have long been hesitant to intrude,'" including judgments about whether a foreign country is no

17  longer temporarily unable to adequately handle the return of its nationals, *Helgeson v. Bureau of Indian*

18  *Affairs*, 153 F.3d 1000, 1003 (9th Cir. 1998) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)); *see also*

19  *Webster v. Doe*, 486 U.S. 592, 600 (1988); *Zhu v. Gonzales*, 411 F.3d 292, 295 (D.C. Cir. 2005).

20      Second, 8 U.S.C. § 1252(a)(2)(B)(ii) precludes federal courts from reviewing "acts the authority

21  for which is specified under the INA" to be in the "discretion of the Attorney General or the Secretary

22  of Homeland Security.'" *Poursina v. USCIS*, 936 F.3d 868, 870-871 (9th Cir. 2019) (emphasis added);

23  *see* 8 U.S.C. § 1252(a)(2)(B)(ii). Section 1254a(d)(3), which affords the Secretary's the discretionary

24  "option" of allowing for an additional "orderly departure" period if she deems it "appropriate," exudes

25  deference to the Secretary. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 13-15 (2024) (holding that 8 U.S.C.

26  § 1252a(2)(B)(ii) applies where, as here, the INA uses terms that "exude[ ] deference," "Congress has in

27

28

no way prescribed how that discretion must be exercised," and "[t]here are no conditions that the Secretary must satisfy before" she can exercise her authority); *cf. Rank v. Nimmo*, 677 F.2d 692, 699 (9th Cir. 1982) (statute giving the VA Administrator the "option" to make specific payments made "clear that Congress intended to vest the widest discretion possible in the Administrator").

Third, Plaintiffs' request that the Court "set aside" the Secretary's determinations, *see* Pls.' MSJ at 16, cannot be squared with 8 U.S.C. § 1252(f)(1), which bars district courts and courts of appeals from entering an order that "enjoin[s] or restrain[s]" the operation of the statutory provisions § 1252(f)(1) covers, including § 1254a. *See* Def. Mot. at 12. Moreover, while recognizing that the Ninth Circuit has held otherwise, the government maintains the view—and preserves the argument—that § 1252(f)(1) also bars declaratory relief. *Id.*

## II.    THE SECRETARY'S DETERMINATIONS WERE IN ACCORDANCE WITH THE LAW

Plaintiffs assert that the Secretary's determinations are unlawful under the APA. Pls.' MSJ. at 16. Specifically, Plaintiffs contend that the terminations were "predetermined" and "preordained[,]" and that the Secretary did not comply with the requirements in the TPS statute. *Id*. at 16–17. Plaintiffs further argue that Secretary Noem did not consider the full range of country conditions in an "unexplained break with past practice." *Id*. at 16, 20–24. However, even assuming the Court has jurisdiction to consider these claims, they are meritless, and the Court should reject them.

### A.    The Terminations Were Not Predetermined

Congress entrusted the Secretary with "undoubtedly broad authority" in administering the TPS statute, and while § 1254a requires the Secretary to review conditions within foreign states designated for TPS periodically, any subsequent action turns on the Secretary's discretionary findings about whether the conditions for such designation continue to exist. *Ramos*, 975 F.3d at 890; 8 U.S.C. § 1254a(b)(3)(A)-(C). Additionally, after conducting this review and consulting with the appropriate government agencies, if the Secretary determines that the conditions for TPS designation no longer exist, she must terminate the designation. 8 U.S.C. § 1254a(b)(3)(B). Here, the record conclusively reflects that the Secretary took the steps required by the TPS statute, and her decisions were "founded on a rational connection [to] the facts"

1  which is the requirement pursuant to the APA. *River Runners for Wilderness v. Martin*, 593 F.3d 1064,

2  1070 (9th Cir. 2010).

