BRETT SHUMATE
Assistant Attorney General
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM H. WEILAND
Acting Assistant Director
ERIC SNYDERMAN
ILANA KRAMER
DANIEL CAPPELLETTI
SHELBY WADE
LORI MACKENZIE
LAUREN BRYANT
CATHERINE ROSS
JEFFREY HARTMAN
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et. al*., <br><br> Plaintiff, <br> v. <br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et. al*., <br><br> Defendants. | Case No. 3:25—cv-5687 <br><br> **DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Judge: Hon. Trina L. Thompson <br> Date:  November 18, 2025 <br> Time: 9:30 a.m. <br> Place: Courtroom 9, 19th Floor, <br>        San Francisco U.S. Courthouse |

Dated: November 4, 2025

Respectfully submitted,

BRETT SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

WILLIAM H. WEILAND
Acting Assistant Director

ERIC SNYDERMAN
SHELBY WADE
DANIEL CAPPELLITTI
LAUREN BRYANT
CATHERINE ROSS
ILANA KRAMER
LORI MACKENZIE
JEFFREY HARTMAN
Trial Attorneys

*/s/ Catherine Ross*
Catherine Ross
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7082
Catherine.ross@usdoj.gov

*Attorneys for the Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .........................................................................................................................2

I.    Plaintiffs' Claims Are Unreviewable under the APA...........................................2

      A.    The TPS Statute Precludes Judicial Review ............................................2

      B.    Additional Barriers to Review of Plaintiffs' Claims................................3

II.   The Secretary's Determinations Were Lawful under the APA .............................4

III.  Plaintiffs' Constitutional Claims Fail as a Matter of Law .................................11

CONCLUSION....................................................................................................................14

1

# TABLE OF AUTHORITIES

2

3

Page(s)

4

### Cases

5

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................. 11
6

*City of Arlington v. FCC*,
    569 U.S. 290 (2013) .................................................................................................... 3
7

*Ctr. for Biological Diversity v. BLM*,
    141 F.4th 976 (9th Cir. 2025) ..................................................................................... 9
8

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) .................................................................................................. 13
9

*FDA v. Wages & White Lion*,
    604 U.S. 542 (2025) .............................................................................................. 9, 10
10

11

*Garland v. Ming Dai*,
    593 U.S. 357 (2021) ................................................................................................ 6, 7
12

*Gonzalez & Gonzales Bonds & Ins. Agency, Inc. v. DHS*,
    107 F.4th 1064 (9th Cir. 2024) ................................................................................... 2
13

*Hardt v. Reliance Standard Life Ins. Co.*,
    560 U.S. 242 (2010) .................................................................................................... 2
14

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952) .................................................................................................. 12
15

*Jean v. Nelson*,
    727 F.2d 957 (11th Cir. 1984) .................................................................................. 12
16

*Kandamar v. Gonzales*,
    464 F.3d 65 (1st Cir.2006) ....................................................................................... 12
17

*Mathews v. Diaz*,
    426 U.S. 67 (1976) ............................................................................................. 12, 13
18

*Midi v. Holder*,
    566 F.4th 132 (4th Cir. 2009) ................................................................................... 12
19

*Nakka v. USCIS*,
    111 F.4th 995 (9th Cir. 2024) ..................................................................................... 4
20

*Narenji v. Civiletti*,
    617 F.2d 745 (D.C. Cir. 1979) .................................................................................. 12
21

*National TPS Alliance v. Noem*,
    150 F.4th 1000 (9th Cir. 2025) ................................................................................... 3
22

*Nunez-Reyes v. Holder*,
    646 F.3d 684 (9th Cir. 2011) .................................................................................... 12
23

*Organized Vill. of Kake v. USDA*,
    795 F.3d 956 (9th Cir. 2015) ...................................................................................... 9
24

25

*Orr v. Bank of America, NT & SA*,
    285 F.3d 764 (9th Cir. 2002) .................................................................................... 11
26

*Proyecto San Pablo v. INS*,
    189 F.3d 1130 (9th Cir. 1999) ................................................................................ 2, 4
27

28

*Rajah v. Mukasey*,
 544 F.3d 427 (2d Cir. 2008)................................................................................................. 12
*Ramos v. Wolf*,
 975 F.3d 872 (9th Cir. 2020) ................................................................................. 2, 13, 14
*Reeb v. Thomas*,
 636 F.3d 1224 (9th Cir. 2011) ............................................................................................. 2
*Regents of the Univ. of Cal.*,
 591 U.S. 1 (2020)............................................................................................................ 12, 14
*Sw. Airlines Co. v. FERC*,
 926 F.3d 851 (D.C. Cir. 2019) ............................................................................................ 9
*Trump v. Hawaii*,
 585 U.S. 667 (2018)...................................................................................................... 11, 12
*United States v. Howell*,
 231 F.3d 615 (9th Cir. 2000) ............................................................................................ 11
*Vega v. USCIS*,
 65 F.4th 469 (9th Cir. 2023) ................................................................................................ 4
*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
 429 U.S. 252 (1977)...................................................................................................... 13, 14
*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
 435 U.S. 519 (1978)........................................................................................................ 6, 7

