Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, SANDHYA LAMA, TEOFILO MARTINEZ,<br><br>    Plaintiffs,<br><br>    vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>    Defendants. | Case No. 3:25-cv-05687-TLT<br><br>**PLAINTIFFS' RESPONSE TO [DKT. 182] QUESTIONS FOR NOV. 18, 2025, HEARING RE: DKT. NOS. 110, 142, 143, 144, 153**<br><br>Judge Trina Thompson |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER
ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitran (SBN 302081)
ebitran@aclusocal.org
Diana Sanchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

Plaintiffs provide below responses to the Court's questions directed to Plaintiffs in advance of argument. Dkt. 182.

## I. DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY

A. **To Plaintiffs**: Defendants argue that Dr. Wong's expert opinion is cumulative. ECF 143 at 23. Considering Dr. Wong's declaration in ECF 17-16, please elaborate and explain the cumulative nature of his opinion. In answering this question, please cite to binding and persuasive caselaw. *See also*, Fed. Rules of Civil Procedure 43(c).

**Answer**:

As an initial matter, Plaintiffs are not relying on Dr. Wong's declaration for their summary judgment motion, and the Court does not need to consider his declaration to resolve the MSJ. Plaintiffs served Dr. Wong's report because the September 29, 2025 expert-disclosure deadline required disclosure of all experts whose opinions may be relevant at any stage of this litigation, not only those relevant to summary judgment. Dkt. 91. Because Plaintiffs are not offering Dr. Wong's analysis for summary judgment, Defendants' motion to strike is misplaced. As such, the government's objection based upon purported cumulativeness under Federal Rule of Evidence 403 is an issue better resolved at trial. *See, e.g.*, *Apple v. Samsung,* No. 11-CV-01846-LHK, 2012 WL 2571719, at *11 (N.D. Cal. June 30, 2012) (concluding that even if expert testimony was needlessly cumulative, it was an issue "better resolved at trial."); *Young v. City of Menifee*, No. EDCV 17-1630 (JGB) (SPx), 2023 WL 11053618, at *5 (C.D. Cal. Sept. 14, 2023).

In any event, Dr. Wong's declaration is not cumulative. Expert reports are not needlessly cumulative if they provide new information, and Professor Wong's report does so. *See Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 713 F. Supp. 3d 660, 670 (N.D. Cal. 2024). Dr. Wong conducted a rigorous analysis of large publicly available datasets to present aggregate information about TPS holders from Honduras, Nicaragua, and Nepal. Dkt. 168-8 at ¶¶ 9–10, 34. His analysis shows these TPS holder communities are deeply rooted in the United States, having built families and contributed to the national economy. *Id.* Specifically Dr. Wong's analysis shows that Honduran, Nicaraguan, and Nepali TPS holders have resided in the United States for

1

decades and are active participants in the labor force. *Id.* at ¶¶ 10–12, 26, 30, 36. Dr. Wong's analysis concludes, based on his review of the evidence, that the termination of the TPS designations of Honduras, Nicaragua and Nepal would separate mixed-status families, eliminate stable employment, reduce tax revenue and consumer spending, and harm communities. *Id.* at ¶¶ 30, 35, 36.

    B.    **To Plaintiffs**: Plaintiffs offer the opinions of several experts to demonstrate the harmful consequences that terminating TPS will have on the United States economy, the economies of other countries, on the TPS holders themselves, as well as the impact on public safety, public health, foreign policy, and national security. ECF 168 at 3, 5, 7, 14, 17–18. Evidence is relevant only if it "will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 50 F.3d 870, 942 (9th Cir. 2007). Please identify the issue in the parties' summary judgement motions which the testimony described above will assist the trier of fact in resolving.

        i.    Does Plaintiff contend that the Court must conduct an analysis of the consequences of terminating TPS to resolve the pending summary judgment motions? If so, please cite to binding and persuasive caselaw to show such a showing is required to rule on Plaintiffs' claims.

**Answer**:

Plaintiffs do not contend this Court must analyze the consequences of terminating TPS to resolve the pending summary judgment motions. If the Court finds the agency action unlawful, it must set that action aside irrespective of whether or not the action is harmful. *See* 5 U.S.C. § 706 (requiring courts to set aside unlawful agency action; no mention of requirement to assess harm); *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 951–52 (5th Cir. 2024) ("[V]acatur under § 706 is, as we have repeatedly described it, the 'default' remedy for unlawful agency action. Thus, contrary to what the Government and the amici represent, we do not read our precedent to require consideration of the various equities at stake before determining whether a party is entitled to vacatur."), *rev'd and remanded on other grounds sub nom. Kennedy v. Braidwood Mgmt., Inc.*, 606

1  U.S. 748 (2025). As noted above, Plaintiffs produced their expert reports because the September 29,
2  2025 disclosure deadline required identifying all experts who may be relevant at any stage of the
3  litigation, not only those relevant to summary judgment. Dkt. 91. Plaintiffs previously relied on harm
4  evidence to challenge the agency's selection of the effective date, and it continues to provide
5  relevant context for standing and for any future remedial or equitable considerations. *See, e.g.*, Dkt.
6  1 ¶¶ 129–37 (alleging harms arising from terminations).

