UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL TPS ALLIANCE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>    Defendants. | Case No.  25-cv-05687-TLT<br><br>**QUESTIONS FOR THE HEARING**<br><br>Re: Dkt. No. 110, 142, 143, 144, 153 |

To allow for as much time for discussion and argument, the Court provides the following questions in advance. The Court encourages the parties to address the following questions in advance or during the hearing on November 18, 2025:

**I.  JURISDICTION**

8 U.S.C. §1254a(b)(5)(A) reads "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination of a designation, of a foreign state under this subsection."

8 U.S.C. §1252(f)(1) provides in relevant part as follows:

> In general. Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such chapter have been initiated.

Section 1252(a)(2)(B)(ii) bars judicial review of any "decision or action of … the Secretary of Homeland Security the authority for which is specified under [the INA] to be in the discretion of … the Secretary …"

The full text of 5 U.S.C. § 701(a) is as follows:

> This chapter applies, according to the provisions thereof, except to the extent that –
> (1) statutes preclude judicial review; or
> (2) agency action is committed to agency discretion by law.

Under these statutory provisions, do the parties agree that, ordinarily, federal district courts are barred from reviewing a Secretary's discretionary decision to designate, or decision to terminate the designation of, a country's TPS status, particularly when doing so would enjoin or restrain the agency from performing its law enforcement function?

    A.    If not, please describe how your characterization of these statutory provisions differs from the Court's.

    B.    If the parties do agree with the statement, how do Plaintiffs distinguish this case?

## II.  APA CLAIM PREORDAINED DECISION

According to the record before the Court, the Department of Homeland Security ("DHS") drafted its decision memos for termination of TPS for Nicaragua and Honduras prior to receiving the State Department's country conditions memos.

> As of April 7, OP&S had already "written [Decision Memos] for termination." [ECF 145-31] (April 7 email). They sought country conditions reports from the RAIO Research Unit only after that date. [ECF 145-20] (April 8 email from OP&S identifying that OP&S is lacking country conditions/country of origin information ("COI") from RRU for Honduras and Nicaragua, even though OP&S "drafted decision memos for both countries"). *See also* [ECF 145-21] (April 8 email from OP&S requesting country conditions/country of origin information for Nicaragua and Honduras from RAIO Research Unit ("RRU")). The RAIO Research Unit had sent the Honduras country conditions memo before April 7, but the TPS subject matter experts had apparently not reviewed it. *See id*. RAIO sent the Nicaragua country conditions memo on April 10, after the Nicaragua Decision Memo had already been drafted with a recommendation "for termination." [ECF 145-31]; [ECF 145-43] (Nicaragua country conditions report dated April 10, 2025); [ECF 145-44] at NTPSA2_00002439–NTPSA2_00002441 (Honduras country conditions report finalized on March 21, 2025 and Nicaragua country conditions report finalized April 10, 2025); ECF 145-45 (Nicaragua country conditions report only submitted the afternoon of April 10, 2025).

ECF 144 at 9.

At her confirmation hearing, Secretary Noem stated that "[TPS] has been abused and

2

manipulated by the Biden Administration, and that will no longer be allowed . . . and these extensions going forward the way they are. The program was intended to be temporary[.]" ECF 145-2 at 104.  During a February 2, 2025 "Meet the Press" appearance, Secretary Noem stated that "The TPP [sic] program has been abused and it doesn't have integrity right now." Compl. ¶ 74. The Department of Homeland Security ("DHS") has stated that, by vacating or partially vacating TPS, it was "restoring integrity in our immigration system and ensuring that TPS remains temporary," and fulfilling "President Trump's promise to rescind policies that were magnets for illegal immigration and inconsistent with the law." ECF 145-4; ECF 145-13.

Other officials in this administration have vocalized their goal of terminating TPS. President Trump, in response to a question from a reporter about whether he would revoke a country's TPS status, stated, "You have to remove the people; you cannot destroy our country . . . In my opinion, it's not legal. . . . Absolutely I'd revoke [TPS]." ECF 145-3 at 14–16.  During the 2024 presidential campaign, then-vice-presidential candidate JD Vance stated "[w]e're going to stop doing mass grants of Temporary Protected Status." ECF 145-4 at 2.  He went on to call TPS designations a "magic amnesty wand" which he characterized as a "terrible indictment of [Vice President Kamala Harris's] amnesty policies." Compl. ¶ 81.  Project 2025, "the 2025 Presidential Transition Project," a product of current and former political appointees of the president explicitly called for the "[r]epeal [of] TPS designations." Compl. ¶ 84.

    A.    "The reasoned explanation requirement of administrative law … is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public. Accepting contrived reasons would defeat the purpose of the enterprise." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019).  Please discuss whether the statements and events described above sufficiently demonstrate that the Secretary's decision to terminate TPS for Honduras, Nepal and/or Nicaragua was "preordained" in violation of the APA.

3

### III.  STATUTORY INTERPRETATION UNDER 8 U.S.C. SECTION 1254A(B)(3)(A)

8 U.S.C. § 1254a(b)(3)(A) provides that, on periodic review, the Secretary, "after consultation with appropriate agencies of the Government, shall review the conditions in the foreign state . . . for which a designation is in effect under this subsection and shall determine whether the conditions for such designation continue to be met."  The Secretary must extend TPS unless she finds that the foreign state "no longer continues to meet the conditions for designation under paragraph [8 U.S.C. § 1254a(b)(1)]."  *Id.* § 1254a(b)(3)(C).

    A.    Does 8 U.S.C. § 1254a(b)(3)(A)'s periodic review provision incorporate the factors the Secretary considers under 8 U.S.C. § 1254a(b)(1)?

        i.    When conducting a periodic review of a country's TPS designation, must the Secretary consider whether "there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety," or whether "(i) there has been an earthquake, flood, drought, epidemic, or other environmental disaster in the state resulting in a substantial, but temporary, disruption of living conditions in the area affected, (ii) the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state, and (iii) the foreign state officially has requested designation . . . ."

            a.    Historically, has the Department of Homeland Security considered all the factors under § 1254a(b)(1) when conducting a periodic review?

            b.    Do the parties agree that the requirement that the Secretary "shall determine whether the conditions for such designation continue to be met" contains ambiguous language with respect to which factors the Secretary is to consider?

4

1. If so, under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), what deference should the Court give the agency in deciding whether it acted within its statutory authority, as required by the APA?

Additional questions may be provided or addressed at the hearing.

The Court provides the following time guidelines:

**9:30am -10:30am**

The arguments for the Motion to Dismiss will be heard first from 9:30am – 10:30am. Each party will be given 30 minutes. The Court will take a 15-minute break and resume at 10:45am.

**10:45am – 12:15 pm**

The parties will be given 45 minutes each to address the Motion for Summary Judgment and the Daubert Motion. This includes rebuttal and identifying the relief requested.

**12:30-12:45 pm**

The parties shall meet and confer before reconvening and shall provide the CRD will dates for any future proceedings. The parties shall also advise the Court, on the record, whether there are any other related cases, the status of the review in the Ninth Circuit, and whether the Appellate proceedings will have any impact on the ongoing proceedings in the District Court.

The court has further proceedings in the afternoon and will take all matters under submission.

IT IS SO ORDERED.

Dated: November 17, 2025

_____
TRINA L. THOMPSON
United States District Judge

5