BRETT A. SHUMATE
Assistant Attorney General
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division
RUTH MARY MUELLER
Senior Litigation Counsel
ERIC SNYDERMAN
LAUREN BRYANT
CATHERINE ROSS
AMANDA B. SAYLOR
JEFFREY M. HARTMAN
DANIEL CAPPELLETTI
SHELBY WADE
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*, <br><br>        Plaintiffs, <br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, <br><br>        Defendants. | Case No. 3:25-cv-5687 <br><br> **DEFENDANTS' EMERGENCY MOTION TO STAY PENDING APPEAL** <br><br> Hon. Trina L. Thompson |

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ............................................................................................................... I

**TABLE OF AUTHORITIES** ........................................................................................................ II

**INTRODUCTION** ........................................................................................................................ 1

**LEGAL STANDARD** .................................................................................................................. 2

**ARGUMENT** ............................................................................................................................... 2

    **THIS COURT SHOULD ENTER A STAY PENDING APPEAL**

    **I.**    **THE GOVERNMENT IS LIKELY TO PREVAIL ON THE MERITS OF ITS APPEAL BECAUSE COURT LACKS JURISDICTION TO GRANT PLAINTIFFS RELIEF**……………3

        **A.**    **The TPS Statute Bars Plaintiffs' Claims**.......................................................................... 2

        **B.**    **Classwide APA Relief is Barred by 8 U.S.C. § 1252(f)(1)**……………………………..5

    **II.**   **EVEN ASSUMING REVIEWABILITY, THE GOVERNMENT IS ALSO LIKELY TO PREVAIL ON THE MERITS OF PLAINTIFFS' APA CHALLENGE TO THE SECRETARY'S TPS TERMINATIONS** ..................................... 6

        **A.**    **The Secretary Properly Focused on Whether the Conditions Underlying the TPS Designations Continued to Exist**………………………………………………………..6

        **B.**    **The Secretary's Consideration of Country Conditions Was Not Arbitrary and Capricious**………………………………………………………………………………..7

    **III.**  **THE NON-MERITS CONSIDERATIONS STRONGLY FAVOR A STAY PENDING APPEAL** ......................................................................................................... 11

**CONCLUSION** .......................................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Al Otro Lado v. EOIR*, 138 F.4th 1102 (9th Cir. 2025) ............................................................... 6

*BedRoc Ltd., LLC v. United States*, 541 U.S. 176 (2004) ........................................................... 5

*Bldg. & Constr. Trades Dep't v. Allbaugh*, 295 F.3d 28 .............................................................. 9

*Bouarfa v. Mayorkas*, 604 U.S. 6 (2024) ..................................................................................... 3

*DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503 (D.C. Cir. 2019) .................................................... 3

*Dep't of Commerce v. New York*, 588 U.S. 752 (2019) ............................................................... 9

*DHX Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169 (9th Cir. 2005) ......................................... 4

*Fiallo v. Bell*, 430 U.S. 787 (1977) ............................................................................................ 11

*Garland v. Aleman Gonzalez,* 596 U.S. 543 (2022) .................................................................... 5

*Garland v. Ming Dai*, 593 U.S. 357 (2021) ........................................................................... 7, 10

*Immigrant Defenders v. Noem*, 145 F.4th 972 (9th Cir. 2025) .................................................... 6

*INS v. Legalization Assistance Project*, 510 U.S. 1301 (1993) ................................................. 11

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) ............................................................................... 6

*Little Sisters of the Poor Saints Peter and Paul Home v. Penn.*, 591 U.S. 657 (2020) ............... 7

*Maryland v. King*, 567 U.S. 1301 (2012) .................................................................................. 11

*McNary v. Haitian Refugee Cntr*, 498 U.S. 479 (1991) .............................................................. 4

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ............... 9

*Nat'l Sec. Archive v. CIA*, 752 F.3d 460 (D.C. Cir. 2014) ........................................................ 10

*Nat'l TPS Alliance v. Noem*, 150 F.4th 1000 (9th Cir. 2025) .................................................. 4, 5

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................................... 2, 6, 11, 12

*Noem v. Nat'l TPS Alliance*, 145 S. Ct. 2728 (2025) ...................................................... 1, 11, 12

*Noem v. Nat'l TPS Alliance*, 2025 WL 2812732 (Oct. 3, 2025) ..................................... 1, 11, 12

*Patel v. Garland*, 596 U.S. 328 (2022) .................................................................................... 2, 3

*Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020) .................................................................. 4, 5, 6, 9

