Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou H. MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, SANDHYA LAMA, TEOFILO MARTINEZ,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>*Defendants*. | Case No. 3:25-cv-05687-TLT-SK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO STAY**<br><br>Complaint filed: July 7, 2025 |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (admitted *Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Eva L. Bitrán (SBN 302081)
ebitran@aclusocal.org
Diana Sánchez (SBN 338871)
dianasanchez@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (admitted *Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................................1

ARGUMENT........................................................................................................................................1

I.    DEFENDANTS FAIL TO SHOW A STRONG LIKELIHOOD OF SUCCESS........................1

    A.    No Prior Unreasoned Stay Order Supports Granting a Stay Here ................................1

    B.    The TPS Statute Does Not Bar Plaintiffs' Claims .........................................................3

    C.    APA Relief is Not Barred by 8 U.S.C. § 1252(f) ..........................................................5

    D.    Defendants Fail to Show a Strong Likelihood of Success on Plaintiffs' Claim that the Secretary Failed to Consider Intervening Conditions ..............................................6

    E.    Defendants Fail to Show a Strong Likelihood of Success on Plaintiffs' Claim that the Secretary Failed to Comply with Statutory Consultation and Review Requirements ..................................................................................................................7

II.    DEFENDANTS FAIL TO SHOW IRREPARABLE HARM AND THE PUBLIC INTEREST AND BALANCE OF EQUITIES FAVOR PLAINTIFFS ..................................8

CONCLUSION.....................................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burlington Ins. Co. v. Oceanic Design & Const., Inc.*,
    383 F.3d 940 (9th Cir. 2004) ...................................................................................................11

*DCH Reg'l Med. Ctr. v. Azar*,
    925 F.3d 503 (D.C. Cir. 2019) ....................................................................................................5

*Haitian Evangelical Clergy Ass'n v. Trump*,
    789 F. Supp. 3d 255 (E.D.N.Y. 2025) ........................................................................................9

*Hamilton v. State Farm Fire & Cas. Co.*,
    270 F.3d 778 (9th Cir. 2001) ......................................................................................................2

*Immigrant Defs. L. Ctr. v. Noem*,
    145 F.4th 972 (9th Cir. 2025) .....................................................................................................5

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ................................................................................................................5, 6

*Nat'l TPS All. v. Noem*,
    798 F. Supp. 3d 1108 (N.D. Cal. 2025) ......................................................................................8

*Nat'l TPS All. v. Noem*,
    150 F.4th 1000 (9th Cir. 2025) ...................................................................................................3

*Nat'l TPS All. v. Noem*,
    --- F.4th ---, 2025 WL 2661556 (9th Cir. Sept. 17, 2025) ..........................................................5

*Ramos v. Nielsen*,
    709 F. Supp. 3d 871 (N.D. Cal. 2023) ........................................................................................9

*Ramos v. Wolf*,
    975 F.3d 872 (9th Cir. 2020) *reh'g en banc granted, opinion vacated*, 59 F.4th
    1010 (9th Cir. 2023)................................................................................................................4, 8

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) .................................................................................................5, 6

*Skagit Cnty. Pub. Hosp. Dist. No. 2 v. Shalala*,
    80 F.3d 379 (9th Cir. 1996) ........................................................................................................5

*Thakur v. Trump*,
    --- F.4th ---, 2025 WL 3760650 (9th Cir. Dec. 23, 2025)...........................................................3

*Trump v. Boyle*,
    145 S. Ct. 2653 (2025) ................................................................................................... 3

*United States v. Tohono O'Odham Nation,*
    563 U.S. 307 (2011) ....................................................................................................... 5

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ..................................................................................................... 11

*Yale New Haven Hosp. v. Becerra*,
    56 F.4th 9 (2d Cir. 2022) ............................................................................................... 5

**Statutes**

5 U.S.C. § 706(2)(D) ............................................................................................................. 7

8 U.S.C. § 1252(f) .............................................................................................................. 5, 6

