Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Amanda Young (SBN 359753)
ayoung@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

Brett Shumate
Assistant Attorney General
Civil Division
Yaakov Roth
Principal Deputy Assistant Attorney General
Ruth Ann Mueller
Senior Litigation Counsel
Lauren Bryant (NY Bar 5321880)
Jeffrey Hartman (WA Bar 49810)
Daniel Cappelletti (DC Bar 1672879)
Shelby Wade (NY Bar 5696067)
Catherine Ross (DC Bar 9007404)
Eric Snyderman (VA Bar 99563)
Ilana Kramer (NY 3906542)
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, SANDHYA LAMA, TEOFILO MARTINEZ,<br><br>    Plaintiffs,<br><br>    vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>    Defendants. | Case No. 3:25-cv-05687-TLT<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:  July 9, 2026<br>Time:  2:00 p.m.<br>Judge: Hon. Trina L Thompson<br>Place:  Videoconference Zoom Webinar |

JOINT CASE MANAGEMENT STATEMENT – CASE NO. 3:25-cv-05687-TLT

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Mohammad Tajsar (SBN: 280512)
MTajsar@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

Pursuant to Civil Local Rules 16-9 and 16-10(d), the Standing Order for All Judges of the Northern District of California, and this Court's April 27, 2026 order directing the parties to submit this Joint Case Management Statement, *see* ECF No. 218, the parties submit this Joint Case Management Statement.

## I.    Jurisdiction and Service

Plaintiffs' Position: This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(e)(1) because at least one Plaintiff resides in this judicial district and each Defendant is an agency of the United States or an officer of the United States sued in his or her official capacity. Defendants were served with process on July 11, 2025. Dkts. 38–41.

The Supreme Court recently interpreted 8 U.S.C. § 1254a(b)(5)(A), the TPS statute's jurisdiction limiting provision. *Mullin v. Doe*, Nos. 25-1083 & 25-1084, 2026 WL 1825840 (U.S. June 25, 2026) (*Dahlia Doe*). Five Justices appeared to agree that that provision does not bar constitutional claims. *Id.* at \*11-13 (six justices joining jurisdictional analysis as to non-constitutional claims); *id.* at \*19-20 (Kagan, J., dissenting) (four justices assuming without deciding that there is jurisdiction over constitutional claim, indicating other two found jurisdiction); *id.* at \*20-21 (Kagan, J., dissenting) (three other justices finding jurisdiction over statutory and constitutional claims). Six justices held that the jurisdictional provision does bar APA claims very similar to those on which this Court previously granted summary judgment for Plaintiffs, *i.e.*, that the terminations of TPS for Honduras, Nicaragua, and Nepal were unlawful because: (1) the decisions were preordained and not based on an objective review of country conditions after consultation with appropriate agencies; and (2) the Secretary failed to consider intervening conditions. *Id.* at \*7-10. While the Court held that the *Miot* plaintiffs were unlikely to succeed on the merits of their equal protection claim, that preliminary merits holding based on a distinct factual record clearly does not preclude Plaintiffs from moving forward with their equal protection claim in this case.

As a result, after *Dahlia Doe*, this Court should continue to exercise jurisdiction over any constitutional claims Plaintiffs may raise; but *Dahlia Doe* forecloses jurisdiction over the statutory

claims on which it had previously granted relief.[1]

Defendants' Position: This Court lacks authority to decide Plaintiffs' non-statutory claims because the Supreme Court held "the TPS statute's judicial-review bar applies to all non-constitutional claims." *See Mullin v. Doe*, No. 25-1083, — S. Ct. —, 2026 WL 1825840, at *10 (U.S. June 25, 2026). The review bar also forecloses Plaintiffs' constitutional claims. *See Doe*, 2026 WL 1825840, at *12-16 (Thomas, J., concurring). Even assuming that Constitutional claims are reviewable, Plaintiffs' equal protection claim is unlikely to succeed on the merits for the reasons articulated by the Supreme Court in *Doe*. *Id*. at *10-12. The *Doe* and *Miot* plaintiffs relied on several of the very same comments made by government officials—including President Donald Trump and former Secretary of Homeland Security Kristi Noem—that Plaintiffs rely on to support their equal protection claims in this case. *See id*. The Supreme Court's conclusion that "[n]one of the cited statements by either the President or the Secretary [were] overtly racial, and in substance all expressed policy views that could rest on race-neutral justifications" describes all remaining evidence and statements upon which Plaintiffs seek to rely in this case just as well as the evidence and statements in *Doe* and *Miot*. *Id*. at *12. And here, just as in *Doe*, the "present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies" constitute "a strong, race-neutral explanation of these officials' statements." *Id.* As such, Plaintiffs will not succeed on their equal protection claims as well.

## II.     Facts

Plaintiffs' Position: This case involves DHS Secretary Noem's unlawful decisions to terminate Temporary Protected Status ("TPS") for over 60,000 individuals from Honduras, Nepal, and Nicaragua who have lived lawfully in the United States for at least 26 years (Honduras and Nicaragua) or 10 years (Nepal) during ongoing crises in their countries.

