BRETT A. SHUMATE
Assistant Attorney General
Civil Division
RUTH ANN MUELLER
Senior Litigation Counsel
ERIC SNYDERMAN
SHELBY WADE
LAUREN BRYANT
CATHERINE ROSS
JEFFREY HARTMAN
DANIEL CAPPELLETTI
RACHEL BERMAN-VAPORIS
ALINA SALGADO
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*,<br><br>    Plaintiffs,<br><br> v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,[1]<br><br>    Defendants. | Case No. 3:25-cv-05687-TLT<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO AMEND PLEADINGS**<br><br>Date:   September 24, 2026<br>Time:   2:00 p.m.<br>Location: Videoconference Zoom |

---

[1] The current Secretary of Homeland Security is automatically substituted as a defendant in place of the former Secretary, Kristi Noem. *See* FED. R. CIV. P. 25(d).

Dated: July 30, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

RUTH ANN MUELLER
Senior Litigation Counsel

ERIC SNYDERMAN
SHELBY WADE
LAUREN BRYANT
CATHERINE ROSS
JEFFREY HARTMAN
RACHEL BERMAN-VAPORIS
DANIEL CAPPELLETTI
Trial Attorneys

*/s/ Alina Salgado*
ALINA SALGADO
Trial Attorney (GA Bar 689323)
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-5110
Alina.N.Salgado@usdoj.gov

*Attorneys for the Defendants*

# CONTENTS

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

STANDARD OF REVIEW ..............................................................................................................3

ARGUMENT ...................................................................................................................................5

I.    Plaintiffs Have Not Established Good Cause to Disregard the Deadline Set in This Court's Scheduling Order. ..................................................................................................5

II.   The Proposed Amendments are Futile, Unduly Delayed, and Prejudicial to Defendants. .......................................................................................................................8

     A.    Plaintiffs' Proposed Amendments are Futile. ......................................................8

          1.   The Constitutional Claims Fail..................................................................10

          2.   The *Ultra Vires* Claims Fail.....................................................................13

     B.    Plaintiffs' Proposed Amendments are Unduly Delayed. ...................................17

     C.    Plaintiffs' New Claims Prejudice Defendants. ..................................................19

CONCLUSION..............................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Perez*,
    585 U.S. 579 (2018)............................................................................................. 10

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
    781 F.2d 1393 (9th Cir. 1986) ........................................................................ 4, 18

*Allen v. City of Beverly Hills*,
    911 F.2d 367 (9th Cir. 1990) ............................................................................... 19

*Allis-Chalmers Corp. v. Lueck*,
    471 U.S. 202 (1985).............................................................................................. 9

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
    465 F.3d 946 (9th Cir. 2006) .......................................................................... 5, 18

*Arlington Heights v. Metro. Housing Dev. Corp.*,
    429 U.S. 252 (1977)............................................................................................ 12

*Bah v. Cangemi*,
    548 F.3d 680 (8th Cir. 2008) ............................................................................. 11

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
    239 U.S. 441 (1915)............................................................................................ 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................ 10

*Bd. of Regents of State Colleges v. Roth*,
    408 U.S. 564 (1972)............................................................................................ 10

*Borden v. United States*,
    593 U.S. 420 (2021)............................................................................................ 10

*CASA de Maryland, Inc. v. Trump*,
    355 F. Supp. 3d 307 (D. Md. 2018)..................................................................... 11

*CASA, Inc. v. Noem*,
    792 F. Supp. 3d 576 (D. Md. 2025)..................................................................... 13

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) .............................................................................. 4

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024) ................................................................................................ 7

*Foman v. Davis*,
371 U.S. 178 (1962) ....................................................................................................... 4, 8

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) ......................................................................................................... 15

*Harper v. Werfel*,
118 F.4th 100 (1st Cir. 2024) ........................................................................................... 12

*Hewitt v. Helms*,
459 U.S. 460 (1983) ......................................................................................................... 11

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) ......................................................................................... 17

*Jimenez-Nieves v. United States*,
682 F.2d 1 (1st Cir. 1982) .................................................................................................. 9

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ................................................................................. 3, 5, 6, 7

*Keith v. Volpe*,
858 F.2d 467 (9th Cir. 1988) .............................................................................................. 4

*Kentucky Dep't of Corr. v. Thompson*,
490 U.S. 454 (1989) .................................................................................................... 10, 11

*Lockheed Martin Corp. v. Network Sols.*,
194 F.3d 980 (9th Cir. 1999) ................................................................................. 4, 16, 19

*Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*,
562 F.3d 1137 (11th Cir. 2009) ....................................................................................... 16

*Miller v. Safeco Title Ins. Co.*,
758 F.2d 364 (9th Cir.1985) ............................................................................................... 5

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) ................................................................................... 16, 19

*Mullin v. Doe*,
609 U.S.__, 2026 WL 1825840 (June 25, 2026) ........................... 1, 2, 7, 8, 12, 13, 14, 15, 17

*M/V American Queen v. San Diego Marine Construction Corp.*,
708 F.2d 1483 (9th Cir. 1983) ............................................................................................ 4

*Nat'l TPS Alliance v. Noem*,
  773 F. Supp. 3d 807 (N.D. Cal. 2025) ........................................................................ 5, 16

*Nat'l TPS Alliance v. Noem*,
  798 F. Supp. 3d 1108 (N.D. Cal. 2025) ............................................................................ 16

*Nat'l TPS Alliance v. Noem*,
  150 F.4th 1000 (2025) ...................................................................................................... 16

*Nat'l TPS Alliance v. Noem*,
  166 F.4th 739 (2026) ........................................................................................................ 16

*Nat'l TPS Alliance v. Mullin*,
  No. 26-199 (9th Cir. February 9, 2026) ............................................................................ 20

*Nat'l TPS Alliance v. Mullin*,
  No. 26-199 (9th Cir. July 14, 2026) .......................................................................... 3, 8, 20

*Nat'l TPS Alliance v. Mullin*,
  No. 25-4901 (9th Cir. August 20, 2025) ............................................................................ 20

*Olim v. Wakinekona*,
  461 U.S. 238 (1983) ........................................................................................................... 10

