BRETT A. SHUMATE
Assistant Attorney General
Civil Division
RUTH ANN MUELLER
Senior Litigation Counsel
ERIC SNYDERMAN
SHELBY WADE
LAUREN BRYANT
JEFFREY HARTMAN
RACHEL BERMAN-VAPORIS
ALINA SALGADO
DANIEL CAPPELLETTI
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

NATIONAL TPS ALLIANCE, *et al*.,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al*.,[1]

Defendants.

Case No. 3:25-cv-05687-TLT

**DEFENDANTS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND PLEADINGS**

Date: September 24, 2026
Time: 2:00 p.m.
Location: Videoconference Zoom

---

1 The current Secretary of Homeland Security is automatically substituted as a defendant in place of the former Secretary, Kristi Noem. *See* FED. R. CIV. P. 25(d).

Dated: August 20, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

RUTH ANN MUELLER
Senior Litigation Counsel

ERIC SNYDERMAN
SHELBY WADE
LAUREN BRYANT
JEFFREY HARTMAN
RACHEL BERMAN-VAPORIS
ALINA SALGADO
Trial Attorneys

*/s/ Daniel Cappelletti*
DANIEL CAPPELLETTI
Trial Attorney (DC Bar 1672879)
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-2999
Daniel.Cappelletti@usdoj.gov

*Attorneys for the Defendants*

Defendants submit this Supplemental Response in Opposition to Plaintiffs' Motion to Amend (ECF No. 229) pursuant to this Court's August 17, 2026, Order (ECF No. 236). Specifically, during the hearing on August 13, 2026, the Court ordered that Defendants address whether *Mullin v. Doe*, 146 S. Ct. 2121 (2026), overturns any prior Supreme Court or Ninth Circuit caselaw and, if not, how that squares with moving forward with Plaintiffs' proposed bare animus claim. The Court further ordered that Plaintiffs address whether Federal Rule of Civil Procedure Rule 15 permits them to add a new claim, or if the new claim must be pled in a new lawsuit. In short, Plaintiffs do not have any prospect of victory on a theory that requires them to prove that animus was the *sole motivation* for terminating the TPS designations at issue, with no possible rational, non-animus-based motivation for the terminations, when the Supreme Court has already held both that the government had a rational, non-animus-based reason for terminating TPS designations and that race was not even *a motivating factor* for the terminations.

## I. *Doe* Did Not Overturn Prior Supreme Court or Ninth Circuit Precedent Regarding Equal Protection Claims—When Taken Together, the Caselaw Highlights the Futility of Plaintiffs' Bare Animus Claim.

*Doe* held that a race-discrimination equal protection claim challenging the termination of Haiti's TPS designation was not likely to succeed, under existing law, because the plaintiffs identified no statement that "was overtly racial, and in substance all expressed policy views that could rest on race-neutral justifications." *Doe*, 146 S. Ct. at 2138. And there was "a strong, race-neutral explanation of these officials' statements: the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies," effectuated uniformly across a "racially diverse group of countries." *Id.* at 2139. The Supreme Court reached that conclusion by assuming, without deciding, that the plaintiffs' preferred *Arlington Heights* standard applied to the claim.

*Doe* did not overrule Supreme Court precedents. Lower courts can recognize such an overruling only when the Supreme Court has made the decision to overrule its own precedent explicitly. *See, e.g.*, *United States v. Hatter*, 532 U.S. 557, 567 (2001) ("[I]t is [the Supreme] Court's prerogative alone to overrule one of its precedents."); *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (if a Supreme Court precedent "'has direct application in a case,' . . . a lower court 'should follow the case which directly

controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions,'" "even if the lower court thinks the precedent is in tension with 'some other line of decisions.'" (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989))). Nor did *Doe* explicitly overrule Ninth Circuit precedents.[2]

The fact that *Doe* did not change the governing legal framework for equal protection claims favors the government, not Plaintiffs. Plaintiffs' "bare animus" allegations are a second legal theory for their same equal protection claim. The Supreme Court has already held, with reasoning that squarely applies to equal protection challenges to the terminations of other countries' TPS designations, that an equal protection claim cannot succeed even under the heightened *Arlington Heights* standard. That necessarily resolves the viability of equal-protection claims under lower standards, like the rational basis review prescribed in Supreme Court decisions like *Romer v. Evans*, 517 U.S. 620 (1996). *Doe*, 146 S. Ct. at 2138.

