Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
Vanessa Young (SBN 352693)
youngviniegra@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Emily Zhu (SBN 366697)
ezhu@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, SANDHYA LAMA, TEOFILO MARTINEZ,

Plaintiffs,

vs.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,

Defendants.

Case No. 3:25-cv-05687-TLT-SK

**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO REOPEN DISCOVERY PURSUANT TO FED. R. CIV. P. 16(b)(4); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Assigned to: Hon. Trina L. Thompson

Date: January 12, 2027
Time: 2:00 p.m.
Place: Courtroom 9

Complaint Filed: July 7, 2025

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (Admitted *Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Mohammad K. Tajsar (SBN 280512)
MTajsar@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

**NOTICE OF MOTION**

TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 12, 2027, at 2:00 p.m., in Courtroom 9 of the United States District Court for the Northern District of California located at San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs will and hereby move this Court, pursuant to Federal Rule of Civil Procedure 16, for an order to reopen discovery.

This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, all prior pleadings and filings in this case, any additional matter of which the Court may take judicial notice; and such further evidence or argument that may be presented before, at, or after the hearing.

Dated: September 17, 2026

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

/s/ *Emilou MacLean*
Emilou MacLean
Michelle (Minju) Y. Cho
Emily Zhu

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER
ORGANIZING NETWORK

Ahilan T. Arulanantham
Vanessa Young
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Mohammad K. Tajsar
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

**TABLE OF CONTENTS**

**Page No.**


INTRODUCTION .... 1

BACKGROUND .... 1

A. Complaint and Postponement Order .... 1

B. Production of the Certified Administrative Records and Expedited Discovery .... 2

C. Dispositive Motions and the Court's Summary Judgment Order .... 6

D. Supreme Court's Order in *Dahlia Doe* and Post-Order Briefing .... 7

E. Plaintiffs' Motion to Reopen Discovery .... 8

ARGUMENT .... 8

I. LEGAL STANDARD .... 8

II. THE COURT SHOULD REOPEN DISCOVERY PURSUANT TO RULE 16(B)(4) .... 9

A. Plaintiffs Were Diligent Both in Seeking Discovery and in Moving to Reopen Discovery .... 10

B. The Discovery Plaintiffs Seek Was Not Foreseeable. .... 11

C. The Discovery Plaintiffs Seek Is Likely to Lead to Relevant Evidence. .... 12

D. Defendants Will Not Be Prejudiced if This Court Reopens Discovery. .... 13

CONCLUSION .... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Pomona v. SQM N. Am. Corp.*,
866 F.3d 1060 (9th Cir. 2017) ....................8, 9, 11, 12

*Hamidi v. Serv. Emps. Int'l Union Local 1000*,
386 F. Supp. 3d 1289 (E.D. Cal. 2019), *aff'd*, No. 19-17442, 2021 WL 4958855 (9th Cir. Oct. 26, 2021) ....................9, 13

*King v. GEICO Indem. Co.*,
712 F. App'x 649 (9th Cir. 2017) ....................9

*Mullin v. Doe*,
609 U.S. ___, 2026 WL 1825840 (U.S. June 25, 2026) .................... *passim*

*NTPSA v. Mullin*,
No. 25-cv-1766-EMC (N.D. Cal.) ....................4, 10

*Panatronic USA v. AT&T Corp.*,
287 F.3d 840 (9th Cir. 2002) ....................10

*Qualls ex rel. Qualls v. Blue Cross of Cal., Inc.*,
22 F.3d 839 (9th Cir. 1994) ....................9

*Schagene v. Spencer*,
No. 13CV333-WQH(RBB), 2018 WL 1210682 (S.D. Cal. Mar. 8, 2018) ....................9, 13

*Sharp Mem'l Hosp. v. Medi-Excel, S.A. De C.V.*,
No. 24-cv-00511-WQH-JLB, 2026 WL 684655 (S.D. Cal. Mar. 10, 2026) ....................11

*Singleton v. Hedgepath*,
2015 WL 1893982 (E.D. Cal. Apr. 24, 2015) ....................13

