BRETT A. SHUMATE
Assistant Attorney General
Civil Division
CATHERINE M. RENO
Assistant Director
RUTH ANN MUELLER
Senior Litigation Counsel
DANIEL CAPPELLETTI
MIA S. BONADIES
ALINA SALGADO
Trial Attorneys
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

NATIONAL TPS ALLIANCE, *et al.*,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,

Defendants.

Case No. 3:25-cv-05687-TLT

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Date: January 12, 2027
Time: 2:00 p.m.
Location: Courtroom 9

Dated: October 2, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

CATHERINE M. RENO
Assistant Director

RUTH ANN MUELLER
Senior Litigation Counsel

DANIEL CAPPELLETTI
MIA S. BONADIES
Trial Attorneys

*/s/ Alina Salgado*
ALINA SALGADO
Trial Attorney (GA Bar 689323)
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-5110
Alina.N.Salgado@usdoj.gov

*Attorneys for the Defendants*

## TABLE OF CONTENTS

INTRODUCTION ........................................................ 1

BACKGROUND ........................................................ 1

STANDARD OF REVIEW ........................................................ 2

ARGUMENT ........................................................ 3

I. The Court Lacks Authority to Consider Plaintiffs' Equal Protection Claim. ........................................................ 4

II. Plaintiffs' Equal Protection Claim Fails on the Merits. ........................................................ 7

CONCLUSION ........................................................ 13

# TABLE OF AUTHORITIES

## CASES

*Arlington Heights v. Metropolitan Housing Development Corp.*,
429 U.S. 252 (1977) .......... 1, 9, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012) .......... 3

*Dworkin v. Hustler Mag., Inc.*,
867 F.2d 1188 (9th Cir. 1989) .......... 3

*Egbert v. Boule*,
596 U.S. 482 (2022) .......... 5

*Fiallo v. Bell*,
430 U.S. 787 (1977) .......... 7, 8

*Galvan v. Press*,
347 U.S. 522 (1954) .......... 8

*Godecke v. Kinetic Concepts, Inc.*,
937 F.3d 1201 (9th Cir. 2019) .......... 3, 5, 7, 12

*Hal Roach Studios v. Richard Feiner & Co.*,
883 F.2d 1429 (9th Cir. 1989) .......... 3

*Harisiades v. Shaughnessy*,
342 U.S. 580 (1952) .......... 8

*In re Gilead Scis. Secs. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 3, 12

*Kleindienst v. Mandel*,
408 U.S. 753 (1972) .......... 8

*Kohja v. Orexigen Therapeutics*,
899 F.3d 988 (9th Cir. 2018) .......... 3

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) .......... 3

*Mathews v. Diaz*,
426 U.S. 67 (1976) .......... 8

*McNary v. Haitian Refugee Ctr., Inc.*,
498 U.S. 479 (1991) .......... 6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) .......... 3

*Mullin v. Doe*,
609 U.S. 324, 146 S. Ct. 2121 (2026) .......... passim

*Nixon v. Fitzgerald*,
457 U.S. 731 (1982) .......... 11

*Patel v. Garland*,
596 U.S. 328 (2022) .......... 5

*Pers. Adm'r of Mass. v. Feeney*,
442 U.S. 256 (1979) .......... 9

*Ramos v. Wolf*,
975 F.3d 872 (9th Cir. 2020) .......... 11, 12

*Regents of Univ. of Cal.*,
591 U.S. 1 (2020) .......... 10, 12

*Sheldon v. Sill*,
49 U.S. (8 How.) 441 (1850) .......... 5

*Special Dist. Risk Mgmt. Auth. v. Munich Reinsurance Am., Inc.*,
562 F. Supp. 3d 989 (E.D. Cal. 2021) .......... 3

*Staub v. Proctor Hosp.*,
562 U.S. 411 (2011) .......... 11

*Trump v. Hawaii*,
585 U.S. 667 (2018) .......... 7, 8, 12

*United States v. Nixon*,
418 U.S. 683 (1974) .......... 11

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .......... 3

*Nat'l TPS All. v. Mullin*,
26-199 (9th Cir. July 14, 2026) .......... 2, 4

*Webster v. Doe*,
486 U.S. 592 (1988) .......... 5

*Wilkinson v. Garland*,
601 U.S. 209 (2024) .......... 6

**STATUTES**

5 U.S.C. § 706(2)(C) .......... 2
8 U.S.C. § 1252(b)(9) .......... 6
8 U.S.C. § 1254a(b) .......... 10
8 U.S.C. § 1254a(b)(3)(B) .......... 9
8 U.S.C. § 1254a(b)(5)(A) .......... 1, 4, 5, 6
28 U.S.C. § 2347(b) .......... 6
8 U.S.C. § 1252(a)(2)(D) .......... 6

**RULES**

Fed. R. Civ. P. 12(d) .......... 3
Fed. R. Civ. P. 12(c) .......... 1, 2

**REGULATIONS**

*Deferred Enforced Departure for Certain Venezuelans*,
86 Fed. Reg. 6,845 (Jan. 19, 2021) .......... 12
*Designating Cartels and Other Foreign Organizations*,
90 Fed. Reg. 8,439 (Jan. 29, 2025) .......... 11
*Foreign Terrorist Organization Designations*,
90 Fed. Reg. 10,030 (Feb. 20, 2025) .......... 11
*Honduras Termination*,
90 Fed. Reg. 30,089 (July 8, 2025) .......... 10
*Nepal Termination*,
90 Fed. Reg. 24,151 (June 6, 2025) .......... 10
*Nicaragua Termination*,
90 Fed. Reg. 30,086 (July 8, 2025) .......... 10

**OTHER AUTHORITIES**

H.R. Rep. No. 101-245 (1989) .......... 4, 5
U.S. Const. art. III, § 1 .......... 5

## INTRODUCTION

Following the Supreme Court's ruling in *Mullin v. Doe*, 609 U.S. 324, 146 S. Ct. 2121 (2026), Defendants now move this Court for judgment on Plaintiffs' sole equal protection claim under Federal Rule of Civil Procedure ("Rule") 12(c). FED. R. CIV. P. 12(c). In *Doe*, the Supreme Court did not decide whether 8 U.S.C. § 1254a(b)(5)(A)'s judicial-review bar covers constitutional claims. Nevertheless, the Supreme Court held that the plaintiffs' equal protection claim under the Fifth Amendment was likely to fail even if heightened scrutiny applied. *Id.* at 2140; *see Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). Not only is Plaintiffs' equal protection claim—their only remaining claim—barred from judicial review, but it also fails on the merits. The Court in *Doe* held a materially identical equal protection claim unlikely to succeed when it examined the same statements by the President and former Secretary on which Plaintiffs here rely, concluding that "[n]one of the cited statements . . . was overtly racial, and in substance all expressed policy views that could rest on race-neutral justifications." 146 S. Ct. at 2138. This Court should dispose of Plaintiffs' equal protection claim for the same reasons relied on by the Supreme Court in *Doe* and enter judgment in favor of Defendants as a matter of law to end this litigation.

## BACKGROUND

Plaintiffs challenge the former Secretary of Homeland Security's decision to terminate the designations for Honduras, Nepal, and Nicaragua under the Temporary Protected Status ("TPS") statute. Relevant here, on June 25, 2026, the Supreme Court issued a consolidated decision in two challenges to terminations of TPS designations, *Trump v. Miot*, No. 25-1084, and *Mullin v. Doe*, No. 25-1083. *See Doe*, 146 S. Ct. 2121. In its decision, the Court held that the 8 U.S.C. § 1254a(b)(5)(A) bars judicial review of all "non-constitutional claims." *Id.* at 2127. The Court reserved the question whether the provision also bars judicial review of constitutional claims. The Court did, however, conclude that "none of the cited statements by either the President or the Secretary was overtly racial, and in substance all expressed policy views that could rest on race-neutral justifications[,]" *id.* at 2138, and that those plaintiffs "are unlikely to prove that race was a motivating factor in the decision to terminate Haiti's TPS designation[,]" *id.* at 2140.

On July 14, 2026, following the Supreme Court's ruling in *Doe*, the Ninth Circuit vacated this Court's December 31, 2025 entry of final judgment under Rule 54(b) in favor of Plaintiffs on their non-constitutional challenges to the termination of the TPS designations for Honduras, Nepal, and Nicaragua. Dkt. Nos. 44, 197 at 51–52; *Nat'l TPS All. v. Mullin*, No. 26-199 (9th Cir. July 14, 2026) (order vacating district court judgment). Plaintiffs subsequently filed their Motion for Leave to File a First Amended Complaint, seeking to replace their initial claims challenging the Administrative Procedure Act ("APA") with three new claims alongside their equal protection challenge based on alleged racial animus. Dkt. Nos. 229, 229–1 at 59–65 (Amended Complaint). Plaintiffs raised a new APA *ultra vires* challenge under 5 U.S.C. § 706(2)(C), a secondary claim to their equal protection challenge alleging bare animus, and a new constitutional claim alleging violation of the Due Process Clause of the Fifth Amendment. *Id.*

On August 6, 2026, the Court denied Plaintiffs' request to add the new APA *ultra vires* and due process challenges. Dkt. No. 233. On August 13, 2026, the Court held a status conference on Plaintiffs' proposed bare animus equal protection challenge. *Id.* On September 3, 2026, the Court denied Plaintiffs' request to add the equal protection challenge alleging bare animus, leaving only Plaintiffs' racial animus challenge. Dkt. No. 242; Am. Compl. at 62–63. As such, the operative complaint includes just this one claim.[1]

On September 17, 2026, Plaintiffs filed their Motion to Reopen Discovery. Dkt. No. 247. On October 1, 2026, Defendants filed their opposition to the discovery motion. Dkt. No. 248. Pursuant to the Scheduling Order, Defendants now move for judgment on the pleadings.

**STANDARD OF REVIEW**

After the pleadings are closed a party may move for judgment on the pleadings, so long as it does not delay trial. FED. R. CIV. P. 12(c). Judgment on the pleadings is appropriate when, even if all material

---

[1] It is Defendants' understanding that the Court granted Plaintiffs' motion in part, permitting only Plaintiffs' second proposed claim to proceed. *See* Dkt. Nos. 242, 246; Am. Compl. Defendants maintain that Rule 42 requires the parties to stipulate to dismissal of claims after an answer. Defendants also maintain that the dismissal of Plaintiffs' APA claims should be with prejudice to spare Defendants the burden of re-litigating these issues should another litigation arise. Dkt. No. 230 at 27.

facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios v. Richard Feiner & Co.*, 883 F.2d 1429, 1436 (9th Cir. 1989).

The legal standard for a Rule 12(c) motion is the same as the standard for a Rule 12(b)(6) motion to dismiss. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (stating that the principal difference between 12(c) and 12(b)(6) motions is the time of filing). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Generally, if matters outside the pleadings are considered, a Rule 12(c) motion shall be treated as one for summary judgment. FED. R. CIV. P. 12(d). However, documents submitted with the complaint may be considered as part of the complaint for purposes of a motion for judgment on the pleadings. *See Special Dist. Risk Mgmt. Auth. v. Munich Reinsurance Am., Inc.*, 562 F. Supp. 3d 989, 994 (E.D. Cal. 2021) (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). The Court may also take judicial notice of matters of public record without converting the motion into one for summary judgment. *See Kohja v. Orexigen Therapeutics*, 899 F.3d 988, 998–99 (9th Cir. 2018).

**ARGUMENT**

A Rule 12(c) motion may be based on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to allege a cognizable claim. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019). Both bases for the motion are present here. This Court lacks authority to review TPS termination decisions. Even if the Court ultimately finds that it has authority to review Plaintiffs'

constitutional claim, Plaintiffs have failed to plead sufficient facts to pass Rule 12(c) or Rule 12(b)(6) muster. The Supreme Court already rejected these allegations as unlikely to support an equal protection claim in materially similar circumstances, even under the heightened scrutiny Plaintiffs argue should apply here, and there is no reason for this Court to diverge from the Supreme Court's application of law. *Doe*, 146 S. Ct. at 2139–40. Judgment should be entered as a matter of law for Defendants.

## I. The Court Lacks Authority to Consider Plaintiffs' Equal Protection Claim.

At the threshold, the Court should dismiss Plaintiffs' Equal Protection claim because Congress has barred "judicial review of any determination of the [Secretary] with respect to" the termination of a TPS designation. 8 U.S.C. § 1254a(b)(5)(A).

In *Doe*, the Supreme Court held that this provision has teeth where it applies: It genuinely forecloses non-constitutional claims of all kinds, whether procedural or substantive, to an antecedent decision or the ultimate termination decision itself, and even if the decision is erroneous. 146 S. Ct. at 2133–37. The majority reserved the question whether the provision applies to constitutional claims as well as statutory claims. *Id.* at 2137.

Defendants maintain that the provision does apply to constitutional claims, just as it does to non-constitutional claims. Justice Thomas explained why, in his concurring opinion. *Doe*, 146 S. Ct. at 2140–42 (Thomas, J., concurring). Constitutional claims plainly fall within the text of the provision, which applies just as squarely to constitutional as to nonconstitutional claims. *Id.* at 2140-41. Nor would that reading raise constitutional concerns. *Id.* at 2141-42. Indeed, Congress purposely foreclosed judicial review of termination determinations – including constitutional claims. *See* H.R. Rep. No. 101-245, at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review."). Plaintiffs concede § 1254a(b)(5)(A) precludes judicial review of their APA claims. *Nat'l TPS All. v. Mullin*, No. 26-199 (9th Cir. July 14, 2026); Dkt. No. 229 at 6 ("Plaintiffs agree that this Court now lacks jurisdiction over [the original complaint's APA] claim . . . ."). Accordingly, this Court lacks authority to review Plaintiffs' equal protection claim, and Defendants'

motion should be granted because Plaintiffs fail to put forth a "cognizable legal theory." *Godecke*, 937 F.3d at 1208.

Plaintiffs ask this Court to review whether "Defendants' decisions to terminate the TPS designations of Nepal, Honduras, and Nicaragua are unconstitutional because they were motivated, at least in part, by intentional discrimination based on race, ethnicity, or national origin." Am. Compl. ¶ 189. But Congress's intent to preclude the review of constitutional claims is clear. *See Webster v. Doe*, 486 U.S. 592, 603 (1988). Starting with the statutory text, Congress prohibited judicial review of "any determination" "with respect to" termination decisions. 8 U.S.C. § 1254a(b)(5)(A). The modifier "any" encompasses determinations "of 'whatever kind.'" *Patel v. Garland*, 596 U.S. 328, 338 (2022). The phrase "with respect to" broadens the statute's effect such that it covers "'not only its subject but also matters related to that subject.'" *Doe*, 146 S. Ct. at 2133 (quoting *Patel*, 596 U.S. at 339).

Next, legislative history makes clear that Congress did not intend federal courts to review termination decisions and does not remotely suggest that Congress meant to bar review only of non-constitutional challenges. *See* H.R. Rep. No. 101-245, at 14 (1989) ("Moreover, none of the [Secretary's] decisions with regard to granting, extending, or terminating TPS will be subject to judicial review."). This specific language reflects Congress's clear intent in limiting Article III jurisdiction. *See* U.S. CONST. art. III, § 1, cl. 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."); *see also Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers."); *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (recognizing that "Congress," not the courts, has the authority and ability to weigh the pros and cons of remedial schemes, including "economic and governmental concerns," "administrative costs," and the "impact on governmental operations systemwide").

To the extent review of Plaintiffs' constitutional claims is available, it is through a petition for review of the removal order following removal proceedings. Congress explicitly channeled "all questions of law and fact" "arising from any action taken or proceeding brought to remove an alien from the United

States" into a petition for review. 8 U.S.C. § 1252(b)(9). That statute was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), and its language tracks the Supreme Court's *McNary* decision, in which the statute contained a judicial review provision channeling review "of a determination respecting an application" into the courts of appeal, but it did not refer to a "group of decisions or a practice or procedure employed in making decisions." *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991). There, the Supreme Court determined the plaintiffs' constitutional pattern-and-practice claims were not barred from district court review, reasoning in part that Congress "easily could have used broader statutory language" if it had "intended the limited review provisions [at issue] to encompass challenges to INS procedures and practices." *Id*. at 494. The Supreme Court provided two examples of what might constitute language "expansive" enough to remove jurisdiction claims: language channeling (1) "all causes . . . arising under any of the provisions" of the program at issue, or (2) "all questions of law and fact" arising from the program. *Id*. at 494 (emphasis added).

Congress listened to the Supreme Court's instructions in *McNary* when it enacted § 1252(b)(9) on how to ensure that the statutory language was clear and sufficient, not only to strip courts of jurisdiction and channel them through the courts of appeal, but also how it intended to address the concerns about permitting district court review due to the concerns that not all aliens would be subject to removal proceedings. Congress's answer was clear—only those who become subject to removal proceedings may obtain review of decisions that ultimately will be the basis of their removal. In the case of terminating TPS, those aliens who either have removal orders or are ultimately ordered removed could obtain some sort of review if need be. *See Wilkinson v. Garland*, 601 U.S. 209, 217–22 (2024) (recognizing that 8 U.S.C. § 1252(a)(2)(D) preserves constitutional claims in a petition for review). And if there are concerns about the record made before the immigration courts and the Board of Immigration Appeals, circuit courts may utilize a statutory safety valve permitting factual development in district courts. 28 U.S.C. § 2347(b).

Section 1254a(b)(5)(A) evinces Congress's intent to foreclose judicial review in federal district courts. Thus, Plaintiffs have failed to present a cognizable legal theory for relief because this Court lacks

jurisdiction to consider Plaintiffs' equal protection claim. Judgment should be entered in Defendants' favor.

**II. Plaintiffs' Equal Protection Claim Fails on the Merits.**

Even if reviewable, Plaintiffs' equal protection claim also fails on its merits. *See Godecke*, 937 F.3d at 1208. Plaintiffs fail to plausibly allege that the termination of the TPS designations for Honduras, Nepal, and Nicaragua is "unconstitutional because they were motivated, at least in part, by intentional discrimination based on race, ethnicity, and national origin." Am. Compl. ¶ 189. Plaintiffs claim that former Secretary Noem, President Trump, and members of the President's campaign and administration "have consistently used racist invective to describe their TPS decisions involving immigrants from non-white, non-European countries, including those involving the countries at issue here." *Id.* ¶ 4; *see id.* ¶ 190. Assuming the factual allegations raised by Plaintiffs as true and construing the pleadings in the light most favorable to them, Plaintiffs fail to state a plausible equal protection claim of race discrimination under the standard articulated in *Trump v. Hawaii*, 585 U.S. 667 (2018). And even if, for the sake of argument, *Arlington Heights* applies, race was not "a motivating factor in the decision to terminate" the TPS designation of any of the countries. *Doe*, 146 S. Ct. at 2138.

As an initial matter, the deferential standard set out in *Trump v. Hawaii* should apply. The Supreme Court has made it clear that where a decision is based on immigration policy, courts cannot look behind facially legitimate actions to hunt for illicit purposes. *See Hawaii*, 585 U.S. at 703–04; *id.* at 704 ("'Any rule of constitutional law that would inhibit the flexibility' of the President 'to respond to changing world conditions should be adopted only with the greatest caution,' and [the Court's] inquiry into matters of entry and national security is highly constrained."). Moreover, the Supreme Court "ha[s] long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control[.]" *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). Because decisions in these matters implicate "relations with foreign powers" and involve "classifications . . . defined in the light of changing political and economic circumstances," such judgments "are frequently

of a character more appropriate to either the Legislature or the Executive." *Mathews v. Diaz*, 426 U.S. 67, 81 (1976); *see also Galvan v. Press*, 347 U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are peculiarly concerned with the political conduct of government."). Decisions by the political branches about which classes of aliens to exclude or expel will generally be upheld against constitutional challenges so long as they satisfy deferential rational-basis review. *Hawaii*, 585 U.S. at 704–05; *see also Kleindienst v. Mandel*, 408 U.S. 753, 769–70 (1972) (stating judicial review of "[p]olicies pertaining to the entry of aliens and their right to remain here" is limited to whether the Executive gave a "facially legitimate and bona fide" reason for action); *Mathews*, 426 U.S. at 82 (finding a "narrow standard of review" applies to "decisions made by Congress or the President in the area of immigration and naturalization"); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with . . . the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are . . . largely immune from judicial inquiry or interference.").

The holdings in *Hawaii*, *Mandel*, and *Fiallo* support the application of rational basis review in this case. In addition to reviewing country conditions and consulting with appropriate government agencies, the former Secretary's determinations appropriately considered whether the foreign states were able to handle the return of their nationals. Such an official determination about a foreign country is replete with sensitive foreign policy considerations that affect the United States' "relations with foreign powers" and "which involve classifications defined in the light of changing political and economic circumstances," *Hawaii*, 585 U.S. at 702. As such, this is precisely the situation in which the Supreme Court has repeatedly applied rational-basis review. *See id.*; *see also Fiallo*, 430 U.S. at 799. And Plaintiffs cannot possibly succeed under that governing law. The Supreme Court recognized a rational basis for the former Secretary's TPS determinations: the "present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies" and the desire to "oppose TPS and favor tighter restrictions on immigration for economic or other reasons that have nothing to do with race." *Doe*, 146 S. Ct. at 2138–39.

*Doe* did not address whether constitutional claims are subject to judicial review, but it held a materially identical equal protection claim unlikely to succeed on the merits. Assuming the framework of *Arlington Heights*, the Supreme Court examined the same statements by the President and former Secretary on which Plaintiffs here rely and concluded that "[n]one of the cited statements . . . was overtly racial, and in substance all expressed policy views that could rest on race-neutral justifications." *Id.* at 2138. Indeed, Plaintiffs' own theory in this litigation—that the former Secretary made a "preordained decision" to end TPS—supplies a "strong, race-neutral explanation" for the terminations. *Id.* at 2139; Amd. Compl. ¶ 3. The Supreme Court further observed that the affected countries are a racially diverse group covering different continents. *Doe*, 146 S. Ct. at 2139. "Viewing all the relevant evidence," the Supreme Court held the plaintiffs "unlikely to prove that race was a motivating factor." *Id.* at 2140. The same conclusion follows here, where Plaintiffs press the same statements and the same "non-white nations" inference. Am. Compl. ¶ 188.

Furthermore, Plaintiffs fail to state an equal protection claim under the Fifth Amendment because the former Secretary's determinations were consistent with the TPS statute, including its emphasis on the temporariness of the protection afforded and its assignment of responsibility for determining whether, in the Secretary's informed judgment, the conditions for a designation under the statute continue to be met1 *See* 8 U.S.C. § 1254a(b)(3)(B). To warrant such heightened scrutiny, [p]roof of . . . discriminatory intent or purpose is required." *Arlington Heights*, 429 U.S. at 264–65. Thus, a neutral law that has a disproportionately adverse impact upon a particular class is only unconstitutional under the equal protection clause if "that impact can be traced to a discriminatory purpose." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979).

In *Doe*, the Supreme Court rejected that the argument that the relied-upon allegations give rise to an inference of prohibited discriminatory animus; rather the alleged statements "in substance all expressed policy views." 146 S. Ct. at 2138. The Supreme Court further reasoned that the "present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies" constitutes "a strong, race-neutral explanation of these officials' statements." *Id.* at 2138–39. Plaintiffs'

assertion that "Defendants' purported opposition to the TPS program is not race-neutral; their rejection of the program is based, in substantial part, on their animus towards immigrants from non-white, non-European countries and is thus a form of discrimination based on race, ethnicity and national origin," is insufficient to overcome the Supreme Court's ruling. Am. Compl. ¶ 188.

Plaintiffs' allegations are no more plausible than the allegations or evidence in *Doe*. Plaintiffs cannot show that the former Secretary's TPS determinations were "motivated, at least in part, by intentional discrimination based on race, ethnicity, or national origin," *Id.* ¶ 189, through statements taken out of context and without direct links to the former Secretary's determinations. *See DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 34–35 (2020) (explaining that disparate impact, unusual recission history, and pre- and post-election statements failed "to raise a plausible inference that the recission was motivated by animus"). Former Secretary Noem provided reasoned, facially sufficient explanations for her determinations. The former Secretary reviewed the current conditions in Honduras, Nepal, and Nicaragua to determine whether there continued to be a substantial disruption of living conditions that rendered the respective countries unable to handle the return of their nationals, in accordance with 8 U.S.C. § 1254a(b). The Federal Register Notices published for each country outlined positive improvements in the countries' conditions that informed the former Secretary's decision to terminate TPS for each country and explained why these countries were well able to now handle the return of their nationals. *Honduras Termination*, 90 Fed. Reg. 30,089, 30,091 (July 8, 2025); *Nepal Termination*, 90 Fed. Reg. 24,151, 24,152 (June 6, 2025); *Nicaragua Termination*, 90 Fed. Reg. 30,086 30,086 (July 8, 2025). Plaintiffs ignore these stated justifications, and instead cherry-pick external statements, social media posts, and media appearances from the former Secretary to infer an overarching, racially discriminatory motive with respect to TPS terminations as a whole. Am. Compl. ¶¶ 92–104.

Plaintiffs take former Secretary Noem's statements out of context and mischaracterize them as supposedly portraying "non-white, non-European immigrants" as "dirt bags." *Id.* ¶ 95. That is a gross mischaracterization of a snippet of her interview, since during the interview the former Secretary explained that she had been in New York City to help arrest a ringleader of Tren de Aragua and it was

these violent gang members—"dirtbags"—that the people wanted removed from their communities. *Id.* ¶ 95 n.37. Plaintiffs dubiously urge the Court to find that the former Secretary's "dirtbag" comment was meant to apply to all non-white, non-European immigrants, when she was clearly directing her comment to members of Tren de Aragua specifically—a group that the President has designated as a foreign terrorist organization. *See Designating Cartels and Other Foreign Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists*, Exec. Order No. 14157, 90 Fed. Reg. 8,439 (Jan. 29, 2025); *see also Foreign Terrorist Organization Designations*, 90 Fed. Reg. 10,030 (Feb. 20, 2025) (State Department designation).

Unable to point to any comments by former Secretary Noem specifically discussing Honduras, Nepal, or Nicaragua, Plaintiffs turn to similarly generalized, unrelated, and misconstrued statements by the President and "Trump Surrogates", none of which mention Honduras, Nepal, or Nicaragua. Am. Compl. ¶¶ 105–47. Plaintiffs appear to rely upon a "cat's paw theory" where the discriminatory motive of one governmental actor may be coupled with the act of another to impose liability on the government. *See Ramos v. Wolf*, 975 F.3d 872, 897 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F. 4th 1010 (9th Cir. 2023). But even if such theory could somehow be viable here, Plaintiffs fail to show how such statements or prior conduct can be connected or extended to the determinations at issue here. President Trump's prior statements are insufficient to demonstrate animus by him let alone former Secretary Noem. *See, e.g.*, *Staub v. Proctor Hosp.*, 562 U.S. 411, 418 (2011); *Ramos*, 975 F.3d at 897 ("We doubt that the 'cat's paw' doctrine of employer liability in discrimination cases can be transposed to th[e] particular context" of TPS terminations). A cat's-paw approach would invite judicial second guessing of an agency official's actions based on mere allegations that a different government official harbored some discriminatory motive. That would open the door to impermissible intrusion on privileged Executive Branch deliberations, *see United States v. Nixon*, 418 U.S. 683, 708 (1974), and potential litigant-driven discovery that would disrupt the President's execution of the laws, *see Nixon v. Fitzgerald*, 457 U.S. 731, 749–50 (1982).

Plaintiffs' theory that the President and former Secretary harbor wide-reaching animus against non-white, non-European immigrants, based on selective quotes stretching into the past, does not square with reality, including past actions by the President. For example, during the first Trump Administration, the Secretary extended TPS designations for four other "non-white, non- European" countries, finding that the statutory criteria continued to be satisfied. *Ramos*, 975 F.3d at 898. Also, during the first administration, the President deferred removal of certain Venezuelans. *See Deferred Enforced Departure for Certain Venezuelans*, 86 Fed. Reg. 6,845, 6,845 (Jan. 19, 2021). Each of those actions cannot be squared with Plaintiffs' contention that the President has consistently harbored discriminatory animus, and that former Secretary Noem must therefore share it.

Moreover, most of the statements—similar to those challenged and rejected in *Hawaii*—were "remote in time and made in unrelated contexts" and therefore "do not qualify as 'contemporary statements' probative of the decision at issue." *Regents of the Univ. of Cal.*, 591 U.S. at 35 (opinion of Roberts, C.J.) (quoting *Arlington Heights*, 429 U.S. at 268); *Hawaii*, 585 U.S. at 35 ("The Executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving "sensitive and weighty interests of national security and foreign affairs.").

Put simply, none of the evidence alleged in the operative complaint is sufficient to state a claim that the former Secretary's TPS determinations were motivated by racial animus and certainly not after the Supreme Court's ruling in *Doe*. Plaintiffs' additional allegation to their equal protection claim after *Doe* that "Defendants' purported opposition to the TPS program is not race-neutral," is merely conclusory and still fails to meet the burden to state a plausible claim as it relies on unwarranted deductions of facts. Am. Compl. ¶ 188; *see also In re Gilead Scis. Secs. Litig.*, 536 F.3d at 1055 (stating courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

Plaintiffs fail to bring forth sufficient facts to succeed on their equal protection claim. *Godecke*, 937 F.3d at 1208. As the Supreme Court has concluded, the Administration's opposition to how the TPS statute was being interpreted and implemented especially with respect to long-standing designations, *see*

*Doe*, 146 S. Ct. at 2130 (observing that "[a]lthough designed to afford 'temporary' relief, TPS designations in practice have often lasted for decades," citing, e.g., Nicaragua and Honduras), constitutes a strong, race-neutral explanation which prevents Plaintiffs from succeeding on their equal protection claim. Accordingly, Plaintiffs have failed to plausibly allege an equal protection violation, and Defendants are therefore entitled to judgment as a matter of law.

**CONCLUSION**

For the foregoing reasons, this Court should grant Defendants' motion for judgment on the pleadings.

Dated: October 2, 2026

Respectfully Submitted,

BRETT SHUMATE
Assistant Attorney General

CATHERINE M. RENO
Assistant Director

RUTH ANN MUELLER
Senior Litigation Counsel

DANIEL CAPPELLETTI
MIA S. BONADIES
Trial Attorneys

*/s/ Alina Salgado*
ALINA SALGADO
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-5110
Alina.N.Salgado@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, *et al.*,<br>Plaintiff,<br>v.<br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,<br>Defendants. | Case No. 3:25-cv-05687<br><br>[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |

Before the Court is Defendants' Motion for Judgment on the Pleadings. ECF _____. Having reviewed the motion and considered the arguments counsel, IT IS HEREBY ORDERED that Defendants' Motion to Amend Pleadings is GRANTED.

Issued this _____ day of ______, 2026.

___________________________
Trina L. Thompson
United States District Court Judge