Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
Vanessa Young (SBN 352693)
youngviniegra@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 3219uced39)
mcho@aclunc.org
Emily Zhu (SBN 366697)
ezhu@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, SANDHYA LAMA, TEOFILO MARTINEZ,<br>Plaintiffs,<br>vs.<br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br>Defendants. | Case No. 3:25-cv-05687-TLT-SK<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO REOPEN DISCOVERY PURSUANT TO FED. R. CIV. P. 16(b)(4)**<br><br>Assigned to: Hon. Trina L. Thompson<br><br>Date: January 12, 2027<br>Time: 2:00 p.m.<br>Place: Courtroom 9 |

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 1

I. PLAINTIFFS HAVE ESTABLISHED GOOD CAUSE TO REOPEN DISCOVERY. .......... 1

A. Plaintiffs Acted Diligently During the Prior Discovery Period. .................................. 2

B. Additional Discovery Is Warranted in the Wake of *Dahlia Doe*. ................................ 3

C. Plaintiffs Moved Diligently in Reopening Discovery. ................................................ 5

II. THE DISCOVERY SOUGHT IS LIKELY TO LEAD TO RELEVANT EVIDENCE. ......... 5

III. THE DISCOVERY SOUGHT IS LIMITED AND NOT UNDULY PREJUDICIAL TO DEFENDANTS. ................................................................................................ 8

CONCLUSION ........................................................................................................... 9

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Afr. Cmtys. Together v. Mullin*,
No. 1:26-cv-10278-BEM, Dkt. 109 (D. Mass. Sep. 3, 2026) ....................2

*Afr. Cmtys. Together v. Mullin*,
No. 26-cv-11201-ADB, 2026 WL 2364398 (D. Mass. Aug. 14, 2026) ....................4

*CASA v. Mullin*,
No. 25-cv-1484, Order (D. Md. Oct. 2, 2026) ....................2

*City of Pomona v. SQM N. Am. Corp.*,
866 F.3d 1060 (9th Cir. 2017) ....................4, 5, 9

*Doe v. Noem*,
No. 26-cv-2103 (DEH), 2026 WL 2085662 (S.D.N.Y. July 20, 2026) ....................4

*Miot v. Trump*,
No. 1:25-cv-2471, Min. Order (D.D.C. Sep. 25, 2026) ....................2

*Mullin v. Doe*,
609 U.S. 324 (2026) .................... *passim*

*NTPSA v. Noem*,
No. 25-cv-1766-EMC, Dkt. 444 (N.D. Cal. July 28, 2026) ....................2

*In re PG&E Corp. Sec. Litig.*,
100 F.4th 1076 (9th Cir. 2024) ....................9

*Schagene v. Spencer*,
No. 13cv333-WQH (RBB), 2018 WL 1210682 (S.D. Cal., Mar. 8, 2018) ....................8, 9

*Singleton v. Hedgepath*,
No. 1:08–cv–00095–AWI–GSA–PC, 2015 WL 1893982 (E.D. Cal. Apr. 24, 2015) ....................5, 9

*Tasty One, LLC v. Earth Smarte Water, LLC*,
No. 2:20-cv-01625-APG-NJK, 2023 WL 362666 (D. Nev. Jan. 20, 2023) ....................8

*Thomas v. Cassia Cnty.*,
No. 4:17-cv-00256-DCN, 2019 WL 5270200 (D. Idaho Oct. 17, 2019) ....................4

## INTRODUCTION

Good cause exists for reopening discovery. Plaintiffs demonstrated diligence during the initial, five-week discovery period, obtaining sufficient evidence about Defendants' decisions to terminate TPS for Honduras, Nicaragua, and Nepal to prevail under then-existing law. Now, in the wake of the Supreme Court's decision in *Mullin v. Doe*, 609 U.S. 324 (2026) ("*Dahlia Doe*"), Defendants contend this Court should enter judgment in their favor because the Honduras, Nicaragua, and Nepal TPS decisions were each rooted in an *earlier,* supposedly race-neutral decision to terminate TPS wholesale. But there has been *no discovery* into that earlier decision, despite its clear relevance. On the other side of the ledger, reopening discovery would not delay proceedings. Trial is not imminent or even scheduled. Nor have Defendants identified any harm they would suffer from reopening discovery beyond having to continue to litigate this case, which does not constitute prejudice. Accordingly, all the relevant factors support reopening discovery.

Defendants fail to show otherwise. They argue primarily that nothing has changed. They would have this Court find that the intervening Supreme Court decision altered nothing about their position. Not so. While it is true that Plaintiffs have always alleged the challenged terminations were predetermined in violation of the APA, in the past, Defendants strongly disputed that claim. Further, the *motivation* behind the predetermination was not relevant to Plaintiffs' APA claim. And while Plaintiffs sought evidence of motivation in support of their equal protection claim, they reasonably focused their prior discovery requests primarily on the Honduras, Nicaragua, and Nepal termination decisions themselves. Plaintiffs should be granted the opportunity to seek limited discovery into the now-key, earlier decision in which the administration formulated its TPS policy generally to show that decision was motivated, at least in part, by racism.

## ARGUMENT

### I. PLAINTIFFS HAVE ESTABLISHED GOOD CAUSE TO REOPEN DISCOVERY.

The parties agree on the factors to be considered in evaluating good cause to reopen discovery. Mot. at 9; Opp. at 7. Their primary dispute is whether Plaintiffs' need for additional discovery reflects a lack of diligence by Plaintiffs during the discovery period. It does not.

### A. Plaintiffs Acted Diligently During the Prior Discovery Period.

Defendants cannot dispute that Plaintiffs vigorously pursued discovery during the discovery period. *See* Mot. at 2–6 (describing Plaintiffs' efforts during that period). Instead, Defendants suggest Plaintiffs are responsible for the short duration of the discovery period because Plaintiffs sought expedited production to permit prompt adjudication of partial summary judgment in light of their ongoing irreparable harms. Opp. at 7–8, 19. But seeking expedited production is not the same as requesting an early close to discovery. Contrary to Defendants' assertions, Plaintiffs never sought the latter. Opp. at 7. And five weeks is an extraordinarily short time for discovery in a case impacting the constitutional rights of 60,000 people. Indeed, discovery is ongoing in other litigation challenging Defendants' TPS terminations. *See, e.g.*, *NTPSA v. Noem*, No. 25-cv-1766-EMC, Dkt. 444 (N.D. Cal. July 28, 2026) ("NTPSA I") ("discovery at this point shall proceed only as to Plaintiffs' remaining constitutional claims"); *CASA v. Mullin*, No. 25-cv-1484, Order (D. Md. Oct. 2, 2026) (permitting discovery through March 12, 2027); *Afr. Cmtys. Together v. Mullin*, No. 1:26-cv-10278-BEM, Dkt. 109 (D. Mass. Sep. 3, 2026) (adopting parties' joint proposed discovery schedule that allows Plaintiffs to serve requests for production); *Miot v. Trump*, No. 1:25-cv-2471, Min. Order (D.D.C. Sep. 25, 2026) (noting ongoing discovery).

Defendants nonetheless assert Plaintiffs were not diligent because they failed to obtain the specific discovery they seek now during the discovery period. But, during the discovery period, Defendants broadly objected on relevance grounds to *any* requests that were not directly "connected to Honduras, Nicaragua, and Nepal." Dkt. 107 at 7. Defendants also vehemently denied any overarching policy to end TPS wholesale, and asserted that all evidence relevant to the case could be "found in the communications" concerning "the TPS terminations for Honduras, Nicaragua, or Nepal." *See* Dkt. 105 at 7 (Defendants' Position in Joint Discovery Letter Brief) ("If there were any pre-ordained termination policy (which Defendants deny) . . ."). At the time, the Magistrate Judge agreed, finding that discovery into "Defendants' pattern of terminations" was "not proportional to the needs of the case." Dkt. 113 at 2. Defendants cannot simultaneously argue that the discovery Plaintiffs now seek was irrelevant during the discovery period and that Plaintiffs showed lack of diligence by failing to obtain it. Nor does the fact that the parties "engaged in protracted discovery-

related motions practice," Opp. at 2—necessitated by Defendants' repeated refusal to produce court-ordered productions, Mot. at 2–6—show lack of diligence by Plaintiffs. Quite the contrary.

### B. Additional Discovery Is Warranted in the Wake of *Dahlia Doe*.

Prior to *Dahlia Doe*, Defendants vigorously disputed Plaintiffs' claim that the terminations of TPS for Honduras, Nicaragua, and Nepal were the result of a preordained decision to terminate TPS designations across the board. *See, e.g.*, Defs.' Opp. to Mot. for Partial S.J., Dkt. 166 at 6–10 (argument section in Defendants' brief titled "The Terminations Were Not Predetermined"). Now, Defendants not only agree that there was a preordained decision to terminate TPS, but also claim that preordained decision warrants judgment in their favor, because it provides a race-neutral explanation for the challenged terminations. *See, e.g.*, Defs.' Mot. for Judgment, Dkt. 249 at 9 (arguing that the Secretary's preordained decision "supplies a 'strong, race-neutral explanation' for the terminations") (quoting *Dahlia Doe*, 609 U.S. at 329). This is a material change, and Defendants' attempt to argue otherwise is unavailing.

Moreover, Defendants' change in position makes the motivation behind Defendants' preordained decision to terminate TPS *the* key issue in this case. That is also a change. Plaintiffs' predetermination argument went primarily towards their APA claim. As this Court held, the TPS statute requires that termination decisions be based on consultation and country conditions review, so decisions that are instead based on antipathy towards the TPS program violate the statute. Dkt. 197 at 39–43. The motivation behind the antipathy was irrelevant for Plaintiffs' APA claim.

True, motivation has always been relevant for Plaintiffs' equal protection claim. But, for several reasons, it was nonetheless reasonable for Plaintiffs to focus their prior discovery on the country-specific termination decisions challenged here. First, Defendants previously asserted that each termination decision was based on a country-specific analysis. *See, e.g.,* Defs.' Mot. for S.J., Dkt. 142 at 20 ("Secretary Noem . . . considered the conditions in the countries at the time the TPS decisions were made after consulting with the relevant government agencies. This process led to Secretary Noem's well-explained and thorough decision that these countries at issue no longer qualified for TPS."). Second, Defendants successfully argued that discovery that did not pertain specifically to Honduras, Nicaragua, or Nepal was not relevant. Dkt. 107 at 7. Third, the Magistrate

Judge found discovery into TPS policy was not proportionate to the needs of this case at that time. Dkt. 113 at 2. Fourth, given the extremely limited time period for discovery, Plaintiffs reasonably needed to prioritize among discovery requests based on then-existing law and arguments. And, finally, Plaintiffs reasonably believed that Defendants' public statements alone already provided powerful evidence of racism. *See* Dkt. 73 at 27–29 (finding likely success on racism claim based on public statements).

*Dahlia Doe* and Defendants' resulting change in position have altered that calculus. Defendants' position has changed, increasing the importance of discovery into the motivation behind the preordained decision to end TPS, and the Supreme Court has held Defendants' public statements alone insufficient to show at a preliminary stage in litigation that the terminations were likely motivated by racism. *See, e.g.*, *Afr. Cmtys. Together v. Mullin*, No. 26-cv-11201-ADB, 2026 WL 2364398, at *9 (D. Mass. Aug. 14, 2026) ("Despite the undisguised racial animus reflected in these statements, the majority of the Supreme Court somehow concluded . . . the plaintiffs were 'unlikely to prove that race was a motivating factor in the decision to terminate Haiti's TPS designation'") (quoting *Dahlia Doe*, 146 S. Ct. at 2139); *Doe v. Noem,* No. 26-cv-2103 (DEH), 2026 WL 2085662, at *2 (S.D.N.Y. July 20, 2026) ("If this Court were to consider, as a matter of first impression, whether the termination of TPS for Yemen were based on some form of discriminatory animus, it might very well come to the same conclusion that Justice Kagan reached in dissent with respect to the termination of TPS for Haiti.").

An intervening change can justify discovery directed to a newly consequential issue. "In many cases, an intervening change in the law would constitute good cause to reopen discovery." *Thomas v. Cassia Cnty.*, No. 4:17-cv-00256-DCN, 2019 WL 5270200, at *11 (D. Idaho Oct. 17, 2019) (reopening discovery based on change in law). So here, changes triggered by *Dahlia Doe* establish good cause to permit Plaintiffs to seek limited additional discovery critical for responding to Defendants' current position on their equal protection claim. *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066–67 (9th Cir. 2017) (finding abuse of discretion where the district court denied leave to amend the scheduling order to permit the plaintiff to provide "material" evidence which "would be a key factor at trial").

### C. Plaintiffs Moved Diligently in Reopening Discovery.

Defendants fault Plaintiffs for not filing their motion to reopen discovery immediately after the *Dahlia Doe* decision. Opp. at 13. Yet diligence does not require immediate action, particularly when Defendants suffered no prejudice. *Singleton v. Hedgepath*, No. 1:08–cv–00095–AWI–GSA–PC, 2015 WL 1893982, at *4–5 (E.D. Cal. Apr. 24, 2015) (holding that the plaintiff acted diligently despite waiting for seven months to file motion to reopen discovery); *Pomona*, 866 F.3d at 1067 (finding diligence where the movant acted promptly after the case returned to the district court).

Defendants also criticize Plaintiffs for seeking to reopen discovery "more than a year after the close of discovery," Opp. at 1, but the case had been stayed for much of that time. Dkt. 215. Plaintiffs acted diligently in notifying the Court of the possibility of seeking to reopen discovery even before the stay was lifted, Dkt. 221 at 14–15 & Mot. at 7, and moving to reopen discovery two months later on the schedule ordered by the Court. Dkts. 244, 246. Compliance with the Court's schedule refutes the assertion that Plaintiffs offer "no explanation" for the timing of their motion, Opp. at 13, which is prompt by any measure.

## II. THE DISCOVERY SOUGHT IS LIKELY TO LEAD TO RELEVANT EVIDENCE.

The evidence Plaintiffs would seek if the Court grants their motion is of a different nature than the evidence Defendants previously produced. Defendants' prior productions were limited to evidence concerning the three countries at issue ("Honduras," "Nicaragua," or "Nepal" were required search terms) and all information post-dated January 20, 2025, the earliest search date. Dkt. 105 at 2. Put simply, there is no way that the search terms and date ranges applied during the discovery period would produce records related to the motivation underlying Defendants' pre-January 20, 2025 decision to end the TPS program as a whole.

Defendants mistake the scope of the challenged actions for the scope of relevant evidence. Opp. at 10. Their position is also internally incoherent. They insist that TPS decision-making beyond the three terminations is irrelevant, while relying on the administration's broader TPS position to explain those same terminations. Opp. at 10–14. But the evidence Plaintiffs now seek goes directly to Defendants' new and central argument that the challenged terminations cannot have violated equal protection because they were grounded in an earlier, race-neutral decision to end TPS wholesale.

Evidence regarding the motivation behind that earlier decision—not tied to any particular country, but to the TPS program as a whole—was not previously the subject of discovery. A directive concerning the overall TPS policy could govern all three reviews without naming any single country. Dkt. 105 at 2. For example, communication from the presidential transition period explaining the administration's intended treatment of TPS writ large, or an instruction to pursue terminations generally, need not contain any of those three country names. And, while Plaintiffs provide new sworn testimony that supports their claim that Defendants were focused on ending TPS across the board before President Trump even took office, communications predating January 20, 2025, were outside the agreed search period altogether. Dkt. 247-1 ¶¶ 8–11 (Declaration of Amany Ezeldin, or "Ezeldin Dec.").

Because the decision process behind terminating TPS entirely was largely not documented in writing, Ezeldin Dec. ¶¶ 8–11, 23–24, limited depositions are also necessary to ascertain whether this administration's antipathy towards TPS was racially motivated. The process relied upon by the agency in conducting periodic reviews for individual countries depended on the exchange of country conditions analyses and decision memoranda, but the decision to target the TPS *program* for termination includes no such writings. Rather, there were central decisionmakers who served on the presidential transition team, and then migrated to DHS and USCIS, who are uniquely able to explain the motivations behind this now-critical decision. *Id.* ¶¶ 8–11.

Permitting such discovery would likely lead to relevant evidence. As just one example, Amany Ezeldin, a former government official involved in TPS decision-making, has testified that an "emotionally charged" meeting with an atypical "nature and tone" took place in late 2024 or early 2025 to brief the administration's transition team about TPS. Ezeldin Dec. ¶¶ 8–11. At least two participants in that meeting had served as USCIS political appointees and subsequently assumed DHS leadership roles. *Id.* ¶¶ 8, 11. Reopening discovery would allow Plaintiffs to ascertain who attended that meeting, why it was so unusual, and what Defendants' underlying motivations were in focusing on TPS at that stage, well before any TPS periodic review: questions clearly relevant to the motivation behind the administration's early decision to end TPS across the board. The testimony of these individuals would permit examination of what they said, the reasons they gave for the broader policy shift, and the instructions they subsequently issued. Reopening discovery would also allow

Plaintiffs to access documents prepared for the presidential transition team, and the presidential transition team's response to those documents. *Id.* ¶ 8. Limited depositions of career staff who implemented the TPS policy would also lead to relevant evidence about the instructions they received, and how they acted on the basis of these instructions, which is necessary to respond to Defendants' claim that the underlying motivation to end TPS was race-neutral.

Ms. Ezeldin also testifies that agency personnel received policy instructions "orally and in writing," and that information was tightly controlled and career professionals were admonished to "keep information on 'close hold,'" which had not previously been standard practice. *Id.* ¶¶ 15, 23. Defendants dispute the inference that "tightly controlled" communications were necessarily oral. Opp. at 15–16. But Plaintiffs do not rely on an inference: Ms. Ezeldin expressly describes oral instructions, personally attended the (oral) transition briefing, recounts that there were phone calls and meetings focused on TPS decision-making for which no notes were ever produced, and relates admonitions at the start of these meetings and calls to limit further communications. Ezeldin Dec. ¶¶ 8–10, 15, 23. Memoranda record the termination recommendation and the purported country conditions analysis conducted, but they do not disclose earlier instructions that dictated or informed the recommendation. Limited depositions of agency officials would examine specific recommendations, including the source, content, reasoning, and application of the instructions given regarding how to respond to TPS designations across the board.

Defendants assert that the information in the Ezeldin Declaration was "*already* produced." Opp. at 15–16. Not so. Ms. Ezeldin recounts a previously undisclosed presidential transition team meeting, which was "emotionally charged" and focused on TPS, well before any country was up for review. Ezeldin Dec. ¶¶ 8–11. She also describes "explicit[] direct[ion]" to justify terminations "regardless of current country conditions or objective factors that, until then, would have been considered before making a recommendation." *Id.* ¶ 13. Further, she details how, as a career professional, she felt she was being asked to provide "dishonest" accounts of country conditions, and to remove statements of fact, "solely to justify a termination." *Id.* ¶¶ 16, 18. None of this was previously disclosed in discovery. And such testimony could only come from the direct accounts of those who either gave or received such instructions, or participated in such conversations. This new

evidence lends support to Plaintiffs' motion and further identifies the highly relevant evidence Plaintiffs seek which could only be ascertained through deposition.

Finally, Defendants' cumulative-evidence objection is meritless. They cite previously produced emails concerning criminal-history statistics, headquarters-level consultation with the State Department, "close hold" notations, and edits to country memoranda. Opp. at 15–16. These records show patterns and practices related to particular decisions for particular countries. Evidence about the decision-making behind the administration's overall TPS policy remains undiscovered.

## III. THE DISCOVERY SOUGHT IS LIMITED AND NOT UNDULY PREJUDICIAL TO DEFENDANTS.

Contrary to Defendants' assertions, Opp. at 18, the evidence Plaintiffs seek is limited in scope and necessary to respond to Defendants' assertion in the wake of *Dahlia Doe* that the early decision to terminate TPS wholesale provides a race-neutral explanation for the subsequent terminations. Defendants' contention that Plaintiffs may seek to depose high-level officials, Opp. at 18, is unsupported by the record and would not support Defendants' position in any event. Granting Plaintiffs' motion does not give Plaintiffs free rein to engage in a "fishing expedition." *See* Opp. at 2. The Court maintains its authority to address any witness-specific objection on an actual record, permit some requests but not others, and restrict discovery if it becomes disproportionate or improper. *Schagene v. Spencer*, No. 13cv333-WQH (RBB), 2018 WL 1210682, at *5–6 (S.D. Cal. Mar. 8, 2018) (reopening discovery for specific issues and timeframe).

Allowing additional limited discovery for the equal protection claim does not prejudice Defendants. Indeed, discovery remains open in other TPS cases challenging Defendants' TPS terminations. *See supra* 2. Plaintiffs seek discovery for the remaining equal protection claim, not revival of their APA claims or any new claims. Reopening discovery would not require Defendants to relitigate an adjudicated claim or disrupt preparation for an imminent trial. Under these circumstances, courts have typically not found undue prejudice. *See Tasty One*, *LLC v. Earth Smarte Water, LLC*, No. 2:20-cv-01625-APG-NJK, 2023 WL 362666, at *2 (D. Nev. Jan. 20, 2023) (rejecting argument that reopening discovery would restart the litigation where the party sought discovery "to prepare for matters yet to be adjudicated and not to relitigate issues already

adjudicated”). The Court may set a time-limited discovery period to be coordinated with the remaining proceedings.

Further, even if Defendants *would* experience some burden, that does not justify the denial of Plaintiffs’ motion. Courts often grant motions to reopen discovery or modify a scheduling order even where doing so will require the expenditure of resources by the nonmoving party. *See, e.g., In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1087 (9th Cir. 2024) (“‘[b]eing required to defend a suit, without more, does not constitute [prejudice]’”); *Schagene*, 2018 WL 1210682, at *5 (S.D. Cal. Mar. 8, 2018) (reopening discovery despite some prejudice to the nonmoving party because the requested information was needed to assess the opposing party’s claims); *Singleton*, 2015 WL 1893982, at *5 (granting motion to reopen discovery despite “some prejudice” to Defendants because “the court must allow Plaintiff the discovery he is entitled to under the Federal Rules, even if Defendants are required to expend time and resources to participate”).

On the other hand, Plaintiffs would be prejudiced by the denial of this motion. Defendants uniquely have access to information concerning the motivation underlying the antecedent decision to terminate TPS writ large. Without further discovery, Defendants would be at an advantage in claiming that this motivation was race-neutral, because only Defendants would have access to internal evidence relevant to that decision. The Court would also be deprived of a complete record as Plaintiffs would be forced to defend their claim in the face of Defendants’ new position based on discovery limited to country-specific written materials. Such materials are insufficient because they excluded earlier and unwritten communications. This disparity, the importance of the evidence to respond to the asserted defense, and the importance of the Court resolving this claim on a complete record favor permitting the targeted discovery Plaintiffs seek, which would permit Plaintiffs to meaningfully respond to Defendants’ new theory and permit the Court to assess it on a more adequate record. *Pomona*, 866 F.3d at 1066–67.

## CONCLUSION

For the reasons stated above, this Court should grant Plaintiffs’ motion to amend the scheduling order and reopen limited discovery.

Dated: October 8, 2026

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

/s/ *Emilou MacLean*
Emilou MacLean
Michelle (Minju) Y. Cho
Emily Zhu

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER
ORGANIZING NETWORK

Ahilan T. Arulanantham
Vanessa Young
CENTER FOR IMMIGRATION LAW AND
POLICY, UCLA SCHOOL OF LAW

Mohammad K. Tajsar
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean