Ahilan T. Arulanantham (SBN 237841)
arulanantham@law.ucla.edu
Vanessa Young (SBN 352693)
youngviniegra@law.ucla.edu
CENTER FOR IMMIGRATION LAW AND POLICY, UCLA SCHOOL OF LAW
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Telephone: (310) 825-1029

Emilou MacLean (SBN 319071)
emaclean@aclunc.org
Michelle (Minju) Y. Cho (SBN 321939)
mcho@aclunc.org
Emily Zhu (SBN 366697)
ezhu@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111-4805
Telephone: (415) 621-2493
Facsimile: (415) 863-7832

Attorneys for Plaintiffs
*[Additional Counsel Listed on Next Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| NATIONAL TPS ALLIANCE, DENIS MOLINA, JHONY SILVA, MARIA ELENA HERNANDEZ, SANDHYA LAMA, TEOFILO MARTINEZ,<br><br>Plaintiffs,<br><br>vs.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 3:25-cv-05687-TLT-SK<br><br>**PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Assigned to: Hon. Trina L. Thompson<br><br>Date: January 12, 2027<br>Time: 2:00 p.m.<br>Place: Courtroom 9 |

Additional Counsel for Plaintiffs

Jessica Karp Bansal (SBN 277347)
jessica@ndlon.org
Lauren Michel Wilfong (*Pro Hac Vice*)
lwilfong@ndlon.org
NATIONAL DAY LABORER ORGANIZING NETWORK
1030 S. Arroyo Parkway, Suite 106
Pasadena, CA 91105
Telephone: (626) 214-5689

Mohammad K. Tajsar (SBN 280512)
MTajsar@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-5236

Erik Crew (*Pro Hac Vice*)
ecrew@haitianbridge.org
HAITIAN BRIDGE ALLIANCE
4560 Alvarado Canyon Road, Suite 1H
San Diego, CA 92120
Telephone: (949) 603-7411

# TABLE OF CONTENTS

**Page No.**


INTRODUCTION ........ 1

STANDARD OF REVIEW ........ 2

ARGUMENT ........ 2

I. This Court Has Authority to Review Plaintiffs' Constitutional Claim. ........ 2

II. Plaintiffs Have Stated a Claim on the Merits ........ 4

A. *Arlington Heights* Applies to Plaintiffs' Equal Protection Claim ........ 5

B. Plaintiffs State a Plausible Equal Protection Claim Under Either *Arlington Heights* or *Hawaii* ........ 7

1. *Dahlia Doe* Does Not Foreclose Plaintiffs' Equal Protection Claim ........ 7

2. Defendants' Recycled Arguments Remain Meritless ........ 8

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afr. Cmtys. Together v. Mullin*,
No. 26-cv-10278-BEM, 2026 WL 2408737 (D. Mass. Aug. 18, 2026) ........................1, 2, 5, 7

*Afr. Cmtys. Together v. Mullin*,
No. 26-CV-11201-ADB, 2026 WL 2364398 (D. Mass. Aug. 14, 2026).......................5, 11, 12

*Arce v. Douglas*,
793 F.3d 968 (9th Cir. 2015) ........................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................2

*Aung Doe v. Noem*,
No. 25-cv-15483, 2026 WL 2279577 (N.D. Ill. Aug. 7, 2026) ..................................... *passim*

*Ave. 6E Invs., LLC v. City of Yuma*,
818 F.3d 493 (9th Cir. 2016) ..................................................................................9, 11

*Batalla Vidal v. Nielsen*,
291 F. Supp. 3d 260 (E.D.N.Y. 2018) ..........................................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................2

*Brown v. Brita Prods. Co.*,
172 F.4th 1113 (9th Cir. 2026) ........................................................................................9

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ........................................................................................2

*Califano v. Sanders*,
430 U.S. 99 (1977)..........................................................................................................3

*CASA de Md. v. Trump*,
355 F. Supp. 3d 307 (D. Md. 2018)................................................................................2

*CASA, Inc. v. Noem*,
792 F. Supp. 3d 576 (D. Md. 2025)................................................................................3

*CASA, Inc. v. Noem*,
No. 25-1484-TDC, 2025 WL 3514378 (D. Md. Dec. 8, 2025) ............................................5

*Centro Presente v. Dep't of Homeland Sec.*,
332 F. Supp. 3d 393 (D. Mass. 2018) .......................................................................5, 11

*Credit Suisse v. U.S. Dist. Ct.*,
130 F.3d 1342 (9th Cir. 1997) ........................................ 1

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ........................................ 4, 6, 11

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ........................................ 13

*Doe v. Vill. of Mamaroneck*,
462 F. Supp. 2d 520 (S.D.N.Y. 2006) ........................................ 10

*Fiallo v. Bell*,
430 U.S. 787 (1977) ........................................ 6

*Gebhardt v. Nielsen*,
879 F.3d 980 (9th Cir. 2018) ........................................ 1, 3

*Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Par.*,
641 F. Supp. 2d 563 (E.D. La. 2009) ........................................ 9

*GW Grundbesitz AG v. Gunn*,
No. 2:21-CV-02074-CDS-NJK, 2025 WL 1755299 (D. Nev. June 25, 2025) ........................................ 2

*Haitian Evangelical Clergy Ass'n v. Trump*,
789 F. Supp. 3d 255 (E.D.N.Y. 2025) ........................................ 3

*Harisiades v. Shaughnessy*,
342 U.S. 580 (1952) ........................................ 6, 7

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
403 F.3d 683 (9th Cir. 2005) ........................................ 5

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ........................................ 4

*Kleindienst v. Mandel*,
408 U.S. 753 (1972) ........................................ 6

*Mathews v. Diaz*,
426 U.S. 67 (1976) ........................................ 6

*Miot v. Trump*,
818 F. Supp. 3d 126 (D.D.C.) ........................................ 4

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ........................................ 2

*Mullin v. Doe*,
609 U.S. 324 (2026) ........................................ *passim*

*NAACP v. DHS*,
364 F. Supp. 3d 568 (D. Md. 2019) ..........5

*Nat'l TPS All. v. Noem*,
773 F. Supp. 3d 807 (N.D. Cal.) ..........9, 13

*Nat'l TPS All. v. Noem*,
819 F. Supp. 3d 1049 (N.D. Cal. 2025) ..........5

*Noor Doe v. Mullin*,
No. 26-cv-2103-DEH, 2026 WL 3003682 (S.D.N.Y. Oct. 6, 2026) ..........1, 2, 5, 7

*Pierce v. E. Bay Mun. Util. Dist.*,
No. 24-1260, 2026 WL 2445810 (9th Cir. Aug. 20, 2026) ..........12

*Ramos v. Nielsen*,
321 F. Supp. 3d 1083 (N.D. Cal. 2018) ..........2, 4, 9

*Ramos v. Wolf*,
975 F.3d 872 (9th Cir. 2020) ..........2, 5, 6

*Saget v. Trump*,
345 F. Supp. 3d 287 (E.D.N.Y. 2018) ..........3, 5

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ..........7

*Staub v. Proctor Hosp.*,
562 U.S. 411 (2011) ..........11, 12

*Trump v. Hawaii*,
585 U.S. 667 (2018) ..........6, 12

*Unite Here Loc. 30 v. Sycuan Band of the Kumeyaay Nation*,
35 F.4th 695 (9th Cir. 2022) ..........2

*United States v. Suquilanda*,
116 F.4th 129 (2d Cir. 2024) ..........6

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ..........7, 8, 11

*Washington v. DHS*,
598 F. Supp. 3d 1051 (E.D. Wash. 2020) ..........6

*Webster v. Doe*,
486 U.S. 592 (1988) ..........3, 4

**Statutes**

8 U.S.C. § 1252(b)(9) ....................................................................................................4

8 U.S.C. § 1326....................................................................................................6

28 U.S.C. § 1291....................................................................................................1

**Other Authorities**

82 Fed. Reg. 44,205, 44,205 (Sep. 21, 2017) ....................................................................11

90 Fed. Reg. 24151, 24152 n.10....................................................................................12

Fed. R. Civ. P. 41(b) ....................................................................................................5

Ginger Gibson, *Trump Says Immigrants Are 'Poisoning the Blood of Our Country.' Biden Campaign Likens Comments to Hitler*, NBC NEWS (Dec. 17, 2023)...........................10

**INTRODUCTION**

This Court already decided, repeatedly, the central questions which Defendants ask this Court to revisit. There is no basis for their seeking yet another bite at the apple. The Supreme Court's decision in *Mullin v. Doe*, 609 U.S. 324 (2026) ("*Dahlia Doe*"), does not upset this Court's prior rulings recognizing this Court's jurisdiction over Plaintiffs' constitutional claim. *See* Dkt. 73 at 15–20 (granting postponement); Dkt. 134 at 10–11 (granting class certification); Dkt. 197 at 12–16 (denying motions to dismiss and for summary judgment).[1] Nor does *Dahlia Doe* alter controlling Ninth Circuit precedent affirming jurisdiction here. *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018). The Supreme Court in *Dahlia Doe* in fact presumed that courts maintain jurisdiction to review constitutional challenges to TPS terminations notwithstanding the TPS statute's jurisdiction-limiting provision. Defendants' reliance on the concurrence of a single Justice affirms that their position was not adopted by the *Dahlia Doe* majority. Nothing in *Dahlia Doe* compels this Court to re-evaluate its carefully considered jurisdictional holding as to Plaintiffs' constitutional claim.

*Dahlia Doe* also does not require a different outcome on the merits at this stage. The Supreme Court presumed that *Arlington Heights* governs, and that Plaintiffs' equal protection claim requires heightened scrutiny. Thus, this Court's prior reasoning on this issue remains sound. Dkt. 73 at 26–27; Dkt. 197 at 28–30. And, while Defendants fail to even acknowledge it, this Court has already explicitly held that Plaintiffs' allegations are sufficient to plausibly allege racism was a motivating factor in the challenged terminations under either *Arlington Heights* or *Trump v. Hawaii*. *See* Dkt. 197 at 30–33. Every district court to look at this issue post-*Dahlia Doe* has rightly recognized that the Supreme Court's reversal of preliminary relief for Haitian TPS holders does *not* mean that Haitian—or any other—TPS holders failed to allege a cognizable equal protection claim. *See Noor Doe v. Mullin*, No. 26-cv-2103-DEH, 2026 WL 3003682, at *3 (S.D.N.Y. Oct. 6, 2026); *Aung Doe v. Noem*, No. 25-cv-15483, 2026 WL 2279577, at *11 (N.D. Ill. Aug. 7, 2026); *Afr.*

[1] The Ninth Circuit order vacating this Court's entry of partial final judgment on Plaintiffs' APA claims, Dkt. 224, does not impact the portion of this Court's December 31, 2025 order denying Defendants' motion to dismiss Plaintiffs' equal protection claim, which was not on appeal. Dkt. 197 at 28–33. *See, e.g.*, *Credit Suisse v. U.S. Dist. Ct.*, 130 F.3d 1342, 1345 (9th Cir. 1997) ("The district court's denial of the . . . motion to dismiss is not a 'final decision' within the meaning of 28 U.S.C. § 1291, and it is therefore not immediately reviewable.").

*Cmtys. Together v. Mullin*, No. 26-cv-10278-BEM, 2026 WL 2408737, at *6–7 (D. Mass. Aug. 18, 2026). This Court should do the same.

**STANDARD OF REVIEW**

A motion for judgment on the pleadings is properly granted "when there is no issue of material fact, and the moving party is entitled to judgment as a matter of law." *Unite Here Loc. 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 700 (9th Cir. 2022). For a complaint to survive a motion to dismiss or motion for judgment on the pleadings, which applies the "same standard of review," *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (internal quotation marks omitted), "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

**ARGUMENT**[2]

**I. This Court Has Authority to Review Plaintiffs' Constitutional Claim.**

As this Court and every other court to consider the question have recognized—both before *and* after the Supreme Court's decision in *Dahlia Doe*—Section 1254a(b)(5) does not deprive this Court of jurisdiction over Plaintiffs' constitutional claim. *See Noor Doe*, 2026 WL 3003682, at *3 (finding jurisdiction over equal protection claim after *Dahlia Doe*); *Aung Doe*, 2026 WL 2279577, at *11 (same); *Afr. Cmtys. Together*, 2026 WL 2408737, at *6–7 (same). *See also, e.g.*, *Ramos v. Wolf*, 975 F.3d 872, 891 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023) (holding, pre-*Dahlia Doe*, that TPS statute does not bar review of constitutional claims); *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1105–08 (N.D. Cal. 2018) (same); *CASA de Md. v. Trump*,

[2] Defendants have effectively filed an untimely motion to reconsider, and it may be denied on that ground alone. *See GW Grundbesitz AG v. Gunn*, No. 2:21-CV-02074-CDS-NJK, 2025 WL 1755299, at *1 (D. Nev. June 25, 2025) (denying a motion for judgment on the pleadings where "a closer look reveals the motion is, in fact, for reconsideration and therefore an attempt to relitigate her previously denied motion to dismiss" and such reconsideration was "untimely").

355 F. Supp. 3d 307, 317–22 (D. Md. 2018) (same); *Saget v. Trump*, 345 F. Supp. 3d 287, 295 (E.D.N.Y. 2018) (same); *CASA, Inc. v. Noem*, 792 F. Supp. 3d 576, 591 (D. Md. 2025) (same); *Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 269 (E.D.N.Y. 2025) (same).

The Supreme Court's decision in *Dahlia Doe* does nothing to upset the Court's prior holdings on this Court's authority to review Plaintiffs' constitutional claim. The *Dahlia Doe* majority reiterated the "well-established principle," *Califano v. Sanders*, 430 U.S. 99, 109 (1977), that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Dahlia Doe*, 609 U.S. at 345 (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). The Court went on to review the merits of the constitutional claim. *Id.* at 346–50. That is enough to confirm that the Supreme Court did not alter the playing field or overturn the controlling precedent upon which this Court relied. Moreover, the majority of Justices appeared to decide—rather than simply assume—that Section 1254a(b)(5) does *not* bar review of constitutional claims.[3] *Dahlia Doe*, 609 U.S. at 338–40 (six Justices joining majority opinion); *id.* at 345–46 (four Justices in majority assuming without deciding that there is jurisdiction over constitutional claim, indicating the two other Justices did not merely assume, but instead decided, jurisdiction); *id.* at 365–68 (Kagan, J., dissenting) (three other Justices finding jurisdiction over statutory and constitutional claims).

Defendants' reliance on the concurrence of a sole Justice demonstrates that the Supreme Court has not adopted the position they newly adopt here. Mot. at 4 (quoting *Dahlia Doe*, 609 U.S. at 350–54 (Thomas, J., concurring)). Of course, the concurrence of one Justice cannot overturn prior precedent. Because Plaintiffs' claim is constitutional in nature, this Court's jurisdiction to review it could be limited only by an exceptionally clear statement that expressly references constitutional claims. *See Gebhardt*, 879 F.3d at 988; *Califano*, 430 U.S. at 109 ("[W]hen constitutional questions are in issue, the availability of judicial review is presumed, and [courts] will not read a statutory scheme to take the extraordinary step of foreclosing jurisdiction unless Congress' intent to do so is manifested by clear and convincing evidence.") (internal quotations omitted). The TPS statute's jurisdiction-limiting provision has no such clear statement. *See Gebhardt*, 879 F.3d at 988

[3] A *plurality* of Justices—not the majority, as Defendants wrongly state, see Mot. at 4—reserved the question of whether the TPS statute strips jurisdiction over constitutional claims.

(assuming, without deciding, that statute providing agency with "sole and unreviewable discretion" over a risk assessment did not bar a constitutional challenge). The legislative history Defendants cite, Mot. at 5, adds nothing to their position because it concerns a precursor to the TPS statute that never passed and, in any event, "merely echoes the language of the statute." *Ramos*, 321 F. Supp. 3d at 1104.

The Supreme Court has never read a jurisdiction-limiting provision to entirely foreclose review of a colorable constitutional claim. Reading this statute to accomplish that result could well render it unconstitutional. *Webster*, 486 U.S. at 603 ("We require this heightened showing in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.").

Finally, grasping at straws, Defendants claim for the first time that 8 U.S.C. § 1252(b)(9) bars review of Plaintiffs' claims. Mot. at 5–6. *See also* Dkt. 45 (not raising this argument in opposition to postponement); Dkt. 142 (not raising this argument in motion for summary judgment). This argument is entirely meritless. *See Miot v. Trump*, 818 F. Supp. 3d 126, 152 (D.D.C. 2026), *cert. granted before judgment*, 146 S. Ct. 1802 (2026), *rev'd and remanded sub nom. Mullin v. Doe*, 609 U.S. 324 (2026), *and cert. denied before judgment*, 146 S. Ct. 2799 (2026) (rejecting argument that § 1252(b)(9) applied to TPS termination challenge).[4] "Section 1252(b)(9) bars review of claims arising from 'action[s]' or 'proceeding[s] brought to remove an alien.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quoting 8 U.S.C. § 1252(b)(9)) (holding Section 1252(b)(9) did not bar review of DACA program rescission). It "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.' And it is certainly not a bar where, as here, the parties are not challenging any removal proceedings." *Id.* (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)). Because Plaintiffs here are not challenging any removal proceedings, Section 1252(b)(9) does not apply.

## II. Plaintiffs Have Stated a Claim on the Merits.[5]

[4] Defendants did not raise this argument before the Supreme Court in *Dahlia Doe*.
[5] Like Defendants, Mot. at 2 n.1, Plaintiffs also understand this Court to have granted Plaintiffs' motion in part, such that the current operative complaint is the First Amended Complaint at Dkt.

This Court previously found that Plaintiffs have stated a viable equal protection claim under either *Arlington Heights* or *Trump v. Hawaii*. Dkt. 197 at 29–33. Defendants ignore this Court's prior order, but its reasoning remains sound. Because *Dahlia Doe* does not foreclose Plaintiffs' equal protection claim, and because Defendants' other arguments are no more meritorious than they were when this Court rejected them last time, Plaintiffs plainly state a plausible equal protection claim.

### A. *Arlington Heights* Applies to Plaintiffs' Equal Protection Claim

As an initial matter, *Arlington Heights* still provides the proper standard for Plaintiffs' equal protection claim. Dkt. 197 at 28–30; Dkt. 73 at 25–27 (holding that *Arlington Heights* applies to Plaintiffs' claims because "*Arlington Heights* governs claims of racial animus and Plaintiffs specifically allege that the Secretary's Nepal, Honduras, and Nicaragua TPS terminations were motivated by racial animus"). Nothing in *Dahlia Doe* calls into question that holding. Indeed, the Supreme Court presumed *Arlington Heights* applies, *Dahlia Doe*, 609 U.S. at 347, and other courts continue to do the same, post-*Dahlia Doe*. *Afr. Cmtys. Together v. Mullin*, No. 26-CV-11201-ADB, 2026 WL 2364398, at *8 (D. Mass. Aug. 14, 2026) ("*Arlington Heights* . . . supplies the standard for assessing th[ese] claim[s]."); *Aung Doe*, 2026 WL 2279577, at *11 ("*Arlington Heights* supplies the relevant framework"); *Noor Doe*, 2026 WL 3003682, at *3 (applying *Arlington Heights* framework); *Afr. Cmtys. Together v. Mullin*, 2026 WL 2408737, at *6 (same).

These recent decisions join an unbroken string of pre-*Dahlia Doe* cases in which courts have held that *Arlington Heights* provides the proper standard for equal-protection challenges to the termination of a TPS designation. *See, e.g.*, *Ramos*, 975 F.3d at 896; *Nat'l TPS All. v. Noem*, 819 F. Supp. 3d 1049, 1079 (N.D. Cal. 2025); *CASA, Inc. v. Noem*, No. 25-1484-TDC, 2025 WL 3514378, at *3 (D. Md. Dec. 8, 2025); *Saget*, 345 F. Supp. 3d at 303; *Centro Presente v. Dep't of Homeland Sec.*, 332 F. Supp. 3d 393, 410–11 (D. Mass. 2018); *NAACP v. DHS*, 364 F. Supp. 3d 568, 576 (D.

---

229-1, with the First, Third, and Fourth Claims excised and only the Second Claim still live. Defendants' footnote request for dismissal with prejudice is meritless. Controlling precedent provides that filing an amended complaint, rather than a stipulated dismissal, is the proper means to dismiss fewer than all claims. *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687–90 (9th Cir. 2005). And Rule 41 does not provide for dismissal at Defendants' request except where "the plaintiff fails to prosecute or to comply with these rules or a court order"—conditions clearly not applicable here. Fed. R. Civ. P. 41(b).

Md. 2019).[6]

Relying on *Dahlia Doe* and no other new case law, Defendants ask this Court to reconsider its prior decisions about the governing legal standard. As before, Defendants are wrong that *Hawaii* requires deferential review for all executive branch decisions "based on immigration policy." Mot. at 7. This ignores not just what the Supreme Court in *Dahlia Doe* actually did, but also that a plurality of the Supreme Court applied the *Arlington Heights* standard to a race discrimination claim brought by undocumented immigrants challenging the rescission of an immigration policy *after Hawaii*. *See Regents*, 591 U.S. at 34 (plurality). Lower courts have done the same. "Contrary to the government's assertion, there is no general rule that federal immigration laws challenged for violating the Constitution should receive rational basis review." *United States v. Suquilanda*, 116 F.4th 129, 139−40 (2d Cir. 2024) (collecting cases and reviewing challenge to 8 U.S.C. § 1326 under *Arlington Heights*); *Washington v. DHS*, 598 F. Supp. 3d 1051, 1070 (E.D. Wash. 2020) (collecting cases).

As this Court previously found, the factors in *Hawaii* counseling in favor of rational basis review are inapplicable here. Dkt. 73 at 25−27 (citing *Trump v. Hawaii*, 585 U.S. 667, 706 (2018)); Dkt. 197 at 28–30. This Court rejected Defendants' reliance on *Mathews v. Diaz*, 426 U.S. 67 (1976), finding it "inapposite" because "there was no allegation of racial animus" as the Supreme Court considered the case. Dkt. 73 at 26. Defendants' other cases are repurposed here even after the Court previously found them unpersuasive. *Compare* Mot. at 7–8, *with* Dkt. 110 at 19–20 & Dkt. 142 at 18–20 (Defendants citing the same previously-considered cases). The authorities upon which Defendants rely are irrelevant as they also do not concern discriminatory animus claims, but rather congressional line-drawing concerning the substantive rules governing admission and deportation. Mot. at 7–8 (citing *Fiallo v. Bell*, 430 U.S. 787, 791−92 (1977) (gender discrimination claim challenging Congress's "exceptionally broad" power to legislate "the admission of [noncitizens]"); *Kleindienst v. Mandel*, 408 U.S. 753, 769−70 (1972) (no discrimination claim; non-citizen was abroad)). *Harisiades v. Shaughnessy* provides no support for the additional reason that it relies on

[6] Every judge in the vacated Ninth Circuit *Ramos* decision also held that *Arlington Heights* governs. *See, e.g.*, *Ramos*, 975 F.3d at 896 (vacated panel majority) (noting "the similarities between the [equal protection] challenge in this case and *Regents*," where the Supreme Court applied *Arlington Heights*); *id.* at 925 (Christen, J., dissenting) (applying *Arlington Heights*).

the Japanese internment cases. 342 U.S. 580, 589−91 & nn. 16, 17 (1952).

### B. Plaintiffs State a Plausible Equal Protection Claim Under Either *Arlington Heights* or *Hawaii*

#### 1. *Dahlia Doe* Does Not Foreclose Plaintiffs' Equal Protection Claim

Numerous courts have rejected Defendants' argument that there can be no equal protection claim brought to challenge TPS terminations in the wake of *Dahlia Doe*. *See Noor Doe*, 2026 WL 3003682, at *3–4 ("Plaintiffs may very well be able to succeed on the merits of their claim after the record in this case has been fully developed."); *Aung Doe*, 2026 WL 2279577, at *11 (considering it "plausible that the plaintiffs could uncover evidence that might have changed the outcome in *Mullin*" in light of the available public statements); *Afr. Cmtys. Together*, 2026 WL 2408737, at *6–7 ("The Court is unpersuaded" that Ethiopian TPS holders failed to state a claim that the termination of TPS for Ethiopia "was motivated by racial or national origin animus[.]"). Critically, the Supreme Court's ruling in *Dahlia Doe* was based on a different, higher standard—likelihood of success—than applies to Defendants' motion for judgment on the pleadings. The Supreme Court "did not decide that the plaintiffs had failed to state a plausible claim for relief." *Aung Doe*, 2026 WL 2279577, at *11 (distinguishing *Dahlia Doe* as it "was decided under a likelihood of success standard based on only public statements"). *Dahlia Doe* thus does not preclude Plaintiffs from moving forward with their equal protection claim in this case.

In addition to ignoring the distinct posture of *Dahlia Doe*, Defendants overread it. Mot. at 9–10, 12–13. The Supreme Court did not conclude that Defendants' antipathy to the TPS program *is* race neutral, but only that, based on the preliminary record before the Court, Defendants' views "*could* rest on race-neutral justifications." *Dahlia Doe*, 609 U.S. at 346. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss . . . ." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Finally, Defendants fail to acknowledge this case rests on a distinct factual record from the one before the Court in *Dahlia Doe*. While Plaintiffs' complaint includes some of the statements addressed by the Court in *Dahlia Doe*, it is not limited to those statements. *See, e.g.*, First Amended

Complaint ("FAC"), Dkt. 229-1 at ¶ 103 (citing social media post that post-dates the *Miot* decision reviewed in *Dahlia Doe*). Moreover, the administrative record in this case is specific to the Honduras, Nicaragua, and Nepal terminations. *See* Dkt. 197 at 8–9, 41–43. And, if permitted to litigate their claims, Plaintiffs will also rely on the expert testimony of Dr. Elliot Young to place Defendants' statements and actions in historical context. Dkt. 197 at 35–37 (concluding that "[t]he statements made by President Trump, DHS Secretary Noem, and other Trump administration officials about Central American migrants, including TPS holders, can be understood in the context of a long history of the use of similar statements about disfavored immigrant groups to justify restrictive immigration laws"). Such expert testimony was not part of the record before the Supreme Court in *Dahlia Doe*. Plaintiffs' motion to reopen discovery is also pending. Dkt. 247.

**2. Defendants' Recycled Arguments Remain Meritless**

In addition to their meritless argument that *Dahlia Doe* requires dismissal of Plaintiffs' claim, Defendants recycle old arguments that this Court previously rejected. Dkt. 197 at 28–33. Because these arguments have no more merit now than they did before, this Court should again deny Defendants' request for dismissal.

*Arlington Heights* calls for a "sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)**.** This Court need not find Defendants explicitly announced their racist intent to deny Defendants' motion, as facially neutral policies may violate the Equal Protection Clause. *See, e.g.*, *id.* (looking to extraneous evidence because "[s]ometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face"). Race-neutral justifications may be pretextual cover for racial animus. *Arce v. Douglas*, 793 F.3d 968, 978 (9th Cir. 2015) (noting that it is appropriate to examine "whether [officials] have 'camouflaged' their intent" given the unlikelihood of acknowledging discriminatory intent).

Defendants first argue that the Federal Register notices, and the TPS statute itself, provide sufficient justification for the challenged TPS terminations. Mot. at 9–10. But this Court already found the explanations provided in the Federal Register notices were pretextual. Dkt. 197 at 39–43.

*Dahlia Doe* did not overturn the district courts' factual findings that the Haiti and Syria terminations were predetermined or made without consultation or review. Nothing in *Dahlia Doe* calls into question this Court's similar factual findings. Nor does *Dahlia Doe* alter the statutory requirement to extend if conditions warrant, regardless of the amount of time a country has been designated. *Dahlia Doe*, 609 U.S. at 332 (describing statutory obligation to extend TPS so long as conditions do not justify a termination). The statute provides no maximum time limit for a country's TPS designation, and in fact *requires* extension so long as the conditions warrant and it is unsafe to return. Dkt. 197 at 20; *Ramos*, 321 F. Supp. 3d at 1121.

Defendants next take issue with Plaintiffs' supposed "mischaracteriz[ation]" of a social media post made by former Secretary Noem the day she announced the vacatur of TPS for Venezuela. Mot. at 10. Defendants claim the Secretary's reference to "dirtbags" "was clearly direct[ed] . . . to members of Tren de Aragua specifically" rather than Venezuelan migrants generally. *Id.* But when "assessing whether a plaintiff has stated a claim" this Court must "construe all factual inferences in the light most favorable to the plaintiff." *Brown v. Brita Prods. Co.*, 172 F.4th 1113, 1117 (9th Cir. 2026). Given that Secretary Noem made her "dirtbag" comment in the context of announcing the decision to vacate TPS for Venezuela—a decision that stripped immigration status from hundreds of thousands of immigrants with no relation to Tren de Aragua—at this stage, at least, Defendants' narrow construction must be rejected. *Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807, 859 (N.D. Cal. 2025), *aff'd*, 150 F.4th 1000 (9th Cir. 2025) ("This statement is particularly notable because, as Plaintiffs point out, Secretary Noem called Venezuelans dirt bags when announcing her very decision to vacate the extension of the 2023 Designation.") (cleaned up).

Defendants also assert that Defendants' discriminatory statements are generalized, taken out of context, or remote in time. Mot. at 12. In fact, Plaintiffs allege numerous statements made contemporaneously with and directly related to the challenged TPS decisions. Dkt. 73 at 29; FAC ¶¶ 72−94.[7] For example, on March 20, 2025, little more than a month before deciding to terminate

[7] Other courts have found racial animus based on statements significantly less overtly racist than the statements here. *See, e.g.*, *Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 505 (9th Cir. 2016) ("the use of 'code words' may demonstrate discriminatory intent"); *Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Par.*, 641 F. Supp. 2d 563, 571 (E.D. La. 2009) (finding that "references to

Honduras's TPS designation, Dkt. 145-56 (Honduras Decision Memo, signed May 1, 2025), Secretary Noem conflated Honduran immigrants with "criminals" in a social media post. FAC ¶ 100. Then, on May 19, 2025, just weeks after terminating TPS for Honduras, Nicaragua, and Nepal, she "equated TPS holders with 'MS-13 gang members,' 'known terrorists,' and 'murderers.'" Dkt. 197 at 49; FAC ¶ 97. *See also* Dkt. 145-46 (Nicaragua Decision Memo, signed May 1, 2025); Dkt. 145-19 (Nepal Decision Memo, signed April 16, 2025).

As another example, President Trump's infamous "shithole countries" statement, which he doubled down on recently, was *about* TPS. FAC ¶¶ 119, 138. That comment reflected Defendants' preference—repeatedly both stated and acted on—for "nice" immigrants from places like "Norway" as contrasted with non-white, non-European immigrants whom Defendants group together according to their non-European origins and then disparage as invaders. *See* FAC ¶¶ 119, 120, 138 (describing immigrants "not just from South America, but from Africa, Asia, Middle East" as an "invasion").[8] *See also id.* ¶¶ 127–134 (contrasting treatment of white South Africans and immigrants from what President Trump describes as the "Third World"). Stephen Miller, Deputy Chief of Staff to the President, has suggested the conditions in what the President describes as "shithole countries" reflect innate characteristics of individuals from those countries—and their American-born children—posting to social media in November 2025 that "[a]t scale, migrants and their descendants recreate the conditions, and terrors, of their broken homelands." FAC ¶ 147.[9] President Trump's Invasion Executive Order in turn invokes the racist "great replacement" myth, manifesting a discriminatory intent as it urges termination of TPS without any rational relation to the facts or the Secretary's

---

'ghetto,' 'crime,' 'blight,' and 'shared values'" are "nothing more than 'camouflaged racial expressions'"); *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 549 (S.D.N.Y. 2006) (concluding that "the claims and comments made by public officials in Mamaroneck about the day laborers who plied the streets of Mamaroneck looking for work were negative and stigmatizing" and "[t]hat is some evidence of racism").

[8] This formulation has become a signature trope of the President's. *See e.g.*, Dkt. 54-7 (February 2025 speech by President Trump describing immigrants "from Africa, from Asia, not just [from] South America" as "criminals" and "murderers"); Ginger Gibson, *Trump Says Immigrants Are 'Poisoning the Blood of Our Country.' Biden Campaign Likens Comments to Hitler*, NBC NEWS (Dec. 17, 2023) (reporting on speech in which President Trump complained that migrants "from Africa, from Asia," "not just . . . South America" are "poisoning the blood of our country").

[9] President Trump has expressed a similar belief with his repeated use of the phrase, "[I]f you import the third world, you become the third world." *See, e.g.*, @POTUS (April 10, 2026), https://x.com/POTUS/status/2042665170275537293.

stated goals; Secretary Noem adopted it as a central justification for the terminations. Dkt. 197 at 50; FAC ¶¶ 50, 92–94, 132.

That the first Trump administration extended TPS for a small population from select countries, and designated Venezuela for DED, does not undermine Plaintiffs' discrimination claim. Mot. at 12. First, Secretary Noem—the ultimate decisionmaker here—did not extend TPS for a single country. Second, the decisions on which Defendants rely were clear outliers. During the first Trump administration, Defendants attempted to terminate TPS for over 98 percent of TPS holders, extending protection only for countries with relatively small populations. FAC ¶¶ 38, 42. *See, e.g.*, 82 Fed. Reg. 44,205, 44,205 (Sep. 21, 2017) (extending TPS for "[a]pproximately 70 South Sudan TPS beneficiaries"). And as a legal matter, Plaintiffs need not demonstrate animus towards every group of similarly situated people for this Court to find racial animus. *Arlington Heights*, 429 U.S. at 266 n.14 ("A single invidiously discriminatory governmental act . . . would not necessarily be immunized by the absence of such discrimination in the making of other comparable decisions.").

Defendants seek to discount President Trump's statements of animus as irrelevant, Mot. at 11, but considering the President's statements relevant is consistent with *Dahlia Doe*, which "appeared to assume . . . the President's statements could factor into the equal-protection analysis." *Afr. Cmtys. Together*, 2026 WL 2364398, at *9 (citing *Dahlia Doe*, 609 U.S. at 346–47). Nor do Plaintiffs need to rely on the "cat's paw" doctrine to render the President's statements relevant.[10] As this Court previously held, the President's statements "provide circumstantial evidence of the Secretary's decision-making process" that is properly considered under *Arlington Heights*. Dkt. 197 at 31.

---

[10] While Plaintiffs do not rely on the "cat's paw" doctrine, it would clearly apply here where President Trump has the authority to hire and fire the Secretary; his animus is well-recognized; and Secretary Noem has conceded that it motivated her termination decisions. *See Batalla Vidal v. Nielsen*, 291 F. Supp. 3d 260, 277–79 (E.D.N.Y. 2018) ("[L]iability for discrimination will lie when a biased individual manipulates a non-biased decision-maker into taking discriminatory action."), *rev'd in part sub nom. Regents*, 591 U.S. 1; *Ave. 6E Invs.*, 818 F.3d at 504 ("The presence of community animus can support a finding of discriminatory motives by government officials, even if the officials do not personally hold such views."); *Centro Presente*, 332 F. Supp. 3d at 414–15 (citing *Batalla Vidal* and *Staub*, and finding statements by Trump relevant to a challenge to the termination of El Salvador's TPS).

Further, Plaintiffs do not here allege guilt by association, or that a biased subordinate influenced an otherwise independent decisionmaker. *See Staub v. Proctor Hosp.*, 562 U.S. 411 (2011); *Pierce v. E. Bay Mun. Util. Dist.*, No. 24-1260, 2026 WL 2445810 (9th Cir. Aug. 20, 2026). Instead, Plaintiffs allege that Secretary Noem herself was motivated by discrimination and *also* directly adopted the President's discriminatory motivation by citing the Invasion Executive Order and attributing her decisions to him. FAC ¶¶ 93, 107. *See also, e.g.*, FAC ¶ 106 ("[W]hen the President gives a directive, the Department of Homeland Security will follow it."); 90 Fed. Reg. 24151, 24152 n.10 (describing President Trump's Invasion Executive Order as "directing" her to limit TPS designations). And because the Secretary "'remain[s] accountable to the President,'" wields his authority, and is subject to removal if she "'fail[s] to live up to' [his] expectations," "the President's motivation in declaring that he was terminating TPS is probative of whether impermissible bias entered the deliberative process." *Afr. Cmtys. Together,* 2026 WL 2364398, at *9 (internal quotation marks and citations omitted).

Finally, for reasons this Court previously elaborated, Plaintiffs state a claim even under the deferential *Hawaii* standard. Dkt. 197 at 31–32. Considering the evidence in the light most favorable to Plaintiffs, a reasonable factfinder could conclude the Secretary's decisions were motivated at least in part by impermissible animus, defeating Defendants' motion for judgment on the pleadings even if rational basis review were the appropriate standard. *Cf.* Dkt. 73 at 29−30 ("Given the strength of the evidence, Plaintiffs' Fifth Amendment claim would also likely succeed on the merits even if the Court applied the rational basis test."). Plaintiffs have presented substantial evidence that the Secretary's termination decisions, which rested on false and negative stereotypes entirely "divorced from any factual context," *Trump v. Hawaii*, 585 U.S. 667, 705−06 (2018) (citation omitted), manifested discriminatory intent. The "face of" the challenged decisions, along with "extrinsic evidence" considered only "to the extent of applying rational basis review," show the Secretary's actions were not rationally related to her stated goals. *Id.* at 704−05.

As this Court previously held, TPS holders are lawfully present, have high rates of earned income, contribute billions to the economy, and by law cannot have significant criminal histories. Dkt. 73 at 8−9, 28; Dkts. 17-14, 17-15, 17-16. Given those undisputed facts, the Secretary's

invocation of racist tropes—in particular, characterizing TPS holders as part of an "[i]nvasion" against which Americans need protecting—is evidence of animus. Dkt. 73 at 28 ("By stereotyping the TPS program and immigrants as invaders that are criminal, and by highlighting the need for migration management, Secretary Noem's statements perpetuate the discriminatory belief that certain immigrant populations will replace the white population."). *See also* Dkt. 197 at 31. "Acting on the basis of a negative group stereotype and generalizing such stereotype to the entire group is the classic example of racism." *Nat'l TPS All. v. Noem*, 773 F. Supp. 3d at 860. That the reasons were in an official agency notice cannot absolve them of the obligation to have some basis in reality, which they do not. *See Doe #1 v. Trump*, 957 F.3d 1050, 1059−60 (9th Cir. 2020) (declining to credit "conclusory factual assertions . . . unsupported in the record" in a Presidential Proclamation). Because the terminations were not based on a rational or plausible justification, Plaintiffs' allegations suffice under even rational basis review.

**CONCLUSION**

For the reasons stated above and in this Court's prior orders, this Court should deny Defendants' motion for judgment on the pleadings.

Dated: October 16, 2026

Respectfully submitted,

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean
Michelle (Minju) Y. Cho
Emily Zhu

Jessica Karp Bansal
Lauren Michel Wilfong (*Pro Hac Vice*)
NATIONAL DAY LABORER
ORGANIZING NETWORK

Ahilan T. Arulanantham
Vanessa Young
CENTER FOR IMMIGRATION
LAW AND POLICY, UCLA
SCHOOL OF LAW

Mohammad K. Tajsar
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA

Erik Crew (*Pro Hac Vice*)
HAITIAN BRIDGE ALLIANCE

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

ACLU FOUNDATION
OF NORTHERN CALIFORNIA

*/s/ Emilou MacLean*
Emilou MacLean