3  Plaintiffs assert that the terminations for Nepal, Honduras, and Nicaragua were "preordained" due

4  to her public statements regarding TPS and TPS holders, what Plaintiffs describe as an "indiscriminate

5  termination" of TPS, and alleged "massive irregularities" in Federal Register notices announcing the

6  terminations. Pls.' MSJ. at 17. Yet, the record demonstrates that, contrary to Plaintiffs' assertions, but

7  consistent with the TPS statute, Secretary Noem reviewed the country conditions before making a

8  determination that the conditions supporting the designation for TPS for Nepal, Honduras, and Nicaragua

9  were no longer met. *See* ECF 64-1; ECF 63-1; ECF 62-1. In making her determination to terminate TPS

10  for Honduras and Nicaragua, Secretary Noem reviewed country conditions reports covering

11  environmental, political, and economic conditions in the two countries. *See generally* ECF 62-1; ECF 63-

12  1; *ECF* 62-1 at 000008–000022; ECF 63-1 at 000022–000038. These reports not only discussed the impact

13  of substantial weather events, but also other data including statistics on violence, crime, health,

14  infrastructure, and economic growth. *See* ECF 62-1 at 000008–000022 (discussing the current country

15  conditions in Honduras, including current President Xiomara Castro's tenure, the reduction of homicides

16  in Honduras in 2024, the vulnerability of Honduras to natural hazards, and the status of Honduras's

17  infrastructure in 2024); *see* ECF 63-1 at 000022–000038 (discussing the current country conditions in

18  Nicaragua, including Tropical Storm Sara which impacted Nicaragua on November 14, 2024, and the

19  drought conditions caused by El Niño in mid-October 2024; the decrease of inflation in Nicaragua and the

20  stable macroeconomic fundamentals in Nicaragua; and the slowly expanding infrastructure network in

21  Nicaragua).

22  Secretary Noem concluded that the conditions in these countries caused by 1998 Hurricane Mitch

23  had improved over the last 26 years and that both countries could handle the return of their nationals. ECF

24  62-1 at 000001–000004; ECF 63-1 at 000001–00004. For example, she concluded that Nicaragua had

25  since improved its infrastructure, including its roads, schools, access to healthcare, and access to water,

26  sanitation and electricity since Hurricane Mitch. *See* ECF 63-1 at 000003. And she concluded that

27

28

1    Nicaragua is "a growing tourism, ecotourism, agricultural, and renewable energy leader." *Id*. As for

2    Honduras, Secretary Noem similarly found that the Honduran government had made significant

3    investments in the country's infrastructure and that the new infrastructure projects "are set to transform

4    Honduras and create jobs." *See* ECF No. 62-1 at 000003 ("Honduras has witnessed many significant

5    changes in the 26 years since Hurricane Mitch's destruction[,]" including higher access to "a basic water

6    source," "basic sanitation," and "access to electricity.") ("Foreign direct investment in Honduras has

7    jumped to 1.8 billion USD in 2023, a notable rise from the previous year.") ("Honduras is investing in

8    urban infrastructure, focusing on improving informal settlements and expanding land supply."). She also

9    concluded that Honduras "has made significant progress recovering from the hurricane's destruction[,]

10   and is now a popular tourism and real estate investment destination." *See id*. (internal citations omitted).

11   Regarding Nepal, Secretary Noem similarly reviewed country conditions reports which discussed

12   Nepal's recovery from a 2015 earthquake. *See generally* ECF 64-1. She also reviewed other reports

13   discussing Nepal's current economic, environmental, and health data, including the economic growth in

14   Nepal. *See id*. at 000015–00025 (discussing the "rapidly evolv[ing]" six years of reconstruction and

15   recovery efforts after the 2015 earthquake, the flash floods that occurred in September 2024, campaigns

16   launched in Nepal to equip hospitals with essential medical supplies and to reconstruct fully damaged

17   schools from a November 2023 earthquake, and the growth of Nepal's Gross Domestic Product). Further,

18   she considered and reviewed former Secretary of State Antony Blinken's 2024 report which recommended

19   termination of TPS for Nepal. *See id*. at 000006–000014. Ultimately, Secretary Noem found that

20   termination of TPS for Nepal was appropriate as a significant proportion of households and health

21   facilities damaged in the earthquake were rebuilt, and Nepal had experienced "improvements to its

22   preparedness and response capacity" and economic growth. *See id*. at 000001–000004. Further, the Nepali

23   government regularly accepted the return of nationals with removal orders, indicating that it was able to

24   accept the return of its nationals. *Id*. at 000003 ("Additionally, Nepal has been regularly accepting the

25   return of its nationals with final removal orders over the last five years.").

26

27

28

As such, consistent with the statute, the Secretary appropriately considered country conditions and reasonably determined that, for the reasons above and others reflected in the Federal Register notices, Nepal, Honduras, and Nicaragua "no longer continue to meet the conditions for [TPS] under 8 U.S.C. § 1254a(b)(1)(B)." ECF No. 63-1; ECF No. 62-1; ECF No. 64-1. The three Federal Register notices detail several conditions and improvements in each country that establish the statutory factors for TPS designation were no longer satisfied. *See* ECF 62-1 at 000001–00004; ECF 63-1 at 000001–00004; ECF 64-1 at 000001–000004. Neither the APA nor the TPS statute requires more.

Plaintiffs insist that Secretary Noem's termination notices "consistently ignored entire categories of conditions relevant to whether TPS remains warranted[,]" but they fail to pinpoint *what* Secretary Noem failed to consider. Pls.' MSJ. at 17. Furthermore, the record demonstrates that Secretary Noem *did* consider large amounts of country conditions evidence—including reports on the violence and crime in Honduras, weather events in Nicaragua, effects of the COVID-19 pandemic in Nepal, and inflation in Nepal. *See* ECF 62-1 at 000008 (noting that in its most recent annual report on human rights in Honduras, the U.S. Department of State noted that "[v]iolence and extortion persisted at high levels" in Honduras); *see also* ECF 63-1 at 000008–000009 (discussing the impacts of Hurricane Mitch, Hurricane Julia, and other environmental shocks such as droughts, floods, and landslides that Nicaragua is prone to); *see also id.* at 000022–000023 (discussing recent environmental conditions in Nicaragua); *see also ECF* 64-1 at 000011 (Department of State recommendation discussing improvement in several health indicators post-COVID-19 pandemic); *id.* at 000012 (discussing the improvement of the economic conditions in Nepal, including the fact that inflation decreased); *id.* at 000024 (discussing the current economy of Nepal). As stated above, this information was included in the U.S. Citizenship and Immigration Services ("USCIS") reports compiled on each individual country, in the Department of State ("DOS") recommendations regarding TPS for each individual country, and in other documents and reports considered by Secretary Noem. *See generally* ECF 62-1; ECF 63-1; ECF 64-1. The Secretary did not "ignore[] entire categories of conditions relevant to whether TPS remains warranted." Pls.' MSJ. at 17.

Plaintiffs' argument that Secretary Noem's TPS terminations were "preordained" disregards and ignores *all* the significant and relevant country conditions evidence Secretary Noem considered in her termination—which includes all the relevant statutory factors. *Id*. at 17. Instead, Plaintiffs assert that Secretary Noem's public statements regarding TPS and TPS holders mean that she made a preordained decision. *See id*. However, the law is clear that "a court may not set aside an agency's policymaking decision solely because it may have been…prompted by Administration priorities." *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019). Instead, "[a] change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part). After all, it is expected "for executive officials to conform their decisions to the administration's policies." *Ramos*, 975 F.3d at 897–98. Additionally, Plaintiffs have not demonstrated that Secretary Noem's decisions were preordained in any event, whether by general comments regarding the previous administration's use of TPS or by Executive Order 14,159. Executive Order 14,159 simply directed the Secretary to "ensure[] that designations of [TPS] are consistent" with the statute, "appropriately limited in scope," and "made for only so long as may be necessary to fulfill" the statute. Nothing in the Federal Register notices—and nothing pointed out by Plaintiffs— suggests that Secretary Noem did anything more than carefully review each TPS designation for statutory compliance, and then make an independent decision based on her review. Therefore, Plaintiffs' APA claims fail, and the Defendants are entitled to judgment on those claims.

**B.    The Termination Decisions Followed Appropriate Interagency Consultation**

Relevant here, during a periodic review of TPS statuses, "after consultation with appropriate agencies of the Government," Secretary Noem shall review the conditions in the foreign state for which a TPS designation is in effect "and shall determine whether the conditions for such designation… continue to be met." 8 U.S.C. § 1254a(b)(3)(A). As stated above, Secretary Noem complied with the TPS procedural requirements by reviewing country conditions evidence before terminating TPS for Nepal, Honduras, and Nicaragua. *See supra* II(A). However, Plaintiffs additionally insist that Secretary Noem

1    did not comply with the TPS statute because she allegedly did not consult with the "appropriate

2    agencies"—specifically, the DOS—in terminating the TPS designations or basing her decision on that

3    consultation. Pls.' MSJ. at 18–20.

4        However, as Defendants stated prior and as the record reflects, Secretary Noem did consider

5    country conditions evidence *and* consulted with the appropriate agencies. First, the administrative record

6    contains substantial information on country conditions. For each individual TPS termination, the record

7    contains a TPS Country of Origin Information Consideration Report compiled by USCIS. *See* ECF 62-1

8    at 000008–000020; *see* ECF 63-1 at 000021–000036; *see* ECF 64-1 at 000015–000025. These USCIS

9    reports typically include several references to the DOS's most recent annual reports on human rights for

10   each individual country. *See* ECF 62-1 at 000008, 000013, 000017, 000020; *see* ECF 63-1 at 000024,

11   000025, 000027, 000029, 000030, 000033, 000034, 000035, 000036. Additionally, the administrative

12   records for the TPS terminations contain various years of the relevant country conditions reports on human

13   rights practices in the specific countries that were taken under consideration, as well as other DOS

14   publications. *See* ECF 62-1 at 000262–000282 (DOS 2023 Country Report on Human Rights Practices:

15   Honduras); *id*. at 000283–000318 (DOS 2024 Investment Climate Statements: Honduras); *id*. at 000319–

16   000321 (DOS December 10, 2024 Travel Advisory: Honduras); *see* ECF 63-1 at 000209–000267 (DOS

17   2023 Country Reports on Human Rights Practices: Nicaragua); *id*. at 000268–000290 (DOS 2023 Report

18   on International Religious Freedom: Nicaragua); *id*. at 000291–000319 (DOS 2024 Investment Climate

19   Statements: Nicaragua); *id*. at 000320–000328 (DOS 2024 Trafficking in Persons Report: Nicaragua); *id*.

20   at 000329–000332 (DOS: Nicaragua Travel Advisory); *see* ECF 64-1 at 000125–000165 (DOS 2022

21   Country Reports on Human Rights Practices: Nepal); *id*. at 000166–000208 (DOS 2021 County Reports

22   on Human Rights Practices: Nepal).

23       The Secretary also consulted with the State Department before making each decision. In this

24   context, "consultation" means "asking the advice or opinion of someone." Black's Law Dictionary (12th

25   ed. 2024); *see* 8 U.S.C. § 1254a(b)(3)(A). The statute thus affords considerable latitude for the Secretary

26   in satisfying that requirement. *See, e.g.*, *La. Forestry Ass'n Inc. v. Sec'y, U.S. Dep't of Labor*, 745 F.3d

27

28

653, 670-71 (3d Cir. 2014) (stating that when Congress grants an agency broad discretion in conducting certain activities, it affords discretion to the agency in consulting with outside entities so long as there is a "reasonable connection" between the outside agency's findings and the final agency decision). *See generally Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978) (agencies are generally free to develop their own procedures).

The administrative records for each challenged termination contain recommendations—in other words, "advice or opinion[s]"—from the Department of State. *See* ECF 62-1 at 000006–000007 (April 8, 2025 communication from Marco Rubio recommending the termination of TPS for Honduras); *see* ECF 63-1 at 000006–000017 (DOS recommendation regarding TPS for Nicaragua, dated November 19, 2024, analyzing country conditions in Nicaragua, environmental disasters, any extraordinary/temporary conditions that would prevent Nicaraguan nationals from returning, and discretionary factors); *id.* at 000018–000020 (recommendation from Antony Blinken recommending the termination of TPS for Nicaragua); ECF 64-1 at 000006–000007 (January 16, 2025 recommendation from Antony Blinken recommending the termination of TPS for Nepal); *id.* at 000008–000014 (DOS recommendation regarding TPS for Nepal, dated December 20, 2024, analyzing environmental disasters in Nepal, discretionary factors, and any extraordinary/temporary conditions that would prevent Nepal nationals from returning). Consequently, Secretary Noem consulted with appropriate agencies of the Government before making each determination, and she reviewed the conditions in each foreign country before making her TPS termination determinations. 8 U.S.C. § 1254a(b)(3)(A).

Plaintiffs argue that the Secretary was required to obtain two specific documents from the State Department in order to accomplish consultation. Pls.' MSJ at 18–19. But the statute nowhere imposes such a requirement; nor does the plain meaning of its general requirement for "consultation." If Congress had meant to impose such a specific requirement, it could readily have said so, but it did not. Plaintiffs support their argument with a case concluding that certain comment letters were insufficient to comply with a consultation requirement. *Campanale & Sons, Inc. v. Evans*, 311 F.3d 109, 119–20 (1st Cir. 2022). But that non-binding, out-of-circuit case established only that (1) participation in a required public

1    comment process did not simultaneously discharge a separate consultation requirement, and (2) the letters

2    it considered were insufficient because they only involved "general discussions… rather than specific

3    views[.]" *Id*. at 118–19. It did not purport to require a specific form of consultation as a general matter.

4    And it means the case offers no insight for the facts here, where DOS affirmatively offered its opinion and

5    recommendation on whether TPS should be terminated for Nepal, Honduras, and Nicaragua. Indeed, this

6    Circuit has acknowledged that the flexibility in consultation processes. *Cf. Karuk Tribe of Cal. v. U.S.*

7    *Forest Serv.*, 681 F.3d 1006, 1029 (9th Cir. 2012) (acknowledging formal and information consultation

8    under Endangered Species Act).

9            Last, Plaintiffs argue that the termination notices were drafted before the country conditions

10    memos were reviewed. Pls.' MSJ at 19–20. Plaintiffs further assert that "improvements" from the county

11    conditions analyses were "cherry picked" "to support the preordained decisions." *Id*. at 20. But the time a

12    document is first *drafted* does not tell the Court anything about what the Secretary considered between

13    when the document was drafted and when the decision was made. A draft in no way precludes

14    consideration of documents or consultation occurring after the document was drafted, just as a judge may

15    draft an opinion or order before a hearing in a case but still consider the arguments presented at the hearing.

16    And nothing about the Secretary's decisions suggests that she cherry-picked only favorable information—

17    again, even assuming this highly evidence-specific, country-specific argument could somehow bypass the

18    bar on review of the Secretary's determinations related to TPS terminations. *See* ECF 62-1 at 000003

19    ("The World Bank has been helping Honduras address its most *pressing needs and development*

20    *challenges*, including supporting the Honduran government's emergency response and post disaster

21    reconstruction efforts.") (emphasis added); *see* ECF 63-1 at 000003 ("Overall, *certain conditions for TPS*

22    *designation of Nicaragua may continue*; however, there are notable improvements[.]") (emphasis added);

23    *see* ECF 64-1 at 000003 ("According to the Internal Displacement Monitoring Centre, *while some of the*

24    *people displaced by the earthquake continue to experiences ongoing socioeconomic impacts*, 90% of the

25    surveyed internally displaced people had bought a new home.") ("Though Nepal *has continued to*

26    *experience subsequent regional environment events, including flooding and landslides*, the government

27

28    DEFS' OPP. TO PLS' MOTION FOR PARTIAL SUMMARY JUDGMENT
        No. 3:25-cv-5687-TLT
        13

1    has made improvements to its preparedness and response capacity.") (emphasis added). Consequently,

2    Plaintiffs have failed to demonstrate that Secretary Noem "cherry picked" evidence to support a

3    preordained decision, and to show that Secretary Noem's decisions violated the TPS statute as her

4    decisions were based on both interagency consultation *and* country conditions reviews. Consequently,

5    once again, the Defendants are entitled to judgment on those claims.

6    ### C.    The Terminations Did Not Conflict with the TPS Statute

7        Secretary Noem also appropriately considered U.S. national interests and immigration policies in

8    her decisions. *See* ECF 64-1 at 0002 (*citing* E.O. 14156, Protecting the American People Against Invasion,

9    sec. 16 (b), 90 FR 8443, 8446 (Jan. 20, 2025; published Jan. 29, 2025)); *see also* ECF 62-1 at 000006-

10   000007 (Secretary of State Marco Rubio finding that "permitting nationals of Honduras to remain

11   temporarily in the United States…is contrary to the national interest."). Indeed, the Secretary's TPS

12   authority inevitably requires her to make sensitive assessments, including foreign country conditions and

13   whether a country is able to adequately handle the return of its nationals. *See Harisiades v. Shaughnessy*,

14   342 U.S. 580, 588-89 1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with

15   contemporaneous policies in regard to the conduct of foreign relations [and] the war power."). And U.S.

16   foreign and immigration policies are relevant factors in making TPS determinations. *See Lopez v. Ashcroft*,

17   366 F.3d 799, 807 n.6 (9th Cir. 2004) (The agency "does not have to write an exegesis on every contention.

18   What is required is merely that it consider the issues raised, and announce its decision in terms sufficient

19   to enable a reviewing court to perceive that it has heard and thought and not merely reacted."); *cf. Garland

20   v. Ming Dai*, 592 U.S. 357, 368 (2021) (in reviewing an agency's factual determination, a court must ask

21   whether "the agency's finding qualifies as one of potentially many reasonable possibilities" and cannot

22   give "conclusive weight to any piece of testimony that cuts against the agency's finding"). Nevertheless,

23   the Supreme Court has held that it is "hardly improper for an agency head to come into office with policy

24   preferences and ideas, discuss them with affected parties, sound out other agencies for support, and work

25   with staff attorneys to substantiate the legal basis for a preferred policy." *Dep't of Com*, 588 U.S. at 783.

26   Here, while Secretary Noem appropriately acknowledged that she considered the Administration's

27

28

1    immigration policy prerogatives, the evidence provided also demonstrates that she evaluated country

2    conditions in Nepal, Honduras, and Nicaragua, *see* ECF 64-1; ECF 62-1; ECF 63-1, and consulted with

3    appropriate Government agencies, *see* ECF 64-1 at 000006-000014; see ECF 62-1 at 000006-000007; and

4    ECF 63-1 at 000006-000020, considerations which are required under the TPS statute. As such, the

5    Terminations complied with the statutorily authorized criteria and should be upheld under the APA. *See*

6    *Dep't of Com.*, 588 U.S. at 781 ("[A] court may not set aside an agency's policymaking decision solely

7    because it may have been influenced by political considerations or prompted by an Administration's

8    priorities …. Such decisions are routinely informed by unstated considerations of politics, the legislative

9    process, public relations, interest groups, foreign relations, and national security concerns (among

10   others)); *Ramos*, 975 F.3d at 897-98 ("It is expected—perhaps even critical to the functioning of

11   government—for executive officials to conform their decisions to the administration's policies.)

12         The termination decisions are the result of a careful analysis undertaken by a Cabinet official in

13   consultation with other Cabinet officials and their agencies, the upshot of which was that the conditions

14   giving rise to the country's TPS designation no longer persisted. Plaintiffs have not—and cannot—point

15   to any flaw within her reasoning, nor can they demonstrate that these Terminations were contrary to the

16   statutory guidelines. Therefore, Plaintiffs APA claims fail, and Defendants are entitled to judgment on

17   those claims.

18   **III.    The Terminations Were Not Arbitrary and Capricious and Did Not Violate the Change-in-Position Doctrine**

19

20         Last, Plaintiffs argue that any departure from DHS's "longstanding past practices of considering

21   the full range of country conditions" violates the APA's change-in-position doctrine, and that the Secretary

22   violated that doctrine by declining to consider intervening country conditions. Pls.' MSJ. at 20-24. Under

23   the change-in-position doctrine, "[a]gencies are free to change their existing policies as long as they

24   provide a reasoned explanation for the change," "display awareness that [they are] changing position,"

25   and consider "serious reliance interests." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–222

26   (2016) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). The doctrine, however,

27   applies only where an agency formally has made a "hard-and-fast commitment" to a particular course of

28

1  action or reversed or disavowed an established "earlier [agency] position" in which regulated persons or

2  entities had a "serious reliance interest." *FDA v. Wages and White Lion Invs.*, 604 U.S. 542, 568, 573,

3  583 (2025). "A legitimate reliance interest is a high bar, 'requiring, for example, decades of industry

4  reliance on an agency's prior policy.'" *Shenzhen Youme Info. Tech. Co. v. FDA*, 147 F.4th 502, 513 (5th

5  Cir. 2025) (quoting *Wages & White Lion*, 604 U.S. at 585).

6  　　At the outset, there was no change in position. Neither DHS nor previous secretaries have

7  established a policy of considering all intervening country conditions. Plaintiffs attempt to infer such a

8  policy from previous TPS decision documents, but they identify no court that has ever divined an agency

9  policy from such an informal, unspoken past conduct. The cases they cite notably rested on actually

10  announced previous agency positions. For example, *FCC v. Fox Television Stations, Inc.* involved a

11  challenge to the FCC's "fleeting expletive" enforcement policy, which it had formally published and then

12  changed. 556 U.S. at 510-13. *Wages and White Lion* involved a change in a published guidance document.

13  604 U.S. at 570-71. And *Encino Motorcars* involved a change to a regulation. 579 U.S. at 222. Even

14  Plaintiffs' best example, *Southwest Airlines v. FERC*, comes nowhere close to their preferred rule. That

15  case held merely that an agency must justify departures from its analysis in adjudications, not that *anything*

16  can amount to an agency policy to which the agency may become bound unawares. 926 F.3d 851, 858

17  (D.C. Cir. 2019).

18  　　Moreover, even agencies could become bound to unspoken policies as Plaintiffs argue, there is no

19  such policy here. Prior administrations have repeatedly terminated TPS despite continued concerning

20  country conditions. Contrary to Plaintiffs' contentions, DHS is in no way obligated to extend TPS based

21  on intervening events wholly disconnected from the original designation. Termination notices from

22  previous administrations readily refute Plaintiffs' claim that there was a prior policy obligated DHS to

23  consider or extend TPS based on intervening events.

24  　　Contrary to Plaintiffs' arguments, prior administrations have terminated TPS despite ongoing

25  problems in the designated countries of the types Plaintiffs allege here. *See, e.g.*, *Termination of*

26  *Designation of Angola Under the Temporary Protected Status Program*, 68 Fed. Reg. 3896-01, 3896 (Jan.

27

28

27, 2003) (terminating Angola's TPS designation despite the remaining "challenge of assisting an estimated 4 million displaced Angolan nationals[,]" ongoing "concern that Angola lacks housing, medical services, water systems, and other basic services destroyed by a 27-year-long war[,]" and "as many as 8 million landmines planted in Angolan soil"); *Termination of the Province of Kosovo in the Republic of Serbia in the State of the Federal Republic of Yugoslavia (Serbia-Montenegro) Under the Temporary Protected Status Program*, 65 Fed. Reg. 33,356-01, 33,356 (May 23, 2000) (terminating Kosovo's TPS designation because "[a]lthough conditions remain difficult with bursts of ethnically-motivated violence, the situation in Kosovo cannot now be classified as 'ongoing internal conflict' "). These terminations—like those challenged here—reflect a complex array of considerations and judgments concerning, e.g., a country's ability to adequately accept the return of its nationals. This is precisely why Congress has excluded them from judicial review.

Likewise, prior administrations have repeatedly terminated TPS because the conditions leading to the original designation no longer satisfied the TPS statute's criteria—precisely the standard Plaintiffs allege Secretary Noem incorrectly applied here. *Six-Month Extension of Temporary Protected Status Benefits for Orderly Transition Before Termination of Guinea's Designation for Temporary Protected Status,* 81 Fed. Reg. 66,064-01, 66,065-66 (Sept. 26, 2016) (noting that "[w]hile the impacts of the [Ebola] epidemic pose a lasting challenge to Guinea's economy and the capacity of its health system to provide treatment for preventable or treatable conditions," "the extraordinary and temporary conditions that prompted Guinea's TPS designation have substantially resolved and no longer prevent nationals of Guinea from returning to Guinea in safety"); *Termination of the Designation of Burundi for Temporary Protected Status,* 72 Fed. Reg. 61,172-02, 61,173 (Oct. 29, 2007) ("[C]onditions that warranted the initial designation of TPS [for Burundi] in 1997 and the re-designation in 1999 no longer continue to be met.").

Last, even if the conditions the Secretary reviewed were a change of agency position, that change was justified. Even if Secretary Noem weighed the factors under the TPS statute differently from previous decision-makers, her determinations were plainly "permissible under the statute," and she provided good

1   reasons to support the terminations—as the detailed considerations of improved country conditions were

2   abundantly evidenced by the Federal Register notices. *See* ECF No. 63-1; ECF No. 62-1; ECF No. 64-1.

3        In sum, there existed no rule, standard, interpretation, pattern, practice, or policy from which

4   Secretary Noem departed in terminating TPS for Nepal, Honduras, and Nicaragua, and Defendants have

5   complied with the APA.

6                                              **CONCLUSION**

7        For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion

8   for partial summary judgment and enter summary judgment in Defendants' favor.

9   Dated: October 28, 2025

10

11                                              Respectfully Submitted,

12                                              BRETT SHUMATE
                                                Assistant Attorney General

13

14                                              YAAKOV M. ROTH
                                                Principal Deputy Assistant Attorney General

15                                              WILLIAM H. WEILAND
                                                Acting Assistant Director

16

17                                              LAUREN BRYANT
                                                CATHERINE ROSS

18                                              ERIC SNYDERMAN
                                                JEFFREY HARTMAN

19                                              ILANA KRAMER
                                                DANIEL CAPPELLETTI

20                                              LORI MACKENZIE

21                                              Trial Attorneys

22                                              */s/ Shelby Wade*

23                                              SHELBY WADE
                                                Trial Attorney

24                                              U.S. Department of Justice, Civil Division
                                                Office of Immigration Litigation

25                                              P.O. Box 868 Ben Franklin Station
                                                Washington, D.C. 20044

26

27                                              *Counsel for Defendants*

28   DEFS' OPP. TO PLS' MOTION FOR PARTIAL SUMMARY JUDGMENT
     No. 3:25-cv-5687-TLT
     18