**Statutes**

5 U.S.C. § 701(a)(1)............................................................................................................ 1, 2
5 U.S.C. § 701(a)(2)............................................................................................................ 1, 3
5 U.S.C. § 706 ......................................................................................................................... 4
6 U.S.C. § 202 ......................................................................................................................... 2
8 U.S.C. § 1252(f)(1)...................................................................................................... 1, 4, 5
8 U.S.C. § 1254a ............................................................................................................ *passim*
8 U.S.C. §§ 1103(a) .............................................................................................................. 2

**Regulations**

65 Fed. Reg. 33,356-01 (May 23, 2000)............................................................................ 10
68 Fed. Reg. 3896 (Jan. 27, 2003) ........................................................................................ 9
72 Fed. Reg. 61,172 (Oct. 29, 2007) .................................................................................. 10
81 Fed. Reg. 66,064 (Sept. 26, 2016) ................................................................................ 10
90 Fed. Reg. 8443 (Jan. 29, 2025) ...................................................................................... 10

**PRELIMINARY STATEMENT**

Defendants, Kristi Noem, in her official capacity as Secretary of Homeland Security, and U.S. Department of Homeland Security, submit this reply memorandum in support of Defendants' Motion for Summary Judgment, ECF No. 142 ("Def. Mot."), and to address the arguments in Plaintiff's Opposition to Defendants' Motion for Summary Judgment, ECF No. 167 ("Pls.' Opp.")

The issues before this Court are straightforward. First, Plaintiffs' claims are unreviewable because Congress has explicitly barred judicial review of "any determination . . . with respect to the designation, or termination, or extension of a designation of foreign state" for Temporary Protected Status ("TPS"). 8 U.S.C. § 1254a(b)(5)(A); *see also* 5 U.S.C. § 701(a)(1) (precluding review under the APA "to the extent" that other "statutes preclude judicial review"). Plaintiffs' claims challenging the basis of, and procedure for, Secretary Noem's termination decisions for Nepal, Honduras, and Nicaragua fit squarely within the statute's bar on judicial review. Plaintiffs' claims are also unreviewable to the extent that they continue to challenge an "agency action that is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also* 8 U.S.C. § 1252(a)(2)(B)(ii). Additionally, because Plaintiffs seek to "enjoin or restrain" the Secretary's authority to designate, extend, or terminate TPS under 8 U.S.C. § 1254a(b), their claims are foreclosed by 8 U.S.C. § 1252(f)(1). Even if Plaintiff's claims were reviewable, Plaintiffs have failed to show that the determinations were "arbitrary and capricious" or otherwise contrary to law. Instead, the record conclusively demonstrates that Secretary Noem consulted with the appropriate government agencies and conducted a comprehensive review of country conditions in determining that Nepal, Honduras, and Nicaragua no longer met the conditions for their TPS designations, in accordance with 8 U.S.C. § 1254a(b)(3)(B). Because the Secretary's terminations were consistent with the statutory requirements, the Court should deny Plaintiffs' Motion and enter summary judgment in favor of Defendants.

**ARGUMENT**

**I.    Plaintiffs' Claims Are Unreviewable Under the APA**

    **A.  The TPS Statute Precludes Judicial Review**

The clear intent of Congress was to grant the Secretary broad and unreviewable discretion in the exercise of her responsibilities under the TPS statute. *See* 8 U.S.C. §§ 1103(a), 1254a(b); 6 U.S.C. § 202; *see also Gonzalez & Gonzales Bonds & Ins. Agency, Inc. v. DHS*, 107 F.4th 1064, 1073-1074 (9th Cir. 2024) (In "analyzing the statutory language, [we] assume that the ordinary meaning of the language accurately expresses the legislative purpose.") (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)). The TPS statute is unambiguous: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A). And at minimum, the statute forecloses their arbitrary-and-capricious claims. Def. Mot. at 10.

Despite this unequivocal text, Plaintiffs continue to assert that judicial review over their claims is not foreclosed because they are challenging "the collateral process by which Secretary Noem reached her decisions." Pls.' Opp. at 11. "Plaintiffs cannot obtain judicial review over what is essentially an unreviewable challenge to specific TPS terminations by simply couching their claim as a collateral" challenge. *Ramos v. Wolf*, 975 F.3d 872, 893 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023).  Here, Plaintiffs' challenges to the Secretary's terminations, including the factors and criteria that Secretary Noem used in making these determinations, are effectively challenges to the substance of those determinations. *See id.* "True procedural challenges confront an agency's methods or procedures and do not depend on the facts of any given individual action." *City of Rialto v. W. Coast Loading Corp.*, 5871 F.3d 865, 875 (9th Cir. 2009). The TPS statute accordingly precludes judicial review. *See* 8 U.S.C. § 1254a(b)(5)(A); 5 U.S.C. § 701(a)(1)) (review is not available "to the extent that" a relevant statute precludes it); *see also Reeb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011); *cf. Proyecto San Pablo v. INS*, 189 F.3d 1130, 1141 (9th Cir. 1999) (rejecting attempt to evade judicial review bar by arguing pretext and observing, "[A]rguing that a denial was pretextual is no

1  different from arguing that it was wrong. Both arguments challenge the validity of the grounds for

2  denial.").

3          The Ninth Circuit's recent decision in *National TPS Alliance v. Noem*, 150 F.4th 1000, 1017 (9th

4  Cir. 2025) ("NTPSA I") does not support Plaintiffs. Pls.' Opp. at 11. The Ninth Circuit concluded that

5  courts may review questions regarding "whether the Secretary has the statutory authority to vacate a

6  prior extension of TPS," *NTPSA I*, 150 F.4th at 1017, but it did not review the plaintiffs' APA claims.

7  Plaintiffs—for the first time—claim that the Secretary *lacks authority* to execute the terminations in the

8  because she did not adequately consult with the State Department or consider country conditions. Pls.'

9  Opp. at 11; *NTPSA I*, 150 F.4th at 1017. That sleight of hand does not work. For one thing, the Ninth

10  Circuit highlighted in *NTPSA I* that its review was permissible only because a vacatur was not a

11  "determination…with respect to the designation, or termination or extension" of TPS, but there is no

12  argument that Plaintiffs' claims here challenge anything but a TPS termination. 150 F.4th at 1017. For

13  another, this claim also goes to the substance of the Secretary's decisions and the consultations

14  underlying it—namely, that she reached an erroneous conclusion by failing to adequately consider other

15  agencies' views, reports, and the evidence before her.  That is exactly the type of second-guessing that

16  § 1254a(b)(5)(A) forbids. Indeed, if Plaintiffs' claims could somehow count as a challenge to statutory

17  authority, that would only show that *nearly any* claim can be so reconceptualized and eviscerate the

18  statutory bar on judicial review. *See City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) (making this

19  point). Because Plaintiffs challenge determinations with respect to the terminations of TPS designations,

20  their claims are not reviewable and fail at the outset. *See* Def. Mot at 9.

21      **B.  Additional Barriers to Review of Plaintiffs' Claims**

22          Plaintiffs' challenges to the Secretary's decision regarding the length of an orderly transition

23  period are also unreviewable under the APA because the length of a wind-down period is "committed to

24  agency discretion by law." *See* 5 U.S.C. § 701(a)(2). The Secretary's decision whether to invoke the

25  "option" to afford TPS recipients with an "orderly departure" period that she "determines to be

26  appropriate" beyond the 60-day statutory default is entirely discretionary. 8 U.S.C. § 1254a(d)(3).

27
28

Plaintiffs' only response is to argue that past agency has narrowed the Secretary's discretion, Pls.' Opp. at 12, but as explained below, there is no uniform past practice, and even if there were, past agency decisions would not confine the Secretary's discretion prospectively.

Review of Plaintiffs' claims is also barred by 8 U.S.C. § 1252(a)(2)(B)(ii), which prohibits review of "any other decision or action of the Secretary of Homeland Security the authority for which is specified to be in [her] discretion." Plaintiffs respond that this provision does not apply to their claims, but the only decision they cite interpreted a *different* provision and turned on the specific language of that different provision. Pls.' Opp. at 12 (citing *Nakka v. USCIS*, 111 F.4th 995, 1015 (9th Cir. 2024) (interpreting 8 U.S.C. § 1252(a)(2)(B)(i)). Nevertheless, Plaintiffs cannot elude this sweeping jurisdictional bar, *see Patel v. Garland*, 328, 338-39 (2022), by framing their challenge as procedural or alleging pretext. *See Vega v. USCIS*, 65 F.4th 469, 472 (9th Cir. 2023) ("[I]f the statute specifies that the decision is wholly discretionary, regulations or agency practice will not make the decision reviewable and exempt from § 1252(a)(2)(B)(ii)." (quotation marks omitted)); *Proyecto San Pablo*, 189 F.3d at 1141 ("[A]rguing that a denial was pretextual is no different from arguing that it was wrong."). Finally, to the extent that Plaintiffs seek to set aside the Secretary's determinations under 5 U.S.C. § 706, Pls.' Opp. at 12, Defendants preserve their argument that such relief is barred under 8 U.S.C. § 1252(f)(1). *See* Def. Mot. at 12. Moreover, while recognizing that the Ninth Circuit has held otherwise, the government maintains the view—and preserves the argument—that § 1252(f)(1) also bars declaratory relief. *Id.*

## II.   The Secretary's Determinations Were Lawful under the APA

Plaintiffs' opposition to Defendants' motion for summary judgement reprises many of the same arguments that appear in their memorandum in support of their motion for partial summary judgment. *See* Pls.' Opp at 13-26. As explained in Defendant's opposition to that motion, the record conclusively demonstrates that Secretary Noem took the steps required by the TPS statute—including a periodic review of country conditions and inter-agency consultation—in her decisions to terminate TPS for Nepal,

Honduras, and Nicaragua. See ECF No. 166 at 6-18. However, Plaintiffs ignore the irrefutable evidence in the record and insist that the Secretary's determinations were "preordained." Pls.' Opp. at 13.

Specifically, Plaintiffs contend that Defendants "cherry-picked" favorable information from the country conditions analyses to support a preordained decision. *Id*. at 13-14. Putting aside the fact that this argument urges a quintessential re-weighing of the evidence, which is not permitted under the APA, it is also without merit. As Defendants have previously explained, however, nothing within the Secretary's determinations demonstrate that she "cherry-picked" improvements—in fact, the decisions demonstrate that the Secretary contemplated numerous considerations in her country conditions analysis. *See* ECF No. 166 at 13-14 (citing ECF 62-1 at 000003 ("The World Bank has been helping Honduras address its most *pressing needs and development challenges*, including supporting the Honduran government's emergency response and post disaster reconstruction efforts.") (emphasis added); see ECF 63-1 at 000003 ("Overall, *certain conditions for TPS designation of Nicaragua may continue*; however, there are notable improvements[.]") (emphasis added); see also ECF 64-1 at 000003 ("According to the Internal Displacement Monitoring Centre, while *some of the people displaced by the earthquake continue to experiences ongoing socioeconomic impacts*, 90% of the surveyed internally displaced people had bought a new home."); *id*. ("Though Nepal *has continued to experience subsequent regional environment events, including flooding and landslides*, the government has made improvements to its preparedness and response capacity.") (emphasis added).

In support of their argument that Secretary Noem "cherry-picked" favorable evidence, Plaintiffs point to USCIS's Decision Memo recommending the termination of TPS for Honduras. Pls.' Opp. at 14 (*citing* ECF No. 145-56). But that evidence further contradicts Plaintiffs' claims. Indeed, the Decision Memo demonstrates that USCIS identified the improving country conditions as an explanation for their determination that "Honduras no longer meets the requirements for TPS designation." *See* ECF No. 145-56 at 5; *see also id*. (*citing* to the USCIS RAIO Country Conditions Report and USCIS OP&S Country Conditions Report for Honduras). Far from "preordained," the Memo shows that Secretary Noem reviewed country conditions prior to making her determination. ECF No. 145-56 (submitted to the

Secretary on May 1, 2025 and signed by the Secretary on May 5, 2025). As such, Plaintiffs have not—and cannot—point to any evidence showing that Secretary Noem's terminations were predetermined. The mere fact that Secretary Noem considered improving country conditions fails to support Plaintiffs' argument that Defendants cherry-picked evidence. Instead, all Plaintiffs have shown is that Secretary Noem reviewed the evidence within the record and, based on her findings, determined that Nepal, Nicaragua, and Honduras, no longer continued to meet the conditions for their initial TPS designations, consistent with the statutorily authorized criteria under § 1254a.

Plaintiffs also argue that Secretary Noem failed to conduct inter-agency consultation in making her determinations. Pls' Opp. at 14. Contrary to this assertion, the administrative records for each challenged termination demonstrate that the Department of State provided an assessment of country conditions and its recommendations of whether TPS should be terminated for Honduras, Nepal, and Nicaragua, which the Secretary properly considered in making her determinations. Plaintiffs admit that this consultation occurred, but they argue that this consultation "do[es] not suffice" because the TPS statute "requires contemporaneous consultation about country conditions." Pls.' Opp. at 14.  First, nothing within the statutory language imposes such a specific requirement, and Plaintiffs fail to point to any authority that requires consultation beyond what Secretary Noem has done here. *See Garland v. Ming Dai*, 593 U.S. 357, 365 (2021) (underscoring settled principle that courts may not impose "additional judge-made procedural requirements on agencies that Congress has not prescribed and the Constitution does not compel." (citing *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978)). Plaintiffs base their assertion on a Government Accountability Office report describing the process that occurred for certain previous TPS decisions. *See* Pls' Opp. 14.[1] But the report itself acknowledged that DHS "generally consults with State on TPS decisions," but "it is not specifically required to do so under the statute." Second, the record reflects that Secretary Noem considered both

---

[1] GAO, Temporary Protected Status: Steps Taken to Inform and Communicate Secretary of Homeland Security's Decisions (Apr. 3, 2020) https://www.gao.gov/products/gao-20-134, ("GAO Report")

1   assessments of country conditions from Department of State, *see* ECF 63-1 at 000006–000017 (DOS

2   analysis of country conditions in Nicaragua, environmental disasters, any extraordinary/temporary

3   conditions that would prevent Nicaraguan nationals from returning, and discretionary factors) and ECF

4   64-1 at 000008–000014 (DOS assessment of environmental disasters in Nepal, discretionary factors, and

5   any extraordinary/temporary conditions that would prevent Nepal nationals from returning), as well as the

6   Department's recommendations regarding TPS for the respective countries, *see* ECF 62-1 at 000006–

7   000007 (DOS Recommendation, dated April 8, 2025, recommending  for the termination of TPS for

8   Honduras); ECF No. 63-1 at 000018–000020 (DOS recommendation, dated November 19, 2024, for the

9   termination of TPS for Nicaragua); ECF 64-1 at 000006–000007 (DOS Recommendation, dated January

10  16, 2025, recommending the termination of TPS for Nepal), before making each determination. Nothing

11  further is required under the TPS statute or the APA. 8 U.S.C. § 1254a(b)(3)(A). And "[i]t is long settled

12  that a reviewing court is 'generally not free to impose' additional judge-made procedural requirements on

13  agencies that Congress has not prescribed and the Constitution does not require." *Garland v. Ming Dai*,

14  593 U.S. 357, 365 (2021) (quoting *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 524

15  (1978)). Because the record demonstrates that Secretary Noem consulted with appropriate agencies of the

16  Government and that her determinations were based on an objective review of country conditions,

17  Plaintiffs have failed to show that the terminations were "predetermined" or "without observance of

18  procedure required by law." Pls' Opp. at 13. As such, Defendants are entitled to summary judgement on

19  these claims.

20      Additionally, Plaintiffs fail to substantiate any claim that the Secretary was statutorily required to

21  consider country conditions outside of those that gave rise to the TPS designations and, in declining to do

22  so, violated that APA. Pls' Opp. at 15-16. The statutory language is clear: "[i]f the [Secretary] determines

23  under subparagraph (A) that a foreign state . . . *no longer continues to meet the conditions for designation*

24  under paragraph (1), the [Secretary] shall terminate the designation." (emphasis supplied). The statute thus

25  tasks the Secretary with considering only the "conditions for designation"—i.e., the country conditions

26  underscoring the TPS designation—and determining whether the country "no longer continues to meet

27

28

1    [those] conditions." 8 U.S.C. § 1254a(b)(3)(B). While Plaintiffs attempt to infer that the statute does not

2    tie the criteria to the "disaster that triggered its initial designation," Pls' Opp. at 16, this argument

3    overlooks statutory language tying a country's TPS designation to specific events—i.e., "an earthquake,

4    flood, drought, epidemic, [or] … other environmental disaster." 8 U.S.C. § 1254a(b)(1)(B). The statute

5    also emphasizes that the conditions that give rise to the TPS designation must be "substantial" and

6    "temporary." *See id.* § 1254a(b)(1)(B)(i) (the Secretary may designate a country for TPS if she finds,

7    among other things, that an environmental disaster causes a "substantial, but temporary, disruption of

8    living conditions"). They must also be substantial enough that "the foreign state is unable, temporarily, to

9    handle adequately the return to the state of aliens who are nationals of the state. *Id.* § 1254a(b)(1)(B)(ii).

10   Thus, when the statute mandates that the Secretary periodically evaluate whether "the conditions for [a

11   country's TPS] designation … continue to be met," *id.* § 1254a(b)(3)(A), it follows that the Secretary is

12   to evaluate whether the "temporary" conditions caused by the event that gave rise to the TPS designation

13   continue to exist to such an extent that the foreign state is "*unable, temporarily, to handle adequately* the

14   return" of its nationals. Nothing in the statute states that periodic evaluation of a TPS designation must

15   incorporate every intervening country condition unrelated to the reason for the designation. That position

16   creates no absurdities, contra Plaintiffs. If an intervening crisis "like a more recent hurricane," Pls.' Opp.

17   16, would independently support a TPS designation, the Secretary may designate the country for TPS

18   based on *that* crisis. What the statute does *not* require—and in fact forbids—is for a TPS designation

19   prompted by a specific disaster to persist long after the country has recovered from that disaster. *See* 8

20   U.S.C. § 1254a(b)(3)(B) (Secretary "shall terminate" designation when conditions are no longer met).

21   And in any event, the Secretary's determinations reflected that, whatever intervening changes had

22   occurred since the designation, the countries no longer met the statutory criteria for designation, including

23   that the respective countries were no longer temporarily unable to adequately handle the return of its

24   nationals.

25       Nor have Plaintiffs shown that Secretary Noem violated the APA's change-in-position doctrine by

26   declining to consider intervening country conditions. Pls.' Opp. at 17. First, even if one were to conclude

27

28

1  that Secretary Noem had not considered intervening country conditions (even though the record reflects
2  she did), neither DHS nor previous Secretaries have established a "hard-and-fast commitment" to
3  requiring the consideration of *all* intervening country conditions. *FDA v. Wages & White Lion*, 604 U.S.
4  542, 573 (2025). In the absence of any such requirement, Plaintiffs attempt to infer an agency pattern from
5  previous TPS determinations. But select instances of informal, unspoken past conduct is insufficient to
6  support Plaintiffs' claim of "longstanding past practice." Pls.' Opp. at 17; *Wages and White Lion*, 604
7  U.S. at 568, 573, 583 (holding that the change-in-position applies *only* where an agency formally has made
8  a "hard-and-fast commitment" to a particular course of action or reversed or disavowed an established
9  "earlier [agency] position…"). And they fail to point to any authority that applies the change-in-position
10  doctrine to informal, unannounced conduct. *See* Pls.' Opp. at 17. Instead, each authority they cite as
11  applying the change-in-position doctrine involved a deviation from a policy established by the agency's
12  conscious commitment. *See* Pls.' Opp. at 17; *Organized Vill. of Kake v. USDA*, 795 F.3d 956, 966 (9th
13  Cir. 2015) (deviation from policy established by published rule); *Wages and White Lion Inv.*, 604 U.S. at
14  569 (deviation from policy established by published guidance document); *Ctr. for Biological Diversity v.*
15  *BLM*, 141 F.4th 976, 995-99 (9th Cir. 2025) (deviation from "full field development standard" the agency
16  agreed it had adopted); *Sw. Airlines Co. v. FERC*, 926 F.3d 851, 858 (D.C. Cir. 2019) (deviation from
17  analysis established by precedential agency adjudications); ); *cf. Wages and White Lion Invs.*, 604 U.S. at
18  569 n.5 (assuming without deciding that the change-in-position doctrine "applies when an agency
19  abandons a position it first articulated in a nonbinding guidance document"). As Plaintiffs fail to
20  demonstrate that DHS has a policy of considering all intervening country conditions when terminating a
21  TPS designation, their change-in-position argument falls flat.
22      Even if the Secretary were bound by some unspoken policy, prior administrations have terminated
23  TPS determinations despite other ongoing problems in the designated countries. *See* ECF No. 166 (citing
24  *Termination of Designation of Angola Under the Temporary Protected Status Program*, 68 Fed. Reg.
25  3896-01, 3896 (Jan. 27, 2003); *Termination of the Province of Kosovo in the Republic of Serbia in the*
26  *State of the Federal Republic of Yugoslavia (Serbia-Montenegro) Under the Temporary Protected Status*

*Program*, 65 Fed. Reg. 33,356-01, 33,356 (May 23, 2000). Similarly, previous secretaries have terminated TPS after determining that the conditions leading to the original designation no longer satisfied the TPS statute's criteria. *Six-Month Extension of Temporary Protected Status Benefits for Orderly Transition Before Termination of Guinea's Designation for Temporary Protected Status,* 81 Fed. Reg. 66,064-01, 66,065-66 (Sept. 26, 2016); *Termination of the Designation of Burundi for Temporary Protected Status,* 72 Fed. Reg. 61,172-02, 61,173 (Oct. 29, 2007). Therefore, Plaintiffs have failed to show that Secretary Noem departed from past practice or otherwise violated the APA's change-in-position doctrine. Pls.' Opp. at 19. Rather, her determinations, like the terminations above, were entirely consistent with the TPS statute and the exercise of the broad discretion it affords her.

Finally, Plaintiffs failed to show that the Secretary's discretionary decision not to extend the orderly transitional period beyond the statutory default of 60 days was arbitrary and capricious. Pls.' Opp. at 19. As Defendants have explained, the Secretary's decision whether to invoke the "option" under 8 U.S.C. § 1254a(d)(3) to afford TPS recipients an "orderly departure" period beyond the statutory default of 60 days is committed to the Secretary's discretion. Def. Mot. at 10; supra p. 3. Tellingly, Plaintiffs continue to ignore this statutory provision and assert that the Secretary's determinations "departure from past agency practice." Pls.' Opp. at 19. But there is no uniform agency practice here. Again, prior TPS terminations have allowed for orderly transition periods of varying lengths. See Def. Mot. at 11 (collecting wind-down periods of varying lengths). All of these determinations were consistent with the statutory language under 8 U.S.C. § 1254a(d)(3) affording the Secretary with the freedom to set the length the transition period, at her "option," as she "determines to be appropriate." *Id*. Nothing within the TPS statute, or past agency practices, supports Plaintiffs' assertion that Secretary Noem's determinations violated the APA. The agency has never made a "hard-and-fast commitment" to wind-down periods of any particular length, and the change-of-position doctrine does not apply here. *Wages & White Lion*, 604 U.S. at 573–85. And even if Plaintiffs' arguments were correct, that could at most justify relief regarding the wind-down period—not the termination decision itself.

1    In sum, the Secretary's determinations to terminate the TPS designations for Nicaragua, Nepal,

2   and Honduras were entirely consistent with the statutory guidelines and were lawful under the APA.

3   Defendants are entitled to judgment on those claims.

4   **III.    Plaintiffs' Constitutional Claims Fail as a Matter of Law**

5    As a preliminary matter, Plaintiffs' argument that their constitutional claims are not ripe for

6   summary judgment is unavailing. Plaintiffs point to the legal arguments advanced in this matter, i.e.,

7   whether the challenged TPS decisions were motivated by animus, as a "dispute," which they assert

8   "forecloses summary judgment." Pls.' Opp. at 20. However, this argument merely restates the legal

9   conclusion that Plaintiffs are asking this Court to enter—rather than establish any material fact that is

10   reasonably in dispute. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) ("[A party]

11   must respond with more than mere ... legal conclusions" to demonstrate a material fact dispute to defeat

12   summary judgment.") (citations omitted*).* And even if any facts were disputed, Defendants would still be

13   entitled to summary judgment because on any view of the evidence, Plaintiffs' claims are still insufficient

14   to rise to the level of "sufficient definiteness, clarity, and specificity" necessary to succeed on their

15   arguments. *United States v. Howell,* 231 F.3d 615, 620 (9th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*,

16   477 U.S. 242 (1986) ("The mere existence of some alleged factual dispute between the parties will not

17   defeat an otherwise properly supported motion for summary judgment; the requirement is that there be *no*

18   genuine issue of material fact."). Put simply, there is no material fact in dispute, and nothing forecloses

19   this Court from entering summary judgment on the constitutional claims.

20    Notwithstanding the Court's prior holding, ECF No. 73, Defendants respectfully maintain that

21   *Trump v. Hawaii*, 585 U.S. 667 (2018), sets forth the appropriate rational basis review that the Court

22   should employ in assessing Plaintiffs' constitutional law claims. As explained in Defendants' motion for

23   summary judgement, rational basis review governs equal protection challenges to immigration policy

24   choices because "[a]ny rule of constitutional law that would inhibit the flexibility' of the President 'to

25

26

27   DEFS.' REPLY TO DEFS.' MOTION FOR SUMMARY JUDGMENT

28   No. 3:25-cv-5687-TLT

respond to changing world conditions should be adopted only with the greatest caution."2 585 U.S. at 704 (quoting *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976)); *see* Defs. Mot. at 18-20.

Plaintiffs continue to assert that *Hawaii*'s deferential standard of review is inapplicable to their claims of racial animus. Pls.' Opp. at 21. In furtherance of this claim, Plaintiffs point to the Supreme Court's application of a heightened standard of review in *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 34 (2020). See Pls.' Opp. at 20. However, the Court in *Regents* did not state that the heightened standard must apply to race discrimination claims involving challenges to immigration policies—rather, the Court merely rejected plaintiffs' claims because their allegations were "insufficient" even assuming their claim was cognizable. *See Regents*, 591 U.S. at 34. Moreover, the Supreme Court's holding in *Hawaii* emphasizes that rational basis review applies "across different contexts and constitutional claims." 585 U.S. at 703; *see also Nunez-Reyes v. Holder*, 646 F.3d 684, 689 (9th Cir. 2011) (finding that a "very relaxed form of rational basis review" applies to federal classifications based on immigration status). Challenges to TPS decisions are indistinguishable from the circumstances in which the Supreme Court has repeatedly applied rational-basis review, because they involve unique country-specific determinations that both "implicate relations with foreign powers" and "involve classifications defined in the light of changing political and economic circumstances." *Id*. at 702; *Harisiades v. Shaughnessy*, 342 U.S. 580, 591 (1952) ("[N]othing in the structure of our Government or the text of our Constitution would warrant judicial review by standards which would require us to equate our political judgment with that of Congress"); *see also Ram v. INS*, 243 510, 517 (9th Cir. 2001) ("Line-drawing decisions made by Congress or the President in the context of immigration and naturalization must be upheld if they are rationally related to a legitimate government purpose."). Additionally, TPS determinations are precisely the kind of immigration policy decisions "of a character more appropriate to either the

---

2 And it is well settled that equal protections claims challenging nationality-based classifications drawn by Congress or the Executive in the immigration context are reviewed for rational basis. See, e.g., *Midi v. Holder*, 566 F.4th 132, 137 (4th Cir. 2009); *Kandamar v. Gonzales*, 464 F.3d 65, 72 (1st Cir.2006); *Rajah v. Mukasey*, 544 F.3d 427, 438 (2d Cir. 2008); *Jean v. Nelson*, 727 F.2d 957, 978 n.30 (11th Cir. 1984); *Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir. 1979)

1    Legislature or the Executive." *Mathews v. Diaz*, 426 U.S. 67, 82 (1976). Congress's decision to shield

2    TPS determinations from judicial review underscores the conclusion that this is an area in which the risk

3    of erroneous or overreaching judicial action is greater than the risk of erroneous action by the Executive

4    Branch. *See* 8 U.S.C. § 1254a(b)(5)(A). As such, Plaintiffs' argument that review under *Vill. of Arlington*

5    *Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977), should effectively apply to any

6    termination of TPS so long as Plaintiffs invoke the specter of racial animus is fundamentally at odds with

7    Supreme Court precedent recognizing the limited role of the judiciary in such cases. To the extent the

8    Secretary's TPS decision is subject to a constitutional challenge at all, rational basis review applies.

9        And even applying the heightened scrutiny under Arlington Heights, Plaintiffs are unable to show

10   that the Secretary's determinations were motivated by a "racially discriminatory purpose." Pls.' Opp. at

11   21-22. In asserting that the Secretary's determinations were motivated by animus, Plaintiffs point to the

12   Secretary's consideration of the President's directive to ensure that TPS designations "are consistent with

13   the provisions of [8 U.S.C. § 1254a]…" Pls.' Opp. at 22 (citing E.O. 14156, Protecting the American

14   People Against Invasion, § 16(b), 90 Fed. Reg. 8443, 8446 (Jan. 29, 2025). However, her consideration

15   of, among other things, the Administration's immigration policy prerogatives does not demonstrate

16   discriminatory intent. Rather, it is entirely appropriate given that TPS determinations require her to make

17   sensitive assessments affecting U.S. foreign policy. *Dep't of Com. v. New York*, 588 U.S. 752, 783 (2019)

18   ("Such decisions are routinely informed by unstated considerations of politics, the legislative process,

19   public relations, interest groups, foreign relations, and national security concerns (among others)); *see*

20   *also Ramos*, 975 F.3d at 897-98 ("It is expected—perhaps even critical to the functioning of government—

21   for executive officials to conform their decisions to the administration's policies.").

22       Unable to provide any evidence of discriminatory intent within the Secretary's determinations,

23   Plaintiffs continue to resort to unrelated and out-of-context statements by the President, none of which

24   mention the countries at issue or demonstrate any discriminatory animus. Pls.' Opp. at 22. Reliance on the

25   President's statements is further impermissible here because the Supreme Court rejected reliance on

26   similar statements in *DHS v. Regents*: "even as interpreted by [plaintiffs], these statements—remote in

27

28

1    time and made in unrelated contexts—do not qualify as 'contemporary statements' probative of the

2    decision at issue." 591 U.S. 1, 35 (2020) (citing *Arlington Heights,* 429 U.S. at 268); *Ramos*, 975 F.3d at

3    897 ("We doubt that the 'cat's paw' doctrine of employer liability in discrimination cases can be

4    transposed to th[e] particular context" of TPS country designation terminations).

5        Additionally, Plaintiffs' far-fetched attempt to find discriminatory animus among several TPS

6    determinations unrelated to the countries at issue should also be rejected. Pls.' Opp. at 25. The Secretary's

7    determinations were based on an objective review of country conditions, in consultation with the

8    appropriate government agencies. In her decision to terminate TPS for Honduras, Nicaragua, and Nepal,

9    Secretary Noem articulated that there were significant improvements within the country conditions that

10    allowed all three countries to safely handle the return of their nationals, which is further supported by the

11    record. See ECF No. 63-1; ECF No. 62-1; ECF No. 64-1. Thus, whether the Court applies the rational

12    basis review or the higher standard of review under *Arlington Heights*, 429 U.S. at 265-66, Plaintiffs'

13    claim that racial discrimination was a motivating factor in the Secretary's determinations fails as a matter

14    of law. Accordingly, this Court should deny Plaintiff's motion and enter summary judgment in favor of

15    Defendants.

16                           **CONCLUSION**

17        For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion

18    for partial summary judgment and enter summary judgment in Defendants' favor.

19    Dated: November 4, 2025

20                             Respectfully Submitted,

21                             BRETT SHUMATE

22                             Assistant Attorney General

23                             YAAKOV M. ROTH

24                             Principal Deputy Assistant Attorney General

25                             WILLIAM H. WEILAND

26                             Acting Assistant Director

27                             LAUREN BRYANT

28

ERIC SNYDERMAN
JEFFREY HARTMAN
SHLEBY WADE
DANIEL CAPPELLETTI
ILANA KRAMER
LORI MACKENZIE
Trial Attorneys

*s/  Catherine Ross*
CATHERINE ROSS
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044

*Counsel for Defendants*

BRETT SHUMATE
Assistance Attorney General
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
WILLIAM H. WEILAND
Acting Assistant Director
ERIC SNYDERMAN
LAUREN BRYANT
CATHERINE ROSS
SHELBY WADE
DANIEL CAPPELLETTI
LORI MACKENZIE
ILANA KRAMER
JEFFREY HARTMAN
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>　　　　　Defendants. | Case No. 3:25-cv-1766<br><br><br>PROPOSED ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

PROPOSED ORDER GRANTING DEFS.' MOTION FOR SUMMARY JUDGMENT
No. 3:25-cv-5687

**PROPOSED ORDER**

Before the Court is Defendants' Motion for Summary Judgment, pursuant to Federal Rule 56(f).

ECF _____. Having reviewed the motion and considered the arguments counsel, IT IS HEREBY

ORDERED that Defendants' Motion for Summary Judgment is GRANTED.

Issued this _____ day of _____, 2025.


_____
Trina L. Thompson
United States District Court Judge

PROPOSED ORDER GRANTING DEFS.' MOTION FOR SUMMARY JUDGMENT
No. 3:25-cv-5687