7  Plaintiffs' motion for partial summary judgment discusses the harmful effects of the
8  terminations (without relying on expert testimony) for two purposes unrelated to the merits of the
9  MSJ. *See* Dkt. 144 at 14–16. First, it is relevant to the standing of the National TPS Alliance.
10  Standing defects may be raised at any time. *See, e.g.*, *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131,
11  1138– (9th Cir. 2013) (Defendants raised standing for first time on appeal and prevailed).
12  Defendants have wrongly suggested in other TPS litigation against the NTPSA that NTPSA
13  members have not suffered actual injury. *See, e.g.*, Application to Stay Judgment at 25–26, *Noem v.*
14  *Nat'l TPS All.*, No. 25A326 (U.S. Sept. 19, 2025). Second, evidence of harm may be relevant at later
15  stages of this litigation, including, *e.g.*, should Defendants again seek to stay any future orders of this
16  Court. *See, e.g.*, Dkt. 87 at 9 (discussing harm in context of stay application).

17  Finally, Plaintiffs note that the expert report of Dr. Elliot Young, Dkt. 168-6, is relevant not
18  only to show the harmful consequences of terminating TPS, but also to give historical context to the
19  challenged TPS terminations and the racist statements made by Defendants and others in the Trump
20  administration. Dkt. 168 at 9–12. Plaintiffs cite Dr. Young's testimony to aid this Court in resolving
21  Defendants' motion for summary judgment on Plaintiffs' claim that Defendants' decisions to
22  terminate the TPS designations of Honduras, Nepal, and Nicaragua were unconstitutional because
23  they were motivated, at least in part, by intentional discrimination based on race, ethnicity, or
24  national origin. *See* Dkt. 167 at 20.

25  **II.     DEFENDANTS' MOTION TO DISMISS**
26       B.     Under what circumstances may a court convert a motion to dismiss to a motion for
27              summary judgement?
28

3

      i.      **To Both Parties**: Does the Court need to look to evidence beyond the pleadings to resolve Defendants' motion to dismiss?

           a.      Does the analysis of the question above change if the Court grants Plaintiffs' motion to consider extra-record evidence at ECF 153? Specifically, should the court convert the Motion to Dismiss to a Summary Judgment Motion and apply the standard pursuant to Federal Rules of Civil Procedure 56? If so, why? If not, why not?

**Answer**:

The Court may consider undisputed facts contained in public records cited in Defendants' motion to dismiss, but need not consider evidence beyond that. Defendants submitted no evidence in support of their motion to dismiss. Dkt. 110. Defendants' motion to dismiss relies on evidence beyond the pleadings only to the extent it cites prior agency decisions published in the Federal Register, *see, e.g.*, Dkt. 110 at 11, and the certified administrative record for the Nepal TPS termination. Dkt. 128 at 9 (citing Dkt. 64). The Court may take judicial notice of undisputed facts contained in those cited documents without converting Defendants' motion to dismiss into a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.") (quoting *Lee v. City of L.A.,* 250 F.3d 668, 689 (9th Cir. 2001)); *see also* Fed. R. Evid. 201(c) (court "may take judicial notice on its own" and "must take judicial notice if a party requests it and the court is supplied with the necessary information"). The rule permitting courts to consider public records in resolving a motion to dismiss is an exception to the general rule that a court must convert a motion to dismiss to a motion for summary judgment if it considers matters outside the pleadings. Fed. R. Civ. P. 12(d).

A decision granting Plaintiffs' motion to consider extra record evidence in support of their motion for partial summary judgment would not change the above analysis. Dkt. 153. While, for reasons described in Plaintiffs' motion, this Court should consider extra-record evidence in ruling on Plaintiffs' motion for summary judgment, this Court may rule separately on Defendants' motion to

4

1  dismiss, taking Plaintiffs' allegations as true, without considering evidence beyond the pleadings
2  other than the public records described above. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir.
3  2014). Because Defendants' motion to dismiss does not rely on evidence beyond the pleadings, other
4  than the matters of public record discussed above, Plaintiffs do not believe this Court should convert
5  it to a motion for summary judgment. However, Plaintiffs note that many of the legal arguments
6  Defendants raise in their motion to dismiss are identical to those raised in their summary judgment
7  motion and opposition to Plaintiffs' motion for partial summary judgment, so the same analysis may
8  resolve legal arguments in both motions. *See, e.g.*, *Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC,
9  2025 WL 2578045, at *37 (N.D. Cal. Sept. 5, 2025) (rejecting Defendants' motion to dismiss "for
10 the reasons discussed in the Court's summary judgment analysis").

## III.    TRANSITION PERIOD

   C.    **To Plaintiffs**:  Plaintiffs raise the argument that there is a "uniform agency practice lasting at least two decades of at least six months for orderly transition in the event of a termination of TPS" in their opposition to Defendants' motion for summary judgment. ECF 167 at 12. However, the argument is not raised in Plaintiffs' affirmative motion for partial summary judgement. Explain. Please cite case and statutory authority for your position and each your response to the questions listed below.

   i.    Do Plaintiffs argue that they are entitled to judgment as matter of law on their claim that the transition period was improperly shortened?

         a.    If so, what remedy would be appropriate?

         b.    Do Plaintiffs seek, for example, a six month or more transition period from the terminations of TPS for Nepal on June 6, 2025 as well as Nicaragua and Honduras on July 8, 2025?

**Answer**:

As the Court notes, Plaintiffs do not seek summary judgment or judgment as a matter of law on their claim that Defendants arbitrarily broke from their past practice when they provided only 60-

days' notice before terminating TPS for Honduras, Nicaragua, or Nepal. While Plaintiffs have sought to defeat Defendants' motion to dismiss on this claim, and while Plaintiffs believe they will ultimately prevail on that claim, they have chosen to seek summary judgment on their other claims. Because Plaintiffs have not sought summary judgment on this claim, questions concerning what remedy would be appropriate should Plaintiffs ultimately prevail on it are not presented at this time.

## IV.   REMEDIES

A.   **To Plaintiffs**: Plaintiffs argue that the terminations violate the requirement that TPS decisions not be "preordained" or based on "political influence," rather than country conditions. ECF 144 at 16. If the Court were to find in Plaintiffs' favor on this APA claim, what remedy would be appropriate? Please cite case and statutory authority for your position and each of the questions below.

   i.   If the Court set aside the Secretary Noem's terminations as "preordained" or based on "political influence," could Secretary Noem later properly terminate TPS during this administration? Or, according to Plaintiffs' view, would the previous public statements of Secretary Noem and other officials of this administration also taint future attempts by the Secretary to terminate TPS?

**Answer**:

The appropriate remedy for this APA claim is an order setting aside the terminations. Section 706 of the APA *requires* the "reviewing court" to "hold unlawful and set aside agency action . . . found to be . . . not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706. *See also Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.,* 603 U.S. 799, 830–31 (2024) (Kavanaugh, J., concurring) ("When a federal court concludes that an agency adjudicative order [or any other agency action] is unlawful, the court must vacate that order.") (collecting cases); *Nat'l TPS All. v. Noem*, No. 25-5724, 2025 WL 2661556, at *6 (9th Cir. Sept. 17, 2025) ("[I]t is impossible to structure relief on an individual basis or to impose any relief short of nationwide set asides under APA § 706 of Secretary Noem's vacatur and termination of Venezuela's TPS status."). This APA claim asserts that the challenged terminations are "not in accordance with

law" and "without observance of procedure required by law," 5 U.S.C. § 706(2)(A) & (D), because they were made before conducting interagency consultation or country conditions review, in violation of the TPS statute. 8 U.S.C. § 1254a(b)(3)(A).

A Court order setting aside the challenged terminations on this basis would not prevent Defendants from lawfully terminating TPS for Honduras, Nicaragua, or Nepal at some later time during the current administration. While Defendants' previous public statements would remain relevant, any future termination would have to be assessed based on the relevant facts at that time. Should those facts show that the future termination decision was made "*after* consultation with appropriate agencies," based on a "review [of] the conditions in the foreign state," 8 U.S.C. § 1254a(b)(3)(A) (emphasis added), and otherwise complied with administrative, statutory, and constitutional requirements, then it would be lawful.

Finally, Plaintiffs note that a Section 706 set aside is also the appropriate remedy for Plaintiffs' claim that the challenged terminations were unlawful because Defendants incorrectly interpreted the TPS statute and broke with past practice by refusing to consider conditions unrelated to the crisis that triggered the country's initial designation.  Dkt. 144 at 20–24; Dkt. 175 at 14–15. Section 706 mandates a set aside based on this claim because Defendants' interpretation of the TPS statute is "not in accordance with law" and their unexplained break with past practice is "arbitrary and capricious." 5 U.S.C. § 706(2)(A).

**CONCLUSION**

For the reasons described herein, and in Plaintiffs' briefs in support of their Motion for Partial Summary Judgment and in Opposition to Defendants' Motions to Dismiss, for Summary Judgment, and to Exclude Expert Testimony, this Court should grant Plaintiffs' Motion for Partial Summary Judgment and deny Defendants' motions.

Date: November 14, 2025

Respectfully submitted,

NATIONAL DAY LABORER ORGANIZING NETWORK

 */s/* Jessica Karp Bansal
Jessica Karp Bansal

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER ORGANIZING NETWORK

Emilou MacLean
Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND POLICY, UCLA SCHOOL OF LAW

Eva L. Bitran
Diana Sanchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

NATIONAL DAY LABORER ORGANIZING NETWORK

/s/ Jessica Karp Bansal
Jessica Karp Bansal