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ............................................................... 6

*Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004) .................................................................. 12

*Sherley v. Sebelius*, 689 F.3d 776 (D.C. Cir. 2012) ................................................................ 9

*Skagit County Pub. Hosp. Dist. No. 2 v. Shalala*, 80 F.3d 379 (9th Cir. 1996) ....................... 3

*Thakur v. Trump*, — F.4th —, 2025 WL 3760650 (9th Cir. Dec. 23, 2025) ............................ 1

*Truck Insur. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268 (2024) ..................................... 7

*Trump v. Boyle*, 145 S. Ct. 2653 (2025) ........................................................................ 1, 2, 12

*United States v. Tohono O'odham Nation*, 563 U.S. 307 (2011) ............................................ 3

*Yale New Haven Hosp. v. Becerra*, 56 F.4th 9 (2d Cir. 2022) ................................................. 3

## **STATUTES**

5 U.S.C. § 705 .......................................................................................................................... 1, 6

5 U.S.C. § 706 ............................................................................................................................. 1

8 U.S.C. § 1229a ....................................................................................................................... 12

8 U.S.C. § 1252(f)(1) .............................................................................................................. 5, 6

8 U.S.C. § 1254a(b)(1)(B) ....................................................................................................... 2, 7

8 U.S.C. § 1254a(b)(3)(A) ............................................................................................. 6, 7, 8, 10

8 U.S.C. § 1254a(b)(3)(B) ................................................................................................... 10, 11

8 U.S.C. § 1254a(b)(5)(A) ..................................................................................................... 2, 10

## **RULES**

Fed. R. App. P. 8(a)(2) ............................................................................................................... 2

Fed. R. Civ. P. 62 ................................................................................................................... 1, 2

# INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 62, the Government moves the Court to stay its partial final judgment setting aside the termination of the Temporary Protected Status (TPS) designations for Nepal,[1] Honduras,[2] and Nicaragua[3] pending a decision from the Ninth Circuit on the Government's forthcoming appeal. Court Order, ECF No. 197.

This Court should enter a stay because the Government is likely to prevail on appeal and the remaining factors favor the government. The Ninth Circuit has already concluded—after briefing and oral argument—that the Government is likely to prevail on the merits of Plaintiffs' APA challenges to these TPS terminations in *this* case. ACMS No. 19, *Nat'l TPS Alliance v. Noem*, No. 25-4901 (9th Cir.) (granting stay pending appeal). And the Supreme Court twice stayed district court orders—first under 5 U.S.C. § 705 and later under 5 U.S.C. § 706—blocking the Secretary's termination of the 2023 designation for Venezuela for TPS. *Noem v. Nat'l TPS Alliance*, 145 S. Ct. 2728, 2728-29 (2025) (staying § 705 order); *Noem v. Nat'l TPS Alliance*, 2025 WL 2812732, *1 (Oct. 3, 2025) (staying partial final judgment). The Supreme Court's stay orders involved materially identical issues (the reviewability and lawfulness of a TPS termination), and this Court must follow those informative precedents to resolve this materially indistinguishable stay request. *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025); *Nat'l TPS Alliance*, 2025 WL 2812732, *1 (Oct. 3, 2025) ("Although the posture of the case has changed, the parties' legal arguments and relative harms generally have not. The same result that we reached in May is appropriate here."); *see also, e.g.*, *Thakur v. Trump*, — F.4th —, 2025 WL 3760650, *5 (9th Cir. Dec. 23, 2025) ("We are mindful of the Supreme Court's decision . . . where the Court concluded that similar circumstances justified a stay.").

Accordingly, because the Supreme Court has indicated that the relevant stay factors favor the government in the context of TPS terminations, the Ninth Circuit already granted a stay pending appeal in this case in an earlier posture but based on materially similar arguments, and this Court largely

---

[1] *Termination of the Designation of Nepal for [TPS]*, 90 Fed. Reg. 24,151 (June 6, 2025).

[2] *Termination of the Designation of Honduras for [TPS]*, 90 Fed. Reg. 30,089 (July 8, 2025).

[3] *Termination of the Designation of Nicaragua for [TPS]*, 90 Fed. Reg. 30,086 (July 8, 2025).

1

reincorporated its already stayed rationale, ECF No. 193 at 3, 13 & n1, the Court should follow those informative precedents and stay its decision pending appeal. *See Boyle*, 145 S. Ct. at 2654.

The Government respectfully requests that the Court rule on the motion no later than 12:01 pm PDT on January 12, 2026; after that time, the Government intends to seek emergency relief from the Ninth Circuit. Fed. R. App. P. 8(a)(2); Fed. R. Civ. P. 62(g)(1). Plaintiffs were notified of and oppose the relief requested in this motion.

## **LEGAL STANDARD**

To evaluate whether to issue a stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors "are the most critical[,]" and the final factors merge where the government is a party. *Id*. at 434-35.

## **ARGUMENT**

**THIS COURT SHOULD ENTER A STAY PENDING APPEAL**

**II.    THE GOVERNMENT IS LIKELY TO PREVAIL ON THE MERITS OF ITS APPEAL BECAUSE COURT LACKS JURISDICTION TO GRANT PLAINTIFFS RELIEF**

   **A.    The TPS Statute Bars Plaintiffs' Claims**

To begin, a stay pending appeal is warranted because the Court erred in concluding that § 1254a(b)(5) does not independently preclude Plaintiffs' APA challenge and the government is likely to prevail on that aspect of its appeal. ECF No. 197 at 12-16. The Secretary's decision to designate or terminate a TPS designation implicates sensitive foreign policy judgments. 8 U.S.C. § 1254a(b)(1)(B). The TPS statute therefore unambiguously precludes courts from second-guessing those determinations: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. 8 U.S.C. § 1254a(b)(5)(A).

Section 1254a(b)(5)(A)'s judicial-review bar is broad. First, Congress prefaced "determination" with the term "any." 8 U.S.C. § 1254a(b)(5)(A). As the Supreme Court explained "the word 'any' has an expansive meaning." *Patel v. Garland*, 596 U.S. 328, 338 (2022) (cleaned up). The provision thus captures

2

determinations "of whatever kind." *Id*. Second, the phrase "with respect to" has "a broadening effect," as it "ensur[es] that the scope of [the] provision covers not only its subject but also matters relating to that subject." *Id*. at 339. When Congress has stripped a court of jurisdiction "in respect to" certain claims, the Supreme Court has construed that as a "broad prohibition." *United States v. Tohono O'odham Nation*, 563 U.S. 307, 312 (2011). The TPS statute thus plainly commits to the Secretary's unreviewable authority any determinations relating to any TPS termination. *Id*. Indeed, the Supreme Court held that materially similar jurisdiction-stripping language in the Immigration and Nationality Act was so expansive that it precluded judicial review of factual findings. *Patel*, 596 U.S. at 337-40 (statute barring review of "any judgment regarding the granting of relief" covers "any authoritative decision" on the matter); *see Bouarfa v. Mayorkas*, 604 U.S. 6, 19 (2024) (holding that INA provisions limiting judicial review provide "clear and convincing evidence of congressional intent to preclude judicial review").

At minimum, § 1254a(b)(5)(A) bars the arbitrary-and-capricious claims on which the Court granted judgment for Plaintiffs. "'[I]f a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, *or procedurally defective*.'" *Yale New Haven Hosp. v. Becerra*, 56 F.4th 9, 20 (2d Cir. 2022) (citation omitted); *see Skagit County Pub. Hosp. Dist. No. 2 v. Shalala*, 80 F.3d 379, 386 (9th Cir. 1996) (preclusion provision applies when "procedure is challenged only in order to reverse the individual [unreviewable] decision"). To hold otherwise "would eviscerate the statutory bar, for almost any challenge to [a determination] could be recast as a challenge to its underlying methodology." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 505-507 (D.C. Cir. 2019).

This Court's conclusion (copying its previously stayed reasoning, ECF No. 78 at 15, 17) that the phrase "any determination" limits the review bar's preclusive effect to "the single act of deciding whether the country conditions continue to be met for purposes of designating or terminating TPS," ECF No. 197 at 13, is unlikely to survive appeal because it is irreconcilable with §1254a(b)(5)(A), which specifies what kinds of determinations the review bar covers: *any* determinations—that is, determinations "of whatever kind," *Patel*, 596 U.S. at 338—*with respect to* TPS terminations. See ACMS No. 19, *Nat'l TPS Alliance v. Noem*, No. 25-4901 (9th Cir.). The Court's analysis also overlooks that the review bar plainly extends to some determinations, such as the effective date or duration of a TPS extension, §1254a(b)(1), (b)(2)(A),

that do not necessarily turn on country conditions. *See In Re Svenhard's Swedish Bakery*, 154 F.4th 1100, 1105 (9th Cir. 2025) (discussing the presumption that Congress does not "intend to make any portion of a statute superfluous" and that a court must "give effect to every word of a statute whenever possible").

The government is equally likely to prevail on its claim that the analysis in *McNary v. Haitian Refugee Cntr*, 498 U.S. 479 (1991), forecloses Plaintiffs' APA claims. ECF No. 197 at 13. The Ninth Circuit previously held that "the TPS statute precludes review of non-constitutional claims that fundamentally attack the Secretary's specific TPS determinations, as well as the substance of her discretionary analysis in reaching those determinations." *Ramos v. Wolf*, 975 F.3d 872, 892 (9th Cir. 2020), *vacated upon reh'g en banc*, 59 F.4th 1010, 1011 (9th Cir. 2023).[4] In doing so, the Ninth Circuit applied *McNary* to conclude—directly contrary to this Court's rationale, ECF No. 197 at 13—that § 1254a(b)(5)(A) bars APA challenges to TPS terminations. *Id*. at 889. Foreclosing judicial review conforms with the TPS statute, which "does not dictate any substantive guidelines or restrictions on the manner by which the Secretary may reach her TPS determinations" and does not "set forth or define the conditions in the foreign state that the Secretary must consider… or how she should weigh these conditions." *Id*. at 891; § 1254a(b)(1), (b)(3). *Ramos* also held that Plaintiffs' principal claim—that the Secretary was required to review intervening country conditions unrelated to an initial designation—was barred by § 1254a(b)(5)(A). *Ramos*, 975 F.3d at 893. Given the reasoning in *Ramos*, the government is likely to prevail on the merits of its claim that § 1254a(b)(5)(A) bars Plaintiffs' materially identical APA challenges.

Even the recent decision in *Nat'l TPS Alliance v. Noem*, 150 F.4th 1000 (9th Cir. 2025), *motion to vacate filed* (Nov. 25, 2025) ("*NTPSA I*"), confirms that the court violated the § 1254a(b)(5)(A) review bar. *NTPSA I* reasoned that limited review of "[t]he extent of statutory authority granted to the Secretary" was available to determine whether she can reconsider a TPS extension, but it emphasized that it could only do so because that question "is not 'a determination… with respect to the designation, or termination or extension' of a country for TPS." *NTPSA I*, 150 F.4th at 1017 (quoting § 1254a(b)(5)(A)). The Ninth Circuit also reiterated that "Congress has provided a means for the Secretary to account for changes in

---

[4] Although non-precedential, *Ramos* "still carries informational and perhaps even persuasive precedential value." *DHX Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1176 (9th Cir. 2005) (Beezer, J., concurring).

4

country conditions or political priorities: she can terminate TPS[.]" *Id*. at 1021; *see* § 1254a(b)(3)(A)-(B). Because the Secretary indisputably has authority to terminate TPS designations and did so here within the statutorily prescribed period, this Court lacks authority to review them and the government is therefore likely to prevail on appeal. § 1254a(b)(5)(A); *see NTPSA I*, 150 F.4th at 1017; *Ramos*, 975 F.3d at 892.

Finally, this Court's reliance on analogies to the Chinese Exclusion Act, wartime internment, and cases addressing the plenary power of the Executive and Congress over immigration are misplaced because statutory interpretation normally begins and ends with the statutory text, and none of the cited authorities address the unequivocal jurisdiction-stripping language Congress enacted in § 1254a(b)(5)(A). ECF 197 at 14-15; *see BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("our inquiry begins with the statutory text, and ends there as well if the text is unambiguous").

In sum, because Congress uses clear and unequivocal jurisdiction stripping language, the government is likely to prevail on its claim that the TPS terminations for Nepal, Honduras, and Nicaragua cannot be reviewed under the APA and a stay pending appeal is warranted for that merits reason alone. *See Ramos*, 975 F.3d at 893 ("Our analysis of section 1254a dictates that a claim challenging the Secretary's failure to "consider intervening events"—or even her failure to adequately explain why the agency is no longer considering intervening events when it did so in the past—is essentially an attack on the substantive considerations underlying the Secretary's specific TPS determinations, over which the statute prohibits judicial review.").

**B.      Classwide APA Relief is Barred by 8 U.S.C. § 1252(f)(1)**

The government is also likely to prevail on appeal because this Court's order impermissibly restrains the Secretary's operation of the TPS statute in contravention of 8 U.S.C. § 1252(f)(1). ECF No. 197 at 16-17. Neither of this Court's rationales for evading § 1252(f)(1)'s prohibition on orders that "restrain the operation" of covered provisions, including the TPS statute, withstand scrutiny.

First, *NTPSA I*'s conclusion that relief is not prohibited "if it affects only agency actions that exceed the agency's statutory authority," ECF No. 197 (quoting *NTPSA I*, 150 F.4th at 1018), directly conflicts with the Supreme Court's decision in *Garland v. Aleman Gonzalez* (uncited by this Court and *NTPSA I*), which squarely rejected the argument that § 1252(f)(1) is inapplicable if the challenged activity is allegedly unlawful or inconsistent with the statute. 596 U.S. 543, 552-53 (2022); ECF No. 197 at 16. It

goes without saying that the government is likely to prevail where the Supreme Court's interpretation of § 1252(f)(1) aligns with the government's position.

Second, this Court's reliance on *Immigrant Defenders v. Noem*, 145 F.4th 972, 990 (9th Cir. 2025), is misplaced because that case analyzed interim relief under 5 U.S.C. § 705 and reasoned (incorrectly in the government's view) that § 1252(f)(1) was inapplicable to interim relief because it was analogous to a temporary stay. *Id.*; ECF No. 197 at 17. In contrast, this Court's order directs the Secretary how to operate the TPS statute with respect to these three countries on an even more coercive permanent basis. Likewise, this Court's reliance on *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010), is misplaced because the Supreme Court directly addressed that decision and *remanded* for this Court to consider whether §1252(f)(1) barred "classwide injunctive relief based on . . . constitutional claims" after reversing the Ninth Circuit's erroneous statutory interpretations. *Jennings v. Rodriguez*, 583 U.S. 281, 313 (2018) (citing *Rodriguez*, 591 F.3d at 1120); *but see Al Otro Lado v. EOIR*, 138 F.4th 1102, 1124 n.13 (9th Cir. 2025) (following *Rodriguez*, 591 F.3d at 1119).

Thus, the government is likely to prevail on its claim that 8 U.S.C. § 1252(f)(1) bars classwide relief restraining the Secretary's operation of the TPS statute.

## II. EVEN ASSUMING REVIEWABILITY, THE GOVERNMENT IS ALSO LIKELY TO PREVAIL ON THE MERITS OF PLAINTIFFS' APA CHALLENGE TO THE SECRETARY'S TPS TERMINATIONS

Even if a "narrow" APA claim could somehow survive the judicial-review bar, the Government is entitled to a stay pending appeal because a strong likelihood of success on the underlying merits is clear. *See Nken*, 556 U.S. at 434.

### A. The Secretary Properly Focused on Whether the Conditions Underlying the TPS Designations Continued to Exist

The government is likely to prevail on its claim that the Secretary's periodic review of TPS designations does not require consideration of intervening country conditions. ECF No. 197 at 43-47. "Nothing in the language of the TPS statute requires the Secretary to consider intervening events prior to terminating TPS, or to explain her failure to do so." *Ramos*, 975 F.3d at 893; *see* 8 U.S.C. § 1254a(b)(3)(A). This Court's conclusion that the term "such designation" is ambiguous is unlikely to survive appeal because the statute specifically refers to "the initial period of designation, and any extended

6

period of designation" and requires the Secretary to "determine whether the conditions for such designation *under this subsection continue to be met*." 8 U.S.C. § 1254a(b)(3)(A) (emphasis added). The statute makes doubly clear what "designation" means by making that a separate subsection and delineating the three separate types of TPS designations. 8 U.S.C. § 1254a(b)(1)(A)-(C).

Similarly, the Court's conclusion that there is a "broader TPS designation" has no textual foundation and its reliance on legislative history and policy concerns "cannot surmount the plain language of the statute." *Truck Insur. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 284 (2024); ECF No. 197 at 44. Moreover, its conclusion that there is no link between the natural disaster underlying a TPS designation and the ability of a foreign country overlooks 8 U.S.C. § 1254a(b)(1)(B)(i)-(iii) and the statue's use of the conjunction "and" between the statutory criteria. And it is "settled" that a court may not impose "additional judge-made procedural requirements on agencies that Congress has not prescribed and the Constitution does not compel." *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021); *see also Little Sisters of the Poor Saints Peter and Paul Home v. Penn.*, 591 U.S. 657, 677 (2020) (courts may not "add[] terms not found in the statute" or "impos[e] limits on an agency's discretion that are not supported by the text").

Thus, as in *Ramos*, the government is likely to prevail on its claim that the TPS statute does not require the Secretary to consider intervening conditions that have nothing to do with "whether the conditions for such designation under this subsection continue to be met." 8 U.S.C. § 1254a(b)(3)(A).

**B.    The Secretary's Consideration of Country Conditions Was Not Arbitrary and Capricious**

Consistent with the statute, Secretary Noem considered conditions in Nepal, Honduras, and Nicaragua, 8 U.S.C. § 1254a(b)(1)(B), and ultimately decided that termination of TPS for each country was warranted. 90 Fed. Reg. at 24,152-53 (Nepal); 90 Fed. Reg. at 30,088 (Nicaragua); 90 Fed. Reg. at 30,091 (Honduras). The Federal Register notices show that the Secretary, after consultation with appropriate agencies of the Government, properly addressed and considered the statutory considerations in doing so. Those considerations are whether: (1) an earthquake, flood, or other environmental disaster resulted in "a substantial, but temporary, disruption of living conditions in the area affected;" (2) the foreign state is unable, temporarily,to handle adequately the return to the state of aliens who are nationals

7

of the state; and (3) the foreign state has requested designation under the TPS statute. 8 U.S.C. § 1254a(b)(1)(B)(i)-(iii).

With respect to Nepal, the Secretary concluded that termination of Nepal's TPS designation, which was predicated on a 2015 earthquake, was appropriate because the Nepalese government reported that "88.36% of damaged households have been rebuilt" and had "disbanded" its reconstruction authority after "most impacted structures were rebuilt." 90 Fed. Reg. at 24,153. The Secretary additionally considered "improvements to [Nepal's] preparedness and response capacity," "disaster-resilient housing, infrastructure, and community systems," "economic growth" and increase of "purchasing power of lower income households," as well as the Nepalese government's demonstrated capacity to accept aliens with final removal orders over the past five years. *Id*. The Secretary's determination was based on her consultation with appropriate governmental agencies and review of country conditions evidence. *See* ECF No. 64 (Nepal administrative record). Indeed, former Secretary of State Blinken recommend that Nepal's TPS designation be terminated in 2024 based on Nepal's reconstruction progress. ECF No. 64 at 571-79.

As for Nicaragua, the Secretary concluded that "notable improvements allow Nicaragua to adequately handle the return of its nationals." 90 Fed. Reg. at 30,088. The Secretary recognized that Hurricane Mitch in 1998 was "a sudden catastrophe that caused severe flooding and associated damage" but that the hurricane was no longer disrupting living conditions or preventing Nicaragua from accepting the return of its nationals. *Id*. Specifically, Nicaragua had improved its roads, school infrastructure, and access to healthcare, had a stable economy, and had regularly accepted the return of its nationals over the preceding five years. *Id*. Again, the Secretary's determination was based on her consultation with appropriate governmental agencies and review of country conditions evidence. ECF No. 63 (Nicaragua administrative record).

Finally, the Secretary concluded that "the conditions supporting Honduras'" 1999 designation for TPS were no longer met because the "conditions resulting from Hurricane Mitch no longer cause a substantial, but temporary, disruption in living conditions" such that Honduras is "temporarily" unable to "adequately" handle the return of its nationals. 90 Fed. Reg. at 30,091. Specifically, over the intervening 26 years since Hurricane Mitch, the vast majority of Hondurans gained access to water, sanitation, and electricity and that, with international assistance, "Honduras has strengthened its disaster management

capacity at the municipal and national levels[.]" *Id*. Further, given Honduras's acceptance of aliens with final removal orders, the Secretary concluded the government's ability to accept the return of its nationals was adequate. And, in keeping with the theme, the Secretary's determination was based on her consultation with appropriate governmental agencies and review of country conditions evidence. ECF No. 62 (administrative record for Honduras).

This Court's conclusion that the Secretary's TPS terminations were "preordained" despite satisfying the unreviewable statutory factors is not a cognizable basis for relief under the APA. ECF No. 197 at 39-43. Agency decisions that are settled by administration policy priorities—even if this were one—are not vulnerable to arbitrary-and-capricious invalidation solely for that reason. Just the opposite: The law is clear that "a court may not set aside an agency's policymaking decision solely because it may have been . . . prompted by Administration priorities." *Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019). Instead, "[a] change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part). After all, "[i]t is expected—perhaps even critical to the functioning of government—for executive officials to conform their decisions to the administration's policies," *Ramos*, 975 F.3d at 897-98, especially, where, as here, determinations regarding foreign country conditions and a country's ability to handle adequately the return of its nationals are infused with sensitive judgment calls implicating foreign policy.

That a different administration may pursue different policy priorities is thus a feature of our constitutional structure, not a basis for invalidating agency decisions. "[T]he President's power necessarily encompasses general administrative control of those executing the laws, through the Executive Branch of government, of which he is the head." *Bldg. & Constr. Trades Dep't v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002 (cleaned up). And, contrary to the Court's rationale, it is not unlawful to "implement the President's policy directives to the extent permitted by law." *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012); ECF 197 at 40 (citing EO 14159). Disagreement with the Secretary's policy preferences does not create a viable APA claim, and the government is likely to prevail on that aspect of the Court's reasoning on appeal. ECF No. 197 at 40-41.

9

The preparation of decision memos for the Secretary by her staff, before her ultimate TPS determinations, does not render her TPS terminations arbitrary or capricious either. ECF No. 197 at 41. The TPS statute is designed to *automatically* extend in the absence of a determination "whether the conditions for such designation… continue to be met" at least 60 days before the end of the prior extension. 8 U.S.C. § 1254a(b)(3)(A). In contrast, the Secretary must provide a written notice announcing a TPS termination. 8 U.S.C. § 1254a(b)(3)(B). There is nothing arbitrary and capricious about the Secretary's staff preparing pre-decisional drafts of decision memos for the Secretary's ultimate consideration—indeed, such work product is usually *encouraged* as part of the process of making a reasoned decision by protecting such draft from disclosure in order to encourage "the candid and frank exchange of ideas in the agency's decisionmaking process." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014).

Critically, there is no dispute that each administrative record contained country conditions evidence relevant to evaluating whether "the conditions for [each] designation . . . continue to be met," particularly where the relevant disasters occurred years or decades ago. 8 U.S.C. § 1254a(b)(3)(A); *see* ECF No. 62, 63, 64 (administrative records); *see, e.g.*, ECF No. 64 at 571-79 (Secretary of State Blinken's 2024 recommendation that TPS for Nepal be terminated). The Court's conclusion that the Secretary relied on "skewed data" flows from the erroneous premise that the Secretary is required to consider intervening circumstances, a legal conclusion unlikely to survive appeal for the reasons already discussed. *See Garland v. Ming Dai*, 593 U.S. 357, 365 (2021) ("it is long since settled that a reviewing court is generally not free to impose additional judge-made procedural requirements on agencies that Congress has not prescribed and the Constitution does not compel.") (cleaned up); *supra* Argument § II.A; ECF No. 197 at 41. Relatedly, there is no requirement that the Secretary specifically consult with the Secretary of State, and the Court never explains how internal consultation within DHS agencies that regularly address conditions in foreign countries is insufficient. 8 U.S.C. § 1254a(b)(3)(A); ECF No. 197 at 41. And, tellingly, the Court's decision never identifies any country conditions traceable to the 1998 hurricane affecting Nicaragua and Honduras and 2015 earthquake affecting Nepal that the Secretary overlooked. ECF No. 197 at 39-43. Thus, even if review was available—it is not, *see* 8 U.S.C. § 1254a(b)(5)(A)—the Government is likely to prevail on the merits of any APA challenge to the Secretary's TPS terminations.

The Court's order should be stayed pending review.

### III. THE NON-MERITS CONSIDERATIONS STRONGLY FAVOR A STAY PENDING APPEAL

Irreparable harm to the government, the balance of harms, and public interest also favor a stay pending appeal. *See Nken*, 556 U.S. at 435. Most fundamentally, as the Supreme Court necessarily concluded in an analogous case, the Government and public share an interest in ensuring adherence to the process established by Congress, under which the Secretary has unreviewable authority over TPS designations. *Noem*, 145 S. Ct. at 2728-29 (staying § 705 order); *Noem*, 2025 WL 2812732 at *1; *see Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

The government faces irreparable harm from the Court's judgment because it requires the Secretary to permit thousands of individuals from the subject countries to remain in the country, with work authorization and protection from removal or even initiation of removal proceedings, notwithstanding her reasoned determination that doing so is contrary to the statute. That alone establishes the threat of irreparable harm. The Court's decision also undermines the Executive Branch's inherent powers as to immigration and frustrates the statutory scheme, which establishes TPS as a "temporary" form of relief and, when circumstances change, *requires* the Secretary to terminate TPS decisions so that ordinary Title 8 processes can resume. Thus, absent a stay, the Court's decision represents "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-1306 (1993) (O'Connor, J., in chambers). That is especially so because the harm here arises in an area that implicates "a fundamental sovereign attribute exercised by the Government's political departments[,] largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). Permitting the TPS designations for Nepal, Honduras, and Nicaragua to continue would override the Secretary's considered judgment that TPS must be terminated because there is not a "substantial, but temporary, disruption of living conditions" associated with a 1998 hurricane (28 years ago) and a 2015 earthquake that prevent aliens from those countries from returning. 8 U.S.C. § 1254a(b)(3)(B).

11

Plaintiffs contend that the termination could potentially lead to the loss of employment or health benefits, as well as possible removal and family separation. ECF No. 17 at 22-23; ECF No. 53 at 13; ECF No. 73 at 31; ECF No. 197 at 10-11. But the end of TPS's inherently *temporary* protection is not equivalent to a final removal order under 8 U.S.C. § 1229a, and the loss of associated benefits (such as employment authorization) is inherent in the statutory scheme Congress designed. *See Sagana v. Tenorio*, 384 F.3d 731, 743 (9th Cir. 2004) (rejecting a due process challenge to a temporary worker program and explaining that it "violates no constitutional principles by conditioning an alien's entry on his or her willingness to enter into limited labor contracts."). And, in all events, "the burden of removal alone cannot constitute the requisite irreparable injury." *Nken*, 556 U.S. at 435. Moreover, Congress has crafted remedies to provide immigration relief and protection on an individualized basis where it deems appropriate. Nothing prevented Plaintiffs from pursuing that immigration relief in the decades since they first entered the United States and received TPS, and nothing prevents them from doing so now. Plaintiffs cannot establish irreparable harm through a lawful TPS termination by declining to pursue alternative relief that would ameliorate their alleged harms.

The Supreme Court twice stayed district court orders interfering with Secretary Noem's termination of Venezuela's TPS designation, necessarily concluding that the harm to the Government when it is prevented from administering the TPS statute outweighs harms to aliens whose temporary status is terminated (with the requisite 60 day notice period). *Noem*, 145 S. Ct. at 2728-29 (2025); *Noem*, 2025 WL 2812732 at *1. And the Ninth Circuit necessarily reached the same conclusion in this very case. ACMS No. 19, *Nat'l TPS Alliance v. Noem*, No. 25-4901 (9th Cir.) (granting stay pending appeal). The harms identified by Plaintiffs are certainly no stronger than those presented there. They are arguably weaker than the case the Supreme Court considered, in that here the Secretary did not vacate prior extensions of the designations, but instead merely terminated them when they were already scheduled to expire. Accordingly, the government is likely to prevail on appeal, and the non-merits considerations amply justify a stay. *See Boyle*, 145 S. Ct. at 2654. The Court should grant a stay pending appeal.

## CONCLUSION

For these reasons, this Court should grant a stay pending appeal.

Dated: January 5, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

RUTH MARY MUELLER
Senior Litigation Counsel

ERIC SNYDERMAN
LAUREN BRYANT
CATHERINE ROSS
JEFFREY M. HARTMAN
AMANDA SAYLOR
DANIEL CAPPELLETTI
SHELBY WADE
Trial Attorneys

/s/ *Jeffrey Hartman*
JEFFREY HARTMAN
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4404
Jeffrey.M.Hartman@usdoj.gov

*Attorneys for the Defendants*

BRETT A. SHUMATE
Assistant Attorney General
YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division
RUTH MARY MUELLER
Senior Litigation Counsel
ERIC SNYDERMAN
LAUREN BRYANT
CATHERINE ROSS
AMANDA B. SAYLOR
JEFFREY M. HARTMAN
DANIEL CAPPELLETTI
SHELBY WADE
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, <br><br> Defendants. | Case No. 3:25-cv-5687 <br><br> [PROPOSED] ORDER GRANTING MOTION FOR STAY OF THE COURT'S PARTIAL JUDGMENT (ECF No. 197) PENDING APPEAL |

[PROPOSED] ORDER GRANTING STAY PENDING APPEAL – No. 3:25-cv-5687
1

Before the Court is Defendants' motion for a stay pending appeal of the Court's order setting aside the Secretary's 2025 Termination determinations for Nepal, Honduras, and Nicaragua under the Administrative Procedures Act. ECF No. 197. Having reviewed the motion, IT IS HEREBY ORDERED that the motion for a stay pending appeal is GRANTED.

Issued this ___ day of January, 2026.

                                                          Trina L. Thompson
                                                          United States District Judge

2