8 U.S.C. § 1254a(b)(3)(A) ................................................................................................. 7, 8

8 U.S.C. § 1254a(b)(5)(A) ..................................................................................................... 3

28 U.S.C. §§ 2201-2202 ...................................................................................................... 11

**Other Authorities**

90 Fed. Reg. 8805 (Feb. 3, 2025) .......................................................................................... 2

90 Fed. Reg. 9040 (Feb. 5, 2025) .......................................................................................... 2

90 Fed. Reg. 19217 (May 6, 2025) ........................................................................................ 8

Fed. R. App. P. 40 .................................................................................................................. 4

Gov't Accountability Office, *Temporary Protected Status: Steps Taken to Inform and
    Communicate Secretary of Homeland Security's Decisions* 2 (Apr. 2020),
    http://gao.gov/assets/gao-20-134.pdf ........................................................................... 8

**INTRODUCTION**

This Court should deny Defendants' stay motion because Defendants fail to show a strong likelihood of success on appeal and the balance of equities sharply favors Plaintiffs. Defendants' TPS termination decisions have wreaked havoc on the lives of Plaintiffs and class members, who have lived lawfully in this country for more than twenty-five years (Honduras and Nicaragua) or more than ten years (Nepal). In contrast, Defendants identify no concrete way in which they, the public, or anyone else is harmed by the ongoing presence of TPS holders from Honduras, Nepal, and Nicaragua. To the contrary, the evidence overwhelmingly shows that terminating TPS is not in the public interest.

Defendants rely heavily on unexplained shadow docket orders to establish their likely success on appeal, but none of the orders they cite controls here. The Supreme Court's stay decisions in another case—involving a different factual record, different legal claims, and a different group of TPS holders—provide no reasoning to follow. And that Defendants have *not* sought stays from the Supreme Court in other TPS cases is equally strong countervailing authority.

Nor does the Ninth Circuit's unexplained stay of this Court's postponement order inform the likely outcome of an appeal of this Court's *final* judgment, which is based on a new claim that was not at issue in the postponement order and a significantly different, more developed factual record. Because Defendants have not shown a strong likelihood of success and the non-merits factors overwhelmingly favor Plaintiffs, Defendants' motion should be denied.

**ARGUMENT**

**I.   DEFENDANTS FAIL TO SHOW A STRONG LIKELIHOOD OF SUCCESS**

   **A.   No Prior Unreasoned Stay Order Supports Granting a Stay Here**

Defendants err in asserting that the Supreme Court's unexplained stay orders in *Noem v. National TPS Alliance* ("*NTPSA (Venezuela)*") and the Ninth Circuit's prior stay in this case establish they are likely to prevail on the merits of an appeal in this case, or that the balance of equities favors the government. Mot. at 1–2.

First, *NTPSA (Venezuela)* and this case involve distinct facts, different legal claims, and different equities. Indeed, in opposing Plaintiffs' motion to relate the two cases, Defendants

1

recognized the factual distinctions, asserting that "[t]he TPS decisions at issue are distinguishable" as the instant case "involves different TPS country designations, ... a different administrative record, and ... factual allegations unique to the 2025 decisions made regarding TPS for Nicaragua, Nepal, and Honduras." Opp. to Admin. Mot. to Relate at 1, 6–7, *Ramos v. Nielsen*, Case No. 3:18-cv-01554-EMC (N.D. Cal. Jul 8, 2025), Dkt. 266 (arguing that this case and *NTPSA (Venezuela)* "do not concern substantially the same parties, property, transaction, or event"). Having succeeded in preventing this case from being deemed related to *NTPSA (Venezuela)*, Defendants cannot now argue that shadow docket rulings in that case control here. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) ("Judicial estoppel ... precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."). As to legal claims, *NTPSA (Venezuela)* concerned the Secretary's vacatur authority, which is not at issue here, and did not address the Secretary's failure to consider intervening conditions, which is. Finally, as to equities, the *NTPSA (Venezuela)* stay orders affected a fundamentally different population. They were a much larger group, had been present for a shorter period of time, and the Secretary has asserted their continued presence endangers the national interest. *See* Vacatur of 2025 Temporary Protected Status Decision for Venezuela, 90 Fed. Reg. 8805 (Feb. 3, 2025); Termination of the October 3, 2023 Designation of Venezuela for Temporary Protected Status, 90 Fed. Reg. 9040 (Feb. 5, 2025). In contrast, the Secretary has not asserted that the continued presence of Honduran, Nicaraguan, and Nepali TPS holders who have lived and worked lawfully in this country for at least a decade, and in most instances over a quarter century, endangers the national interest.

Second, the Ninth Circuit's stay of the prior postponement order in this case says nothing about the likely success of Plaintiffs' claim that the Secretary failed to consider intervening conditions. That claim was not at issue in the postponement order, so was not before the Ninth Circuit at the time of the prior stay. Nor is the prior stay suggestive of the outcome on appeal of Plaintiffs' claim that the Secretary failed to comply with statutory consultation and review requirements. While that claim was one of the bases of the postponement order, the postponement order's analysis of that claim was necessarily based on a far less developed factual record. This

order, by contrast, is a final order based on a complete record. Accordingly, the prior stay cannot predict the likely success of that claim either.

Finally, the fact that *none* of the prior stay orders on which the government relies provided any reasoning distinguish this case from *Thakur v. Trump*, --- F.4th ---, 2025 WL 3760650, at *5 (9th Cir. Dec. 23, 2025) and *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). *Thakur* and *Boyle* look to prior shadow docket orders to "inform how a court should exercise its equitable discretion in like cases," *Thakur*, 2025 WL 3760650, at *5 (quoting *Boyle*). But the shadow docket orders at issue in those cases contained substantive reasoning as to why specific, equitable factors warranted a stay. In contrast, neither the stay orders in *NTPSA (Venezuela)* nor the prior stay in this case provide analysis of any kind—concerning the merits or any specific equitable factors.

### B. The TPS Statute Does Not Bar Plaintiffs' Claims

Defendants fail to establish a strong likelihood of success on their recycled (and repeatedly rejected) jurisdictional arguments. Mot. at 2–5; *see also* Dkts. 73 at 15–20, 87 at 2–6, 134 at 10–11, 197 at 12–17 (holding 8 U.S.C. § 1254a(b)(5)(A) does not bar Plaintiffs' claims). Defendants' jurisdictional arguments lump together Plaintiffs' distinct APA claims. Mot. at 3. But the precise claim matters. To succeed, Defendants would have to show that the TPS statute bars *all* of Plaintiffs' claims; they fail to show it bars any.

This Court entered judgment for Plaintiffs on their claim that "the Secretary did not comply with the TPS statute's requirement that TPS decisions be made after interagency consultation and an objective review of the country conditions." Dkt. 197 at 39. The Court rightly exercised jurisdiction over this claim because it concerns the "extent of statutory authority granted to the Secretary." *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1017 (9th Cir. 2025) ("*Nat'l TPS All*"). Specifically, Section 1254a(b)(3)(A) authorizes the Secretary to make a TPS decision only "*after*" conducting the required consultation and review. Under controlling Ninth Circuit precedent, the Secretary's compliance with this statutory restriction on her authority is "a first order question that is not a 'determination ... with respect to the designation, or termination or extension' of a country for TPS." *Id.* (quoting 8 U.S.C. § 1254a(b)(5)(A)). Defendants' attempt to distinguish *Nat'l TPS All* falls flat. Mot. at 5. That the statute authorizes the Secretary to terminate TPS is immaterial, as it permits her

3

to do so only *after* following statutorily required procedures. The Court found that the Secretary terminated TPS for these countries *before* engaging in that consultation and review, and that doing so exceeded her statutory authority.

The Court also entered judgment for Plaintiffs on their claim that the Secretary failed to consider intervening conditions. The Court held the Secretary's failure violated the APA for two reasons. First, it was contrary to law, because the TPS statute *requires* consideration of intervening conditions. Defendants rely heavily on the vacated Ninth Circuit opinion in *Ramos v. Wolf,* but fail to acknowledge that even the majority there would have found jurisdiction over this claim, as it concerned a claim that Defendants adopted an erroneous interpretation of the TPS statute. As the majority held in the vacated *Ramos* decision: "In general, a claim that an agency has adopted an erroneous interpretation of a governing statute would be reviewable under *McNary*, particularly because the court's resolution of these sort of challenges turns on a review of the law itself, rather than a review of the merits of any specific agency determinations." 975 F.3d 872, 895 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023).[1]

Second, and independently, the Court held the Secretary's failure to consider intervening conditions was arbitrary and capricious, because it constituted an unexplained departure from past practice. Dkt. 197 at 43–47. Defendants argue the appeals court will likely find no jurisdiction to review the Secretary's arbitrary break with past practice, because the *Ramos* majority found no jurisdiction over an essentially identical claim. This fails to account for a key fact Defendants have consistently ignored throughout this litigation: the *Ramos* opinion was *vacated* because a majority of Ninth Circuit judges *voted to rehear the case en banc*, strongly suggesting disagreement with the panel's decision. *Ramos v. Wolf*, 59 F.4th 1010, 1011 (9th Cir. 2023); *see also* Fed. R. App. P. 40 (standard for en banc rehearing). Defendants assert *Ramos* should nonetheless be treated as "persuasive," Dkt. 198 at 4 n.4, but their only support is a case discussing the precedential value of opinions vacated *due to mootness*. Dkt. 166 at 3 n.1 (citing *DHX, Inc. v. Allianz AGF MAT, Ltd*., 425

---

[1] The vacated *Ramos* panel majority rejected that claim only because it believed the plaintiffs there had not adequately pled that legal error, but Plaintiffs here have pled it, as this Court's decision already makes clear. *See id*. at 895 ("we decline to adopt the dissent's reconstruction of Plaintiffs' APA claim as a challenge to an agency interpretation of the TPS statute").

1  F.3d 1169, 1176 (9th Cir. 2005)). To the extent *Ramos* is relevant, it shows Defendants *cannot*
2  establish a strong likelihood of success on this jurisdictional argument, because a majority of Ninth
3  Circuit judges indicated disagreement with it when they voted to rehear *Ramos* en banc.
4     The other cases Defendants cite do not establish a strong likelihood of success on appeal on
5  their jurisdictional position. None interpret the term "determination" in the immigration context.
6  Rather, Defendants rely primarily on Medicare cases interpreting statutes that are not at issue here.
7  *See* Dkt. 198 at 3; *see also, e.g., Yale New Haven Hosp. v. Becerra*, 56 F.4th 9, 18 (2d Cir. 2022)
8  (finding no jurisdiction to review agency decision about which data should be used to "estimate"
9  hospital funding because statute barred review of "estimate[s]" and explicitly defined that term to
10 include data selection). *Skagit County Public Hospital District No. 2 v. Shalala* holds that challenges
11 to agency "procedure[s]" are *not* barred by the jurisdictional stripping provision at issue there. 80
12 F.3d 379, 386 (9th Cir. 1996). *DCH Regional Medical Center v. Azar* is similarly distinguishable.
13 925 F.3d 503 (D.C. Cir. 2019). The court recognized that it might have had authority to review the
14 manner by which the agency calculated payments if the regulatory scheme had provided a general
15 rule for calculating payments that was applied to individual hospitals. *Id.* at 506. The TPS statute
16 does provide a general rule for making country conditions determinations that is applied to
17 individual country decisions, so *DCH* provides little guidance. Finally, *United States v. Tohono*
18 *O'Odham Nation*, did not find judicial review barred entirely, just that it was not available in two
19 different courts. 563 U.S. 307, 316 (2011).
20     **C.    APA Relief is Not Barred by 8 U.S.C. § 1252(f)**
21     Under controlling Ninth Circuit precedent, Section 1252(f)(1) does not limit relief under the
22 APA. *See Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 989−90 (9th Cir. 2025). The Ninth
23 Circuit has so held as to relief under both APA Section 705 and APA Section 706, so Defendants'
24 attempt to distinguish between the two forms of relief is unavailing. *See id.* (Section 705); *Nat'l TPS*
25 *All. v. Noem*, --- F.4th ---, 2025 WL 2661556, at *3 (9th Cir. Sept. 17, 2025) (Section 706). Further,
26 and as Defendants have previously conceded, Dkt. 110 at 14–15, Section 1252(f)(1) also does not
27 bar declaratory relief. Defendants err in suggesting *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir.
28 2010), is no longer good law. The Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281

(2018) neither reversed the *Hayes* decision nor abrogated its holding that declaratory relief remains available notwithstanding Section 1252(f)(1). *Jennings* reversed only a later merits ruling in the *Rodriguez* litigation.[2]

### D. Defendants Fail to Show a Strong Likelihood of Success on Plaintiffs' Claim that the Secretary Failed to Consider Intervening Conditions

This Court entered judgment for Plaintiffs on their claim that the challenged terminations violated the APA because the Secretary failed to consider intervening conditions, i.e., conditions unrelated to the original reason for the country's designation. Defendants do not contest this Court's factual finding that Secretary Noem did not consider intervening conditions when making her termination decisions. Mot. at 6−7. *See* Dkt. 197 at 46−47. Nor do they contest this Court's finding that Secretary Noem's failure represented an arbitrary, unexplained departure from past practice in violation of the change-in-position doctrine. Mot. at 6−7. *See* Dkt. 197 at 43−46. Because these uncontested findings alone are sufficient for Plaintiffs to prevail on this claim on appeal, Defendants necessarily cannot establish a strong likelihood of success.

Defendants *do* assert they will likely succeed on appeal in reversing this Court's interpretation of the TPS statute to require the Secretary to consider intervening conditions. Mot. at 6−7. The Court need not address this argument to reject Defendants' motion for a stay of judgment on this claim, but if it does, it should reject it. Defendants fail to show this Court likely erred by interpreting the TPS statute to mean what the agency itself understood it to mean for two decades, both before and after the first Trump Administration. Dkt. 197 at 45 (citing *Saget v. Trump*, 375 F. Supp. 3d 280, 350 (E.D.N.Y. 2019) and *Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1092 (N.D. Cal. 2018)). This is especially true because Defendants appear to *concede* that, under the express terms of the TPS statute, the Secretary's periodic review must consider both the country conditions that gave rise to the "initial period of designation" *and* the country conditions that gave rise to "any extended period of designation." Mot. at 6–7 (quoting 8 U.S.C. § 1254a(b)(3)(A)).

---

[2] The Supreme Court also suggested the Ninth Circuit examine its law as to whether declaratory relief could support class certification, *id.*, 583 U.S. at 313, but that issue is not relevant here, and in any event the Ninth Circuit has never reversed itself on that question, and no appellate court has adopted the view that a class cannot be certified to seek declaratory relief.

1    Defendants feign confusion about this Court's reference to a "broader TPS designation," Mot. at 7, but it is clear that "broader designation" simply refers to both the initial designation and any subsequent extensions. Here, each country's initial designation was based on a natural disaster, but subsequent extensions were based on other conditions, including "food insecurity in Nepal, staggering crime in Honduras, [and] humanitarian crises in Nicaragua." Dkt. 197 at 9. In terminating TPS, the Secretary erroneously deemed irrelevant conditions such as these, which had supported prior extensions, and instead considered only conditions triggering the initial designation.

### E. Defendants Fail to Show a Strong Likelihood of Success on Plaintiffs' Claim that the Secretary Failed to Comply with Statutory Consultation and Review Requirements

The Court also entered judgment for Plaintiffs on their claim that the Secretary failed to comply with the TPS statute's consultation and review requirements. Defendants fail to engage with this Court's detailed factual findings in support of its judgment, including that the Secretary "fail[ed] to consult with the Department of State before deciding whether to terminate TPS," "relied on skewed data" to support termination, and "influenced the conditions review process to facilitate" her "preordained decision to end TPS." Dkt. 197 at 41−42. To prevail on appeal, Defendants would have to show these and other findings were clear error. Because they do not even attempt to do so, they have not established a strong likelihood of success.

Instead, Defendants pretend this Court found only that the terminations were influenced by "policy priorities" and then argue that pursuing administrative policy preferences does not violate the APA. Mot. at 9−10. This argument is inapposite, because what this Court actually found (and what Plaintiffs have contended throughout this litigation) is that Defendants made the decision to terminate TPS before consulting with the State Department or reviewing country conditions, in plain violation of the statute and the APA. Dkt. 197 at 39−43. Defendants are not likely to succeed in overturning that decision on appeal, because 8 U.S.C. § 1254a(b)(3)(A) explicitly requires the Secretary to engage in consultation and review before making a TPS decision, and agency decisions that fail to "observ[e] procedure required by law" violate the APA. 5 U.S.C. § 706(2)(D).

1    Finally, Defendants assert for the first time that "internal consultation within DHS" can
2 satisfy the statutory consultation requirement. Mot. at 10. Defendants never made this argument in
3 their summary judgment briefing, so this Court should find that it is waived.

4    It is also wrong. The statute requires that the Secretary consult with "appropriate agencies of
5 the Government." 8 U.S.C. § 1254a(b)(3)(A). There can be no serious dispute that the State
6 Department is an "appropriate" agency with which to consult for purposes of assessing conditions in
7 foreign countries. DHS has long interpreted the statute that way, consistently consulting with the
8 State Department about country conditions. *See* Gov't Accountability Office, *Temporary Protected*
9 *Status: Steps Taken to Inform and Communicate Secretary of Homeland Security's Decisions* 2, 8,
10 18–26 (Apr. 2020), http://gao.gov/assets/gao-20-134.pdf; *see also* Extension of South Sudan
11 Designation for Temporary Protected Status, 90 Fed. Reg. 19217, 19217–18 (May 6, 2025)
12 (automatically extending TPS for South Sudan because "consultation from Department of State for
13 South Sudan was not able to be updated prior to the statutory deadline"). Moreover, even if the
14 statute did not require consultation—which it does—DHS's unexplained departure from its
15 longstanding practice of consulting the State Department about country conditions would violate the
16 APA. *See Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1150 (N.D. Cal. 2025) (finding separate
17 violations based on both the statutory consultation requirement and the unexplained departure in past
18 practice of consultation with State Department).

19  **II.    DEFENDANTS FAIL TO SHOW IRREPARABLE HARM AND THE PUBLIC**
20  **INTEREST AND BALANCE OF EQUITIES FAVOR PLAINTIFFS**

21    Defendants demonstrate no irreparable harm warranting a stay, and the public interest and
22 balance of equities heavily favor Plaintiffs. First, Defendants previously conceded, with respect to
23 essentially the same population of TPS holders challenging TPS terminations during the first Trump
24 administration, that the balance of equities tips in Plaintiffs' favor.[3] *See* Oral Argument at 1:50,

---

[3] *Ramos* directly involved TPS holders from Nicaragua (as well as El Salvador, Haiti, and Sudan), and the government entered into a stipulation to preserve TPS for Honduras and Nepal pending a decision in *Ramos,* so the government's concession in *Ramos* necessarily implicated the *exact same population*—TPS holders from Honduras, Nicaragua, and Nepal, all of whom have lived in this country since at least 1999 (Honduras and Nicaragua) or 2015 (Nepal)—affected by this case. *See*

1  *Ramos*, 975 F.3d 872, https://www.ca9.uscourts.gov/media/video/?20190814/18-16981/ ("We are
2  not here contesting that Plaintiffs will suffer harm and that their reliance interests and the balance of
3  equities tips in their favor …."). This concession should apply with equal, or even greater, force to
4  Plaintiffs in this action—who now have even greater ties, having lived in the United States for five
5  more years than at the time of Defendants' prior concession. Granting Defendants' motion would
6  enact irreparable harm on Plaintiffs, as it will strip tens of thousands of people—most of whom have
7  lived here for over two decades—of work authorization, protection from deportation, and the ability
8  to stay in the United States with their loved ones while Defendants' appeal is pending, after all of
9  which the Ninth Circuit may well affirm this Court's order. If that happens, granting a stay will have
10 inflicted great suffering on tens of thousands of people for no reason. In contrast, denying the
11 government's motion will cause no irreparable harm to the government; even if ultimately the Ninth
12 Circuit vacates this Court's order, the only purported "harm" to the government will have been
13 extending TPS protections for a few more months, to a population that is law-abiding and deeply
14 embedded in communities across the country.

15       Second, as the government has conceded in the context of another challenged TPS
16 termination, a "few months" of continued TPS status does not necessitate extraordinary judicial
17 intervention in the form of a stay. Defendants did *not* seek a stay at the Ninth Circuit or Supreme
18 Court of a judgment in favor of Haitian TPS holders challenging the partial vacatur and termination
19 of Haiti's TPS. *See Nat'l TPS All. v. Noem*, No. 25-5724, (9th Cir. filed Sep. 12, 2025), Dkt. 7.1 at 2
20 n.1 ("Because Haiti's designation is already scheduled to expire naturally in the next few months,
21 the government does not currently seek to stay the portion of the district court's judgment related to
22 Haiti."); *Noem v. Nat'l TPS All.*, No. 24A1059 (U.S. filed May 1, 2025), Dkt. 1 at 11 n.8 (noting
23 Defendants were not seeking a stay of the Haiti termination set-aside).[4] Significantly, Defendants did
24 not seek to stay the Haiti decision even though that judgment granted relief to a much larger

---

*Ramos v. Nielsen*, 709 F. Supp. 3d 871, 878 (N.D. Cal. 2023) (describing history of *Ramos* litigation).

[4] Defendants also did not seek to stay a similar judgment in favor of Haitian TPS holders in the Eastern District of New York. *See Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255 (E.D.N.Y. 2025) (setting aside partial vacatur of Haiti's TPS).

population of TPS holders who, in many cases, are much more recent arrivals than Plaintiffs and class members in this action.[5] By Defendants' own logic, a few months of protection for Plaintiffs and the class during the pendency of Defendants' Ninth Circuit appeal does not warrant a stay.

In contrast, Plaintiffs and the class would suffer devastating harms if they lost TPS protections during the pendency of appeal. Plaintiffs demonstrated in briefing and argument that the loss of protection ripped stability, employment, health care, and security from Honduran, Nicaraguan, and Nepali TPS holders, all of whom have lived in the United States for at least 26 years (in the case of Honduras and Nicaragua) or at least a decade (in the case of Nepal). *See generally* Declaration of Emilia Garcia, Dkt. 147 ("Garcia Decl."); Declaration of Anil Shahi, Dkt. 152 ("Shahi Decl.").[6] Honduran, Nicaraguan, and Nepali TPS holders reported losing employment (with large numbers reporting losing all of their regular income almost immediately following the termination of TPS), having to sell businesses, being unable to pay rent and mortgage payments, losing essential medical care and specialized educational services for their children, and suffering depression, anxiety, fear, and "terror." *Id.*; *see also* Declarations of A.Q., M. Miralda, P.C., S.F., and S.P., Dkts. 146, 148–51 (further describing harms).

The record also demonstrates overwhelmingly that the public interest favors Plaintiffs. Plaintiffs have submitted seven expert reports attesting to the devastating public impacts—including disastrous economic effects—of the terminations.[7] *See* Dkt. 168-3 (Tolchin Decl.); 168-4 (Postel

---

[5] *Contrast* First Amended Complaint ¶¶ 1, 3, *Nat'l TPS All. v. Noem*, No. 3:25-cv-01766-EMC, (N.D. Cal. Mar. 20, 2025), Dkt. 74 (there are approximately 500,000 Haitian TPS holders, and Haiti was most recently re-designated for TPS in 2024), *with* Dkt. 89 at 5–6 (there are approximately 52,500 Honduran TPS holders (designated in 1999), 7,500 Nepali TPS holders (designated in 2015), and 2,900 Nicaraguan TPS holders (designated in 1999)—figures Defendants have never contested).

[6] The National TPS Alliance (NTPSA) and United for TPS Nepal (UTPSN), an organization founded to support Nepali TPS holders, conducted voluntary surveys of their members to understand the effect of the termination of TPS on the Honduran, Nicaraguan and Nepali TPS community. Garcia Dec. ¶ 6 (524 Honduran and Nicaraguan TPS holder survey respondents); Shahi Dec. ¶ 6 (212 Nepali TPS holder survey respondents).

[7] While the Court declined to consider any expert reports except those of Dr. Elliot Young in ruling on the parties' summary judgment motions, Dkt. 197 at 37, that was because the excluded expert reports were relevant primarily to the impact of the TPS terminations, which were not at issue on summary judgment. *Id.* The expert reports *are* relevant, however, to the Court's decision on Defendants' stay motion, because "they provide specialized knowledge and data-driven analysis showing the significant harm that termination of TPS will inflict on tens of thousands of long-term residents, their families, and their communities in the United States." Dkt. 168 at 1.

Decl.); 168-5 (Morton Decl.); 168-7 (Watson & Veuger Decl.); 168-8 (Wong Decl.); 168-9 (Frank Decl.). In contrast, Defendants have submitted *no evidence* of harm. The balance of equities tips overwhelmingly in favor of the Plaintiffs.

Finally, with respect to the declaratory relief awarded by the Court, Dkt. 197 at 51, the balance of equities tilts even more sharply towards the Plaintiffs because of differences between declaratory and APA set aside relief that are relevant in the stay context. Declaratory relief is a distinct form of relief from APA set aside relief. *See* Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver … to grant a new form of relief to qualifying litigants."). Crucially, declaratory relief does not in itself have any independent operative effect. Whereas APA set aside relief operates against the administrative action and requires that Defendants not proceed with stripping TPS protections here, declaratory relief does not require Defendants to do *anything*. It merely declares the rights of the parties to the suit in which the declaration has been sought. *See Burlington Ins. Co. v. Oceanic Design & Const., Inc.*, 383 F.3d 940, 952 (9th Cir. 2004) ("[a] declaratory judgment is a binding adjudication that establishes the rights and other legal relations of the parties where those rights are in doubt") (citation and internal quotation marks omitted). Because the declaratory relief has no independent operative effect and will not force the government to do anything during the pendency of appeal, Defendants' assertion of harm here is even weaker as to that aspect of the judgment, and the balance of equities even more strongly favors the Plaintiffs.

## **CONCLUSION**

For the foregoing reasons, the Court should reaffirm its ruling that TPS protections remain in effect for TPS holders from Honduras, Nepal, and Nicaragua, and deny Defendants' Motion to Stay.

Date: January 12, 2026

Respectfully submitted,

*/s/  Jessica Karp Bansal*
Jessica Karp Bansal
Lauren Michel Wilfong (admitted *Pro Hac Vice*)
NATIONAL DAY LABORER ORGANIZING NETWORK

Ahilan T. Arulanantham
CENTER FOR IMMIGRATION LAW AND POLICY, UCLA SCHOOL OF LAW

Emilou MacLean
Michelle (Minju) Y. Cho
Amanda Young
ACLU FOUNDATION
OF NORTHERN CALIFORNIA

Eva L. Bitrán
Diana Sanchez
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Erik Crew (admitted *Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

NATIONAL DAY LABORER ORGANIZING NETWORK

*/s/ Jessica Karp Bansal*

Jessica Karp Bansal