Honduras and Nicaragua were originally designated for TPS on January 5, 1999, after Hurricane Mitch swept through Central America causing severe flooding and associated damage. Honduras' TPS designation was extended by multiple Attorneys General and DHS Secretaries between 1999 and 2017, in regular periodic reviews, based on persisting damage from the hurricane,

---

[1] *Dahlia Doe* explicitly does *not* foreclose review of all conceivable statutory claims. *Id*. at *18 (declining to address several jurisdictional hypotheticals).

as well as subsequent natural disasters, and economic and political crises. Nicaragua's TPS designation was likewise extended by multiple Attorneys General and DHS Secretaries between 1999 and 2017, in regular periodic reviews, based on social, economic, and infrastructural challenges; post-Mitch environmental disasters; a fractured economic foundation, "chronic poverty," and problems of governance and political tension. On July 7, 2025, Defendants terminated TPS for Honduras and Nicaragua. In the Federal Register termination notices for both countries, Secretary Noem identified certain positive indicators of improvement in conditions while ignoring major categories of conditions that had previously been considered. Both termination notices also explicitly rely on President Trump's Executive Order titled "Protecting the American People Against Invasion" ("Invasion E.O."), which directed the DHS Secretary to "promptly take all appropriate action, consistent with law, to rescind the policy decisions of the previous administration that led to the increased or continued presence of illegal aliens in the United States," including by reviewing "designations of Temporary Protected Status" and mandating that TPS designations be "appropriately limited in scope" to ameliorate the "continued presence of illegal aliens in the United States."

Nepal was first designated for TPS on June 24, 2015, after a 7.8 magnitude earthquake and a number of significant aftershocks killed nearly 9,000 people, injured more than 20,000 people, displaced millions, and destroyed or significantly damaged over 750,000 homes. Nepal's designation was extended for 18 months on October 26, 2016. On June 6, 2025, Secretary Noem terminated TPS for Nepal. The Federal Register termination notice also explicitly cited the Invasion E.O. instruction that Secretary Noem "ensur[e] that designations of Temporary Protected Status are . . . appropriately limited in scope and made for only so long as may be necessary to fulfill the textual requirements of the statute," as well as justified the termination of Nepal's designation by identifying "notable improvements" while ignoring entire categories of conditions that had previously been considered.

Despite the fact that Honduras, Nepal, and Nicaragua had each been designated for TPS for over ten years, Secretary Noem declined to provide any "orderly transition" period beyond the statutory 60-day minimum. *See* 8 U.S.C. § 1254a(d)(3). Prior to the current administration, all terminations of a designation of any length provided at least a six-month transition period, and more commonly a 12- or 18-month transition period. The Secretary also failed to provide a "good reason"

3

for providing only 60 days for TPS holders to leave, particularly given the massive break with past practice inherent in that decision.

In addition to terminating TPS for Nepal, Nicaragua, and Honduras, the Secretary has also terminated TPS for Venezuela, Haiti, Afghanistan, and Cameroon since her confirmation on January 25, 2025, reflecting the preordained decision to terminate nearly all TPS designations across the board. Each termination decision relies on the Invasion E.O. and follows a pattern of identifying certain positive indicators of improvements in country conditions while ignoring major categories of conditions that had previously been considered and that are highly relevant to whether nationals of the country can safely return.

Plaintiffs in this case are the National TPS Alliance ("NTPSA"), a member-led organization representing TPS holders across the country, and individual TPS holders from Nepal, Nicaragua, and Honduras. Plaintiffs contend that Secretary Noem's actions are illegal for multiple reasons. First, Plaintiffs contend that Defendants' terminations for all three countries violate the Administrative Procedure Act ("APA") because they were not based on an objective review of country conditions, as required by statute, but are instead the product of this administration's preordained, political decision to terminate nearly all TPS designations wholesale. As one means of implementing their preordained termination decision, Defendants categorically declined to consider any country conditions that were not directly related to the reason for the initial designation, thereby (1) contravening the statutory mandate to base TPS decisions on a fulsome review of country conditions and (2) arbitrarily breaking with past practice. Second, Plaintiffs contend that Defendants, in an unacknowledged and unexplained break with decades of past practice, arbitrarily provided affected TPS holders just 60 days to prepare for the loss of status despite their many years of legal status in the United States. Third, Plaintiffs contend that Defendants' decisions are unlawful because they were motivated at least in part by race- and national origin-based animus, violating the equal protection guarantee of the Due Process Clause of the Fifth Amendment.

<u>Defendants' Position</u>: The Secretary, "after consultation with appropriate agencies[,]" may designate a country for TPS only if she finds (in pertinent part) that "there has been and earthquake, flood, drought, epidemic, or other environmental disaster . . . resulting in substantial, but temporary,

disruption of living conditions . . . [such that] the foreign state is unable, temporarily, to handle adequately the return to the state of aliens who are nationals of the state[.]" 8 U.S.C. § 1254a(b)(1). Aliens covered by TPS are eligible for work authorization and may not be removed. *Id.* § 1254a(a). Initial TPS designations are discretionary, and the Secretary must conduct periodic reviews to determine whether the conditions underlying a TPS designation continue to be met. *Id*. § 1254a(b)(2), (b)(3)(A). If the Secretary "does not determine" that the foreign state "no longer meets the conditions for designation," then "the period of designation of the foreign state is extended for an additional period of 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id*. § 1254a(b)(3)(C). But if the foreign state "no longer continues to meet the conditions for designation," the Secretary "shall terminate the designation." *Id*. § 1254a(b)(3)(B). The TPS statute leaves the sensitive judgment calls about the government's national interest in the Secretary's hands. It bars judicial review of the Secretary's TPS determinations, in plain terms: "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id*. § 1254a(b)(5)(A).

**Nepal.** On June 24, 2015, the Secretary designated Nepal for TPS for a period of 18 months due to "substantial, but temporary, disruption of living conditions" resulting from an earthquake. Designation of Nepal for [TPS], 80 Fed. Reg. 36,346 (June 24, 2015). TPS was extended for an additional 18 months on October 26, 2016. Extension of the Designation of Nepal for [TPS], 81 Fed. Reg. 74,470 (Oct. 26, 2016). In 2018, DHS announced the termination of TPS for Nepal. However, litigation resulted in the continued extension of TPS documentation for TPS recipients from Nepal for several years. See Nepal Termination, 90 Fed. Reg. at 24,152. In 2023, DHS reconsidered the 2018 decision to terminate TPS and again extended TPS for recipients from Nepal, "beginning on December 25, 2023, and ending on June 24, 2025." Reconsideration and Rescission of Termination of the Designation of Nepal for [TPS]; Extension of the [TPS] Designation for Nepal, 88 Fed. Reg. 40,317 (June 21, 2023).

On June 6, 2025, DHS published notice in the Federal Register that TPS for Nepal would be terminated effective on August 5, 2025." *Nepal Termination*, 90 Fed. Reg. at 21,512. As the FRN explained, Secretary Noem considered whether there continues to be a substantial, but temporary,

disruption of living conditions in Nepal and whether Nepal is able to adequately handle the return of Nepalese nationals. *Id*. The Secretary highlighted notable improvements to disaster preparedness and response, including the construction of disaster-resilient housing, infrastructure, and community systems. *Id*. at 21,512-13. The Secretary considered Nepal's significant reconstruction efforts, including statistics demonstrating that 88.36% of houses destroyed by the earthquake and 81.43% of damaged health facilities had been rebuilt. *Id*. As a result, the Secretary determined that "there is no longer a disruption of living conditions and Nepal is able to handle adequately the return of its nationals." *Id*. at 21,512.

**Honduras.** In 1999, the Attorney General designated Honduras for TPS for 18 months due to "environmental disaster and substantial disruption of living conditions caused by Hurricane Mitch." *Designation of Honduras Under [TPS]*, 64 Fed. Reg. 524 (Jan. 5, 1999). TPS was repeatedly extended for nearly twenty years until 2018, when the Secretary of Homeland Security terminated it. *Termination of the Designation of Honduras for [TPS]*, 83 Fed. Reg. 26,074 (June 5, 2018). After the 2018 termination announcement, litigation resulted in the continued extension of TPS documentation for Honduran TPS recipients for several years. *See Honduras Termination*, 90 Fed. Reg. at 30,090. In 2023, DHS reconsidered the 2018 decision to terminate TPS and extended TPS for Honduras through July 5, 2025. *Reconsideration and Rescission of Termination of the Designation of Honduras [TPS]; Extension of the [TPS] Designation for Honduras*, 88 Fed. Reg. at 40,304 (June 21, 2023).

On July 8, 2025, DHS published notice in the Federal Register that TPS for Honduras would be terminated effective September 8, 2025. *Honduras Termination*, 90 Fed. Reg. at 30,091. As explained in the FRN, Secretary Noem "determined the conditions supporting Honduras' January 5, 1999, designation for TPS on the basis of environmental disaster due to Hurricane Mitch are no longer met." *Id.* As the FRN stated, "the conditions resulting from Hurricane Mitch no longer cause a 'substantial,' but temporary, disruption in living conditions in the area affected,' and Honduras is no longer 'unable, temporarily, to handle adequately the return of its nationals.'" *Id*. (quoting 8 U.S.C. § 1254a(b)(1)(A). The Secretary noted improvements to access to basic water sources, sanitation, and electricity, as well as strengthened disaster management capacity. *Id.* Further, significant hurricane recovery has transformed Honduras into a popular destination for tourists and real estate investors. *Id.*

The Secretary observed that assistance from the World Bank has improved emergency response and post-disaster reconstruction efforts and that new projects are transforming Honduras's infrastructure and creating new jobs. *Id.*

**Nicaragua.** In 1999, the Attorney General designated Nicaragua for TPS for 18 months after an environmental disaster substantially disrupted living conditions, rendering Nicaragua temporarily unable to handle adequately the return of its nationals. *Designation of Nicaragua Under [TPS]*, 64 Fed. Reg. 526 (Jan. 5, 1999). TPS was extended for nearly two decades until 2017, when the Acting Secretary terminated it. *See Termination of the Designation of Nicaragua for [TPS]*, 82 Fed. Reg. 59,636 (Dec. 15, 2017). After the termination announcement, litigation resulted in the continued extension of TPS documentation for TPS recipients from Nicaragua for several years. *See Nicaragua Termination*, 90 Fed. Reg. at 30,087. In 2023, DHS reconsidered the 2018 decision to terminate TPS, resulting in another extension of TPS for recipients from Nicaragua through July 8, 2025. *Reconsideration and Rescission of Termination of the Designation of Nicaragua for [TPS]*; *Extension of the [TPS] Designation for Nicaragua*, 88 Fed. Reg. at 40,294 (June 21, 2023).

On July 8, 2025, DHS published notice in the Federal Register that TPS for Nicaragua would be terminated effective on September 8, 2025. *Nicaragua Termination*, 90 Fed. Reg. at 30,086. As explained in the FRN, Secretary Noem, after consulting with the appropriate U.S. government agencies and reviewing country conditions information, determined that "the conditions supporting Nicaragua's January 5, 1999 designation for TPS on the basis of environmental disaster due to Hurricane Mitch are no longer met." *Id.* at 30,088. Secretary Noem found Nicaragua has made significant progress in recovering from the hurricane's destruction, including improvements to infrastructure, road and bridge construction, schools, and healthcare access. *Id.* Secretary Noem noted growth in Nicaragua's tourism, ecotourism, agriculture, and renewable energy industries and advances in farming and agriculture technology. *Id.* The FRN identifies improvements in housing and food security, as well as restoration of the healthcare sector. *Id.* Finally, Secretary Noem observed that Nicaragua's macroeconomic structure has stabilized, with a record high foreign reserve, sustainable debt load, and well-capitalized banking structure. *Id.*

**III.    Legal Issues**

Plaintiffs' Position: The legal issues remaining in this case have (understandably) changed in light of the Supreme Court's recent *Dahlia Doe* decision, which involved TPS protections for people from Syria and Haiti. At least two sets of issues remain to be adjudicated at this stage. The remaining legal issues for determination are:

A.      Because the Supreme Court exercised jurisdiction over a constitutional claim in *Dahlia Doe*, there should be no dispute that this Court has jurisdiction to consider such claims here. Therefore, one question that remains live in this case is whether Defendants' decisions to terminate the TPS designations of Honduras, Nepal, and Nicaragua violate the anti-discrimination guarantee of the Due Process Clause of the Fifth Amendment because they were motivated by intentional discrimination based on race, ethnicity, or national origin. *See* U.S. Const. amend. V; *Dahlia Doe*, 2026 WL 1825840, at *11 (analyzing TPS holders' Equal Protection challenge under *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977)); *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). While the Supreme Court conducted some analysis of a similar discrimination claim raised in *Trump v. Miot*, *see Dahlia Doe*, 2026 WL 1825840, at *11-13, the record in that case and this one differ in material respects.

B.      Whether good cause exists to amend the scheduling order's deadline for motions to amend and whether Plaintiffs should be granted leave to amend the complaint in light of intervening changes in fact and law, as discussed more fully below. *See infra* IV (Motions).

Defendants' Position: The legal and equitable issues for determination include:

A.      Whether this Court has authority to hear Plaintiffs' claims. The Supreme Court has found that the 8 U.S.C. § 1254a(b)(5)(A) "plainly bars consideration of […] non-constitutional claims[,]" as it allows "no judicial review of any determination… with respect to the…termination" of a TPS designation. *Mullin*, 2026 WL 1825840, at *2. The Supreme Court did not address whether the judicial-review bar also applies to constitutional claims.

B.      Whether the Secretary's termination of TPS designations for Honduras, Nepal, and Nicaragua were unlawful under the APA (non-constitutional claims). Again, the Supreme Court held in *Mullin v. Doe* that 8 U.S.C. § 1254a(b)(5)(A) bars non-constitutional claims. 2026 WL 1825840, at *7–*10. In particular, the Court held that § 1254a(b)(5)(A) bars review of not just the ultimate TPS

termination, but also subsidiary determinations, such as whether to consult other agencies. *See id*. at *10 ("If the final agency action is unreviewable, then so too are subsidiary determinations.").

C.      Whether the Secretary's TPS determinations violated equal protection principles. That claim is barred by the judicial review bar. 8 U.S.C. § 1254a(b)(5)(A). Even assuming that equal protection claims are reviewable, the standard articulated in *Trump v. Hawaii*, 585 U.S. 667 (2018), applies. And even if *Arlington Heights v. Metro. Housing Dev. Corp*. 429 U.S. 252 (1977) applies, race was not "a motivating factor in the decision to terminate" the TPS designation of any of the countries. *Doe*, 2026 WL 1825840, at *13. The statements and evidence that Plaintiffs rely on here are just as inadequate to succeed on an equal protection claim, even assuming jurisdiction, as the evidence in *Doe* and *Miot*, *id*. at *12–*13, and the "present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies" constitute "a strong, race-neutral explanation of these officials' statements" here just as in *Doe*. *Id*. at *12.

D.      Whether this Court can grant Plaintiffs the relief they seek. 8 U.S.C. § 1252(f)(1) "prohibits lower courts from entering injunctions that order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out the specified provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). The TPS statute is a covered provision and the statutory prohibition applies "[r]egardless of the nature of the action or claim" and to any order that "restrain[s]" the Secretary.

E.      Whether the relief Plaintiffs seek, a nationwide order, is overly broad. Any relief should be tailored to the named Plaintiffs in this case.

## IV.    Motions

Plaintiffs' Position: Plaintiffs filed a Motion to Proceed Under Pseudonym for individual plaintiffs S.K. and O.C. concurrently with the Complaint on July 7, 2025. Dkt. 16. This Court granted Plaintiffs' motion on July 8, 2025.[2] Dkt. 26.

---

[2] The Court's order directed Plaintiffs to provide the full names of all parties under seal. Dkt. 26. In the August 7, 2025 Joint Case Management Statement, Plaintiffs noted that the parties were discussing a Protective Order and the Plaintiffs would provide the full names of anonymous Plaintiffs under seal as soon as a Protective Order was in place. Although the parties engaged in extensive discussions regarding the need for heightened protections for anonymous Plaintiffs' identities given Plaintiffs' fear of retaliation, Dkt. 16, the Stipulated Protective Order did not ultimately include such a provision because Defendants indicated that, if this Court were to grant

9

Plaintiffs filed a Motion to Postpone Effective Agency Action under 5 U.S.C. § 705 of the APA on July 8, 2025, to delay implementation or enforcement of the termination of TPS for Nepal, Nicaragua, and Honduras until the resolution of these proceedings on the merits. Dkt. 17. Plaintiffs also filed a Motion to Shorten Time on July 8, 2025, seeking to conduct the postponement hearing on July 29, 2025, or as soon thereafter as the Court was available. Dkt. 19. Plaintiffs' Motion to Shorten Time was granted, Dkt. 36, and the postponement hearing was scheduled for, and took place on, July 29, 2025.

On July 31, 2025, the Court granted Plaintiffs' Motion to Postpone Effective Agency Action. Dkt. 73. On August 1, 2025, Defendants filed a Notice of Appeal to the Ninth Circuit challenging the Court's postponement order. Dkt. 74. Defendants also filed an Emergency Motion to Stay this Court's Postponement Order Pending Appeal, Dkt. 75, and an Emergency Motion to Shorten Time for Plaintiffs to Respond to Defendants' Motion for Emergency Stay, Dkt. 76. This Court denied Defendants' Motion to Stay on August 8, 2025. Dkt. 87.

Defendants subsequently sought a stay of this Court's postponement order from the Ninth Circuit. *Noem v. National TPS Alliance*, Case No. 25-4901, Dkt. 5.1. Defendants additionally sought a "stay of lower court proceedings pending resolution of [the] appeal because the government . . . intends to seek reassignment" to a different judge. *Id.* at 22–23. On August 20, 2025, following briefing and oral argument, the Ninth Circuit granted Defendants' motion for a stay of the postponement order pending appeal and denied Defendants' motion for a stay of district court proceedings. Dkt. 96.

Meanwhile, on August 15, 2025, Plaintiffs filed a Motion for Class Certification. Dkt. 89. This Court heard argument on the Motion on September 16, 2025, and granted the Motion on October 2, 2025. Dkt. 134.

On August 25, 2025, Plaintiffs filed an Administrative Motion for Leave to File Multiple Motions for Summary Judgment, Dkt. 101, along with a Motion for Partial Summary Judgment, Dkt.

---

Plaintiffs' Motion for Class Certification, Defendants would have no need to obtain the identities of anonymous Plaintiffs who were not seeking appointment as Class Representatives. On November 6, 2025, following this Court's decision granting Plaintiffs' Motion for Class Certification, Dkt. 134, the parties stipulated to the voluntary dismissal of anonymous Plaintiffs from this action. Dkt. 179.

100, and an Administrative Motion to Shorten Time, Dkt. 102. On August 27, 2025, this Court denied Plaintiffs' Motion for Leave to File Multiple Motions for Summary Judgment, finding a lack of good cause. Dkt. 104.

On September 9, 2025, Defendants filed a Motion to Dismiss, Dkt. 110, which this Court denied on December 31, 2025. Dkt. 197.

On October 2, 2025, Defendants filed a Motion for Stay of Proceedings in Light of Lapse in Appropriations, Dkt. 132, which this Court denied on October 3, 2025, Dkt. 138.

On October 14, 2025, Defendants filed a Motion for Summary Judgment and Plaintiffs filed a Motion for Partial Summary Judgment. Dkts. 142 & 144. That same day, Plaintiffs also filed a Motion to Consider Extra-Record Evidence, Dkt. 153, and Defendants filed a Motion to Exclude Expert Testimony, Dkt. 143.

On November 24, 2025, this Court granted Plaintiffs' Motion to Consider Extra-Record Evidence. Dkt. 193.

On December 31, 2025, this Court issued an order Granting Plaintiffs' Motion for Partial Summary Judgment, Denying Defendants' Motion for Summary Judgment, and Granting in Part and Denying in Part Defendants' Motion to Exclude. Dkt. 197. The Court directed entry of final judgment under Rule 54(b) on the APA claims for which it granted summary judgment for Plaintiffs. *Id.* at 51–52.

On January 5, 2026, Defendants filed an Emergency Motion to Stay Pending Appeal. Dkt. 198. On January 8, 2026, Defendants filed a Notice of Appeal from the Court's December 31 order. Dkt. 201. Plaintiffs filed their Opposition to Defendants' Emergency Motion to Stay on January 12. Dkt. 202. On January 13, 2026, Defendants filed a Waiver of Reply and Notice of Intent to Appeal, stating Defendants' intention to seek a stay from the Ninth Circuit if this Court does not rule by 5 p.m. PT on January 14, 2026. Dkt. 203.

On January 21, 2026, Plaintiffs filed a compliance motion. Dkt. 207.

On February 9, 2026, the Ninth Circuit stayed this Court's December 31, 2025 vacatur order. Dkt. 214.

On February 11, 2026, this Court denied Defendants' pending stay motion and Plaintiffs'

pending compliance motion as moot in light of the Ninth Circuit stay. Dkt. 215. The Court also stayed "[t]his matter . . . pending further instruction from the Ninth Circuit." *Id.*

On March 23, 2026, the Ninth Circuit dismissed Defendants' appeal of this Court's 705 order as moot. Dkt. 216.

Plaintiffs intend to move to modify the scheduling order and seek leave to amend in light of recent changes in law (in particular the Supreme Court's recent TPS decision) and newly revealed facts.

In brief, on June 25, 2026, the Supreme Court held in *Dahlia Doe* that 8 U.S.C. § 1254a(b)(5)(A) does not bar constitutional claims but does bar statutory claims that challenge "a discrete decision made by the Secretary . . . [as] part of the process that led to her final decision to terminate those countries' TPS designations." 2026 WL 182540, at *7. That ruling constitutes a substantial change in the legal landscape, which warrants permitting Plaintiffs the opportunity to amend their complaint. In particular, the same legal errors that Plaintiffs previously pled also give rise to constitutional violations. Whereas the distinction between statutory and constitutional claims was not relevant in this context under pre-existing law, the Supreme Court's recent decision renders that distinction material, as most statutory claims are no longer reviewable, while constitutional claims are.

In addition, discovery produced over the past few months in another TPS case in this district, *National TPS Alliance v. Noem*, Case No. 25-cv-01766-EMC (regarding Haiti and Venezuela), likely would give rise to new claims that Plaintiffs could raise, and which would not be barred from review under the Supreme Court's recent decision in *Dahlia Doe*.

In light of these changes, Plaintiffs intend to seek leave to amend to add claims that would be outside the TPS statute's jurisdiction limiting provision as the Supreme Court has now construed it.

Defendants' Position: Defendants agree with Plaintiffs' characterization of the motions that have been filed thus far in the case. On January 14, 2026, Defendants filed an Emergency Motion to Stay pending appeal with the Ninth Circuit. *See NTPSA v. Noem*, Case No. 26-199, ECF No. 4.1 (9th Cir. 2026). On February 9, 2026, the Ninth Circuit granted Defendants' motion and stayed the District Court's December 31, 2025 order entering partial judgment under Fed. R. Civ. P. 45(b), and vacating the termination of TPS for Nepal, Honduras, and Nicaragua. *NTPSA v. Noem*, Case No. 26-199, ECF

No. 11.1 (9th Cir. 2026). The Ninth Circuit found that the government is likely to succeed on the merits of its appeal "either by showing that the district court lacked jurisdiction or by prevailing on plaintiffs' arbitrary-and-capricious APA challenge." *Id*. at 3; *see also NTPSA v. Noem*, 3:25-cv-05687, ECF 214. Considering this decision, this Court denied Defendants' motion to stay the Court's December 31, 2025 order and Plaintiffs' motion for compliance as moot. ECF No. 215. This Court further stayed this matter pending further instruction from the Ninth Circuit. *Id*.

On February 6, 2026, Defendants filed a Motion to Vacate this Court's July 31, 2025, Decision with the Ninth Circuit. *NTPSA v. Noem*, 25-4901 (9th Cir. 2026), ECF 40.1. On March 3, 2026, the Ninth Circuit dismissed Defendants' motion as moot because "the district court has entered final judgment for plaintiffs on some of their APA claims." *NTPSA v. Noem*, 25-4901 (9th Cir. 2026), ECF 48.

## V.    Amendment of Pleadings

Plaintiffs' Position: Plaintiffs will seek to modify the scheduling order and move to amend in light of the Supreme Court's new decision and new facts revealed by discovery produced in *National TPS Alliance v. Noem*, Case No. 25-cv-01766-EMC. The pending appeal does not preclude amending the complaint to add claims that would be outside the TPS statute's jurisdiction limiting provision as the Supreme Court has now construed it and do not alter the issues on appeal.

Defendants' Position: In light of the pending appeal before the Ninth Circuit, Defendants' position is that any amendment of the pleadings at this time would be futile. This Court's deadline for amended pleadings passed on September 22, 2025. ECF 91 at 2.

## VI.    Evidence Preservation

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and will meet and confer regarding protocols for preserving evidence.

## VII.    Disclosures

Plaintiffs' Position: Plaintiffs propose that the parties meet and confer to determine the scope and timeline of disclosures that are appropriate for this case.

Defendants' Position: Defendants assert that, as an action for review on the administrative record, this case is exempt from initial disclosures. Fed. R. Civ. P. 26(a)(1).

## VIII.  Discovery

Plaintiffs' Position: On July 11, 2025, Plaintiffs filed an Administrative Motion to Expedite Production of the Certified Administrative Records ("CARs"), Dkt. 42, which Defendants opposed, Dkt. 46. The Court granted Plaintiffs' motion and ordered Defendants to produce the CARs within seven days of the order. Dkt. 47. Defendants produced the CARs for the three termination decisions to Plaintiffs on July 22, 2025, and filed the CARs with the Court on July 28, 2025. Dkts. 62–64. Defendants subsequently filed erratas to all three CARs on August 4, 2025. Dkts. 77–79.

On August 18, 2025, the Court referred this case to Magistrate Judge Kim for discovery. Dkt. 94.

On August 19, 2025, Plaintiffs moved for the Magistrate's resolution of discovery disputes concerning (1) Defendants' withholding of documents in the CAR pursuant to the deliberative process privilege ("DPP"); and (2) Plaintiffs' right to expedited extra-record discovery. Dkt. 95.

After in camera review, the Magistrate also ordered the production of documents that Defendants had withheld from the CARs pursuant to the DPP. Dkt. 107 at 1–6. After briefing, Magistrate Judge Kim also granted Plaintiffs' request for expedited extra-record discovery, and for the production of records responsive to three Requests for Production ("RFPs"). Dkts. 97 at 2–3, 5 & Dkt. 107. *See also* Dkt. 95-1 (Plaintiffs' RFPs). The Magistrate denied Plaintiffs' request for production of records responsive to two additional RFPs and for the CARs for TPS terminations not directly challenged in this litigation. Dkts. 107 & 113.

In her orders granting expedited extra-record discovery, the Magistrate ordered Defendants to produce records responsive to Plaintiffs' RFPs by September 18, 2025. Dkt. 107 at 8–9.

Prior to the Court's resolution of the parties' summary judgment motions, the Magistrate resolved various disputes between the parties concerning attorney-client privilege, DPP, and responsiveness.

The Supreme Court's decision in *Dahlia Doe* recognized the viability of a constitutional challenge to a TPS termination decision and assumed that the *Arlington Heights* standard applied, requiring a "determin[ation of] whether a 'discriminatory purpose [was] a motivating factor in the decision' to terminate [a] TPS designation." *Dahlia Doe,* 2026 WL 1825840, at *20-24. The Supreme

14

Court, however, appears to have shifted the emphasis of relevant evidence under *Arlington Heights* to require judges to give more weight to possible race-neutral explanations even at the early stages. *Id.* In light of this intervening law, Plaintiffs are evaluating whether they may seek to amend the scheduling order to seek limited discovery directed to respond to this intervening law. *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (identifying factors courts consider in resolving motions to amend scheduling order to reopen discovery, and reversing the trial court's denial of the motion to amend to allow new discovery); *Visa Int'l Serv. Ass'n v. JSL Corp.*, No. 02:01-CV-0294-LRH (LRL), 2006 WL 3248394, at *1 (D. Nev. Nov. 7, 2006) (finding good cause to reopen discovery in light of an intervening change in law and the availability of new claims).

Defendants' Position: Defendants agree with Plaintiffs' description of the course of discovery thus far in this case. It is Defendants' position that the discovery period in this case has concluded.

## IX.    Class Actions

Plaintiffs' Position: This Court granted Plaintiffs' Motion for Class Certification on October 2, 2025. Dkt. 134. The Court certified three classes:

**Honduras TPS Class**: All persons who have been granted TPS pursuant to the TPS designation of Honduras and who have not been granted lawful permanent residence

**Nepal TPS Class**: All persons who have been granted TPS pursuant to the TPS designation of Nepal and who have not been granted lawful permanent residence

**Nicaragua TPS Class**: All persons who have been granted TPS pursuant to the TPS designation of Nicaragua and who have not been granted lawful permanent residence

Defendants' Position: Defendants filed an opposition to Plaintiffs' Motion for Class Certification on August 25, 2025.

## X.    Related Cases

Plaintiffs' Position: On July 7, 2025, Plaintiffs filed a motion to relate this case to *Ramos v. Nielsen*, Case No. 3:18-cv-1554-EMC (N.D. Cal. filed Mar. 12, 2018) ("*Ramos*"), *Bhattarai v. Nielsen*, Case No. 19-cv-00731-EMC (N.D. Cal. filed Feb. 10, 2019) ("*Bhattarai*"), and *NTPSA I*, Case No. 25-cv-01766-EMC (filed Feb. 19, 2025). *See Ramos*, Dkt. 264. Defendants filed an opposition on July 8, 2025. *Ramos*, Dkt. 266. On July 11, 2025, Judge Edward Chen, who oversaw

*Ramos*, denied Plaintiffs' motion to relate this case to the aforementioned cases. *Ramos*, Dkt. 269.

At the Court's direction, Plaintiffs filed a notice on July 11, 2025, identifying all pending federal court cases challenging TPS terminations of which they are aware. Dkt. 37. Since that time, the following additional cases have been filed:

- *Miot v. Trump*, Case No. 1:25-cv-02471 (D.D.C. filed July 30, 2025) (challenging the partial vacatur and termination of TPS for Haiti)

- *Dahlia Doe v. Mullin*, Case No. 25-cv-8686, Dkt. 54 (S.D.N.Y. filed Nov. 19, 2025) (granting motion to postpone termination of TPS for Syria)

- *African Comties. Together v. Mullin*, Case No. 25-cv-13939, Dkt. 37 (D. Mass. filed Dec. 30, 2025) (granting administrative stay of termination of TPS for South Sudan)

- *Maung Doe v. Mullin*, Case No. 1:25-cv-15483 (N.D. Ill. filed Dec. 19, 2025) (challenging termination of TPS for Burma)

- *African Comties. Together v. Mullin*, Case No. 1:26-cv-10278 (D. Mass filed Jan. 22, 2026) (challenging termination of TPS for Somalia)

- *African Comties. Together v. Mullin*, Case No. 1:26-cv-11201 (D. Mass. filed Mar. 9, 2026) (challenging termination of TPS for Somalia)

- *Doe v. Mullin*, Case No. 1:26-cv-02280 (S.D.N.Y. filed Mar. 19, 2026) (challenging termination of TPS for Yemen).

Plaintiffs are not aware of any pending cases challenging the termination of TPS for Nepal, Nicaragua, and/or Honduras. Nor is there any pending motion before this Court seeking declaratory relief on an APA claim.

Defendants' Position: Defendants note that the Supreme Court held that 8 U.S.C. § 1254a(b)(5)(A) bars review of all of Plaintiffs' non-constitutional claims. *Doe*, 2026 WL 1825840, at *7. As such, the Supreme Court found that 8 U.S.C. § 1254a(b)(5)(A) bars review of the Homeland Security Secretary's determinations with respect to designations, extensions, or terminations of foreign countries for TPS. *Id*. *7–*8.

As such, the Supreme Court addressed the *exact* question that Plaintiffs bring to this Court in their various motions—whether 8 U.S.C. § 1254a(b)(5)(A) eliminated this Court's authority to provide

16

declaratory relief with respect to the APA challenges to the Secretary of Homeland Security's terminations of the TPS designations for Nepal, Honduras, and Nicaragua. *See NTPSA v. Noem*, 819 F. Supp. 3d 1049 (N.D. Cal. 2025).

As to Plaintiffs' equal protection claims, the Supreme Court further held that the plaintiffs in *Mullin v. Doe* were unlikely to succeed on their equal protection claim— "that Haiti's TPS designation was terminated because of race[.]" *Doe*, 2026 WL 1825840 at *2. Specifically, the Supreme Court noted that none of the cited statements by either President Trump or former Secretary Noem—some of the very statements on which Plaintiffs in this case rely— were "overtly racial, and in substance all expressed policy views that could rest on race-neutral justifications." *Id*. at *12. Instead, the Supreme Court found that the plaintiffs themselves identified a "strong race-neutral explanation of these official's statements: the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies." *Id*. at *12.

Accordingly, the Supreme Court's judgment resolves and significantly narrows the issues in this case—including ongoing discovery—by definitively resolving that the Secretary's TPS determinations may *not* be challenged under the APA.

## XI.    Relief

Plaintiffs' Position: This Court's order postponing the effective dates of the terminations of TPS for Honduras, Nepal, and Nicaragua was stayed by the Ninth Circuit. Dkts. 73 & 96. On December 31, 2025, this Court entered an order setting aside and declaring unlawful the agency's termination orders for Honduras, Nepal, and Nicaragua under the APA. Dkt. 197. That order was stayed by the Ninth Circuit. Dkt. 214. Plaintiffs further seek an award of attorneys' fees and costs, as well as any other additional relief that the Court may deem just and proper. The Court should lift its order staying this matter because Defendants' current appeal will be quickly resolved, since the parties agree there is no jurisdiction over the APA claims at issue, and the legal issues remaining to be resolved, *see supra* III, do not alter the issues on appeal.

Defendants' Position: Defendants ask this court to maintain the current stay to the Court's February 11, 2026, order in light of Defendants' current appeal. *See NTPSA v. Noem*, No. 26-199 (9th Cir.). Doing so will conserve judicial and party resources while the Ninth Circuit weighs in. Should

JOINT CASE MANAGEMENT STATEMENT – CASE NO. 3:25-cv-05687-TLT

this Court lift the stay, Defendants ask this court for the opportunity to brief the threshold and merits issues in light of the Supreme Court's recent decision and ask this Court for leave to confer with Plaintiffs on a joint briefing schedule for any such motions.

**XII.    Settlement and ADR**

The parties do not believe that ADR would be fruitful at this point given Plaintiffs' and Defendants' disagreement about threshold legal issues.

**XIII.   Other References**

At this time, the parties do not believe this case is suitable for reference to binding arbitration or a special master. Nor is this case suitable for the Judicial Panel on Multidistrict Litigation.

**XIV.   Narrowing of Issues**

The parties will continue to discuss the possibility of narrowing the issues beyond the motions described above.

**XV.    Scheduling**

This Court's August 13, 2025, Case Management and Scheduling Order, Dkt. 91, set deadlines for amending pleadings (September 22, 2025); designation of experts (opening reports by September 29, 2025, rebuttal reports by October 3, 2025, cut off October 8, 2025); fact discovery (September 23, 2025); dispositive motions (October 14, 2025); oppositions to dispositive motions (October 28, 2025); replies in support of dispositive motions (November 4, 2025); and hearing on dispositive motions (November 18, 2025).

On December 31, 2025, this Court directed entry of final judgment under Rule 54(b) on the APA claims for which it granted summary judgment for Plaintiffs and temporarily stayed continued litigation on Plaintiffs' remaining claims. Dkt. 197 at 51–52.

On January 23, 2026, this Court issued a Revised Case Management and Scheduling Order. Dkt. 210. The Order set deadlines for amending pleadings (September 22, 2025); fact discovery (September 23, 2025); expert discovery (October 8, 2025); dispositive motions (October 14, 2025); final pre-trial conference (September 24, 2026); and trial (November 9, 2026).

On February 11, 2026, the Court stayed "[t]his matter . . . pending further instruction from the Ninth Circuit." Dkt. 215.

JOINT CASE MANAGEMENT STATEMENT – CASE NO. 3:25-CV-05687-TLT

## XVI.    Expedited Trial Procedure

The parties do not believe that this case should be handled under the Expedited Trial Procedure of General Order No. 64, Attachment A.

## XVII.   Trial

<u>Plaintiffs' Position</u>: Plaintiffs request that trial on Plaintiffs' discrimination claim be re-calendared at this time, with sufficient time to permit this Court to rule on Plaintiffs' forthcoming motion to amend.

<u>Defendants' Position</u>: Defendants maintain that this case is to be decided on the administrative record and thus should be decided via summary judgment. Fed. R. Civ. P. 56.

## XVIII. Disclosure of Non-Party Interested Entities or Persons

Plaintiffs filed Certifications of Interested Entities or Persons, as required by Civil Local Rule 3-15, on July 7, 2025. Dkt. 6. Plaintiffs are unaware of any persons, firms, partnerships, corporations, or other entities that have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

## XIX.    Professional Conduct

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XX.     Other Matters

The parties have no other matters to raise at this time.

19

Date:  July 2, 2026

Respectfully submitted,

NATIONAL DAY LABORER ORGANIZING NETWORK

 /s/ *Jessica Karp Bansal*
Jessica Karp Bansal

*Attorneys for Plaintiffs*

Date:  July 2, 2026

U.S. DEPARTMENT OF JUSTICE

 /s/ *Shelby Wade*
Shelby Wade
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 285-8379
Shelby.Wade2@usdoj.gov

*Attorneys for Defendants*

20

JOINT CASE MANAGEMENT STATEMENT – CASE NO. 3:25-CV-05687-TLT

### **SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other Signatory has concurred in the filing of this document.

Date: July 2, 2026                        NATIONAL DAY LABORER ORGANIZING
                                          NETWORK

                                           /s/ *Jessica Karp Bansal*
                                          Jessica Karp Bansal

21