*Saget v. Trump*,
  375 F. Supp. 3d 280 (E.D.N.Y. 2019) ............................................................................... 13

*Solomon v. North Am. Life & Cas. Ins. Co.*,
  151 F.3d 1132 (9th Cir.1998) ............................................................................................ 19

*Stein v. United Artists Corp.*,
  691 F.2d 885 (9th Cir.1982) ................................................................................................ 4

*Tobar v. Garland*,
  65 F.4th 195 (5th Cir. 2023) .............................................................................................. 11

*Town of Castle Rock, Colo. v. Gonzales*,
  545 U.S. 748 (2005).................................................................................................... 10, 11

*Trager v. Peabody Redevelopment Auth.*,
  367 F. Supp. 1000 (D. Mass. 1973) ................................................................................... 12

*Trump v. Hawaii*,
  585 U.S. 667 (2018).......................................................................................................... 12

*United States v. Fla. E. Coast Ry. Co.*,

410 U.S. 224 (1973) ..................................................................................................................... 12

*W. Radio Servs. Co. v. Glickman*,
  123 F.3d 1189 (9th Cir. 1997) ............................................................................................... 6

*Zivkovic v. Southern California Edison Co.*,
  302 F.3d 1080 (9th Cir. 2002) ............................................................................................... 6


## **STATUTES**

5 U.S.C. § 701(a) ................................................................................................................. 8, 10
5 U.S.C. § 705.......................................................................................................................... 2
5 U.S.C. § 706(2)(C)....................................................................................................... 3, 8, 13
6 U.S.C. § 552(d) ............................................................................................................... 15, 17
6 U.S.C. § 557.......................................................................................................... 13, 14, 15, 17
8 C.F.R. § 244.2 ...................................................................................................................... 11
8 U.S.C. § 1103.......................................................................................................... 13, 14, 15, 16
8 U.S.C. § 1254a ..................................................... 1, 2, 8, 9, 10, 11, 13, 15, 16, 18

## **REGULATIONS**

Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 .............................. 13, 15

## **RULES**

FED. R. CIV. P. 12(b) ............................................................................................................ 8, 10
FED. R. CIV. P. 15(a)(2)........................................................................................................... 4, 6
FED. R. CIV. P. 16(b)(4) ....................................................................................................... 3, 4, 6
FED. R. CIV. P. 41 ..................................................................................................................... 20
FED. R. CIV. P. 54(b) ................................................................................................................. 3

**INTRODUCTION**

The Court should deny Plaintiffs' Motion for Leave to Amend as the proposed amendments are futile, unduly delayed, and would prejudice Defendants. Plaintiffs' amendments do not insulate the Supreme Court's decision in *Mullin v. Doe*, 609 U.S.__, 2026 WL 1825840, at *10 (June 25, 2026) and Plaintiffs' proposed amendments are futile pursuant the judicial review bar contained in 8 U.S.C. § 1254a(b)(5)(A). Even if the Court were to find it can consider Plaintiffs' constitutional claims, the claims are not viable on their own terms.

Plaintiffs should not be permitted to delay these proceedings and expand the scope of this lawsuit or any additional permitted discovery in a case that has been ongoing for almost 13 months. At any point during this lawsuit, Plaintiffs could have amended their complaint with different constitutional challenges, in addition to their Equal Protection Clause challenge, and different sections of the Administrative Procedure Act (APA), in addition to those that are now squarely foreclosed. The Supreme Court's decision in *Doe* does not excuse Plaintiffs' delay: They could have pleaded these additional claims at any point, and none of their claims depend on *Doe*. At this late stage in litigation, the prejudice imposed on Defendants of allowing the futile and unduly delayed amendments outweighs any liberty interests Plaintiffs may have.[2]

Furthermore, Plaintiffs' proposed excess-of authority claim is a non-constitutional claim that is clearly precluded by Supreme Court precedent and presents an unworkable reading of the statute that would contradict every court to discuss TPS for the last twenty-plus years. And if that were not enough, the proposed claim contends that the at-issue Temporary Protected Status ("TPS") terminations were invalid because only the Attorney General—not the Secretary of the Department of Homeland Security ("DHS")—has authority over TPS determinations. But if that were true, it would mean that Nepal was

---

[2] Prior to the Court's July 14, 2026 order permitting Plaintiffs to file their motion for leave to amend, the deadline to amend pleadings in this case was September 22, 2025. *See* Case Management Order, August 14, 2025. On January 23, 2026, this Court issued a Revised Case Management and Scheduling Order which maintained the initial deadline of September 22, 2025 for amending pleadings.

never lawfully designated for TPS in the first instance, stripping Plaintiffs of the protections they seek to preserve. Accordingly, and for the reasons explained below, the Court should deny leave to amend.

## BACKGROUND

On June 25, 2026, the Supreme Court issued a consolidated decision in two related challenges to terminations of TPS designations, *Trump v. Miot*, Case No. 25-1084, and *Mullin v. Dahlia Doe*, Case No. 25-1083. *See Doe*, 609 U.S.__, 2026 WL 1825840. In its decision, the Court held that the 8 U.S.C. § 1254a(b)(5)(A) bars judicial review of all "non-constitutional claims." *Id*. at *7. The Court reserved the question whether the provision also bars judicial review of constitutional claims.

Plaintiffs filed their complaint on July 7, 2025, to challenge the termination of the TPS designations for Nepal, Honduras, and Nicaragua, claiming that the terminations violated the APA and the Fifth Amendment right to equal protection. Dkt. No. 1. On July 8, 2025, Plaintiffs filed a Motion to Postpone Effective Agency Action under 5 U.S.C. § 705 of the APA to delay implementation or enforcement of the terminations.

On July 28, 2025, Defendants produced administrative records regarding their decisions to terminate TPS designations for Honduras, Nicaragua, and Nepal. Dkt. Nos. 62–64. On July 31, 2025, the district court granted Plaintiffs' Motion to Postpone Effective Agency Action. Dkt. No. 73. Defendants sought a stay of the postponement order from the Ninth Circuit, which was granted on August 20, 2025. Dkt. No. 96. On August 6, 2025, and August 18, 2025, Plaintiffs served requests for production of documents ("RFPs") on Defendants and on August 21, 2025, the Court granted extra-record discovery on both Plaintiffs' APA claims and their Equal Protection claim. Dkt. Nos. 95-1, 95-2; *see also* Dkt. No. 97 at 4 (finding that "extra-record discovery is also warranted for Plaintiffs' constitutional claim"). Defendants first provided documents in response to Plaintiffs' RFPs on September 18, 2025, and their final production of documents occurred on November 18, 2025, after the Court resolved the Parties' final discovery dispute on November 13, 2025. Dkt. No. 183. On October 2, 2025, the Court granted Plaintiffs' Motion for Class Certification. Dkt. No. 134. On October 14, 2025, Defendants filed a Motion for Summary Judgment and Plaintiffs filed a Motion for Partial Summary Judgment as well as a Motion to

Consider Extra-Record Evidence. The district court granted Plaintiffs' motions, denied Defendants', and directed entry of final judgment on the APA claims for which Plaintiffs sought summary judgment. Dkt. No. 197. On January 5, 2026, Defendants filed an Emergency Motion to Stay Pending Appeal of the district court's December 31, 2025, vacatur order. Dkt. No. 198. The Ninth Circuit granted this request on February 9, 2026, and later dismissed Defendants' appeal of the district court's 705 order as moot. Dkt. Nos. 214, 224. The district court stayed the matter pending further instruction from the Ninth Circuit on February 11, 2026. Dkt. No. 215.

On July 14, 2026, the Ninth Circuit vacated this Court's December 31, 2025, entry of final judgment under Federal Rule of Civil Procedure ("Rule") 54(b) in favor of Plaintiffs on their non-constitutional challenges to the termination of TPS for Nepal, Honduras, and Nicaragua. Dkt. Nos. 44, 197 at 51–52; *Nat'l TPS Alliance v. Mullin*, No. 26-199 (9th Cir. July 14, 2026) (order vacating district court judgment). That same day, this Court lifted the stay and ordered Plaintiffs' motion for leave to amend pleadings due by July 24, 2026, and Defendants' response by July 31, 2026. Dkt. No. 224.

On July 24, 2026, Plaintiffs filed the instant Motion for Leave to File a First Amended Complaint. Mot. at 1; Dkt. No. 229-1 (Amended Complaint). In the proposed amendment, Plaintiffs drop their initial claims challenging the APA and raise a new APA challenge under 5 U.S.C. § 706(2)(C). *Id.* at 64–65. Plaintiffs re-allege their challenge under the Equal Protection Clause of the Fifth Amendment and add a secondary claim under the Equal Protection Clause alleging bare animus. *Id.* at 62–64. Lastly, Plaintiffs add a new constitutional claim alleging Defendants violated the Due Process Clause of the Fifth Amendment. *Id.* at 59–62.

## STANDARD OF REVIEW

Rule 16 governs whether a court may modify a case schedule. A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The good cause standard is a more demanding inquiry than the Rule 15 standard and reflects a court's interest in the orderly and efficient management of its docket. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609

(9th Cir. 1992). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (quoting FED. R. CIV. P. 16, advisory committee's notes (1983 amendment)).

Under Rule 15(a)(2), once amendment as of right is unavailable, "a party may amend its pleading only with the opposing party's written consent or the court's leave," and courts "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Although Rule 15 embodies a liberal amendment policy, leave is not automatic. Leave to amend should be given only in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). As held by the Ninth Circuit, prejudice to the opposing party is the factor that bears the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

A district court acts well within its discretion in denying leave where amendment would force the opposing party to defend materially different facts or theories or delay resolution of the action. *See Lockheed Martin Corp. v. Network Sols.*, 194 F.3d 980, 986 (9th Cir. 1999). While Rule 15(d) gives courts discretion to allow supplementation of a complaint to challenge later-occurring actions, supplementation may be denied where it would inject into the case a separate and distinct controversy or substantially alter the scope of the case. *See Keith v. Volpe*, 858 F.2d 467, 473–74 (9th Cir. 1988). Moreover, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (citing *M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983); *Stein v. United Artists Corp.*, 691 F.2d 885, 898 (9th Cir.1982)).

**ARGUMENT**

**I.     Plaintiffs Have Not Established Good Cause to Disregard the Deadline Set in This Court's Scheduling Order.**

Plaintiffs' motion fails to comply with the original deadline to amend pleadings and deadline to extend a deadline contained in the scheduling order which is a standalone reason to deny the motion. "The district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order. . . will not be disturbed unless they evidence a clear abuse of discretion." *Johnson*, 975 F.2d at 607 (quoting *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir.1985)).

The Court's initial Scheduling Order on August 14, 2025, and Revised Case Management and Scheduling Order issued on January 23, 2026, both set the deadline for amending pleadings on September 22, 2025. Dkt. No. 91; Scheduling Order. Contained in both the initial and the revised scheduling order is the additional requirement that "[i]f the modification sought is an extension of a deadline contained herein, the motion must be brought at least seven (7) days before expiration of that deadline." Dkt. No. 91; Scheduling Order. Plaintiffs' motion to amend pleadings filed July 24, 2026, is over ten months past the deadline set by the Court. Plaintiffs' motion also fails to comply with the scheduling order requirement that modification to extend a deadline *must* be brought at least seven days before the expiration of the deadline. Dkt. No. 91; Scheduling Order.

Plaintiffs argue the Court should permit amendment 10 months after the deadline and effectively modify the scheduling order for two reasons. *First*, they argue that the Supreme Court's ruling in *Doe* constitutes a "substantial change in the legal landscape." Mot. at 1, 4. *Second*, they say "newly revealed facts" obtained through discovery over the past few months in another case, *National TPS Alliance v. Noem*, Case No. 25-cv-01766-EMC (N.D. Cal.), "support[] their proposed new claims." Mot. at 1, 5. Both arguments are unavailing.

Plaintiffs must meet Rule 16's good cause standard to modify the scheduling order, which is "*more stringent*" than Rule 15's liberal standard. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465

F.3d 946, 958 (9th Cir. 2006) (emphasis in original); *compare* FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent"); *with* FED. R. CIV. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave."). Here, Plaintiffs fail to satisfy Rule 16's stringent standard because they have not shown they exercised *any* diligence in seeking the amendment. *See Johnson*, 975 F.2d at 609 ("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment").

By August 20, 2025, the Ninth Circuit had granted a stay pending appeal, indicating that it concluded Plaintiffs were unlikely to succeed on their then-existing claims. [cite] If Plaintiffs had not already pleaded their full repository of claims, that should have been their cue to do so. And by September 9, 2025, Defendants filed their Motion to Dismiss, plainly apprising Plaintiffs of the government's position that their APA claims were statutorily unreviewable. Dkt. No. 110 (Def.s' Mot. to Dismiss). Plaintiffs had ample time to amend their complaint to include any additional constitutional claims they wished to plead, such as those that are now in their proposed Amended Complaint. While *Doe* defeats Plaintiffs' APA challenge, it does not change the fact that Plaintiffs were afforded the opportunity to raise the proposed constitutional challenges in their initial complaint, seek amendment prior to the Court ordered deadline, or file a motion to extend the scheduling order deadline seven days before the deadline passed, and failed to do so. Plaintiffs' ten-month delay in filing the instant motion from the Court's deadline of September 22, 2025, and their six-month delay from when the revised scheduling order issued January 23, 2026, demonstrate Plaintiffs failed to act with any diligence to comply with the Court's deadline. *See Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087–88 (9th Cir. 2002) (finding that the plaintiffs' four-month delay in filing his motion to modify the scheduling order from the court's issuance of the scheduling order did not demonstrate diligence in complying with the dates set or demonstrate good cause pursuant Rule 16(b)).

A plaintiff has no right to test the waters by pleading one set of claims, while holding another set of claims in reserve. *See, e.g.*, *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997) (discussing claim preclusion). Plaintiffs' decision to solely challenge the Secretary of the Department of

Homeland Security's determination under the APA and the Equal Protection Clause of the Fifth Amendment, as a matter of litigation strategy, should not be rewarded with the opportunity to return to the drawing board now that the Supreme Court has indicated their claims fail under the appropriate application of the law raised by Defendants all along. *Johnson*, 975 F.2d at 610 (concluding that "[d]isregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier").

Moreover, Plaintiffs' vague references to discovery constituting "newly revealed facts" obtained in a case not before this Judge likewise fails to establish good cause. *See* Mot. at 1, 5. Plaintiffs do not specify *any* new facts obtained through discovery for another case (challenging a separate TPS termination) that would now give rise to their proposed amendments. Instead, Plaintiffs claim generally that the amended allegations rely on "discrete material produced in related litigation." *Id.* at 6. Notably, this Court previously denied Plaintiffs' request to require Defendants to produce administrative records for countries other than Honduras, Nicaragua, and Nepal. Dkt. No. 113 (finding Plaintiffs' request not proportional to the needs of the case). It is unclear what "new facts" Plaintiffs obtained, when they were obtained, or how these alleged new facts give rise to new claims in this case. *See, e.g.*, *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 542 (9th Cir. 2024) ("[V]ague promise[s] of 'additional information' cannot cure the deficiencies in the complaint."). Thus, this Court should not entertain Plaintiff's claim of newly revealed facts. *See Mullin v. Doe*, 609 U.S.__, 2026 WL 1825840, n.7 ("On June 16, Miot respondents filed a motion to dismiss the writ of certiorari as improvidently granted. They claim that newly discovered evidence provides further support for their equal protection claim. This evidence is cumulative of other evidence in the record, and the motion is denied."). Accordingly, Plaintiffs have failed to show good cause to warrant any deviation of the Court's scheduling order under Rule 16 and the Court should enforce the deadline for amending pleadings imposed by the scheduling order.

## II.     The Proposed Amendments are Futile, Unduly Delayed, and Prejudicial to Defendants.

Even if this Court were to consider the merits of Plaintiffs' motion to amend pleadings, the *Foman* factors weigh against granting leave to amend. *Foman*, 371 U.S. at 182.

### A.     Plaintiffs' Proposed Amendments are Futile.

None of Plaintiffs' proposed new claims will survive a motion to dismiss for lack of jurisdiction or for failure to state a claim upon which relief could be granted. *See* FED. R. CIV. P. 12(b)(1), (b). This Court lacks authority to decide Plaintiffs' claims because the Supreme Court held "the TPS statute's judicial-review bar applies to all non-constitutional claims." *See Doe*, 609 U.S.___, 2026 WL 1825840, at *10. Plaintiffs also concede that *Mullin v. Doe*, 8 U.S.C. § 1254a(b)(5)(A) precludes judicial review of plaintiffs' APA claims. *Nat'l TPS Alliance v. Mullin*, No. 26-199 (9th Cir. July 14, 2026). As Congress has explicitly barred judicial review of TPS determinations, Plaintiffs' new claim under the APA, 5 U.S.C. § 706(2)(C), is likewise not reviewable. *See* Am. Compl. at 64–65; 5 U.S.C. § 701(a)(1) (precluding review under the APA "to the extent" that other "statutes preclude judicial review").

Title 8 U.S. Code § 1254a(b)(5)(A) also forecloses Plaintiffs' constitutional claims. Am. Compl. at 59–64; Defs.' Mot. to Dismiss 9–10 (arguing foreclosure of Plaintiffs' constitutional claims). While the Supreme Court majority opinion declined to resolve whether the TPS statute precludes judicial review of constitutional claims, the Supreme Court further held that *Miot* plaintiffs failed to establish likelihood of success on their constitutional discrimination claim. *Doe*, 609 U.S.___, 2026 WL 1825840 at *10–12. In his concurrence, Justice Thomas further supported the Supreme Court's conclusion that an equal protection challenge to the termination of TPS would fail, while providing additional grounds for Defendants' likely success—specifically that Plaintiffs' constitutional claims are likewise barred under 8 U.S.C. § 1254a(b)(5)(A). *Doe*, 609 U.S.___, 2026 WL 1825840 at *12–16 (Thomas, J., concurring).

Plaintiffs now seek to amend the complaint and merely restyle their now-concededly doomed APA claim as a Procedural Due Process claim. Am. Compl. 59–62. But this is the *same* type of claim that the Supreme Court already deemed unreviewable. The plaintiffs in *Doe*—like Plaintiffs here—sought to

challenge a TPS termination "based on alleged procedural errors," including that the Secretary did not adequately consult with the appropriate federal agencies. *Doe*, 609 U.S.__, 2026 WL 1825840, at *8. The Supreme Court held that the judicial-review bar applied to claims based on alleged procedural and substantive violations alike. *Id.* at *8–9. And, in so doing, it took care to emphasize the "importan[ce]" of "ensur[ing] that challengers cannot avoid a judicial-review bar by creative pleading or clever lawyering." *Id.* at *10. Plaintiffs have flouted that important principle by admittedly seeking to challenge the *same* alleged procedural violations under a constitutional label. *See* Mot. 9 ("Plaintiffs' proposed First Amended Complaint . . . rests principally on the same factual records . . . [and the] principal amendments are legal[.]"). The Court should look beyond the mere label and recognize this claim for what it clearly is: *the same* challenge based on the Secretary's purported failure to adhere to statutory requirements. *See Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982) (Breyer, J.) ("In examining a complaint we are bound to look beyond the literal meaning of the language used to ascertain the real cause of the complaint."). "Any other result would elevate form over substance and allow parties to evade" the TPS judicial-review bar "by relabeling their" statutory claims as constitutional ones. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

It would be extraordinary if Plaintiffs could—like the flip of a switch—so easily and completely sidestep § 1254a(b)(5)(A) and recent Supreme Court precedent by restyling the same *previously unreviewable* procedural disputes as constitutional ones. Under Plaintiffs' theory, the Secretary's alleged failure to meaningfully consult with appropriate agencies was unreviewable before—but has become reviewable now—merely because they have called this alleged statutory violation a constitutional one. This premise is illogical and calls into question the significance of the Supreme Court's conclusion that the judicial review bar applies to claims based on alleged procedural errors. *Doe* eliminated the option for Plaintiffs to reassert their APA claims as procedural due process claims, but that is precisely what Plaintiffs' proposed amendments seek to accomplish. *See, e.g.*, Am. Compl. at ¶ 181 (seeking to vacate the terminations because of "Defendants' failure to comply with the statutorily mandated requirements . . . including the review of country conditions and interagency consultation"). The Court "should not

lightly conclude that Congress enacted a self-defeating statute" that can be avoided with the simple expedient of a change of labels. *Borden v. United States*, 593 U.S. 420, 460 (2021) (quotations omitted); *see Abbott v. Perez*, 585 U.S. 579, 594–95 (2018) (cautioning against an over-emphasis on "labels" that could permit "manipulation" of courts' jurisdiction). Plaintiffs' allegations fall squarely within the Secretary's discretion under the statute. As such, this Court lacks jurisdiction to review any such determination. 5 U.S.C. § 701(a)(2); FED. R. CIV. P. 12(b)(1).

### 1. The Constitutional Claims Fail.

Even assuming Plaintiffs' constitutional claims are reviewable, Plaintiffs have not pleaded facts sufficient to state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6). To assert a procedural due process claim, Plaintiffs must "first" show that "there exists a liberty or property interest" to which they have "a legitimate claim of entitlement." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *see Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). Where a statute creates a benefit, the plaintiff must "have more than a unilateral expectation of it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005). Accordingly, a statute may give rise to a legitimate claim of entitlement only where it places "substantive limitations" on the government's exercise of discretion, *Wakinekona*, 461 U.S. at 249, and "mandat[es] the outcome to be reached upon a finding that the relevant criteria have been met," *Thompson*, 490 U.S. at 462. Plaintiffs do not have a liberty and property interest in obtaining and maintaining TPS status and attendant benefits.

Plaintiffs have no legitimate claim of entitlement to TPS for Nepal, Honduras, and Nicaragua being extended. The *Temporary* Protected Status statute provides in relevant part that—in deciding whether to extend or terminate a designation—the Secretary "shall determine whether the conditions for such designation under this subsection continue to be met." 8 U.S.C. § 1254a(b)(3)(A). This use of "shall"

creates a non-discretionary duty to terminate once the substantive predicate—a finding that conditions no longer warrant designation—is established. It does not, however, impose any "substantive limitations" on the Secretary in determining whether these conditions continue to be met. *Wakinekona*, 461 U.S. at 249. And while the statute mandates *termination* in specified circumstances, it does not mandate *extending* a country's TPS designation upon a finding that certain criteria have been met. In other words, it does not channel agency discretion in the extension context by providing that, if certain "substantive predicates are present, a particular outcome must follow." *Thompson*, 490 U.S. at 463 (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)). Moreover, the decision whether to grant TPS to any particular individual is also discretionary. *See* 8 U.S.C. § 1254a(a)(1)(A) (providing that the Secretary "may grant" TPS to a qualifying national of a designated country); 8 C.F.R. § 244.2 (stating "an alien may in the discretion of the director be granted [TPS] if the alien establishes that he or she" meets the eligibility criteria); *Tobar v. Garland*, 65 F.4th 195, 196 (5th Cir. 2023) (indicating TPS is a "discretionary form of relief"); *Bah v. Cangemi*, 548 F.3d 680, 685 (8th Cir. 2008) (same); *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018) (stating "the explicitly temporary nature of the [TPS] program suggests" that holders cannot establish "reliance interests").

To be sure, Plaintiffs contend that the TPS statute imposes certain *procedural* requirements before the Secretary (or, they now say, the Attorney General) may determine whether to extend a designation. But they have repeatedly disclaimed any contention that ordering Defendants to comply with the statute's procedural limitations would require the Secretary to reach an outcome different from termination of the TPS designations for Nepal, Honduras, and Nicaragua. *See, e.g.*, Dkt. 121 at 16 (arguing that the "features of Section 705 that render it not injunctive—in particular that it operates directly upon an agency's rule and is not directed at persons … —apply equally to Section 705 postponements and Section 706 set-asides"). And insofar as Plaintiffs claim an entitlement to have the Secretary follow the TPS statute's procedural provisions before terminating a TPS designation, that "would be an entitlement to nothing but procedure," which the Supreme Court has deemed "inadequate" to form the basis of a protected interest under the Due Process Clause. *Town of Castle Rock*, 545 U.S. at 764.

Further, the procedural due process constraints that Plaintiffs seek to invoke do not apply to the government's determinations to designate, extend, or terminate a TPS designation. *See, e.g.*, *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption."); *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 245–46 (1973) (distinguishing, for due process purposes, between agency decisions that "adjudicate disputed facts in particular cases" and those that involve "the formulation of a basically legislative-type judgment, for prospective application only"). These constraints instead come into play when the government "adjudicat[es]" an individual's "rights or liabilities." *Harper v. Werfel*, 118 F.4th 100, 115 (1st Cir. 2024); *see Trager v. Peabody Redevelopment Auth.*, 367 F. Supp. 1000, 1002 (D. Mass. 1973) ("The procedural due process requirements of notice and hearing attach themselves wherever there is need for an adjudicative hearing."). They do not, by contrast, apply where—as here—the government "weigh[s] general information and ideas affecting relatively large numbers of people . . . whose rights are affected as part of" the government's execution of "an overall [legislative] scheme." *Id.* at 1002.

Assuming that Plaintiffs' two Equal Protection claims of race discrimination and bare animus are reviewable, they both would fail under the standard articulated in *Trump v. Hawaii*, 585 U.S. 667 (2018), applies. And even if, for the sake of argument, *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977), applies to the equal protection claims, race was not "a motivating factor in the decision to terminate" the TPS designation of any of the countries. *Doe*, 609 U.S.__, 2026 WL 1825840, at *13. The statements and evidence that Plaintiffs rely on here are just as inadequate to succeed on an equal protection claim, even assuming jurisdiction, as the evidence in *Doe* and *Miot*, and the "present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies" constitute "a strong, race-neutral explanation of these officials' statements" here just as in *Doe*. *Id.* at *12–13. As such, Plaintiffs will not succeed on either of their Equal Protection claims.

### 2. The *Ultra Vires* Claims Fail.

Next, Plaintiffs seek to amend their complaint to include an *ultra vires* argument under 5 U.S.C. § 706(2)(C) that the Secretary of the Department of Homeland Security acted "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" because the TPS statute specifically states that the Attorney General is authorized to designate and terminate TPS. Plaintiffs allege no new facts for why this claim is being brought now, when the Supreme Court's decision, and longstanding interpretation of the statute is clear that the Secretary's exercise of authority in TPS decision making is proper. Any further amendment to the complaint raised by Plaintiffs under the APA is futile. The APA simply does not give rise to a right of judicial review no matter what facts are alleged. *See Doe*, 609 U.S.__, 2026 WL 1825840.

Even if Plaintiffs' proposed *ultra vires* claim were reviewable, it fails on the merits. As an initial matter, no court has ever questioned the Secretary's administration of the TPS statute on transfer-of-authority grounds. To the contrary, several courts—in addition to the Supreme Court just last month—have expressly recognized the Homeland Security Act of 2002 (the "Act"), Pub. L. No. 107-296, 116 Stat. 2135, as transferring authority for the administration of the TPS statute to the Secretary. *See, e.g.*, *CASA, Inc. v. Noem*, 792 F. Supp. 3d 576, 582 (D. Md. 2025) (citing 6 U.S.C. § 557 as "conferring certain authorities granted by statute to the Attorney General, including those relating to TPS, to the Secretary of Homeland Security"); *Saget v. Trump*, 375 F. Supp. 3d 280, 297 (E.D.N.Y. 2019) (citing 8 U.S.C. § 1103 and 6 U.S.C. § 557) ("Congress subsequently transferred authority to make TPS designations from the Attorney General to the Secretary of the Department of Homeland Security"). A straight-forward reading of the statutes, the Supreme Court's decision last month, every lower-court decision for the past 24 years, and longstanding Executive Branch practice confirm that the Secretary of Homeland Security holds the statutory authority to designate countries for TPS and to extend or terminate those designations.

To be sure, the TPS statute, 8 U.S.C. § 1254a, refers to the "Attorney General"—and not DHS or the Secretary of Homeland Security—but that is because DHS did not exist when the TPS program was

created. In conjunction with creating DHS, the Act *transferred* immigration functions from the Department of Justice and the Immigration and Naturalization Service (INS) to DHS and the Secretary of Homeland Security. The Act provides, as relevant here, that "[t]he Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, Attorney General, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers . . ." 8 U.S.C. § 1103(a). And it further provides that, "[w]ith respect to any function transferred by or under this chapter . . . reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary, other official, or component of the Department to which such function is so transferred." 6 U.S.C. § 557. Accordingly, the administration of the TPS statute was transferred to the Secretary, and all references to the "Attorney General" in the TPS statute are now deemed to refer to the Secretary. As the Supreme Court has now clearly stated: "Responsibility for TPS decisions rests with the Secretary of Homeland Security." *Doe*, 609 U.S.__, 2026 WL 1825840, at *4.

Section 1103(a) carves out functions conferred upon the Attorney General, but this same section specifies that these conferred—and thus reserved—functions pertain to those previously exercised by the Executive Office for Immigration Review (EOIR): "The Attorney General shall have such authorities and functions under this chapter and all other laws relating to the immigration and naturalization of aliens as were exercised by [EOIR], or by the Attorney General with respect to [EOIR] . . ." 8 U.S.C. § 1103(g). EOIR did not previously administer the TPS statute. Therefore, the Attorney General did not retain TPS functions, which have been transferred to the Secretary. If § 1103(a) reserved to the Attorney General *all* functions that the Attorney General previously exercised, as Plaintiffs contend, then § 1103(g) would prove redundant. There would be no need to specify that the Attorney General continues to have the functions that the Attorney General previously exercised with respect to EOIR. And it is a cardinal rule of

statutory construction that courts should "avoid" interpreting a statute in a way that would render "some words altogether redundant." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995).

Congress did not change the TPS statute's text to refer to the Secretary of Homeland Security because it did not need to. Instead, it relied on a series of transfer and reference-updating provisions built into the Homeland Security Act to accomplish the shift in authority. While 8 U.S.C. § 1103 charged the Secretary with the "administration and enforcement" of the immigration laws, 6 U.S.C. § 557 operated to update all other federal laws with respect to functions that were transferred to the Secretary under the Act:

> With respect to any function transferred by or under this chapter… reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary, other official, or component of the Department to which such function is so transferred.

*Id*. Because TPS administration was a function of the Attorney General that was transferred to DHS, Section 557 operates to update every reference to the Attorney General in 8 U.S.C. § 1254a to mean the Secretary of DHS. *Id.* Since passage of the Homeland Security Act in 2002, and for more than two decades, the Secretary of Homeland Security has consistently exercised authority over the designation, extension, and termination of TPS for dozens of countries.

Reflecting the statute's clarity, every court to discuss the issue for the last 24 years has recognized the transfer of TPS authority to the Secretary of Homeland Security. It is controlling that the Supreme Court has clearly stated that "[r]esponsibility for TPS decisions rests with the Secretary of Homeland Security." *Doe*, 2026 WL 1825840, at *4. This was no offhand or unreasoned statement. As support, the Supreme Court cited 6 U.S.C. §§ 552(d) and 557—making clear that it specifically considered and accepted the transfer of TPS authority from the Attorney General to the Secretary. *Id.* And throughout its decision, the Supreme Court unequivocally interpreted the TPS statute as pertaining to the Secretary. That analysis controls this case.

As mentioned above, lower courts have universally adopted this construction, too. The Eleventh Circuit in *Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137 (11th Cir. 2009), recognized that although the TPS statute references the Attorney General, decision-making authorities were transferred to the Secretary of DHS by statute (citing 8 U.S.C. § 1103(a)). The district courts in *National TPS Alliance v. Noem*, 773 F. Supp. 3d 807 (N.D. Cal. 2025), *National TPS Alliance v. Noem*, 798 F. Supp. 3d 1108 (N.D. Cal. 2025), and the Ninth Circuit in its 2025 and 2026 decisions in that same litigation, *National TPS Alliance v. Noem*, 150 F.4th 1000 (9th Cir. 2025), *National TPS Alliance v. Noem*, 166 F.4th 739 (9th Cir. 2026), all proceeded on the premise that the Secretary of Homeland Security exercises the authority granted by 8 U.S.C. § 1254a. Plaintiffs have not cited a single decision in which a court has concluded the Secretary of Homeland Security lacked the authority to designate a country for TPS or terminate a country's TPS designation.

Finally, as a practical matter, if this Court were to adopt Plaintiff's theory, it would mean—it would mean that the Secretary lacked authority to *designate* Nepal for TPS in the first instance. Both provisions of the TPS statute refer to the "Attorney General." 8 U.S.C. § 1254a(b)(1), (b)(3)(B). If the Court were to find that the Secretary lacks authority over TPS determinations—such that the termination of Nepal's TPS designation lacks effect—it would likewise mean that these countries' initial TPS designations (and subsequent extensions) lacked legal effect for any designations by the Secretary of Homeland Security instead of the Attorney General. Plaintiffs do not contend otherwise and offer no theory to distinguish the authority to terminate from the authority to designate. Plaintiffs' success on the law would strip them of the protections they seek to maintain, making this claim both truly futile and self-defeating.

"Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend." *Lockheed Martin*, 194 F.3d at 986 (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). In *Lockheed Martin*, the Ninth Circuit considered the fact that no

appellate court or statute has yet established the cause of action for the underlying claim indicated support for finding futility in the claim for purposes of denying a motion to amend. *Id.* While Plaintiffs now allege that the Secretary of the Department of Homeland Security was not properly designated by Congress to terminate TPS, the legal basis is tenuous, and no court has yet established the cause of action for the underlying claim. *Id.* Critically, the Supreme Court in *Doe* found no issue with the Secretary of the Department of Homeland Security's authority to designate and terminate TPS. In fact, the Supreme Court's decision specifically states that "[r]esponsibility for TPS decisions rests with the Secretary of Homeland Security, 6 U.S.C. §§ 552(d), 557." *Doe*, 609 U.S.__, 2026 WL 1825840 at *4.

Further, in their original and currently operative complaint, Plaintiffs represented to the Court that the "Secretary of the Homeland Security"—not the Attorney General—"has ultimate statutory authority over all TPS extension, termination, and designation decisions," and they specifically cited 6 U.S.C. § 557 as "transferring" the relevant "functions from the Attorney General" to the Secretary—the same statutory provision that they now insist does not transfer any TPS functions at all. Compl. ¶ 22 n.6. Perhaps most glaringly, Plaintiffs' proposed amended complaint itself *continues* to represent that the "Secretary of the Homeland Security"—not the Attorney General—"exercises authority over all TPS extension, termination, and designation decisions." Am. Compl. at ¶ 21. That appears to be an internal contradiction, not an effort at pleading in the alternative. The Court should thus treat this issue as forfeited or at minimum uncontested, in light of the proposed amendments' internal contradictions.

### B.    Plaintiffs' Proposed Amendments are Unduly Delayed.

While the Court has broad discretion to grant leave to amend the operative complaint, the Ninth Circuit has described two scenarios where a court may find undue delay. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). *First*, whether an "amendment . . . would produce an undue delay in the litigation." *Id.* at 1387. *Second*, whether the plaintiffs unduly delayed filing their amendment. *See id.* at 1387–89. The *Jackson* court explained that "relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Id.* at 1388.

Here, Plaintiffs now seek to raise new constitutional claims and an *ultra vires* APA claim. Plaintiffs could have raised these additional constitutional claims at the time they filed their initial complaint or within the timeframe allotted by the scheduling order. *See AmerisourceBergen Corp.*, 465 F.3d at 953 ("[I]n evaluating undue delay, we also inquire whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.") (citation omitted). Instead, Plaintiffs waited while proceedings in this case progressed under their original APA and constitutional challenges and finally sought to add the new challenges only *after* the Supreme Court substantially narrowed their original theory. Plaintiffs claim that the Supreme Court's ruling amounts to a substantial change in the legal landscape. However, nothing about the Supreme Court's decision remotely suggested new theories. And that Plaintiffs now belatedly realize their existing claims cannot prevail is no justification for having previously failed to plead all the claims available to them. Nothing prevented Plaintiffs from raising their "new" constitutional claims or *ultra vires* APA claim in their original complaint. Affording Plaintiffs the opportunity to reallege their claims ten months after the deadline to amend pleadings has passed, especially when Plaintiffs were apprised of Defendants' rightful position as to the judicial review bar under 8 U.S.C. § 1254a(b)(5)(A) in the September 9, 2025, Motion to Dismiss, would restart the case at the pleading stage and cause undue delay in reaching the finality of these proceedings. That sequence strongly supports denial of leave to amend for undue delay. *See Amerisource Bergen Corp.*, 465 F.3d at 953 (affirming denial of leave to amend because eight-month delay in seeking amendment was unreasonable).

Further, Plaintiffs' allegation of "newly revealed facts" that prompted their request for leave to amend their complaint is misleading, and directly undermines the Ninth Circuit's caution against late amendments, as Plaintiffs themselves concede that the principal amendments are "legal" and the amended complaint "rest[] principally on the same factual record the parties have already developed and litigated." Mot. at 6; *Acri*, 781 F.2d at 1398 ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."); *see supra* § I.

Yet, Plaintiffs now seek to amend to add legal arguments that they readily could have raised at the time they filed their initial complaint. Plaintiffs fail to explain why these claims could not be raised previously and, given the prejudice to Defendants and new discovery burden as "Plaintiffs may seek limited additional discovery", the Court should deny their motion. Mot. 6; *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (recognizing courts have discretion in denying a motion to amend where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally).

**C.      Plaintiffs' New Claims Prejudice Defendants.**

Finally, Defendants will certainly be prejudiced if the Court allows Plaintiffs to amend their complaint at this juncture. In addition to the futility and undue delay, allowing Plaintiffs to proceed on these claims would set the precedent that Plaintiffs may add new claims to this lawsuit every time a higher court renders a decision impacting the likelihood of Plaintiffs' success, indefinitely and unnecessarily prolonging this litigation.

"A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin*, 986 F.3d at 986 (citing *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998)). Plaintiffs expressly say they plan to seek additional discovery on these new claims. Mot. at 5, 6. That would plainly prejudice the government—especially when Plaintiffs could have pleaded these claims at the outset and conducted only one discovery period.

Moreover, allowing Plaintiffs to amend would require Defendants to "undertake . . . an entirely new course of defense" and this "late hour" in the case. *Morongo Band*, 893 F.2d at 1079. Contrary to Plaintiffs' assertions, *see* Mot. 5–6, this case has reached a significantly advanced stage such that transformation of the case would be prejudicial. For instance, Defendants have twice appealed the Court's decisions to the Ninth Circuit and twice obtained orders staying this Court's orders, pending appeal. The Ninth Circuit determined that Defendants were likely to succeed on a majority of Plaintiffs' claims. *Nat'l*

*TPS Alliance v. Mullin*, No. 26-199 (9th Cir. February 9, 2026); *Nat'l TPS Alliance v. Mullin*, No. 25-4901 (9th Cir. August 20, 2025).

Meanwhile, Defendants have already been required to produce extensive discovery in this case. *See supra* Background. Allowing amendment after all that has transpired would require Defendants to defend against new claims and conduct substantial additional proceedings. What's more, to the extent that Plaintiffs engaged in this discovery with the knowledge that they would bring these new claims, that places the government at a disadvantage, having no knowledge of these claims throughout discovery. Indeed, Plaintiffs could easily have brought these claims before discovery occurred in Fall 2025, and could also have raised them before the Court's Scheduling Order deadline passed. Jackson, 902 F.2d at 1388 (undue delay results when "the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."). Accordingly, this Court should reject Plaintiffs' dilatory tactics of raising new claims at this late juncture.

Defendants would also be prejudiced if Plaintiffs are permitted, through amendment, to essentially dismiss without prejudice the claims on which the Ninth Circuit vacated this Court's partial judgment following the Supreme Court's ruling. *See* Comp.; *Nat'l TPS Alliance v. Mullin*, No. 26-199 (9th Cir. July 14, 2026) (order vacating district court judgment). Rule 41 requires the parties to stipulate to dismissal of claims after an answer. FED. R. CIV. P. 41. Defendants would require that the dismissal of the claims Plaintiffs are likely to lose on be without prejudice to spare Defendants the burden of re-litigating these issues should other litigation arise.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion for leave to amend their complaint.

Dated: July 30, 2026

Respectfully Submitted,

BRETT SHUMATE

Assistant Attorney General

RUTH ANN MUELLER
Senior Litigation Counsel

ERIC SNYDERMAN
SHELBY WADE
LAUREN BRYANT
CATHERINE ROSS
JEFFREY HARTMAN
RACHEL BERMAN-VAPORIS
DANIEL CAPPELLETTI

Trial Attorneys

*/s/ Alina Salgado*
ALINA SALGADO
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-5110
Alina.N.Salgado@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*,<br><br>       Plaintiff,<br><br>  v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,<br><br>       Defendants. | Case No. 3:25-cv-05687<br><br><br>PROPOSED ORDER DENYING PLAINTIFFS' MOTION TO AMEND PLEADINGS |

**PROPOSED ORDER**

Before the Court is Defendants' Opposition to Plaintiffs' Motion to Amend Pleadings. ECF _____. Having reviewed the motion and considered the arguments counsel, IT IS HEREBY ORDERED that Plaintiffs' Motion to Amend Pleadings is DENIED.

Issued this _____ day of _____, 2026.

_____

Trina L. Thompson
United States District Court Judge