During the August 13, 2026, status conference, the Court asked Defendants to address specific case law on this issue. Defendants address those cases below. First, these decisions all support the application of the lower rational basis standard to Plaintiffs' proposed bare animus claim, meaning that they cannot succeed after the Supreme Court's rejection of an equal-protection claim under a heightened standard. Second, these decisions require a plaintiff to show that the challenged decision can be explained *only* by bare animus, and the Supreme Court's conclusion that the terminations have "a strong, race-neutral explanation"—"the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies"—makes it impossible to succeed on a "bare animus" theory. *Doe*, 146 S. Ct. at 2139.

**1.** First, all the decisions support application of a rational basis standard. In *Trump v. Hawaii*, the Supreme Court addressed the plaintiffs' claim that Presidential Proclamation No. 9645 ("Proclamation")

---

[2] The Supreme Court did not explicitly address the Ninth Circuit's decisions in *Nat'l TPS Alliance v. Noem* (*NTPSA v. Noem*, 150 F.4th 1000 (9th Cir. 2025); *National TPS Alliance, et al.*, *v. Noem, et. al.*, 166 F.4th 739 (9th Cir. No. 25-5724), *reh'g en banc denied by* 169 F.4th 796 (9th Cir. 2026)), but the government's petition to vacate the panel's decision in light of *Doe* remains pending. *Mullin v. NTPSA*, No. 26-48 (U.S. July 9, 2026).

violated the Establishment Clause of the First Amendment because it was motivated not by concerns pertaining to national security but by animus toward Islam. 585 U.S. 667, 682 (2018). The Court acknowledged that this claim "differs in numerous respects from the conventional Establishment Clause claim . . . [as] plaintiffs seek to invalidate a national security directive regulating the entry of aliens abroad." *Id.* at 702. Looking to *Kleindienst v. Mandel*, 408 U.S. 753 (1972), the Court found that its narrow standard of review "has particular force" in admission and immigration cases that overlap with "the area of national security." *Id.* at 704 (quoting *Kerry v. Din*, 576 U.S. 86, 104 (2015) (Kennedy, J., concurring in judgment)). As such, the Court applied "rational basis review . . . [to] consider[] whether the entry policy [was] plausibly related to the Government's stated objective to protect the country and improve vetting processes." *Id.* at 704-05. In doing so, the Court noted that it "hardly ever strikes down a policy as illegitimate under rational basis scrutiny," but "[o]n the few occasions" it has, the common thread has been that the laws at issue lack any purpose other than a "bare … desire to harm a politically unpopular group." *Id.* 705 (internal quotations omitted). However, the Court found that the "Proclamation did not fit that pattern because it cannot be said that it is impossible discern a relationship to legitimate state interests or that the policy is inexplicable by anything but animus." *Id.* at 706 (internal quotations omitted). Rather, the Court found, the Proclamation was "expressly premised on legitimate purposes: preventing entry of nationals who cannot be adequately vetted and inducing other nations to improve their practices." *Id.*

*Trump v. Hawaii* prescribes rational basis review for constitutional challenges to Executive immigration policy: such measures stand so long as they are "plausibly related" to legitimate objectives, in deference to judgments that "implicate relations with foreign powers" and involve "classifications defined in the light of changing political and economic circumstances." 585 U.S. at 702, 704–05. A country-conditions termination is the paradigm of such a judgment, and nationality-based classifications in the immigration laws receive rational basis review in any event. *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976) (applying rational basis review).

The other decisions likewise apply a rational basis standard. *See* ECF No. 229-1 at 63-64; *Romer*, 517 U.S. at 632 (applying rational basis review); *U.S. Dept. of Agric. v. Moreno*, 413 U.S. 528, 535-37 (1973) (same); *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 448 (1985) (same).

**2.** Second, each decision holds that a "bare animus" theory can succeed only if the challenged decision can be explained only by bare animus, with no rational animus-neutral explanation—a showing Plaintiffs cannot make, under controlling law, in light of the Supreme Court's assessment of the termination decisions.

In *Romer v. Evans*, the Supreme Court reviewed an amendment to the Constitution of the State of Colorado prohibiting all legislative, executive, or judicial action designed to protect "homosexual persons or gays and lesbians." 517 U.S. at 624. Reviewing under a rational basis standard, the Court found that the amendment's rationale of "respect for other citizens' freedom of association, and in particular the liberties of landlords or employers who have personal or religious objections to homosexuality," was not "directed to any identifiable legitimate purpose or discrete objective" and that the amendment "classifies homosexuals not to further a proper legislative end but to make them unequal to everyone else." *Id.* at 635.

In *Department of Agriculture v. Moreno*, the Supreme Court considered the constitutionality of an amendment to the Food Stamp Act of 1964, 7 U.S.C. § 2012(e), which "with certain exceptions, exclude[d] from participation in the food stamp program any household containing an individual who is unrelated to any other member of the household." 413 U.S. at 529. The legislative history indicated that the amendment "was intended to prevent so-called 'hippies' and 'hippie communes' from participating in the food stamp program." *Id.* at 534. The Government argued that the challenged classification should be upheld as rationally related to the governmental interest in minimizing fraud in the administration of the food stamp program. *Id.* at 535. The Court found that the challenged classification "simply does not operate so as rationally to further the prevention of fraud" and that the amendment "excludes from participation in the food stamp program, not those persons who are 'likely to abuse the program,' but,

rather, only those persons who are so desperately in need of aid that they cannot even afford to alter their living arrangements so as to retain their eligibility." *Id.* at 537-38.

Finally, in *City of Cleburne, Tex. v. Cleburne Living Center*, the Supreme Court also applied a rational basis test when reviewing whether zoning ordinance discriminated against the mentally disabled. 473 U.S. 432, 446. Because the record, in the Court's view, "did not reveal any rational basis for believing that the [facility for the mentally disabled] would pose any special threat to the city's legitimate interests," the Court found the ordinance to be invalid. *Id.* at 448.

Again, Plaintiffs cannot possibly succeed under that governing law. The Supreme Court has identified a rational basis for the Secretary's TPS determinations: the "present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies" and the desire to "oppose TPS and favor tighter restrictions on immigration for economic or other reasons that have nothing to do with race." *Doe*, 146 S. Ct. at 2138-39. As *Romer* acknowledged, "a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale seems tenuous." 517 U.S. at 631. Plaintiffs may disagree with the government's policy objectives, but a view that past administrations overused TPS, to the Nation's detriment, is a view about a program, not a bare desire to harm a particular group. Plaintiffs' claim cannot succeed.

That is all the more obvious because the Supreme Court has already held, under a heightened standard, that "explicit animosity and a desire to harm TPS holders," ECF No. 229-1, ¶ 193, was not even a "motiving factor" in the Secretary's decision to terminate TPS status. Even assuming jurisdiction, the statements and evidence that Plaintiffs rely on here are just as inadequate (much less specifically to "TPS holders") to show such animus as the evidence in *Doe* and *Miot*, and the "present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies" constitute "a strong, race-neutral explanation of these officials' statements" here just as in *Doe*. 146 S. Ct. at 2139.

**3.** Other courts agree. Recently, the District Court for the Northern District of Illinois considered the same bare animus claim proffered by Plaintiffs in this case post-*Doe*. *Doe v. Mullin*, No. 25 C 15483,

2026 WL 2279577 *12 (N.D. Ill. August 7, 2026). There, the plaintiffs filed an amended complaint with three new claims to their Burma TPS challenge: (1) *ultra vires*, (2) due process, and (3) bare animus. The defendants filed a motion to dismiss the new claims, which Judge Kennelly granted. As to the bare animus claim, Judge Kennelly reasoned that "there is a distinction between bare desire to harm TPS holders and animus against TPS *policy*." *Id.* (emphasis added). The court found that "[t]he Supreme Court's reasoning in *Mullin* points to the latter, not the former." *Id.*

For the same reasons adopted by the Illinois district court, this Court should deny Plaintiffs' request to amend their Complaint. In *Doe*, the Supreme Court assessed TPS policy and found that the plaintiffs would not likely succeed on their racial animus claim even when assuming, but not deciding, that the heightened standard of scrutiny prescribed by *Arlington Heights* applied. *Doe*, 146 S. Ct. at 2138 (citing *Arlington Heights v. Metropolitan Housing Development*, 429 U.S. 252 (1977)). The Supreme Court explained that "because application of [the] standard calls for consideration of the context in which a challenged statement was made, . . . the immigration context is an important factor." *Id.* at 2138. Considering the substance of statements made by the President and Secretary regarding TPS, the Court indicated they "expressed policy views," not racial animus and that, "one may oppose TPS and favor tighter restrictions on immigration for economic or other reasons." *Id.*

Accordingly, the Supreme Court's reasoning in *Doe* forecloses Plaintiffs' claim that the Secretary's determination was motivated by a bare desire to harm TPS holders. Because the Supreme Court has already rejected the argument that race was even a motivating factor in TPS termination decisions, and has already identified a rational basis for the terminations, Plaintiffs cannot possibly succeed in showing that animus is the sole basis for the terminations at issue here. As Plaintiffs have not articulated a claim for relief that is plausible on its face, it would not survive a motion to dismiss, and futility weighs against the amendment. *See Lockheed Martin Corp. v. Network Sols.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend.").

## II. The Court Should Decline to Grant Plaintiffs Leave to Amend Under Rule 15

Federal Rule of Civil Procedure 15 permits a plaintiff to amend the complaint once as a matter of course no later than 21 days after service of the complaint or 21 days after service of a responsive pleading or motion to dismiss, whichever is earlier. *See* FED. R. CIV. P. 15(a)(1). After such time has passed or plaintiff has once amended their complaint, amendment may only be by leave of the court or by written consent of the adverse parties. FED. R. CIV. P. 15(a)(2). Granting or denying leave to amend a complaint under Rule 15 is within the discretion of the court. *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir, 1981); *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011) ("refusing Chudacoff leave to amend a technical pleading error, albeit one he should have noticed earlier, would run contrary to Rule 15(a)'s intent.").

While the "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), a court considers five factors to determine whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff previously amended his complaint. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). As explained in Defendants' Opposition, Plaintiffs' proposed amendment is unduly delayed and prejudices Defendants. ECF No. 230 at 24-27. Of the factors, prejudice to the opposing party is the "touchstone of the inquiry under rule 15(a)" and "carries the greatest weight." *Eminence Cap. v. Aspeon*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Again, Defendants will certainly be prejudiced if the Court allows Plaintiffs to amend their complaint at this juncture. In addition to the futility and undue delay, allowing Plaintiffs to proceed on their bare animus claim would require Defendants to "undertake . . . an entirely new course of defense" at this "late hour" in the case, *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), as Plaintiffs' proposed amendment threatens to expand the scope of the inquiry to motivation by "explicit animosity and a desire to harm TPS holders." ECF No. 229-1, at ¶ 193. Defendants have already dedicated significant resources to defending this litigation, having twice appealed the Court's decisions to

the Ninth Circuit, having engaged in significant motions practice, and having been required to produce extensive discovery on both Plaintiffs' original APA *and* constitutional claims. ECF No. 97 at 3-4 (granting extra-record discovery for Plaintiffs' APA claims and constitutional claim).

While Plaintiffs claim that granting leave to amend "will not result in any additional discovery," ECF No. 231-1 at 4, they simultaneously admit that they "may seek additional limited discovery . . . [that would be] essentially *identical* to the discovery Plaintiffs would seek to support the Equal Protection claim plead in the original, currently operative complaint." *Id.* (emphasis in original). But Plaintiffs have *already* sought, and obtained, discovery on their original Equal Protection claim. *See Lockheed Martin*, 986 F.3d at 986 ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint."). If Plaintiffs' contention that discovery would not add much were true, then no additional discovery would be needed for their case given the completed discovery on the Equal Protection claim. *Doe*, 146 S. Ct. at 2140 fn.7 (deeming *Miot* plaintiffs' "newly discovered evidence" in support of their equal protection claim cumulative of other evidence in the record).

When asked by the Court during the August 13, 2026, status conference hearing whether Plaintiffs' new claim would expand to all TPS recipients, Plaintiffs maintained that their claim remained limited to Nepal, Honduras, and Nicaragua. However, Plaintiffs' new claim is broader than their original Equal Protection claim as it is premised on the Secretary's purported "desire to harm TPS holders," which purportedly expands review into TPS beyond Honduras, Nicaragua, and Nepal. ECF. No. 229-1, at ¶ 193. Notably, this Court previously denied Plaintiffs' request to require Defendants to produce administrative records for countries other than Honduras, Nicaragua, and Nepal. *See* ECF No. 113 (finding Plaintiffs' request not proportional to the needs of the case). Allowing Plaintiffs to now look beyond the countries at issue and engage in additional discovery, particularly at this stage, would impose a significant burden on the Government. Not only would allowing Plaintiffs to add their proposed bare animus claim pose a significant burden on Defendants, but, considering the *Nunes* factors, amendment here under Rule 15 is inappropriate. *Nunes*, 375 F.3d at 808.

**CONCLUSION**

For the foregoing reasons, and the reasons outlined in Defendants' Opposition (ECF No. 230), this Court should deny Plaintiffs' motion for leave to file an amended complaint.

Dated: August 20, 2026

Respectfully Submitted,

BRETT SHUMATE
Assistant Attorney General

RUTH ANN MUELLER
Senior Litigation Counsel

ERIC SNYDERMAN
SHELBY WADE
LAUREN BRYANT
JEFFREY HARTMAN
RACHEL BERMAN-VAPORIS
ALINA SALGADO

Trial Attorneys

*/s/ Daniel Cappelletti*
DANIEL CAPPELLETTI
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-2999
Daniel.Cappelletti@usdoj.gov

*Counsel for Defendants*