*Tasty One, LLC v. Earth Smarte Water, LLC*,
No. 2:20-cv-01625-APG-NJK, 2023 WL 362666 (D. Nev. Jan. 20, 2023) ....................13

*Thomas v. Cassia Cnty.*,
2019 WL 5270200 (D. Idaho Oct. 17, 2019), *aff'd,* No. 20-35862, 2022 WL 1223705 (9th Cir. Apr. 26, 2022) ....................11

**Statutes and Rules**

5 U.S.C. § 705 ....................2

8 U.S.C. § 1254a(b)(5)(A) ....................7

Fed. R. Civ. P. 15(a)(2) .......... 7
Fed. R. Civ. P. 16 .......... 1, 8, 9, 13
Fed. R. Civ. P. 54(b) .......... 6, 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, Plaintiffs respectfully move the Court to reopen discovery for specific, limited, and previously unforeseen purposes. Specifically, Defendants now contend that the Supreme Court's recent decision in *Dahlia Doe* requires Plaintiffs to disprove that Defendants' opposition to the TPS program constitutes a race-neutral explanation for their decisions ending Temporary Protected Status ("TPS") designations for numerous countries, including those challenged in this litigation. Plaintiffs seek evidence to demonstrate that, even if the decisions to terminate TPS for Honduras, Nicaragua and Nepal were motivated by antipathy towards the TPS program as a whole, that antipathy itself was motivated at least in part by racial animus. For the Court to meaningfully consider this claim, Plaintiffs require limited discovery into communications from key decisionmakers who were involved in formulating this administration's overarching policy towards the TPS program as well as limited depositions of those decisionmakers and the personnel who implemented these decisions.

Granting this motion is warranted by good cause and does not prejudice Defendants. Defendants' new position—which they did *not* raise in any prior pleading, including their Motion for Summary Judgment—was unforeseen and motivated by an intervening legal decision. Over the course of this litigation, Plaintiffs moved diligently to seek discovery on an extraordinarily truncated timeline and in the face of significant resistance by Defendants, which hampered their ability to conduct more fulsome discovery before the fact discovery cutoff. Plaintiffs have also moved diligently and promptly to reopen discovery in light of the changed legal landscape. All other relevant factors overwhelmingly favor this Court exercising its discretion to reopen discovery.

**BACKGROUND**

**A. Complaint and Postponement Order**

On July 7, 2025, Plaintiffs filed this suit to challenge the unlawful terminations of TPS for Honduras, Nicaragua, and Nepal. Sixty thousand nationals from these countries had been living with this humanitarian protected status for at least a decade and as much as twenty-five years at the time of the announced terminations, as a result of emergencies in their countries which rendered them

unsafe. Pursuant to Defendants' actions, TPS holders were set to lose protected immigration status within sixty days, facing a loss of employment and health insurance, and the threat of detention and deportation.

On July 8, 2025, Plaintiffs moved under 5 U.S.C. § 705 of the APA to postpone the Secretary's actions and to delay the implementation or enforcement of the termination of TPS for Honduras, Nicaragua and Nepal until the resolution of proceedings on the merits. Dkt. 17. Defendants opposed Plaintiffs' motion on several grounds, but never once asserted that opposition to the TPS program constituted a race-neutral explanation for their decisions ending TPS. Dkt. 45.

On July 31, 2025, the Court granted Plaintiffs' motion to postpone the Secretary's actions. Dkt. 73. However, on August 20, 2025, the Ninth Circuit granted Defendants' motion to stay this order, while denying Defendants' motion to stay proceedings in this Court. Dkt. 96.

**B. Production of the Certified Administrative Records and Expedited Discovery**

Plaintiffs moved expeditiously to seek all necessary information to effectively prosecute their case, while Defendants mounted significant resistance from the outset. Given Defendants' primary substantive response to Plaintiffs' claims was to assert that the challenged terminations were properly based on objective consultation and country conditions review, Plaintiffs' discovery requests largely focused on the decision-making process specific to Honduras, Nicaragua, and Nepal, rather than Defendants' positions on the TPS program generally.

Within twenty-four hours of filing their Complaint, Plaintiffs requested that Defendants begin assembling the certified administrative records (CARs) for the challenged terminations, and offered to accept a phased seven- and fourteen-day schedule. Dkt. 42 at 1. Defendants refused, saying the fastest they could agree to producing these CARs was six weeks. *Id.*

On July 11, 2025, given the urgency compelled by Defendants' actions, Plaintiffs moved to expedite production of the CARs. Dkt. 42. The Court granted Plaintiffs' motion, requiring production of the CARs within one week, by July 22, 2025. Dkt. 47. Defendants produced the CARs to Plaintiffs on July 22, 2025, but failed to file them with the Court until July 28, 2025. Dkts. 62-64.[1]

[1] Defendants subsequently filed errata to all three CARs on August 4, 2025. Dkts. 77-79.

The CARs lacked the final USCIS Decision Memoranda, the central documents recommending to the Secretary that she extend or terminate TPS for a given country. While Defendants produced these documents in other litigation, they refused to produce them here, asserting that they were subject to the deliberative process privilege (DPP). Dkts. 84 at 11, 77-2, 78-2, 79-2.

Plaintiffs served Requests for Production (RFPs) on Defendants on August 6 and 18, 2025. Dkt. 95.

On August 7, 2025, Plaintiffs contested Defendants' refusal to produce the USCIS Decision Memoranda and requested that the Court grant, or set an expedited briefing schedule concerning, extra-record discovery. Dkt. 84.

On August 14, 2025, the Court referred the case to the Magistrate for all discovery matters, Dkt. 92, and issued a case management and scheduling order which set September 23, 2025 as the fact discovery cutoff in advance of a scheduled October 14, 2025, deadline for dispositive motions and a November 18, 2025, dispositive motions hearing. Dkt. 91. This permitted only approximately five weeks for discovery related to far-reaching TPS decisions for three countries. Plaintiffs used this period fully in the face of continued resistance from Defendants, which this Court and the Magistrate repeatedly recognized.

On August 19, in a joint letter brief filed with the Magistrate, Plaintiffs again challenged Defendants' assertion of DPP to withhold central documents in the CARs, including USCIS Decision Memoranda, and moved for expedited extra-record discovery. Defendants defended their invocation of DPP and opposed all discovery. Dkt. 95.

In response to Plaintiffs' contention that Defendants improperly withheld documents from the CARs, on August 21, 2025, the Magistrate ordered Defendants to produce a privilege log of all withheld documents, and to produce the documents themselves for *in camera* review. Dkt. 97 at 6–7. On September 4, 2025, following *in camera* review, the Magistrate rejected Defendants' DPP invocations, finding that in "most" instances the withheld documents "do not constitute predecisional deliberative documents" at all, and that the balancing of factors requires the overruling of the privilege even in the limited instances where they do. Dkt. 107 at 1–6. The Court declined to overrule the DPP in advance for documents not yet identified, but opined that "the parties should

discuss why departure from prior practice in *NTPSA v. Noem*, No. 25-cv-1766-EMC is warranted" if the parties raise a future DPP dispute to the Court. Dkt. 97 at 7.

On August 21 and September 4, 2025, the Magistrate granted Plaintiffs' request for expedited discovery, compelling production by September 18 of draft and final Decision Memoranda and communications regarding the challenged decisions. Dkts. 97 at 2-5, 107.[2]

Immediately prior to the fact discovery cutoff, on September 18 and 22, Defendants produced approximately 750 documents, more than one-third of which were redacted. Dkt. 129 at 1–2. Defendants also withheld in full approximately 400 documents, largely on DPP grounds. *Id.* Defendants thus refused to produce, absent a further court order, nearly one-third of all responsive documents, including all responsive draft documents and most substantive email communications. Dkt. 131 at 14. Plaintiffs promptly moved to compel the production of the documents withheld pursuant to DPP, and for *in camera* review of a sample of the documents withheld pursuant to attorney-client privilege ("ACP") for which the privilege appeared unsupported. Dkt. 129.

After the fact discovery cutoff, this Court and the Magistrate repeatedly recognized that Defendants had improperly withheld responsive discovery.

On October 1, 2025, the Magistrate granted Plaintiffs' request for *in camera* review of a sample of documents which Defendants had withheld pursuant to DPP and ACP. Dkt. 130. Upon review, the Magistrate again held that Defendants improperly invoked DPP for most of the documents withheld on that ground; and overruled the privilege for the "few" documents containing some deliberative material, finding Defendants' failure to substantiate their withholdings "particularly glaring" in light of the Magistrate's clear prior orders in this and other cases. *Id.* at 3-6. The Magistrate also held that Defendants improperly asserted ACP for "the vast majority of the documents that Defendants claim[ed were] protected" on this ground. *Id.* at 6-7. Finally, the

---

[2] Specifically, the Magistrate ordered Defendants to produce the draft and final Decision Memoranda prepared by U.S. Citizenship and Immigration Services ("USCIS") (RFP No. 1); clearance and approval records for the challenged decisions, which identify who signed off on the decisions (RFP No. 2); and communications involving DHS personnel related to the challenged decisions (RFP No. 3). Dkts. 84-1, 95-1. The Magistrate denied Plaintiffs' request for production of discovery regarding TPS designations where there had been a periodic review during Secretary Kristi Noem's tenure which were not directly at issue in this litigation. Dkts. 95-2, 97, 113.

Magistrate overruled most of Defendants' assertion of law enforcement privilege as improper. *Id.* at 7-8. The Magistrate admonished that "Defendants do not seem to have considered the [Magistrate's] prior Orders," and continue to improperly invoke privileges which are unsubstantiated and unwarranted. Dkt. 155 at 1–3.

Defendants refused to timely produce the documents for which the Magistrate had ordered production, requiring extensive motion practice and further delay, extending well beyond the fact discovery cutoff. First, after Defendants refused to commit to produce the documents by a date certain, Dkt. 157, on October 21, 2025, the Magistrate clarified that Defendants were obligated to produce the documents the following day. Dkt. 158.

Defendants thereafter petitioned this Court for emergency relief from the Magistrate's order. Dkt. 159. While this Court denied Defendants' motion, the Court instructed the Magistrate to conduct a second *in camera* review of the challenged documents. Dkts. 160, 165. After this second review, on October 31, 2025, the Magistrate affirmed her prior order holding that Defendants had improperly withheld documents pursuant to DPP and ACP but, upon consideration of "Defendants' belated declarations" related to the law enforcement privilege, the Magistrate identified limited portions of particular documents as properly withheld on this ground. Dkt. 169.

On November 3, 2025, Defendants *again* sought emergency relief—continuing to resist the production of certain material withheld on DPP or other grounds. Dkt. 170. This Court again ordered Defendants to produce a new set of challenged documents under seal, and referred these documents to the Magistrate for a further *in camera* review. Dkts. 171, 177. Again, the Magistrate largely rejected Defendants' assertion of DPP, holding in many instances that the documents included no deliberative material at all; and likewise largely rejected Defendants' assertion of ACP. Dkt. 178. The Magistrate permitted the withholding of limited portions of the remaining documents on privilege grounds. *Id.*

Defendants for a *third* time moved for emergency relief from the Magistrate's order, continuing to defend repeatedly overruled assertions of DPP and law enforcement privilege. Dkt. 181. On November 13, 2025, the Court *again* denied Defendants' motion, noting that the Magistrate had ruled on these documents "at least four times." Dkt. 183 at 1.

Plaintiffs repeatedly notified the Court that their prompt access to critical documents was hampered by Defendants' failure to timely produce responsive records in discovery, and Defendants' unjustified and extended withholding of significant information. Dkts. 131 at 14, 163 at 1.

### C. Dispositive Motions and the Court's Summary Judgment Order

On September 9, 2025, Defendants moved to dismiss the Complaint. Dkt. 110. On October 14, 2025, Defendants moved for summary judgment and Plaintiffs cross-moved for partial summary judgment on their statutory claims, but not on their constitutional claim. Dkts. 142, 144. Throughout this period, Defendants challenged Plaintiffs' equal protection claim based on the central arguments that the Court must use a deferential standard of review; that the Secretary had complied with her statutory obligations; and statements offered to show racial animus were taken out of context and insufficient to show discrimination in any event. Dkts. 110 at 19-23, 142 at 18-22. Defendants did *not* at any time argue that their opposition to the TPS program as a whole constitutes a race-neutral explanation for their termination decisions. *Id.*

On December 31, 2025, this Court granted Plaintiffs' partial summary judgment motion and denied Defendants' summary judgment motion, and denied Defendants' motion to dismiss. Dkt. 197. The Court's order vacated the Secretary's termination decisions and directed entry of final judgment under Rule 54(b) on the APA claims for which it granted summary judgment in favor of Plaintiffs, but stayed continued litigation concerning the outstanding constitutional claim. *Id.* at 51–52.

On February 9, 2026, the Ninth Circuit stayed this Court's summary judgment order, Dkt. 214, and two days later, this Court stayed the matter "pending further instruction from the Ninth Circuit." Dkt. 215.

Since the TPS terminations for these countries have gone into effect following the Ninth Circuit stay, Honduran, Nicaraguan and Nepali TPS holders have lost jobs, income, health insurance, and social security and have faced detention and deportation.

### D. Supreme Court's Order in *Dahlia Doe* and Post-Order Briefing

On June 25, 2026, the Supreme Court issued a consolidated decision in two TPS cases, concerning preliminary relief granted by district courts in response to the termination of the TPS designations of Syria and Haiti. *Mullin v. Doe*, 609 U.S. ___, 2026 WL 1825840 (U.S. June 25, 2026) ("*Dahlia Doe*"). The Supreme Court's decision in *Dahlia Doe* recognized the viability of a constitutional challenge to a TPS termination decision and assumed that the *Arlington Heights* standard applied, requiring a "determin[ation of] whether a 'discriminatory purpose [was] a motivating factor in the decision' to terminate [a] TPS designation." *Id.* at *11–13. The Supreme Court nonetheless held that the plaintiffs had not demonstrated, at the preliminary stage, that they were likely to prove that "race was a motivating factor in the decision to terminate Haiti's TPS designation." *Id.* The Court placed significant weight on the existence of an explanation for the terminations that "could be" "race-neutral"—"the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies." *Id.* The majority also held that 8 U.S.C. § 1254a(b)(5)(A) barred review of the statutory claims at issue in those cases. *Id.* at *7.

On July 2, 2026, in a joint case management statement filed immediately after the Supreme Court's decision in *Dahlia Doe*, Plaintiffs informed the Court that they were "evaluating whether they may seek to amend the scheduling order to seek limited discovery directed to respond" to the changed landscape following the Supreme Court's order in *Dahlia Doe*. Dkt. 221 at 14–15.

On July 14, 2026, the Ninth Circuit vacated this Court's December 31, 2025 entry of judgment under Rule 54(b) and remanded to this Court for further proceedings in light of the Supreme Court's holding and the parties' stipulation that there was no jurisdiction over the APA claims at issue in the appeal. Dkt. 224. The same day, this Court lifted the stay in this matter and instructed Plaintiffs to file a motion for leave to amend by July 24, 2026, and instructed the parties to "submit an agreed upon updated schedule" within seven days of the Court's disposition of the motion to amend. Dkt. 225.

On July 24, Plaintiffs moved for leave to file an amended complaint under Rule 15(a)(2). On August 6 and September 3, in separate orders, this Court denied Plaintiffs' motion for leave to

amend. Dkts. 233, 242.

**E. Plaintiffs' Motion to Reopen Discovery**

On September 10, 2026, following the Court's denial of Plaintiffs' motion to amend, the parties submitted a stipulated schedule for the remaining equal protection claim, proposing for Plaintiffs to move to reopen discovery by September 17, 2026, and Defendants to move for judgment on the pleadings by October 2, 2026. Dkt. 244. The Court found good cause to grant the parties' proposed schedule, including the instant motion, and set the hearing on the parties' motions for January 12, 2027. Dkt. 246.

Plaintiffs now move to reopen discovery under Rule 16(b)(4) for limited and specific purposes. For the first time in this litigation, Defendants are asserting that Plaintiffs cannot prevail on their equal protection claim because the challenged terminations were based on opposition to the TPS program itself. *Compare, e.g.*, Dkt. 230 at 12 *with* Defs' MSJ, Dkt. 142 at 20–22 (arguing only that terminations were based on country conditions review). In support of this argument, Defendants rely on the Supreme Court's statement that the decision to terminate TPS for Haiti can be explained by "the current administration['s] . . . oppos[ition to] the TPS program"—a position the Court found "*could*" be race neutral. *Dahlia Doe,* 2026 WL 1825840, at *2, *12 (emphasis added). *See* Dkt. 230 at 12.

Defendants' new position requires Plaintiffs to disprove that Defendants' opposition to the TPS program is race-neutral. *See* Dkt. 230 at 12. To do so, Plaintiffs need limited additional discovery into the motivation behind Defendants' decision to systematically dismantle the TPS program, stripping over one million people of lawful immigration status. The limited discovery Plaintiffs intend to seek if the Court grants Plaintiffs' motion consists of 1) the identities of DHS officials who worked on TPS in the presidential transition team; 2) communications involving those individuals beginning on November 26, 2024; and 3) limited depositions of those individuals and the career staff who implemented the TPS policy.

## ARGUMENT

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 16(b)(4) allows the Court to amend the scheduling order to

reopen discovery after the discovery period closes. *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017). The decision to reopen discovery for good cause is reviewed for abuse of discretion. *Schagene v. Spencer*, No. 13CV333-WQH(RBB), 2018 WL 1210682, at *3 (S.D. Cal. Mar. 8, 2018) ("The district court has discretion to reopen discovery on remand."); *see King v. GEICO Indem. Co.*, 712 F. App'x 649, 651 (9th Cir. 2017) ("A district court's determination regarding whether to ... reopen discovery is reviewed for abuse of discretion.").

Courts consider the following factors in evaluating whether a movant has demonstrated good cause to amend the scheduling order and reopen discovery under Rule 16: "1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence." *City of Pomona*, 866 F.3d at 1066 (citation omitted). The Ninth Circuit considers "diligence" to be the primary focus of this analysis. *Hamidi v. Serv. Emps. Int'l Union Local 1000*, 386 F.Supp. 3d 1289, 1299 (E.D. Cal. 2019), *aff'd*, No. 19-17442, 2021 WL 4958855 (9th Cir. Oct. 26, 2021). A district court may be found to have "abused its discretion [in limiting further discovery] if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing *additional* discovery would have precluded summary judgment." *Qualls ex rel. Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994) (emphasis in original).

## II. THE COURT SHOULD REOPEN DISCOVERY PURSUANT TO RULE 16(b)(4)

The discretion held by this Court, combined with each relevant factor, weighs in favor of allowing the limited new discovery Plaintiffs seek. Defendants' new position regarding Plaintiffs' equal protection claim arose from the recent Supreme Court decision. Specifically, Defendants newly contend that Plaintiffs' equal protection claim must fail because this administration's antipathy is directed towards the TPS program itself and is not racially motivated. Plaintiffs have acted diligently in all discovery matters, are faced with an unforeseen argument as a result of the changed legal landscape, and would be unfairly prejudiced without the contemplated additional discovery to allow them to fully respond to this new argument.

### A. Plaintiffs Were Diligent Both in Seeking Discovery and in Moving to Reopen Discovery.

Plaintiffs exercised clear diligence during the initial truncated discovery period in this litigation and in filing this motion to reopen discovery.

Prior to this Court's partial summary judgment order, this case was by necessity on an expedited schedule as a result of Defendants' actions, which sought to strip 60,000 long-term TPS holders of legal status within 60 days. In the face of Defendants' dilatory tactics and recurring roadblocks, Plaintiffs "diligently pursued previous discovery opportunities," actively seeking discovery for the entirety of the truncated five-week discovery period set by the Court—a period significantly shorter than in other TPS cases involving similar claims, where discovery on constitutional equal protection claims remains open to this day. *See, e.g.*, *NTPSA I*, No. 25-cv-1766-EMC, Dkt. 444 (N.D. Cal. July 14, 2026) (minute order affirming that "discovery at this point shall proceed only as to Plaintiffs' remaining constitutional claims," following the Supreme Court decision in *Dahlia Doe*); *see also Panatronic USA v. AT&T Corp.*, 287 F.3d 840, 846 (9th Cir. 2002) (a district court may be found to have abused its discretion in denying a motion to reopen discovery if "the movant diligently pursued previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment") (*quoting Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001)). For weeks, and well beyond the fact discovery cutoff, Defendants relied on unsubstantiated privilege objections to refuse to produce any substantive communications concerning their decisions to terminate TPS for Honduras, Nicaragua and Nepal, including repeatedly and unsuccessfully challenging the Magistrate's disclosure orders, and thereby limiting Plaintiffs' ability to pursue further discovery which would otherwise have followed from a complete review of responsive evidence prior to the close of fact discovery. *See* Background § I.B, *supra*.

Plaintiffs were also diligent in pursuing this motion as soon as it became evident that additional discovery was necessary and warranted. *See* Background §§ I.D & I.E, *supra*. Plaintiffs notified the Court of their intent to move to reopen discovery immediately after the Supreme Court's decision in *Dahlia Doe*, and even before this Court lifted its stay; and moved to do so immediately

upon this Court's resolution of Plaintiffs' motion to amend the complaint. Dkts. 221, 246. *See Pomona*, 866 F.3d at 1067 (finding the district court abused its discretion where it refused to reopen discovery when the plaintiff "moved promptly once the case returned to the district court").

**B. The Discovery Plaintiffs Seek Was Not Foreseeable.**

Plaintiffs seek limited discovery which was not foreseeable, but which responds to Defendants' new position sparked by a change in the legal landscape following the close of discovery. Intervening changes in the legal landscape constitute good cause to reopen discovery. *Thomas v. Cassia Cnty.,* 2019 WL 5270200, at *11 (D. Idaho Oct. 17, 2019), *aff'd,* No. 20-35862, 2022 WL 1223705 (9th Cir. Apr. 26, 2022). Good cause exists to modify a scheduling order where information or defenses which prompt the modification request are newly available. *Sharp Mem'l Hosp. v. Medi-Excel, S.A. De C.V.*, No. 24-cv-00511-WQH-JLB, 2026 WL 684655, at *3 (S.D. Cal. Mar. 10, 2026).

The Supreme Court, in reviewing an order for preliminary relief, found that Haitian TPS holders were unlikely to succeed in their equal protection claim where the termination was based in part on opposition to the TPS program itself which "could" be "race-neutral." *Dahlia Doe*, 2026 WL 1825840, at *11–13. Defendants rely on the Supreme Court's decision to raise a new argument not previously raised in this litigation: that the administration's opposition to TPS "constitute[s] 'a strong, race-neutral explanation'" which would prevent Plaintiffs from succeeding on any equal protection claim. Dkt. 230 at 12 (*quoting Dahlia Doe*, 2026 WL 1825840, at *12–13). Defendants did not previously raise this argument. *See* Background §§ I.C-I.E, *supra*. To respond to this argument, Plaintiffs need limited additional discovery into the *reason* Defendants decided to dismantle the TPS program. *See* Background § I.E, *supra* (describing requests).

This topic was not covered by prior discovery. First, the decision to dismantle TPS was made before the prior discovery time-period. Second, communications addressing this broader antecedent motivation would not necessarily have referenced the specific TPS countries at issue here and so would not have been produced in response to Plaintiffs' prior discovery requests, the search terms for which included "Honduras," "Nicaragua," or "Nepal." Third, this motivation was conveyed largely through oral, rather than written, communications which would only be available through

deposition. None of this was the subject of prior discovery which provided only written communications for a time-limited period, and concerned only the specific countries whose TPS was terminated.

**C. The Discovery Plaintiffs Seek Is Likely to Lead to Relevant Evidence.**

The discovery Plaintiffs seek is likely to lead to evidence that one of the motivations of this administration's effort to unravel the TPS program was unconstitutional racial animus. The evidence is essential to respond to Defendants' central contrary argument that this larger effort was race-neutral. *See Pomona*, 866 F.3d at 1066–67 (finding abuse of discretion where the district court denied leave to amend schedule to permit the plaintiff to provide "material" evidence which "would be a key factor at trial").

In support of this motion, Plaintiffs provide a declaration from former USCIS Team Lead of the TPS portfolio Amany Ezeldin who testifies, *inter alia*, that 1) agency personnel working on TPS "tightly controlled" their communications, Declaration of Amany Ezeldin ("Ezeldin Dec.") ¶¶ 23–25, demonstrating the need for depositions to obtain an accurate picture of the TPS decision-making process; 2) members of the presidential transition team responsible for developing TPS policies who later assumed key leadership roles were unusually "emotionally charged" in their discussion of TPS during presidential transition team meetings, suggesting that atypical motivations may have animated their positions on TPS and that additional discovery into their motivation is likely to lead to relevant evidence, *id.* at ¶¶ 9–12; and 3) senior DHS officials made clear after the presidential transition that termination of TPS designations was the only acceptable outcome, confirming that the decision to terminate was effectively made well before individual country reviews began, *id.* at ¶¶ 13–23, thereby demonstrating the need for discovery into material from the transition time-period and depositions of both policymakers and those tasked with implementing the policy.

Plaintiffs would be prejudiced without the evidence they seek. They would be forced to respond to Defendants' new arguments based on the old record, which was developed during a truncated, five-week discovery period in which discovery was limited to RFPs (with no depositions conducted) specifically related to the challenged terminations of these individual countries, and entirely excluded the time-period during which Defendants formulated their position on the TPS

program generally. Such constraints would prevent Plaintiffs from effectively addressing Defendants' novel contention which relies on the precedential Supreme Court decision issued after the close of discovery.

**D. Defendants Will Not Be Prejudiced if This Court Reopens Discovery.**

The other factors favor reopening discovery, or do not provide substantial reason to deny Plaintiffs' motion. Trial is not imminent, and no trial date is currently set. Thus, reopening discovery would not substantially delay proceedings. *See Tasty One, LLC v. Earth Smarte Water, LLC*, No. 2:20-cv-01625-APG-NJK, 2023 WL 362666, *2 (D. Nev. Jan. 20, 2023) (granting motion to reopen discovery where trial was not scheduled for six months and where reopening discovery would not meaningfully delay judicial proceedings). Defendants would face little or no prejudice from the limited discovery Plaintiffs seek where discovery is needed "to prepare for matters yet to be adjudicated and not to relitigate issues already adjudicated." *Id.* (granting motion to reopen discovery and finding it not prejudicial). Moreover, Plaintiffs are entitled to relevant discovery under Rule 16(b)(4) even if Defendants will suffer "some prejudice." *See Schagene*, 2018 WL 1210682, at *5; *Singleton v. Hedgepath*, 2015 WL 1893982, at *5 (E.D. Cal. Apr. 24, 2015) ("[T]he court *must* allow Plaintiff the discovery he is entitled to under the Federal Rules" even though "Defendants will certainly suffer some prejudice if discovery is reopened.") (emphasis added). While Defendants oppose the request, this is not a central factor in the Court's analysis and does not outweigh the other factors that overwhelmingly favor the exercise of this Court's discretion to reopen discovery. *Hamidi*, 386 F.Supp. 3d at 1299 (identifying diligence of the moving party as the central factor).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court amend the scheduling order and reopen discovery to the limited extent described above.

Dated: September 17, 2026

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

/s/ *Emilou MacLean*
Emilou MacLean

Michelle (Minju) Y. Cho
Emily Zhu

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER
ORGANIZING NETWORK

Ahilan T. Arulanantham
Vanessa Young
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Mohammad K. Tajsar
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean